Michael J. Canning, Esq. (MJC3060)
**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900
Attorneys for Defendant, Cohen, Weiss and Simon LLP

<div align="center">

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>                              Plaintiff,<br><br>                    v.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAY GADDE; TWITTER, INC.; COHEN, WEISS AND SIMON LLP,<br><br>                              Defendants. | Case No. 2:20-cv-12880-JMV-JAD<br><br><br>Civil Action<br><br>**CERTIFICATION OF MICHAEL CANNING, ESQ.**<br><br><br>**Motion Date: December 7, 2020** |

MICHAEL J. CANNING, ESQ., by way of certification in lieu of affidavit, hereby states as follows:

1.     I am an attorney at law of the State of New Jersey and an officer and shareholder in the law firm of Giordano, Halleran & Ciesla, P.C., attorneys for Cohen, Weiss and Simon LLP. In this capacity I am familiar with the facts set forth herein.

2.     Attached hereto as **Exhibit "A"** is a true and accurate copy of the September 21, 2020 Complaint and Jury Trial Demand filed by Plaintiff.

3.     Attached hereto as **Exhibit "B"** is a true and accurate copy of the October 23, 2020 Consent Order Granting Motion for Extension in which to file Answer or Otherwise Move.

4.      Attached hereto as **Exhibit "C"** is a true and accurate copy of the October 22, 2020 Answer to Plaintiff's Complaint filed by Cohen, Weiss and Simon LLP.

5.      Based on the foregoing and the accompanying Memorandum of Law, Cohen, Weiss and Simon LLP respectfully requests that this court dismiss Count XIII of Plaintiff's Complaint in its entirety with prejudice.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
MICHAEL J. CANNING, ESQ.

DATED:  November 9, 2020

Docs #4702882-v1

2

# EXHIBIT "A"

Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
pt@ptesq.com
*Attorney for Plaintiff Daniel D'Ambly*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>        Plaintiff,<br><br>vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP;<br><br>        Defendants. | CIVIL ACTION NO.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff, Daniel D'Ambly by and through his attorney the Law Office of Patrick Trainor,

Esq., LLC, as and for its Complaint against defendants Christian Exoo a/k/a @AntifashGordon,

St. Lawrence University, Tribune Publishing Company, LLC, New York Daily News, Vijaya

Gadde, Twitter, Inc., and Cohen, Weiss, and Simon, LLP, hereby alleges as follows:

## STATEMENT OF THE CASE

1.  This action arises out of the repugnant conduct of defendant Christian Exoo, an

extortionist, known habitual doxer, and member of Antifa, associates with others to conduct

patterns of racketeering activities. Defendant Exoo under the Twitter username

"AntiFashGordon" directs his associates in the "Exoo Enterprise" to conduct violent and

1

extortionate patterns of racketeering activities devoted to "doxing" complete strangers that the Exoo Enterprise has labeled "fascists" and/or "white supremacists." To "dox" someone means to publicly disclose a person's identity, employer, school, home address, etc., for the purpose of causing harm to that person. Once the target has been doxed, Exoo directs the Enterprise to commence a pattern of violent and threatening emails, Tweets, and phone calls to the target's employers, professional clients, schools, prospective employers or schools to extort the target's termination from employment, expulsion from school, and compel the targets exit from society. Exoo is aware of the potential illegality of his directives, because he instructs his associates to use the telephone *67 feature to block their phone numbers when making threatening calls.

Defendant Exoo identified D'Ambly as a white supremacist and thereafter, directed the Exoo Enterprise to stalk him in order to learn his true identity.   Upon discovering D'Ambly's identity, Exoo directed the enterprise to deluge D'Ambly's employer, the New York Daily News their parent Tribune Publishing Company and D'Ambly's labor union the Teamsters, with violent and threatening Tweets, and phone calls threatening death and personal and physical harm to their employees and property, in order to extort D'Ambly's termination. Defendant Exoo unmistakably directs the Exoo Enterprise's patterns of racketeering activities through interstate communications.

One-person hellbent on destroying the lives of other persons, conspires with, participates in, and directs an enterprise that engages in patterns of racketeering activities every day by using interstate communications to threaten physical violence to extort and cause harm to their target. The enterprise's associates and co-conspirators include, a major religious university, top lawyer of a publicly traded corporation and the publicly traded corporation. The Exoo Enterprise's associates are motivated by a shared disdain of people labeled fascists and white supremacists.

2

## THE PARTIES

2.  Plaintiff Daniel D'Ambly (Hereinafter "Plaintiff" or "D'Ambly"), is a twenty-seven (27) year member of Local One-L, Graphic Communications Conference of the International Brotherhood of Teamsters, who was employed as a was a plate maker for the New York Daily News in Jersey City, New Jersey until January 18, 2019. D'Ambly was labeled a 'fascist' and/or a 'white supremacist.' Plaintiff is an individual domiciled in the State of New Jersey and a "person" as defined under 18 U.S.C. § 1961(3).

3.  Defendant Christian Exoo ("Exoo" or "@AntiFashGordon") is a library building supervisor and lecturer at St. Lawrence University. Exoo is a self-described anti-fascist, notorious doxer, and leader of Antifa, who by doxing others has acquired a great deal of notoriety and infamy.[1] Exoo currently publishes Tweets under Twitter username "@AntiFashGordon." Exoo is an individual domiciled in the State of New York and a "person" as defined under 18 U.S.C. § 1961(3).

4.  St, Lawrence University ("St. Lawrence" or "STL") is a private four-year university with its principal place of business located at 116 Vilas Hall, 23 Romoda Drive, Canton, New York 13617, and a "person" as defined under 18 U.S.C. § 1961(3).

---

[1] *Anti-Fascists Are Waging A Cyber War – And They're Winning*, Medium.com (Sep. 9, 2019) https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Sep. 15, 2020); *Comcast fires employee with alleged ties to Proud Boys, We the People Rally*, PhillyVoice.com (November 15, 2018) https://www.phillyvoice.com/comcast-fires-employee-proud-boys-alt-right-philadelphia-rally/ (last accessed Sep. 15, 2020); *The Right Wing Is Trying to Make It a Crime to Oppose Fascism*, Truthout.org (Aug. 9, 2019) https://truthout.org/articles/the-right-wing-is-trying-to-make-it-a-crime-to-oppose-fascism/ (last accessed Sep. 15, 2020); *How to Spot An Abuser, Featuring Antifash Gordon, In His Own Words: A Step By Step Guide, and Also F\*\*\* That Guy,* Medium.com (Jun. 25, 2020) https://medium.com/@abuse_isnt_revolutionary/how-to-spot-an-abuser-featuring-antifash-gordon-in-his-own-abuser-words-7b39f4657b19 (last accessed Sep. 15, 2020).

3

5. Tribune Publishing Company ("Tribune") is a media company organized under the laws of the State of Delaware with its principal place of business located at 160 N. Stetson Avenue, Chicago, Illinois 60601 that conducts its business throughout the United States, and is a "person" as defined under 18 U.S.C. § 1961(3).

6. New York Daily News Company ("Daily News") is owned by the Tribune Publishing Company (Tribune and Daily News are sometimes hereinafter referred to collectively 00000as Daily News) with a place of business located at 125 Theodore Conrad Drive, Jersey City, New Jersey 07305, and 4 New York Plaza, New York, NY 10004. The Daily News is a "person" as defined under 18 U.S.C. § 1961(3). At all times relevant, the Tribune Publishing Company had the right and did exercise control over the actions of the New York Daily News.

7. Vijaya Gadde ("Gadde") is the Head of Legal, Public Policy, and Trust and Safety Lead at Twitter, Inc. At all times relevant, Vijaya Gadde was the sole decision maker and person authorized to permanently ban Twitter users 0who violated Twitter's Terms of Service and Rules. She is a "person" as defined under 18 U.S.C. § 1961(3). Gadde is believed to be domiciled in the State of California.

8. Twitter, Inc. ("Twitter"), is a company organized under the laws of the State of Delaware with its principal place of business located at 1355 Market Street, San Francisco, CA 94103, that conducts its business globally and a "person" as defined under 18 U.S.C. § 1961(3).

9. The Exoo Enterprise is a criminal enterprise as defined under 18 U.S.C. § 1961(4), consisting of Defendant Christian Exoo a/k/a "AntiFashGordon," who directs the Exoo Enterprise, St. Lawrence University, Vijaya Gadde, Twitter, Inc., and unidentified associates.

4

10.     Cohen, Weiss, and Simon, LLP ("CWS") is a law firm with its principal place of business located at 900 3rd Avenue, #2100, New York, New York 10022 and a "person" as defined under 18 U.S.C. § 1961(3).

<u>JURISDICTION AND VENUE</u>

11.     Jurisdiction of this Court is proper because this litigation arises under federal law, namely 18 U.S.C. §§ 1961 to 1968.  This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

12.     The Court has supplemental jurisdiction over the state law claims asserted in this case under 28 U.S.C. § 1367(a).

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the threatened and actual harm to Plaintiff occurred in this District by reason of Defendants' conduct as alleged below.

<u>FACTUAL ALLEGATIONS</u>

14.     In addition to being a Teamster, D'Ambly is a member of the New Jersey European Heritage Association ("EHA"), a non-violent, pro-domestic policy organization that the Exoo Enterprise has labeled a white supremacist hate group.  D'Ambly, who the Exoo Enterprise identifies as the leader of EHA, actively participates with other EHA members in political rallies, peaceful political protests, pamphleteering, and speech that is protected by <u>U.S. Const.</u> amend. I and <u>N.J. Const.</u> art. I, ¶ 6.

15.     Defendant Exoo publishes Tweets and doxes others using Twitter username "@AntiFashGordon" the leading Antifa Twitter account that as of September 16, 2020, has 37,518 followers.  The headline of @AntiFashGordon's public profile states "I expose fascists

5

via #OSINT, get them fired, de-homed, kicked out of school, etc." Based on the substance of @AntiFashGordon's Tweets he broadly identifies persons who do not share his radical far left political ideology as fascists and/or white supremacists. Exoo's definition of fascists and white supremacists is indiscernible, because he uses the terms broadly and interchangeably.

16.     Upon information and belief, Exoo is known to Twitter's Trust & Safety Council ("TSC") as a habitual doxer and ban evader. A ban evader is a person who creates a new Twitter account after receiving a permanent ban. The ban evader's new account is called a "ban evasion account."

17.     Doxing is prohibited by Twitter's Private Information Policy within their Terms of Service and Rules ("TOS").[2] Twitter's TOS do not permit permanently banned persons to create new accounts,[3] a permanent ban means a lifetime ban.

18.     Upon information and belief, Exoo has had two Twitter accounts permanently banned for doxing. Twitter has previously permanently banned @ChrisExoo,[4] @ChristianExoo,[5] in addition, Twitter allowed @DoxSavage to change its name @AntiFashGordon.

19.     Upon information and belief, the Exoo Enterprise targeted D'Ambly as a white supremacist at some point in or about January 2018. Thereafter, Exoo directed his associates via Twitter to uncover D'Ambly's true identity, for the sole purpose of doxing him.

---

[2] https://help.twitter.com/en/rules-and-policies/personal-information "You may not publish or post other people's private information without their express authorization and permission. We also prohibit threatening to expose private information or incentivizing others to do so."
[3] https://help.twitter.com/en/rules-and-policies/enforcement-options "Permanent suspension: This is our most severe enforcement action. Permanently suspending an account will remove it from global view, and the violator will not be allowed to create new accounts."
[4] https://twitter.com/ChrisExoo (last accessed Sep. 15, 2020)
[5] https://twitter.com/ChristianExoo (last accessed Sep. 15, 2020)

20.    Upon information and belief, by September 2018, Twitter received dozens of complaints directly Tweeted to Twitter Support and Twitter Trust and Safety informing them that Exoo's previous Twitter account @DoxSavage was aggressively doxing, which forced Twitter to investigate the accounts activities.  Under Twitter's normal protocol, accounts being investigated for violating the TOS are prevented from Tweeting during the investigation. [6]

21.    Twitter ignored their TOS and allowed @DoxSavage to continue Tweeting during their investigation.

22.    Upon information and belief, at some point on or about October 1, 2018, Gadde and Twitter agreed to allow @DoxSavage to undergo a name change in lieu of a permanent ban. Instead of receiving his third permanent ban, Twitter agreed to change Exoo's username to @AntiFashGordon.  The unprecedented agreement to allow the name change under these circumstances was done to ensure the approximate 20,000 @DoxSavage followers were not lost.

23.    On October 11, 2018, @DoxSavage Tweeted a farewell announcement to his followers: "Hey folks—I just underwent a name change from @DoxSavage to @AntiFash Gordon.  I'll be back tomorrow to expose more violent fascists who were on the ground in Providence on 10/6."  The name change kept the Exoo Enterprise intact, and their ability to effectively conduct its patterns of racketeering activities was not harmed.

24.    On October 29, 2018, at 11:49 a.m., @AntiFashGordon published a massive twenty-two count Tweet thread (a thread is a series of related Tweets) that doxed D'Ambly to his estimated 20,000 followers.  The dox publicly disclosed for the first time D'Ambly's name, hometown, photograph, employer, occupation, employer's location, multiple telephone numbers

---

[6] https://help.twitter.com/en/rules-and-policies/enforcement-options (last accessed Sep. 15, 2020)

for his employer, a labor union Referendum Board he chaired, and the names of the other Referendum Board members.

25.     In the dox, @AntiFashGordon labeled D'Ambly a "Nazi" and directed the Exoo Enterprise associates to send harassing, intimidating, and threatening phone calls and Tweets to the Daily News's Twitter username @NYDailyNews, to extort D'Ambly's termination. Exoo's dox directed:

a. In the 19th Tweet, @AntiFashGordon directed his associates "stay on top of this, too. If you don't hear back from @NYDailyNews, keep tweeting at them." Call their printing facilities in Jersey City at (201) ***-**** (number provided in original Tweet) and warn them about Daniel D'Ambly…"

b. A follow up Tweet included a second telephone number for the New York Daily News and a subsequent Tweet included the direct telephone number to D'Ambly's print shop.

c. Within minutes the Exoo Enterprise obeyed Exoo's directive and flooded @NYDailyNews and @Teamsters with Tweets and phone calls that threatened the Daily News with violent attacks if D'Ambly was not terminated.

d. Upon information and belief, from October 29, 2018, to January 11, 2019, the Exoo Enterprise directed no less than fifty-four (54) threatening Tweets to @Daily News plus an unknown number of threatening phone calls.

e. D'Ambly was never told of the threats or warned to take safety precautions by anyone from the Daily News or Tribune.

26.     On October 30, 2018, without warning D'Ambly of the dangerous threats, Tribune engaged Insite Risk Management ("Insite") to investigate D'Ambly. At the conclusion

8

of their investigation, Insite produced the "Private Investigation Report" ("Report") and provided it to the Tribune on December 4, 2018. The Report acknowledged @AntiFashGordon's doxing was the impetus for the investigation and confirmed D'Ambly's association with EHA. The Report included videos of D'Ambly and others using imprudent language during political rallies.

27.     On or before January 8, 2019, EHA posted flyers on public bulletin boards in Princeton, New Jersey that announced an "It's okay to be white" protest march purportedly scheduled for January 12, 2019.

28.     On January 9, 2019, @AntiFashGordon re-Tweeted the "It's okay to be white" march to his associates and again doxed D'Ambly by Tweeting, "If anyone wants their leaders name, it's Dan D'Ambly."

29.     On January 10, 2019, @AntiFashGordon published a second Tweet that referenced EHA's purported march and directed his associates to "show up and shut down" the purported march "And please say hi to their leader, Dan D'Ambly for me."

30.     On January 10, 2019, D'Ambly was called to an interview with Jean Nechvatal ("Nechvatal"), Tribune's Vice President, Talent Management & Learning and James R. Brill ("Brill"), Daily News's Sr. Vice President of Operations. D'Ambly was accompanied at the meeting by Union Steward Pete Cairnie. During the meeting, D'Ambly was confronted with content of the Report, but not informed of the report's existence. D'Ambly acknowledged using imprudent language in a private conversation during a protest.

31.     On January 11, 2019, at 10:14 a.m., @AntiFashGordon again directed his associates to shut down EHA's purported January 12, 2019 "It's okay to be white" march and exhorted his associates "if you can, show up and show these pricks that we don't tolerate hate in our streets." The Tweet included @NYDailyNews and doxed D'Ambly's hometown again.

Exoo encouraged violence to shut down the purported protest, but warned "Remember that the police won't protect us here."

32.     Upon information and belief, at some point before 10:21 a.m. on January 11, 2019, Edward Bushey, Sr. Vice President, General Manager, Manufacturing and Distribution at Tribune delivered recordings of the death threats to the Daily News. The callers threatened D'Ambly and stated the Daily News was responsible for "any violence or blood spilled is also on your hands." One threatening caller's phone number was captured.

33.     On January 11, 2019, from 9:30 a.m. to 10:14 a.m., Twitter usernames @hubcityantifa, @NYCAntifa, and @Nstricklanded replied via Tweet to @AntiFashGordon's instructions with coded messages that confirmed they followed his instructions and made threats.

34.     Upon reason and belief, one of the death threat phone numbers is owned by a person who Tweeted mission confirmation to @AntiFashGordon on January 11, 2019.

35.     On January 11, 2019, at 2:20 p.m., EHA Tweeted that the "It's okay to be white" protest was a prank.

36.     On January 11, 2019, at 3:30 p.m., D'Ambly was called to a second meeting with James Brill, Sr. Vice President of Operations for the Daily News to recap the previous days meeting. In the meeting, Brill issued D'Ambly a "Last and Final Warning" that stated the "ONLY reason that you are not being terminated immediately is because, thus far, we have not determined that your activities with NJEHA has occurred at work and/or derogatory comments were made about any co-workers." The warning continued "should we learn that you engaged in any inappropriate speech or behavior in the workplace or with regard to any other employee, or if the Company or any of its employees suffer any backlash as a result of your association with

the NJEHA, your conduct will be considered "work-related" and you will be terminated immediately."

37.    This meeting with Brill was a pre-text for D'Ambly's termination. The meeting occurred five (5) hours after death threats were received, but Brill did not inform Plaintiff, because the Daily News intended to use the threats as evidence the company received "backlash" from D'Ambly's conduct and was the "cause" of his termination.

38.    At 4:34 p.m. on January 11, 2019, @AntiFashGordon replied to EHA's Tweet by threatening D'Ambly whereby @AntiFashGordon threatened "Regardless, I'm gonna spend the next week wrecking your fucking life, Dan D'Ambly."

39.    In the evening of January 11, 2019, the Exoo Enterprise's extended campaign of violent Tweets and threats of physical violence to D'Ambly came to fruition and his vehicle was "keyed" (scratched) and tires slashed while parked outside of his home on private property. An investigation report for a bias incident, criminal mischief, and harassment was filed with the South Brunswick Police Department.

40.    Plaintiff reported to work the following day on January 12, 2019, but was not informed of the death threats received the day before.

41.    On Sunday, January 13, 2019, at 10:16 a.m., five (5) days before D'Ambly's official termination date @AntiFashGordon Tweeted to four of his associates that he "got a pretty reliable tip this morning that he's not at the @NYDailyNews anymore…" in reference to Plaintiff.

42.    On Monday, January 14, 2019, the Daily News called D'Ambly and told him not to report to work until informed otherwise.

11

43. On January 16, 2019, during a phone conference with Brill, Nechvatal, and a Union representative, D'Ambly was played the recorded death threats and asked to identify the caller. D'Ambly was unable to identify the caller, but said it was the behavior of "Antifa types." Brill was scornful of D'Ambly's inability to identify the caller and blamed him for the threats. D'Ambly was terminated during this phone conference.

44. On January 23, 2019, Patrick LoPresti, President of Local One-L informed the Daily News that they were appealing D'Ambly's termination pursuant to terms of the Contract.

45. On or about January 25, 2019, D'Ambly received his "Termination of Employment" letter, , signed by Brill and dated January 22, 2019. The letter informed Plaintiff his termination was effective January 18, 2019. The termination letter is imbued with Brill's animus for D'Ambly. In the letter, Brill stated "your choice to take these repulsive actions has now put our workplace and employees at risk of counter attacks by Antifa."

46. The termination letter falsely stated the Daily News learned of the death threats on January 14, 2019, contrary to emails that confirm the Daily News learned of the threats on January 11, 2019.

47. In the termination letter, Brill claimed the death threats received on January 11, 2019, were the "cause" of D'Ambly's termination, because the death threats meant D'Ambly "brought his activities" into the workplace, therefore, "we deem your actions to be work related and are terminating your employment for cause."

48. At some point after January 23, 2019, the Union on behalf of D'Ambly filed a grievance with the American Arbitration Association, case number 01-19-0000-7178. The Union retained attorneys Thomas Kennedy ("Kennedy") and Kate M. Swearengen

12

("Swearengen") of Cohen, Weiss, and Simon, LLP (collectively Kennedy, Swearengen and Cohen. Weiss and Simon, LLP shall be referred to as "CWS") to represent Plaintiff.

49.     Thereafter, D'Ambly had a phone conference with Kennedy to discuss the case. D'Ambly was acquainted with Kennedy for approximately twenty years due to his Union activities. D'Ambly explained the threats he received, property damage, and that his tires were slashed. D'Ambly stated "Tom, this Antifa are terrorists…" Kennedy angrily responded, "I do not consider Antifa to be terrorists and if you are going to continue referring to them (Antifa) as terrorists we are going to end this call." Kennedy scoffed at D'Ambly's desire to have his employment reinstated at the Daily News.

50.     At some point thereafter, D'Ambly had his first case discussion phone conference with Kate Swearengen, who assumed representation. Without prompting, Swearengen explicitly informed D'Ambly that "she doesn't agree with his politics and she doesn't want to discuss them any further." Like Kennedy, Swearengen dismissed D'Ambly's wish to have his employment reinstated.

51.     Kennedy and Swearengen's revulsion of D'Ambly directed their representation and they failed to adequately research basic facts favorable to D'Ambly's wish to be reinstated. CWS ignored Brill's misrepresentation and veracity of the claimed "cause" of their client's termination.

52.     CWS failed to adequately investigate the sources of the doxing campaign. Had CWS engaged in reasonable investigation of the source of the dox they would have discovered @AntiFashGordon's January 13, 2019, announcement that D'Ambly was terminated, which was one day before the Daily News claimed they learned of the "cause" of D'Ambly's termination.

13

53.     On or about July 15, 2019, D'Ambly dejectedly executed the "Separation Agreement and Mutual General Release" negotiated by CWS that paid him a lump sum payment in exchange the Union would withdraw the pending arbitration case with prejudice.

54.     As a result of Defendants' misconduct D'Ambly has suffered substantial personal and property damage and been severely financially harmed.

<div align="center">

### CLAIMS FOR RELIEF

### COUNT I

**Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to – 49
(as to Defendants Tribune Publishing Company and the New York Daily News)**

</div>

55.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 54 with the same force and effect as if set forth in detail herein again.

56.     Defendants Tribune and Daily News are employers as defined in N.J.S.A. 10:5-5.

57.     Plaintiff is older than forty years (40) old and was an employee as defined in N.J.S.A. 10:5-5.

58.     Defendants Tribune and Daily News discharged D'Ambly due to their enmity towards his racially identifiable associations, whereas non-white Tribune and Daily News employees who participate in racially identifiable associations are not punished or terminated, violated N.J.S.A. 10:5-12.

59.     Defendants Tribune and Daily News undertook several pre-textual steps to mask D'Ambly's discriminatory termination:

    a.   Tribune hired a private investigation firm to invade D'Ambly's privacy in an unsuccessful effort to catch D'Ambly engaged in unlawful activity.

<div align="center">14</div>

b. In the morning of January 11, 2019, the Daily News received death threats intended to extort D'Ambly's termination that they did not immediately disclose, because they intended to use the threats pre-textually as the "cause" of Plaintiff's termination.

c. In the afternoon of January 11, 2019, the Daily News issued D'Ambly a "Last and Final Warning," that warned him he would be immediately terminated if it were discovered he brought his political activities into the workplace, but they did not inform or warn D'Ambly of the death threats earlier received.

d. D'Ambly was informed he was terminated on January 16, 2019.

e. Subsequently, D'Ambly received a "Termination of Employment" letter dated January 22, 2019, whereby, the Daily News falsely stated they discovered the death threats on January 14, 2019, contrary to indisputable evidence they received the death threats on January 11, 2019, which meant he "brought his activities into the workplace" after he was warned. Daily News cited this fabrication as the "cause" of D'Ambly's termination.

60.     As a direct and proximate result of defendants Tribune Publishing Company and the New York Daily News racially discriminatory termination, D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

<u>COUNT II</u>

**Tortious Interference with Prospective Economic Benefit**

**(as to defendant Christian Exoo a/k/a "AntiFashGordon")**

15

61.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 60 with the same force and effect as if set forth in detail herein again.

62.     D'Ambly was rightfully entitled to pursue lawful employment with the Daily News as a plate maker and dues paying member of the Union.

63.     D'Ambly reasonably expected his employment to continue into the future and to benefit economically from his employment.

64.     Defendant Exoo knew D'Ambly was employed by the Daily News and intentionally interfered with D'Ambly's prospective economic benefits to be gained from continued employment.

65.     Defendant Exoo intentionally and unjustifiably interfered with D'Ambly's rights to pursue a lawful business.

66.     Defendant Exoo's interference caused D'Ambly's employer to terminate his employment.

67.     D'Ambly has suffered and will continue to suffer irreparable harm in the form of damage to his reputation, loss of income and financial hardship as a result of Exoo's interference.

68.     As a direct and proximate result of defendant Exoo's interference with D'Ambly's prospective economic benefits, D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

<u>COUNT III</u>

16

### Intrusion Upon Seclusion – Public Disclosure of Private Personal Information

### (as to defendant Christian Exoo a/k/a "AntiFashGordon")

69.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 68 with the same force and effect as if set forth in detail herein again.

70.     In directing and carrying out a sustained effort to embarrass, defame and publicize private facts, including D'Ambly's home address and familial relations without his consent, Defendant Exoo intentionally intruded upon the D'Ambly's solitude and seclusion.

71.     By conducting a sustained effort to embarrass, defame and publicize private facts without the consent of the D'Ambly, including D'Ambly's home address and familial relations, defendants intentionally intruded upon the D'Ambly's solitude and seclusion.

72.     Defendant Exoo intentionally intruded on D'Ambly's solitude and seclusion in a manner that is highly offensive to a reasonable person.

73.     D'Ambly did not consent to Defendants intrusion.

74.     As a direct and proximate result of defendant Exoo's intrusion upon his seclusion, D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

### COUNT IV

### Violation of N.J.S.A. 2C:33-4.1 and N.J.S.A. 2C:30-31(a) Cyber-Harassment and Stalking

### (as to defendant Christian Exoo a/k/a "AntiFashGordon")

75.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 74 with the same force and effect as if set forth in detail herein again.

76.    Defendant Exoo encouraged and incited others to violence against D'Ambly and conducted an ongoing campaign that intruded D'Ambly's life.

77.    Defendant Exoo intentionally and knowingly sent, commented, and posted D'Ambly's private and involuntarily disclosed personal information to social media networking sites to purposely harass, intimidate, and threaten D'Ambly.

78.    By encouraging others to inflict physical harm to D'Ambly's person and property.

79.    By encouraging others to commit crimes against D'Ambly that resulted in D'Ambly receiving death threats and sustaining physical damage to his personal property

80.    As a direct and proximate result of Defendant Exoo's cyber-harassment and stalking D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT V

### Violation of 18 U.S.C. § 875(c) – Interstate Communications

### (as to defendant Christian Exoo a/k/a "AntiFashGordon")

81.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 80 with the same force and effect as if set forth in detail herein again.

82.     By using an interactive computer service to intentionally transmit threats of physical violence to Plaintiff via interstate communications.

83.     By directing an enterprise that is engaged in an interstate campaign of violent threats to Plaintiff for the purpose of injuring and endangering D'Ambly's personal safety.

84.     By directing associates to "stay on top of this, too.  If you don't hear back from @NYDailyNews, keep tweeting at them" Exoo transmitted threats in interstate commerce.

85.     By explicitly threatening D'Ambly via an interactive computer service, by Tweeting "Regardless, I'm gonna spend the next week wrecking your fucking life, Dan D'Ambly" Exoo transmitted threats in interstate commerce.

86.     As a direct and proximate result of defendant Exoo's use of interstate communications to threaten and harm D'Ambly he suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

<u>COUNT VI</u>

**Violation of 18 U.S.C. 2261A(2) –Stalking**

**(as to defendant Christian Exoo a/k/a "AntiFashGordon")**

87.     Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 86 with the same force and effect as if set forth in detail herein again.

88.     Beginning in or about January 2018, Defendant Exoo used an interactive computer service to surveil and stalk D'Ambly with the intent to harass, intimidate, threaten, and injure D'Ambly.

89.   As a result of stalking D'Ambly, Defendant discovered D'Ambly's true personal identity and then disseminated the information using an interactive computer service with instructions to associates to harass, intimidate, and endanger D'Ambly's personal safety.

90.   Defendant Exoo used an interactive computer service to direct others to harass, intimidate, and threaten others in order to extort D'Ambly's termination from lawful employment.

91.   Defendant Exoo's conduct caused D'Ambly to reasonably fear for the safety of himself and his family, and caused him to suffer severe emotional and financial distress.

92.   As a direct and proximate result of defendant Exoo's stalking in violation of 18 U.S.C. § 2261A(2) D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

<u>COUNT VII</u>

Employer's Breach of its Duty to Warn

(as to Defendants Tribune Publishing Company and the New York Daily News)

93.   Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 92 with the same force and effect as if set forth in detail herein again.

94.   Defendants Tribune and Daily News received a stream of death threats directed at Plaintiff over a two and one-half month period, but they never warned D'Ambly.

95.   Defendants Tribune and Daily News never warned D'Ambly to take precautionary measures as he entered or exited the workplace.

96.     Defendants Tribune and Daily News did not take steps to increase the safety of D'Ambly and other employees as they entered and exited the workplace.

97.     Defendants Tribune and Daily News did not secure the workplace in order to protect D'Ambly and others.

98.     As he was not aware of the threats, D'Ambly could not take steps to protect himself and his property and as a result his property was damaged on January 11, 2019.

99.     Defendants Tribune and Daily News had a duty to warn their employee he was the direct target of the death threats they received.

100.    As a direct and proximate result of defendants Tribune and Daily News' failure to warn D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT VIII

### Violations of N.J.S.A 2C:41-1 to – 2C:41-6.2 (Racketeering)

### (as to defendant Christian Exoo a/k/a "AntiFashGordon," St. Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")

101.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 100 with the same force and effect as if set forth in detail herein again.

102.    The "Exoo Enterprise" is directed by defendant Christian Exoo a/k/a "AntiFashGordon," and consists of associates St. Lawrence University, including their employees and agents, Vijaya Gadde, and Twitter, Inc., including their employees and agents, and unknown associates.

21

103.    Defendant Exoo used an interactive computer service to direct the Exoo Enterprise's patterns of racketeering activities as defined by N.J.S.A. 2C:41(a)(1) to extort D'Ambly's termination from the Daily News.

   a.   The Exoo Enterprise threatened the Daily News via Tweets and phone calls and related activities prohibited by N.J.S.A. 2C:41-2.

   b.   Exoo Enterprise committed multiple prohibited by N.J.S.A. 2C:41(a)(1)(h).

   c.   Exoo Enterprise committed multiple prohibited by N.J.S.A. 2C:41(a)(1)(bb)

104.    As a direct result of the Exoo Enterprises patterns of racketeering activities, D'Ambly was terminated from his employment.

105.    As a direct and proximate result of Defendants' patterns of racketeering activities D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT IX

### Violations of 18 U.S.C. §§ 1962(c) – Racketeering

### Multiple violations of RICO predicates 18 U.S.C. §§ 1951 and 1952

### (as to defendant Christian Exoo a/k/a "AntiFashGordon," St. Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")

106.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 105 with the same force and effect as if set forth in detail herein again.

107.    Each of the individuals and entities is a "person" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

108.    The Exoo Enterprise is an enterprise within the meaning of 18 U.S.C. 1961(4), directed by defendant Christian Exoo a/k/a "AntiFashGordon," and consisting of St. Lawrence University, including their employees and agents, Vijaya Gadde, and Twitter, Inc., including their employees and agents, and unknown associates.  The Exoo Enterprise was created to dox fascists and white supremacists in order to use the doxed information to conduct patterns of racketeering activities to threaten violence, intimidate, harass, and extort others to achieve the enterprises mission of causing employment terminations, educational expulsions, physical injury, and personal harm to the persons doxed.  The Exoo Enterprise functions as an organization and continuing unit to effectuate patterns of racketeering activity.

109.    Upon information and belief, multiple generations of Exoo's family are or were employed by St. Lawrence University.  Exoo's activities are well known to St. Lawrence faculty and administrators, who allow Exoo to direct the enterprise from St. Lawrence property, from his place of employment, during his normal work hours using St. Lawrence equipment and information technology.  St. Lawrence consents to Exoo's use of St. Lawrence property to direct the enterprise, and participates in the Exoo Enterprise, because they believe the patterns of racketeering activities helps St. Lawrence's achieve their global mission.

110.    Defendant Exoo uses his employment, teaching, and lecturing at St. Lawrence with the consent and approval of St. Lawrence to recruit students to join the Exoo Enterprise as associates.  In concert with other associates, the Exoo Enterprise, directed by defendant Exoo

23

created and maintained systematic links for the common purpose of doxing targeted fascists and white supremacists, and then threaten, harass, and extort others to cause harm to their targets.

111.    At all times relevant, Gadde was the only Twitter employee authorized to permanently ban Twitter users.[7]

112.    Defendant Exoo is and was well known to Gadde and Twitter, because Gadde and Twitter have twice before permanently banned Exoo due to habitual doxing.

113.    Gadde and Twitter agreed to associate with the Exoo Enterprise when they breached their own TOS to conspire with a recidivist ban evader, and permitted the enterprise leader to create ban evasion account "@AntiFashGordon," which Gadde and Twitter knew was purposely created to dox unsuspecting persons, in order to direct associates in patterns of racketeering activities.

114.    Gadde and Twitter associate and participate in the Exoo Enterprise's patterns of racketeering, by virtue of their affirmative decision to allow Exoo, a three-time ban evader and known habitual doxer, create a ban evasion account in direct contradiction of their TOS and enforcement rules, through which, the Exoo Enterprise conducts its patterns of racketeering.

115.    Upon information and belief Gadde and Twitter have received hundreds and likely thousands of complaints directly to their individual Twitter accounts and through Twitter's

---

[7] *Meet Vijaya Gadde, an Indian-born Twitter head who decides on blocking tweets, users*, The Economic Times, (Jan. 16, 2020) https://economictimes.indiatimes.com/tech/internet/meet-vijaya-gadde-an-indian-born-twitter-head-who-decides-on-blocking-tweets/articleshow/73281445.cms, last accessed September 12, 2020.  See also, *Twitter's Top Lawyer Is Final Word On Blocking Tweets – Even Donald Trump's,* Bloomberg.com,(Jan. 15, 2020) https://www.bloomberg.com/news/articles/2020-01-15/twitter-s-gadde-is-final-word-on-blocking-tweets-even-trump-s, last accessed September 12, 2020; *Meet Twitter's top lawyer, who has the final word on blocking tweets – including Donald Trump's,* Fortune.com, (Jan. 15, 2020) https://fortune.com/2020/01/15/twitter-top-lawyer-vijaya-gadde-blocks-tweets-donald-trump/, last accessed September 12, 2020.

24

TSC regarding the Exoo Enterprise's doxing. But Gadde and Twitter choose to ignore the avalanche of doxing and abusive behavior complaints and refuse to enforce their own policies in order to facilitate the patterns of racketeering activities directed by known ban evasion account, @AntiFashGordon.

116.    Gadde personally participates in, and benefits from the Exoo Enterprise's patterns of racketeering activities, because she has publicly stated her personal disdain for fascists and white supremacists, and she is "very, very focused on that…the KKK, the American Nazi Party," because that "was what my parents had to deal with" where she grew up on the Texas-Louisiana border.[8] Gadde participates in the Exoo Enterprise, because of an Oresteian desire to avenge her parents perceived mistreatment. Gadde and Twitter are the lynchpin of the Exoo Enterprise. Without Gadde and Twitter's consent and participation, the Exoo Enterprise could not conduct its patterns of racketeering activities.

117.    Twitter benefits economically from the Exoo Enterprise's patterns of racketeering activities, because @AntiFashGordon has an extremely large Twitter following, one of the largest follower bases of all Twitter users, and the account drives a tremendous amount of internet traffic to Twitter, which potentially increases Twitter's ad revenue.

118.    Twitter benefits socially from the Exoo Enterprise's patterns of racketeering activities because the Exoo Enterprise's doxing of fascists and white supremacists imparts a social benefit on Twitter as it is seen as a defender of "marginalized communities" and provides cover for their stated business goal of creating what Twitter describes as "safer" conversations.

---

[8] *Twitter's Kayvon Beykpour and Vijaya Gadde: the Code Conference interview (transcript)*, Vox.com (June 27, 2019) https://www.vox.com/recode/2019/6/27/18760444/twitter-kayvon-beykpour-vijaya-gadde-kara-swisher-peter-kafka-code-conference-interview-transcript, last accessed September 12, 2020.

25

119.     The Exoo Enterprise engages in and affects interstate commerce, because, *inter alia,* it threatens violence to persons and property of others throughout the United States in furtherance of a plan that reaches into the several states to disrupt economic activity. The Exoo Enterprise has caused severe economic hardship to targeted persons, such as D'Ambly and negatively impacted local economies throughout the United States.

120.     Pursuant to and in furtherance of their violent doxing campaign, Defendants directed and participated in the affairs of the Exoo Enterprise through patterns of racketeering activity, including multiple acts indictable under 18 U.S.C. §§ 1951 (Interference with commerce by threats or violence) and 1952 (use of interstate facilities to conduct unlawful activity).

121.     The conduct of the Exoo Enterprise described above constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Defendants' decisions and activity in connection with the Exoo Enterprise to routinely conduct its transactions in such a manner constitutes "patterns of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

122.     By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to D'Ambly for three times the damages sustained, plus the costs of this suit, including reasonable attorneys' fees.

123.     As a direct and proximate result of Defendants patterns of racketeering activity D'Ambly has suffered adverse consequences and continues to be damaged in an amount to be determined at trial, but which is in excess of $75,000.00.

124.     As a direct and proximate result of the Exoo Enterprise's patterns of racketeering activities D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs,

and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT X

### Violation of 18 U.S.C. § 1962(d) (Conspiracy)

**(as to defendant Christian Exoo a/k/a "AntiFashGordon," St. Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")**

125.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 124 with the same force and effect as if set forth in detail herein again.

126.    Section 1962(d) of RICO provides "shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section."

127.    Defendants have violated 18 U.S.C. § 1962(d) by conspiring to associate and participate in the Exoo Enterprise's patterns of racketeering activities as defined in 18 U.S.C. 1962(c).  The object of this conspiracy is to conduct, direct and participate in, directly or indirectly, the Exoo Enterprise's patterns of racketeering activity.

128.    Defendants have engaged in numerous overt and predicate racketeering acts in furtherance of the conspiracy, including threatening, intimidating, and extorting others to cause harm to their targets.

129.    The nature of the above-described acts of Defendants and co-conspirators acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. 1962(d) violation, but they were aware that their ongoing extortionate acts have been, and are part of an overall pattern of racketeering activity demonstrated through related and continuous acts.

27

130.    Defendants sought to and have engaged in the commission of, and continue to commit overt acts, including the following unlawful racketeering predicate acts:

    a.    Multiple instances of interference with commerce by threats of violence in violation of 18 U.S.C. § 1951; and

    b.    Multiple instances of use of interstate facilities to conduct unlawful activity violations of 18 U.S.C. § 1952.

131.    As a direct and proximate result of Defendants' multiple overt acts and predicate acts in furtherance of the Exoo Enterprise, in violation of 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. 1962(c), Plaintiff has been and continues to be injured by Defendants' conduct.

132.    By virtue of these violations of 18 U.S.C. § 1962(d), Defendants are liable to D'Ambly for three times the damages sustained, plus the costs of this suit, including reasonable attorneys' fees.

133.    As a direct and proximate result of Defendants patterns of racketeering activity D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XI

### Negligent Entrustment

### (as to defendants Vijaya Gadde and Twitter, Inc.)

134.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 133 with the same force and effect as if set forth in detail herein again.

135.    Defendant Exoo is a notorious and infamous doxer, who relies on Twitter to dox unsuspecting people and direct his enterprise.

136.    Due to habitual doxing and abusive behavior, Twitter has previously permanently banned two accounts controlled by defendant Exoo, @ChrisExoo and @ChristianExoo.

137.    Upon information and belief, Twitter received hundreds of complaints that defendant Exoo was habitually doxing under Twitter username @DoxSavage.

138.    In lieu of a third permanent ban Twitter agreed to allow defendant Exoo to undergo a name change from @DoxSavage to @AntifashGordon, contrary to Twitter's TOS.

139.    Subsequent to Twitter's agreement to allow defendant Exoo to change his Twitter username to @AntiFashGordon, Vijaya Gadde and Twitter's Safety Council have received numerous doxing complaints.

140.    Gadde was the only person at Twitter with authority to decide permanent bans and she knew Exoo is a habitual doxer, but she ignored that knowledge and agreed to allow him to change his username and continue doxing.

141.    Gadde recklessly ignored Twitter's TOS against ban evasion accounts and allowed Exoo to change his name from @DoxSavage to @AntiFashGordon, thereby, entrusting Exoo with the instrumentality to direct the Exoo Enterprise's patterns of racketeering activities.

142.    As a direct and proximate result of defendant Gadde and Twitter's negligent entrustment D'Ambly has suffered adverse consequences and continues to be damaged. D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XII

## Breach of Implied Covenant of Good Faith – Promissory Estoppel

### (as to defendants Vijaya Gadde and Twitter, Inc.)

143.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 142 with the same force and effect as if set forth in detail herein again.

144.    Defendant Twitter's TOS prohibit doxing and ban evasion accounts.

145.    Defendant Twitter created a Trust and Safety Council department to investigate violations of their TOS to remove abusive content and protect others from abusive behaviors of others.

146.    Twitter's created the Trust and Safety Council to prohibit abusive behavior by Twitter users and promised victims of abusive behavior would be protected.

147.    Gadde is the executive in charge of Twitter's Trust and Safety council, and the only person at Twitter with authority to allow Exoo to create a ban evasion account.

148.    Defendant Twitter allowed defendant Exoo to create a ban evasion account fully aware he was a habitual doxer, who used Twitter to harm others.

149.    Defendant Exoo as @AntiFashGordon doxed D'Ambly, threatened violence to D'Ambly and his employer to extort his termination.

150.    Gadde, Twitter Support and Twitter Trust and Safety received contemporaneous complaints that @AntiFashGordon doxed D'Ambly, but took no action.

151.    Twitter refused to protect Plaintiff from the Exoo Enterprise's abusive behavior and has not removed Plaintiff's doxed information or banned the Exoo Enterprise, who continues to abuse and habitually dox.

152.    Twitter assumed liability for the harm that flows from defendant Exoo's doxing when they neglected to remove D'Ambly's doxed information in violation of their TOS.

153.    As a direct and proximate result of defendant Gadde and Twitter's breach of their assumed duty to remove D'Ambly's doxed private information D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XIII

### Legal Malpractice

### (as to defendant Cohen, Weiss, and Simon, L.L.P.)

154.    Plaintiff repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 153 with the same force and effect as if set forth in detail herein again.

155.    As a result of their personal revulsion of D'Ambly and his political beliefs CWS failed to adequately represent and protect D'Ambly's rights.

156.    Defendant CWS neglected to perform necessary case research, legal research, and investigation of the accusations against D'Ambly.

157.    As a result of CWS's inadequate legal research and investigation they failed to protect D'Ambly from the extortionate and criminal conduct of others.

158.    As a result of CWS's failure to adequately investigate D'Ambly's doxing they failed to learn that @AntiFashGordon publicly announced D'Ambly's termination on January 13, 2019, which occurred five days before his official termination date, and one day before the purported "cause" of his termination was discovered.

159.    CWS failed to challenge Brill's blatant misrepresentations regarding the timing of the alleged 'cause' of D'Ambly's termination.

160.    CWS's revulsion of D'Ambly and his political beliefs caused them to ignore an obvious racially discriminatory pre-textual termination spotlighted by the private investigation, last and final warning, and falsely claimed cause of D'Ambly's termination.

161.    As a direct and proximate result of CWS's legal malpractice that flowed from their firmwide enmity of D'Ambly's political beliefs D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief as follows:

1.    Demands judgment against Defendants, jointly and severally, in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements, and for such relief as the Court deems just and proper.

2.    On Plaintiff's RICO claims: compensatory damages and enhancement of damages Plaintiff has sustained as a result of Defendants' conduct as may be permitted under the relevant statutes, such amount to be determined at trial, plus Plaintiff's costs in this suit, including reasonable attorneys' fees;

3.    On Plaintiff's tortious interference, legal malpractice, intrusion upon seclusion, stalking and harassment claims: compensatory and punitive damages in an amount to be determined at trial.

32

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

Dated:        September 21, 2020

<div style="margin-left: 40%;">

Respectfully Submitted,
LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC
*Attorney for Plaintiff*


Patrick Trainor
848 Paterson Avenue
East Rutherford, New Jersey 07073
(201) 777-3327
pt@ptesq.com

</div>

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| DANIEL D'AMBLY | CHRISTIAN EXOO a/k/a AntiFashGordon; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC., JOHN DOE 1-10 |

**(b)** County of Residence of First Listed Plaintiff    MIDDLESEX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
LAW OFFICE OF PATRICK TRAINOR
848 PATERSON AVENUE
EAST RUTHERFORD, NEW JERSEY 07073

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation – Transfer    ☐ 8 Multidistrict Litigation – Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1962, 18 U.S.C. § 1964

Brief description of cause:
Defendants committed multiple violations of 18 U.S.C. §§ 1951 and 1952

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE          DOCKET NUMBER

DATE
09/21/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIEL D'AMBLY,<br><br>               Plaintiff,<br><br>     v.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAY GADDE; TWITTER, INC.; COHEN, WEISS AND SIMON, LLP, | Case No. 2:20-cv-12880-JMV-JAD<br><br>Civil Action<br><br>**Consent Order Granting Motion for Extension in Which to File Answer or Otherwise Move** |

**THIS MATTER** being brought before the Court by the law firm of Giordano Halleran & Ciesla, P.C., attorneys for Defendants Cohen, Weiss and Simon, LLP ("CWP") with the consent and agreement of counsel for Plaintiff Daniel D'Ambly and for good cause having been shown;

**IT IS ON THIS** __23rd__ day of __October_____, 2020;

**ORDERED** that CWP is granted leave to file their Answer or Otherwise Move within (2) days of the filing of this Consent Order

**IT IS FURTHER ORDERED** that counsel for CWP shall forward a true copy of this Order to all counsel of record within _7_days hereof.


/s/ Joseph A. Dickson
_____
HON. JOSEPH A. DICKSON,
U.S. MAGISTRATE COURT JUDGE



I hereby consent to the form and entry of the within Order.


**GIORDANO, HALLERAN & CIESLA, P.C.**
Attorneys for Defendants Cohen, Weiss & Simon, LLP

BY:_____
    Michael J. Canning, Esq.        Dated: October 22, 2020




**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
Attorney for Plaintiff Daniel D'Ambly

BY:_____
    Patrick Trainor, Esq.          Dated: October 22, 2020


2

# EXHIBIT "C"

Michael J. Canning, Esq. (032541984)
**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900
Attorneys for Defendant, Cohen, Weiss and Simon LLP

<div align="center">

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

</div>

|  |  |
|---|---|
| DANIEL D'AMBLY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAY GADDE; TWITTER, INC.; COHEN, WEISS AND SIMON, LLP,<br><br>Defendants. | Case No. 2:20-cv-12880-JMV-JAD<br><br><br>Civil Action<br><br>**DEFENDANT COHEN, WEISS AND SIMON LLP'S ANSWER TO PLAINTIFF'S COMPLAINT, SEPARATE DEFENSES, CROSSCLAIM FOR CONTRIBUTION, CROSSCLAIM FOR INDEMNIFICATION, ANSWER TO CROSSCLAIMS, DEMAND FOR TRIAL BY JURY, DEMAND PURSUANT TO R. 4:18-2, DEMAND FOR ALLOCATION, DEMAND FOR STATEMENT OF DAMAGES, DESIGNATION OF TRIAL COUNSEL, CERTIFICATIONS** |

Defendant Cohen, Weiss and Simon LLP ("CWS" or "Defendant") by way of Answer to Plaintiff's Complaint hereby says as follows:

<div align="center">

**STATEMENT OF THE CASE**

</div>

1.    CWS makes no response to Plaintiff's Statement of the Case as the Statement does not relate to CWS.

<div align="center">

**THE PARTIES**

</div>

2.    CWS admits that Plaintiff was a member of Local One-L, Graphic Communications Conference of the International Brotherhood of Teamsters and was employed as a plate maker for

the New York Daily News in Jersey City, New Jersey until January 18, 2019, and otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of Plaintiff's Complaint.

4.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of Plaintiff's Complaint.

6.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of Plaintiff's Complaint.

7.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of Plaintiff's Complaint.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of Plaintiff's Complaint.

10.      CWS admits that it is a law firm with a principal place of business located at 900 3rd Avenue, #2100, New York, New York and neither admits nor denies the remaining allegations contained in paragraph 10 of Plaintiff's Complaint as it calls for a legal conclusion.

11.     CWS neither admits nor denies the allegations contained in paragraph 11 of Plaintiff's Complaint as it calls for a legal conclusion.

12.     CWS neither admits nor denies the allegations contained in paragraph 12 of Plaintiff's Complaint as it calls for a legal conclusion.

13.     CWS neither admits nor denies the allegations contained in paragraph 13 of Plaintiff's Complaint as it calls for a legal conclusion.

14.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of Plaintiff's Complaint.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of Plaintiff's Complaint.

16.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of Plaintiff's Complaint.

17.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of Plaintiff's Complaint.

18.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of Plaintiff's Complaint.

19.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of Plaintiff's Complaint.

21.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of Plaintiff's Complaint.

23.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of Plaintiff's Complaint.

24.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of Plaintiff's Complaint.

27.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of Plaintiff's Complaint.

28.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of Plaintiff's Complaint.

29.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of Plaintiff's Complaint.

30.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of Plaintiff's Complaint.

31.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of Plaintiff's Complaint.

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of Plaintiff's Complaint.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of Plaintiff's Complaint.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of Plaintiff's Complaint.

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of Plaintiff's Complaint.

36.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of Plaintiff's Complaint.

37.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of Plaintiff's Complaint.

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of Plaintiff's Complaint.

39.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of Plaintiff's Complaint.

40.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of Plaintiff's Complaint.

41.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of Plaintiff's Complaint.

43.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of Plaintiff's Complaint.

44.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of Plaintiff's Complaint.

46.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of Plaintiff's Complaint.

47.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of Plaintiff's Complaint.

48.     Defendant admits that a grievance was filed with the American Arbitration Association, Case Number 01-19-0000-7178, but denies the remaining allegations in paragraph 48 of Plaintiff's Complaint.

49.     Defendant denies the allegations contained in paragraph 49 of Plaintiff's Complaint.

50. Defendant admits that Kate Swearengen informed Plaintiff during a phone conversation that she did not agree with his politics and that she did not want to discuss them and Defendant denies the remaining allegations contained in paragraph 50 of Plaintiff's Complaint.

51. Defendant denies the allegations contained in paragraph 51 of Plaintiff's Complaint.

52. Defendant denies the allegations contained in paragraph 52 of Plaintiff's Complaint.

53. CWS admits that Plaintiff executed a "Separation Agreement and Mutual General Release" the terms of which speak for itself and denies the remaining allegations contained in paragraph 53 of Plaintiff's Complaint.

54. Defendant denies the allegations contained in paragraph 54 of Plaintiff's Complaint.

## **COUNT I**

55. Defendant repeats and realleges its responses to paragraphs 1 through 54 of Plaintiff's Complaint as if fully set forth herein.

56-60. CWS makes no response to the allegations in Count I of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count I of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT II

61.     Defendant repeats and realleges its responses to paragraphs 1 through 60 of Plaintiff's Complaint as if fully set forth herein.

62-68. CWS makes no response to the allegations in Count II of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count II of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT III

69.     Defendant repeats and realleges its responses to paragraphs 1 through 68 of Plaintiff's Complaint as if fully set forth herein.

70-74. CWS makes no response to the allegations in Count III of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count III of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT IV

75.     Defendant repeats and realleges its responses to paragraphs 1 through 74 of Plaintiff's Complaint as if fully set forth herein.

76-80.  CWS makes no response to the allegations in Count IV of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count IV of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT V

81.     Defendant repeats and realleges its responses to paragraphs 1 through 80 of Plaintiff's Complaint as if fully set forth herein.

82-86.  CWS makes no response to the allegations in Count V of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count V of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## **COUNT VI**

87.     Defendant repeats and realleges its responses to paragraphs 1 through 86 of Plaintiff's Complaint as if fully set forth herein.

88-92.  CWS makes no response to the allegations in Count VI of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count VI of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## **COUNT VII**

93.     Defendant repeats and realleges its responses to paragraphs 1 through 92 of Plaintiff's Complaint as if fully set forth herein.

94-100.     CWS makes no response to the allegations in Count VII of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count VII of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## **COUNT VIII**

101.    Defendant repeats and realleges its responses to paragraphs 1 through 100 of Plaintiff's Complaint as if fully set forth herein.

102-105.    CWS makes no response to the allegations in Count VIII of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count VIII of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## **COUNT IX**

106.    Defendant repeats and realleges its responses to paragraphs 1 through 105 of Plaintiff's Complaint as if fully set forth herein.

107-124.    CWS makes no response to the allegations in Count IX of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count IX of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT X

125.    Defendant repeats and realleges its responses to paragraphs 1 through 124 of Plaintiff's Complaint as if fully set forth herein.

126-133.    CWS makes no response to the allegations in Count X of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count X of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT XI

134.    Defendant repeats and realleges its responses to paragraphs 1 through 133 of Plaintiff's Complaint as if fully set forth herein.

135-142.    CWS makes no response to the allegations in Count XI of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count XI of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT XII

143.     Defendant repeats and realleges its responses to paragraphs 1 through 142 of Plaintiff's Complaint as if fully set forth herein.

144-153.     CWS makes no response to the allegations in Count XII of Plaintiff's Complaint as the allegations do not pertain to CWS and CWS is without information sufficient to form a belief as to the truth of the allegations contained in Count XII of Plaintiff's Complaint and leaves Plaintiff to his proofs.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## COUNT XIII

154.     Defendant repeats and realleges its responses to paragraphs 1 through 153 of Plaintiff's Complaint as if fully set forth herein.

155.     Defendant denies the allegations contained in paragraph 155 of Plaintiff's Complaint.

156.     Defendant denies the allegations contained in paragraph 156 of Plaintiff's Complaint.

157.     Defendant denies the allegations contained in paragraph 157 of Plaintiff's Complaint.

158.     Defendant denies the allegations contained in paragraph 158 of Plaintiff's Complaint.

159.    Defendant denies the allegations contained in paragraph 159 of Plaintiff's Complaint.

160.    Defendant denies the allegations contained in paragraph 160 of Plaintiff's Complaint.

161.    Defendant denies the allegations contained in paragraph 161 of Plaintiff's Complaint.

WHEREFORE, Defendant demands judgment dismissing Plaintiff's Complaint and denying any request for attorney's fees and costs of suit, and such other relief as the Court deems fair, equitable and just.

## SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

Plaintiff's Complaint herein fails to state a claim upon which relief can be granted and Defendant CWS reserves the right to move at or before the time of trial to dismiss same.

### SECOND SEPARATE DEFENSE

Plaintiff is estopped from proceeding with this alleged cause of action.

### THIRD SEPARATE DEFENSE

Plaintiff has waived his right to bring this suit of action against Defendant CWS.

### FOURTH SEPARATE DEFENSE

Plaintiff's action is barred by the doctrine of unclean hands.

## FIFTH SEPARATE DEFENSE

Insofar as Plaintiff's Complaint herein seeks damages against Defendant CWS, the Complaint must be dismissed in that Plaintiff sustained no damage.

## SIXTH SEPARATE DEFENSE

Plaintiff has executed a valid and binding release by the terms, effect and operation of which Plaintiff has released Defendant CWS from liability to Plaintiff for the incident and damages complained of.

## SEVENTH SEPARATE DEFENSE

There was no privity between the Plaintiff and Defendant CWS.

## EIGHTH SEPARATE DEFENSE

Any and all injuries and damages sustained were the result of a third party over whom Defendant CWS had no control.

## NINTH SEPARATE DEFENSE

Demand and claim for contribution under the terms and conditions of the Joint Tortfeasors Contribution Act (N.J.S.A. 2A:53A-1, *et seq.*) is made against all Co-defendants in this matter.

## TENTH SEPARATE DEFENSE

Plaintiff has executed a valid and binding release by the terms, effect and operation of which Plaintiff has released Defendant CWS from liability to Plaintiff for the incident and damages complained of.

### ELEVENTH SEPARATE DEFENSE

Plaintiff's injuries are a result of his own intentional, wanton and malicious acts. Thus, Plaintiff is barred from recovery.

### TWELFTH SEPARATE DEFENSE

Defendant CWS is entitled to a determination of the percentage shares of responsibility of all tortfeasors whose fault contributed to the claimed injuries and damages, as the obligation, if any, of Defendant CWS to respond in damages should not exceed its percentage share.

### THIRTEENTH SEPARATE DEFENSE

Defendant CWS acted on reasonable grounds and without malice, and, therefore, is not responsible to Plaintiff for any alleged damages.

### FOURTEENTH SEPARATE DEFENSE

Defendant CWS acted in accordance with accepted standards of care and Plaintiff's Complaint must be dismissed.

### FIFTEENTH SEPARATE DEFENSE

Defendant CWS owed no legal duty to Plaintiff.

### SIXTEENTH SEPARATE DEFENSE

Defendant CWS breached no duty owed to Plaintiff.

### SEVENTEENTH SEPARATE DEFENSE

Any action of Defendant CWS was not the proximate cause of any harm or loss to Plaintiff.

## EIGHTEENTH SEPARATE DEFENSE

Any damage sustained by Plaintiff was as a result of the actions of Plaintiff for which Defendant CWS is not liable.

## NINETEENTHSEPARATE DEFENSE

As there was no attorney client relationship between CWS and Plaintiff, CWS owed no legal duty to Plaintiff.

## TWENTIETH SEPARATE DEFENSE

Plaintiff's Complaint is frivolous and filed in bad faith and CWS adopts and incorporates its September 30, 2020 letter and is entitled to recover its legal fees in defending this frivolous action.

## CROSSCLAIM FOR CONTRIBUTION

Defendant CWS denies liability with respect to Plaintiff's claims.  However, if Defendant CWS is adjudged liable, then Defendant CWS demands contribution from all Co-Defendants, pursuant to the provisions of New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A.

## CROSSCLAIM FOR INDEMNIFICATION

Defendant CWS denies any liability with respect to Plaintiff's claims.  However, if Defendant CWS is adjudged liable to Plaintiff, Defendant CWS demands equal indemnification from the Co-Defendants.

## ANSWER TO CROSSCLAIM

Defendant CWS, by way of answer to any and all Crossclaim which may be asserted against Defendant CWS, says:

Defendant CWS denies the allegations of any Crossclaims asserted by Co-Defendants and Co-Defendants are not entitled to the relief sought.

WHEREFORE, Defendant CWS demands judgment dismissing any crossclaim plus costs.

## DEMAND FOR TRIAL BY JURY

**PLEASE TAKE NOTICE**, that Defendant CWS demands a trial of the issues by a jury of six.

## DEMAND FOR ALLOCATION PURSUANT TO R. 4:7-5(c)

If any Co-Defendant settles prior to trial, answering Defendant CWS will seek an allocation of the percentage of negligence by the fact finder against the settling Defendant. We will seek this allocation, whether or not we have formally filed a Crossclaim against the settling Defendant. We may rely upon the examination and cross-examination of expert witnesses at the time of trial, in support of this allocation. You are being apprised of this pursuant to R. 4:7-5(c) and Young v. Latta, 123 N.J. 584 (1991).

## DEMAND FOR STATEMENT OF DAMAGES

Please take notice that Defendant CWS demands that Plaintiff furnish a statement of damages claimed within the time proscribed by the Rules of Court.

## DESIGNATION OF TRIAL COUNSEL

Michael J. Canning, Esq. is hereby designated as trial counsel.

## CERTIFICATION

I hereby certify that true copies of the within pleading were timely served upon the attorneys of record in this action and who have appeared *pro se*.

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned herby certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding, and no other action or arbitration proceeding is contemplated. The undersigned hereby certifies that he knows of no other parties who should be joined in the action at this time.

GIORDANO HALLERAN & CIESLA, P.C.
Attorneys for Defendant, Cohen, Weiss and Simon LLP

By: _____
MICHAEL J. CANNING

Dated: October 22, 2020

Docs #4643915-v1