Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
pt@ptesq.com
*Attorney for Plaintiff Daniel D'Ambly.*

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100,<br><br>　　　　　Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>CIVIL ACTION NO.:  2:20-cv-12880<br><br>*(ELECTRONICALLY FILED)* |

---

**PLAINTIFF DANIEL D'AMBLY'S BRIEF IN SUPPORT OF HIS OPPOSITION TO DEFENDANT ST. LAWRENCE UNIVERITY'S MOTION TO DISMISS**

---

**Motion Day: December 7, 2020**

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Table of Authorities ................................................................................ | ii |
| II. | Introduction ............................................................................................ | 2 |
| III. | Motion to Dismiss Standard of Review .................................................. | 3 |
| IV. | Argument ................................................................................................ | 5 |

1. The District Court Has Jurisdiction Over This Matter: (1) The District Court Has Personal And Specific Jurisdiction Over Co-Defendant Exoo Because He Directed Pervasive And Continuous Threats Into New Jersey; (2) District Courts Have Subject Matter Jurisdiction Over Federal Rico Complaints; (3) *Section 1965(B)* Provides Statutory Personal Jurisdiction Over Defendants And "Other Parties" And (4) STL Is an "Other Party" As Described In *Section 1965(B)* Because They Aid and Abet The Enterprise ........... 5

   a. The District Court Has Personal and Specific Jurisdiction Over STL Because the Enterprise's Pervasive and Targeted Threats Into New Jersey Satisfies Minimum Contacts ............. 5

   b. *Section 1965(B)* Of the Federal Rico Statute Specifically Provides the District Court Personal Jurisdiction Over STL .... 9

   c. The District Court Has Statutory Personal Jurisdiction Over STL Because They Violated *Section 1962(D)* By Aiding and Abetting the Enterprise's Patterns of Racketeering Activities Directed Into New Jersey .......................................................... 10

   d. The Enterprise's Duration and Structure .................................. 13

| | | |
|---|---|---|
| V. | Conclusion ............................................................................................. | 15 |

# **TABLE OF AUTHORITIES**

| **Cases** | **Page(s)** |
|---|---|
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 3 |
| *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) | 4 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 4 |
| *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) | 4 |
| *Swistock v. Jones*, 884 F.2d 755 (3d Cir. 1989) | 4 |
| *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) | 5 |
| *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) | 5 |
| *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d. Cir. 2004) | 5, 10 |
| *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998) | 7 |
| *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d. Cir. 2007) | 7, 8 |
| *Calder v. Jones*, 465 U.S. 783 (1984) | 7, 8 |
| *Remick v. Manfredy*, 238 F.3d 248 (3d. Cir. 2001) | 7 |
| *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993) | 7 |
| *Beckwith v. Bethlehem Steel Corp.*, 182 N.J. Super. 376 (N.J. Super. Ct. Law Div. 1981) | 8 |
| *General Elec. Co. v. Deutz AG*, 270 F.3d 144 (3d. Cir. 2001) | 9 |
| *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d Cir. 2020) | 9, 10 |
| *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002) | 10 |
| *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) | 10 |
| *Boyle v. United States*, 556 U.S. 938 (2009) | 10, 14 |
| *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267 (3d Cir. 1985) | 11, 12 |
| *United States v. Turkette*, 452 U.S. 573, 586-587 (1984 | 11 |
| *Petro-tech Inc. v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987) | 11 |
| *Banks v. Wolk*, 918 F.2d 418 (3d Cir., 1990) | 11 |
| *United States v. Adams*, 759 F.2d 1099 (3d Cir. 1985) | 11 |
| *United States v. Dixon,* 658 F.2d 181 (3d Cir. 1981) | 11 |

*Doe v. XYC Corp.*, 382 N.J. Super. 122 (App. Div. 2005) ........................................ 11

*State v. Ball*, 141 N.J. 142 (1995) ................................................................................ 13

**Statutes**

18 U.S.C. §§ 1961-1968 ("RICO") .............................................................................. *passim*

18 U.S.C. § 1965(b) ..................................................................................................... 5, 9

18 U.S.C. § 1962(d) ..................................................................................................... 10

18 U.S.C. § 1951 .......................................................................................................... 10

18 U.S.C. § 1952 .......................................................................................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .................................................................... 2

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 2, 3

Federal Rule of Civil Procedure 8(a)(2) ...................................................................... 3

Plaintiff Daniel D'Ambly (Hereinafter "Plaintiff" or "D'Ambly") submits this Brief in opposition to Defendant St. Lawrence University's ("STL") motions to dismiss for an alleged lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons that follow, STL's motions should be denied.

## INTRODUCTION

This action was brought because STL aids and abets an Enterprise that conducts pervasive online violent patterns of racketeering activities that brought real world violence and harm to D'Ambly. Beginning as early as 2016, STL's co-Defendant Christian Exoo ("Exoo") has directed an enterprise ("Exoo Enterprise" or "Enterprise") through a series of permanently banned Twitter accounts that engages in patterns of racketeering activities. The common purpose among Enterprise associates is to "dox" alleged fascists and white supremacists in order to cause them harm by extorting employment terminations, school expulsions, and force their exit from society. Exoo doxed D'Ambly on October 29, 2018, and thereafter directed Enterprise associates to harass, intimidate, and violently threaten D'Ambly, his employer, and labor union to extort his termination. The Enterprise's violent doxing campaign was successful. D'Ambly was terminated on January 18, 2019.

STL aids and abets the Enterprise directed by longtime STL library employee and lecturer, co-defendant Exoo, because STL agrees with the Enterprise's purpose of doxing fascists and white supremacists. STL allows Exoo to use their technological property to direct the enterprise's patterns of racketeering activities, communicate with Enterprise associates, and by allowing Exoo to teach his doxing methods on STL's campus to STL students, Exoo has access to recruit new associates. STL is aware of Exoo's activities and ignored pleas for help from

Enterprise victims who have submitted hundreds of complaints to STL through multiple channels, but STL's leadership has refused to stop Exoo.

In their motions to dismiss, STL makes three arguments. STL argues they are not subject to jurisdiction in New Jersey, because their campus is located in New York. Second, the Complaint failed to state a plausible claim for relief under federal Racketeering Influenced Corrupt Organization ("RICO") *18 U.S.C. §§ 1961-1968*, and lastly, the Complaint did not adequately allege a violation of New Jersey's RICO statute.

STL's arguments are without merit. The Enterprise directed a continuous stream of online threats and extortion into the forum that harmed persons in the forum providing the District Court the ability to properly exercise jurisdiction over STL. The federal RICO statute provides the District Court with statutory personal jurisdiction over all RICO defendants. STL seeks a heightened plea requirement that lacks statutory or case law support, and incorrectly argues that the operational duration of a RICO enterprise is judged by the period of time each individual Enterprise victim is victimized, instead of the aggregate time period the Enterprise has conducted its patterns of racketeering activities. This is a case where STL's complicity with the Enterprise's patterns of racketeering activities brought violence to D'Ambly's home. As the District Court is tragically aware irrational online behavior rapidly metastasizes into real world violence when reasonable people do nothing, but for reasons unknown, STL irrationally aids and abets the Enterprise's violent patterns of racketeering activities.

I. **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER FED. R. CIV. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. When reviewing a motion to dismiss, the court must construe the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Twombly*, the Supreme Court set forth the plausibility standard for overcoming a motion to dismiss. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The Supreme Court's *Twombly* formulation of the pleading standard "can be summed up thus stating…a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). This standard "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. In RICO actions "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery. *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

The Complaint plead more than bare-bones allegations and formulaic recitation of the elements and plead enough facts to state a claim for relief and provided STL more than fair

4

notice of the claims against them.  The Complaint included dates and times when specific racketeering activities occurred and identified at least one co-defendant.

## II. ARGUMENT

1. **The District Court Has Jurisdiction Over This Matter: (1) the District Court has Personal and Specific Jurisdiction over Co-Defendant Exoo Because he Directed Pervasive and Continuous Threats Into New Jersey; (2) District Courts have Subject Matter Jurisdiction over Federal RICO Complaints; (3)** *Section 1965(b)* **Provides Statutory Personal Jurisdiction Over Defendants and "Other Parties;" and (4) STL is an "Other Party" as Described in** *Section 1965(b)* **Because They Aided and Abetted the Enterprise**

    a. **The District Court Has Personal and Specific Jurisdiction Over STL Because the Enterprise's Pervasive and Targeted Threats Directed into New Jersey Satisfies Minimum Contacts**

The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given to them" and "only the clearest of justifications will warrant dismissal."  *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976).  A plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d. Cir. 2004).

STL incorrectly argued the Complaint did not allege sufficient facts to show "any of these defendants has contacts with New Jersey that relate to the cause of action" to enable the Court to exercise personal jurisdiction.  Defendant STL's Brief in Support of its Motion to Dismiss at 10 ("Def. STL MTD").  To the contrary, the Complaint cited several specific dates when co-defendant Exoo deliberately targeted and directed the Enterprise's violent threats into New Jersey at D'Ambly and other persons to extort D'Ambly's termination from his New Jersey

5

based that enables the District Court to properly exercise personal jurisdiction. The Complaint cited the following dates:

1. On October 28, 2018, Exoo doxed D'Ambly's private and personal information including his New Jersey work address and hometown and thereafter directed the Enterprise to harass, intimidate, and threaten D'Ambly, his New Jersey based employer, and labor union. Compl. ¶ 24-25.

2. Enterprise associates immediately complied and directed dozens of violent and threatening messages at D'Ambly's employer and labor union. Compl. ¶ 25(d).

3. Exoo directed a second round of violent and threatening messages that began on January 9, 2019. Compl. ¶ 28. On January 10, 2019, in several threatening Tweets Exoo directed his associates to "show up and shut down" an alleged Princeton, New Jersey protest D'Ambly was scheduled to attend. Compl. ¶ 29.

4. On January 11, 2019, Enterprise associates called death threats into D'Ambly's employer. Compl. ¶ 32.

5. On January 11, 2019, co-defendant Exoo directed a threat into New Jersey that threatened D'Ambly "Regardless, I'm gonna spend the next week wrecking your f**k**g life, Dan D'Ambly." Compl. ¶ 38.

6. Enterprise associates complied with Exoo's threats to "wreck" D'Ambly's "f**k**g life" and D'Ambly's home was attacked and vehicle rendered inoperable. Compl. ¶ 39; *See also* Ex. B South Brunswick Police Department, Investigation Report.

7. After his home was attacked D'Ambly received a text message from an unknown telephone number that asked "So your thing went well today? Did you guys get there ok?" The text message was sent to him from the same telephone number (732-7**-

4***) that was captured by the Daily News' phone system when they received a phone call threatening violence on January 11, 2019, that threatened "any violence or blood spilled is also on your hands."  Compl. ¶ 32.

A defendant's contacts with the forum can create specific jurisdiction in two ways.  *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998).  First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007).  Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state."  *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

To satisfy the first prong of the three-part analysis, the defendant must direct its activities at a forum by "deliberately targeting" the forum.  *O'Connor,* 496 F.3d at 317.  A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident."  *Id*. at 317-318 (holding that a defendant directed its activities toward Pennsylvania when the defendant, a hotel company located in Barbados, mailed brochures to the plaintiffs, mailed a spa brochure to plaintiff after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa).  *See Remick v. Manfredy*, 238 F.3d 248, 256 (3d. Cir. 2001) (personal jurisdiction existed when defendant placed a call at the plaintiff's office which led to the formation of a contract signed in, and returned to Pennsylvania); *See also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482

(3d Cir. 1993) ("Mail and telephone communication sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").

New Jersey has a strong interest in providing access to its courts for citizens who have sustained injury due to the actions of an out of state defendant and has adopted a judicial policy which permits jurisdiction over foreign corporations to the outer limits permitted by the due process clause of the United States Constitution. *Beckwith v. Bethlehem Steel Corp.*, 182 N.J. Super. 376, 383 (N.J. Super. Ct. Law Div. 1981). In cases where jurisdiction has been challenged, New Jersey courts have given strong consideration to the type of action in determining sufficiency of minimum contacts. *Id*. at 384. Jurisdiction in tort actions may be premised upon a single contact with the forum if the contact results in injury to one of its residents. *Id.*

Here, the Complaint is a tort claim premised on the Enterprise's sustained campaign of violent threats that extorted D'Ambly's termination and infringed his intangible property rights and tortiously interfered with his prospective economic benefit. This action was brought, because the Enterprise complied with Exoo's direction and directed threats into New Jersey. The Enterprise's threats penetrated the physical sanctity of D'Ambly's and he sustained property damage. Compl. § 39. The District Court can properly exercise personal jurisdiction under RICO's statutory provisions and specific jurisdiction under the tests set forth in *O'Connor* and *Calder*, because the Enterprise deliberately targeted the forum.

As discussed above, the Complaint established that the Enterprise deliberately targeted the forum and committed several intentional torts directly aimed at New Jersey. At co-defendant Exoo's direction, the enterprise intended to harm D'Ambly's intangible property rights (union employment) by causing his employment termination and conducted a pervasive and repetitive

8

campaign of targeted threats directed into New Jersey. The targeted threats achieved their intended goal and extorted D'Ambly's termination.

Finally, the Enterprise continuously and systematically directed hundreds of threats into New Jersey at D'Ambly and others to extort D'Ambly's termination. Therefore, the District Court can properly exercise general jurisdiction over STL, because STL aided and abetted the Enterprise's "continuous and systematic contacts with the forum state." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d. Cir. 2001).

### b. *Section 1965(b)* of the Federal RICO Statute Specifically Provides the District Court Personal Jurisdiction over STL

*Section 1965(b)* provides for "nationwide service of process and jurisdiction over other parties not residing in the district, who may be additional defendants of any kind, including co-defendants, third-party defendants, or additional counter-claim defendants." *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020) (internal quotations omitted). Under Fed. R. Civ. P. 4(k)(1)(c) "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant when authorized by federal statute." *Laurel Gardens, LLC,* 948 F.3d at 113. When a federal statute provides for nationwide service of process, it becomes the "statutory basis for personal jurisdiction." *Id.* at 117. The federal RICO statute is one such federal statute that "includes a specific provision." *Id*. at 113. The RICO statute provides for personal jurisdiction as to all defendants "where personal jurisdiction can be established over at least one defendant." *Id.* at 120.

Jurisdiction is proper in any "district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Laurel Gardens, LLC*, 948 F.3d at 118. In instances "where Congress has spoken by authorizing nationwide service of process…the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in

9

which the federal court sits." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).  In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC*, 948 F.3d at 122.

Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with the Fifth Amendment due process.  *Laurel Gardens, LLC*, 948 F.3d at 122.  New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.  *Miller Yacht,* 384 F.3d. at 96.  Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A "District Court's exercise of personal jurisdiction over a defendant from a neighboring state does not offend the traditional notions of fair play and substantial justice." *Laurel Gardens, LLC*, 948 F.3d at122.  The Court has statutory personal jurisdiction over STL because STL is an "other party" as defined in *18 U.S.C. § 1965(b)*.

      c. **The District Court Has Statutory Personal Jurisdiction over STL Because They Violated Section *1962(d)* by Aiding and Abetting the Enterprise's Patterns of Racketeering Activities Directed into New Jersey**

STL violated *18 U.S.C. § 1962(d)* when they conspired to violate *18 U.S.C. §§ 1951* and *1952*, by aiding and abetting the Enterprise that directed into New Jersey, a violent, systematic, and continuous patterns of racketeering activities to induce fright and panic in order to extort D'Ambly's employment termination.  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact.  *Boyle v. United States*, 556 U.S. 938, 943-44 (2009).  An "association-in-fact enterprise is a

10

group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 946.

When RICO cases are "civil in character, the criminal standard for aiding and abetting applies." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985). RICO is to "be liberally construed to effectuate its remedial purposes." *United States v. Turkette*, 452 U.S. 573, 586-587 (1984). The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro-tech Inc. v. Western Co. of North America*, 824 F.2d 1349, 1356 (3d Cir. 1987). A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity. *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir., 1990). The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *Local 560,* 780 F. 2d at 288, n. 25. To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985). The plaintiff must prove (1) that the substantive act has been committed; and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it." *Local 560,* 780 F.2d at 284. "Plaintiff need not offer direct evidence of intent. Rather, the fact finder may infer a defendant's knowledge and intent from circumstantial evidence." *United States v. Dixon,* 658 F.2d 181, 189, n. 17. (3d Cir. 1981).

Employers are "under a duty to exercise reasonable care" to stop its employee's from using employer property to commit criminal acts such as stalking, harassing, intimidating, and conducting other activities that constitute a threat to others. *Doe v. XYC Corp.,* 382 N.J. Super

11

122, 142 (App. Div. 2005).  It has long been established that "if an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from this inaction.  Moreover, it has long been settled that it is permissible to infer from circumstantial evidence the existence of intent." *Local 560*, 780 F. 2d at 284.

      Enterprise victims have submitted hundreds of complaints to STL via their Twitter account and by direct communication to STL's leadership.  Enterprise victims have submitted complaints directly to STL President William Fox's office, current Library Director John Payne, Director of Human Resources, Colleen Manley, and Vice President, Community and Employee Relations, Lisa Cania, but Exoo continues to direct the Enterprise's activities from STL.  Moreover, when contacted by victims for help STL has mockingly demanded Enterprise victims provide more and more evidence.  For instance, an Enterprise victim emailed STL's Director of Human Resources, Colleen Manley for help and requested STL take action to stop Exoo's behavior, but Manley brushed off the victims concerns and demanded the victim submit "specific evidence of this activity." Ex. B.  However, the victim already had submitted evidence.  Included in the email request for help that Manley replied to, the victim submitted links to news articles that chronicled Exoo's activities and a photograph taken in September 2017 that showed Exoo teaching doxing to STL students.  Ex. B.

      Furthermore, co-defendant Exoo is not a rogue employee operating from the shadows of a monstrous multi-national conglomerate, he is a well-known campus fixture and long-time library employee and lecturer at a "small, private liberal arts university." Def. STL MTD at 8.  STL has allowed co-defendant Exoo to teach STL students and others how to discover undisclosed personal information to dox and harm others since at least 2017.  Exoo is intimately familiar with STL's leadership because several of Exoo's family members are either current or

12

former members of STL's faculty.  The Court has jurisdiction over STL, because they aid and abet an enterprise engaged in patterns of racketeering activities and refused to prevent their employee from using its resources to stalk, harass, intimidate and threaten others with violence.

### d. The Enterprise's Duration and Structure

STL misstates the operational duration of the enterprise and mistakenly argues that *State v. Ball*, 141 N.J. 142, 162 (1995) requires an enterprise consisting of a rigid linear structure that must "detail the division of labor among enterprise members, members knowledge," and "their performance of different roles in furtherance of the Enterprise's objectives." Def. STL MTD at 20.  As for the Enterprise's operational duration, STL mischaracterizes the length of time the enterprise has existed when STL argued that the Enterprise was a short-term endeavor that only "occurred over a period of roughly three months." Def. STL MTD at 15.  Correctly stated, the enterprise's patterns of racketeering activities required three months to extort D'Ambly's employment termination and cause him long-term financial harm.

STL mistakenly argues that in *Ball*, New Jersey required that RICO Complaints plead the existence of an enterprise with a rigid ascertainable structure with a detailed chain of command featuring associates that know their defined roles.  However, that reading of *Ball* is inconsistent with statutes and case law that broadly define a RICO enterprise without a requirement of a rigid ascertainable structure.  A RICO enterprise includes "any group of individuals associated-in-fact…associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 944-946.  A RICO enterprise associated-in-fact must have three structural features: a purpose; relationships among those associated with the enterprise; and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 946.

13

Here, the Enterprise's common purpose is to harm persons the enterprise identifies as fascists and white supremacists, which as the vehicle by which Exoo directs the Enterprise's racketeering activities proclaims, "I expose fascists via #OSINT [open-source intelligence], get them fired, de-homed, kicked out of school, etc."  Enterprise associates are related to one another and share "intelligence" on their targets with each other and send cryptic confirmatory messages to each other after performing a task in furtherance of the Enterprise's common purpose.  For instance, on January 11, 2019, when death threats were called into D'Ambly's employer one of the callers' phone number was captured.  The callers' phone number can be linked to an associate who sent messages to co-defendant Exoo shortly after the threatening calls were recorded.

Lastly, to make argument that the Enterprise lacks the longevity required to establish a RICO claim, STL mischaracterizes the Enterprise's operational duration by claiming the Enterprise only existed for a three month period, which is how long it took the Enterprise to extort D'Ambly's termination.  STL's longevity calculation is woefully inadequate, because it only considers one victim and conveniently negates the Enterprise's months long stalking efforts to learn D'Ambly's personal identity that culminated in three months of violent and threatening communications.  STL's calculations do not factor in the ongoing harassment and intimidation that the Enterprise continues to inflict upon D'Ambly.  Moreover, STL's incorrect calculation ignores the hundreds of other Enterprise victims.

Exoo is the Enterprise's primary doxer with the largest following, who leads an enterprise of associates' who traffic undisclosed personal information of others and then use that personal information to violently threaten and cause harm to their targets.  He has directed the enterprise's racketeering activities through a series of permanently banned Twitter messaging accounts since

as early as 2016. Compl. ¶ 18. However, it is reasonable to suspect that the enterprise begun its racketeering activities prior to 2016 using unknown Twitter accounts, because Exoo has admittedly used multiple pseudonyms and alias accounts. Ex. C.

Furthermore, STL has known of Exoo's conduct since at least 2017, because that is when STL decided Exoo was a subject matter expert and invited him to give lectures teaching doxing on STL's campus to STL students. The accurate estimation is that the enterprise has been operational for at least three years and continues its patterns of racketeering activities as of this filing, but a more accurate determination of the Enterprise's operational duration will be determined through discovery.

### III.  CONCLUSION

The Complaint please enough facts to inform STL of the claim, and D'Ambly is entitled to relief. The District Court has jurisdiction over all defendants, because co-Defendant Exoo directed an Enterprise to conduct pervasive and targeted violent and threatening communications into New Jersey. The Enterprise committed multiple intentional torts to extort D'Ambly's employment termination and infringe his intangible property rights.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

Respectfully Submitted,

Dated:  November 21, 2020         _____
                                  Patrick Trainor, Esq.
                                  *Attorney for Plaintiff Daniel D'Ambly.*