Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
pt@ptesq.com
*Attorney for Plaintiff Daniel D'Ambly.*

| | |
|---|---|
| DANIEL D'AMBLY, | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |
| Plaintiff, | |
| vs. | CIVIL ACTION NO.:  2:20-cv-12880 |
| CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, | (ELECTRONICALLY FILED) |
| Defendants. | |

---

**PLAINTIFF DANIEL D'AMBLY'S BRIEF IN SUPPORT OF HIS OPPOSITION TO DEFENDANT COHEN, WEISS, AND SIMON LLP'S MOTIONS TO DISMISS**

---

**Motion Day: December 7, 2020**

## <u>TABLE OF CONTENTS</u>

I.      Table of Authorities ............................................................................ ii

II.     Introduction........................................................................................ 2

III.    Motion to Dismiss Standard of Review ............................................. 3

IV.     Argument ............................................................................................ 5

      1.   There are No Grounds for Sanctions Because Plaintiff has a Good-
         Faith Belief That Precedential Case Law Supports his Complaint.... 5

      2.   An Attorney-Client Relationship Existed Between D'Ambly and
         CWS ................................................................................................... 5

      3.   Section 301(b) of the LMRA Does not Pre-Empt D'Ambly's State
         Law Malpractice Claim Because the State Law Tort Claim Does
         Not Require Interpretation of the Collective Bargaining Agreement  7

V.      Conclusion ......................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Rosenau v. Unifund Corp.,* 539 F.3d 218 (3d Cir. 2008)............................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 4

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).......................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 4

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)................................... 4

*Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015)............. 5

*Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 289 (3d Cir. 1991) ... 5

*Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 407 (1988) ............................... 7, 8

*Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985)................................................ 8

*Trans Penn Wax Corp. v. McCandless,* 40 F.3d 217 (3d Cir. 1995) ........................ 8

*Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir. 1992)........................................ 9

**Statutes**

Labor Relations Management Act, 29 U.S.C. § 185 (section 301(b))....................... *passim*

29 U.S.C. § 411........................................................................................................... 2

N.J.S.A. 2A:84A-20.................................................................................................... 6

**Other Authorities**

Federal Rule of Civil Procedure 11 ........................................................................... 2

Federal Rule of Civil Procedure 12(c)....................................................................... 2, 3

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 3

Federal Rule of Civil Procedure 8(a)(2) .................................................................... 4

Federal Rule of Civil Procedure 11(b)(3) .................................................................. 5

Federal Rule of Civil Procedure 11(b)(4) .................................................................. 5

Federal Rule of Civil Procedure 11(b)(2) .................................................................. 5

MODEL RULES OF PROF'L CONDUCT R. 1.13(f)........................................................... 5, 6

MODEL RULES OF PROF'L CONDUCT R. 1.13(f) cmt. 10............................................... 6

Plaintiff Daniel D'Ambly (Hereinafter "Plaintiff" or "D'Ambly") submits this Brief in opposition to Defendant Cohen, Weiss, and Simon, LLP's ("CWS") motions to dismiss under Fed.R.Civ.P. 12(c) and sanctions under Fed.R.Civ.P. 11.  For the reasons that follow, CWS' motions should be denied.

## **<u>INTRODUCTION</u>**

CWS seeks shelter in the immunity of *§ 301(b)* of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185 (2018) that is afforded to union attorneys who perform union work related to the collective-bargaining agreement ("CBA"), despite having had deprived D'Ambly of the same rights and protections afforded to him under *LMRA* and the by his union contract.  In CWS' opinion D'Ambly is a cretin, who did not deserve the rights and protections he was entitled under the union's grievance procedures, because he participates in political protests and rallies in favor of issues CWS detests.  D'Ambly participates in political activities under a pseudonym and has never identified himself as a New York Daily News ("Daily News") employee or member of Graphic Communications Conference of the International Brotherhood of Teamsters, Local One-L ("Teamsters").  D'Ambly's right to engage in peaceful non-violent political activities are protected by the U.S. Const. Amend. I and the union members' Bill of Rights under 29 U.S.C. § 411 (2018).  However, because of their disdain for D'Ambly's political beliefs and activities CWS stiffed-armed his desire to have his employment rightfully reinstated.

CWS refused to discuss D'Ambly's politics (the alleged cause of his termination) and precluded D'Ambly from pursuing the preservation of his intangible property rights provided to him by his union contract through the grievance procedures in the arbitral forum, because they claimed the arbitrator would be biased against him.  CWS' refusal to discuss D'Ambly's politics

means they refused to properly research the claim against him, therefore, they could not have properly represented him at the scheduled arbitration hearing.

Had CWS not convinced D'Ambly to surrender his rights, CWS' refusal to discuss D'Ambly's politics meant they could not have learned that Christian Exoo as @AntiFashGordon publicly announced D'Ambly's termination one day before the Daily News claimed in D'Ambly's Termination of Employment letter that they "learned of the cause" of D'Ambly's termination.  Ex. A.  Whether CWS ignored the Daily News' demonstrable lie regarding when they learned of the threats contained in D'Ambly's Termination of Employment letter is not an issue that implicates the CBA, because there are no provisions in the CBA that allows the employer to fabricate reasons to terminate the employee.  Ex. B.  The logic that an employer can fabricate reasons to be the "cause" of terminating an unpopular employee defeats the entire purpose of the labor movement.

In this case, the resolution of the legal malpractice claim brought against CWS is a state law tort claim that is not pre-empted by federal labor law, because it does not depend upon the meaning of the CBA.  CWS is not immunized by § 301(b), because the elements of a state law legal malpractice claim require no interpretation of the CBA.

## I.        MOTION TO DISMISS ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)

A motion to dismiss or judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed as a motion to dismiss for failure to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6).  Our standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is plenary. Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c)

3

motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. When reviewing a motion to dismiss, the court must construe the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Twombly*, the Supreme Court set forth the plausibility standard for overcoming a motion to dismiss. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The Supreme Court's *Twombly* formulation of the pleading standard "can be summed up thus stating…a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). This standard "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*.

## II.   <u>ARGUMENT</u>

### 1.   There are No Grounds for Sanctions Because Plaintiff has a Good-Faith Belief That Precedential Case Law Supports his Complaint

Rule 11 identifies three grounds for sanctions: (1) either affirmative claims or denials lack evidentiary support Fed. R. Civ. P. 11(b)(3)-(4); (2) legal arguments must either be warranted under existing law or present a good-faith argument to reverse or extend the law Fed. R. Civ. P. 11(b)(2); and (3) the paper must not be filed for an improper purpose.  In order to satisfy its obligations under Rule 11, a party must conduct a reasonable inquiry into the facts alleged in its pleadings.  *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015).  Reasonableness is an "objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.  *Ford Motor Co. v. Summit Motor Prods., Inc*., 930 F.2d 277, 289 (3d Cir. 1991).  As detailed below, Plaintiff's complaint against CWS satisfies the reasonability test, because there is substantial precedential case law from the United States Supreme Court and the Third Circuit that supports Plaintiff's argument that defendant CWS does not have immunity in this dispute**.**

### 2.   An Attorney-Client Relationship Existed Between D'Ambly and CWS

As a threshold matter, the American Bar Association ("ABA"), MODEL RULES OF PROF'L CONDUCT ("RPC") R. 1.13 were consulted to determine whether an attorney-client relationship existed between D'Ambly and CWS.  RPC 1.13 governs the nature of the client-lawyer relationship when an attorney represents an organization.  RPC 1.13(f) requires the attorney to "explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing."  When the organization's and the constituent's interests are adverse or may become adverse, the lawyer should inform any "adverse" constituent "that the lawyer cannot represent"

5

him and he "may wish to obtain independent representation."  MODEL RULES OF PROF'L

CONDUCT R. 1.13(f) cmt. 10.  The lawyers must carefully assure the adverse constituent that "the

lawyer for the organization cannot provide legal representation for that constituent individual,

and that discussions between the lawyer for the organization and the individual may not be

privileged."  *Id.*  Here, an attorney-client relationship existed between D'Ambly and CWS

because despite being presented with overtly conflicted interests that required CWS to

immediately recuse and advise D'Ambly to seek independent counsel, CWS chose to represent

D'Ambly.  CWS' choice not to recuse from this mater failed to properly inform D'Ambly of the

attorney-client privilege and impugned the attorney-client privilege and protections provided by

N.J.S.A. 2A:84A-20.

   In their motion for sanctions, CWS incorrectly argues that D'Ambly only alleges an

ethical violation of r. 1.13(f), therefore, he does not have a valid claim because LMRA § 301(b)

immunizes CWS.  Further, CWS argues that ethical breaches "do not provide the basis for civil

liability against an attorney."  Defendants' Memorandum of Law in Support of Its Motion for

Sanctions ("Def. Sanction Br. at 13").  CWS refers to D'Ambly's October 1, 2020, letter reply to

CWS' letter dated September 30, 2020, to determine that D'Ambly's only claim against CWS is

due to their violation of r. 1.13(f).  As stated above, r. 1.13(f) was consulted to determine the

threshold question of whether an attorney-client relationship was created between D'Ambly and

CWS, and an attorney-client relationship was formed.  CWS' choice to ignore their blatant

conflict of interest and represent D'Ambly forged the attorney-client relationship.  Once the

relationship was formed CWS' refusal to discuss the cause of D'Ambly's termination foreclosed

his opportunity to pursue the rights provided to him by his union contract and the LMRA.

D'Ambly was terminated for being an alleged "white supremacist," because he was captured on video saying the word "kike" to a fellow protester during a protest in a non-threatening manner.  He never directed the word towards a third person.  Here, CWS was presented with a Teamster who was terminated for being an alleged white supremacist and was seeking to have his employment reinstated, versus the interests of the Teamsters who have publicly denounced white supremacists.  The Teamsters have issued such statements as "our members are not white supremacists," and "Unions: We Must lead the Opposition to White Supremacy," and also, "White supremacy and low wages go hand-in-hand."  Ex C.  Clearly, in 2019 when they represented D'Ambly, CWS knew of the Teamsters' opposition to white supremacy and the Teamsters' declaration that its members were not white supremacists, because all the above statements were published in 2016 and 2017.  Obviously, D'Ambly's desire to have his employment reinstated conflicted with the Teamsters earlier pronouncements that their members were not white supremacists.  The conflict obligated CWS to immediately inform D'Ambly to seek independent counsel.

D'Ambly was terminated despite his employer's admission that he did not bring his politics or activities into the workplace, and that he never discriminated or mistreated any of his co-workers.  Ex. D.  In short, D'Ambly was terminated for being the victim of a crime.

### 3. *Section 301(b)* of the LMRA Does Not Pre-Empt D'Ambly's State Law Malpractice Claim Because the State Law Tort Claim Does Not Require Interpretation of the Collective Bargaining Agreement

LMRA *Section 301(b)* does not completely pre-empt State law "if that claim requires no interpretation of the collective-bargaining agreement, even if a court may refer to the collective-bargaining agreement when addressing said claim."  *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 407 (1988*)*.  Federal labor law pre-empts a state-law claim when the "claim depends

7

upon the meaning a collective-bargaining agreement." *Lingle*, 486 U.S. at 406.  In *Lingle*, the

Supreme Court found a union member's retaliatory termination was not pre-empted by § 301,

because the elements of the state's retaliatory discharge law were "purely factual questions

pertaining to the conduct of the employee and the conduct and motivation of the employer."

*Lingle*, 486 U.S. at 407.

      Further, "not every dispute concerning employment, or tangentially involving a

provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the

federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  The LMRA pre-

empts "only state law claims inextricably intertwined with consideration of the terms of the labor

contract are preempted by § 301." *Id. at 213.*  There is nothing novel about recognizing that

substantive rights in the labor relations context can exist without interpreting collective-

bargaining agreements.  *Lingle,* 486 U.S. at 411.  Section "301 pre-emption merely ensures that

federal law will be the basis for interpreting collective-bargaining agreements, and says nothing

about the substantive rights a State may provide to workers when adjudication of those rights

does not depend upon the interpretation of such agreements." *Lingle,* 486 U.S. at 420-421 n. 9.

Moreover, "the law is clear a plaintiff may bring a state law tort action…so long as the state

claim does not require interpretation of the collective bargaining agreement." *Trans Penn Wax

Corp. v. McCandless*, 40 F.3d 217, 229 (3d Cir. 1995).

      Here, D'Ambly's malpractice claim is a state tort that is not pre-empted by federal labor

law.  When he was terminated the Teamsters filed a grievance and scheduled an arbitration

hearing.  Thereafter, at the Teamsters' behest D'Ambly spoke to CWS' attorneys who were to

represent him at his arbitration hearing.  First, D'Ambly spoke to Tom Kennedy ("Kennedy")

and expressed his desire to have his employment reinstated.  During the phone conference with

Kennedy, D'Ambly attempted to explain that he thought "Antifa terrorist types" were the ones behind the Twitter and phone threats.  Kennedy scolded him and told him he did not think Antifa were terrorists and if D'Ambly said that again he would end the call.  Next, he spoke to CWS attorney Kate Swearengen ("Swearengen") and Swearengen immediately told D'Ambly she disagreed with his politics and stated she would not discuss them any further.  Def. CWS Answer at 50.  During his conversation with D'Ambly he reiterated his desire to have his employment reinstated and he repeated that desire during several additional phone conferences with CWS.

The issue of whether Swearengen personally disagrees with D'Ambly's politics is a non-issue, and certainly should not impact a lawyer's professional responsibility to properly represent their client.  But Swearengen's refusal to discuss D'Ambly's politics is critical, because D'Ambly's politics were at the center of his termination and she was his attorney assigned to represent him at the then forthcoming arbitration hearing.  Swearengen was duty bound to know whether D'Ambly's "politics" meant he was engaged in lawful constitutionally protected activities, for which the Teamsters and Daily News could not punish him, or was he engaged in violent and threatening acts that were not protected.  Swearengen could not know that basic information that she needed to know in order to effectively represent D'Ambly at the arbitration hearing, because she refused to discuss his politics.

Union members "must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court, unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1537 (3d Cir. 1992).  Here, D'Ambly's ability to exhaust his CBA's grievance and arbitration procedures were extinguished by CWS, because shortly after D'Ambly's conversation with Swearengen, CWS convinced D'Ambly to surrender his

9

intangible property rights and forego the grievance and arbitration hearing, because they claimed the arbitrator would be biased against him and he would lose and get nothing.

Without knowing the details of his political activities, CWS blindly informed D'Ambly that he must surrender his property rights and accept a settlement agreement, because the arbitrator was biased against him. Pressuring D'Ambly to forego exhausting his rights in the grievance process and forcing his execute the settlement agreement under duress does not implicate the CBA, it is the antithesis of CBA protection.

CWS's hatred of D'Ambly is evident in their Answer at the eleventh affirmative defense. CWS answered D'Ambly's "injuries are the result of his own intentional, wanton and malicious acts." Def. CWS Answer at BB. D'Ambly committed no intentional, wanton or malicious acts, he engaged in lawful Constitutionally protected political protests, but CWS argues that he got what he had coming, like a mafioso, simply because his politics do not align with theirs.

## III.    CONCLUSION

Despite their refusal to discuss the basic elements of the alleged cause of D'Ambly's termination that intentionally prevented D'Ambly from fully exercising his grievance and arbitration rights, CWS continues to seek to punish D'Ambly for his beliefs by using the threat of sanctions as a means to deprive D'Ambly the right to redress the wrongs he suffered because of CWS' misconduct. *Section 301(b)* does not immunize CWS, because forcing a union member to surrender his grievance and arbitration rights, when the employer admittedly has no reason to terminate the employee is a violation that strikes at the very core of the labor movement, and is certainly not a provision of the collective bargaining agreement. CWS' refusal to properly research the claims against D'Ambly necessary to properly represent him foreclosed his ability

10

to seek relief through the CBA processes, and obviously impeded their ability to negotiate a proper settlement.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

Respectfully Submitted,

Dated:  November 23, 2020

Patrick Trainor, Esq.
*Attorney for Plaintiff Daniel D'Ambly.*