UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL D'AMBLY

          Plaintiff,

v.

CHRISTIAN EXOO a/k/a ANITFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC., COHEN, WEISS AND SIMON, LLP;

          Defendants.

Civil Action No.

2:20-cv-12880-JMV-JAD

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT
ST. LAWRENCE UNIVERSITY'S MOTION TO DISMISS**

**Motion Day:  December 7, 2020**

BOND, SCHOENECK & KING, PLLC
Monica C. Barrett, Esq.
600 Third Avenue
22nd Floor
New York, NY 10016
Telephone:   (646) 253-2300
Facsimile:    (646) 253-2383
Email: mbarrett@bsk.com

*Attorneys for Defendant
St. Lawrence University*

3626872.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    POINT I

    THE UNIVERSITY IS NOT SUBJECT TO JURISDICTION IN NEW JERSEY .. **Error! Bookmark not defined.**

        A.    The University does not have sufficient contacts with New Jersey to justify general or specific jurisdiction in the state ....................................... 1

        B.    Plaintiff fails to allege any facts that would justify jurisdiction over identified members of the alleged "Exoo Enterprise" ................................. 2

    POINT II

    PLAINTIFF FAILED TO STATE A CLAIM AGAINST THE UNIVERSITY UNDER STATE AND FEDERAL RICO LAWS ....................................................... 4

        A.    There is no liability for aiding and abetting under the federal RICO statute ................................................................................................................. 4

        B.    Even if Plaintiff could utilize an "aiding an abetting" theory under the New Jersey RICO statute, he has failed to adequately plead that the University aided and abetted any illegal conduct ................................ 6

        C.    Plaintiff's opposition does not cure the Complaint's failure to plausibly allege an "enterprise" or the University's participation in an enterprise ................................................................................................... 9

        D.    Plaintiff's speculative allegations do not satisfy his obligation to plead a "pattern" of racketeering activity ................................................... 10

CONCLUSION ................................................................................................................. 12

3626872.1

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 11

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
   87 F. App'x 227 (3d Cir. 2003) ........................................................................ 10

*Bondi v. CitiGroup, Inc.*, No. BER-L-10902-04,
   2005 N.J. Super. Unpub. LEXIS 790 (N.J. Super. Ct. Law. Div. Feb. 28, 2005) ........ 6

*Central Bank of Denver v. First Interstate Bank of Denver*,
   511 U.S. 164 (1994) ...................................................................................... 4, 5

*Digital Wholesale of N.Y., LLC v. Am. Eagle Trading Grp., LLC*,
   2016 U.S. Dist. LEXIS 134058 (D.N.J. September 29, 2016) .............................. 4, 5

*Edwards v. Schwartz*,
   378 F. Supp.3d 468 (W.D. Va. 2019) ................................................................. 3

*Franklin Med. Assocs. v. Newark Pub. Schls.*,
   362 N.J. Super. 494 (N.J. Super. Ct. App. Div. 2003) ........................................... 6

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300, 369-70 (3d Cir. 2009) .................................................................. 9

*Jaguar Cars v. Royal Oaks Motor Car Co.*,
   46 F.3d 258 (3d Cir. 1995) ................................................................................ 7

*Kehr Packages v. Fidelcor, Inc.*,
   926 F.2d 1406 (3d Cir. 1991) ........................................................................... 11

*Laurel Gardens, LLC v. McKenna*,
   948 F.3d 105 (3d Cir. 2020) ............................................................................... 2

*New Jersey Auto. Ins. Plan v. Sciarra*,
   103 F. Supp. 2d 388 (D.N.J. December 30, 1993) ................................................ 5

*Pa. Ass'n of Edwards Heirs v. Rightenour*,
   235 F.3d 839 (3d Cir. 2000) ............................................................................... 4

*Petro-Tech Inc. v. Western Co. of North America*,
   824 F.2d 1349 (3d Cir. 1987) .......................................................................... 4, 7

3626872.1

*Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*,
  2017 U.S. Dist. LEXIS 99779 (D. Md. June 26, 2017) ............................................... 3

*Pop Test Cortisol, LLC v. Univ. of Chicago*,
  2015 U.S. Dist. LEXIS 79565 (D.N.J. June 18, 2015) ............................................ 1, 2

*Price v. Amerus Annuity Group Co. (In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.)*,
  2006 US Dist. LEXIS 35980 (E.D. Pa. June 2, 2006) ................................................ 5

*Robinson v. Section 23 Prop. Owner's Ass'n*,
  2018 U.S. Dist. LEXIS 213243 (D.N.J. Dec. 18, 2018) ............................................. 3

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) .............................................................................. 4, 5, 7

*In re Tyco Int'l, Ltd., Multidistrict Litig.*,
  2007 U.S. Dist. LEXIS 42401 (D.N.H. June 11, 2007) ............................................. 6

*U.S. v. Bergrin*,
  650 F.3d 257 (3d Cir. 2011) .................................................................................. 10

*United States v. Local 560 of Int'l Bhd. of Teamsters*,
  780 F.2d 267 (3d Cir. 1985) .................................................................................... 4

*Vangheluwe v. Got News, LLC*,
  365 F.Supp.3d 850 (E.D. Mich. 2019) .................................................................... 3

*Walther v. Patel*,
  2011 U.S. Dist. LEXIS 12048 (E.D. Pa February 4, 2011) ....................................... 5

**Statutes**

18 U.S.C. § 1962, *et seq.* ................................................................................. passim

§ 10(b) of the Securities Exchange Act of 1934 ........................................................ 4

**PRELIMINARY STATEMENT**

Defendant St. Lawrence University (the "University") submits this reply brief in further support of its motion to dismiss the Complaint filed by plaintiff Daniel D'Ambly ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

**ARGUMENT**

**POINT I**

**THE UNIVERSITY IS NOT SUBJECT TO JURISDICTION IN NEW JERSEY**

**A.   The University does not have sufficient contacts with New Jersey to justify general or specific jurisdiction in the state**

In opposition to the University's motion, Plaintiff does not attempt to argue that the University has contacts with New Jersey that would justify general or specific jurisdiction within the state. Indeed, Plaintiff's Brief fails to allege any facts which demonstrate that the University had minimum contacts with New Jersey, that it "purposefully directed" activities toward the State, or that it engaged in any forum-related activity which would reasonably put it on notice that it could be haled into a New Jersey Court. As such, there is no dispute that the University does not have the minimum contacts necessary to justify jurisdiction in New Jersey. *Pop Test Cortisol, LLC v. Univ. of Chicago*, 2015 U.S. Dist. LEXIS 79565, at *7 (D.N.J. June 18, 2015).

Rather, Plaintiff relies entirely on the alleged conduct of defendant Christian Exoo ("Mr. Exoo") and countless unnamed, unidentified associates in his attempt to bring the University into New Jersey District Court. (Plaintiff's Brief, pp. 6 – 7).[1] As discussed in

---

[1] It appears that Plaintiff has unilaterally amended the caption to include "Unnamed Associates 1 – 100" as additional defendants. Plaintiff failed to amend the Complaint as of right pursuant to Fed. R. Civ. Pro. 15(a)(1) and has not asked this Court for permission to amend. As such, this is clearly not appropriate. Moreover, Plaintiff cannot rely on the conduct of these unnamed associates to provide the basis for

1

the University's original Brief and below, Plaintiff has also failed to allege facts sufficient to justify jurisdiction over the University based on the conduct of other members of the alleged RICO "enterprise."

**B.     Plaintiff fails to allege any facts that would justify jurisdiction over identified members of the alleged "Exoo Enterprise"**

The University does not dispute that jurisdiction as to all members of a RICO conspiracy is permissible under the federal RICO statute if a plaintiff can establish personal jurisdiction over at least one of the members of the conspiracy.  *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020).  However, Plaintiff has failed to meet this burden for two reasons.

First, as discussed in the University's original Brief and below, because Plaintiff has failed to state a RICO claim, the RICO statute cannot form the "basis for asserting personal jurisdiction over defendants not otherwise subject to the jurisdiction of the courts in this district."  *Pop Test Cortisol*, 2015 U.S. Dist. LEXIS 79565, at *10.

Second, Plaintiff has failed to plead any facts establishing that jurisdiction in New Jersey is appropriate as to any of the identified members of the "Exoo Enterprise."  The state and federal RICO claims alleged in Counts VIII, IX, and X of the Complaint are specifically brought against defendants Mr. Exoo, the University, Vijaya Gadde ("Ms. Gadde"), and Twitter, Inc. ("Twitter"). None of these defendants is domiciled in New Jersey and both the Complaint and Plaintiff's Brief fail to assert any facts that demonstrate these defendants conduct continuous and systematic business within the state.

---

jurisdiction over the University, particularly where there is no indication how they are connected to the University.

At best, the Complaint alleges that Mr. Exoo drafted tweets that had an impact in New Jersey.[2] This allegation forms the *entire* basis of Plaintiff's jurisdictional claim against Mr. Exoo, Ms. Gadde, the University and Twitter. This is not sufficient. In fact, federal courts have determined that "tweeting" cannot form the basis for jurisdiction. Blessing v. Chandrasekhar, 2020 U.S. Dist. LEXIS 111115, at *13-14 (E.D. Ky. June 25, 2020) ("*See Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850, 863 (E.D. Mich. 2019) (declining to exercise personal jurisdiction over two defendants who tweeted about plaintiff, a Michigan resident; noting that '[t]hese allegations were not about Michigan in particular but about Joel in particular—wherever he might have been living'); *Edwards v. Schwartz*, 378 F. Supp.3d 468, 494 (W.D. Va. 2019) (declining to exercise personal jurisdiction over defendants who posted about plaintiff on Twitter and other social media platforms, noting '[t]here is no factual matter in Edwards' pleadings suggesting that the authors of these communications took affirmative steps to direct these communications into Virginia or had any intent to target or focus on Virginia readers or otherwise avail themselves of the benefits and protections of the laws of Virginia'); *Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*, 2017 U.S. Dist. LEXIS 99779, at *10 (D. Md. June 26, 2017) ('Sending three tweets and four emails related to the Podcasts and the Articles over a period of a year and a half are not so substantial that 'they amount to a surrogate for Smith and Walters's presence in Maryland').").

Plaintiff has therefore failed to meet his "burden of establishing personal jurisdiction" over the University, and the University should be dismissed from the case, with prejudice. *Robinson v. Section 23 Prop. Owner's Ass'n*, 2018 U.S. Dist. LEXIS

---

[2] Plaintiff cannot rely on the conduct of unnamed, unidentified individuals to establish jurisdiction over the University, or any other named defendant.

3

213243, at *6-7 (D.N.J. Dec. 18, 2018) (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007)).

## POINT II

### PLAINTIFF FAILED TO STATE A CLAIM AGAINST THE UNIVERSITY UNDER STATE AND FEDERAL RICO LAWS

**A.      There is no liability for aiding and abetting under the federal RICO statute**

Plaintiff's primary argument in opposition to the University's motion is that he has stated a RICO claim because the University aided and abetted the commission of a criminal act. (Plaintiff's Brief, pp. 11 – 12). In making this argument, Plaintiff's Brief relies on the Third Circuit's decisions in *United States v. Local 560 of Int'l Bhd. of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985), and *Petro-Tech Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1356 (3d Cir. 1987).

Plaintiff's reliance on these cases is inappropriate. Indeed, "[t]he Third Circuit has clearly and unequivocally rejected a civil RICO aiding and abetting claim." *Digital Wholesale of N.Y., LLC v. Am. Eagle Trading Grp., LLC*, 2016 U.S. Dist. LEXIS 134058, at *12 (D.N.J. Sept. 29, 2016) (citing *Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000)); *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 657 (3d Cir. 1998).

As explained by the Third Circuit in *Pa. Ass'n of Edwards Heirs*, the cases cited by Plaintiff, including *Petro-Tech* and *Local 560*, were all decided before the United States Supreme Court decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994). In that case, the Supreme Court ruled that private aiding and abetting suits were not authorized by § 10(b) of the Securities Exchange Act of 1934 because the statute did not specifically authorize a civil claim for aiding and abetting. *Id*. at 177, 191.

4

The Court reasoned, "If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Id*. at 177.

In *Rolo*, the Third Circuit extended the rationale of the *Central Bank of Denver* decision to claims involving the RICO statute. 155 F.3d at 656. The Third Circuit stated that it was "convinced that a private cause of action for aiding and abetting a RICO violation cannot survive the Supreme Court's decision in [*Central Bank*]." *Id*. The *Rolo* court therefore ruled that a private plaintiff could not maintain a claim of aiding and abetting an alleged RICO violation. *Id*. at 656-57.

The *Rolo* decision and its progeny have since been cited consistently to dismiss civil RICO claims based upon an aiding and abetting theory. *See Digital Wholesale of N.Y.,* 2016 U.S. Dist. LEXIS 134058, at *12; *Walther v. Patel*, 2011 U.S. Dist. LEXIS 12048, at *14, n. 48 (E.D. Pa. Feb. 4, 2011) (dismissing RICO aiding and abetting claim "because it is well established that there is no aiding and abetting liability under the RICO statute"); *Price v. Amerus Annuity Group Co. (In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.)*, 2006 US Dist. LEXIS 35980, at *36 (E.D. Pa. June 2, 2006) (in considering whether RICO claim was adequately pled, the court acknowledged that "defendants cannot be held liable for aiding and abetting another person's predicate acts."); *New Jersey Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 413 (D.N.J. December 30, 1993).

As such, Plaintiff's theory is based on out-dated law and his federal RICO claims must be dismissed, with prejudice.

**B.     Even if Plaintiff could utilize an "aiding an abetting" theory under the New Jersey RICO statute, he has failed to adequately plead that the University aided and abetted any illegal conduct**

There is some dispute about whether a Plaintiff can utilize an aiding and abetting theory to support a New Jersey RICO claim. *See Bondi v. CitiGroup, Inc.,* 2005 N.J. Super. Unpub. LEXIS 790, at *24 (N.J. Super. Ct. Law. Div. Feb. 28, 2005) (concluding that there is a cause of action for aiding and abetting under NJRICO "because of [New Jersey's] expansive adherence to aiding and abetting liability in other tort contexts and its liberal interpretation of the elements of [NJRICO]"); *Franklin Med. Assocs. v. Newark Pub. Schls.,* 362 N.J. Super. 494 (N.J. Super. Ct. App. Div. 2003) (leaving a lower court's imposition of aiding and abetting liability under NJRICO intact, without substantive analysis); *but see In re Tyco Int'l, Ltd., Multidistrict Litig.*, 2007 U.S. Dist. LEXIS 42401, at *84 (D.N.H. June 11, 2007) (holding that "there is no cause of action for aiding and abetting under NJRICO" due to the absence of language in the NJ statute permitting such a claim and the lack of New Jersey Court analysis of the issue).

For the reasons stated in the *In re Tyco* decision, this Court should not permit Plaintiff to assert a New Jersey RICO claim based upon an aiding and abetting theory. The New Jersey RICO statute does not contain any language authorizing a civil claim for aiding and abetting. In addition, as pointed out by the *In re Tyco* court, no New Jersey court has analyzed this issue with any depth, and the cases that would support this theory should therefore be read with caution.  2007 U.S. Dist. LEXIS 42401 at *83-84.

However, even assuming *arguendo* that Plaintiff could rely on this theory, he has failed to state a claim under the New Jersey RICO statute.[3]

First, Plaintiff fails to satisfy all of the *other* requirements to state a New Jersey RICO claim. Even pre-*Rolo*, Third Circuit courts required plaintiffs to satisfy all other RICO pleading requirements before advancing an aiding and abetting theory. *See Petro-Tech, Inc.*, 824 F.2d at 1357 (holding that RICO aiding and abetting claims were permitted "[s]o long as all of RICO's other requirements are met[.]"). As discussed in the University's original Brief, Plaintiff has failed to plead the required elements of a New Jersey RICO claim, including the existence of an "enterprise" or the University's association with and participation in the "enterprise."

Second, even if Plaintiff had satisfied all of the other requirements of a RICO claim, he has not stated a valid claim for aiding and abetting. To find a defendant liable for aiding and abetting, "plaintiff must prove (1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it." *Jaguar Cars v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 270 (3d Cir. 1995).

Assuming for the purpose of this motion only that Mr. Exoo engaged in substantive illegal acts, Plaintiff has not pled facts sufficient to establish that the University knew of the commission of the acts detailed in the Complaint or acted with intent to facilitate them. Plaintiff's claim against the University is based entirely on the fact that Mr. Exoo is employed by the University.

---

[3] Although there is no post-*Rolo* case law addressing aiding and abetting in the context of a New Jersey RICO claim, we assume for the purpose of this motion only that the standards articulated by New Jersey Courts prior to *Rolo* would apply to such a claim.

The Complaint includes nothing more than conclusory allegations that Mr. Exoo was allowed to use University time and property to dox Plaintiff and that his actions were known to University faculty and staff. These conclusory allegations, without any factual basis, are clearly not sufficient to satisfy Plaintiff's pleading burden.

In opposition to the University's motion, Plaintiff attaches two emails that appear to have been sent from someone named "Bill" to University employees in June 2019. (Plaintiff's Brief, Ex. B). These emails do not establish the University's involvement in any RICO enterprise or that the University aided and abetted a RICO enterprise.

As an initial matter, they appear to be sent long after the alleged actions in the Complaint. Plaintiff alleges in the Complaint that he was first "doxed" on October 29, 2018 and then terminated from his job on January 16, 2019. (Complaint, ¶¶ 19, 24, 59(d)). The attached emails were sent in June 2019, almost six months after Plaintiff was terminated from his employment and therefore could not establish that the University knew about Mr. Exoo's alleged doxing activity between October 2018 and January 2019. (Plaintiff's Brief, Ex. B).

In addition, the emails are from an anonymous person who appears to be named "Bill." Plaintiff's Brief provides no indication as to the identity of the individual who sent the alleged emails. As such, these emails could have been sent by Plaintiff himself in an effort to bolster his own claim.

Finally, even if these emails had been sent before Mr. Exoo allegedly doxed Plaintiff, the fact that emails may have been sent does not establish, or tend to establish, that the University acted with intent to facilitate Mr. Exoo's activities. As a result, the

emails do not provide any support for Plaintiff's claim that the University aided or abetted a RICO conspiracy.

The only *fact* that Plaintiff has alleged is that Mr. Exoo was employed by the University. That fact, alone, cannot satisfy Plaintiff's obligation to state a claim that the University aided and abetted Mr. Exoo's conduct. Importantly, Plaintiff cites to no authority supporting this argument.

C. **Plaintiff's opposition does not cure the Complaint's failure to plausibly allege an "enterprise" or the University's participation in an enterprise**

Plaintiff's brief all but ignores the well-establish pleading requirements for RICO claims. Indeed, Plaintiff fails to provide any significant discussion regarding the existence of, or the University's participation in, a RICO "enterprise." It is well-established that to adequately plead a federal RICO claim, Plaintiff is required to identify facts "plausibly implying the existence of an enterprise with . . . a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369-70 (3d Cir. 2009) (internal citations and quotations omitted).

The Complaint offers no detail regarding the structure of the alleged enterprise except to state that the University, together with Twitter and others were a part of it. The Complaint fails to identify any "relationship" between Twitter, Ms. Gadde and the University, and there is no indication that the University had any knowledge of Twitter or Ms. Gadde's alleged involvement in the enterprise.

Plaintiff's Brief claims, in conclusory fashion, that "Enterprise associates are related to one another and share 'intelligence' on their targets with each other and send cryptic confirmatory messages to each other after performing a task in furtherance of the

9

Enterprise's common purpose." (Plaintiff's Brief, p. 14).  However, neither the Complaint nor Plaintiff's Brief allege that the University ever shared intelligence on specific targets or sent confirmatory messages to anyone.  Plaintiff has failed to assert any facts indicating the presence of a nexus between the University and the alleged racketeering activity, which is required to sustain a racketeering claim.

Plaintiff's brief also argues that the common "purpose" of the "enterprise" was to was to "expose fascists." *Id*.  Again, however, the Complaint and Brief are devoid of any facts tending to establish that the University ever participated in these activities in any fashion.

Plaintiff's failure to provide factual support for his claims is telling.  Certainly, if Plaintiff had *any* facts to support his claim that an enterprise existed, and that the University was a participant in that enterprise, he would have provided them in opposition to the present motion.  He did not, because he cannot.  As such, the University's motion should be granted in its entirety, with prejudice.

**D.    Plaintiff's speculative allegations do not satisfy his obligation to plead a "pattern" of racketeering activity**

"A 'pattern of racketeering activity means' at least two predicate acts that 'are related and that amount to or pose a threat of continued criminal activity.'" *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *see also Alpha Cepheus, LLC v. Chinh Chu*, 2019 U.S. Dist. LEXIS 221034, at *24 (quoting *H.J. Inc.*, 492 U.S. at 239).  The predicate acts must be committed within a ten-year period.  18 U.S.C. § 1961(5).  "Relatedness can be shown through evidence that the criminal activities have the same or similar purposes, results, participants, victims, or methods of

10

commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *U.S. v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) (internal quotation and citations omitted).

As explained in the University's original Brief, the alleged racketeering activity at issue (in which the University played absolutely no part) occurred over a period of roughly three months. The Complaint clearly states that Mr. Exoo doxed Plaintiff for "the first time" on October 29, 2018. Complaint at ¶ 24. The Complaint is similarly clear that Plaintiff was terminated on January 16, 2019 – less than three months after the doxing began. *Id*. at ¶ 59(d).

Knowing that this short period of time is not sufficient to establish a "pattern" of racketeering conduct under the federal and state RICO statutes (*see Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1417 (3d Cir. 1991)), Plaintiff claims in his Brief that the "enterprise" has been "operational" for at least three years. (Plaintiff's Brief, p. 15). Plaintiff supports this baseless allegation by stating that "it is reasonable to suspect that the enterprise beg[a]n its racketeering activities prior to 2016 using unknown Twitter accounts," and that the University has known of Mr. Exoo's alleged conduct since at least 2017, "because that is when [the University] decided Exoo was a subject matter expert and invited him to give lectures teaching doxing on [the University's] campus to [University] students." *Id*. Stated differently, Plaintiff is asking this Court to believe that the "enterprise" had been active for three years because Mr. Exoo was probably using other, unknown Twitter accounts during that time, and that the University must have known about his "probable" activities because he gave a lecture on internet research on campus.

However, as with his other allegations in the Complaint, Plaintiff fails to provide any facts to support these accusations other than his own suspicions. Without more, Plaintiff's conjecture alone is not sufficient to withstand a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level.").

## **CONCLUSION**

For all of the foregoing reasons, as well as the reasons stated in the University's original Brief, the University respectfully requests that the Court dismiss all claims against it with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6).

Dated:  November 30, 2020                           BOND, SCHOENECK & KING, PLLC


By:    /s/ Monica C. Barrett
          Monica C. Barrett, Esq.
Office and P.O. Address
600 Third Avenue
22nd Floor
New York, NY 10016
Telephone:   (646) 253-2300
Facsimile:     (646) 253-2383
Email: mbarrett@bsk.com

*Attorneys for Defendant St. Lawrence University*