**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL D'AMBLY,<br>Plaintiff,<br><br>vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH<br>GORDON; ST. LAWRENCE UNIVERSITY;<br>TRIBUNE PUBLISHING COMPANY; NEW<br>YORK DAILY NEWS; VIJAYA GADDE;<br>TWITTER, INC; COHEN, WEISS AND<br>SIMON, LLP;<br><br>Defendants. | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JAD<br><br>Hon. John M. Vazquez, U.S.D.J.<br>Oral Argument Requested<br><br>Return Date: March 1, 2021 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTIAN EXOO'S
MOTION TO DISMISS PURSUANT TO F.R.C.P. Rules 12(B)(1) and 12(b)(6)

THE MARLBOROUGH LAW FIRM, P.C.
Christopher Marlborough, Esq.
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com

**ZMO Law PLLC**
Victoria Medley
260 Madison Avenue, 17th Floor
New York, New York 10016
Phone: (212) 685-0999
Fax: (212) 991-8952
E-mail: vm@zmolaw.com

*Counsel for Defendant Christian Exoo*

**TABLE OF CONTENTS**

**INTRODUCTION**……………………………………………………………1

**STATEMENT OF FACTS**…………………………………………………..2

    A.  Plaintiff D'Ambly……………………………………………...2

    B.  The New Jersey European Heritage Association………………4

    C.  Christian Exoo……………………………………………….5

**ARGUMENT**………………………….........................................7

    A.  Legal Standard………………………………………………7

    B.  The First Amendment Requires Dismissal with
        Prejudice of Counts II and III, Which Allege Tortious
        Interference and Intrusion Upon Seclusion……………………...7

        1.  Plaintiff's Count II for Tortious Interference
            Should be Dismissed with Prejudice…………………………7

        2.  Plaintiff's Count III for Intrusion Upon Seclusion
            Should be Dismissed………………………………………8

    C.  Count II, Tortious Interference, Should Be Dismissed
        with Prejudice as There is No Cause of Action for
        Truthful Statements…………………………………………9

    D.  Count III, Intrusion Upon Seclusion, Should Be
        Dismissed with Prejudice as Plaintiff Cannot Make
        Out the Elements of the Tort…………………………………...9

    E.  Counts IV, V, and VI Are Criminal Statutes
        Without a Private Right of Action………………………….....11

        1.  There Is No Private Right of Action for
            Violations of 18 U.S.C. § 875(c) (Count V)…………………12

        2.  There Is No Private Right of Action for Violations
            of 18 U.S.C. § 2261(A) (Count VI)…………………………12

        3.  There Is No Express or Implied Private Right
            of Action for Violations of N.J.S.A. 2C:33-4.1(a)

(Crime of Cyber Harassment) or N.J.S.A.
2C:30-31(a) (Stalking)(Count IV)……………………………… 13

F.  Count IX, Plaintiff's Federal RICO Claim
(Count IX and X) Should be Dismissed………………………… 16

  1.  Plaintiff Failed to Allege Requisite Predicate Acts
in Furtherance of the Alleged Conspiracy (Count IX)……….. 16

  2.  Plaintiff Failed to Allege a Pattern of
Racketeering Activity and the Existence
of a RICO Enterprise (Count IX)……………………………19

  3.  Plaintiff Failed to Allege a RICO Conspiracy (Count X)…….20

  4.  Plaintiff Should be Required to Submit a RICO
Statement pursuant to Local Civil Rule 16.1(b)(4)…………...21

G.  Count VIII for N.J. Racketeering Should be Dismissed………….21

H.  CWS' Cross Claim for Indemnification Should be Dismissed…...25

**CONCLUSION**……………………………………………………… 25

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*Adler's Quality Bakery, Inc. v. Gaseteria*,
    32 N.J. 55 (1960)……………………………………………………….. 25

*Agundis v. Rice*,
    2018 U.S. Dist. LEXIS 117620 (N.D. Ala. July 13, 2018)…………... 13

*Alexander v. Hendrix*,
    2015 U.S. Dist. LEXIS 69451 (D. Md. May 29, 2015)……………… 12, 13

*Alvarado v. KOB-TV, LLC*,
    2005 U.S. Dist. LEXIS 45372 (D.N.M. Nov. 14, 2005)…………….. 11

*Ashley v. Metelow*,
    2018 U.S. Dist. LEXIS 158561 (D. N.J. Sep. 17, 2018)…………….. 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…..…………………………………………………7

*Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.*,
    2000 U.S. Dist. LEXIS 18728 (E.D. Pa. Dec. 7, 2000)……………… 8

*Binary Semantics Ltd. v. Minitab, Inc.*,
    2008 U.S. Dist. LEXIS 28602 (M.D. Pa. Mar. 20, 2008)…………… 20

*Bisbee v. John C. Conover Agency, Inc.*,
    186 N.J. Super. 335 (App.Div.1982)…………………………………10

*Brignola v. Home Properties, L.P.*,
    2013 U.S. Dist. LEXIS 60282 (E.D. Pa. Apr. 26, 2013)……………..10, 11

*Brune v. Takeda Pharm. U.S.A., Inc.*,
    2019 U.S. Dist. LEXIS 123022 (S.D. Miss. July 24, 2019)………… 14

*Bryant v. Yellow Freight Systems*,
    989 F. Supp. 966 (N.D. Ill.,1997)……………………………………12

*Buckley v. Valeo*,
    424 U.S. 1, 96 S. Ct. 612 (1976)……………………………………...1

*Cartel Capital Corp. v. Fireco of New Jersey*,
   81 N.J. 548 (N.J. 1980)……………………………………………25

*Chadda v. Mullins*,
   2010 U.S. Dist. LEXIS 119152 (E.D. Pa. Nov. 9, 2010)…………… 12

*Cintas Corp. v. Unite Here*,
   601 F.Supp.2d 571 (S.D.N.Y. 2009)…………………………………19

*Clements v. Miller*,
   2005 U.S. Dist. LEXIS 36812 (D. Colo. Aug. 29, 2005)…………… 12

*C.R. Bard, Inc. v. Wordtronics Corp.*,
   235 N.J. Super. 168 (Law Div. 1989)…………………………………9

*Cuadrado-Concepcion v. United States*,
   2020 U.S. Dist. LEXIS 143040 (S.D. Ga. Aug. 10, 2020) ………….. 14

*E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*,
   294 N.J. Super. 158 (Super. Ct. App. Div. 1996)……………………. 9

*Fellner v. Tri-Union Seafoods, L.L.C.*,
   2010 U.S. Dist. LEXIS 36195 (D.N.J. Apr. 13, 2010)………………. 3, fn.1

*Fox v. Tippetts*,
   2009 U.S. Dist. LEXIS 104895 (W.D. La. Nov. 10, 2009)…………. 12, 13

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009)………………………………………… 8

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)…………………………………………………..12

*Helios Streaming, LLC v. Vudu, Inc.*,
   2020 U.S. Dist. LEXIS 82376 (D. Del. May 11, 2020)………………3, fn. 2

*Horowitz v. Marlton Oncology, P.C.*,
   116 F. Supp. 2d 551 (D.N.J. 1999)…………………………………..22

*In re Wellbutrin SR/Zyban Antitrust Litigation*,
   281 F. Supp.2d 751 (E.D.Pa. 2003)…………………………………..3, fn. 1

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016)………………………………………… 11

*Int'l Ass'n of Machinists v. Jackson*,
    2010 U.S. Dist. LEXIS 15885 (E.D. Pa. Feb. 19, 2010)……………..18

*Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot.*,
    2014 U.S. Dist. LEXIS 23411 (E.D. Pa. Feb. 24, 2014)……………..7

*Jalowiecki v. Leuc*,
    182 N.J. Super. 22 (N.J. Super. Ct. App. Div. 1981))………..……… 14

*Jersey Asparagus Farms, Inc. v. Rutgers Univ.*,
    803 F. Supp. 2d 295 (D.N.J. 2011)………………………………... 22

*Jung v. Pennsylvania*,
    2018 U.S. Dist. LEXIS 108289 (M.D. Pa. June 27, 2018)…………...17

*Koch v. Law Firm Schemery Zicolello*,
    2020 U.S. Dist. LEXIS 153000 (M.D. Pa. Aug. 21, 2020)………….. 12

*Kruska v. Perverted Justice Found. Inc. Org.*,
    2010 U.S. Dist. LEXIS 126765 (D. Ariz. Nov. 17, 2010)…………… 13

*Leeder v. Feinstein*,
    2019 U.S. Dist. LEXIS 108810 (D.N.J. June 28, 2019)……………..22

*Lostutter v. Olsen*,
    2017 U.S. Dist. LEXIS 136280 (M.D.N.C. Aug. 24, 2017)………….14, 15

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)………………………………………………..16

*Magnum v. Archdiocese of Phila.*,
    253 F. App'x 224 (3d Cir. 2007)………………………………...7

*Moore v. Hoff*,
    821 N.W.2d 591 (Minn. Ct. App. 2012)……………………….....8

*Northland Ins. Co. v. Shell Oil Co.*,
    930 F. Supp. 1069 (D.N.J. 1996)………………………………21

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)……………………………………..7

*Pinkney v. Meadville, Pa.*,
    2020 U.S. Dist. LEXIS 73669 (W.D. Pa. Apr. 27, 2020)…………..10

*Pioneer Contracting, Inc. v. E. Exterior Wall Sys.*,
    2005 U.S. Dist. LEXIS 5197 (E.D. Pa. Mar. 30, 2005)................17

*Planned Parenthood of the Columbia/Willamette, Inc.*
    *v. Am. Coal. of Life Activists*,
    290 F.3d 1058 (9th Cir. 2002)............................................. 16

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255 (N.J. 2001)..............................................14

*Rock v. BAE Systems, Inc.*,
    556 F. App'x 869 (11th Cir. 2014)........................................13

*Rothberg v. Marger*,
    2012 U.S. Dist. LEXIS 71088 (D.N.J. May 21, 2012)................21

*Rumbauskas v. Cantor*,
    138 N.J. 173 (1994)......................................................10

*Scheidler v. NOW, Inc.*,
    537 U.S. 393 (2003)..........................................17, 18, 22

*Scheidler v. NOW, Inc.*,
    547 U.S. 9 (2006)...........................................18, 19

*Sedima, S.P.R.L v. Imrex Co.*,
    473 U.S. 479 (1985)....................................................16

*Snyder v. Phelps*,
    562 U.S. 443 (2011)......................................................9

*State v. Ball*,
    268 N.J. Super. 72 (App. Div.1993),
    *aff'd*, 141 N.J. 142 (1995).............................................. 22

*Thompson v. Thompson*,
    484 U.S. 174 (1988)...................................................11, 12

*Tryanowski v. Lodi Bd. of Ed.*,
    274 N.J. Super. 265 (N.J. Super. 1994)............................... 25

*U.S. v. Fullmer*,
    584 F.3d 132 (3d Cir., 2009)............................................ 24

*U.S. v. Cook*,
    2020 U.S. Dist. LEXIS 122453 (N.D. Miss. July 13, 2020)........... 7

*Vassallo v. Bank of N.Y.*,
    2016 U.S. Dist. LEXIS 47895  (D.N.J. Apr. 8, 2016) ……………… 17

*Walsh v. Krantz*,
    2008 U.S. Dist. LEXIS 44204 (M.D. Pa. June 4, 2008)………………11

*Warden v. McLelland*,
    288 F.3d 105 (3d Cir. 2002)………………………………………..16

*Watts v. U.S.*,
    394 U.S. 705 (1969)………………………………………………..24

*Weiss v. Sawyer*,
    28 F. Supp.2d 1221 (W.D. Okla. 1997)……………………………… 12

*Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*,
    281 Pa. Super. 560 (Pa. Super. 1980)…………………………………8

*Zavala v. Wal-Mart Stores, Inc.*,
    691 F.3d 527 (3d Cir. 2012)……………………………………….. 20

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012)………………………………………20

## Constitution

United States Constitution, Amendment I…………………………… 1, 7, 8, 9, 16, 24

New Jersey Constitution, Article I, Section 6……………………… 1, 7, 8, 9, 24

## Rules and Statutes

18 U.S.C. § 875(C)……………………………………………………12, 13

18 U.S.C. § 1951……………………………………………………17, 18, 19

18 U.S.C. § 1952……………………………………………………17, 18, 19

18 U.S.C § 1962(c)………………………………………………… 2, 16, 17, 18, 19, 20, 21, 22

18 U.S.C § 1962(d)…………………………………………………16, 20, 21

18 U.S.C. §§1961-1968………………………………………………………..21

18 U.S.C. § 2261(A)……………………………………………………... 12, 13

N.J.S.A. 2C:12-10……………………………………………………14, 15, 16

N.J.S.A. 2C:20-5……………………………………………………………22, 23

N.J.S.A. 2C:30-31a…………………………………………………………13

N.J.S.A. 2C:33-4.1……………………………………………………13, 14, 15

N.J.S.A. 2C:41(a)(1)(h)……………………………………………… 22, 23, 24

N.J.S.A. 2C:41(a)(1)(bb)……………………………………………22, 23, 24

## Other Authorities

Fed. R. Civ. P. 12(b)(6)……………………………………………………… 1

Local Civil Rule 16.1(b)(4)………………………………………………21

Restatement (Second) of Torts § 772(a) (1977)…………………………… 9, 10, 11

## INTRODUCTION

As Justice Brandeis famously noted, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis Brandeis, Other People's Money (1914), quoted in *Buckley v. Valeo*, 424 U.S. 1, 67 (1976). Defendant Christian Exoo ("Defendant Exoo") is plausibly accused of nothing more than shining sunlight on Plaintiff Daniel D'Ambly ("Plaintiff")'s leadership of the New Jersey American Heritage Association ("EHA"). EHA is a neo-Nazi hate group that has been recognized by the New Jersey Office of Homeland Security and Preparedness in its annual Terror Threat Assessment Reports as a white supremacist organization rapidly expanding its operations in New Jersey and across the country. The sole purpose of Plaintiff's Complaint is to turn off that light and intimidate Defendant Exoo into silence – a cause of action our law does not permit.

Plaintiff maintains that he was fired from his job when his employer learned of his leadership role in the white supremacist group. Plaintiff now seeks to blame the unsurprising result of his hate-mongering activities on others, including Defendant Exoo, Exoo's employer, Plaintiff's former employer, his labor union's law firm, Twitter.com and a Twitter executive. In his Complaint, Plaintiff asserts thirteen claims against defendants, including nine wholly unsupported counts against Defendant Exoo. By this motion, Defendant Exoo seeks dismissal – Counts II, III, IV, V, VI, VIII, IX, X, XI in the Complaint – pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim.

First, Plaintiff's claims in Counts II and III are precluded by Defendant's Exoo's right to freedom of speech under the United States and New Jersey Constitutions. Second, in Counts IV,

V and VI of the Complaint, Plaintiff asserts civil claims based on criminal statutes for which no private right of action exists.

Third, Plaintiff asserts state and federal RICO claims based on a tin foil hat conspiracy theory. Plaintiff alleges that Defendant, a part-time librarian at a university and one of more than 300 million Twitter users, is the mastermind of a racketeering organization directing the "Exoo Enterprise" from his librarian's desk on the university's campus. ¶¶ 102-133. Plaintiff claims that the "Exoo Enterprise" is helping his employer "St. Lawrence achieve their global mission." *See id.* ¶ 109. Presumably, St. Lawrence's "global mission" refers to its perceived opposition to Nazism and white supremacy. The other alleged participants in the "Exoo Enterprise" include Defendants Twitter and a Twitter executive, Vijaya Gadde, whom Plaintiff described as the lynchpin of the "Exoo Enterprise." *See id.* ¶ 109. Plaintiff's allegations about Defendant Exoo's extraordinary power to control and direct the activities of his alleged co-conspirators, St. Lawrence University, Twitter and a top Twitter executive are not only implausible—they are pure fantasy.

Fourth, the crossclaim for indemnification asserted by Cohen, Weiss and Simon, LLP ("CWS") against Defendant Exoo should be dismissed. A crossclaim for indemnification can only stand where the party seeking indemnification acts without fault. There is no circumstance under which CWS can be found liable to Plaintiff for malpractice and also be found to have acted without fault.

**STATEMENT OF FACTS**

## A.  Plaintiff D'Ambly

Plaintiff Daniel D'Ambly operates under several online aliases including Dan D'Andrea and Titus D'Andrea. Plaintiff D'Ambly is the leader of the New Jersey European Heritage

Association ("EHA"), a white supremacist extremist organization based in Dayton, New Jersey. *See* Declaration of Christopher Marlborough ("Marlborough Decl.") filed herewith, Decl., Ex. A, 2019 NJ Department of Homeland Security Terrorism Threat Assessment at 17 (identifying EHA as a white supremacist organization); Ex. B, 2020 NJ Department of Homeland Security Terrorism Threat Assessment at 17 (describing the white supremacist recruitment activities of EHA);[1] *See also* Marlborough Decl., Ex. C, 2018 Tweets; Ex. D, 2019 Tweets.[2]

Plaintiff was terminated from his job as a result of repugnant public statements in support of white supremacist ideology after his employer, the Daily News, independently verified that Dan D'Ambly was openly spreading white supremacist propaganda. *See* Complaint at ¶¶ 24, 26. Plaintiff alleges that Defendant Exoo was responsible for this termination because Exoo exposed D'Ambly on the social media site Twitter.com. However, Plaintiff exposed his own association with EHA by attending white supremacist rallies like the Patrick Little's[3] "J[ew] Walk" event in Princeton, New Jersey, the deadly Unite the Right rally in Charlottesville, Virginia, and the Unite the Right the Right 2 rally. *See* Marlborough Decl., Ex. C, "Tweets" at 16-17. As shown in the Tweets, Plaintiff did not attempt to conceal his identity when he appeared in videos on EHA's

---

[1] Defendant Exoo requests that the Court take judicial Notice of the Terror Threat Assessment Reports (Marlborough Decl. Exs. A and B). *See Fellner v. Tri-Union Seafoods, L.L.C.*, No. 06-cv-0688, 2010 U.S. Dist. LEXIS 36195, at *19 n.8 (D.N.J. Apr. 13, 2010) (taking judicial notice of publicly available governmental reports); *In re Wellbutrin SR/Zyban Antitrust Litigation*, 281 F. Supp.2d 751, 754 (E.D.Pa. 2003) (taking judicial notice of FDA report posted on the official FDA website).

[2] The Exoo Tweets (Exs. C and D to the Marlborough Decl.), are incorporated by reference into the Complaint. *See* Complaint at ¶¶ 24-25, 28-29, 31, 38, 41. *See also Helios Streaming, LLC v. Vudu, Inc.*, No. 19-cv-1792, 2020 U.S. Dist. LEXIS 82376, at *21 (D. Del. May 11, 2020) (granting motion to dismiss and finding that plaintiff mischaracterized letter incorporated by reference into the complaint).

[3] Mr. Little has been credited with advocating for Jews to be raised as livestock and tortured. *See id.*

"Jersey Goyz 14" YouTube channel holding a handmade sign that read: "Expel the Jew by '22."

*Id.* Nor did D'Ambly attempt to conceal his identity when he publicly participated in the Unite

the Right rallies. *See* Marlborough Decl., Ex. C 2018 Tweets at 16; Ex. D, 2019 Tweets at 4, 13.

As the Tweets and EHA's own YouTube page indicate, if Plaintiff were truly trying to remain

anonymous, he did a very poor job of it.



*See* Marlborough Decl., Ex. C, 2018 Tweets at 17. (Plaintiff is pictured on the right in a screenshot from EHA's youtube.com page posted by Defendant Exoo on Twitter.

**B. The New Jersey European Heritage Association**

According to the New Jersey Office of Homeland Security and Preparedness

("NJOHSP"), EHA is "a white supremacist organization formed in 2018." *See* Marlborough

Decl., Ex. A, NJOHSP, 2019 Terror Threat Assessment Report at 17. Since 2019, NJOHSP has

warned New Jersians of the threat posed by EHA in the "White Supremacist Extremist" section

of its annual Terrorist Threat Assessment Report. *See id.*; Marlborough Decl., Ex. B, NJOHSP,

2020 Terror Threat Assessment Report at 10. In response to NJOHSP, EHA stated on its

website: "this course of action was taken by the state DHS to pander to their Jewish masters."

https://www.njeha.com/state-of-affairs/#respond (last visited December 6, 2020). Similarly, the

Southern Poverty Law Center includes EHA on its list of New Jersey-based hate groups that it is

monitoring. https://www.splcenter.org/states/new-jersey (last visited December 6, 2020). The

Anti-Defamation League also tracks the activities of EHA.

https://www.adl.org/resources/backgrounders/new-jersey-european-heritage-association-njeha

(last visited December 6, 2020).

## C.  Christian Exoo

Defendant Exoo is one of more than 300 million Twitter users. His Twitter profile states

that he exposes fascists, gets them fired, de-homed, kicked out of school, etc. *See* Complaint at ¶

15. The Exoo Tweets do not condone or advocate any form of violence. *See generally*

Marlborough Decl., Ex. C, 2018 Tweets; Ex. D, 2019 Tweets.

The Complaint alleges that on October 29, 2018, Defendant Exoo identified Plaintiff as

the leader of EHA and disclosed his multiple aliases, his hometown, and his employer's contact

information (not D'Ambly's personal contact information) and his union Referendum Board

membership. ¶ 24.[4] *See* Marlborough Decl., Ex. C, 2018 Tweets at 2-3, 9-13, 15-20. Defendant

Exoo also posted information on Twitter concerning D'Ambly's association with EHA and



*See* Marlborough Decl. Ex. C, Tweets at 14-15.

---

[4] The Complaint alleges in paragraph ¶ 70 that Defendant Exoo exposed Plaintiff's "home address and familial relations." However, this allegation is inconsistent with paragraphs 24-26 of the Complaint, which do not refer to disclosure of Plaintiff's home address or familial relations. Moreover, the Exoo Tweets do not disclose any information concerning Plaintiff's home address, familial relations, or Plaintiff's personal telephone numbers. *See* Marlborough Decl. Ex. C at 2, 3, 9, 19, 20. Even if such disclosure was actionable, which it is not, Plaintiff has not plausibly alleged that Defendant disclosed either his home address or his familial relations.

posted photos of D'Ambly undisguised public participation in an EHA "Jew Walk" event and the Unite the Right 2 rally from EHA's YouTube.com page. *See* 2018 Tweets at 16-17. Contrary to the allegations in the Complaint, the 2018 Exoo Tweets did not promote or condone any violence against Plaintiff or his employer. Indeed, Defendant Exoo warned Twitter users against the use of "dangerous rhetoric that motivated" a recent massacre. *Id*. at 18.

The Complaint further alleges that in January 2019, Defendant Exoo posted information on Twitter disclosing EHA's planned January 12th march and a planned counterprotest. *See* Complaint at ¶¶ 28-29, 31. *See also* Ex. D, 2019 Tweets at 2-7, 9-11. Contrary to Plaintiff's assertions, nothing in the Exoo Tweets can plausibly be interpreted as inciting violence or criminal activity against Plaintiff or anyone else. *See* Marlborough Decl. Ex. D, 2019 Tweets.

The Complaint alleges that Defendant Exoo is responsible for Plaintiff's termination from the Daily News. D'Ambly admits, however, that his termination was based on his employers' hostility to Plaintiff's white supremacist views and he was only terminated after his employer confirmed his association with a white supremacist organization. *See* Complaint at ¶ 26 (noting the employer's report "confirmed D'Ambly's association with EHA), 58 ("Defendants Tribune and Daily News discharged D'Ambly due to their enmity towards his racially identifiable associations, whereas non-white Tribune and Daily News employees who participate in racially identifiable associations are not punished or terminated.").

Despite D'Ambly's claims of extortion, the Complaint does not allege that any of the Defendants sought to obtain property from Plaintiff or anyone else.

**ARGUMENT**

## A.  Legal Standard

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Nevertheless, the Court need not accept as true inferences unsupported by facts set out in the Amended Complaint or legal conclusions cast as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Magnum v. Archdiocese of Phila*., 253 F. App'x 224, 225 (3d Cir. 2007). To be clear, under U.S. Supreme Court precedent, this is required at this stage of the case to evaluate whether Plaintiff has alleged facts sufficient to establish that he may eventually be entitled to redress such that any of his claim(s) should be allowed to proceed to discovery, summary judgment motion practice, and, potentially, a trial on the merits. *Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot*., Civil No. 13-cv-2415, 2014 U.S. Dist. LEXIS 23411, at *3 (E.D. Pa. Feb. 24, 2014).

## B.  The First Amendment Requires Dismissal with Prejudice of Counts II and III, Which Allege Tortious Interference and Intrusion Upon Seclusion

1.  *Plaintiff's Count II for Tortious Interference Should be Dismissed with Prejudice*

Defendant Exoo is accused of providing truthful, non-confidential information and supporting evidence concerning Plaintiff to the public in an act described by Plaintiff as "doxxing." As other courts have noted, "there is simply no existing framework in the United States which criminalizes the act of "doxxing" or "doxing" private citizens." *United States v. Cook*, No. 3:20CR19, 2020 U.S. Dist. LEXIS 122453, at *31, 34 (N.D. Miss. July 13, 2020) (dismissing criminal indictment for cyber-harassment as an unconstitutional violation of the First Amendment as applied to doxing activities).

The court system is not a forum for plaintiffs seeking to punish individuals for the dissemination of truthful information. It is well-settled that the First Amendment of the United

States Constitution and Article I, Section 6 of the New Jersey Constitution protect the dissemination of truthful statements *See* U.S. Constitution, Amendment I ("Congress shall make no law … abridging the freedom of speech); N.J. Constitution Article I, Section 6 ("No law shall be passed to restrain or abridge the liberty of speech or of the press"). "The communication of truthful information does not constitute improper interference with another's contractual relationships." *Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.,* Civ No. 00-cv-1962, 2000 U.S. Dist. LEXIS 18728, at *7-8 (E.D. Pa. Dec. 7, 2000), *citing Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*, 281 Pa. Super. 560 n.12 (Pa. Super. 1980). *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) ("when a claim of tortious interference with business relationships is brought as a result of constitutionally-protected speech, the claim is subject to the same First Amendment requirements that govern actions for defamation.").

*Moore v. Hoff*, 821 N.W.2d 591, 599 (Minn. Ct. App. 2012) is directly on point. In that case, the Minnesota Supreme Court held that an online blogger could not be liable for tortious interference with the plaintiff's employment contract when the plaintiff was fired from his job after the blogger exposed truthful information concerning the employee's reprehensible conduct as that is constitutionally protected speech. *See* 821 N.W.2d at 599. "Because truth is an absolute defense to a claim for defamation … truth should also be a defense to a claim for tortious interference with a contract arising out of an allegedly defamatory statement." *Id*. at 596-97. Article I, Section 6 of the New Jersey Constitution explicitly provides that truth is an absolute defense to defamation claims under New Jersey law. Similarly, truth must be an absolute defense to claim for tortious interference with business contracts.

  2. *Plaintiff's Count III for Intrusion Upon Seclusion Should be Dismissed*

The First Amendment also protects speakers from claims of intrusion upon seclusion. In *Snyder v. Phelps*, 562 U.S. 443, 460-61 (2011), the U.S. Supreme Court held that the First Amendment trumped plaintiff's claim for intrusion upon seclusion where the defendants publicly espoused their beliefs resulting in harm to the plaintiff, and those beliefs were not provably false. Counts II and III allege constitutionally protected speech and must be dismissed with prejudice.

## C. Count II, Tortious Interference, Should Be Dismissed with Prejudice as There is No Cause of Action for Truthful Statements

Without invoking the Constitutional authority, courts have held that communicating truthful information to a third party does not satisfy the requirements of a tortious interference claim. *E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J. Super. 158, 180 (Super. Ct. App. Div. 1996) "[I]t is generally recognized that a party may not be held liable for tortious interference for merely providing truthful information to one of the contracting parties." citing *Restatement (Second) of Torts* § 772(a) (1977) ("One who intentionally causes a third person not to perform a contract . . . does not interfere improperly with the other's contracted relation, by giving the third person truthful information"); *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 173-74 (Law Div. 1989).

Defendant Exoo is alleged to have exposed truthful information concerning Plaintiff's participation in a prominent white supremacist organization. As a result of that exposure, Plaintiff was fired from his job because his employer disagreed with his political views. *See* Complaint at ¶ 58. Plaintiff admitted "Defendants Tribune and Daily News discharged D'Ambly due to their enmity towards his racially identifiable associations …." *Id*. Plaintiff's Count II for tortious interference against Plaintiff Exoo should be dismissed with prejudice.

## D. Count III, Intrusion Upon Seclusion, Should Be Dismissed with Prejudice as Plaintiff Cannot Make Out the Elements of the Tort

Plaintiff's intrusion upon seclusion claim fails on its face. The elements of the claim are delineated in the Second Restatement of Torts. *See Bisbee v. John C. Conover Agency, Inc*., 186 N.J. Super. 335, 339 (App.Div.1982); *Rumbauskas v. Cantor*, 138 N.J. 173, 179-82 (1994). The Restatement provides the following three-prong test:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

[3 Restatement (Second) of Torts § 652B (1977).] In other words, a plaintiff must plead (1) a privacy interest (2) that was violated, and (3) that the violation would be highly offensive to a reasonable person. The Complaint pleads none of these elements.

First, the allegations in the Complaint do not sufficiently allege the existence of any privacy interest that was violated. Defendant is alleged to have connected the public persona of Daniel D'Ambly, the printer for the Daily News, with the public persona of his alias Dan "Titus" D'Andrea, a leader of a white supremacist extremist group who publicly espouses white supremacist views at public events where he exposes his face and publishes his appearances on the internet on EHA's YouTube channel. *See* Marlborough Decl. Ex. C, Tweets at 2-3, 9-10, 16-17.

The tort involves an invasion of the plaintiff's "private" space or solitude, such as opening a person's mail, searching his safe or his wallet, or examining his bank account. *See* Restatement (Second) of Torts § 652B, cmt. b (citing examples). "A public document reporting information from a public record does not intrude on a Defendant's seclusion." *Pinkney v. Meadville, Pa*., No. 1:19-cv-167, 2020 U.S. Dist. LEXIS 73669, at *11 (W.D. Pa. Apr. 27, 2020). Even a person's home address—not at issue here in any event—is not a private fact sufficient to support a claim for publication of private facts. *See Brignola v. Home*

*Properties, L.P.,* No. 10-cv-3884, 2013 U.S. Dist. LEXIS 60282, at *34 (E.D. Pa. Apr. 26, 2013). Plaintiff's allegations fail to satisfy the first two prongs of the three-part test.

Second, Courts routinely dismiss intrusion upon seclusion claims based on the plaintiff's failure to show that the intrusion would be highly offensive to a reasonable person. *See e.g., In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294-95 (3d Cir. 2016) (affirming dismissal of intrusion upon seclusion claim against defendant Google Inc., where it's online child tracking practices were not "sufficiently offensive" to "survive a motion to dismiss"). In *Alvarado v. KOB-TV, L.L.C.*, No. 05-cv-750, 2005 U.S. Dist. LEXIS 45372, at *19 (D.N.M. Nov. 14, 2005), the Court dismissed an intrusion upon seclusion claim against the defendant under similar circumstances. The *Alvarado* Court found that the alleged intrusion consisting of the broadcast of plaintiffs' names and footage of their homes failed to satisfy the highly offensive standard. *Id.*

D'Ambly failed to plausibly allege that Defendant Exoo's conduct would meet the objective highly offensive standard. While Plaintiff's white supremacist views and activities are highly offensive to a reasonable person, the exposure of that association is not. There is nothing offensive about truthfully connecting D'Ambly's public persona with his would-be secret political activities, particularly since D'Ambly failed to conceal his identity at white supremacist events, which were published to the world on EHA's YouTube channel. As a result, Plaintiff's Count III for intrusion upon seclusion should be dismissed with prejudice.

## E.  Counts IV, V, and VI Are Criminal Statutes Without a Private Right of Action

Private individuals generally lack the authority to enforce federal criminal statutes. *Walsh v. Krantz*, No. 07-cv-616, 2008 U.S. Dist. LEXIS 44204, at *11 (M.D. Pa. June 4, 2008). A federal criminal statute may provide an implied private right of action only if Congress so intended in enacting the criminal statute. *See Thompson v. Thompson*, 484 U.S. 174, 179 (1988)

(holding that a private remedy will not be implied unless legislative intent can be inferred from statutory language or elsewhere). *See also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Because Plaintiff cannot create a cause of action where none exists, leave to amend would be futile and the claims should be denied with prejudice. *Walsh,* 2008 U.S. Dist. LEXIS 44204, at *13 ("[T]he motion to dismiss these criminal claims [] will be granted and leave to amend will be denied as futile.").

    *1.  There Is No Private Right of Action for Violations of 18 U.S.C. § 875(c) (Count V).*

Section 875(C) makes it a crime to transmit "in interstate or foreign commerce any communication containing any threat" to kidnap or injure another. 18 U.S.C. § 875(c). Courts in this Circuit and throughout the United States have determined that 18 U.S.C. § 875 does not authorize a private cause of action. *Chadda v. Mullins*, No. 10-cv-4029, 2010 U.S. Dist. LEXIS 119152, at *5-6 (E.D. Pa. Nov. 9, 2010). *Walsh*, 2008 U.S. Dist. LEXIS 44204, at *11 ("Defendants contend that Walsh cannot maintain the claims premised on criminal statutes [including] 18 U.S.C. § 875. The court agrees."); *Koch v. Law Firm Schemery Zicollello*, No. 4:19-cv-00361, 2020 U.S. Dist. LEXIS 153000, at *9 (M.D. Pa. Aug. 21, 2020) ("None of these statutes [18 U.S.C. § 875.] provide for a private civil cause of action."); *Bryant v. Yellow Freight Systems*, 989 F. Supp. 966, 968 (N.D. Ill.,1997); *Fox v. Tippetts*, No. 2:09-cv-00485, 2009 U.S. Dist. LEXIS 104895, at *8-9 (W.D. La. Nov. 10, 2009); *Weiss v. Sawyer*, 28 F. Supp.2d 1221, 1227 (W.D. Okla. 1997); *Clements v. Miller*, No. 04-cv-02455, 2005 U.S. Dist. LEXIS 36812, at *11 (D. Colo. Aug. 29, 2005); *Alexander v. Hendrix*, No. 14-cv-2666, 2015 U.S. Dist. LEXIS 69451, at *9 (D. Md. May 29, 2015). Plaintiffs' Count V should be dismissed with prejudice.

    *2.  There Is No Private Right of Action for Violations of 18 U.S.C. § 2261(A) (Count VI).*

Plaintiff's claim for violation of 18 U.S.C. § 2261(A), interstate stalking, must be dismissed because it is based on a criminal statute with no private cause of action. Courts across the country agree that there is no private right of action. *See Rock v. BAE Systems, Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014). *See also Agundis v. Rice*, No. 2:17-cv-00536, 2018 U.S. Dist. LEXIS 117620, at *32-33 (N.D. Ala. July 13, 2018) (noting Section 2261(A)(2) criminalizes interstate stalking, but does not create a private right of action); *Kruska v. Perverted Justice Found. Inc. Org.*, No. 08-cv-00054, 2010 U.S. Dist. LEXIS 126765, at *24 (D. Ariz. Nov. 17, 2010) ("Nowhere does 18 U.S.C. § 2261(a)(2) provide a private right of action or recovery."); *Fox*, 2009 U.S. Dist. LEXIS 104895, at *7-8 (dismissing plaintiff's claims under both 18 U.S.C. § 875(C) and 18 U.S.C. § 2261(A) because the statutes provide for not express or implied private right of action); *Alexander*, 2015 U.S. Dist. LEXIS 69451, at *9 (noting Section 2261A is "criminal in nature, and [does] not provide a private right of action").

As the Eleventh Circuit noted in *Rock*:

> There is no evidence from which we can infer that Congress intended to create a private right of action under § 2261A. The legislative history does not suggest that Congress contemplated a private right of action, and in fact indicates the opposite -- that Congress only intended to aid law enforcement in their criminal investigations and prosecutions. *See* H.R. Rep. No. 104-557, at 2-3.

*Id*. at 871.

Because there is no private right of action for violation of 18 U.S.C. § 2261(A), Plaintiff's Count VI for interstate stalking should be dismissed with prejudice.

3. *There Is No Express or Implied Private Right of Action for Violations of N.J.S.A. 2C:33-4.1(a) (Crime of Cyber Harassment) or N.J.S.A. 2C:30-31(a) (Stalking)(Count IV).*

Count IV alleges violations cyber harassment, N.J.S.A. 2C:33-4.1(a) (Crime of Cyber harassment) and a stalking statute, cited as N.J.S.A. 2C:30-31(a), that does not exist. For this pleading, Defendant Exoo assumes that Plaintiff refers to New Jersey's stalking statute, N.J.S.A.

2C:12-10 (Definitions; Stalking Designated a Crime; Degrees). New Jersey's cyber harassment and stalking statutes are both criminal statutes without private causes of action.

New Jersey courts "have been reluctant to infer" a private right of action when a statute does not expressly provide one. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 272-273. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Ashley v. Metelow*, No. 15-cv-3153, 2018 U.S. Dist. LEXIS 158561, at *9 (D. N.J. Sep. 17, 2018) (quoting *Jalowiecki v. Leuc*, 182 N.J. Super. 22, (N.J. Super. Ct. App. Div. 1981).

Plaintiff seeks to create private rights of action under New Jersey law where none exist. There is no evidence that the New Jersey legislature intended to create a private cause of action for either statute. Courts in other states have found that similar state criminal statutes for cyber harassment and stalking do not create private rights of action. *See e.g.*, *Brune v. Takeda Pharm. U.S.A., Inc.*, No. 1:18-cv-298, 2019 U.S. Dist. LEXIS 123022, at *23-24 (S.D. Miss. July 24, 2019) (holding that there is no private right of action under Mississippi criminal statute for cyber harassment); *Cuadrado-Concepcion v. United States*, No. 19-cv-305, 2020 U.S. Dist. LEXIS 143040, at *20 (S.D. Ga. Aug. 10, 2020) (no private right of action for Georgia's criminal stalking statute.); *Lostutter v. Olsen*, No. 1:16-cv-1098, 2017 U.S. Dist. LEXIS 136280, at *40-41 (M.D.N.C. Aug. 24, 2017) ("[T]he court has found that Lostutter's "cyber-stalking" claims

cannot survive dismissal, as they rely on [North Carolina] criminal statutes that have no apparent private right of action."). Therefore, Count IV should be dismissed with prejudice. *See Ashley*, 2018 U.S. Dist. LEXIS 158561, at *9 (granting motion not dismiss where plaintiff failed to show legislative intent to create a private right of action).

Moreover, Defendant Exoo's alleged conduct did not violate these criminal statutes. The cyber harassment statute requires that the criminal defendant:

> (1) threatens to inflict injury or physical harm to any person or the property of any person;

> (2) knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or

> (3)  threatens to commit any crime against the person or the person's property.

*See* N.J.S.A. 2C:33-4.1.

Plaintiff falsely claims that Defendant Exoo "encouraged and incited other to violence against D'Ambly," "inflict physical harm against D'Ambly's person and property" and "commit crimes against D'Ambly." *See id*. at ¶¶ 76-79. However, the Exoo Tweets belie those assertions. *See* Ex. C., 2018 Tweets; Ex. D, 2019 Tweets. Defendant Exoo did not incite others to commit criminal acts against D'Ambly, rather he exposed D'Ambly's white supremacist activities and disclosed D'Ambly's employer's publicly available contact information.

Likewise, the criminal stalking statute provides, in part, that: "A person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress." *See* N.J.S.A. 2C:12-10(1)(b). A "course of conduct" as used in the statute requires "repeated" conduct, meaning conduct on two

or more occasions. *See* N.J.S.A. 2C:12-10(1)(a)(1-2). D'Ambly alleges a single tweet that he claimed to interpret as a threat. *See* Complaint at ¶ 85. D'Ambly failed to establish a course of conduct by Defendant Exoo where the statute requires two or more threats. Moreover, under the circumstances, no reasonable person would fear for their safety as a result of Exoo's statements.

The First Amendment protects Mr. Exoo's political speech under these circumstances because it does not rise to the level of incitement of criminal conduct. When analyzing alleged threats, Courts distinguish between public political speech like Exoo's tweets and private speech. *See Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1089 (9th Cir. 2002) "Political speech, ugly or frightening as it may sometimes be, lies at the heart of our democratic process. Private threats delivered one-on-one do not." *Id.*

In *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 902, 929 (1982), the Supreme Court determined that the statement by civil rights leader Medgar Evers that "we're gonna break your damn neck" "did not exceed the bounds of protected speech." Similarly, Exoo's tweet that he was going to spend a week ruining D'Ambly's life does not incite violence and constitutes speech protected by the First Amendment. *See* Ex. D, 2019 Tweets at 12. In sum, Plaintiff's cyber harassment and cyberstalking claims are not actionable either civilly or criminally and should be dismissed with prejudice.

**F.  Count IX, Plaintiff's Federal RICO Claim (Count IX and X) Should be Dismissed**

To establish a claim for RICO, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L v. Imrex Co*., 473 U.S. 479, 496, (1985). The statute defines racketeering by a list of criminal activities that constitute predicate acts for purposes of RICO. *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).

   *1.  Plaintiff Failed to Allege Requisite Predicate Acts in Furtherance of the Alleged Conspiracy (Count IX).*

Establishing a pattern of racketeering is an essential element of a RICO claim. *See Vassallo v. Bank of N.Y.*, No. 15-cv-3227, 2016 U.S. Dist. LEXIS 47895, at *21 (D.N.J. Apr. 8, 2016) (Vasquez, J.) (dismissing with prejudice plaintiff's RICO claim and noting "the Complaint fails to identify any pattern whatsoever of racketeering activity -- an essential element of a RICO action."). Establishing such a pattern requires the commission of two or more predicate criminal acts under the RICO, 18 U.S.C. 1962(c). *Pioneer Contracting, Inc. v. E. Exterior Wall Sys.*, No. 04-cv-01437, 2005 U.S. Dist. LEXIS 5197, at *4 (E.D. Pa. Mar. 30, 2005) (dismissing RICO claim where plaintiff failed to properly allege predicate acts).

Plaintiff failed to allege any predicate acts under RICO, 18 U.S.C. 1962(c). Count IX of the Complaint alleges violations of 18 U.S.C. §§ 1951 (the "Hobbes Act") and 1952 (the "Travel Act"). While Plaintiff makes passing reference to these statutes, such "passing reference is insufficient to state a RICO claim upon which relief can be granted." *See Jung v. Pennsylvania,* No. 3:18-cv-01248, 2018 U.S. Dist. LEXIS 108289, at *12 (M.D. Pa. June 27, 2018) (recommending dismissal of Plaintiff's RICO claim predicated upon the Hobbes Act).

First, Plaintiff fails to satisfy the predicate act requirement under the Hobbes Act. The Hobbes Act provides, in part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. 1951(a).

In *Scheidler v. NOW, Inc.*, 537 U.S. 393, 405 (2003)("*Scheidler I*"), the United States Supreme Court determined that the RICO defendants, anti-abortion protestors who

17

sought to disrupt abortion clinics, did not violate Section 1951 because they did not seek to obtain any property. *Id*. (noting that extortion requires both the deprivation of property by the victim and the attainment of that property by the perpetrator). The Court held, "eliminating the requirement that property must be obtained to constitute extortion would not only conflict with the express requirement of the Hobbs Act, it would also eliminate the recognized distinction between extortion and the separate crime of coercion -- a distinction that is implicated in these cases." *Id*.

Similarly in *Int'l Ass'n of Machinists v. Jackson*, No. 09-150, 2010 U.S. Dist. LEXIS 15885, at *21-22 (E.D. Pa. Feb. 19, 2010), the plaintiff asserted a RICO claim against defendants in connection with the loss of his employment. The claim was dismissed because "the complaint d[id] not allege that the Individual Defendants obtained Plaintiffs' jobs." *Id*.

The pleading contains no allegations of robbery or extortion as those terms are defined by the United States Supreme Court. *See* Complaint at 1, 25, 60(b), 90, 103, 108, 110, 128, 129, 149, 157 (alleging that Defendant Exoo committed extortion). Plaintiff did not allege that Defendant Exoo or any of his alleged co-conspirators tried to obtain Plaintiff's job, or any other property, for themselves.

Plaintiff also alleged threats of violence are actionable under Section 1951. *See* Complaint at ¶ 120, 130. However, the Supreme Court has held that even actual acts of physical violence do not satisfy the predicate act requirement where those acts of violence are unrelated to robbery or extortion. *Scheidler v. NOW, Inc.*, 547 U.S. 9, 16, (2006) ("*Scheidler II*") ("We hold that physical violence unrelated to robbery or extortion

falls outside the scope of the Hobbs Act."). Defendant fails to plausibly allege a violation

of the Hobbes Act as a predicate to his RICO claim.

Second, Plaintiff fails to satisfy the predicate act requirement under the Travel Act. The

Travel Act applies to violence in connection with a defined list of "unlawful activity" limited to:

1) failure to pay excise tax for a business involving gambling, or liquor; 2) crimes concerning

narcotics or controlled substances, prostitution, extortion, bribery, arson, money laundering, and

3) obtaining money from criminal activity. *See* 18 U.S.C. § 1952. Plaintiff simply alleges that

Defendant Exoo participated in some sort of unlawful activity in connection with his "violent

doxing campaign." *See* Complaint at ¶ 120.

Plaintiff fails to allege any acts of violence or "unlawful activity" as defined by the

Travel Act. Extortion claims under the Travel Act require an attempt to take possession of

property. *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009). Plaintiff failed

to allege that Defendant Exoo, or any of his so called co-conspirators, tried to take his job or any

other property in which Plaintiff held an interest. Because Plaintiff fails to plausibly allege any

RICO predicate acts under the Travel Act or the Hobbes Act, his RICO claims should be

dismissed with prejudice.

2. *Plaintiff Failed to Allege a Pattern of Racketeering Activity and the Existence of a RICO Enterprise (Count IX)*

Defendant Exoo joins those portions of the motions to dismiss brought by the Defendant

St. Lawrence University and Defendants Twitter and Gadde arguing that Plaintiff alleged only a

short-term pattern of activity. *See* Dkt. No. 20, St. Lawrence MOL at 14-16 ("Because the

racketeering activity at issue occurred over a period of less than three months, Plaintiff cannot

establish a RICO pattern and his claims must be dismissed on this basis as well."); Dkt No. 33-1,

Twitter and Gadde MOL at 17-20 ("Where, as here, a plaintiff alleges a single course of conduct,

targeting a single individual, courts in this District have consistently concluded that the "pattern" element of a racketeering offense is not met.").

Defendant Exoo also joins those portions of the motions arguing that Plaintiff failed to allege the existence of a RICO enterprise. *See* Dkt. No. 20, St. Lawrence MOL at 12-14 (noting, the Complaint "offers no detail regarding the structure of the Exoo Enterprise except to state that the University, together with Twitter and others were a part of it"); Dkt No. 33-1, Twitter and Gadde MOL at 20-21 (the allegations "do not even remotely suggest that Twitter and Ms. Gadde "combined as a unit" with Christian Exoo and St. Lawrence University for the "common purpose" of conducting racketeering activities.").

### 3.  *Plaintiff Failed to Allege a RICO Conspiracy (Count X)*

Where a plaintiff fails to state a claim for violation of the federal RICO statute, "it follows that the Complaint also fails to state a claim for conspiracy to violate th[is] statute[]. *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 516-17 (D. Del. 2012), *citing Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012) (affirming dismissal of RICO and conspiracy to commit RICO claims because complaint did not adequately allege predicate acts required for RICO claim). *See also Binary Semantics Ltd. v. Minitab, Inc.*, 2008 U.S. Dist. LEXIS 28602, at *13 (M.D. Pa. Mar. 20, 2008) (stating that RICO conspiracy claim "necessarily fails due to failure to state a claim under RICO). In this case, Plaintiff has failed to state a claim under RICO, therefore, his RICO conspiracy claim, 18 U.S.C. § 1962(d) should be dismissed with prejudice.

Defendant Exoo joins those portions of Defendant St. Lawrence and Defendants Twitter and Gadde's motion papers which argue that Plaintiff failed to plausibly allege the existence of a RICO conspiracy. *See* Dkt. No. 20, St. Lawrence MOL at 16-18 ("The Complaint's generic allegation that the Defendants' conduct collectively gives rise to an inference of an agreement to

20

commit racketeering activity is patently insufficient."); Dkt No. 33-1, Twitter and Gadde MOL at 25 ("D'Ambly's claim for conspiracy to commit a RICO offense (Count Ten) fails for the additional reason that the Complaint does not plausibly allege any "agreement" among the alleged participants in the alleged "conspiracy.").

4. *Plaintiff Should be Required to Submit a RICO Statement pursuant to Local Civil Rule 16.1(b)(4)*

In the event Plaintiff's federal RICO claim is not dismissed with prejudice, Plaintiff should be required to file a RICO case statement pursuant to Local Civil Rule 16.1(b)(4). *See Northland Ins. Co. v. Shell Oil Co*., 930 F. Supp. 1069, 1076 (D.N.J. 1996) ("the RICO Case Order is supported by Congressional act, federal and local rule."). The local rule provides that: "In a civil action arising under 18 U.S.C. §§1961-1968, the Judge or Magistrate Judge may require a RICO case statement to be filed and served in the form set forth in Appendix O." A copy of the Optional RICO Case Order is annexed to the Marlborough Decl. at Ex. E.

"The order was designed to aid plaintiffs in framing their claims with particularity sufficient for the requirements of the RICO statute." 930 F. Supp. at 1073. Plaintiff should be required to submit a RICO case statement because several Defendants' motions to dismiss focus on the elements of Plaintiff's RICO claim. *See Rothberg v. Marger*, No. 11-cv-5497, 2012 U.S. Dist. LEXIS 71088, at *9 (D.N.J. May 21, 2012) ("Because Defendants' motions to dismiss Plaintiffs' RICO claim focus on Plaintiffs' failure to allege a pattern of racketeering activity and failure to allege a specific predicate statute, [] the Court orders Plaintiffs to file" a RICO case Statement.").

**G.  Count VIII for N.J. Racketeering Should be Dismissed**

Plaintiff's claim for violation of the New Jersey racketeering statute ("NJRICO"), should be dismissed. To state a claim under the statute, a plaintiff must allege, "(1) the existence of an

enterprise affecting trade or commerce; (2) that the defendant was employed by or associated

with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct

or the affairs of the enterprise; and (4) that defendant participated through a pattern of

racketeering activity that must include the allegation of at least two predicate acts." *Horowitz v.*

*Marlton Oncology, P.C.*, 116 F. Supp. 2d 551, 554 (D.N.J. 1999). New Jersey's RICO statute

"borrows its structure, purpose and remedies from Federal RICO" and New Jersey courts heed

federal case law in construing the statute. *See State v. Ball*, 268 N.J. Super. 72, 98 (App.

Div.1993), *aff'd*, 141 N.J. 142 (1995). *See also Jersey Asparagus Farms, Inc. v. Rutgers Univ.*,

803 F. Supp. 2d 295, 316-17 (D.N.J. 2011) (dismissing New Jersey Racketeering claim on the

same grounds as the Court's dismissal of plaintiff's federal RICO claim.). Where a Plaintiff's

federal RICO claim "alleges insufficient facts to support a claim of racketeering, so too must the

New Jersey state RICO claim fail." *Leeder v. Feinstein*, No. 3:18-cv-12384, 2019 U.S. Dist.

LEXIS 108810, at *24 (D.N.J. June 28, 2019).

     Plaintiff D'Ambly alleges two predicate acts under NJRICO, extortion and terroristic

threats. *See* Complaint at ¶ 103 ("Exoo Enterprise committed multiple (sic) prohibited by

N.J.S.A. 2C:41(a)(1)(h) … Exoo Enterprise committed multiple (sic) prohibited by N.J.S.A.

2C:41(a)(1)(bb)"). Plaintiff fails to cite to an extortion statute to support a NJRICO claim.

     First, New Jersey's criminal extortion statutes, assuming that is what Plaintiff meant,

require that the perpetrator obtain property of the victim. *See* e.g., N.J.S.A. 2C:20-5 (Theft By

Extortion). New Jersey's theft by extortion statute provides that a person is guilty of theft by

extortion if he "purposely and unlawfully obtains property of another by extortion." This is the

same "obtaining" requirement recognized in *Scheidler I,* 537 U.S. at 405.

While Plaintiff D'Ambly grouses that he lost his printing job after his white supremacist activities were exposed, he does not allege that his job responsibilities were taken over by the Defendants. Plaintiff fails to satisfy the "obtainment" requirement of N.J.S.A. 2C:20-5.

Second, Plaintiff fails to plausibly allege a pattern of racketeering activity of making terroristic threats. As stated above, Plaintiff has failed to plausibly allege that any of the named Defendants made any actionable threats against him. Plaintiff also alleged only a single threat made by an unnamed non-party which was directed at D'Ambly's employer, not D'Ambly himself. A single threat, particularly when made by an unnamed non-defendant to a third-party, is insufficient to establish a pattern of racketeering activity. Because D'Ambly has failed to satisfy the predicate act requirement under New Jersey law, his NJRICO claim should be dismissed with prejudice.

Moreover, Plaintiff provides no context for the third-party statement allegedly made to the Daily News that "any violence or blood spilled will be on your hands." Complaint at ¶ 32. It is unclear what the caller was referring to. It is plausible that the Daily News was being warned of D'Ambly's participation in violent, racist rallies like the Unite the Right rally in Charlottesville, Virginia where a white supremacist protestor brutally plowed through a crowd killing one protestor and injuring dozens of others. Similarly, the caller may have been stating that he believed D'Ambly's vile actions would incite some *other* third party to take violent actions? Again, that is not a true threat.

Alternatively, assume the caller was referring to himself or an associate of his – even if that assumption is unwarranted. The phrase "blood will be on your hands" is an old testament adage from Ezekiel 3:18 which refers to allowing a person to change his ways before violence is brought upon him. That is not a "true threat."

In *Watts v. U.S.,* 394 U.S. 705 (1969), a defendant was prosecuted for stating at a draft rally, "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." The Supreme Court required that the government prove that there was a "true threat." Plaintiff D'Ambly's theory is that the threat was made to cause plaintiff to lose his job in retaliation for his political speech. *Watts* explains that "political hyperbole" is protected speech and not a threat as is language that is "vituperative, abusive, and inexact." *Id.* at 707-708.  The Third Circuit gave further guidance, "while advocating violence that is not imminent and unlikely to occur is protected, speech that constitutes a 'true threat' is not. In deciding whether speech constitutes a 'true threat,' a court should consider the totality of the circumstances and not just the words in isolation, whether the threat is 'conditional,' and the reaction of the listeners." *U.S. v. Fullmer*, 584 F.3d 132, 154 (3d Cir., 2009). The statement by the unknown person was alleged in isolation without any context of how it was used. It is, on its face conditional. Plaintiff alleges that its purpose was political retaliation for D'Ambly's actions of organizing and participating in political, white supremacist marches. As alleged, the Court is forced to treat this statement as protected by the First Amendment and the New Jersey State Constitution. The claim must be dismissed as Constitutionally protected speech that cannot establish a predicate criminal act requirement under the NJRICO statute.

Finally, Defendant Exoo joins those portions of Defendant St. Lawrence's motion papers which argue that Plaintiff failed to allege a violation of the NJRICO claim and failed to allege the existence of an NJRICO enterprise. *See* Dkt., No. 20, St. Lawrence MOL at 18-20 ("The Complaint "does not detail the division of labor among Enterprise members, members' knowledge, or their performance of different roles in furtherance of the Enterprise's

objectives."). For these reasons, the NJRICO claim against Defendant Exoo should be dismissed with prejudice.

### H.  CWS' Cross Claim for Indemnification Should be Dismissed

Plaintiff's union's law firm, CWS, asserted a crossclaim against its codefendants, including Defendant Exoo, for indemnification in the event it is found liable to Plaintiff. The crossclaim for indemnification should be dismissed with prejudice.

It is well settled that a party seeking common law indemnification from another must be without fault. *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548 (N.J. 1980) (citing A*dler's Quality Bakery, Inc. v. Gaseteria*, 32 N.J. 55 (1960)). Under the common law, fault includes one's own negligence, such that a person who is "actively negligent" is not entitled to indemnification. *Tryanowski v. Lodi Bd. of Ed.*, 274 N.J. Super. 265, 275 (N.J. Super. 1994).

In this case, the only claim asserted against CWS is Plaintiff's Count XIII for legal malpractice. Complaint at ¶¶ 154-61. There are no circumstances under which CWS can be held liable to Plaintiff for his claim of legal malpractice without also being found to be at fault. Therefore, CWS' indemnification claim must be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff D'Ambly's claims against Defendant Exoo with prejudice and dismiss CWS's cross claim for indemnification with prejudice.

Dated:  December 6, 2020
        Melville, New York

Respectfully submitted,

**THE MARLBOROUGH LAW FIRM, P.C.**

By: _____

Christopher Marlborough
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com


**ZMO Law PLLC**
Victoria Medley
260 Madison Avenue, 17th Floor
New York, New York 10016
Phone: (212) 685-0999
Fax: (212) 991-8952
E-mail: vm@zmolaw.com


*Counsel for Defendant Christian Exoo*