# EXHIBIT A

Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
pt@ptesq.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIEL D'AMBLY; AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100,<br><br>        Defendants. | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JAD<br><br>**FIRST AMENDED COMPLAINT TO ADD PLAINTIFFS INJURED BEFORE COMPLAINT WAS FILED ON SEPTEMBER 21, 2020, AND SUPPLMENTED COMPLAINT TO ADD PLAINTIFF INJURED AFTER THE COMPLAINT WAS FILED**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs, Daniel D'Ambly, Aaron Wolkind; Steven Hartley; Richard Schwetz; Jobel Barbosa; Matthew Reidinger; John Hugo; Sean-Michael David Scott; *Dean David Van Zandt, Jr.;* Thomas Louden; *Steven Rosati*; Zachary Rehl; Amanda Rehl; K.R. a minor, by and through her father Zachary Rehl and her mother Amanda Rehl (hereinafter collectively referred to as "Plaintiffs") by and through their attorney the Law Office of Patrick Trainor, as and for their

1

Complaint against defendants Christian Exoo a/k/a @AntifashGordon, St. Lawrence University, Tribune Publishing Company, LLC, New York Daily News, Vijaya Gadde, Twitter, Inc., and Cohen, Weiss, and Simon, LLP, hereby alleges as follows:

## STATEMENT OF THE CASE

This action arises out of the repugnant conduct of defendant Christian Exoo (Hereinafter "Exoo"), an extortionist, known habitual doxer, and member of Antifa, who associates with others to conduct patterns of racketeering activities.  Exoo under the Twitter username "@AntiFashGordon" directs his associates in the "Exoo Enterprise" to conduct violent and extortionate patterns of racketeering activities devoted to "doxing" complete strangers that the Exoo Enterprise has labeled "fascists" and/or "white supremacists."  To "dox" someone means to publicly disclose a person's identity, employer, school, home address, etc., for the purpose of causing harm to that person.  Once the target has been doxed, Exoo directs enterprise associates to commence a pattern of violent and threatening emails, Tweets, and phone calls to the target's employers, professional clients, schools, prospective employers, or schools to extort the target's termination from employment, expulsion from school, and compel the targets exit from society.

To execute their plan, enterprise associates engage in a practice referred to as "dogpiling," which is to conduct an all-out attack on both their target's employer and co-workers by flooding them with emails and phone calls and plastering negative messages and comments throughout their entire online footprint, including Google reviews, Facebook posts, LinkedIn posts, Twitter, etc., to label the employer a fascist, white supremacist company and the target's co-workers as the same.  Associates conspire to ruin the target's employer's existing business relationships and/or shame prospective clients from conducting business with them until their target is terminated.

Exoo is aware of the potential illegality of his directives, because he instructs his associates to use telephone *67 feature to block their phone numbers when making threatening calls.

On varied dates and times beginning in 2017, Exoo identified Plaintiffs as fascists and white supremacists. Thereafter, Exoo directed enterprise associates to stalk Plaintiffs in order to learn their true identity. Upon discovering Plaintiffs identity, Exoo directed associates to deluge Plaintiffs' employers with violent Tweets, phone calls, emails that threatened personal and physical harm to the employer's property and co-workers, in order to extort Plaintiffs' terminations. Exoo unmistakably directs the enterprise's patterns of racketeering activities through interstate communications.

One-person hellbent on destroying the lives of other persons, conspires with, participates in, and directs an enterprise that engages in patterns of racketeering activities every day by using interstate communications to threaten physical violence to extort and cause harm to their target. The enterprise's associates and co-conspirators include, a major religious university, top lawyer of a publicly traded corporation and the publicly traded corporation. Enterprise associates are motivated by a shared disdain of people labeled fascists and white supremacists.

## **THE PARTIES**

1.     Daniel D'Ambly (Hereinafter "D'Ambly"), is a twenty-seven (27) year member of Local One-L, Graphic Communications Conference of the International Brotherhood of Teamsters, who was employed as a was a plate maker for the New York Daily News in Jersey City, New Jersey until January 18, 2019. D'Ambly was doxed by Exoo on October 29, 2018. In the dox D'Ambly was labeled a 'fascist' and/or a 'white supremacist.' D'Ambly is a member of the New Jersey European Heritage Association ("EHA"), a non-violent, pro-domestic policy

3

organization that the Exoo Enterprise labeled a white supremacist hate group.  D'Ambly, who the Exoo Enterprise identifies as the leader of EHA, actively participates with other EHA members in political rallies, peaceful political protests, pamphleteering, and speech that is protected by U.S. Const. amend. I and N.J. Const. art. I, ¶ 6.  D'Ambly is an individual domiciled in the State of New Jersey and a "person" as defined under 18 U.S.C. § 1961(3).

2.     Zachary Rehl ("Rehl") was employed by New York Life Insurance Company in Philadelphia when he was doxed by Exoo in or about August 2017, and labeled a fascist and white supremacist.  Rehl is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

3.     Amanda Rehl ("AmRehl") is the spouse of Zachary Rehl.  AmRehl is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

4.     K.R. ("K.R."), is the minor child of Zachary Rehl and Amanda Rehl.  K.R. is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

5.     Aaron Wolkind ("Wolkind") was a Technical Support Specialist for Aerzen USA Corporation ("Aerzen") when he was doxed by Exoo on or about June 2019, and labeled a fascist, white supremacist, and a neo-Nazi.  Wolkind is an individual domiciled in the State of Delaware and a "person" as defined under 18 U.S.C. § 1961(3).

6.     Steven Hartley ("Hartley"), is a logistics manager for American Expediting located in Folcroft, Pa.  On November 29, 2018, he was doxed by Exoo and labeled a Nazi, racist and white supremacist who was a threat to women and minorities.  Hartley is an individual

4

domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

7.      Mark Anthony Tucci ("Tucci") was employed at Aldo's Pizzarama in Philadelphia when he was doxed by Exoo on December 10, 2018, and labeled a fascist, racist, and white supremacist.  Tucci is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

8.      Richard Schwetz ("Schwetz") was employed at Inova Payroll in Lancaster, Pa., when he was doxed by Exoo in or about June 2020, and labeled a fascist, racist, and white supremacist.  Schwetz is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

9.      Jobel Barbosa ("Barbosa") is Puerto Rican and a permanently disabled veteran, who was employed as a Detail Department Manager at Jaguar Land Rover Willow Grove, in Willow Grove, Pa., when he was doxed by Exoo on June 22, 2019, and labeled a fascist, racist, and white supremacist.  Barbosa is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

10.      Matthew Reidinger ("Reidinger") was employed in Coal Township, Pa.  On November 27, 2018, he was doxed by Exoo and labeled a fascist and white supremacist. Reidinger is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

11.      John Hugo ("Hugo") was employed as a dispatch manager for Green and Yellow Cab in Somerville, Massachusetts when he was doxed by Exoo on January 2, 2020, and labeled a fascist and white supremacist.   Hugo is an individual domiciled in the Commonwealth of Massachusetts and a "person" as defined under 18 U.S.C. § 1961(3).

12.     Sean-Michael David Scott ("Scott") was employed in Seattle, Washington when he was doxed by Exoo on September 16, 2019, and labeled a fascist, white supremacist, and anti-Semite.  Scott is an individual domiciled in the State of Florida and a "person" as defined under 18 U.S.C. § 1961(3).

13.     Thomas Louden ("Louden") is a 30-year volunteer firefighter and the appointed Deputy Emergency Management Coordinator for Hilltown Township, Pennsylvania and was employed as the Director of Managed Care at Thomas Jefferson University Hospital in Philadelphia for twenty-three (23) years when he was doxed by Exoo on November 2, 2020. Louden is an individual domiciled in the Commonwealth of Pennsylvania and a "person" as defined under 18 U.S.C. § 1961(3).

14.     Plaintiffs Wolkind, Hartley, Schwetz, Rehl, Barbosa, and Tucci are members of the Philadelphia chapter of the Proud Boys (hereinafter "PPB" or "Proud Boys").  Plaintiff Reidinger is a member of the Harrisburg chapter of the Proud Boys ("HPB").  The Proud Boys are a diverse, multi-racial, multi-ethnic, fraternal, males-only drinking club, who consider themselves "western chauvinists."

15.     Hugo is the President of Super Happy Fun America, a right of center civil rights organization focusing on defending the American Constitution, opposing gender madness, and defeating cultural Marxism.  Super Happy Fun America is best known for organizing the 2019 Boston Straight Pride Parade.  Hugo was the 2018 Republican Candidate for Massachusetts' 5th Congressional District.

16.     Defendant Christian Exoo ("Exoo" or "@AntiFashGordon") is a library building supervisor and lecturer at St. Lawrence University.  Exoo is a self-described anti-fascist, notorious doxer, and leader of Antifa, who by doxing others has acquired a great deal of

notoriety and infamy.[1]  Exoo currently publishes Tweets under Twitter username "@AntiFashGordon."  Exoo is an individual domiciled in the State of New York and a "person" as defined under 18 U.S.C. § 1961(3).

17.     St, Lawrence University ("St. Lawrence" or "STL") is a private four-year university with its principal place of business located at 116 Vilas Hall, 23 Romoda Drive, Canton, New York 13617, and a "person" as defined under 18 U.S.C. § 1961(3).

18.     Tribune Publishing Company ("Tribune") is a media company organized under the laws of the State of Delaware with its principal place of business located at 160 N. Stetson Avenue, Chicago, Illinois 60601 that conducts its business throughout the United States, and is a "person" as defined under 18 U.S.C. § 1961(3).

19.     New York Daily News Company ("Daily News") is owned by the Tribune Publishing Company (Tribune and Daily News are sometimes hereinafter referred to collectively as "Daily News") with a place of business located at 125 Theodore Conrad Drive, Jersey City, New Jersey 07305, and 4 New York Plaza, New York, NY 10004.  The Daily News is a "person" as defined under 18 U.S.C. § 1961(3).  At all times relevant, the Tribune Publishing Company had the right and did exercise control over the actions of the New York Daily News.

---

[1] *Anti-Fascists Are Waging A Cyber War – And They're Winning*, Medium.com (Sep. 9, 2019) https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Sep. 15, 2020); *Comcast fires employee with alleged ties to Proud Boys, We the People Rally*, PhillyVoice.com (November 15, 2018) https://www.phillyvoice.com/comcast-fires-employee-proud-boys-alt-right-philadelphia-rally/ (last accessed Sep. 15, 2020); *The Right Wing Is Trying to Make It a Crime to Oppose Fascism*, Truthout.org (Aug. 9, 2019) https://truthout.org/articles/the-right-wing-is-trying-to-make-it-a-crime-to-oppose-fascism/ (last accessed Sep. 15, 2020); *How to Spot An Abuser, Featuring Antifash Gordon, In His Own Words: A Step By Step Guide, and Also F\*\*\* That Guy,* Medium.com (Jun. 25, 2020) https://medium.com/@abuse_isnt_revolutionary/how-to-spot-an-abuser-featuring-antifash-gordon-in-his-own-abuser-words-7b39f4657b19 (last accessed Sep. 15, 2020).

20.     Vijaya Gadde ("Gadde") is the Head of Legal, Public Policy, and Trust and Safety Lead at Twitter, Inc.  At all times relevant, Vijaya Gadde was the sole decision maker and person authorized to permanently ban Twitter users who violated Twitter's Terms of Service and Rules. She is a "person" as defined under 18 U.S.C. § 1961(3).  Gadde is believed to be domiciled in the State of California.

21.     Twitter, Inc. ("Twitter"), is a company organized under the laws of the State of Delaware with its principal place of business located at 1355 Market Street, San Francisco, CA 94103, that conducts its business globally and a "person" as defined under 18 U.S.C. § 1961(3).

22.     The Exoo Enterprise is a criminal enterprise as defined under 18 U.S.C. § 1961(4), consisting of Defendant Christian Exoo a/k/a "AntiFashGordon," who directs the Exoo Enterprise, St. Lawrence University, Vijaya Gadde, Twitter, Inc., and unidentified associates.

23.     Cohen, Weiss, and Simon, LLP ("CWS") is a law firm with its principal place of business located at 900 3rd Avenue, #2100, New York, New York 10022 and a "person" as defined under 18 U.S.C. § 1961(3).

## JURISDICTION AND VENUE

24.     Jurisdiction of this Court is proper because this litigation arises under federal law, namely 18 U.S.C. §§ 1961 to 1968.  This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

25.     The Court has supplemental jurisdiction over the state law claims asserted in this case under 28 U.S.C. § 1367(a).

26.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and

the threatened and actual harm occurred in this District by reason of Defendants' conduct as alleged below.

## FACTS PERTINENT TO ALL PLAINTIFFS

27.     Defendant Exoo publishes Tweets and doxes other persons private and undisclosed information under Twitter username "@AntiFashGordon" the leading Antifa Twitter account that as of December 30, 2020, has 46,140 followers.  The headline of @AntiFashGordon's public profile states "I expose fascists via #OSINT, get them fired, de-homed, kicked out of school, etc."  Exoo's definition of fascists and white supremacists is indiscernible, because he uses the terms broadly and interchangeably.  Based on the substance of @AntiFashGordon's Tweets he broadly identifies all persons who do not share his radical far left political ideology as fascists and/or white supremacists.

28.     Upon information and belief, Exoo is known to Twitter's Trust & Safety Council ("TSC") as a habitual doxer and ban evader.  A ban evader is a person who creates a new Twitter account after receiving a permanent ban.  The ban evader's new account is called a "ban evasion account," and is prohibited by Twitter rules.[2]  A permanent ban means a lifetime ban.

29.     Doxing is prohibited by Twitter's Private Information Policy within their Terms of Service and Rules ("TOS").[3]

30.     Upon information and belief, in addition to Twitter's agreement to allow Exoo to change username @DoxSavage to @AntiFashGordon, Exoo has had two Twitter accounts

---

[2] https://help.twitter.com/en/rules-and-policies/enforcement-options "Permanent suspension: This is our most severe enforcement action.  Permanently suspending an account will remove it from global view, and the violator will not be allowed to create new accounts."

[3] https://help.twitter.com/en/rules-and-policies/personal-information "You may not publish or post other people's private information without their express authorization and permission.  We also prohibit threatening to expose private information or incentivizing others to do so."

permanently banned for doxing.  Twitter has previously permanently banned @ChrisExoo,[4] @ChristianExoo.[5]

31.     Exoo directs associates in an enterprise that uses interstate communications to conduct patterns of racketeering activities.

32.     Of their own volition, Exoo and associates identify persons as Nazis, fascists, and white supremacists, which also includes any person Exoo and/or associates label homophobic, transphobic, etc.  Once a target has been identified Exoo and associates set about to learn the personal identity of their unknown targets.

33.     Once their targets' identity is discovered, Exoo and associates commence patterns of racketeering activities to extort employment terminations and compel school expulsions, by directing waves of threatening phone calls, emails, Twitter messages, social media comments at the target's employers, co-workers, and school administrators.

34.     Enterprise associates "dogpile" their target's employers and co-workers with calls to their direct work phone number and email address with continual calls and emails to every employee and co-worker to extort the target's termination.  The practice eliminates a company's ability to conduct business.

35.     To extort their target's termination, enterprise associates harm his employer's existing and prospective business relationships by posting a flood of negative comments and reviews to the employer's social media and internet sites to use as leverage to extort their target's termination.

---

[4] https://twitter.com/ChrisExoo (last accessed Sep. 15, 2020)
[5] https://twitter.com/ChristianExoo (last accessed Sep. 15, 2020)

36.     When an employer does not immediately terminate their target, Enterprise associates directly contact and threaten their target's employers' customers to shame them from continuing to do business with the target's employer.

37.     As a result of Exoo's dox and direction of an enterprise engaged in threatening patterns of racketeering activities as described above, every Plaintiff has received explicitly violent threats against their life and the lives of their family, several Plaintiffs were physically attacked about their person, sustained damage to their homes and property, and all Plaintiffs were terminated from employment due to the enterprise's patterns of racketeering activities.

## DANIEL D'AMBLY

38.     D'Ambly repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

39.     Upon information and belief, the Exoo Enterprise targeted D'Ambly as a fascist and white supremacist at some point in or about January 2018.  Thereafter, enterprise associates stalked D'Ambly to uncover his true identity, for the sole purpose of doxing him.

40.     Upon information and belief, by September 2018, Twitter received dozens of complaints directly Tweeted to Twitter Support and Twitter Trust and Safety informing them that Exoo's former Twitter account @DoxSavage was aggressively doxing, which forced Twitter to investigate the accounts activities.  Under Twitter's normal protocol, accounts being investigated for violating the TOS are prevented from Tweeting during the investigation. [6]

41.     Twitter ignored their TOS and allowed @DoxSavage to continue Tweeting during their investigation.

---

[6] https://help.twitter.com/en/rules-and-policies/enforcement-options (last accessed Sep. 15, 2020)

42.     Upon information and belief, at some point on or about October 1, 2018, Gadde and Twitter agreed to allow @DoxSavage to undergo a name change in lieu of a third permanent. The unprecedented agreement to allow Exoo's username change to @AntiFashGordon under these circumstances was done to ensure he kept his approximate 15,000 @DoxSavage followers.

43.     On October 11, 2018, @DoxSavage Tweeted a farewell announcement to his followers: "Hey folks—I just underwent a name change from @DoxSavage to @AntiFash Gordon.  I'll be back tomorrow to expose more violent fascists who were on the ground in Providence on 10/6."  The name change kept the Exoo Enterprise intact, and their ability to effectively conduct its patterns of racketeering activities was not harmed.

44.     On October 29, 2018, at 11:49 a.m., @AntiFashGordon published a massive twenty-two count Tweet thread (a thread is a series of related Tweets) that doxed D'Ambly to his estimated 20,000 followers.  The dox publicly disclosed for the first time D'Ambly's name, hometown, photograph, employer, occupation, employer's location, multiple telephone numbers for his employer, a labor union Referendum Board he chaired, and the names of the other Referendum Board members.

45.     In the dox, @AntiFashGordon labeled D'Ambly a "Nazi" and directed the Exoo Enterprise associates to send harassing, intimidating, and threatening phone calls, and Tweets to the Daily News's Twitter username @NYDailyNews, to extort D'Ambly's termination.  Exoo's dox directed:

> a.  In the 19th Tweet, @AntiFashGordon directed his associates "stay on top of this, too.  If you don't hear back from @NYDailyNews, keep tweeting at them."  Call their printing facilities in Jersey City at (201) ***-**** (number provided in original Tweet) and warn them about Daniel D'Ambly…"

12

  b. A follow up Tweet included a second telephone number for the New York Daily News and a subsequent Tweet included the direct telephone number to D'Ambly's print shop.

  c. Within minutes the Exoo Enterprise obeyed Exoo's directive and flooded @NYDailyNews and @Teamsters with Tweets and phone calls that threatened the Daily News with violent attacks if D'Ambly was not terminated.

  d. Upon information and belief, from October 29, 2018, to January 11, 2019, the Exoo Enterprise directed no less than fifty-four (54) threatening Tweets to @Daily News plus an unknown number of threatening phone calls.

  e. D'Ambly was never told of the threats or warned to take safety precautions by anyone from the Daily News or Tribune.

  46. On October 30, 2018, without warning D'Ambly of the dangerous threats, Tribune engaged Insite Risk Management ("Insite") to investigate D'Ambly.  At the conclusion of their investigation, Insite produced the "Private Investigation Report" ("Report") and provided it to the Tribune on December 4, 2018.  The Report acknowledged @AntiFashGordon's doxing was the impetus for the investigation and confirmed D'Ambly's association with EHA.  The Report included videos of D'Ambly and others using imprudent language during political rallies.

  47. On or before January 8, 2019, EHA posted flyers on public bulletin boards in Princeton, New Jersey that announced an "It's okay to be white" protest march purportedly scheduled for January 12, 2019.

  48. On January 9, 2019, @AntiFashGordon re-Tweeted the "It's okay to be white" march to his associates and again doxed D'Ambly by Tweeting, "If anyone wants their leaders name, it's Dan D'Ambly."

49.     On January 10, 2019, @AntiFashGordon published a second Tweet that referenced EHA's purported march and directed his associates to "show up and shut down" the purported march "And please say hi to their leader, Dan D'Ambly for me."

50.     On January 10, 2019, D'Ambly was called to an interview with Jean Nechvatal ("Nechvatal), Tribune's Vice President, Talent Management & Learning and James R. Brill ("Brill"), Daily News's Sr. Vice President of Operations.  D'Ambly was accompanied at the meeting by Union Steward Pete Cairnie.  During the meeting, D'Ambly was confronted with content of the Report, but not informed of the report's existence.  D'Ambly acknowledged using imprudent language in a private conversation during a protest.

51.     On January 11, 2019, at 10:14 a.m., @AntiFashGordon again directed his associates to shut down EHA's purported January 12, 2019 "It's okay to be white" march and exhorted his associates "if you can, show up and show these pricks that we don't tolerate hate in our streets."  The Tweet included @NYDailyNews and doxed D'Ambly's hometown again. Exoo encouraged violence to shut down the purported protest, but warned "Remember that the police won't protect us here."

52.     Upon information and belief, at some point before 10:21 a.m. on January 11, 2019, Edward Bushey, Sr. Vice President, General Manager, Manufacturing and Distribution at Tribune delivered recordings of the death threats to the Daily News.  The callers threatened D'Ambly and stated the Daily News was responsible for "any violence or blood spilled is also on your hands."  One threatening caller's phone number was captured.

53.     On January 11, 2019, from 9:30 a.m. to 10:14 a.m., Twitter usernames @hubcityantifa, @NYCAntifa, and @Nstricklanded replied via Tweet to @AntiFashGordon's instructions with coded messages that confirmed they followed his instructions and made threats.

14

54.     Upon reason and belief, one of the death threat phone numbers is owned by a person who Tweeted mission confirmation to @AntiFashGordon on January 11, 2019.

55.     On January 11, 2019, at 2:20 p.m., EHA Tweeted that the "It's okay to be white" protest was a prank.

56.     On January 11, 2019, at 3:30 p.m., D'Ambly was called to a second meeting with James Brill, Sr. Vice President of Operations for the Daily News to recap the previous days meeting.  In the meeting, Brill issued D'Ambly a "Last and Final Warning" that stated the "ONLY reason that you are not being terminated immediately is because, thus far, we have not determined that your activities with NJEHA has occurred at work and/or derogatory comments were made about any co-workers."  The warning continued "should we learn that you engaged in any inappropriate speech or behavior in the workplace or with regard to any other employee, or if the Company or any of its employees suffer any backlash as a result of your association with the NJEHA, your conduct will be considered "work-related" and you will be terminated immediately."

57.     This meeting with Brill was a pre-text for D'Ambly's termination.  The meeting occurred five (5) hours after death threats were received, but Brill did not inform D'Ambly, because the Daily News intended to use the threats as evidence the company received "backlash" from D'Ambly's conduct and was the "cause" of D'Ambly's termination.

58.     At 4:34 p.m. on January 11, 2019, @AntiFashGordon replied to EHA's Tweet by threatening D'Ambly whereby @AntiFashGordon threatened "Regardless, I'm gonna spend the next week wrecking your fucking life, Dan D'Ambly."

59.     In the evening of January 11, 2019, the Exoo Enterprise's extended campaign of violent Tweets and threats of physical violence to D'Ambly came to fruition and D'Ambly's

vehicle was "keyed" (scratched) and tires slashed while parked outside of his home on private property. An investigation report for a bias incident, criminal mischief, and harassment was filed with the South Brunswick Police Department.

60.     D'Ambly reported to work the following day on January 12, 2019, but was not informed of the death threats received the day before.

61.     On Sunday, January 13, 2019, at 10:16 a.m., five (5) days before D'Ambly's official termination date @AntiFashGordon Tweeted to four of his associates that he "got a pretty reliable tip this morning that he's not at the @NYDailyNews anymore…" in reference to D'Ambly.

62.     On Monday, January 14, 2019, the Daily News called D'Ambly and told him not to report to work until informed otherwise.

63.     On January 16, 2019, during a phone conference with Brill, Nechvatal, and a Union representative, D'Ambly was played the recorded death threats and asked to identify the caller. D'Ambly was unable to identify the caller, but said it was the behavior of "Antifa types." Brill was scornful of D'Ambly's inability to identify the caller and blamed him for the threats. D'Ambly was terminated during this phone conference.

64.     On January 23, 2019, Patrick LoPresti, President of Local One-L informed the Daily News that they were appealing D'Ambly's termination pursuant to terms of the Contract.

65.     On or about January 25, 2019, D'Ambly received his "Termination of Employment" letter, signed by Brill, and dated January 22, 2019. The letter informed D'Ambly his termination was effective January 18, 2019. The termination letter is imbued with Brill's animus for D'Ambly. In the letter, Brill stated "your choice to take these repulsive actions has now put our workplace and employees at risk of counter attacks by Antifa."

16

66.     The termination letter falsely stated the Daily News learned of the death threats on January 14, 2019, contrary to emails that confirm the Daily News learned of the threats on January 11, 2019.

67.     In the termination letter, Brill claimed the death threats received on January 11, 2019, were the "cause" of D'Ambly's termination, because the death threats meant D'Ambly "brought his activities" into the workplace, therefore, "we deem your actions to be work related and are terminating your employment for cause."

68.     At some point after January 23, 2019, the Union on behalf of D'Ambly filed a grievance with the American Arbitration Association, case number 01-19-0000-7178.  The Union retained attorneys Thomas Kennedy ("Kennedy") and Kate M. Swearengen ("Swearengen") of Cohen, Weiss, and Simon, LLP (collectively Kennedy, Swearengen and Cohen. Weiss and Simon, LLP shall be referred to as "CWS") to represent D'Ambly.

69.     Thereafter, D'Ambly had a phone conference with Kennedy to discuss the case. D'Ambly was acquainted with Kennedy for approximately twenty years due to his Union activities.  D'Ambly explained the threats he received, property damage, and that his tires were slashed.  D'Ambly stated "Tom, this Antifa are terrorists…"  Kennedy angrily responded, "I do not consider Antifa to be terrorists and if you are going to continue referring to them (Antifa) as terrorists we are going to end this call."  Kennedy scoffed at D'Ambly's desire to have his employment reinstated at the Daily News.

70.     At some point thereafter, D'Ambly had his first case discussion phone conference with Kate Swearengen, who assumed representation.  Without prompting, Swearengen explicitly informed D'Ambly that "she doesn't agree with his politics and she

doesn't want to discuss them any further."  Like Kennedy, Swearengen dismissed D'Ambly's wish to have his employment reinstated.

71.     Kennedy and Swearengen's revulsion of D'Ambly directed their representation and they failed to adequately research basic facts favorable to D'Ambly's wish to be reinstated. CWS ignored Brill's misrepresentation and veracity of the claimed "cause" of their client's termination.

72.     CWS failed to adequately investigate the sources of the doxing campaign.  Had CWS engaged in reasonable investigation of the source of the dox they would have discovered @AntiFashGordon's January 13, 2019, announcement that D'Ambly was terminated, which was one day before the Daily News claimed they learned of the "cause" of D'Ambly's termination.

73.     On or about July 15, 2019, D'Ambly dejectedly executed the "Separation Agreement and Mutual General Release" negotiated by CWS that paid D'Ambly a lump sum payment in exchange the Union would withdraw the pending arbitration case with prejudice.

74.     As a result of Defendants' misconduct D'Ambly has suffered substantial personal and property damage and been severely financially harmed.

## ZACHARY REHL

75.     Rehl repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

76.     Exoo doxed Rehl for the first time on or about August 2, 2017, and labeled him a fascist and a white supremacist because Rehl organized a "Back the Blue" march to support police officers and first responders in Philadelphia.

77.     Exoo directed enterprise associates to contact Rehl's former employer New York Life Insurance Company to extort Rehl's termination.  As in all cases, enterprise associates

complied with Exoo's directions and placed threatening calls, emails, and Tweets to New York Life Insurance Company.

78.     Rehl was terminated from New York Life Insurance Company in September 2017.

79.     On or about October 1, 2018, Rehl was doxed a second time, when he organized the "We the People" event that occurred in Philadelphia on November 17, 2018.

80.     On November 14, 2018, Exoo followed up his October 1, 2018 dox with directions to his associates to counter protest the We the People event.  Exoo directed enterprise associates to disrupt the event because "fascism is coming and only we can stop it."

81.     On November 16, 2018, Exoo decided his community was being attacked, because "the city granted rally permits to fascists, and the cops will be there to protect them." Exoo then Tweeted the phrase "Who protects us? We protect us" a battle cry to get his associates to attack "We the People" event organizers.

82.     At 12:41 a.m. on November 17, 2018, Rehl's safety was endangered when he was attacked by an Exoo associate who threw a brick through the front window of Rehl's home and spray painted the word "Nazi" on the front of his home.

## **AMANDA REHL**

83.     AmRehl repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

84.     On or about August 2, 2017, Exoo doxed AmRehl's home address when he doxed her husband Zachary Rehl.

85.     On or about October 1, 2018, AmRehl's home address was doxed a second time when Exoo doxed her husband Zachary Rehl, because he organized the "We the People" march in Philadelphia that occurred on November 17, 2018.

86.     On November 14, 2018, Exoo directed his associates to counter protest and disrupt the We the People the event, because "fascism is coming and only we can stop it."

87.     On November 16, 2018, Exoo decided his community was being attacked, because "the city granted rally permits to fascists, and the cops will be there to protect them." Exoo then Tweeted the phrase "Who protects us? We protect us" as a battle cry to get his associates to attack "We the People" event organizers.

88.     At 12:41 a.m. on November 17, 2018, AmRehl's safety was endangered when she was assaulted by an Exoo associate who threw a brick through the front window of AmRehl's home and spray painted the word "Nazi" on the front of her home.

### K.R., a minor, by and through her father ZACHARY REHL and mother AMANDA REHL

89.     K.R. repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

90.     On or about August 2, 2017, Exoo doxed K.R.'s home address when he doxed her father Zachary Rehl.

91.     On or about October 1, 2018, K.R.'s home address was doxed a second time when Exoo doxed K.R.'s father Zachary Rehl, because he organized the "We the People" march in Philadelphia that occurred on November 17, 2018.

92.     On November 14, 2018, Exoo directed his associates to counter protest and disrupt the We the People event, because "fascism is coming and only we can stop it."

93.     On November 16, 2018, Exoo decided his community was being attacked, because "the city granted rally permits to fascists, and the cops will be there to protect them." Exoo then Tweeted the phrase "Who protects us? We protect us" as a battle cry to get his associates to attack "We the People" event organizers.

94.     At 12:41 a.m. on November 17, 2018, K.R.'s safety was endangered when she was assaulted by an Exoo associate who threw a brick through the front window of her home and spray painted the word Nazi on the front of her home.

**AARON WOLKIND**

95.     Wolkind repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

96.     Wolkind was doxed in or about June 2019 and called a fascist, white supremacist, and Nazi, which is an idiotic assertion, because Aaron's a Jew.

97.     On July 3, 2019, Exoo re-posted Exoo's dox and directed his associates to contact Wolkind's employer Aerzen USA ("Aerzen") to extort his termination.  Immediately enterprise associates directed hundreds of phone calls and emails to Wolkind's employer and his co-workers.  Aerzen's social media accounts and internet profiles were flooded with messages demanding his termination.

98.     On November 28, 2019, Exoo re-doxed Wolkind with Aerzen's direct phone number and the reminder to associates to "Use *67 to block your number."

99.     The November 28, 2019, dox dramatically increased the volume of messages posted to Aerzen's social media and internet profiles so much so that it created a network security concern and caused Aerzen to temporarily shut down their social media and internet profiles.

21

100.    The enterprise's threatening and harassing messages also caused Aerzen's management to close the Coatesville, Pa. building out of fear for employee safety.

101.    To their credit, Aerzen did not immediately terminate Wolkind, but when enterprise associates discovered Wolkind was not terminated, they directed threats at Aerzen's clients demanding they stop doing business Aerzen or face consequences, and harassed and intimidated Aerzen's foreign subsidiaries.

102.    Wolkind continues to receive threatening and harassing phone calls and the dox has prohibited Wolkind from obtaining new employment in his field.  Prospective employers have cancelled scheduled interviews and pulled job offers when they perform an internet background search for Wolkind's name, because the first listing is Exoo's dox, which identifies him as a fascist, white supremacist, and a Nazi, but as stated above Aaron's a Jew.

## STEVE HARTLEY

103.    Hartley repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

104.    Hartley was doxed on November 29, 2018, and labeled a Nazi, racist, terrorist and a threat to women and minorities.  The dox included directives to dogpile Hartley's employer with calls, emails, and Tweets to demand his termination.  In the dox, Hartley was identified as the president of the Philadelphia Proud Boys.

105.    As is the pattern, enterprise associates complied with Exoo's directives and in December 2018, associates inundated Hartley's employer and co-workers with hundreds of phone calls and emails and flooded their social media and internet profiles with negative posts and reviews.  Enterprise associates still contact Hartley's employer and co-workers with threatening and harassing phone calls and emails.

106.    Hartley's home address and personal cell phone were also doxed, and he has received hundreds of threatening and harassing phone calls from enterprise associates, including direct threats on his life. The threatening and harassing communications continue to this day.

## MARK ANTONY TUCCI

107.    Tucci repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

108.    Exoo doxed Tucci on December 10, 2018, and associates directed harassing and threatening phone calls, emails, and Twitter messages to his employer.  Enterprise associates called his employer more than 600 times on that first night, which effectively shut down the restaurant.  Tucci's employer realized what was happening and told callers he was terminated.

109.    In real time you can see the enterprise's conspiracy play out in their Tweets.

    a.  Exoo doxed Tucci with directions to harass, threaten and intimidate his employer.

    b.  Enterprise associates who called Tucci's employer, Tweeted confirmation to Exoo.

    c.  When Tucci's employer stated Tucci was terminated, enterprise associates relayed that information to Exoo.

110.    Exoo replied "Thanks for calling in the meantime it's very likely they're just hoping this blows over, so keep calling, folks!"

111.    The following day Exoo directed his associates to "keep calling folks" and the enterprise continued the assault.

## RICHARD SCHWETZ

112.    Schwetz repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

23

113.    The enterprise targeted Schwetz after he volunteered to clean up debris and litter at a Scott Presler Clean Up America event that occurred in Philadelphia on May 23, 2020.

114.    As a result of participating in the cleanup event and being photographed with other Proud Boys that participated in the cleanup event, Schwetz was doxed in June 2020.

115.    Enterprise associates directed harassing and threatening phone calls, emails, Twitter messages, and social media posts to Schwetz's co-workers located at the varied locations of his then employer Inova Payroll.

116.    Amidst the initial wave of incoming harassing and threatening phone calls, emails, and Twitter messages, an enterprise associate threatened one specific Inova Payroll employee by posting a photograph of the employee with her young son.

117.     The employee had no relationship with Schwetz whatsoever, caused Inova Payroll to reasonably fear for its employees' safety.

118.    Exoo doxed Schwetz a second time on September 21, 2020, with further instructions to enterprise associates to conduct a second round of harassing and threatening messages.  The threats are still visible on Twitter.

## MATTHEW REIDINGER

119.    Reidinger repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

120.    Exoo doxed Reidinger on November 27, 2018, and instructed his associates to direct threatening, harassing, and intimidating phone calls, Tweets, to his employer to demand his termination.

121.    As is the case with all victims, Exoo directed associates to dogpile Reidinger's employer's social media sites with negative reviews.  In his instructions Exoo admits that they recently successfully dogpiled Comcast to extort a termination.

## JOBEL BARBOSA

122.    Barbosa repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

123.    Exoo doxed Barbosa on June 22, 2019, as trans-phobic, because he was photographed at Philadelphia's gay pride parade.  As always, Exoo's directed enterprise associates to contact Barbosa's employer to demand his termination.  Associates immediately followed Exoo's directions, including one enterprise associate who left her name and telephone number.

124.    Barbosa's home address and cell phone numbers for him and his wife were posted to a webpage phonezapp.noblog.org (no longer available) and Barbosa's wife received threatening calls on her personal cell phone.

125.    The number of contacts his former employer received is unknown at this point, but the volume was substantial, and Barbosa was immediately called into a meeting with a company executive and a human resources representative.

126.    Barbosa was terminated on June 27, 2019.

## SEAN-MICHAEL DAVID SCOTT

127.    Scott repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

128.    Exoo doxed Scott on September 16, 2019 and his employer publicly confirmed his employment termination on September 17, 2019.

129.     Exoo associates threatened and intimidated the property manager for Scott's apartment.  The property manager was fearful of repercussions and demanded Scott vacate the premises.

130.     On September 17, 2019, Scott's home was attacked with graffiti and vandalized.

131.     On April 16, 2020, Scott was attacked at his home for the second time and his car's tires were slashed and windows broken.

## JOHN HUGO

132.     Hugo repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

133.     Hugo was doxed by Exoo on January 2, 2020, and as with all of his doxes, Exoo labeled Hugo a fascist and white supremacist.  Exoo's dox and call to action to his associates was re-Tweeted over 100,000 times.

134.     Enterprise associates immediately followed Exoo's directives and made hundreds of threatening and harassing phone calls and over 1,000 harassing emails to Hugo's employer demanding Hugo's termination.  As in all cases, the volume of phone calls prevented Hugo and his co-workers from performing their jobs.  Hugo was terminated in March 2020.

135.     Hugo continues to receive threatening and harassing phone calls from enterprise associates who threaten Hugo that they will never let him work again and will force him to live in a box.

## SUPPLEMENTAL PLEADING TO ADD PLAINTIFF THOMAS LOUDEN WHO WAS INJURED BY THE ENTERPRISE AFTER THE COMPLAINT WAS FILED

136.     Louden repeats and realleges the facts pertinent to all plaintiffs as alleged above in paragraphs 1 through 37 with the same force and effect as if set forth in detail herein again.

137.    The original Complaint in this action was filed on September 21, 2020, and Louden was injured after the Complaint was filed in the same series of occurrences or transactions after the Complaint was filed.  Louden was employed as the Director of Managed Care at Thomas Jefferson University Hospital in Philadelphia.

138.    During a global health emergency and pandemic Exoo doxed Louden's hospital employer on November 2, 2020, and as in all cases associates immediately flooded Louden's employer and co-workers with harassing and threatening phone calls, emails, social media posts.

139.    Louden who does not have a Twitter account was unaware of Exoo's dox until he was called to a Zoom meeting with his hospital's Vice-President and a human resources representative on November 2, 2020.  Louden was quizzed about his membership in a right-wing extremist group.  Louden is not a member of a right-wing extremist group, he is a 30-year volunteer firefighter and the appointed Deputy Emergency Management Coordinator for Hilltown Township, Pa.

140.    On November 3, 2020, Louden learned that Exoo posted photos of his home with his car parked in his driveway.

141.    On November 10, 2020, Exoo re-posted Louden's personal information with explicit directions, including photographs of his home and local street signs, the name of the city, and even the longitude and latitude coordinates.  Louden, obviously remains fearful for his family's safety.  Louden was terminated on December 7, 2020.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to – 49
(as to D'Ambly against Tribune Publishing Company and the New York Daily News)**

142.    D'Ambly realleges and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 141 with the same force and effect as if set forth in detail herein again.

143.    Defendants Tribune and Daily News are employers as defined in N.J.S.A. 10:5-5.

144.    D'Ambly is older than forty years (40) old and was an employee as defined in N.J.S.A. 10:5-5.

145.    Defendants Tribune and Daily News discharged D'Ambly due to their enmity towards D'Ambly's racially identifiable associations, whereas, non-white Tribune and Daily News employees who participate in racially identifiable associations, are not punished, or terminated, violated N.J.S.A. 10:5-12.

146.    Defendants Tribune and Daily News undertook several pre-textual steps to mask D'Ambly's discriminatory termination:

    a.    Tribune hired a private investigation firm to invade D'Ambly's privacy in an unsuccessful effort to catch D'Ambly engaged in unlawful activity.

    b.    In the morning of January 11, 2019, the Daily News received death threats intended to extort D'Ambly's termination that they did not immediately disclose, because they intended to use the threats pre-textually as the "cause" of D'Ambly's termination.

    c.    In the afternoon of January 11, 2019, the Daily News issued D'Ambly a "Last and Final Warning," that warned D'Ambly he would be immediately terminated if it were discovered he brought his political activities into the workplace, but they did not inform or warn D'Ambly of the death threats earlier received.

    d.    D'Ambly was informed he was terminated on January 16, 2019.

e.  Subsequently, D'Ambly received a "Termination of Employment" letter dated January 22, 2019, whereby, the Daily News falsely stated they discovered the death threats on January 14, 2019, contrary to indisputable evidence they received the death threats on January 11, 2019, which meant he "brought his activities into the workplace" after he was warned.  Daily News cited this fabrication as the "cause" of D'Ambly's termination.

147.   As a direct and proximate result of defendants Tribune Publishing Company and the New York Daily News racially discriminatory termination, D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT II

### Tortious Interference with Prospective Economic Benefit
### (as to all Plaintiffs except K.R. against defendant Christian Exoo a/k/a "AntiFashGordon")

148.   Plaintiffs reallege and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 147 with the same force and effect as if set forth in detail herein again.

149.   Plaintiffs were rightfully entitled to pursue lawful employment.

150.   Plaintiffs reasonably expected their employment to continue into the future and to benefit economically from his employment.

151.   Defendant Exoo knew Plaintiffs were employed and intentionally interfered with their prospective economic benefits to be gained from continued employment.

152.   Defendant Exoo intentionally and unjustifiably interfered with Plaintiffs rights to pursue lawful business.

153.    Defendant Exoo's interference caused Plaintiffs employer to terminate their employment.

154.    Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage to his reputation, loss of income and financial hardship as a result of Exoo's interference.

155.    As a direct and proximate result of defendant Exoo's interference with Plaintiffs prospective economic benefits, Plaintiffs have suffered adverse consequences and continue to be damaged.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT III

**Intrusion Upon Seclusion – Public Disclosure of Private Personal Information
(as to all Plaintiffs except for K.R. against Christian Exoo a/k/a "AntiFashGordon")**

156.    Plaintiffs reallege and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 155 with the same force and effect as if set forth in detail herein again.

157.    In directing and carrying out a sustained effort to embarrass, defame and publicize private facts, including Plaintiffs' home address and familial relations without their consent, Exoo intentionally intruded upon Plaintiffs' solitude and seclusion.

158.    By conducting a sustained effort to embarrass, defame and publicize private facts including D'Ambly's home address and familial relations without Plaintiffs' consent, Exoo intentionally intruded upon Plaintiffs' solitude and seclusion.

159.    Defendant intentionally intruded on Plaintiffs' solitude and seclusion in a manner that is highly offensive to a reasonable person.

160.     As a direct and proximate result of Exoo's intrusion upon his seclusion, Plaintiffs have suffered adverse consequences and continue to be damaged.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT IV

### Violation of N.J.S.A. 2C:33-4.1 and N.J.S.A. 2C:30-31(a) Cyber-Harassment and Stalking (as to D'Ambly against defendant Christian Exoo a/k/a "AntiFashGordon")

161.     D'Ambly realleges and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 160 with the same force and effect as if set forth in detail herein again.

162.     Defendant Exoo encouraged and incited others to violence against D'Ambly and conducted an ongoing campaign that intruded D'Ambly's life.

163.     Defendant Exoo intentionally and knowingly sent, commented, and posted D'Ambly's private and involuntarily disclosed personal information to social media networking sites to purposely harass, intimidate, and threaten D'Ambly.

164.     By encouraging others to inflict physical harm to D'Ambly's person and property.

165.     By encouraging others to commit crimes against D'Ambly that resulted in D'Ambly receiving death threats and sustaining physical damage to his personal property

166.     As a direct and proximate result of Defendant Exoo's cyber-harassment and stalking D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT V

31

**Violation of 18 U.S.C. § 875(c) – Interstate Communications**
**(as to all Plaintiffs against defendant Christian Exoo a/k/a "AntiFashGordon")**

167.    Plaintiffs reallege and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 166 with the same force and effect as if set forth in detail herein again.

168.    By using an interactive computer service to intentionally transmit threats of physical violence at Plaintiffs via interstate communications.

169.    By directing an enterprise is engaged in an interstate campaign of violent threats against Plaintiffs for the purpose of injuring and endangering Plaintiffs' personal safety.

170.    By explicitly threatening Plaintiffs via an interactive computer service Exoo transmitted threats in interstate commerce.

171.    As a direct and proximate result of defendant Exoo's use of interstate communications to threaten and harm Plaintiffs they have suffered adverse consequences and continue to suffer adverse consequences.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT VI

**Violation of 18 U.S.C. 2261A(2) –Stalking**
**(as to all Plaintiffs against defendant Christian Exoo a/k/a "AntiFashGordon")**

172.    Plaintiffs reallege and incorporate herein by reference each and every one of the allegations contained in paragraphs 1 through 171 with the same force and effect as if set forth in detail herein again.

173.    Exoo used an interactive computer service to surveil and stalk Plaintiffs with the intent to harass, intimidate, threaten, and harm Plaintiffs.

174.     Exoo stalked Plaintiffs to discover their personal identity and then disseminated the information using an interactive computer service with instructions to enterprise associates with directions to harass, intimidate, and endanger Plaintiffs personal safety.

175.     Exoo used an interactive computer service to direct an enterprise to harass, intimidate, and threaten others in order to extort Plaintiffs termination from lawful employment.

176.     Exoo's conduct caused Plaintiffs to reasonably fear for the safety of themselves and their family and caused Plaintiffs to suffer severe emotional and financial distress.

177.     As a direct and proximate result of defendant Exoo's stalking in violation of 18 U.S.C. § 2261A(2) Plaintiffs have has suffered adverse consequences and continue to suffer adverse consequences.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

### COUNT VII

**Employer's Breach of its Duty to Warn**
**(as to D'Ambly against defendants Tribune Publishing Company and the New York Daily News)**

178.     D'Ambly realleges and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 177 with the same force and effect as if set forth in detail herein again.

179.     Defendants Tribune and Daily News received a stream of death threats directed at D'Ambly over a two and one-half month period, but they never warned D'Ambly.

180.     Defendants Tribune and Daily News never warned D'Ambly to take precautionary measures as he entered or exited the workplace.

181.    Defendants Tribune and Daily News did not take steps to increase the safety of D'Ambly and other employees as they entered and exited the workplace.

182.    Defendants Tribune and Daily News did not secure the workplace in order to protect D'Ambly and others.

183.    As he was not aware of the threats, D'Ambly could not take steps to protect himself and his property and as a result his property was damaged on January 11, 2019.

184.    Defendants Tribune and Daily News had a duty to warn their employee he was the direct target of the death threats they received.

185.    As a direct and proximate result of defendants Tribune and Daily News' failure to warn D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## **COUNT VIII**

**Violations of N.J.S.A 2C:41-1 to – 2C:41-6.2 (Racketeering)**
**(as to D'Ambly against defendants Christian Exoo a/k/a "AntiFashGordon," St. Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")**

186.    D'Ambly realleges and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 185 with the same force and effect as if set forth in detail herein again.

187.    The "Exoo Enterprise" is directed by defendant Christian Exoo a/k/a "@AntiFashGordon," and consists of associates St. Lawrence University, including their employees and agents, Vijaya Gadde, and Twitter, Inc., including their employees and agents, and unknown associates.

34

188.     Defendant Exoo used an interactive computer service to direct the Exoo
Enterprise's patterns of racketeering activities as defined by N.J.S.A. 2C:41(a)(1) to extort
D'Ambly's termination from the Daily News.

     a.   The Exoo Enterprise threatened the Daily News via Tweets and phone calls and
        related activities prohibited by N.J.S.A. 2C:41-2.

     b.   Exoo Enterprise committed multiple prohibited by N.J.S.A. 2C:41(a)(1)(h).

     c.   Exoo Enterprise committed multiple prohibited by N.J.S.A. 2C:41(a)(1)(bb)

189.     As a direct result of the Exoo Enterprises patterns of racketeering activities,
D'Ambly was terminated from his employment.

190.     As a direct and proximate result of Defendants' patterns of racketeering activities
D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled
to compensatory damages, equitable and declaratory relief, punitive damages, costs, and
reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of
$75,000.00.

## COUNT IX

**Violations of 18 U.S.C. §§ 1962(c) – Racketeering**
**Multiple violations of RICO predicates 18 U.S.C. §§ 1951 and 1952**
**(as to all Plaintiffs against defendants Christian Exoo a/k/a "AntiFashGordon," St.
Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")**

191.     Plaintiffs reallege and incorporates herein by reference each and every one of the
allegations contained in paragraphs 1 through 190 with the same force and effect as if set forth in
detail herein again.

192.     Each of the individuals and entities is a "person" within the meaning of 18 U.S.C.
§ 1961(3) who conducted the affairs of the enterprise, through a pattern of racketeering activity
in violation of 18 U.S.C. § 1962(c).

193.    The Exoo Enterprise is an enterprise within the meaning of 18 U.S.C. 1961(4), directed by defendant Christian Exoo a/k/a "@AntiFashGordon," and consisting of St. Lawrence University, including their employees and agents, Vijaya Gadde, and Twitter, Inc., including their employees and agents, and unknown associates. The Exoo Enterprise was created to dox fascists and white supremacists in order to use the doxed information to conduct patterns of racketeering activities to threaten violence, intimidate, harass, and extort others to achieve the enterprises mission of causing employment terminations, educational expulsions, physical injury, and personal harm to the persons doxed. The Exoo Enterprise functions as an organization and continuing unit to effectuate patterns of racketeering activity.

194.    Upon information and belief, multiple generations of Exoo's family are or were employed by St. Lawrence University and Exoo's activities are well known to St. Lawrence faculty and administrators, who allow Exoo to direct the enterprise from St. Lawrence property, from his place of employment, during his normal work hours using St. Lawrence equipment and information technology. St. Lawrence consents to Exoo's use of St. Lawrence property to direct the enterprise, and participates in the Exoo Enterprise, because they believe the patterns of racketeering activities helps St. Lawrence's achieve their global mission.

195.    Exoo uses his employment, teaching, and lecturing at St. Lawrence with the consent and approval of St. Lawrence to recruit students to join the Exoo Enterprise as associates. In concert with other associates, the Exoo Enterprise, directed by Exoo created and maintained systematic links for the common purpose of doxing targeted fascists and white supremacists, and then threaten, harass, and extort others to cause harm to their targets.

196.    At all times relevant, Gadde was the only Twitter employee authorized to permanently ban Twitter users.[7]

197.    Exoo is and was well known to Gadde and Twitter, because Gadde and Twitter have twice before permanently banned Exoo due to habitual doxing.

198.    Gadde and Twitter agreed to associate with the Exoo Enterprise when they breached their own TOS to conspire with a recidivist ban evader, and permitted the enterprise leader to create ban evasion account "@AntiFashGordon," which Gadde and Twitter knew was purposely created to dox unsuspecting persons, in order to direct associates in patterns of racketeering activities.

199.    Gadde and Twitter associate and participate in the Exoo Enterprise's patterns of racketeering, by virtue of their affirmative decision to allow Exoo, a three-time ban evader and known habitual doxer, create a ban evasion account in direct contradiction of their TOS and enforcement rules, through which, the Exoo Enterprise conducts its patterns of racketeering.

200.    Upon information and belief Gadde and Twitter have received hundreds and likely thousands of complaints directly to their individual Twitter accounts and through Twitter's TSC regarding the Exoo Enterprise's doxing.  But Gadde and Twitter choose to ignore the avalanche of doxing and abusive behavior complaints and refuse to enforce their own policies in

---

[7] *Meet Vijaya Gadde, an Indian-born Twitter head who decides on blocking tweets, users*, The Economic Times, (Jan. 16, 2020) https://economictimes.indiatimes.com/tech/internet/meet-vijaya-gadde-an-indian-born-twitter-head-who-decides-on-blocking-tweets/articleshow/73281445.cms, last accessed September 12, 2020.  See also, *Twitter's Top Lawyer Is Final Word On Blocking Tweets – Even Donald Trump's,* Bloomberg.com,(Jan. 15, 2020)  https://www.bloomberg.com/news/articles/2020-01-15/twitter-s-gadde-is-final-word-on-blocking-tweets-even-trump-s, last accessed September 12, 2020; *Meet Twitter's top lawyer, who has the final word on blocking tweets – including Donald Trump's,* Fortune.com, (Jan. 15, 2020) https://fortune.com/2020/01/15/twitter-top-lawyer-vijaya-gadde-blocks-tweets-donald-trump/, last accessed September 12, 2020.

order to facilitate the patterns of racketeering activities directed by known ban evasion account, @AntiFashGordon.

201.    Gadde personally participates in, and benefits from the Exoo Enterprise's patterns of racketeering activities, because she has publicly stated her personal disdain for fascists and white supremacists, and she is "very, very focused on that…the KKK, the American Nazi Party," because that "was what my parents had to deal with" where she grew up on the Texas-Louisiana border.[8] Gadde participates in the Exoo Enterprise, because of an Oresteian desire to avenge her parents perceived mistreatment. Gadde and Twitter are the lynchpin of the Exoo Enterprise. Without Gadde and Twitter's consent and participation, the Exoo Enterprise could not conduct its patterns of racketeering activities.

202.    Twitter benefits economically from the Exoo Enterprise's patterns of racketeering activities, because @AntiFashGordon has an extremely large Twitter following, one of the largest follower bases of all Twitter users, and the account drives a tremendous amount of internet traffic to Twitter. Greater traffic to their site increases Twitter's ad revenue.

203.    Twitter benefits socially from the Exoo Enterprise's patterns of racketeering activities because the Exoo Enterprise's doxing of fascists and white supremacists imparts a social benefit on Twitter as it is seen as a defender of "marginalized communities" and provides cover for their stated business goal of creating what Twitter describes as "safer" conversations.

204.    The Exoo Enterprise engages in and affects interstate commerce, because, *inter alia,* it threatens violence to persons and property of others throughout the United States in

---

[8] *Twitter's Kayvon Beykpour and Vijaya Gadde: the Code Conference interview (transcript)*, Vox.com (June 27, 2019) https://www.vox.com/recode/2019/6/27/18760444/twitter-kayvon-beykpour-vijaya-gadde-kara-swisher-peter-kafka-code-conference-interview-transcript, last accessed September 12, 2020.

furtherance of a plan that reaches into the several states to disrupt economic activity.  The Exoo Enterprise has caused severe economic hardship to Plaintiffs and negatively impacted local economies throughout the United States.

205.    Pursuant to and in furtherance of their violent doxing campaign, Defendants directed and participated in the affairs of the Exoo Enterprise through patterns of racketeering activity, including multiple acts indictable under 18 U.S.C. §§ 1951 (Interference with commerce by threats or violence) and 1952 (use of interstate facilities to conduct unlawful activity).

206.    The conduct of the Exoo Enterprise described above constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).  Defendants' decisions and activity in connection with the Exoo Enterprise to routinely conduct its transactions in such a manner constitutes "patterns of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

207.    By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages sustained, plus the costs of this suit, including reasonable attorneys' fees.

208.    As a direct and proximate result of Defendants patterns of racketeering activity Plaintiffs have suffered adverse consequences and continue to suffer adverse consequences in an amount to be determined at trial, but which is in excess of $75,000.00.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT X

**Violation of 18 U.S.C. § 1962(d) (Conspiracy)**
**(as to all Plaintiffs against defendants Christian Exoo a/k/a "AntiFashGordon," St. Lawrence University, Vijaya Gadde, and Twitter, Inc., the "Exoo Enterprise")**

209.    Plaintiffs reallege and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 208 with the same force and effect as if set forth in detail herein again.

210.    Section 1962(d) of RICO provides "shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section."

211.    Defendants have violated 18 U.S.C. § 1962(d) by conspiring to associate and participate in the Exoo Enterprise's patterns of racketeering activities as defined in 18 U.S.C. 1962(c).  The object of this conspiracy is to conduct, direct and participate in, directly or indirectly, the Exoo Enterprise's patterns of racketeering activity.

212.    Defendants' have engaged in numerous overt and predicate racketeering acts in furtherance of the conspiracy, including threatening, intimidating, and extorting others to cause harm to their targets.

213.    The nature of the above-described acts of Defendants' and co-conspirators acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. 1962(d) violation, but they were aware that their ongoing extortionate acts have been, and are part of an overall pattern of racketeering activity demonstrated through related and continuous acts.

214.    Defendants sought to and have engaged in the commission of, and continue to commit overt acts, including the following unlawful racketeering predicate acts:

   a.  Multiple instances of interference with commerce by threats of violence in violation of 18 U.S.C. § 1951; and

   b.  Multiple instances of use of interstate facilities to conduct unlawful activity violations of 18 U.S.C. § 1952.

215.     As a direct and proximate result of Defendants' multiple overt acts and predicate acts in furtherance of the Exoo Enterprise, in violation of 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. 1962(c), D'Ambly has been and continues to be injured by Defendants' conduct.

216.     By virtue of these violations of 18 U.S.C. § 1962(d), Defendants are liable to D'Ambly for three times the damages sustained, plus the costs of this suit, including reasonable attorneys' fees.

217.     As a direct and proximate result of Defendants patterns of racketeering activity Plaintiffs have suffered adverse consequences and continue to suffer adverse consequences in an amount to be determined at trial, but which is in excess of $75,000.00.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XI

### Negligent Entrustment

### (as to all Plaintiffs against defendants Vijaya Gadde and Twitter, Inc.)

218.     Plaintiffs reallege and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 217 with the same force and effect as if set forth in detail herein again.

219.     Exoo is a notorious and infamous doxer, who relies on Twitter to dox unsuspecting people and direct his enterprise.

220.     Due to habitual doxing and abusive behavior, Twitter has previously permanently banned two accounts controlled by Exoo, @ChrisExoo and @ChristianExoo.

221.    Upon information and belief, Twitter received hundreds of complaints that Exoo was habitually doxing under Twitter username @DoxSavage.

222.    In lieu of a third permanent ban Twitter agreed to allow Exoo to undergo a username change from @DoxSavage to @AntifashGordon, contrary to Twitter's TOS.

223.    Subsequent to Twitter's agreement to allow Exoo to change his Twitter username to @AntiFashGordon, Vijaya Gadde and Twitter's Safety Council have received numerous doxing complaints.

224.    Gadde was the only person at Twitter with authority to decide permanent bans and she knew Exoo is a habitual doxer, but she ignored that knowledge and agreed to allow him to change his username and continue doxing.

225.    Gadde recklessly ignored Twitter's TOS against ban evasion accounts and allowed Exoo to change his name from @DoxSavage to @AntiFashGordon, thereby, entrusting Exoo with the instrumentality to direct the Exoo Enterprise's patterns of racketeering activities.

226.    As a direct and proximate result of defendant Gadde and Twitter's negligent entrustment Plaintiffs have suffered adverse consequences and continue to suffer adverse consequences.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XII

### Breach of Implied Covenant of Good Faith – Promissory Estoppel
### (as to all Plaintiffs against defendants Vijaya Gadde and Twitter, Inc.)

227.    Plaintiffs reallege and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 226 with the same force and effect as if set forth in detail herein again.

228.   Defendant Twitter's TOS prohibit doxing and ban evasion accounts.

229.   Defendant Twitter created a Trust and Safety Council department to investigate TOS violations to remove abusive content and protect others from abusive behaviors of others.

230.   Twitter created the Trust and Safety Council to prohibit abusive behavior by Twitter users and promised victims of abusive behavior would be protected.

231.   Gadde is the executive in charge of Twitter's Trust and Safety council, and the only person at Twitter with authority to allow Exoo to create a ban evasion account.

232.   Twitter allowed Exoo to create a ban evasion account fully aware he was a habitual doxer, who used Twitter to harm others.

233.   Exoo as @AntiFashGordon doxed Plaintiffs and violently threatened others with violence, including employers and former co-workers in order to extort Plaintiffs' termination.

234.   Gadde, Twitter Support and Twitter Trust and Safety received contemporaneous complaints that @AntiFashGordon doxed Plaintiffs, but took no action.

235.   Twitter refused to protect Plaintiffs the Exoo Enterprise's abusive behavior and have not removed Plaintiffs doxed information or banned the Exoo Enterprise, who continue to abuse and dox.

236.   Twitter assumed liability for the harm that flows from defendant Exoo's doxing when they neglected to remove Plaintiffs' doxed information in violation of their TOS.

237.   As a direct and proximate result of defendant Gadde and Twitter's breach of their assumed duty to remove Plaintiffs doxed private information Plaintiffs have suffered adverse consequences and continue to suffer adverse consequences.  Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## COUNT XIII
### Legal Malpractice

**(as to D'Ambly against defendant Cohen, Weiss, and Simon, L.L.P.)**

238.    D'Ambly repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 237 with the same force and effect as if set forth in detail herein again.

239.    As a result of their personal revulsion of D'Ambly and his political beliefs CWS failed to adequately represent and protect D'Ambly's rights.

240.    Defendant CWS neglected to perform necessary case research, legal research, and investigation of the accusations against D'Ambly.

241.    As a result of CWS's inadequate legal research and investigation they failed to protect D'Ambly from the extortionate and criminal conduct of others.

242.    As a result of CWS's failure to adequately investigate D'Ambly's doxing they failed to learn that @AntiFashGordon publicly announced D'Ambly's termination on January 13, 2019, which occurred five days before his official termination date, and one day before the purported "cause" of his termination was discovered.

243.    CWS failed to challenge Brill's blatant misrepresentations regarding the timing of the alleged 'cause' of D'Ambly's termination.

244.    CWS's revulsion of D'Ambly and his political beliefs caused them to ignore an obvious racially discriminatory pre-textual termination spotlighted by the private investigation, last and final warning, and falsely claimed cause of D'Ambly's termination.

245.    As a direct and proximate result of CWS's legal malpractice that flowed from their firmwide enmity of D'Ambly's political beliefs D'Ambly has suffered adverse consequences and continues to be damaged.  D'Ambly is entitled to compensatory damages,

equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees in an amount to be determined at trial, but which is in excess of $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.     Demands judgment against Defendants, jointly and severally, in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements, and for such relief as the Court deems just and proper.

2.     On Plaintiffs' RICO claims: compensatory damages and enhancement of damages Plaintiffs have sustained as a result of Defendants' conduct as may be permitted under the relevant statutes, such amount to be determined at trial, plus Plaintiffs costs in this suit, including reasonable attorneys' fees.

3.     On Plaintiffs' tortious interference, intrusion upon seclusion, stalking and harassment claims: compensatory and punitive damages in an amount to be determined at trial.

4.     On D'Ambly's State claims against the Tribune and Daily News: compensatory damages and enhancement of damages he sustained as a result of the Tribune and Daily News' conduct as may be permitted under the relevant statutes, such amount to be determined at trial, plus Plaintiffs costs in this suit, including reasonable attorneys' fees.

5.     On D'Ambly's legal malpractice claim: compensatory damages to be determined at trial.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

Respectfully Submitted,
**LAW OFFICE OF PATRICK TRAINOR**
*Attorney for D'Ambly*

Dated: January 7, 2021

Patrick Trainor
848 Paterson Avenue
East Rutherford, New Jersey 07073
(201) 777-3327
pt@ptesq.com

46