## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>                    Plaintiff,<br><br>        v.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAY GADDE; TWITTER, INC.; COHEN, WEISS AND SIMON LLP,<br><br>                   Defendants. | Case No. 2:20-cv-12880-JMV-JSA<br><br><br>_Civil Action_<br><br><br>**Motion Date: July 6, 2021** |

---

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANT COHEN, WEISS AND SIMON LLP IN SUPPORT OF ITS MOTION TO DISMISS COUNT XIII OF PLAINTIFF'S AMENDED COMPLAINT**

---

Michael J. Canning, Esq. (MJC3060)
Afiyfa H. Ellington, Esq. (AHE4674)
**GIORDANO, HALLERAN & CIESLA**
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

Attorneys for Defendant Cohen,
Weiss and Simon LLP

MICHAEL J. CANNING, ESQ.
  Of Counsel and on the Brief

AFIYFA H. ELLINGTON, ESQ.
  On the Brief

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................... ii

PRELIMINARY STATEMENT........................................ 1

PROCEDURAL HISTORY........................................... 1

STATEMENT OF FACTS........................................... 3

STANDARD OF REVIEW........................................... 6

LEGAL ARGUMENT............................................... 8

    POINT I

        THIS COURT SHOULD DISMISS COUNT XIII OF PLAINTIFF'S
        AMENDED COMPLAINT WITH PREJUDICE UNDER RULE 12(C) AS
        THERE IS NO LEGAL BASIS FOR THE LEGAL MALPRACTICE
        CLAIM AGAINST CWS....................................... 8

        A. As a Matter of Law, There Is No Attorney-Client
           Relationship between Plaintiff and CWS, as CWS
           Represented the Union in the Grievance and
           Arbitration........................................... 8

CONCLUSION.................................................. 14

**TABLE OF AUTHORITIES**

**Cases**

Arnold v. Air Midwest Inc., 100 F.3d 857 (10th Cir. 1996)..... 11

Ashcroft v. Iqbal, 556 U.S. 544 (2007)......................... 7

Atkinson v. Sinclair Refinancing Co., 370 U.S. 238
    1962) ..................................... 9, 10, 11, 13

Breda v. Scott, 1 F.3d 908 (9th Cir. 1993)................... 11

Burtch v. Milberg Factors Inc., 662 F.3d 212 (3d Cir.
    2011) ...................................................... 7

Carino v. Stefan, 376 F.3d 156 (3d Cir. 2004)......... 9, 12, 13

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)......... 7

Glob. Naps. Inc. v. Bell Atl. N.J. Inc., 287 F.Supp. 2d
    532 (D.N.J. 2003) ......................................... 7

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410
    (3d Cir. 1997) ............................................ 7

Jabolonski v. Pan Am. World Airways, Inc., 863 F.2d 289
    (3d Cir. 1988) ............................................ 7

Jerista v. Murray, 185 N.J. 175 (2005)........................ 8

Montplaisir v. Leighton, 875 F.2d 1, 7 (1st Cir. 1989).... 11, 13

Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir. 1985),
    cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.
    2d 187 (1986) ..................................... 11, 12, 13

Republic Steel Corp. v. United Mine Workers of America,
    570 F.2d 467 (3d Cir. 1978) .............................. 10

Rosenau v. Unifund Corp., 539 F.3d 218 (3d Cir. 2008)......... 6

Waterman v. Transport Workers Union Local 100, 176 F.3d
    150 (2d Cir. 1999) ....................................... 11

Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre,
    Local 120, 647 F.2d 372 (3d Cir. 1981) ................... 10

**Statutes**

29 U.S.C. §185; §10(b)....................................... 13

**Rules**

Rule 12(b)(6).............................................. 7, 10

Rule 12(c)................................................... 7

- ii -

**Constitutional Provisions**

U.S. Const. Amend. I and N.J. Const. Art. I, ¶6................ 3

## PRELIMINARY STATEMENT

Cohen, Weiss and Simon LLP ("CWS") files this motion to dismiss Count XIII of the Amended Complaint of Plaintiff, Daniel D'Ambly ("Plaintiff" or "D'Ambly") with prejudice.  In this Count, the sole Count of the Amended Complaint asserted against CWS, Plaintiff alleges a claim of legal malpractice arising from CWS' representation of Local One-L, Graphic Communications Conference of the International Brotherhood of Teamsters (the "Teamsters Union") in a labor arbitration challenging D'Ambly's termination by the New York Daily News ("Daily News").

This claim of legal malpractice fails as a matter of law. Legal precedent, including binding precedent from the Third Circuit Court of Appeals, compels the dismissal of this claim because there is no attorney-client relationship between Plaintiff and CWS, which represents the Teamsters Union, not its constituent member.

## PROCEDURAL HISTORY

On September 21, 2020, D'Ambly filed a Complaint with jury demand against Defendants, Christian Exoo a/k/a Antifash Gordon ("Exoo"), St. Lawrence University, Tribute Publishing Company ("Tribute"), Daily News, Vijaya Gadde, Twitter, Inc. ("Twitter") and CWS (collectively referred to as "Defendants"). (Certification of Michael J. Canning, Esq. (the "Cert. Canning") at Exhibit A).

Count XIII of the Complaint alleges a claim of legal malpractice against CWS, which is the only count of the Complaint directed to CWS. (Cert. Canning, Exhibit A, pp. 31-32).

On October 22, 2020, CWS filed its Answer to Plaintiff's Complaint, denying all allegations of legal malpractice and setting forth separate defenses and cross claims against Defendants. (Cert. Canning, Exhibit B). CWS pleaded as its second affirmative defense that Plaintiff's Complaint must be dismissed as to CWS for failure to state a claim upon which relief can be granted and reserved its right to move to dismiss the Complaint. Id.

On November 9, 2020, CWS filed a motion to dismiss Plaintiff's Complaint as to CWS with prejudice. On November 23, 2020, Plaintiff filed a brief in opposition to the motion to dismiss. On December 6, 2020, CWS filed its reply brief.

After CWS' motion was fully briefed, on January 10, 2021 Plaintiff filed a motion for leave to file an Amended Complaint. On March 25, 2021 an Order was entered allowing Plaintiff to file an Amended Complaint. The Amended Complaint did not include any new or additional claims against CWS and the sole count in the Amended Complaint as to CWS is Count XIII. A copy of Plaintiff's Amended Complaint is attached to the Cert. Canning as Exhibit C.

CWS now moves to dismiss Plaintiff's Amended Complaint as to CWS with prejudice pursuant to Rule 12 (c).

## <u>STATEMENT OF FACTS</u>[1]

Plaintiff D'Ambly was a member of the Teamsters Union and worked as a plate maker for the Daily News in Jersey City, New Jersey until January 18, 2019, when the Daily News terminated him. (Cert. Canning, Exhibit C, ¶1).

Plaintiff is a member of the European Heritage Association and participates in political rallies, political protests, pamphleteering and speech, which he contends is protected by the <u>U.S. Const.</u> Amend. I and <u>N.J. Const.</u> Art. I, ¶6.  (Cert. Canning, Exhibit C, ¶1).

Defendant Exoo is an alleged member of Antifa who uses the Twitter username @Antifash Gordon.  D'Ambly accuses Exoo of conducting "doxing" campaigns to publicly disclose the identity, employer, school, and home addresses of white supremacists and fascists in an attempt to get them fired from their jobs. (Cert. Canning, Exhibit C, Statement of Case, ¶16).

As alleged in the Complaint, in or about January 2018, Exoo identified D'Ambly as a white supremacist, and in October 2018, revealed D'Ambly's full identity, place of employment and other information.  (Cert. Canning, Exhibit C, ¶¶39, 44). D'Ambly alleges that Exoo and his associates directed harassing, intimidating and

---

[1] Although the Amended Complaint contains various misstatements of fact, CWS will accept the allegations of the Amended Complaint as true for the purposes of this motion only.

death-threatening phone calls and Twitter "tweets" to the Daily News in order to try to get D'Ambly fired.  (Cert. Canning, Exhibit. C, ¶45).

In December 2018, the Tribune, the parent company of the Daily News, conducted an investigation resulting in a Private Investigation Report ("Report") that confirmed through videography evidence that D'Ambly and others had used racial slurs and other hate speech during political rallies.  (Cert. Canning, Exhibit C, ¶46).

On January 10, 2019, D'Ambly, accompanied by a representative of the Teamsters Union, met with Tribune and Daily News representatives.  During the meeting, the Report was discussed and D'Ambly acknowledged that he was a member of the European Heritage Association and had used imprudent language at protests.  (Cert. Canning, Exhibit C, ¶50).

D'Ambly alleges that on January 11, 2019, in an attempt to stop a protest the following day by the European Heritage Association, Exoo and his associates sent to the Daily News death threats and threatening calls.  (Cert. Canning, Exhibit C, ¶¶51, 52).  Later that day, the Daily News issued D'Ambly a "Last and Final Warning." (Cert. Canning, Exhibit C, ¶56).

D'Ambly alleges that on January 16, 2019, the Daily News blamed him for death threats it had received, and terminated his employment. (Cert. Canning, Exhibit C, ¶63).

- 4 -

Thereafter, the Teamsters Union filed a grievance against the Daily News challenging D'Ambly's termination, pursuant to the terms of the collective bargaining agreement. The Teamsters Union engaged CWS, a law firm, to handle the grievance and arbitration. (Cert. Canning, Exhibit C, ¶¶23, 68).

On or about July 15, 2019, the Daily News, the Teamsters Union, and D'Ambly executed a Separation Agreement resolving the grievance and arbitration. The Daily News paid D'Ambly a lump sum payment and in exchange the Teamsters Union withdrew the grievance and arbitration with prejudice. (Cert. Canning, Exhibit C, ¶73).

The sole cause of action pleaded against CWS is Count XIII of the Amended Complaint, which alleges legal malpractice relating to the legal services provided by CWS relating solely to the grievance and arbitration between the Teamsters Union and the Daily News. (Cert. Canning, Exhibit C, ¶¶ 68-73, 238-245). D'Ambly alleges that in connection with the grievance and arbitration, he spoke with CWS attorneys Thomas Kennedy and Kate Swearengen, and that both attorneys allegedly expressed their disagreement as to his political positions. D'Ambly asserts that CWS failed to adequately represent and protect his rights as a result of its attorneys' personal revulsions to his politics. (Cert. Canning, Exhibit C, ¶¶ 68-71, 239). D'Ambly alleges that CWS neglected to perform necessary case research, legal research and investigation of the accusations against him and contends that this failure resulted in

their inability to protect him from the extortionate and criminal conduct of others. (Cert. Canning, Exhibit C, ¶¶240-241). D'Ambly alleges that an investigation would have determined that @AntiFashGordon publicly announced D'Ambly's termination on January 13, 2019, five days before his official termination date and one day before the Daily News discovered the purported "cause" for his termination. (Cert. Canning, Exhibit C, ¶242). D'Ambly alleges that CWS failed to challenge blatant misrepresentations by the Daily News regarding the timing of the alleged cause of his termination. (Cert. Canning, Exhibit C, ¶243). D'Ambly further alleges that CWS' revulsion of D'Ambly's political views caused CWS to ignore that his termination was racially discriminatory and pre-textual. (Cert. Canning, Exhibit C, ¶244). D'Ambly contends that he has suffered adverse consequences and continues to be damaged, and seeks compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees and other damages. (Cert. Canning, Exhibit C, ¶245).

## STANDARD OF REVIEW

The Third Circuit has explained that a court may grant a Rule 12(c) motion for judgment on the pleadings when "no material issue of fact remains to be resolved and [the movant] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)(quoting Jabolonski v. Pan Am. World

- 6 -

Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)(internal quotation marks and citations omitted)).

"The difference between Rule 12(b)(6) and Rule 12(c) is purely procedural and 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions." Glob. Naps. Inc. v. Bell Atl. N.J. Inc., 287 F.Supp. 2d 532, 530 (D.N.J. 2003). For a complaint to survive dismissal under Rule 12(b)(6), or Rule 12(c), it must contain sufficient factual matter to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 544, 570 (2007). In evaluating the sufficiency of a complaint, district courts must separate the legal and factual elements. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). Mere restatements of the elements of a claim are legal conclusions and therefore are not entitled to an assumption of truth. Burtch v. Milberg Factors Inc., 662 F.3d 212, 224 (3d Cir. 2011). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. at 678. The court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

<u>**LEGAL ARGUMENT**</u>

<u>**POINT I**</u>

<u>**THIS COURT SHOULD DISMISS COUNT XIII OF
PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE
UNDER RULE 12(C) AS THERE IS NO LEGAL BASIS
FOR THE LEGAL MALPRACTICE CLAIM AGAINST CWS.**</u>

**A.   As a Matter of Law, There Is No Attorney-Client Relationship
between Plaintiff and CWS, as CWS Represented the Union in
the Grievance and Arbitration.**

In order to sustain a cause of action for legal malpractice under New Jersey law, an attorney-client relationship must be established between the plaintiff and the defendant which imposes upon the defendant a duty of care to the plaintiff. <u>Jerista v. Murray</u>, 185 <u>N.J.</u> 175, 190-91 (2005).

Where, as here, an attorney represents a union in a labor grievance on behalf of a union member as part of the collective bargaining process, the attorney represents the <u>union</u> and no attorney client relationship is entered into between the attorney and the union <u>member</u>. Because Plaintiff cannot prove the *prima facie* element of a legal duty owed by CWS to him, his claim for legal malpractice against CWS is unsustainable as a matter of law.

As all of the factual allegations and the sole cause of action against CWS arise out of and relate to the grievance and arbitration which are part of the collective bargaining process, CWS is immune from suit for malpractice by Plaintiff as a member of the Teamsters Union.

In Carino v. Stefan, 376 F.3d 156 (3d Cir. 2004), the Third Circuit Court of Appeals unequivocally ruled that Section 301(b) of the Labor Management Relations Act ("LMRA"), as broadly interpreted by the United States Supreme Court in Atkinson v. Sinclair Refinancing Co., 370 U.S. 238 (1962), immunizes from suit for legal malpractice attorneys hired by unions to perform services related to a collective bargaining agreement.

In Carino, plaintiff was employed as an insurance agent and was a member of the union that had a collective bargaining agreement with her employer. When plaintiff's employer terminated her employment (for misconduct in selling insurance policies), the union filed a grievance under the procedures established by the collective bargaining agreement. The union thereafter engaged a law firm to handle the arbitration challenging plaintiff's termination, and the law firm appointed one of its attorneys for this purpose. Plaintiff thereafter executed a settlement agreement in which she agreed to forego arbitration because the attorney assured her that in exchange, her employer would clear her of the charges and reinstate her pension. When plaintiff realized that the documents she signed made no reference to such concessions by her employer, she brought claims of legal malpractice against the firm and the attorney. Carino, 376 F.3d at 158-59.

This Court dismissed the complaint with prejudice under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Third Circuit Court of Appeals affirmed the dismissal of the complaint and made clear that the attorney enjoyed immunity:

> This appeal presents a question of first impression for our Court, namely, whether an attorney hired by a union to perform services on behalf of a union member in connection with an arbitration hearing conducted pursuant to a collective bargaining agreement is immune from suit for malpractice by that member. We conclude that the LMRA bars such a suit. [Carino, 376 F.3d at 159.]

In reaching this conclusion, the Third Circuit explained that "the law is clear that individual union officers are not personally liable to third parties for actions taken on behalf of the union in the collective bargaining process." Id. at 159-160.[2] The Carino court found that "with monotonous regularity [other courts of appeals have] cited Atkinson to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." Id. at 160 (internal quotation marks and citations omitted).

---

[2] The Third Circuit had previously recognized that Atkinson protects individual union members and officers from suit from alleged union wrongs. See e.g., Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372, 377 (3d Cir. 1981); Republic Steel Corp. v. United Mine Workers of America, 570 F.2d 467, 478 (3d Cir. 1978).

With respect to the specific issue of the applicability of Atkinson to attorneys who act on behalf of a union to assist a union member in a labor arbitration, the Third Circuit recognized that other courts of appeals had all reached the same result:

> The only courts of appeals to have considered the specific question presented here, where attorneys acted on behalf of the union, have uniformly concluded that Atkinson prohibits claims made by a union member against attorneys employed by or retained by the union to represent the member in a labor dispute. See Waterman v. Transport Workers Union Local 100, 176 F.3d 150 (2d Cir. 1999)("[U]nder Atkinson, a union's attorneys may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement."); Arnold v. Air Midwest Inc., 100 F.3d 857, 862 (10th Cir. 1996) ("[A]n attorney who performs services for and on behalf of a union may not be held liable in malpractice to individual grievant where the services performed constitute a part of the collective bargaining process."); Breda v. Scott, 1 F.3d 908, 909 (9th Cir. 1993) (holding that employees cannot sue inside or outside counsel for services rendered under a collective bargaining agreement); Montplaisir [v. Leighton, 875 F.2d 1, 7 (1st Cir. 1989)] ("[F]or purposes of the Atkinson principle, [attorneys] must be treated the same as other union agents."); Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir. 1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed. 2d 187 (1986) ("[W]here, as here, the attorney performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the rationale behind the Atkinson rule is squarely applicable.") [Id. at 160.]

As one court has explained, a union may choose to have grievances handled by a union representative with no legal training, or by an attorney. When a union chooses to make use of an attorney, that attorney has not "entered into an 'attorney-client' relationship in the ordinary sense with the particular union member" at issue. Peterson, 771 F.2d at 1258 (internal quotations in the original). Rather, the attorney merely "assume[s] a function that often is performed by a union's business agents or representatives." Peterson, 771 F.2d at 1258. When it is the union which provides the services, albeit through assigned counsel, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member. Id.

In Carino, the Third Circuit cited several policy considerations for not permitting members to bring malpractice claims against union attorneys handling labor grievances under a collective bargaining agreement. First, the court noted that it would be "anomalous" if the union attorney could be liable for mere negligence where the union would be liable only if a higher standard were met, namely arbitrariness or bad faith. 376 F.3d at 161.

Second, because state statutes of limitation for malpractice are generally longer than the statutes of limitation for a union member to file suit against the union or employer, if union

- 12 -

attorneys were subject to such malpractice suits, litigants would be able to proceed against the attorney long after their time for suing the union and the employer had expired.   Id. (citing Peterson, 771 F.2d at 1259).[3]

Finally, the Third Circuit recognized that if union members were permitted to sue union attorneys, the attorneys could be held liable for damages "flowing from the union's political or tactical choices" which "could, in turn, severely hamper unions in enlisting quality representation."   Id. (citing Montplaisir, 875 F.2d at 7).

"[G]uided by Atkinson [] and the logic of the opinions" of the other courts of appeals, the Third Circuit held that "§ 301 of the LMRA immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice."   Id. at 162.

Here, the sole allegations against CWS relate to the services it provided on behalf of the Teamsters Union in the grievance and arbitration process, which are part of the collective bargaining agreement between the Daily News and the Teamsters Union.   Under the clear and unequivocal holding in Carino, CWS is immune from D'Ambly's claim of legal malpractice.

---

[3] Any claim against the Teamsters Union is time-barred by the applicable six-month statute of limitations.   See §301 of the LMRA, 29 U.S.C. §185; §10(b) of the National Labor Relations Act, as amended, 29 U.S.C. §160(b).

## <u>CONCLUSION</u>

Based on the foregoing arguments, Defendant Cohen, Weiss and Simon LLP respectfully requests that the Court dismiss Count XIII of the Amended Complaint with prejudice.


                                    GIORDANO, HALLERAN & CIESLA
                                    A Professional Corporation
                                    Attorneys for Defendant Cohen,
                                    Weiss and Simon LLP


By:    _____
                                    MICHAEL J. CANNING, ESQ.

Dated:  April 22, 2021

Docs #5035498-v1

- 14 -