## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL; MARK ANTHONY TUCCI, <div style="text-align:center">Plaintiffs,</div> vs. CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP, UNNAMED ASSOCIATES 1 – 100, <div style="text-align:center">Defendants.</div> | Civil Action No. 2:20-cv-12880-JMV-JSA Honorable John Michael Vazquez United States District Judge **Oral Argument Requested** Motion Date: July 6, 2021 |

### DEFENDANTS TWITTER, INC. AND VIJAYA GADDE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE COUNTS VIII-XII OF PLAINTIFFS' FIRST AMENDED COMPLAINT AND CROSS-CLAIMS FILED BY CO-DEFENDANT COHEN, WEISS AND SIMON, LLP

Lawrence S. Lustberg (ID#023131983)
Lauren James-Weir (ID#025202007)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4731
Facsimile: (973) 639-6285
llustberg@gibbonslaw.com
ljames-weir@gibbonslaw.com

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

*Attorneys for Defendants Twitter, Inc.
  and Vijaya Gadde*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

LEGAL STANDARD........................................................................... 10

ARGUMENT ..................................................................................... 10

I.      Section 230 Immunizes Twitter And Ms. Gadde From Plaintiffs'
        Claims................................................................................. 11

II.     All Of Plaintiffs' Claims Against Twitter And Ms. Gadde Should
        Be Dismissed For Failure To Plead Essential Elements Of Each
        Claim. ................................................................................. 19

        A.      The FAC Fails To State A Claim For Negligent Entrustment
                Against Either Twitter Or Ms. Gadde [Count XI]. ....................... 19

        B.      Plaintiffs Fail To State A Claim Against Either Twitter Or
                Ms. Gadde For Racketeering, Under Either New Jersey Or
                Federal Law [Counts VIII-X]....................................................... 25

                1.      The FAC fails to plausibly allege Twitter or Ms.
                        Gadde were part of any racketeering "agreement" or
                        "enterprise."...................................................................... 26

                2.      The FAC fails to plausibly allege that Twitter or Ms.
                        Gadde engaged in the requisite racketeering
                        "conduct."........................................................................... 29

                3.      The FAC fails to plausibly allege that Plaintiffs were
                        injured "by reason of" any alleged predicate acts.............. 31

                4.      The FAC fails to plausibly allege the requisite
                        predicate acts. ................................................................... 32

        C.      Plaintiffs Fail To State A Claim Against Twitter Or Ms.
                Gadde For Breach Of An Implied Covenant Of Good Faith
                [Count XII] ......................................................................... 35

III.    The Cross-Claims Previously Filed By Cohen, Weiss and Simon,
        LLP Should Also Be Dismissed.............................................................. 38

CONCLUSION ............................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Argent Holdings, LLC v. East El Paso Physicians Medical Ctr.*
*LLC*, 2018 WL 548676 (W.D. Tex. Jan. 23, 2018).................................38

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................10, 39

*Backpage.com, LLC v. Hoffman,*
2013 WL 4502097 (D.N.J. Aug. 20, 2013) ...........................................13

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.,*
88 F. Supp. 3d 543 (E.D. Va. 2015).......................................................17

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009)...................................................13, 17, 18

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003)................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................10

*Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.,*
206 F.3d 980 (10th Cir. 2000)................................................................13

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr.*
*Assocs.*, 864 A.2d 387 (N.J. 2005) ........................................................36

*Camden Cnty. Bd. Of Chosen Freeholders v. Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000).........................................................21

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F. 3d 536 (3d Cir. 2001)..................................................................24

*City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882
(E.D. Pa. 2000) ............................................................19, 20, 21, 22, 24

*Crosby v. Twitter, Inc.,*
303 F. Supp. 3d 564 (E.D. Mich. 2018) .................................................20

*Crosby v. Twitter, Inc.,*
921 F.3d 617 (6th Cir. 2019)..................................................................14

*Davis v. Motiva Enterprises, L.L.C.*,
  2015 WL 1535694 (Tex. Ct. App. Apr. 2, 2015) .................................... 18

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ................................................................. 20

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ........................................................... 18, 19

*Doe v. Oesterblad*,
  2015 WL 12940181 (D. Ariz. June 9, 2015) ......................................... 18

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000) .................................................................. 32

*Fair Hous. Council of San Fernando Valley v. Roommates.com,*
  521 F.3d 1157 (9th Cir. 2008) ......................................................... 11, 14

*Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964 (N.D. Cal. 2016) ................... 14, 17

*Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*,
  2018 WL 1069417 (D.N.J. Feb. 26, 2018) ............................................ 39

*Force v. Facebook, Inc.*,
  304 F. Supp. 3d 315 (E.D.N.Y. 2018) ................................................... 17

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) .................................................................... 12

*Gagliardi v. Kratzenberg*,
  188 F. App'x 86 (3d Cir. 2006) ............................................................... 5

*Godwin v. Facebook, Inc.*,
  160 N.E. 3d 372 (Ohio Ct. App. 2020) ................................................. 24

*Gonzalez v. Google, Inc.*,
  335 F. Supp. 3d 1156 (N.D. Cal. 2018) ................................................ 17

*Green v. America Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003) .............................................. 3, 11, 12, 16, 37

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010) ............................................................................ 31-32

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018) ................................................... 24

*Hinton v. Amazom.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014) .................................................. 18

*Holmes v. Secs. Investor Protection Corp.*,
    503 U.S. 258 (1992) ............................................................................. 31

*Hunsberger v. The Original Fudge Kitchen*,
    2020 WL 6620156 (D.N.J. Nov. 12, 2020) ...................................... 39-40

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*,
    2017 WL 2728413 (D. Utah June 23, 2017)..................................... 17-18

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ........................................ 15

*In re Insurance Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)..........................................27, 28, 29, 30, 31

*Inventel Prods., LLC v. Li*,
    2019 WL 5078807 (D.N.J. Oct. 10, 2019) ........................................... 14

*Jian Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ................................................... 25

*Jones v. Twitter, Inc.*,
    2020 WL 6263412 (D. Md. Oct. 23, 2020) ...................................... 14-15

*Katz v. Holzberg*,
    2013 WL 5946502 (D.N.J. Nov. 4, 2013) ............................................ 40

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016)............................................................. 17

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .......................................................... 15

*La 'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017)................................................. 25

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) .................................................... 25

*Leeder v. Feinstein*,
    2019 WL 2710794 (D.N.J. June 28, 2019)........................................... 28

*Lentini v. McDonald's USA, Inc.*,
    2019 WL 4746420 (D.N.J. Sept. 30, 2019) ..................................... 27, 28

*Manchanda v. Google*,
    2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016)........................................ 18

*McCullough v. Zimmer, Inc.*,
    382 F. App'x 225 (3d Cir. 2010)..................................................... 27, 29

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974).............................................................................. 25

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994).............................................................................. 25

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009)........................................................... 15-16

*New Jersey Citizens United v. Hernandez*,
    2006 WL 686571 (D.N.J. Mar. 20, 2006) ............................................ 20

*Obado v. Magedson*,
    2014 WL 3778261 (D.N.J. July 31, 2014)...................... 12, 17, 19, 38-39

*Obado v. Magedson*,
    612 F. App'x 90 (3d Cir. 2015)........................................... 10, 16, 18, 35

*Parker v. Google, Inc.*,
    242 F. App'x 833 (3d Cir. 2007)........................................................... 14

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)................................................................ 37

*Pro. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding,
    Inc.*, 2009 WL 1651131 (D.N.J. June 12, 2009).................................... 32

*Regions Bank v. Kaplan*,
    2013 WL 1193831 (M.D. Fla. Mar. 22, 2013) ...................................... 39

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................... 25, 31

*Roman Restoration, Inc. v. Operative Plasterers & Cement
    Masons' Int'l Assoc. of the U.S. & Canada # 8*,
    2008 WL 2684350 (D.N.J. June 30, 2008)....................................... 33, 34

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989).................................................................. 27

*Ross v. Celtron Int'l, Inc.*,
  494 F. Supp. 2d 288 (D.N.J. 2007)..........................................................35

*Saponaro v. Grindr, LLC*,
  93 F. Supp. 3d 319 (D.N.J. 2015)....................................................13, 24

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003)........................................................................33, 34

*Sedima, S.P.R.L v. Imrex Co., Inc.*,
  473 U.S. 479 (1985)........................................................................26, 27

*Sharp v. Kean University*,
  153 F. Supp. 3d 669 (D.N.J. 2015)..........................................................27

*Smith v. Berg*,
  247 F.3d 532 (3d Cir. 2001)....................................................................26

*St. Clair v. Citizens Financial Grp.*,
  340 F. App'x 62 (3d Cir. 2009)..........................................................32, 33

*State v. Ball*,
  632 A.2d 1222 (N.J. Super. Ct. App. Div. 1993)....................................30

*Tedeschi v. Smith*,
  2010 WL 148424 (D.N.J. Jan. 12, 2010).........................................29, 30

*United States v. Nordean*, Case No. 21-cr-175 (TJK), ECF No. 26
  (D.D.C. Mar. 10, 2021).......................................................................4, 5

*United States v. Turkette*,
  452 U.S. 576 (1981)................................................................................28

*United Support Solutions v. LaPierre*,
  2014 WL 3058561 (D.N.J. July 7, 2014) ...............................................26

*Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
  996 F.2d 1534 (3d Cir. 1993)..................................................................29

*Williams v. Danberg*,
  2011 WL 65727 (D. Del. Jan. 14, 2011) ..................................................5

*Zeran v. America Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997)............................................... 12, 13, 18, 19

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 1951.................................................................................33

18 U.S.C. § 1952.................................................................................33

18 U.S.C. § 1961(1)........................................................................32, 33

18 U.S.C. § 1964(c).............................................................................31

47 U.S.C. § 230 ........................................................................... *passim*

47 U.S.C. § 230(b)(2)..........................................................................12

47 U.S.C. § 230(c)(1)...........................................................................11

47 U.S.C. § 230(f)(2)...........................................................................14

N.J.S.A. 2C:41 ............................................................................ *passim*

Federal  Rule of Civil Procedure 12(b)(6)..................................10, 39

## OTHER AUTHORITIES

Restatement (Second) of Torts § 318 ..............................................20

**INTRODUCTION**

Plaintiffs' claims against Twitter, Inc. and its executive Vijaya Gadde appear to be based on their disagreement with how Twitter moderated third-party content on its online platform and their supposition that Twitter had a legal duty to prevent third parties from posting messages on its platform highlighting Plaintiffs' public affiliations with extremist groups. But Plaintiffs cannot impose liability on Twitter or its executives for the collateral effects of their own affiliations. Plaintiffs do not, and cannot, allege that Twitter or Ms. Gadde created any of the posts at issue or that Twitter or Ms. Gadde were in any way connected to the subsequent conduct that actually caused their alleged injuries. As a result, all of Plaintiffs' claims against Twitter and Ms. Gadde fail as a matter of law and must be dismissed.

Plaintiffs allege that they were injured after Defendant Christian Exoo created and disseminated messages ("Tweets") on the Twitter online platform identifying them (or, in the case of two of the Plaintiffs, their family member) as members of far-right political organizations. According to Plaintiffs, these Tweets set off a chain of events that ultimately resulted in termination of their employment or their suffering other harms. First Amended Complaint ("FAC") ¶¶ 38-141, ECF No. 66. Lead Plaintiff Daniel D'Ambly, for example, alleges that Exoo published Tweets linking D'Ambly to the European Heritage Association ("EHA")—an alleged white supremacist organization to which D'Ambly belongs that organized an "It's okay to be white" march in January

2019.  *Id.* ¶ 47.  According to the FAC, Exoo encouraged his followers to harass D'Ambly and his employer, the New York Daily News, triggering a series of other incidents that led to D'Ambly's employment being terminated and to his car being vandalized.  *Id.* ¶¶ 39, 42.  The other Plaintiffs likewise allege that Exoo's Tweets caused them to lose jobs and/or face harassment or property damage.  *Id.* ¶¶ 75-141.

The FAC identifies Exoo as the person who authored and disseminated the Tweets that allegedly triggered the events that led to Plaintiffs' alleged injuries. Nonetheless, Plaintiffs chose to sue not just Exoo, but also Twitter and Twitter executive Vijaya Gadde, among others.  Plaintiffs do not allege that either Twitter or Ms. Gadde harassed them or their employers, or that Twitter or Ms. Gadde created or disseminated any of the messages that allegedly led to this harassment. Nor do Plaintiffs allege that they had any pre-existing relationship with Twitter, ever held a Twitter account, or at any time used the Twitter online platform.

Plaintiffs nevertheless seek to impose liability on Twitter and Gadde on the theory that they bear responsibility for Plaintiffs' alleged injuries due to their purported failure to ban Exoo from the Twitter platform and to remove Exoo's allegedly injurious Tweets, in supposed violation of certain rules that are incorporated into the User Agreement between Twitter and its accountholders. FAC ¶¶ 21-22, 113-114.

The Court should dismiss all of the Plaintiffs' claims against Twitter and Ms. Gadde.  To begin, a federal statute, 47 U.S.C. § 230 ("Section 230"),

immunizes Twitter and Ms. Gadde from liability on all claims.  Section 230 shields interactive computer service providers, such as Twitter and Ms. Gadde, from precisely the type of suit that Plaintiffs bring here: an action premised on allegations that Twitter failed to block or remove allegedly offensive or unlawful online content that was created and posted by someone else.  *See Green v. America Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003).  Aside from Section 230, each of the Plaintiffs' five putative claims against Twitter and Ms. Gadde should be dismissed because the FAC fails to plausibly allege essential elements of each claim.  The Court should also dismiss Co-Defendant Cohen, Weiss, and Simon, LLP's ("CWS") conclusory and baseless cross-claims against Twitter and Ms. Gadde, to the extent they were not mooted when D'Ambly amended his original complaint.

Plaintiffs filed the operative FAC after Twitter and Ms. Gadde had moved to dismiss Plaintiff D'Ambly's original complaint.  *See* ECF No. 33.  Plaintiffs have therefore already had the opportunity to cure the defects that Twitter and Ms. Gadde identified in that prior motion.  Their failure to do so shows that any further amendment would be futile.  Accordingly, dismissal of all claims against Twitter and Ms. Gadde should be with prejudice.

## BACKGROUND

Twitter operates an Internet communications platform that allows hundreds of millions of people around the world to share views and track current events by reading and posting Tweets—short messages limited to 280 characters.  Every

day, people use this platform to send and receive hundreds of millions of Tweets. Defendant Vijaya Gadde is Twitter's Legal, Public Policy, and Trust and Safety Lead.  FAC ¶ 20.  Twitter generally offers its services to members of the public without any charge, but it requires all accountholders to agree to abide by Twitter's User Agreement, which comprises the Twitter Terms of Service ("TOS"), Twitter Rules, and Twitter Privacy Policy.[1]

According to the FAC,[2] Plaintiff D'Ambly identifies himself as a member of the European Heritage Association, a group that the FAC characterizes as a "non-violent, pro-domestic policy organization" that has been "labeled" a "white supremacist hate group."  FAC ¶ 1.

Seven other Plaintiffs (Aaron Wolkind, Steve Hartley, Richard Schwetz, Zachary Rehl, Jobel Barbosa, Anthony Tucci, and Matthew Reidinger) are members of the "Proud Boys," which the FAC characterizes as a "diverse, multi-racial, multi-ethnic, fraternal, males-only drinking club."  FAC ¶ 14.  A recently unsealed indictment charges four Proud Boys leaders, including Plaintiff Zachary Rehl, with federal crimes based on their alleged role in the January 6, 2021 attack on the U.S. Capitol.  *See* First Superseding Indictment, *United States v. Nordean*,

---

[1]    *See* Twitter User Agreement, https://cdn.cms-twdigitalassets.com/content/ dam/legal-twitter/site-assets/privacy-policy-new/Privacy-Policy-Terms-of-Service_EN.pdf (last visited Nov. 18, 2020).  Paragraph 29 of the FAC refers to (and incorporates by reference) Twitter's "Terms of Service and Rules."

[2]    Defendants treat Plaintiffs' non-conclusory allegations as true solely for purposes of this motion, as required by law.  *See infra* p. 10 (discussing legal standard).

Case No. 21-cr-175 (TJK), ECF No. 26 (D.D.C. Mar. 10, 2021).[3]  Two other Plaintiffs (Amanda Rehl and K.R.) are the spouse and minor child of Plaintiff Zachary Rehl.  FAC ¶¶ 3-4.

Plaintiff John Hugo is alleged to be the President of "Super Happy Fun America," a group which the FAC alleges to be a "right of center civil rights organization focusing on defending the American Constitution, opposing gender madness, and defeating cultural Marxism."  FAC ¶ 15.  The FAC says nothing about the group affiliations of the two remaining Plaintiffs (Sean-Michael David Scott and Thomas Louden).

The FAC describes a variety of public events through which certain Plaintiffs associated themselves with these organizations.  The FAC alleges that EHA members, including D'Ambly, participate in rallies, protests, and pamphleteering.  FAC ¶ 1.  It alleges that Plaintiff Hugo is the "President" of the group that organized the "2019 Boston Straight Pride Parade."  FAC ¶ 15.  It alleges that Plaintiff Richard Schwetz was photographed participating in a public event organized by the Proud Boys.  FAC ¶ 113.  And it alleges that Plaintiff Zachary Rehl, another Proud Boy, organized two public marches.  FAC ¶¶ 76-79.

---

[3]    This Court may take judicial notice of the fact that several leaders of the Proud Boys have been indicted for their alleged participation in the January 6, 2021 attack on the U.S. Capitol.  *See Gagliardi v. Kratzenberg*, 188 F. App'x 86, 88 n.3 (3d Cir. 2006) ("We may take judicial notice of public records."); *Williams v. Danberg*, 2011 WL 65727, at *1 (D. Del. Jan. 14, 2011) (taking judicial notice of bills of indictment).

Notwithstanding these various public activities, Plaintiffs blame Exoo's Tweets for publicly disclosing their association with each organization. *E.g.*, FAC ¶ 44 (Exoo's Tweets "publicly disclosed for the first time" D'Ambly's association with EHA). The FAC characterizes Exoo's Tweets as "doxxing"— *i.e.*, publicly disclosing otherwise private information about a person for the purposes of causing him harm. *See id.* p. 2. According to the FAC, Exoo's "doxxing" of Plaintiffs triggered a chain of reactions by other individuals and organizations that culminated in Plaintiffs being terminated from their jobs, suffering property damage, and/or enduring emotional distress. *See id.* ¶ 37.[4]

For example, the FAC alleges that Exoo initially "doxed" D'Ambly on October 29, 2018, when Exoo posted a series (known as a "thread") of Tweets that allegedly identified D'Ambly as a "'Nazi,'" disclosed certain personal information about him, and directed other individuals to contact D'Ambly's employer, the New York Daily News, to press for D'Ambly's termination. FAC ¶¶ 44-45. After the New York Daily News allegedly received multiple such calls, the newspaper hired an investigator who "confirmed D'Ambly's association with EHA" and provided videos of D'Ambly "using imprudent language" at EHA political rallies. *Id.* ¶ 46. Exoo allegedly published five additional Tweets about D'Ambly in January 2019, many of which related to EHA's upcoming "'It's okay

---

[4] Plaintiffs Amanda Rehl and K.R. do not claim to have been doxed themselves, but they trace their alleged injuries to the fact that their family member—Plaintiff Zachary Rehl—was allegedly doxed by Exoo. *See* FAC ¶¶ 83-94.

to be white'" march in Princeton, New Jersey. *Id.* ¶¶ 48-49, 51, 58, 61. In one Tweet, Exoo allegedly threatened D'Ambly. *Id.* ¶ 58. These Tweets allegedly prompted additional unidentified individuals to call the New York Daily News and deliver "death threats" to the newspaper. *Id.* ¶ 52. The FAC alleges on "reason and belief" that one of these callers later Tweeted "mission confirmation" to Exoo. *Id.* ¶ 54. According to D'Ambly, these events caused the Daily News to terminate his employment. *Id.* ¶¶ 62-65. D'Ambly further alleges that on the evening of January 11, 2019, unknown individuals scratched his vehicle and slashed its tires. *Id.* ¶ 59.

The FAC contains similar allegations about each of the other Plaintiffs. Each Plaintiff alleges that Christian Exoo created and posted Tweets that "doxed" them (or, in the case of two Plaintiffs, their relative). FAC ¶¶ 76, 79-81, 84-87, 90-91, 93, 96-98, 104, 108, 114, 120, 123, 128, 133, 138.[5] Most Plaintiffs allege that following such doxxing postings, unknown "associates" of Exoo harassed or threatened them, their employers, or their family members. *Id.* ¶¶ 77, 97, 99, 101, 102, 105-106, 108, 115-116, 123-124, 129, 134, 138. Six Plaintiffs (including D'Ambly) allege that they were subsequently terminated from their jobs. *See id.*

---

[5]     Though the FAC alleges that Exoo uses Twitter to "conduct violent and extortionate patterns of racketeering activities devoted to doxxing," FAC at p. 2, notably, for eight of the twelve newly added Plaintiffs, the FAC contains no allegations that Exoo's alleged "doxxing" actually occurred on Twitter. *See* FAC ¶¶ 76, 79, 84-85, 90-91, 96-98, 104, 120, 123, 128.

¶¶ 65, 78, 126, 128, 134, 141.[6]  Five Plaintiffs (including D'Ambly) allege that

unknown "associates" of Exoo damaged their property.  *See id.* ¶¶ 59, 82, 88, 94,

130.  One Plaintiff—Matthew Reidinger—alleges only that Exoo "doxed" him,

but does not allege what—if anything—occurred as a result.  *Id.* ¶¶ 119-121.

The FAC does not allege that Twitter or Ms. Gadde fired any Plaintiffs

from their jobs or damaged their property.  Nor does it allege that Twitter or Ms.

Gadde authored any of the posts that purportedly "disclosed" Plaintiffs'

connections to their organizations or that either Twitter or Ms. Gadde had any

interaction with any of Plaintiffs' employers.  The FAC also does not allege that

any Plaintiff is or ever was a Twitter user or had or has a Twitter account; indeed,

it affirmatively alleges that one Plaintiff (Thomas Louden) did *not* have a Twitter

account.  FAC ¶ 139.

Instead, Plaintiffs seek to impose liability on Twitter and Ms. Gadde for

allegedly not stopping Exoo from posting Tweets that purportedly contributed to

Plaintiffs' injuries.  In particular, the FAC alleges that at some unspecified point,

Twitter permanently banned two Twitter accounts operated by Exoo due to his

having used those accounts for "doxxing" (FAC ¶ 30), and that although Twitter

ordinarily bars individuals with banned accounts from creating a new one, Twitter

---

[6]      Paragraph 37 of the FAC vaguely alleges that "all Plaintiffs were
terminated from employment due to the enterprise's patterns of racketeering
activities."  But this blanket allegation is contradicted by the FAC's more specific
allegations, which notably exclude any allegations about job loss for certain
Plaintiffs, *e.g.*, FAC ¶¶ 83-88, 103-106.

purportedly allowed Exoo to create a new account, and then to change the name of that account from @DoxSavage to @AntiFashGordon. FAC ¶¶ 40-42.[7] This, Plaintiffs contend, was inconsistent with a Twitter policy that prohibits its accountholders from using its platform for doxxing, which Twitter defines as "sharing someone's private information without their permission,"[8] and with a separate policy stating that a person whom Twitter has permanently suspended from its platform should not be able to create a new Twitter account (which the FAC refers to as a "'ban evasion account'"). *Id.* ¶ 28.[9] According to the FAC, Twitter's supposed failure to prevent Exoo from violating these Rules makes Twitter and Ms. Gadde responsible for all harms to Plaintiffs that allegedly resulted, directly or indirectly, from Tweets posted using the @AntiFashGordon account, which the FAC asserts was controlled by Exoo.

Based on these allegations, Plaintiffs assert thirteen claims for relief—five against Twitter and Ms. Gadde. Count Eleven asserts a claim for negligent entrustment against both of them on the theory that they allegedly knowingly allowed Exoo to continue to post on Twitter as @AntiFashGordon. FAC ¶¶ 218-

---

[7]      Twitter disputes this allegation, but accepts it as true solely for purposes of this motion.

[8]      Twitter Rules and Policies, "Private Information Policy" (Mar. 2019), https://help.twitter.com/en/rules-and-policies/personal-information (incorporated into FAC by reference at ¶ 29).

[9]      *See* Twitter General Guidelines and Policies, "Our Range of Enforcement Options,"      https://help.twitter.com/en/rules-and-policies/enforcement-options (incorporated into FAC by reference at ¶ 28).

226.   Count Twelve asserts a claim against Twitter and Ms. Gadde for breach of an alleged covenant of good faith for allegedly allowing Exoo to continue posting Tweets, and for allegedly not removing Tweets that Exoo posted.  *Id.* ¶¶ 227-237. Finally, Counts Eight, Nine, and Ten assert violations of RICO and of the New Jersey anti-racketeering statute on a theory that Twitter and Ms. Gadde, along with Defendants Exoo, St. Lawrence University, and "unidentified associates," together constituted an alleged criminal racketeering enterprise called the "Exoo Enterprise" that allegedly injured D'Ambly and the other Plaintiffs.  *Id.* ¶¶ 186-217.[10]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court on a motion under Rule 12(b)(6) must "accept as true all material allegations," *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015), a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555.

## ARGUMENT

All of Plaintiffs' claims against Twitter and Ms. Gadde should be

---

[10]   The claim for violation of New Jersey's racketeering statute is brought solely by Plaintiff D'Ambly.  *See* FAC ¶¶ 186-190.

-10-

dismissed pursuant to 47 U.S.C. § 230.  Each claim seeks to hold Twitter and Ms. Gadde liable for "decisions relating to the monitoring, screening, and deletion of content" from Twitter's platform.  *Green*, 318 F.3d at 471.  Such decisions about "whether to exclude material that third parties seek to post online [are] perforce immune under section 230."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) (en banc).

Even beyond Section 230, Plaintiffs fail to plausibly allege essential elements of any of their claims against Twitter or Ms. Gadde.  They fail to state a claim for negligent entrustment because they do not allege that Twitter or Ms. Gadde provided Exoo a "dangerous instrumentality" or that any direct relationship existed between Twitter or Ms. Gadde's alleged conduct and Plaintiffs' alleged injuries.  With respect to their racketeering claims, Plaintiffs fail to plausibly allege the necessary agreement, enterprise, conduct, proximate cause, and racketeering activity elements.  Finally, Plaintiffs do not state a claim for either breach of an implied covenant of good faith and fair dealing or promissory estoppel because they fail to allege a single promise—much less a sufficiently definite and specific promise—that either Twitter or Ms. Gadde ever made to them.

## I.      Section 230 Immunizes Twitter And Ms. Gadde From Plaintiffs' Claims.

Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information

provided by another information content provider."  47 U.S.C. § 230(c)(1).  In

addition, "[n]o cause of action may be brought and no liability may be imposed

under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).

As the Third Circuit has explained, these provisions bar "'lawsuits seeking to

hold a service provider liable for its exercise of a publisher's traditional editorial

functions—such as deciding whether to publish, withdraw, postpone, or alter

content.'"  *Green*, 318 F.3d at 471 (quoting *Zeran v. America Online, Inc.*, 129

F.3d 327, 330 (4th Cir. 1997)).  "'Congress clearly enacted § 230 to forbid the

imposition of publisher liability on a service provider for the exercise of its

editorial and self-regulatory functions.'"  *Id.* at 471.  The statute thus precludes

suits seeking to hold an interactive computer service liable for "decisions relating

to the monitoring, screening, and deletion of content from its network."  *Id.*

Courts across the country have repeatedly recognized that Congress

enacted Section 230 to serve two important goals, both of which are directly

implicated in this suit.  *First*, because the "specter of tort liability" arising from

"the communications of others" would have an "obvious chilling effect" on

online intermediaries hosting huge volumes of third-party content, Congress

enacted Section 230 to encourage and "maintain the robust nature of Internet

communication and . . . to keep government interference in the medium to a

minimum."  *Zeran*, 129 F.3d at 330-331; *accord Force v. Facebook, Inc.*, 934

F.3d 53, 63 (2d Cir. 2019); *Obado v. Magedson*, 2014 WL 3778261, at *4 (D.N.J.

July 31, 2014), *aff'd* 612 F. App'x 90 (3d Cir. 2015); *see also* 47 U.S.C. §

230(b)(2) (it is "the policy of the United States" to "preserve" the Internet's "vibrant and competitive free market . . . unfettered by Federal or State regulation"). Fearing that service providers would "severely restrict the number and type of messages posted" in the face of potentially staggering litigation costs and liability, "Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Zeran*, 129 F. 3d at 331; *see also Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000). In sum, "Section 230 was enacted to 'maintain the robust nature of internet communication and, accordingly, to limit government interference in the medium to a minimum.'" *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 325 (D.N.J. 2015) (quoting *Zeran*, 129 F.3d at 330).

*Second*, Congress enacted Section 230 to address the concern that service providers might choose not to self-police their platforms for offensive or unlawful material out of fear that such action might subject them to liability that they would not otherwise face. *See Zeran*, 129 F.3d at 331; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099-1100 (9th Cir. 2009); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *6 (D.N.J. Aug. 20, 2013). "Without the immunity provided in Section 230(c)," interactive computer services that "review material could be found liable for the statements of third parties, yet providers and users that disavow any responsibility would be free from liability." *Batzel v. Smith*, 333 F.3d 1018, 1029 (9th Cir. 2003), *superseded by statute on other grounds*.

-13-

Congress sought, in other words, "to spare interactive computer services the grim choice" between "taking responsibility for all messages and deleting no messages at all." *Roommates*, 521 F.3d at 1163.

"'The elements required for [Section 230(c)] immunity are: (1) that the defendant is a provider or user of an 'interactive computer service;' (2) that the asserted claims treat the defendant as the publisher or speaker of the information; and (3) that the information is provided by another 'information content provider.'" *Inventel Prods., LLC v. Li*, 2019 WL 5078807 at *8 (D.N.J. Oct. 10, 2019) (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007)). Each of these elements is amply satisfied for all of Plaintiffs' claims against Twitter and Ms. Gadde because they all seek to impose liability on Twitter and Ms. Gadde for allegedly failing to block or remove certain content that was allegedly authored and posted by Exoo.

*First*, Twitter is unquestionably a "provider" of an "interactive computer service." The statute defines "interactive computer service" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Twitter satisfies this definition because it operates an online platform that allows others to access its servers and to upload content that may be shared with others worldwide. *See, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 n.7 (6th Cir. 2019); *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016), *aff'd on other grounds* 881 F.3d 739 (9th Cir. 2018); *Jones v. Twitter, Inc.*, 2020 WL

6263412, at *3 (D. Md. Oct. 23, 2020). Indeed, the FAC specifically alleges (and thereby admits) that the Twitter platform is an "interactive computer service." *See* FAC ¶ 188 ("Defendant Exoo *used an interactive computer service* to direct the Exoo Enterprise's patterns of racketeering activities") (emphasis added).

Ms. Gadde likewise satisfies the definition of a "provider" of an "interactive computer service" because Plaintiffs seek to hold her liable for "[her] role in making [an interactive computer service] available." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-1358 (D.C. Cir. 2014) (holding senior executive of Facebook to be a "provider" of an "interactive computer service" entitled to the protections of Section 230); *see also Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018) (same). Plaintiffs' claims against Ms. Gadde specifically stem from her alleged role as the "sole decision maker and person authorized to permanently ban Twitter users who violated Twitter's Terms of Service and Rules." FAC ¶ 20. That means that she has the same protections under Section 230 as does Twitter. *Klayman*, 753 F.3d at 1357-1358; *Igbonwa*, 2018 WL 4907632, at *5.

*Second*, all of Plaintiffs' claims against Twitter and Ms. Gadde seek to hold them liable for their alleged failure to block or take down information (Tweets) posted by *another* "information content provider" (allegedly Christian Exoo). *See* FAC ¶¶ 188, 205, 212, 225, 234-236. Section 230(f)(3) defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. In

assessing this requirement, a court asks whether the online service provider itself "creat[ed] or develop[ed]" the content at issue, or whether someone else—*i.e.*, one or more "third parties"—did so. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *Green*, 318 F.3d at 470. Here, the FAC alleges that it was Exoo—not Twitter or Gadde—who authored and posted all of the Tweets that allegedly led indirectly to Plaintiffs' injuries. FAC ¶¶ 44-45, 48, 49, 51, 58, 61, 76, 79, 97, 104, 108, 114, 120, 123, 128, 133, 138. Those Tweets thus plainly constituted "information created by *another* information content provider."

*Third*, each of Plaintiffs' claims against Twitter and Ms. Gadde seeks to treat Twitter and Gadde as the "publisher or speaker" of content created by another, because each claim seeks to hold Twitter and Ms. Gadde liable for "decisions relating to the monitoring, screening and deletion of content from [Twitter's] network—actions quintessentially related to a publisher's role." *Green*, 318 F.3d at 471; *see also Obado*, 612 F. App'x at 94. Plaintiffs style their claims against Twitter and Ms. Gadde as claims for negligent entrustment, breach of federal and state racketeering statutes, and "breach of implied covenant of good faith—promissory estoppel." FAC ¶¶ 186-237. But the essence of each claim is an allegation that Twitter and Ms. Gadde failed to suspend Exoo's Twitter account (allegedly @AntiFashGordon) and failed to remove Exoo's Tweets. *See* FAC ¶ 199 (challenging supposed "affirmative decision to allow Exoo . . . [to] create a ban evasion account"); *Id.* ¶ 225 (same); *Id.* ¶ 231 (same); *Id.* ¶ 235

(alleging that Twitter and Gadde "have not removed Plaintiffs['] doxed information"). Courts routinely recognize that claims such as these, challenging "the criteria (or lack thereof) for obtaining an account and posting on the platform, are themselves editorial choices that fall within the purview of traditional publisher functions" fully protected by Section 230. *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 328 (E.D.N.Y. 2018), *aff'd* 934 F.3d 53 (2d Cir. 2019), *cert. denied* 140 S. Ct. 2761 (2020); *accord Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1171 (N.D. Cal. 2018); *Fields*, 200 F. Supp. 3d at 972.

"Once CDA immunity applies, providers are immune from 'any' claim arising out of content originating from a third party, regardless of the theory underlying the cause of action." *Obado*, 2014 WL 3778261, at *4. In other words, in determining whether a plaintiff's theory of liability treats a defendant as a publisher, "what matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Id.* (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009)). This flexible test prevents plaintiffs from using "artful" or "creative pleading" to "work around § 230." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-1266 (9th Cir. 2016). Courts have accordingly found that Section 230 bars a wide array of different claims and legal theories, including each of the theories that Plaintiffs attempt to deploy here. *See, e.g.*, *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va. 2015) (RICO); *Icon Health & Fitness,*

*Inc. v. Consumer Affairs.com*, 2017 WL 2728413, at *5 (D. Utah June 23, 2017) (RICO); *Manchanda v. Google*, 2016 WL 6806250, at *2 (S.D.N.Y. Nov. 16, 2016) (RICO); *Doe v. Oesterblad*, 2015 WL 12940181, at *2 (D. Ariz. June 9, 2015) (RICO); *Davis v. Motiva Enterprises, L.L.C.*, 2015 WL 1535694, at *5 (Tex. Ct. App. Apr. 2, 2015) (negligent entrustment); *Hinton v. Amazom.com.dedc, LLC*, 72 F. Supp. 3d 685, 687 (S.D. Miss. 2014) (breach of duty of good faith and fair dealing).[11]

Dismissing Twitter and Ms. Gadde from this action based on Section 230 will not leave Plaintiffs without a remedy for any online content that allegedly injured them. "Parties complaining that they were harmed by a Web site's publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008). Nothing in Section 230, in other words, "'means . . . that [an] original culpable party who posts [harmful] messages would escape

---

[11]    The Ninth Circuit has held that Section 230 does not reach a promissory estoppel claim that is based on a one-off express promise made directly to the plaintiff by an employee of the platform provider who was not part of the platform's content-moderation team. *See Barnes*, 570 F. 3d at 1101-1103. That case lends no support to Plaintiffs here. While they style their twelfth count as "breach of the implied covenant of good faith—promissory estoppel," none of them allege that Twitter (or Ms. Gadde) said anything to them, much less made a promise to any of them. The twelfth count thus fails, both because Plaintiffs have not demonstrated any basis for this claim to circumvent Section 230 immunity, *see Obado*, 612 F. App'x at 94, and because they have not pled essential elements of a claim for "promissory estoppel," *see infra* pp. 35-36.

accountability." *Id.* (quoting *Zeran*, 129 F.3d at 330-331); *Obado*, 2014 WL 3778261, at *9 (plaintiff "not entirely without recourse" as he "may bring suit against the actual bloggers who wrote these defamatory posts").   Indeed, Plaintiffs have asserted claims in this very case against the person they believe was the "original culpable party who post[ed]" the messages at issue. *MySpace*, 528 F.3d at 419.  But through Section 230, "'Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" *Id.* (quoting *Zeran*, 129 F.3d at 330-331).  Accordingly, all of Plaintiffs' claims against Twitter and Ms. Gadde should be dismissed.

**II.    All Of Plaintiffs' Claims Against Twitter And Ms. Gadde Should Be Dismissed For Failure To Plead Essential Elements Of Each Claim.**

All of Plaintiffs' five claims against Twitter and Ms. Gadde independently also fail as a matter of law because the FAC does not plausibly allege the essential elements of each claim.

**A.    The FAC Fails To State A Claim For Negligent Entrustment Against Either Twitter Or Ms. Gadde [Count XI].**

Plaintiffs' claim against Twitter and Ms. Gadde for negligent entrustment (Count Eleven) fails because of three independently fatal defects.

*First*, the FAC does not plausibly allege that Twitter or Ms. Gadde provided anyone with a "dangerous instrumentality"—such as a vehicle, or a gun—as is required for a negligent entrustment claim. *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 902-903 (E.D. Pa. 2000), *aff'd* 277

F.3d 415 (3d Cir. 2002); *New Jersey Citizens United v. Hernandez*, 2006 WL 686571, at *4 (D.N.J. Mar. 20, 2006).  Some courts have held that the provision of a "service," such as Twitter's online platform, can never form the basis of a negligent entrustment claim, reasoning that the tort applies only to the entrustment of a chattel.  *See, e.g., Doe v. GTE Corp.*, 347 F.3d 655, 661 (7th Cir. 2003) (dismissing claims premised on the alleged entrustment of web hosting services, and noting that "[p]laintiffs do not cite any case in any jurisdiction holding that a service provider must take reasonable care to prevent injury to third parties."); *see also* Restatement (Second) of Torts § 318.  But even setting that problem aside, Twitter's services do not constitute "dangerous instrumentalities," as they are not dangerous in any sense contemplated by the law of negligent entrustment and do not become so simply because someone might use them improperly.   Indeed, in addressing a similar issue under the federal Anti-Terrorism Act, courts have rejected any notion that "providing routine [social media] services," even to terrorists, is "so akin to providing a loaded gun to a child" that provision of the services could be considered "violent or life-endangering."  *Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 576 (E.D. Mich. 2018).

*Second*, Plaintiffs' alleged injuries are far too remote from the Twitter Defendants' alleged conduct to survive a motion to dismiss.  *See City of Philadelphia*, 277 F.3d at 422-423 (dismissing negligent entrustment claims based on the "weak causal connection" between defendants' alleged conduct and

plaintiffs' alleged injuries).  Plaintiffs never allege that either Twitter or Ms. Gadde intended to harm them or even that Twitter or Ms. Gadde knew who they were—failings that, by themselves, tend to negate the existence of a sufficient causal connection between Twitter and Ms. Gadde's conduct and Plaintiffs' alleged injuries.  *See id.* at 424 ("plaintiffs do not contend that the gun manufacturers *intend* to inflict injury upon the citizens of Philadelphia"); *Camden Cnty. Bd. Of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 259 (D.N.J. 2000) (similar).  And the supposed chain of causation Plaintiffs allege is far too "long and tortuous" to support their claims.  *City of Philadelphia*, 277 F.3d at 423.

Consider, for example, the allegations by Plaintiff D'Ambly.  He points to two injuries—that he was fired from his job (FAC ¶ 63), and that his vehicle was vandalized (FAC ¶ 59).  But numerous intervening events and independent actors stand between those alleged injuries and the conduct that the FAC attributes to Christian Exoo, let alone Twitter and Ms. Gadde:

- D'Ambly's vehicle was allegedly vandalized by unknown individuals, who are not alleged to have had any connection with Exoo.  *See* FAC ¶ 59.

- The Daily News terminated D'Ambly after it received phone calls from unknown individuals who informed the Daily News of D'Ambly's ties to the EHA.  FAC ¶¶ 54, 63.  The Daily News then questioned D'Ambly and concluded that he was "not an innocent victim" and that the calls were

attributable to D'Ambly's "choice to associate with the [EHA] and go into the public making anti-Semitic and racist comments." ECF No. 35-2 at 3.

- D'Ambly admitted to the Daily News that he had "use[d] imprudent language" during political rallies. FAC ¶ 50; *see also* ECF No. 35-2 at 2. The Daily News deemed such conduct to be in "stark contrast to the values and mission of our newspaper and this company," thus warranting providing D'Ambly with a "Last and Final Warning." ECF No. 35-2 at 2; FAC ¶ 56.

- Third-party Insite Risk Management separately published a report that also contributed to D'Ambly's termination. FAC ¶ 46. The report confirmed D'Ambly's involvement in the EHA and referenced videos showing his use of "imprudent language" during political rallies. FAC ¶ 46.

In short, the independent decisions of at least five sets of independent actors—the Daily News, Insite Risk Management, the person(s) who called the Daily News, the person(s) who vandalized D'Ambly's car, and D'Ambly himself—sever the requisite "causal connection" between the alleged conduct of Exoo and D'Ambly's injuries. And Twitter and Ms. Gadde are even further removed from Exoo's actions.

For each of the other Plaintiffs, the FAC likewise fails to establish the necessary "causal connection" between each of their alleged injuries and the alleged conduct of Twitter and Ms. Gadde. *City of Philadelphia*, 277 F. 3d at 423. These other Plaintiffs point to lost jobs, property damage, and/or reputational harm. FAC ¶¶ 74, 78, 82, 88, 94, 102, 106, 118, 126, 130, 135, 141.

Of course, there are no allegations that either Twitter or Ms. Gadde terminated any Plaintiff's employment or inflicted any property or reputational damage. There are likewise no allegations that either Twitter or Ms. Gadde threatened any Plaintiff, or any Plaintiff's employer.  Nor are there any allegations that either Twitter or Ms. Gadde encouraged anyone else to take such actions or that they wanted or intended for such threats to be made.  Twitter and Ms. Gadde are thus at least several steps removed from the injuries alleged in the FAC.

And numerous Plaintiff-specific allegations widen the gap even further. For example, three Plaintiffs base their claims on "doxxing" that allegedly began in August 2017, more than a year *before* Twitter and Gadde allegedly allowed Exoo to undergo a name change in lieu of a permanent ban from the platform. FAC ¶¶ 42, 76, 84, 90.  For several other Plaintiffs, the FAC contains allegations that the Plaintiff "was doxed" without specifying whether it was Mr. Exoo or someone else who carried out the doxxing.  FAC ¶¶ 104, 114.  Other Plaintiffs admit that their membership or leadership in controversial organizations was public.  Plaintiff Schwetz, for example, alleges that before his receipt of harassing messages, he was "photographed with other Proud Boys that participated in [a] cleanup event."  *Id.* ¶ 114.  Plaintiff Hugo alleges that he is the "President" of Super Happy Fun America, a group "best known" for organizing the 2019 Boston Straight Pride Parade.  *Id.* ¶ 15; *see also supra* p. 5 (detailing similar allegations). Given those allegations, the Court should not accept the FAC's conclusory statements that it was the Tweets that Plaintiffs attribute to Exoo, as opposed to

-23-

Plaintiffs' own voluntary decisions to publicly align themselves with controversial organizations, that led other actors to harass Plaintiffs, fire them from their jobs, or damage their property.  And any connection of those alleged injuries to Twitter or Ms. Gadde is even more attenuated.

*Third*, to the extent that Plaintiffs' negligent entrustment claim is construed as an ordinary negligence claim, it fails for the additional reason that the FAC does not plausibly allege that Twitter or Ms. Gadde owed any legal duty to Plaintiffs.  *City of Philadelphia*, 126 F. Supp. 2d at 898.  "In the negligence context . . . a defendant has no duty to control the misconduct of third parties." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F. 3d 536, 541 (3d Cir. 2001).  And absent special circumstances, such as a close relationship between the defendant and the person injured, a defendant is generally under "no legal duty to protect citizens from the deliberate and unlawful use of [its] products" or services.  *City of Philadelphia*, 277 F.3d at 425.  The FAC does not assert that any of the Plaintiffs had any relationship with Twitter or Ms. Gadde whatsoever.  Plaintiffs thus have no basis to claim that Twitter or Ms. Gadde owed them any duty of care.  *See Saponaro*, 93 F. Supp. 3d at 326 (dismissing negligence claim on ground that operator of social networking platform did not owe plaintiff a duty of care); *Godwin v. Facebook, Inc.*, 160 N.E. 3d 372, 379-383 (Ohio Ct. App. 2020) (same); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 598-599 (S.D.N.Y. 2018) (same even where plaintiff was a user of the social

networking platform).  This claim should, accordingly, be dismissed as a matter of state law.

    **B.**    <u>Plaintiffs Fail To State A Claim Against Either Twitter Or Ms. Gadde For Racketeering, Under Either New Jersey Or Federal Law [Counts VIII-X].</u>

Plaintiffs' three racketeering claims against Twitter and Ms. Gadde— alleged racketeering in violation of N.J.S.A. 2C:41 to 2C:41-6.2 (Count Eight) and alleged violation and conspiracy to violate the federal RICO statute (Counts Nine and Ten)—likewise suffer from fatal defects.  At the outset, it is important to note that although RICO's text is broad, the Supreme Court has cautioned that its breadth is "not an invitation to apply RICO to new purposes that Congress never intended."  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  Most relevant in this context, courts should be particularly wary of stretching civil RICO's elements to encompass "fully protected First Amendment activity." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring).  That warning applies here, where Plaintiffs challenge Twitter's decisions about "what to publish and what not to publish on its platform"— decisions that are fully protected by the First Amendment.  *La 'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017).[12]

---

[12]    *Accord Jian Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 436 (S.D.N.Y. 2014) (search engine results protected by First Amendment); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630 (D. Del. 2007) (same); *see also Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (First Amendment protects right to "exercise of editorial control and judgment" over the "choice of material to go into a newspaper").

These principles dictate that each of Plaintiffs' racketeering claims against Twitter and Ms. Gadde be dismissed with prejudice. For each, Plaintiffs fail to plausibly allege: (1) the requisite "agreement" required for a RICO conspiracy claim, or the requisite "enterprise" element for any RICO claim; (2) the requisite "conduct" element for a racketeering offense; (3) that Plaintiffs were injured "by reason of" any alleged predicate acts; and (4) the requisite predicate acts of "racketeering." *See Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496-497 (1985); *United Support Solutions v. LaPierre*, 2014 WL 3058561, at *2 (D.N.J. July 7, 2014).

1. *The FAC fails to plausibly allege Twitter or Ms. Gadde were part of any racketeering "agreement" or "enterprise."*

Plaintiffs' claim of conspiracy to commit a RICO offense (Count Ten) fails at the outset, because the FAC does not plausibly allege that either Twitter or Ms. Gadde reached any "agreement" with the other alleged RICO enterprise participants to "facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). The FAC alleges that certain unnamed "associates" of Christian Exoo reached an agreement with Exoo to send harassing messages targeting individuals who Exoo had "doxed" as "fascists" and "white supremacists." *See, e.g.*, FAC ¶¶ 32-35, 45, 77. But the FAC contains no plausible allegations that Twitter or Ms. Gadde ever agreed to participate in that scheme. There are no allegations that Twitter or Ms. Gadde expressly reached any "agreement" with the other alleged enterprise

participants—in fact, there are no allegations that Twitter or Ms. Gadde ever even met or communicated with the other alleged enterprise participants.  And though a single paragraph of the FAC states that the conduct alleged "gives rise to an inference" of an agreement between Twitter and Ms. Gadde and the other members of the "enterprise" (FAC ¶ 213), "[a] conspiracy claim must . . . contain supportive factual allegations" and "mere inferences from the complaint are inadequate to establish the necessary factual basis." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).  The FAC does not contain any such supporting factual allegations and accordingly, this Count should be dismissed.

This same defect prevents Plaintiffs from establishing the requisite racketeering "enterprise" element required for each of Plaintiffs' racketeering claims (Counts Eight and Nine).  Both the federal RICO statute and the New Jersey racketeering statute require a plaintiff to plead (and ultimately prove) the existence of an "enterprise." *Sedima*, 473 U.S. at 496; *Sharp v. Kean University*, 153 F. Supp. 3d 669, 674 (D.N.J. 2015).  The FAC must therefore plead facts "plausibly implying the existence of an enterprise with . . . a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 369-370; *see also McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d Cir. 2010) (analyzing RICO); *Lentini v. McDonald's USA, Inc.*, 2019 WL 4746420, at *5 (D.N.J. Sept. 30, 2019) (analyzing RICO and N.J.S.A. § 2C:41-2).  But Plaintiffs fails to allege any

"relationship" at all among Twitter and Ms. Gadde, on the one hand, and the other alleged "enterprise" participants, on the other.  The FAC suggests, at most, that Twitter and Ms. Gadde, Mr. Exoo, and St. Lawrence University acted in parallel, not that they acted at the behest of one another.  *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 374 (mere allegations of "parallel conduct" do not support an inference that defendants "associated together for a common purpose.").  Moreover, "the [FAC] alleges no structure of an enterprise outside of the group's [alleged] conspiracy to perform the underlying criminal offenses." *Leeder v. Feinstein*, 2019 WL 2710794, at *9 (D.N.J. June 28, 2019).  Indeed, there are no allegations that Twitter and Ms. Gadde even knew of the existence of one of the other alleged "enterprise" members, St. Lawrence University.  But "[w]ithout some allegation as to how these entities are connected, Plaintiffs cannot allege the existence of an association in fact enterprise."  *Lentini*, 2019 WL 4746420, at *6.

Nor does the FAC adequately allege any common "purpose" between and among Twitter and Ms. Gadde and the other alleged "enterprise" participants. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) ("[A]n enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct.").  While the FAC alleges that the purpose of the "enterprise" was to "dox fascists and white supremacists . . . in order to use the doxed information to conduct patterns of racketeering activities to threaten violence, intimidate, harass, and extort others" (FAC ¶ 193), there are no

allegations that either Twitter or Ms. Gadde ever participated in these activities or ever desired "to threaten violence, intimidate, harass, and extort" anyone. The FAC alleges only that Twitter desired to potentially "increases[] ad revenue" (*Id.* ¶ 202) and to "defend[] 'marginalized communities'" (*Id.* ¶ 203), and that Gadde held an "Orestesian desire to avenge her parents perceived [racist] mistreatment" (*Id.* ¶ 201). Even accepting those allegations as true (for purposes of a motion to dismiss), they do not even remotely suggest that either Twitter and Ms. Gadde "combined as a unit" with Christian Exoo and St. Lawrence University for the "common purpose" of conducting racketeering activities. *See McCullough*, 382 F. App'x at 232.

> 2.  *The FAC fails to plausibly allege that Twitter or Ms. Gadde engaged in the requisite racketeering "conduct."*

Plaintiffs' racketeering claims against Twitter and Ms. Gadde also fail because Plaintiffs have not plausibly alleged that either Twitter or Ms. Gadde participated in the alleged enterprise "through a pattern of racketeering activity." *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 371. "The plain language of [RICO] requires that the 'pattern of racketeering activity' be a means by which the defendant participates, directly or indirectly, in the conduct of [the] enterprise's affairs." *Id.* Thus, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). Courts routinely dismiss claims where

plaintiffs fail to allege that the defendants themselves engaged in any racketeering activity. *See, e.g.*, *Tedeschi v. Smith*, 2010 WL 148424, at *4 (D.N.J. Jan. 12, 2010) (dismissing claims where defendant's conduct was "opening and maintaining of a bank account utilized" by one of the individuals responsible for the alleged pattern of racketeering). The same is true under New Jersey's racketeering statute. *See State v. Ball*, 632 A.2d 1222, 1252 (N.J. Super. Ct. App. Div. 1993) (plaintiff must establish that defendant "participated in the affairs of the enterprise . . . through a pattern of racketeering activity.").

Here, even if "doxxing" or the sending of harassing messages could be construed as "racketeering activity," *but see infra* pp. 32-34, the FAC contains no allegations that either Twitter or Ms. Gadde engaged in doxxing or harassment. The FAC does not explain how the conduct ascribed to Twitter and Ms. Gadde— allegedly allowing Exoo to continue to maintain his Twitter account, allegedly failing to prevent Exoo from violating certain Twitter rules, and allegedly failing to remove various Tweets the FAC attributes to Exoo, FAC ¶¶ 30, 199, 200— could constitute any predicate offense, whether extortion, terroristic threats, or a violation of the Travel Act. *See infra* pp. 32-34.

Moreover, Twitter's and Ms. Gadde's alleged actions or inactions relate entirely to Twitter's own business: they concern Twitter's internal decision-making about how to enforce its own rules. But to assert a racketeering claim, a plaintiff must plausibly allege that the defendant participated in "the conduct of

the enterprise's affairs, not just [its] own affairs." *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 371.  And under federal law, plaintiffs must assert not mere "participation" in the affairs of the enterprise, but that the defendants participated in the "operation or management" of the enterprise. *Reves*, 507 U.S. at 177-178.  Here, however, the FAC is devoid of any allegations that either Twitter or Ms. Gadde played any kind of "management" or "operation[al]" role in the alleged "Exoo enterprise."

3.   *The FAC fails to plausibly allege that Plaintiffs were injured "by reason of" any alleged predicate acts.*

Plaintiffs' racketeering claims also fail because the FAC does not plausibly allege that Plaintiffs were injured "by reason of" any of the alleged predicate acts. *See* 18 U.S.C. § 1964(c); N.J.S.A. § 2C:41-4c.  To satisfy this requirement, the FAC would have to plausibly allege that the alleged racketeering conduct was the proximate cause of Plaintiffs' alleged injuries.  *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 269 (1992).  Proximate cause requires "some *direct* relation between the injury asserted and the injurious conduct alleged." *Id.* at 268.  But as previously explained, *see supra* pp. 21-24, the FAC fails to plausibly allege any such "direct relation" between the alleged "racketeering" and Plaintiffs' alleged injuries.  Moreover, at least for Plaintiff D'Ambly, the FAC points to additional, and independent, causes for his alleged injuries.  *See supra* pp. 21-22.  Where, as here, "[m]ultiple steps . . . separate the alleged [predicate offenses] from the asserted injury" and a plaintiff's "theory of liability rests on

the independent actions of third and even fourth parties," the "by reason of"
requirement is not satisfied. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559
U.S. 1, 4, 15 (2010).

       4.    *The FAC fails to plausibly allege the requisite predicate*
            *acts.*

      Plaintiffs' racketeering claims also fail because the FAC does not allege
any conduct that constitutes "racketeering activity." *See* 18 U.S.C. § 1961(1);
*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000)
(dismissing claims for failure to allege RICO predicate offense); *St. Clair v.*
*Citizens Financial Grp.*, 340 F. App'x 62, 66 (3d Cir. 2009) (same).

      The RICO statute sets out a list of predicate acts that constitute
"racketeering activity." 18 U.S.C. § 1961(1). This list is "exhaustive." *St. Clair*,
340 F. App'x at 66. New Jersey's racketeering statute likewise provides an
exhaustive list of predicate acts in N.J.S.A. 2C:41. *Pro. Cleaning & Innovative*
*Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 2009 WL 1651131, at *6 (D.N.J. June
12, 2009). Here, Plaintiffs allege that Exoo and his associates participated in
"doxxing"—*i.e.*, the public disclosure of otherwise private information about
others for the purpose of causing them harm. *See* FAC ¶ 193. They also allege
that unnamed associates of Exoo's "enterprise" sent harassing messages to
Plaintiffs and others affiliated with Plaintiffs, and in some instances damaged
Plaintiffs' property. *See, e.g.*, FAC ¶¶ 77, 82. But neither doxxing nor sending
harassing messages is among the enumerated "racketeering activity" offenses

listed in either the federal or New Jersey RICO statutes.  As a result, Plaintiffs try to recast their doxxing allegations as "extortion" (which is an enumerated offense under both the federal and New Jersey RICO statutes) or "terroristic threats" (which is enumerated under the New Jersey RICO statute).  *See, e.g.*, FAC ¶¶ 205, 188(b), 188(c).[13]  The FAC's allegations, however, do not plausibly establish either of those enumerated offenses.

As to extortion, the FAC points, respectively, to the federal and New Jersey extortion statutes, 18 U.S.C. § 1951, and N.J.S.A. 2C:41(a)(1)(h).[14]  *See* FAC ¶¶ 188(b), 205.  Both federal and New Jersey law "define[] extortion as '*the obtaining of property from another*, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'"  *St. Clair,* 340 F. App'x at 67 (emphasis added); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 397 (2003) ("We hold that petitioners did not commit extortion because they did not obtain property from respondents."); *Roman Restoration, Inc. v. Operative Plasterers & Cement Masons' Int'l Assoc. of the U.S. & Canada # 8*, 2008 WL 2684350, at *4 (D.N.J. June 30, 2008) (dismissing RICO claims predicated on the New Jersey extortion statute for failure to allege

---

[13]    The FAC also cites to the federal Travel Act, 18 U.S.C. § 1952, which is an enumerated racketeering offense and which prohibits the use of any "facility in interstate or foreign commerce" to commit extortion in violation of state law. *See* 18 U.S.C. § 1961(1).

[14]    The FAC does not allege extortion under any state's law other than New Jersey's.

"that the defendant obtain[ed] the plaintiff's property.").  The FAC, however, does not allege that any member of the alleged Exoo Enterprise ever obtained "property from another." It alleges, at most, that enterprise associates engaged in harassment and property damage.  But there are no allegations that Defendants "pursued [or] received something of value from [Plaintiffs] that they could exercise, transfer, or sell," as necessary to constitute "extortion." *Scheidler*, 537 U.S. at 405; *accord Roman Restoration*, 2008 WL 2684350, at *4.  Consequently, Plaintiffs have not plausibly alleged an "extortion" predicate offense, under either federal or state law.

The FAC likewise fails to allege a violation of the New Jersey "terroristic threats" statute, which only D'Ambly invokes as a New Jersey RICO predicate offense.  *See* FAC ¶ 188c (citing N.J.S.A. 2C:41(a)(1)(bb)).  That offense necessarily involves threats made "with the purpose to terrorize another or to cause the evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." *See* FAC ¶ 188; N.J.S.A. 2C:41(a)(1)(bb); N.J.S.A. § 2C:12-3.  D'Ambly's allegations fall far short of that standard, as the only "purpose" that the FAC ascribes to the individuals who allegedly "threatened" his employer was a desire to "warn them about Daniel D'Ambly" and lobby for his termination.  FAC ¶ 45.

C.    Plaintiffs Fail To State A Claim Against Twitter Or Ms. Gadde For
       Breach Of An Implied Covenant Of Good Faith [Count XII].

Plaintiffs' final claim against Twitter and Ms. Gadde, which the FAC refers

to as a claim for "breach of implied covenant of good faith-promissory estoppel"

(Count Twelve), should also be dismissed.  It is unclear whether Plaintiffs mean

to assert a claim for "promissory estoppel" or for "breach of implied covenant of

good faith."  But either way, the claim plainly fails as a matter of law.

The FAC does not plausibly allege a claim of promissory estoppel because

it fails to identify a single promise—let alone a "clear and definite promise"—

that Twitter or Ms. Gadde ever made to any of the Plaintiffs.  *See Obado*, 612 F.

App'x at 94; *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 296 (D.N.J. 2007).

Plaintiffs claim that Twitter "refused to protect" them from the alleged

enterprise's "abusive behavior" when it failed to remove certain information

posted by Exoo.  FAC ¶ 235.  But the Third Circuit has held that even "[a]n email

from an interactive computer service provider indicating that a complaint by a

defamed user will be investigated is not a clear and definite promise to actually

remove the content," for purposes of a promissory estoppel claim.  *Obado*, 612

F. App'x at 94.  Here, no Plaintiff has alleged that he or she ever even contacted

Twitter (or Ms. Gadde) and asked for any Tweets to be removed.  And the FAC

certainly provides no indication that Twitter (or Ms. Gadde) ever told any

Plaintiff that either of them would remove any such content, much less that either

of them made a sufficiently "clear and definite" promise to do so.  Similarly,

while the FAC states in summary fashion that Twitter and Ms. Gadde received "contemporaneous complaints," from unspecified individuals, concerning the posting of information about Plaintiffs by the holder of the @AntiFashGordon account (FAC ¶ 234), it does not allege that Twitter or Ms. Gadde ever made any promise to anyone (much less to D'Ambly or any of the other Plaintiffs) that Twitter would remove any Tweets based on those complaints.

Any claim based on an alleged "breach of the implied covenant of good faith" also fails. While New Jersey law recognizes that "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract," *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005), the FAC does not allege that any Plaintiff was ever a party to a contract with Twitter or Ms. Gadde. The Plaintiffs do not allege that they ever established accounts with Twitter, otherwise interacted with the Twitter platform, or ever entered into any agreement with Twitter, including the Twitter User Agreement. Indeed, one Plaintiff expressly alleges that he does *not* have a Twitter account. FAC ¶ 139.

Even if any Plaintiff had a contractual relationship with Twitter and is basing their claim of a breach of an implied covenant of good faith on allegations that Twitter did not do enough to prevent Exoo from violating the Twitter User Agreement, the claim would still fail because the FAC does not allege that Twitter did not adhere to any of its obligations under that Agreement. To the contrary, Twitter's User Agreement expressly states that Twitter is not liable for any

content that is posted by third parties.[15]  *See Green*, 318 F.3d at 471 (affirming district court's dismissal of user's breach of contract claim because user agreement provided that "[defendant] does not assume any responsibility for content provided by third parties").  It expressly allows the posting of "information that we don't consider to be private," including a person's "name," "place of . . . employment," and "information that is publicly available elsewhere,"[16] which would include Plaintiffs' names, employment, and public participation and leadership in controversial organizations.  And it states that any enforcement action undertaken by Twitter is discretionary ("When we take enforcement actions, we may do so either on a specific piece of content . . . or on an account") and that Twitter's public posting about its "range of enforcement options" constitutes only "some of the enforcement actions that we may take."[17] In short, contrary to Plaintiffs' allegations, Twitter's User Agreement does not

---

[15]    *See* Holtzblatt Decl. Ex. A. at 2, 9 (Twitter Terms of Service, (June 18, 2020), https://twitter.com/en/tos).  Paragraph 29 of the FAC refers to and relies upon Twitter's Terms of Service, but the FAC does not attach those terms as an exhibit.  The Court may consider the Terms of Service (which Twitter now attaches) for purposes of adjudicating Twitter's motion to dismiss.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (courts may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

[16]    *See* Holtzblatt Decl. Ex. B, at 3 (Twitter Rules and Policies, "Private Information Policy" (March 2019), https://help.twitter.com/en/rules-and-policies/personal-information) (incorporated by reference into FAC at ¶ 29).

[17]    *See* Holtzblatt Decl. Ex. C, at 1 (Twitter Rules and Policies, "Our Range of Enforcement Options," https://help.twitter.com/en/rulesandpolicies/enforcement-options) (incorporated by reference into FAC at ¶ 28).

create an implied promise on the part of Twitter—even to its accountholders—to remove specific third-party content or accounts.  Thus, even if Plaintiffs were Twitter accountholders, their claims for breach of the implied covenant of good faith would still necessarily fail.

## III.   The Cross-Claims Previously Filed By Cohen, Weiss and Simon, LLP Should Also Be Dismissed.

Finally, the Court should dismiss the conclusory and broad-brush cross-claims for contribution and indemnification that Defendant Cohen, Weiss and Simon, LLP purported to assert generally against all other defendants, including Twitter and Ms. Gadde.  *See* Defendant Cohen, Weiss and Simon, LLP's ("CWS") Answer and Crossclaims, ECF No. 12 (Oct. 22, 2020).  Some courts hold that the filing of an amended complaint moots any cross-claims and counterclaims that were previously filed.  *See, e.g.*, *Argent Holdings, LLC v. East El Paso Physicians Medical Ctr., LLC*, 2018 WL 548676, at \*4 (W.D. Tex. Jan. 23, 2018).  To the extent that CWS's cross-claims are not deemed moot, they should be dismissed, in any event.

*First*, for the same reasons that 47 U.S.C. § 230 bars Plaintiffs' claims against Twitter and Ms. Gadde based on Twitter's alleged failure to prevent  Exoo from posting Tweets, Section 230 also immunizes Twitter and Ms. Gadde from CWS's cross-claims for contribution and indemnification. As explained above, *see supra* pp. 17-18, in evaluating the application of Section 230, what matters is not the name of the claim, but rather whether the claim arises out of the

publication of "content originating from a third party."  *Obado*, 2014 WL 3778261, at *4; *see also Regions Bank v. Kaplan*, 2013 WL 1193831, at *19 (M.D. Fla. Mar. 22, 2013) (applying Section 230 and dismissing cross-claims). Here, Twitter and Ms. Gadde could be liable for contribution or indemnification to CWS only if they bore some liability for allowing Exoo to operate an account, and to post content, on the Twitter platform.  *See* FAC ¶¶ 199, 222, 232, 235.  As Section 230 immunizes Twitter and Ms. Gadde from liability to Plaintiffs based on those allegations, so too does it immunize Twitter and Ms. Gadde from liability to CWS.

*Second*, CWS's cross-claim against Twitter and Ms. Gadde for indemnification also fails because "[i]ndemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification." *Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*, 2018 WL 1069417, at *4 (D.N.J. Feb. 26, 2018).  No such contract or special relationship exists between CWS and either Twitter or Ms. Gadde, nor is any such contract or special relationship plausibly alleged.

In all events, CWS's cross-claims are far too conclusory to meet the pleading standard under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678.  They contain no specific factual allegations, and they lump all co-Defendants together in group-pleaded fashion.  These claims should therefore be dismissed under Fed. R. Civ. P. 12(b)(6). *See Hunsberger v. The Original Fudge Kitchen*, 2020 WL

6620156, at *1 (D.N.J. Nov. 12, 2020) (dismissing cross-claim and observing that the "standard of review for a motion to dismiss a crossclaim is the same standard of review as a motion to dismiss a complaint"); *Katz v. Holzberg*, 2013 WL 5946502, at *5 (D.N.J. Nov. 4, 2013) (dismissing cross-claim for indemnification where cross-claim "fail[ed] to provide anything more than bare conclusions and a recitation of legal elements").

## CONCLUSION

For the foregoing reasons, this Court should dismiss with prejudice all of Plaintiffs' claims against Defendants Twitter, Inc. and Vijaya Gadde, as well as the cross-claims previously filed by CWS against Defendants Twitter and Ms. Gadde.

Respectfully submitted,

April 22, 2021

/s/   *Lawrence S. Lustberg*
Lawrence S. Lustberg (ID#023131983)
Lauren James-Weir (ID#023131983)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4731
Facsimile: (973) 639-6285
llustberg@gibbonslaw.com
ljames-weir@gibbonslaw.com

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

*Attorneys for Defendants Twitter, Inc.
   and Vijaya Gadde*