**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND, STEVE HARTLEY, RICHARD SCHWETZ, JOBEL BARBOSA, MATTHEW REIDINGER, JOHN HUGO, SEAN-MICHAEL DAVID SCOTT, THOMAS LOUDEN, ZACHARY REHL, AMANDA REHL, K.R., a minor, by and through her father ZACHARY REHL, and her mother AMANDA REHL, MARK ANTHONY TUCCI, <br><br>　　　　Plaintiffs, <br>　vs. <br><br> CHRISTIAN EXOO a/k/a ANTIFASH GORDON, ST. LAWRENCE UNIVERSITY, TRIBUNE PUBLISHING COMPANY, NEW YORK DAILY NEWS, VIJAYA GADDE; TWITTER, INC., COHEN, WEISS AND SIMON, LLP, <br><br>　　　　Defendants. | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JSA <br><br> Hon. John M. Vazquez, U.S.D.J. <br><br> Oral Argument Requested <br><br> Return Date: July 6, 2021 |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTIAN EXOO'S MOTION TO DISMISS PURSUANT TO F.R.C.P. Rules 12(b)(2) and 12(b)(6)

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough, Esq.
445 Broad Hollow Road, Suite
400 Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com

**Richard Torres, Esq**
63 Tooker Avenue
Springfield, New Jersey 07081
Phone: (347) 742-5362
E-mail: richardtorresdna@gmail.com

*Counsel for Defendant Christian Exoo*

**ZMO LAW PLLC**
Victoria Medley
260 Madison Avenue, 17th Floor
New York, New York 10016
Phone: (212) 685-0999
Fax: (212) 991-8952
E-mail: vm@zmolaw.com

## **Table of Context**                                                       **Page**

I.     Introduction                                                           1

II.    Statement of Facts                                                     4
       A. Defendant Christian Exoo                                            5
       B. Plaintiff Daniel D'Ambly and the
          NJ European Heritage Association                                    5
       C. The Proud Boys Plaintiffs                                           8
       D. Plaintiff Hugo and Super Happy Fun America                          14
       E. Plaintiff Louden and His Violent Militia Groups                     16

III.   Argument                                                              17
       A. Legal Standard                                                      17
       B. Defendant Exoo's Alleged Conduct is Protected
          by the First Amendment and New Jersey Constitution                  18
          1. Plaintiffs Have Failed to Allege a True Threat                   18
          2. The First Amendment and New Jersey
             Constitution Protect Defendant Exoo from
             Plaintiffs' Tort Claims                                          21
       C. Count II For Tortious Interference Must
          Be Dismissed                                                        23
       D. Count III For Intrusion Upon Seclusion Must
          Be Dismissed                                                        24
       E. Counts IV, V, and VI Are Criminal Statutes
          With No Private Right of Action                                     26
       F. Counts IX and X For Federal RICO Violations
          Must be Dismissed                                                   29
          1. Plaintiff Failed to Allege Requisite Predicate Acts
             in Furtherance of the Alleged Conspiracy
             (Count IX)                                                       29
          2. Plaintiffs Failed to Allege the Existence of
             RICO Enterprise                                                  33
          3. Plaintiffs Failed to Allege a RICO
             Conspiracy (Count X)                                            34
          4. Plaintiff Should be Required to Submit a RICO
             Statement pursuant to Local Civil Rule 16.1(b)(4)                35
          5. Count XIII for N.J. Racketeering Must be Dismissed               36

G. Plaintiffs Whose Claims Have No Connection to
New Jersey Must Be Dismissed From the Action for
Lack of Personal Jurisdiction                          38

CONCLUSION                                              40

## <u>Table of Authorities</u>

**US Constitution**
First Amendment                                        1, 3, 18-23
                                                       38
Fourteenth Amendment                                   3, 20

**NJ Constitution**
Article One, Section Six                               3, 18-23, 38

**Statutes and Rules**

F.R.C.P. Rule 12(b)(2)                                 40
F.R.C.P. Rule 12(b)(6)                                 1

Local Civil Rule 16.1(b)(4)                            35, 36

18 U.S.C. § 875(c)                                     27
18 U.S.C. § 1951                                       30-33
18 U.S.C. § 1952                                       30, 32, 33
18 U.S.C. § 1961(4)                                    33, 35
18 U.S.C. § 1962(c)                                    29-34
18 U.S.C. § 1962(d)                                    34-35
18 U.S.C. § 2261(a)(2)                                 27, 28

N.J.S.A. 2C:20-5                                       37
N.J.S.A. 2C:30-31(a)
     (non existent statute cited by plaintiff)         28
N.J.S.A. 2C:33-4.1(a)                                  28
N.J..S.A. 2C:41(a)(1)(h)(*sic*)                        37
N.J.S.A. 2C:41(a)(1)(bb)(*sic*).                       37
N.J.S.A. 2C:41-2;                                      37

**Cases**

*Agundis v. Rice*,
     No. 2:17-cv-00536,
     2018 U.S. Dist. LEXIS 117620 (N.D. Ala. July 13, 2018)   27

*Alvarado v. KOB-TV, L.L.C.*,
    No. 05-cv-750,
    2005 U.S. Dist. LEXIS 45372 (D.N.M. Nov. 14, 2005)       26
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)       17
*Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.*,
    Civ No. 00-cv-1962,
    2000 U.S. Dist. LEXIS 18728 (E.D. Pa. Dec. 7, 2000)       22
*Binary Semantics Ltd. v. Minitab, Inc.*,
    2008 U.S. Dist. LEXIS 28602 (M.D. Pa. Mar. 20, 2008)       34
*Bisbee v. John C. Conover Agency, Inc.*,
    186 N.J. Super. 335 (App.Div.1982)       24
*Boyle v. U.S*,
    556 U.S. 938 (2009)       33
*Brignola v. Home Properties, L.P.*,
    No. 10-cv-3884,
    2013 U.S. Dist. LEXIS 60282 (E.D. Pa. Apr. 26, 2013)       25
*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)       38, 39
*Brune v. Takeda Pharm. U.S.A., Inc.*,
    No. 1:18-cv-298,
    2019 U.S. Dist. LEXIS 123022 (S.D. Miss. July 24, 2019)       28, 29
*Buckley v. Valeo*,
    424 U.S. 1 (1976)       1
*Chadda v. Mullins*,
    No. 10-cv-4029,
    2010 U.S. Dist. LEXIS 119152 (E.D. Pa. Nov. 9, 2010)       27
*Cintas Corp. v. Unite Here*,
    601 F. Supp. 2d 571 (S.D.N.Y. 2009)       32
*Cuadrado-Concepcion v. United States*,
    No. 19-cv-305,
    2020 U.S. Dist. LEXIS 143040 (S.D. Ga. Aug. 10, 2020)       29
*E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*,
    294 N.J. Super. 158 (1996)
    *cert. denied*, 148 N.J. 458 (1997)       23
*Fellner v. Tri-Union Seafoods, L.L.C.*,
    Civil Action No. 06-CV-0688 (DMC),
    2010 U.S. Dist. LEXIS 36195 (D.N.J. Apr. 13, 2010)       6 fn. 3
*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009)       22

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)       27
*Hannah v. Johnson & Johnson Inc.*,
    Civil Action No. 18-1422 (FLW),
    2020 U.S. Dist. LEXIS 113284 (D.N.J. June 29, 2020)     39
*Helios Streaming, LLC v. Vudu, Inc.*,
    No. 19-1792-CFC-SRF,
    2020 U.S. Dist. LEXIS 82376 (D. Del. May 11, 2020)     6 fn. 4
*Horowitz v. Marlton Oncology, P.C.*,
    116 F. Supp. 2d 551 (D.N.J. 1999)     36
*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016)     25-26
*In re Wellbutrin SR/Zyban Antitrust Litigation*,
    281 F. Supp.2d 751 (E.D.Pa. 2003)     6 fn. 3
*Int'l Ass'n of Machinists v. Jackson*,
    No. 09-150,
    2010 U.S. Dist. LEXIS 15885 (E.D. Pa. Feb. 19, 2010)     31
*Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot.*,
    No. 13-cv-2415,
    2014 U.S. Dist. LEXIS 23411 (E.D. Pa. Feb. 24, 2014)     18
*Jersey Asparagus Farms, Inc. v. Rutgers Univ.*,
    803 F. Supp. 2d 295 (D.N.J. 2011)     36
*Jung v. Pennsylvania,*
    No. 3:18-cv-01248,
    2018 U.S. Dist. LEXIS 108289 (M.D. Pa. June 27, 2018)     30
*Koch v. Law Firm Schemery Zicolello*,
    No. 4:19-cv-00361,
    2020 U.S. Dist. LEXIS 153000 (M.D. Pa. Aug. 21, 2020)     27
*Kruska v. Perverted Justice Found. Inc. Org.*,
    No. 08-cv-00054,
    2010 U.S. Dist. LEXIS 126765 (D. Ariz. Nov. 17, 2010)     28
*Leeder v. Feinstein*,
    No. 3:18-cv-12384,
    2019 U.S. Dist. LEXIS 108810 (D.N.J. June 28, 2019)     37

*Lostutter v. Olsen*,
    No. 1:16-cv-1098,
    2017 U.S. Dist. LEXIS 136280 (M.D.N.C., Aug. 24, 2017)    29
*Magnum v. Archdiocese of Phila.*,
    253 F. App'x 224 (3d Cir. 2007)    17
*Moore v. Hoff*,
    821 N.W.2d 591 (Minn. Ct. App. 2012)    22
*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)    18, 19
*Northland Ins. Co. v. Shell Oil Co.*,
    930 F. Supp. 1069 (D.N.J. 1996)    35
*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)    17
*Pinkney v. Meadville, Pa.*,
    No. 1:19-cv-167,
    2020 U.S. Dist. LEXIS 73669 (W.D. Pa. Apr. 27, 2020)    25
*Pioneer Contracting, Inc. v. E. Exterior Wall Sys.*,
    No. 04-cv-01437,
    2005 U.S. Dist. LEXIS 5197 (E.D. Pa. Mar. 30, 2005)    29
*Planned Parenthood of the Columbia/Willamette, Inc.*
    *v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002)    18
*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255 (N.J. 2001)    28
*Rock v. BAE Systems, Inc.*,
    556 F. App'x 869 (11th Cir. 2014)    27-28
*Rothberg v. Marger*,
    No. 11-cv-5497,
    2012 U.S. Dist. LEXIS 71088 (D.N.J. May 21, 2012)    35
*Rumbauskas v. Cantor*, 138 N.J. 173 (1994)    24
*Scheidler v. NOW, Inc.*, 537 U.S. 393 (2003)    30, 31, 37
*Scheidler v. NOW, Inc.*, 547 U.S. 9 (2006)    32
*Sedima, S.P.R.L v. Imrex Co.*, 473 U.S. 479 (1985)    29
*Snyder v. Phelps*, 562 U.S. 443 (2011)    23
*State v. Ball*, 268 N.J. Super. 72 (App. Div.1993)
    *aff'd*, 141 N.J. 142 (1995)    36
*Thompson v. Thompson*, 484 U.S. 174, 179 (1988)    26
*United States v. Cook*,
    472 F.Supp.3d 326 (N.D. Miss. July 13, 2020)    21

*Walsh v. Krantz*,
    No. 07-cv-616,
        2008 U.S. Dist. LEXIS 44204 (M.D. Pa. June 4, 2008)        26
*Warden v. McLelland*, 288 F.3d 105 (3d Cir. 2002)        29
*Weirbach v. Cellular Connection, LLC*,
    No. 5:19-cv-05310-JDW,
        2020 U.S. Dist. LEXIS 144497 (E.D. Pa. Aug. 12, 2020)        39
*Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*,
        281 Pa. Super. 560 (Pa. Super. 1980)        22
*Zavala v. Wal-Mart Stores, Inc*., 691 F.3d 527 (3d Cir. 2012)        34
*Zazzali v. Hirschler Fleischer, P.C*., 482 B.R. 495 (D. Del. 2012)        34

**Treatises and other sources**
Restatement (Second) of Torts § 772(a) (1977)        23-25
Louis Brandeis, Other People's Money (1914)        1
Public Safety Canada, *Government of Canada lists 13 new
    groups as terrorist entities and completes review of
    seven others,* Feb. 3, 2021 available at
        https://www.canada.ca/en/public-safety-canada/news/
        2021/02/government-of-canada-lists-13-new-groups-as-
        terrorist-entities-and-completes-review-of-seven-others.html.
        (last accessed 4/22/2021).        8 fn. 5
Richard Schwetz, *Thinking With Your Dick*, available at
        https://www.listennotes.com/podcasts/thinking-with-your/
        proud-boys-did-nothing-wrong-UdVY94OgqD0/
        at 07:30-08:00
        (recording available on request)        10 fn. 6
Abigail Hauslohner, Washington Post, April 8, 2021,
        *After Its Members Were Charged in Capitol Riot,
        One Group Says It Is More Popular Than Ever*,
        available at https://www.washingtonpost.com/national
        /capitol-riot-group/2021/04/07/5a77bf7e-8cc6-11eb-a730-
        1b4ed9656258_story.html (last accessed 4/22/21)        15 fn. 7
Zoe Greenberg and Laura Crimaldi,
        *Smiling on the outside: Super Happy Fun America
        always claimed to be kidding. But the group's history
        suggests otherwise*, Boston Globe, February 20, 2021
        available at https://apps.bostonglobe.com/metro/
        politics/2021/02/super-happy-fun-america/
        (last accessed 4/22/21)        15 fn. 8

## **Exhibits**

Exhibit A - Declaration of Christian Exoo
Exhibit B - Exoo Tweets
    Generally                                           5, 6 fn. 4
        B-I -             Exoo-Schwetz Tweets                 5, 10
        B-II -            Exoo-D'Ambly Tweets           2, 5, 6, 7, 25
        B-III -          Exoo-Scott Tweets                   5, 8, 14
        B-IV -          Exoo-Wolkind Tweets           1, 11, 8 fn.5
        B-V -             Exoo-Rehl Tweets                  9, 24, 8 fn.5
        B-VI -          Exoo-Hartley Tweets              11
        B-VII -         Exoo- Tucci Tweets                 12, 25
        B-VIII -       Exoo-Reidinger Tweets         12
        B-IX -          Exoo-Barbosa Tweets
        B-X -            Exoo-Hugo Tweets                  16
        B-XI -          Exoo-Louden Tweets            16
Exhibit C - NJ Department of Homeland Security and
    Preparedness Terrorist Threat Assessment 2019        6
Exhibit D - NJ Department of Homeland Security and
    Preparedness Terrorist Threat Assessment 2020        6
Exhibit E – Indictment from *U.S. v. Zachary Rehl*,
    1:21-cr-00175 (D.D.C. March 10, 2021)              9
Exhibit F - Third Party Tweets and Social Media
    Referenced by Plaintiffs
    Generally                                        5, 8, 14,
                                                  6 fn.4
        F-I -            Tweets by WANaziWatch         14
        F-II -          Puget Sound Anarchists Community Alert      14
Exhibit G - Materials from *U.S. v. Mark Sahady*,
    1:21-mj-00108 (D.D.C. January 18, 2021)
        G-I -          Feb 19, 2021 Information          15
        G-II -         Jan 18, 2021 Complaint Affidavit
Exhibit H - RICO Case Statement Order              35

## I.     Introduction

As Justice Brandeis famously noted, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." Louis Brandeis, Other People's Money (1914), quoted in *Buckley v. Valeo*, 424 U.S. 1, 67 (1976). Defendant Christian Exoo ("Defendant Exoo") is plausibly accused of nothing more than asserting his First Amendment right to freedom of speech by shining sunlight on participants in dangerous extremist groups for the betterment and protection of society. The sole purpose of Plaintiffs' First Amended and Supplemental Complaint ("FASC") is to turn off that light and intimidate Defendant Exoo into silence – a cause of action our law does not permit.

Plaintiffs assert thirteen causes of action including eight causes of action against Defendant Exoo. By this motion, Defendant Exoo seeks dismissal of Counts II, III, IV, V, VI, VIII, IX, and X in the FASC – pursuant to F.R.C.P. Rule 12(b)(6) for failure to state a claim. Indeed, Plaintiffs' allegations are refuted by the very tweets that Plaintiffs claim give rise to their claims which are incorporated by reference into the FASC. Defendant Exoo also seeks dismissal of the claims of the twelve non-New Jersey Plaintiffs (all Plaintiffs other than D'Ambly) for lack of personal jurisdiction.

The FASC alleges a fantastical tin foil hat conspiracy theory of a massive
RICO enterprise comprised of more than 100,000 co-conspirators who republished
the truthful, publicly available information concerning most of the Plaintiffs. *See*
FASC at ¶¶ 133 (alleging that "Exoo's dox and call to action to his associates was
retweeted over 100,000 times"), 27 (alleging that Exoo had more than 46,000
Twitter followers in December 2020). Plaintiffs allege that Defendant Exoo, a part-
time librarian at a St. Lawrence University and one of more than 300 million
Twitter users, is the mastermind of a racketeering enterprise of epic proportion
"financed by Jewish money." *Id.* ¶¶ 193-203. *See also* Exh. B-II, D'Ambly Exoo
Tweets at 39 (D'Ambly interview excerpt which can heard at
https://twitter.com/AntiFashGordon/status/1099050519346233344 (In the
interview, D'Ambly states that his "employer capitulated to Communist terrorists
who were financed by Jewish money."). *See also* full D'Ambly interview available
at https://www.bitchute.com/video/QOfL7xWTbWhV/ (last visited April 22, 2021,
a copy of which will be provided upon request) at 20:40-21:10, 27:50-28:30,
30:20-30:50, 42:30-42:40, 54:45-55:00, 58:10-58:45 (railing against "Jewish
tyranny," the "JEWdiciary" ("they dominate the JEWdiciary, that's J-E-W-
diciary!"), the "Jew supremacist ruling class," the "black supremacist
government," communists, Marxists, "Sodomites" and immigrants, while calling
on his followers to dox his perceived enemies).

Plaintiffs further assert that the "Exoo Enterprise" facilitates his employer's "global mission" from his librarian's desk on the university's campus where he directs the activities of his associates including Defendant Twitter, Inc. and one of its top executives, Defendant Vijaya Gadde. *Id*. ¶ 194. In Plaintiffs' alternate reality, St. Lawrence's "global mission" refers to its perceived opposition to Nazism, white supremacy, and dangerous extremist groups. Similarly, Plaintiffs allege that Twitter's participation in the Exoo Enterprise is fueled by Defendant Gadde's hostility to fascism, white supremacy, the American Nazi Party and the Ku Klux Klan. ¶ 201. Plaintiffs' allegations concerning Defendant Exoo's extraordinary power to control and direct the activities of more than one hundred thousand associates including a prestigious university, a multi-billion-dollar corporation and one the corporation's top executives are not only implausible— they are pure fantasy.

First, the FASC alleges actions which, if true, constitute speech protected by the First and Fourteenth Amendments to the United States Constitution and the Article I, Section 6 of the New Jersey State Constitution.

Second, Plaintiffs' common law claims for tortious interference and intrusion upon seclusion (Counts II and III respectively) must be dismissed. Many of the Plaintiffs fail to assert any interference with their business interests or even try to establish the elements of their claims for intrusion upon seclusion.

Third, Plaintiffs' statutory claims in Counts IV, V and VI of the FASC assert claims for violation of criminal statutes for which no private right of action exists.

Fourth, the RICO and state law conspiracy claims (Counts VII, IX and X) should be dismissed for the following reasons: 1) Plaintiffs fail to allege requisite predicate acts; 2) Plaintiffs fail to allege facts from which to conclude the existence of a RICO enterprise; and 3) Plaintiffs fail to allege factual allegations which, if accepted to be true, constitute a RICO conspiracy.

Fifth, other than Plaintiff D'Ambly, none of Plaintiffs' claims have any connection to the State of New Jersey. The federal RICO claim is the only claim that permits nationwide service of process. In the event the federal RICO claims are dismissed, all claims of Plaintiffs other than D'Ambly claims must also be dismissed for lack of personal jurisdiction.

## II.    Statement of Facts

Thirteen Plaintiffs assert claims against Defendant Exoo. Plaintiffs (other than Plaintiff Zachary Rehl's family members)[1] seek the assistance of this Court in retaliating against individuals who speak out against violent acts of hatred and hateful rhetoric. Plaintiffs include numerous members of prominent white supremacist, fascist or other hate groups asserting claims against Defendant Exoo

---

[1] When referring to Plaintiffs' participation in dangerous extremist activities and hate groups, Defendant Exoo does not ascribe this conduct to Plaintiff Rehl's wife and minor child, who do not allege that they were doxed.

for disclosing their association with these organizations. Several of the Plaintiffs who complain about being doxed boast about their own practice of doxing journalists and individuals opposed to fascism. *See e.g.*, Declaration of Richard Torres, Esq. ("Torres Decl."), filed herewith; Exh. B-I, Exoo-Schwetz Tweets at 2, 4; Exh. B-III, Exoo-Scott Tweets; Exh. F (referred to in Exh. B-III, Exoo-Scott Tweets).[2]

A. <u>Defendant Christian Exoo</u>

Defendant Exoo is one of more than 300 million Twitter users. The Exoo Tweets referenced in the FASC do not condone or advocate any form of violence. *See generally* Exh. B, Exoo Tweets. In fact, Defendant Exoo warned Twitter users against the use of "dangerous rhetoric that motivated" a recent massacre. Exh. B-II at 19. Contrary to Plaintiffs' assertions, nothing in the Exoo Tweets referenced in the FASC can plausibly be interpreted as inciting violence.

B. <u>Plaintiff Daniel D'Ambly and the NJ European Heritage Association</u>

Plaintiff Daniel D'Ambly is the leader of New Jersey European Heritage Association ("EHA"), an organization designated by the New Jersey Office of Homeland Security and Preparedness ("NJOHSP") as a "white supremacist extremist group" and by the Southern Poverty Law Center as a "hate group." *See*

---

[2] All exhibit citations refer to the exhibits annexed to the Torres Decl.

Exh. C, 2019 NJOHSP Terrorism Threat Assessment at 17 (identifying EHA as a

white supremacist extremist organization); Exh. D, NJOHSP Terrorism Threat at

17 (describing the white

supremacist recruitment activities



*Exh. B-II, Exoo - D'Ambly Tweets at 12.*

of D'Ambly's organization).[3] *See*

*also* Exh. B-II, Exoo-D'Ambly

Tweets at 12-13, 39.[4]

Plaintiff D'Ambly admits that his



*Exh. B-II, Exoo - D'Ambly Tweets at 13.*

termination was based on his employers'

hostility to D'Ambly's white supremacist views and that he was only terminated

after his employer confirmed his association with the white supremacist extremist

---

[3] Defendant Exoo requests that the Court take judicial Notice of the Terror Threat Assessment Reports (Exhs. A and B). *See Fellner v. Tri-Union Seafoods, L.L.C.*, Civil Action No. 06-CV-0688 (DMC), 2010 U.S. Dist. LEXIS 36195, at *19 n.8 (D.N.J. Apr. 13, 2010) (taking judicial notice of publicly available governmental reports); *In re Wellbutrin SR/Zyban Antitrust Litigation*, 281 F. Supp.2d 751, 754 (E.D.Pa. 2003) (taking judicial notice of FDA report posted on the official FDA website).

[4] The Exoo Tweets (Exh. B) are incorporated by reference into the complaint. *See* FASC at ¶¶ 1-15, 27, 31-37, 39-45, 48, 49, 51, 53, 58, 61, 72, 76-81, 84-87, 90-93, 96-99, 104-106, 108-110, 114-116, 118, 120, 121, 123, 124, 128, 133, 134, 138, 140, 141, 151-153, 157-159, 162-165, 168-170, 173-175, 187, 188, 192-195, 197-206, 211-215, 219-225, 233, 235-237. *See also Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792-CFC-SRF, 2020 U.S. Dist. LEXIS 82376, at *21 (D. Del. May 11, 2020) (granting motion to dismiss and finding that plaintiff mischaracterized letter incorporated by reference into the complaint).

organization. *See* FASC at ¶¶ 26 (noting D'Ambly's employer's report "confirmed D'Ambly's association with EHA"), 58 (alleging discrimination because D'Ambly was terminated for his white supremacist views, while non-white employees were not punished or terminated for their "racially identifiable associations."). Rather than accept responsibility for his own actions, D'Ambly blames others including Defendant Exoo for the consequences of his hateful extremist actions.

Plaintiff D'Ambly alleges that Defendant Exoo was responsible for his termination because Exoo linked D'Ambly's publicly available employment information with D'Ambly's white supremacist activities on Twitter.com. ¶¶ 44-58, 60-67.

However, Plaintiff D'Ambly exposed his own association with EHA by attending white supremacist extremist events like the EHA's "Jew Walk" event in Princeton, New Jersey, the deadly Unite the Right rally in Charlottesville, Virginia, and the Unite the Right 2 rally. *See* Exh. B-II, Exoo-D'Ambly Tweets at 3, 10, 15, 16, 40. As shown in the Tweets, Plaintiff D'Ambly did not attempt to conceal his identity when he appeared in videos on EHA's "Jersey Goyz 14" YouTube channel holding a handmade sign that read: "**EXPEL THE JEW BY '22**." (emphasis in original). *Id*. a 16.

C. <u>The Proud Boys Plaintiffs</u>

Eight of the plaintiffs are current or former members of the violent hate group the Proud Boys (Plaintiffs Zachary Rehl, Wolkind, Schwetz, Hartley,

Barbosa, Tucci, Scott and Reidinger, collectively, the "Proud Boys Plaintiffs"). *See* FASC at ¶ 14. *See also* Exh. B-III, Exoo-Scott Tweets at 2, 3, 4; Exh. F. Two of the Plaintiffs are members of Plaintiff Zachary Rehl's family (Amanda Rehl and K.R. Rehl) and their claims are based entirely on actions allegedly directed at Plaintiff Zachary Rehl.

The Proud Boys are a male-only group of self-identified "Western chauvinists," which has been identified as a "terrorist entity" and an "ideologically motivated violent extremist group" by the Canadian government, a "designated hate group" by the Southern Poverty Law Center, and a "racist group" by Plaintiff Zachary Rehl, President of the Philadelphia Chapter of the Proud Boys.[5]

The Proud Boys recently rose to ignominious international fame in the runup to the 2020 election and as a result of their participation in and alleged coordination of the attack on the United States Capitol, resulting in the arrest of more than two dozen of its members including Plaintiff Zachary Rehl in connection with his alleged leadership role in the attack. *See* Exh. E, Rehl Indictment. The indictment states that after the insurrection, Plaintiff Zachary Rehl

---

[5] *See e.g.,* Exh. B-IV, Exoo-Wolkind Tweets at 2-5; Exh. B-V Exoo-Rehl Tweets at 2, 3, 7, 8, 13, 17, 19, 21, 22, 27, 32, 35, 41. *See also* Public Safety Canada, *Government of Canada lists 13 new groups as terrorist entities and completes review of seven others,* Feb. 3, 2021 available at https://www.canada.ca/en/public-safety-canada/news/2021/02/government-of-canada-lists-13-new-groups-as-terrorist-entities-and-completes-review-of-seven-others.html. (last accessed 4/22/2021).

boasted about his pride in participating in the attack and the need for the planning of further operations. *Id*. at ¶ 24(c). The Proud Boys have attributed the negative exposure to a massive increase in their membership since last summer. None of the Proud Boys Plaintiffs allege any connection of their non-RICO claims to the State of New Jersey.

**Plaintiff Zachary Rehl** alleges that his personal information was first associated with his Proud Boys activities on or about August 2, 2017 resulting in the terminated of his employment in September 2017. *See* FASC at ¶ 78. As set forth in the Exoo-Rehl Tweets, Defendant Exoo first referenced, Zachary Rehl on November 12, 2018, citing Rehl's statement that the Proud Boys are a "racist group." *See* Exh. B-V, Exoo-Rehl Tweets at 6, 20, 23, 24, 41 ("It's not a rally for Proud Boys. We're not interested in having any racist groups there."). This was more than a year after Zachary Rehl alleges that he was first doxed. *See* FASC at ¶ 76. Moreover, Defendant Exoo merely identified Zachary Rehl's association with the Proud Boys. He did not identify Zachary Rehl's home address, phone number or his employer's information. *See* Exh. B-V, Exoo-Rehl Tweets.

**Plaintiffs Amanda Rehl** and her daughter **Plaintiff K.R.** do not allege that they were doxed at all. *Id*. at ¶¶ 83-94. Plaintiff Amanda Rehl does not specifically allege any interference with her business relationships. *Id*. Plaintiff K.R. does not

assert any claims for intrusion upon seclusion or tortious interference. *See id*.; Counts II and II (specifically excluding Plaintiff K.R.).

**Plaintiff Schwetz** alleges that his publicly available employment information was first associated with his Proud Boys activities in June 2020 by an unnamed person. *See* FASC at ¶ 114. Plaintiff Schwetz alleged that Exoo shared this public information on Twitter on September 21, 2020, more than three months after Schwetz's employer was allegedly informed about Schwetz's violent and hateful actions with the Proud Boys. Exh. B-I, Exoo-Schwetz Tweets at 2.

Defendant Exoo republished Schwetz' public social media posts in which Schwetz brags about beating up "Antifags" and going undercover to obtain personal information



*Exh. B-I, Exoo - Schwetz Tweets at 5.*

including phone numbers and license plate numbers of journalists and individuals opposed to fascism for the purpose of doxing them. *Id.* at 2, 4, 5.[6] Defendant Exoo also responded on Twitter to a request for assistance in identifying Plaintiff

---

[6] On his podcast, Thinking With Your Dick, Plaintiff Schwetz celebrated the practice of doxing, stating "Hey, has everyone gotten Gwen Snyder's phone number … It's beautiful. I love the fact that she got her stuff put out there and she complained about it too. That she got doxed. Ha ha ha ha." *See* Richard Schwetz, *Thinking With Your Dick*, available at https://www.listennotes.com/podcasts/thinking-with-your/proud-boys-did-nothing-wrong-UdVY94OgqD0/ at 07:30-08:00. (copy of recording can be provided upon request).

Schwetz in connection with a violent assault against a journalist at a Proud Boys rally. *Id.* at 13, 14. Plaintiff Schwetz fails to allege any actionable injury. He does not allege that he was terminated from his employment or suffered any adverse effects of being doxed by Exoo or anyone else.

**Plaintiff Wolkind** alleges that his publicly available Proud Boys activities were associated with his publicly available employment information by Defendant Exoo on Twitter. FASC at ¶¶ 14, 96. Defendant Exoo identified Wolkind as the "Sergeant at Arms of the Philadelphia Proud Boys," and posted a photograph of Wolkind brandishing a can of mace at a Proud Boys rally. Exh. B-IV, Exoo-Wolkind Tweets at 2, 6. Plaintiff Wolkind does not allege that he was terminated from his job. He merely claims that he cannot obtain other employment because potential employers can easily learn of his public association with fascism and the Proud Boys hate group and Canadian terrorist organization. FASC at ¶¶ 96-102.

**Plaintiff Hartley** alleges that his public Proud Boys activities were associated with his public employment information by Defendant Exoo on Twitter. FASC at ¶¶ 6, 14, 104-105. *See also* Exh. B-VI, Exoo-Hartley Tweets. Plaintiff Hartley does not allege that he was terminated from his job or that his home address and personal cell phone were disclosed by Exoo. *See* FASC at ¶ 104-106.

**Plaintiff Tucci** alleges that his publicly available employment information was associated with his public Proud Boys activities by Defendant Exoo on

Twitter. FASC at ¶¶ 107-111. Tucci publicly disclosed his own association with the Proud Boys on social media long before Defendant Exoo shared that information using the hashtag #proudboys and posting a picture wearing a Proud Boys shirt. Exh. B-VII, Exoo-Tucci Tweets at 2-5. Tucci does not allege that he was fired from his job or suffered any consequences as a result of the association between his employment information and Proud Boys activities. FASC at ¶¶ 108-111.

**Plaintiff Reidinger** alleges that his publicly available employment information was associated with his public Proud Boys identity by Defendant Exoo on Twitter. FASC at ¶¶ 119-121. In Defendant Exoo's Tweets concerning Reidinger, incorporated by reference into the FASC, Exoo identified Reidinger as Sergeant at Arms for the Harrisburg, PA Proud Boys. Exh. B-VIII, Exoo-Reidinger Tweets at 2. Exoo also identified Reidinger's employer and republished portions of Reidinger's public social media pages in which Reidinger identifies himself as a Proud Boy, a "domestic terrorist," and a "shover at helicopter." *Id.* at 3, 4, 14. The FASC does not allege that Defendant Exoo published Plaintiff Reidinger's home contact information or his personal phone number. Nor does the FASC allege that Plaintiff Reidinger was terminated from his employment or suffered any adverse effects of having his public participation in a hate group associated with his public employment information. FASC at ¶¶ 120-121.

**Plaintiff Barbosa** alleges that his publicly available employer contact information was associated with his Proud Boys activities by Defendant Exoo. FASC at ¶ 9, 14, 122-126. As shown in the Exoo Tweets, Barbosa made no effort to conceal his identity when conducting activities on behalf of the Proud Boys. *See* Exh C-IX, Exoo-Barbosa Tweets at 3. Moreover, the Exoo-Barbosa-Tweets, incorporated by reference into the FASC, show that Exoo did not disclose Plaintiff Barbosa's home contact information, his personal phone number, or his wife's personal phone number and the FASC does not identify any person who allegedly made such disclosure. FASC at ¶ 124.

**Plaintiff Scott** alleges that his publicly available information was disclosed by Defendant Exoo on Twitter. FASC at ¶ 127-131. As indicated in the Exoo Tweets, Plaintiff Scott was not doxed by Defendant Exoo in the first instance but by a group called Puget Sound Anarchists in a Washington State Community Alert webpage. Puget Sound Anarchists exposed many of Scott's vile anti-Semitic statements



*Exh. B-III, Exoo - Scott Tweets at 3.*

and his efforts to dox individuals who are opposed to fascism. Exh. B-III, Exoo-Scott Tweets; Exh. F-II. Puget Sound Anarchists Community Alert referenced in Exh. B-III Exoo-Scott Tweets. The Community Alert was republished on Twitter by a user named WANaziWatch. Exh. F-I, WANaziWatch Tweets ("POLITELY

ask whether sending a neo-Nazi into people's homes and neighborhoods is appropriate."). The Community Alert included information concerning Plaintiff Scott's Nazi and Proud Boys activities and his hope for an imminent race war which Plaintiff Scott described as the "boogaloo." WANaziWatch also republished Plaintiff Scott's statements concerning his efforts to dox individuals opposed to fascism ("I've got some antifa names I've doxed just for you") and bragging about his ability to avoid being doxed himself ("Nobody can dox me I'm a *** ghost"). After Puget Sound Anarchists accepted Plaintiff Scott's challenge and exposed his connection to the Proud Boys, that information was tweeted by WANaziWatch and publicly disclosed on Twitter, and on other social media sources. Many individuals reported on it. *See* Exh. B-III, Exoo-Scott Tweets; Exh. F. Defendant Exoo was one of those individuals. *Id*. On September 19, 2019, Scott's employer confirmed his termination and thanked Twitter users for sharing their concerns about Scott. *See* Exh. F-I, WANaziWatch Tweets at 11.

D. <u>Plaintiff Hugo and Super Happy Fun America</u>

**Plaintiff Hugo** is a public figure and President of Super Happy Fun America ("SHFA"). Several members of SHFA's leadership, including its Vice President, have been charged for their participation in the Capitol insurrection. *See* Exh. G-1, Sahady Information. Hugo described the arrestees as "freedom fighters" and

boasted that SFHA's membership has swelled 50% since the Capitol riot.[7] From the stage of an SHFA "rally" in front of the Massachusetts State House, Plaintiff Hugo riled up the mob by calling for insurrection ("It is time to rise up. It is time for insurrection.").[8]

Plaintiff Hugo alleges that Defendant Exoo associated Hugo's public SFHA activities with his public employment information and labeled him a fascist and white supremacist. Hugo further alleges that the information was retweeted more than 100,000 times (revealing Plaintiffs' position that the alleged RICO enterprise includes at least 100,000 co-conspirators). *See* FASC at ¶ 133. In fact, the Exoo Tweets concerning Plaintiff Hugo accurately identified Hugo's employer's contact information and accurately identified Hugo as a "former GOP Congressional candidate and organizer of the Boston Straight Pride Parade, an event with hate group ties." Exh. B-X, Exoo-Hugo Tweets at ¶ 3, 4, 9.

---

[7] *See* Abigail Hauslohner, Washington Post, April 8, 2021, *After Its Members Were Charged in Capitol Riot, One Group Says It Is More Popular Than Ever*, available at https://www.washingtonpost.com/national/capitol-riot-group/2021/04/07/5a77bf7e-8cc6-11eb-a730-1b4ed9656258_story.html (last accessed 4/22/21).

[8] *See* Zoe Greenberg and Laura Crimaldi, *Smiling on the outside: Super Happy Fun America always claimed to be kidding. But the group's history suggests otherwise*, Boston Globe, February 20, 2021 available at https://apps.bostonglobe.com/metro/politics/2021/02/super-happy-fun-america/ (last accessed 4/21/21).

E. <u>Plaintiff Louden and His Violent Militia Groups</u>

Plaintiff Louden alleges that his employer's information was associated with his militia activities by Defendant Exoo on Twitter. FASC at ¶¶ 13, 136-141. Defendant Exoo republished Louden's public profiles on Linkedin.com, CivilianDefenseForce.com and mymilitia.com (with lists several of the militia groups with which Louden is associated). Exh. B-XI, Exoo-Louden Tweets at 3, 5, 9, 10, 11, 12, 14, 17, 27, 34 (noting that Louden used his real name on his militia and Civilian Defense Force profiles until his public calls for violence intensified, when he changed his profile name to "Mars," the Roman God of War). Exoo also republished several of Plaintiff Louden's statements concerning his violent, racist and anti-Semitic conspiracy theories; his efforts to form his own armed militia unit; and to recruit a "top sniper" for this unit. *Id*. at 3, 4, 6, 7, 8, 9, 10, 11, 13, 28, 33 ("please come to PA and be part of my CDF unit. You can be my top sniper.").

Exoo tweeted Louden's employers' public contact information and showed how he was able to identify Louden as the individual promoting anti-Semitism, racism and violent conspiracy theories online. *Id*. The Exoo-Louden Tweets clearly did not reveal Loudens' home address, or the coordinates of his home. In fact, certain personally identifying information including Louden's address and vehicle license plate number were redacted before this publicly available information was republished by Exoo. *Id.*

Plaintiff Louden maintains that he was terminated after being "quizzed" about his membership in extremist militia groups. FASC at ¶¶ 139. It appears that Plaintiff Louden's employer was not satisfied with his responses to the quiz; his violent racist and anti-Semitic conspiracy theories; his association with at least three militia groups; and/or his efforts to start his own militia group and recruit a "top sniper" for that group. Rather than take responsibility for his own poor life choices, Plaintiff Louden blames Defendant Exoo, Twitter, an esteemed university, and more than 100,000 other unnamed people in the alleged "Exoo enterprise."

## III.   Argument

### A. <u>Legal Standard</u>

For the purpose of deciding the instant Motion, the Court must take all alleged facts as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Nevertheless, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Magnum v. Archdiocese of Phila*., 253 F. App'x 224, 225 (3d Cir. 2007).  To survive the motion, Plaintiffs must have alleged facts sufficient to establish that they may eventually be entitled to redress such that one or more of their claims should be allowed to proceed to discovery, summary judgment motion practice, and, potentially, a trial on the

merits. *Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot*., No. 13-cv-2415, 2014 U.S. Dist. LEXIS 23411, at *3 (E.D. Pa. Feb. 24, 2014).

In determining the motion, the Court may consider documents incorporated by reference into the complaint. *In re Amarin Corp. PLC Sec. Litig*., 689 F. App'x 124, 128 n.6 (3d Cir. 2017). The Court may also take judicial notice of certain documents outside the four corners of the complaint. *United States v. Kindred Healthcare, Inc*., 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020).

B. Defendant Exoo's Alleged Conduct is Protected by the First Amendment and New Jersey Constitution

1. *Plaintiffs Have Failed to Allege a True Threat*

Defendant Exoo's tweets constitute political speech protected by the First Amendment and Article One, Section Six of the New Jersey Constitution. None of his statements rise to the level of incitement of criminal conduct. When analyzing alleged threats, Courts distinguish between public political speech like Exoo's tweets and private speech. *See Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1089, 1105 (9th Cir. 2002)(noting that in the context of political speech, a "true threat" must be "unequivocal, unconditional, immediate and specific" in order to be actionable). "Political speech, ugly or frightening as it may sometimes be, lies at the heart of our democratic process." *Id*. In *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 902, 929 (1982), the Supreme Court determined that the statement by civil rights

leader Medgar Evers that "we're gonna break your damn neck" "did not exceed the bounds of protected speech."

Plaintiff D'Ambly has failed to plausibly allege facts from which to conclude that any of the named Defendants made any actionable true threat against him. Exoo's actions are non-violent. Even the strongest statement from Exoo alleged in the FASC: that Exoo was going to spend a week wrecking Plaintiff's D'Ambly's life is not a true threat, does not incite violence, and is far more gentle and less specific than Medgar Evers's language in the *NAACP* case. *See* FASC at ¶ 58. Moreover, D'Ambly claims an unnamed third party told his employer (not D'Ambly himself) that it would have blood on its hands in the event that violence occurred. *See* FASC at ¶ 52. Under no circumstances can the alleged statement to the Daily News from an unnamed third party which D'Ambly believes to be one of Defendant Exoo's 46,000 Twitter followers be considered a true threat. The statement concerning potential blood on the Daily News' hands was neither specific, unequivocal, unconditional nor immediate. Further, Plaintiff D'Ambly provided no context for the statement and it is unclear what the caller was referring to. FASC at ¶ 52. It is plausible that the Daily News was being warned of D'Ambly's participation in violent, racist rallies like the Unite the Right rally in Charlottesville, Virginia where a white supremacist protestor brutally plowed through a crowd, killing one protestor and injuring dozens of others. Similarly, the

caller may have been stating that he believed D'Ambly's vile actions would incite some *other* third party to take violent action? Finally, the phrase "blood will be on your hands" is a classic statement from the old testament (Ezekiel 3:18) which refers to allowing a person to change his ways before potential future harm occurs. This single statement is far too ambiguous, conditional, and equivocal to be construed as an actionable threat and is on its face political speech.  It is therefore protected by the First and Fourteenth Amendments and Article One, Section Six of the New Jersey Constitution.

Similarly, Plaintiffs D'Ambly and the Rehl Plaintiffs' alleged property damage by unnamed third parties is not actionable against Exoo where they are based on alleged statements which are constitutionally protected. FASC at ¶¶  59, 82, 88, 94. Nowhere did Defendant Exoo call for damage to their property. Exoo is no more liable than a newspaper publisher that prints truthful information about a person and a third party subsequently acts in an unlawful manner. Moreover, Defendants have failed to plausibly allege a causal link between Exoo's Constitutionally protected statements and the alleged property damage of the Plaintiffs.

Plaintiffs' claims against Defendant Exoo share a common denominator in that the claims are directed at Exoo's constitutionally protected political speech as

an independent researcher exposing dangerous extremists for the benefit of the public at large. The claims are not actionable.

2. *The First Amendment and New Jersey Constitution Protect Defendant Exoo from Plaintiffs' Tort Claims*

The First Amendment argument is particularly apt with respect to Plaintiffs' tort claims. With respect to Plaintiffs' claims for tortious interference with prospective economic benefit (asserted by all Plaintiffs other than K.R against Defendant Exoo), Defendant Exoo is accused of providing truthful, publicly available information and supporting evidence concerning Plaintiffs to the public in an act described by Plaintiffs as "doxing." As other courts have noted, "there is simply no existing framework in the United States which criminalizes the act of "doxing" or "doxing" private citizens." *United States v. Cook*, 472 F. Supp. 3d 326, 332-340 (N.D. Miss. 2020) (dismissing criminal indictment for cyber-harassment as an unconstitutional violation of the First Amendment as applied to doxing activities).

Plaintiffs do not plausibly assert that any of the information that Defendant Exoo allegedly exposed about Plaintiffs was anything but truthful. The court system is not a forum for plaintiffs seeking to punish individuals for the dissemination of truthful information. It is well-settled that the First Amendment of the United States Constitution and Article One, Section Six of the New Jersey Constitution protect the dissemination of truthful statements. *See* U.S. Constitution,

Amendment I ("Congress shall make no law … abridging the freedom of speech);

N.J. Constitution Article I, Section 6 ("No law shall be passed to restrain or

abridge the liberty of speech or of the press"). "The communication of truthful

information does not constitute improper interference with another's contractual

relationships." *Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.,* Civ No. 00-

cv-1962, 2000 U.S. Dist. LEXIS 18728, at *7-8 (E.D. Pa. Dec. 7, 2000), *citing*

*Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*, 281 Pa. Super. 560 n.12

(Pa. Super. 1980). *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) ("when a

claim of tortious interference with business relationships is brought as a result of

constitutionally-protected speech, the claim is subject to the same First

Amendment requirements that govern actions for defamation.").

*Moore v. Hoff*, 821 N.W.2d 591, 599 (Minn. Ct. App. 2012) is directly on

point. In that case, the Minnesota Supreme Court held that an online blogger could

not be liable for tortious interference with the plaintiff's employment contract

when the plaintiff was fired from his job after the blogger exposed truthful

information concerning the employee's conduct as that is constitutionally protected

speech. *See* 821 N.W.2d at 599. "Because truth is an absolute defense to a claim

for defamation … truth should also be a defense to a claim for tortious

interference with a contract arising out of an allegedly defamatory statement." *Id*.

at 596-97. Article I, Section 6 of the New Jersey Constitution explicitly provides

that truth is an absolute defense to defamation claims under New Jersey law. Similarly, truth must be an absolute defense to claim for tortious interference with business contracts.

Similarly, the First Amendment and Article One, Section Six of the N.J. Constitution protect speakers from claims of intrusion upon seclusion. In *Snyder v. Phelps*, 562 U.S. 443, 460-61 (2011), the U.S. Supreme Court held that the First Amendment trumped plaintiff's claim for intrusion upon seclusion where the defendants publicly espoused their beliefs resulting in harm to the plaintiff, and those beliefs were not provably false. Counts II and III allege constitutionally protected speech and must be dismissed with prejudice.

C. Count II For Tortious Interference Must Be Dismissed

Providing truthful information to employers about the conduct of their employees does not constitute interference with economic opportunity. Restatement (Second) of Torts § 772(a) (1977) ("One who intentionally causes a third person not to perform a contract . . . does not interfere improperly with the other's contracted relation, by giving the third person truthful information"). *See also E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc*., 294 N.J. Super. 158, 180 (1996) *cert. denied*, 148 N.J. 458 (1997). Moreover, most of the Plaintiffs including Hartley, Tucci, Schwetz, Reidinger, Wolkind, and Amanda Rehl fail to allege that Defendant Exoo interfered with any economic opportunity. ¶¶ 83-121.

In addition, the Exoo Tweets show that Defendant Exoo first mentioned Zach Rehl, more than a year after he was terminated. *See* Exh. B-V, Exoo-Rehl Tweets at 6.

  D. Count III For Intrusion Upon Seclusion Must Be Dismissed

All Plaintiffs other than K.R assert a claim of intrusion upon section against Defendant Exoo – but they each fail to satisfy the elements of the claim. Those elements are set forth in the Second Restatement of Torts. *See Bisbee v. John C. Conover Agency, Inc*., 186 N.J. Super. 335, 339 (App.Div.1982); *Rumbauskas v. Cantor*, 138 N.J. 173, 179-82 (1994). The Restatement provides the following three-prong test:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

[3 Restatement (Second) of Torts § 652B (1977).] In other words, a plaintiff must plead (1) a privacy interest (2) that was violated, and (3) that the violation would be highly offensive to a reasonable person. The FASC pleads none of these elements.

First, the allegations in the FASC do not sufficiently allege any privacy interest that was violated. Plaintiffs made no secret of their association with their respective hate groups or hateful activities. For example, Plaintiff D'Ambly participated in a video published on NJEHA's YouTube channel in a "jew walk"

without concealing his identity and holding a sign reading "**EXPEL THE JEW**

**'22.**" (emphasis in original). *See* Exh. B-II, Exoo-D'Ambly Tweets at 16. Plaintiff

Reidinger also identified himself as a domestic terrorist and his occupation as a

"shover at helicopter." *See* Exh. B-VII, Exoo-Reidiner Tweets at 3. Similarly, the

other Plaintiffs who claim to have been doxed publicly disclosed their hate group

associations on social media. There was nothing private about those activities.

Second, the claim requires an invasion of the plaintiff's "private" space or

solitude, such as opening a person's mail, searching his safe or his wallet, or

examining his bank account. *See* Restatement (Second) of Torts § 652B, cmt.

b (citing examples). "A public document reporting information from a public

record does not intrude on a Defendant's seclusion." *Pinkney v. Meadville, Pa*.,

No. 1:19-cv-167, 2020 U.S. Dist. LEXIS 73669, at *11 (W.D. Pa. Apr. 27, 2020).

Even a person's home address is not a private fact sufficient to support a claim for

publication of private facts. *See Brignola v. Home Properties, L.P.,* No. 10-cv-

3884, 2013 U.S. Dist. LEXIS 60282, at *34 (E.D. Pa. Apr. 26, 2013). In this case,

Defendant Exoo merely associated some of the Plaintiffs' employment information

with their public comments and activities.

Third, Courts routinely dismiss upon seclusion claims based on the

plaintiff's failure to show that the intrusion would be highly offensive to a

reasonable person. *See e.g., In re Nickelodeon Consumer Privacy Litig*., 827 F.3d

262, 294-95 (3d Cir. 2016) (affirming dismissal where allegations were not "sufficiently offensive" to "survive a motion to dismiss"). In *Alvarado v. KOB-TV, L.L.C.*, No. 05-cv-750, 2005 U.S. Dist. LEXIS 45372, at *19 (D.N.M. Nov. 14, 2005), the court found that the alleged intrusion consisting of the broadcast of plaintiffs' names and footage of their homes failed to satisfy the highly offensive standard. *Id*.

In this case, Defendant Exoo's alleged conduct does not meet the objective highly offensive standard. While Plaintiffs' views, activities and associations like - recruiting snipers, expelling Jews, pushing people out of helicopters, genocide and beating up "antifags" - may be highly offensive to a reasonable person, the exposure of those activities and associations is not. Defendant Exoo's efforts to hold individuals accountable for their hateful, violent, and/or racist statements and conduct is not highly offensive to a reasonable person.

## E. Counts IV, V, and VI Are Criminal Statutes With No Private Right of Action

Private individuals generally lack the authority to enforce federal criminal statutes. *Walsh v. Krantz*, No. 07-cv-616, 2008 U.S. Dist. LEXIS 44204, at *11 (M.D. Pa. June 4, 2008). A federal criminal statute may provide an implied private right of action only if Congress so intended in enacting the criminal statute. *See Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (holding that a private remedy will not be implied unless legislative intent can be inferred from

statutory language or elsewhere). *See also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Because Plaintiffs cannot create a cause of action where none exists, leave to amend would be futile and the claims should be denied with prejudice. *Walsh,* 2008 U.S. Dist. LEXIS 44204, at *13 ("[T]he motion to dismiss these criminal claims [] will be granted and leave to amend will be denied as futile.").

First, there is no private right of action for violations of 18 U.S.C. § 875(c) (Count V). *Chadda v. Mullins*, No. 10-cv-4029, 2010 U.S. Dist. LEXIS 119152, at *5-6 (E.D. Pa. Nov. 9, 2010). *Walsh*, 2008 U.S. Dist. LEXIS 44204, at *11; *Koch v. Law Firm Schemery Zicolello*, No. 4:19-cv-00361, 2020 U.S. Dist. LEXIS 153000, at *9 (M.D. Pa. Aug. 21, 2020) ("None of these statutes [18 U.S.C. § 875.] provide for a private civil cause of action."). In *Chadda*, the court held "Defendants contend that Walsh cannot maintain the claims premised on criminal statutes [including] 18 U.S.C. § 875. The court agrees." 2010 U.S. Dist. LEXIS 119152, at *5-6.

Second, there is no private right of action for Plaintiffs' claim for violation of 18 U.S.C. § 2261(A)*,* interstate stalking. "The legislative history does not suggest that Congress contemplated a private right of action, and in fact indicates the opposite." *Rock v. BAE Systems, Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014). *See also Agundis v. Rice*, No. 2:17-cv-00536, 2018 U.S. Dist. LEXIS 117620, at

*32-33 (N.D. Ala. July 13, 2018); *Kruska v. Perverted Justice Found. Inc. Org.*, No. 08-cv-00054, 2010 U.S. Dist. LEXIS 126765, at *24 (D. Ariz. Nov. 17, 2010).

In *Perverted Justice*, a convicted child sex offender alleged that defendants' publication of her employer and home information along with information concerning her conviction on the internet constituted internet stalking and cyber-harassment. The court dismissed the claim with prejudice noting, "[n]owhere does 18 U.S.C. § 2261(a)(2) provide a private right of action or recovery." 2010 U.S. Dist. LEXIS 126765, at *24.

Third, there is no private of right of action for Plaintiff D'Ambly's claims for cyber harassment and stalking under New Jersey law. *See* FASC Count VI, alleging violations of N.J.S.A. 2C:33-4.1(a) (Crime of Cyber harassment) and a stalking statute, cited as N.J.S.A. 2C:30-31(a), that does not exist. New Jersey's cyber harassment and stalking statutes are criminal statutes. New Jersey courts "have been reluctant to infer" a private right of action when a statute does not expressly provide one. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271 (N.J. 2001).

There is no evidence that the New Jersey legislature intended to create a private cause of action for either statute. Courts in other states have found that similar state criminal statutes for cyber harassment and stalking do not create private rights of action. *See e.g.*, *Brune v. Takeda Pharm. U.S.A., Inc.*, No. 1:18-

cv-298, 2019 U.S. Dist. LEXIS 123022, at *23-24 (S.D. Miss. July 24, 2019)

(holding that there is no private right of action under Mississippi criminal statute

for cyber harassment); *Cuadrado-Concepcion v. United States*, No. 19-cv-305,

2020 U.S. Dist. LEXIS 143040, at *20 (S.D. Ga. Aug. 10, 2020) (no private right

of action for Georgia's criminal stalking statute.); *Lostutter v. Olsen*, No. 1:16-cv-

1098, 2017 U.S. Dist. LEXIS 136280, at *40-41 (M.D.N.C. Aug. 24, 2017)

("[T]he court has found that Lostutter's "cyber-stalking" claims cannot survive

dismissal, as they rely on [North Carolina] criminal statutes that have no

apparent private right of action.").

### F.  Counts IX and X For Federal RICO Violations Must be Dismissed

To establish a claim for RICO, a plaintiff must show "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L v.

Imrex Co.*, 473 U.S. 479, 496, (1985). The statute defines racketeering by a list of

criminal activities that constitute predicate acts for purposes of RICO. *Warden v.

McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).

#### 1.  *Plaintiff Failed to Allege Requisite Predicate Acts in Furtherance of the Alleged Conspiracy (Count IX)*

Establishing a racketeering conspiracy requires the commission of two or

more predicate criminal acts under RICO, 18 U.S.C. 1962(c). *Pioneer Contracting,

Inc. v. E. Exterior Wall Sys.*, No. 04-cv-01437, 2005 U.S. Dist. LEXIS 5197, at *4

(E.D. Pa. Mar. 30, 2005) (dismissing RICO claim where plaintiff failed to properly

allege predicate acts). Plaintiffs have alleged none. Count IX of the FASC alleges

violations of 18 U.S.C. §§ 1951 (the "Hobbs Act") and 1952 (the "Travel Act").

While Plaintiffs make passing reference to these statutes, such "passing

reference is insufficient to state a RICO claim upon which relief can be granted."

*See Jung v. Pennsylvania,* No. 3:18-cv-01248, 2018 U.S. Dist. LEXIS 108289, at

*12 (M.D. Pa. June 27, 2018) (recommending dismissal of Plaintiff's RICO claim

predicated upon the Hobbs Act).

First, Plaintiffs fail to satisfy the predicate act requirement under the Hobbs

Act because the facts as alleged do not constitute robbery or extortion. The Hobbs

Act provides, in part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section ....
> 18 U.S.C. 1951(a).

In *Scheidler v. NOW, Inc*., 537 U.S. 393, 405 (2003)("*Scheidler I*"), the

United States Supreme Court determined that the RICO defendants, anti-abortion

protestors who sought to disrupt abortion clinics, did not violate Section 1951

because they did not seek to obtain any property. *Id*. (noting that extortion requires

both the deprivation of property by the victim and the attainment of that property

by the perpetrator). The Court held, "eliminating the requirement that property

must be obtained to constitute extortion would not only conflict with the express

requirement of the Hobbs Act, it would also eliminate the recognized distinction

between extortion and the separate crime of coercion -- a distinction that is

implicated in these cases." *Id*.

Similarly in *Int'l Ass'n of Machinists v. Jackson*, No. 09-150, 2010 U.S. Dist.

LEXIS 15885, at *21-22 (E.D. Pa. Feb. 19, 2010), the plaintiff asserted a RICO

claim against defendants in connection with the loss of his employment. The claim

was dismissed because "the complaint d[id] not allege that the Individual

Defendants obtained Plaintiffs' jobs." *Id*.

In this case, Plaintiffs mention the word "extortion" no less than sixteen

times. *See* FASC at ¶¶ 33, 34, 35, 45, 77, 97, 121, 146(b), 175, 188, 193, 195, 212,

213, 233, 241. However, the pleading contains no actual allegations of extortion as

that term is defined by the United States Supreme Court. Plaintiffs fail to allege

that Defendant Exoo or any of his alleged co-conspirators tried to obtain for

themselves Plaintiffs' jobs or any other property.

Plaintiffs also alleged threats by unnamed third parties are actionable under

Section 1951 against Defendant Exoo. *See* FASC at ¶¶ 193, 204, 205. But, the

Supreme Court has held that even actual acts of physical violence do not satisfy the

predicate act requirement where those acts of violence are unrelated to robbery or

extortion. *Scheidler v. NOW, Inc.*, 547 U.S. 9, 16 (2006) ("*Scheidler II*") ("We

hold that physical violence unrelated to robbery or extortion falls outside the scope of the Hobbs Act.").

Second, Plaintiffs fail to satisfy the predicate act requirement under the Travel Act and fail to allege any acts of violence or "unlawful activity" as defined by the Act. Plaintiffs simply allege that Defendant Exoo participated in some sort of unlawful activity in connection with his "violent doxing campaign." *See* FASC at ¶ 205. However, the Travel Act applies to acts of violence in connection with a defined list of "unlawful activity" limited to: 1) failure to pay excise tax for a business involving gambling, or liquor; 2) crimes concerning narcotics or controlled substances, prostitution, extortion, bribery, arson, money laundering, and 3) obtaining money from criminal activity. *See* 18 U.S.C. § 1952. The disclosure of truthful information is not referenced in the statute nor is alerting an employer to the fact that it is employing a member of a hate group.

Moreover, like the Hobbs Act obtainment requirement, extortion claims under the Travel Act require that the defendant take possession of the property at issue. *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 578 (S.D.N.Y. 2009). Because Plaintiffs fail to plausibly allege any RICO predicate acts under the Travel Act or the Hobbs Act, the RICO claims should be dismissed with prejudice.

In the *Perverted Justice case*, the plaintiff, a convicted child sex offender, alleged that the defendants who exposed her conduct were part of a similar RICO

conspiracy for publishing substantially truthful information relating to plaintiff's criminal activity along with the plaintiff's home and employer information. 2010 U.S. Dist. LEXIS 126765, at *22. The court dismissed the RICO claim with prejudice after determining that the plaintiff failed to allege a single predicate act much less a pattern of racketeering activity. *Id*. With respect to their RICO claims, Plaintiffs in this case are no different from the convicted child sex offender in *Perverted Justice*. They fail to satisfy the predicate act requirement.

### 2. *Plaintiffs Failed to Allege the Existence of RICO Enterprise*

Plaintiffs also fail to allege facts from which to conclude the existence of a RICO enterprise. A RICO enterprise is defined in 18 U.S.C. § 1961 (4) as: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." A RICO enterprise, "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S*, 556 U.S. 938, 946 (2009).

The FASC offers no detail regarding the structure of the Exoo Enterprise and identifies only four participants in an alleged enterprise that supposedly contains more than 100,000 members. The FASC does not plausibly allege any "agreement" among the alleged co-conspirators. Moreover, the FASC does not

remotely suggest that Exoo, Twitter, Gadde, St. Lawrence and the 100,000 unnamed associates combined as a unit or acted in concert for a common purpose. Plaintiffs offer no details for their claim that there is an association other than farfetched, unsubstantiated, conclusory accusations that exists only in Plaintiffs' papers. Moreover, Plaintiffs have failed to plausibly allege a sufficient causal link between Defendants' actions and any harm they claim to have suffered. *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 453 (2006) (noting a plaintiff may only sue under RICO where the alleged RICO violation was the proximate case of the plaintiff's injury).

### 3. *Plaintiffs Failed to Allege a RICO Conspiracy (Count X)*

Where a plaintiff fails to state a claim for violation of the federal RICO statute, "it follows that the Complaint also fails to state a claim for conspiracy to violate th[is] statute[]. *Zazzali v. Hirschler Fleischer, P.C*., 482 B.R. 495, 516-17 (D. Del. 2012), *citing Zavala v. Wal-Mart Stores, Inc*., 691 F.3d 527 (3d Cir. 2012) (affirming dismissal of RICO and conspiracy to commit RICO claims because complaint did not adequately allege predicate acts required for RICO claims). *See also Binary Semantics Ltd. v. Minitab, Inc*., 2008 U.S. Dist. LEXIS 28602, at *13 (M.D. Pa. Mar. 20, 2008) (stating that a RICO conspiracy claim

"necessarily fails due to failure to state a claim under RICO"). In this case,

Plaintiffs failed to state a claim under RICO, therefore, the RICO conspiracy claim,

18 U.S.C. § 1962(d) should be dismissed with prejudice.

    4. *Plaintiff Should be Required to Submit a RICO Statement pursuant to Local Civil Rule 16.1(b)(4)*

In the event Plaintiffs' federal RICO claim is not dismissed with prejudice,

Plaintiffs should be required to file a RICO case statement pursuant to Local Civil

Rule 16.1(b)(4). *See Northland Ins. Co. v. Shell Oil Co*., 930 F. Supp. 1069, 1076

(D.N.J. 1996) ("the RICO Case Order is supported by Congressional act, federal

and local rule."). The local rule provides that: "[i]n a civil action arising under 18

U.S.C. §§1961-1968, the Judge or Magistrate Judge may require a RICO case

statement to be filed and served in the form set forth in Appendix O." A copy of

the Optional RICO Case Order is annexed to the Torres Decl. as Exh. H.

"The order was designed to aid plaintiffs in framing their claims with particularity

sufficient for the requirements of the RICO statute." *Northland*, 930 F. Supp. at

1073. Plaintiffs should be required to submit a RICO case statement because

several Defendants' motions to dismiss focus on the elements of Plaintiff's RICO

claim. *See Rothberg v. Marger*, No. 11-cv-5497, 2012 U.S. Dist. LEXIS 71088, at

*9 (D.N.J. May 21, 2012) ("Because Defendants' motions to dismiss Plaintiffs'

RICO claim focus on Plaintiffs' failure to allege a pattern of racketeering activity

and failure to allege a specific predicate statute, [] the Court orders Plaintiffs to file" a RICO case Statement.").

    5. *Count XIII for N.J. Racketeering Must be Dismissed*

    Plaintiff D'Ambly is the only Plaintiff asserting a claim for violation of the New Jersey racketeering statute ("NJRICO"). *See* FASC at ¶ 186. D'Ambly's NJRICO claim must be dismissed for failure to state a claim. To state a claim under the statute, a plaintiff must allege, "(1) the existence of an enterprise affecting trade or commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that defendant participated through a pattern of racketeering activity that must include the allegation of at least two predicate acts." *Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp. 2d 551, 554 (D.N.J. 1999). New Jersey's RICO statute "borrows its structure, purpose and remedies from Federal RICO" and New Jersey courts heed federal case law in construing the statute. *See State v. Ball*, 268 N.J. Super. 72, 98 (App. Div.1993), *aff'd*, 141 N.J. 142 (1995). *See also Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 316-17 (D.N.J. 2011) (dismissing New Jersey Racketeering claim on the same grounds as the Court's dismissal of plaintiff's federal RICO claim.). Where a Plaintiff's federal RICO claim "alleges insufficient facts to support a claim of racketeering, so too must the New Jersey state RICO

claim fail." *Leeder v. Feinstein*, No. 3:18-cv-12384, 2019 U.S. Dist. LEXIS 108810, at *24 (D.N.J. June 28, 2019). In this case, D'Ambly fails to satisfy the enterprise requirement, and fails to show a pattern of racketeering activity for the same reasons the federal RICO claim failed.

Plaintiff D'Ambly alleges violations of three statutes. *See* FASC at ¶ 188 (a-c) alleging the Exoo Enterprise engaged in activities prohibited by N.J.S.A. 2C:41-2; N.J.S.A. 2C:41(a)(1)(h)(*sic*); and N.J.S.A. 2C:41(a)(1)(bb)(*sic*).

First, N.J.S.A. 2C:41-2 ("Prohibited Activities") contains a laundry list of potential racketeering activities. Plaintiff D'Ambly does not bother state which of the many, many racketeering activities he claims was violated even though this statute seems to concern financial crimes, quite dissimilar from the complaint in this case.

Second, D'Ambly alleges multiple acts of extortion. However, D'Ambly fails to recognize the obtainment requirement that distinguished extortion from mere coercion. New Jersey's criminal extortion statute requires that the perpetrator obtain property of the victim. *See* e.g., N.J.S.A. 2C:20-5 (Theft By Extortion) (requiring the defendants to "purposely and unlawfully obtain[] property of another by extortion.") This is the same "obtainment" requirement recognized by the U.S. Supreme Court in *Scheidler I,* 537 U.S. at 405. While Plaintiff D'Ambly grouses that he lost his printing job after his white supremacist activities were exposed, he

does not allege that his job was given to Defendant Exoo or any of the other Defendants.

Third, as discussed above in relation to Exoo's First Amendment protection, Plaintiff D'Ambly has failed to plausibly allege facts from which to conclude that any of the named Defendants made any actionable true threat against him. Constitutionally protected speech cannot establish a predicate criminal act requirement under the NJRICO statute. D'Ambly's NJRICO claim must be dismissed with prejudice. *See* U.S. Constitution, Amendment I, New Jersey Constitution Article 1, Section 6.

G. <u>Plaintiffs Whose Claims Have No Connection to New Jersey Must Be Dismissed From the Action for Lack of Personal Jurisdiction</u>

Plaintiffs' federal RICO claims are the only claims that provide for nationwide personal jurisdiction over the Defendants. The dismissal of the federal RICO claims requires the dismissal of all claims asserted by all Plaintiffs, apart from Plaintiff D'Ambly, against Defendants Exoo, Twitter, Gadde, and St. Lawrence for lack of personal jurisdiction. Absent specific jurisdiction for their personal claims, a plaintiff may not tag along in a federal action merely because one or more other plaintiffs can satisfy the minimum contacts requirements. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1782 (2017).

In *Bristol-Myers Squibb*, the Supreme Court held that a California district court could not exercise specific jurisdiction over an out-of-state defendant where

the nonresident-plaintiffs were injured in their own states of residence, and not in California. *See also Hannah v. Johnson & Johnson Inc*., Civil Action No. 18-1422 (FLW), 2020 U.S. Dist. LEXIS 113284, at *101 (D.N.J. June 29, 2020) ("Plaintiffs who have no connection to [the forum state] are missing the requisite contact between their claims and the [] Defendants."). *Weirbach v. Cellular Connection, LLC*, No. 5:19-cv-05310-JDW, 2020 U.S. Dist. LEXIS 144497, at *12 (E.D. Pa. Aug. 12, 2020) (noting that *Bristol-Myers Squibb* "means this Court cannot exercise personal jurisdiction over the out-of-state plaintiffs' claims.").

Plaintiffs, other than Plaintiff D'Ambly, cannot establish general or specific jurisdiction over Defendants Exoo, Gadde, Twitter, and St. Lawrence. The claims of those twelve Plaintiffs lack any nexus to the State of New Jersey. Indeed, only Plaintiff D'Ambly asserts claims under New Jersey law. *See* FASC at ¶¶ 161, 186. Defendant Exoo lives and works in New York. *See* Exh. A Exoo Decl. He has no connection to the State of New Jersey sufficient to subject him to general jurisdiction or specific jurisdiction with respect to the twelve non-resident Plaintiffs' claims. *Id*. The same is true for Defendants Twitter, Gadde and St. Lawrence. *See* FASC at ¶¶ 16-17, 20-21 (noting that Twitter, Gadde and St. Lawrence are not domiciled in New Jersey). Accordingly, in the event that the federal RICO claim is dismissed with prejudice, the claims of all of the state

Plaintiffs' must also be dismissed for lack of personal jurisdiction pursuant to

F.R.C.P. Rule 12(b)(2).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims

against Defendant Exoo with prejudice.

Dated:          April 22, 2020
                Springfield, New Jersey

                          Respectfully submitted,

                          _____
                          Richard Torres, Esq.
                          63 Tooker Avenue
                          Springfield, New Jersey 07081
                          Phone: (347) 742-5362
                          E-mail: richardtorresdna@gmail.com


                          **THE MARLBOROUGH LAW FIRM, P.C**
                          Christopher Marlborough
                          445 Broad Hollow Road, Suite 400
                          Melville, New York 11747
                          Phone: (212) 991-8960
                          Fax: (212) 991-8952
                          E-mail: chris@marlboroughlawfirm.com


                          **ZMO Law PLLC**
                          Victoria Medley
                          260 Madison Avenue, 17th Floor
                          New York, New York 10016
                          Phone: (212) 685-0999
                          Fax: (212) 991-8952

E-mail: vm@zmolaw.com

*Counsel for Defendant Christian Exoo*