Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiff Daniel D'Ambly*

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>       Plaintiff,<br><br>vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100,<br><br>       Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO.:  2:20-cv-12880<br><br>(ELECTRONICALLY FILED) |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS OPPOSITION TO COHEN, WEISS, AND SIMON LLP'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**Motion Day: July 6, 2021**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Table of Authorities | ii |
| II. | Introduction | 2 |
| III. | Motion to Dismiss Standard of Review | 4 |
| IV. | Argument | 5 |
| | 1. An Attorney-Client Relationship Existed Between D'Ambly And CWS | 5 |
| | 2. CWS Cannot Argue Their Negligence Was An Act Of The Union As An Entity | 7 |
| | 3. But For The Exoo Enterprise's Extortion, D'Ambly Could Not Have Been Terminated Because He Did Not Commit Any Terminable Acts | 10 |
| | 4. There are no grounds for sanction because the Plaintiff has a Good Faith Belief that the Facts Support his Complaint | 12 |
| V. | Conclusion | 13 |

# **TABLE OF AUTHORITIES**

**Cases**          **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 5

*Atkinson v. Sinclair Refining Co.*,
  370 U.S. 238 (1962) .................................................................................... 2, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 4

*Breda v. Scott*,
  1 F.3d 908 (9th Cir. 1993) ............................................................................ 7-8

*Carino v. Stefan*,
  376 F. 3d 156 (3d Cir. 2004) ........................................................................ 7, 8, 9

*Delso v. Trustees for Ret. Plan for Hourly Employees of Merck & Co., Inc.*,
  No. 04-3009, 2007 U.S. Dist. LEXIS 16643 (D.N.J. 2007) ......................... 6

*Fonti v. Health Professionals & Allied Emp.*,
  2015 U.S. Dist. LEXIS 43526, 2015 WL 1523834 (D.N.J. Apr. 2, 2015) .... 8

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
  930 F.2d 277 (3d Cir. 1991) ......................................................................... 13

*Herbert v. Haytaian*,
  292 N.J. Super. 426 (App. Div. 1996) .......................................................... 7

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................................... 5

*In re Palmieri*,
  76 N.J. 51 (1978) .......................................................................................... 6

*Kovach v. Turner Dairy Farms, Inc.*,
  929 F. Supp. 2d 477 (W.D. Pa. 2013) .......................................................... 7, 11

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) ........................................................................... 13

*Mallick v. Int'l Bhd. of Elec. Workers*,
  644 F.2d 228 (3d Cir. 1981) ......................................................................... 11

*Montgomery Academy v. Kohn*,
  50 F. Supp. 2d 344 (D.N.J. 1999) ................................................................ 6

*Montplaisir v. Leighton*,

| | |
|---|---|
| 875 F. 2d 1 (1st Cir. 1989)............................................................................... | 7 |
| *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, | |
| 657 F. Supp. 1486 (N.D. Ill. 1987) ................................................................. | 6 |
| *Peterson v. Kennedy*, | |
| 771 F.2d 1244 (9th Cir. 1985) ....................................................................... | 7 |
| *Phillips v. County of Allegheny*, | |
| 515 F.3d 224 (3d Cir. 2008)........................................................................... | 5 |
| *Rosenau v. Unifund Corp.*, | |
| 539 F.3d 218 (3d Cir. 2008)........................................................................... | 4 |
| *Sabolsky v. Budzanoski*, | |
| 457 F.2d 1245 (3d Cir. 1972)......................................................................... | 7 |
| *Semancik v. United Mine Workers*, | |
| 466 F.2d 144 (3d Cir. 1972)........................................................................... | 11 |
| *Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenawalt*, | |
| 880 F. Supp. 1076 (M.D. Pa. 1995) ............................................................... | 8 |
| *Tomko v. Hilbert*, | |
| 288 F.2d 625 (3d Cir. 1961)........................................................................... | 8, 9 |
| *United States v. Gotti*, | |
| 459 F.3d 296 (2d Cir. 2006)........................................................................... | 9 |
| *United States v. Green*, | |
| 350 U.S. 415 (1956)....................................................................................... | 10 |
| *United States v. Local 30, United Slate, etc.,* | |
| 871 F.2d 401, 406 (3d Cir. 1989)................................................................... | 9, 10 |
| *United States v. Local 560 Int'l Bhd. of Teamsters*, | |
| 581 F. Supp. 279 (D.N.J. 1984) *aff'd* 780 F.2d 267 (3d Cir. 1985)............... | 9, 10 |
| *United States v. Local 560 (I.B.T.)*, | |
| 694 F. Supp. 1158 (D.N.J. 1988) ................................................................... | 9 |
| *United States v. Roganovich*, | |
| 318 F.2d 167 (7th Cir. 1963) ......................................................................... | 9 |
| *United States v. Santoni*, | |
| 585 F.2d 667(4th Cir. 1978) .......................................................................... | 9 |

**Statutes**

| | |
|---|---|
| *Labor Relations Management Act, 29 U.S.C. § 185* (section 301(b)......................... | *passim* |

| | |
|---|---|
| Labor Management Recording and Disclosure Act ("LMRDA"), *29 U.S.C. § 411*.. | *passim* |
| *Occupation Safety and Health Act of 1970* ("OSHA"), *29 U.S.C. § 651* ................... | 10 |

**Other Authorities**

| | |
|---|---|
| Federal Rule of Civil Procedure 11 ............................................................... | 2 |
| Federal Rule of Civil Procedure 12(c) ............................................................ | 2, 4 |
| Federal Rule of Civil Procedure 12(b)(6) ....................................................... | 4 |
| Federal Rule of Civil Procedure 8(a)(2) ......................................................... | 4 |
| Federal Rule of Civil Procedure 11(b)(2) ....................................................... | 12 |
| Federal Rule of Civil Procedure 11(b)(3) ....................................................... | 12 |
| Federal Rule of Civil Procedure 11(b)(4) ....................................................... | 12 |
| MODEL RULES OF PROF'L CONDUCT R. 1.13(f) .............................................. | 5, 6 |
| MODEL RULES OF PROF'L CONDUCT R. 1.13(f) cmt. 10 ............................... | 6 |

Plaintiff Daniel D'Ambly (Hereinafter "Plaintiff" or "D'Ambly") submits this Brief in opposition to Defendant Cohen, Weiss, and Simon, LLP's ("CWS") motions to dismiss under Fed.R.Civ.P. 12(c) and sanctions under Fed.R.Civ.P. 11. For the reasons that follow, CWS' motions should be denied.

## INTRODUCTION

Under *Section § 301(b)* of the Labor Relations Management Act ("LMRA"), *29 U.S.C. § 185*, an attorney is immunized against liability for claims brought by a union member the attorney represented during grievance proceedings pursuant to a collective-bargaining agreement ("CBA"), because the attorney-client relationship exists between the attorney and the labor union, therefore, the attorney performs acts as the union entity, because the "union as an entity…be the sole recovery for injury inflicted by it." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249 (1962). CWS argues they are immune from liability, because they represented D'Ambly as an agent of his union, the Graphic Communications Conference of the International Brotherhood of Teamsters, Local One-L ("Teamsters" or the "union"), and negotiated the settlement agreement during grievance proceedings related to a CBA subsequent to his termination from the Tribune Publishing Company, LLC/New York Daily News (collectively the "Daily News").

CWS' representation of D'Ambly was not routine grievance representation in a dispute to a CBA where the attorney's actions were dictated by the political and/or tactical business decisions of the union. In this case, outsiders harassed, intimidated, and extorted D'Ambly's termination and caused the Teamsters to be a captive labor organization, which does not implicate the CBA.

2

There are several factors that preclude CWS from invoking the safe harbor protections of *§ 301(b)* and distinguish this case from a routine grievance procedure and also should have informed CWS that they were required to immediately inform D'Ambly to seek outside counsel, because they could not represent him. First, as to the CBA, D'Ambly's termination was not caused by his misconduct, or a violation of any of his employer's or unions rules. An enterprise led by co-defendant Christian Exoo ("Exoo"), the Exoo Enterprise (the "Exoo Enterprise or "enterprise), conducted patterns of racketeering activities that harassed, intimidated, and threatened with violence the Daily News and Teamsters to extort D'Ambly's termination. Second, CWS was deeply conflicted by the Teamsters' stated position that their "members were not white supremacists" as opposed to D'Ambly's characterization as an alleged white supremacist.

Third, D'Ambly's Termination of Employment ("TOE") letter issued by the Daily News admitted D'Ambly had not committed any terminable acts and that he was the victim of workplace violence, and contained outright lies and provable factual misstatements concerning the alleged cause of D'Ambly's termination. Fourth, a telling indicator that D'Ambly's termination had no relationship to the CBA was that prior to his termination, D'Ambly's lead extortionist was secretly informed of D'Ambly's termination and publicly announced D'Ambly's termination one (1) day prior to the date the Daily News claimed was the date it learned of the alleged "cause" of his termination.

Further, technological advancements have rendered and will continue to render, D'Ambly's trade, printing press plate making, obsolete, therefore, D'Ambly's termination was effectively an expulsion from the Teamsters, which further informed CWS that recusal was mandatory. As a result of CWS' willful neglect in failing to confront the Exoo Enterprise's

3

extortionate conduct, D'Ambly was caused to suffer the deprivation of the rights guaranteed to union members under the Labor Management Recording and Disclosure Act ("*LMRDA*"), *29 U.S.C. § 411(a)(5)*, including the right to have a full and fair hearing.

Dismissal is not appropriate in this case. The Teamsters were a captive labor organization controlled and influenced by the Exoo Enterprise and incapable of making a business decision free from outside pressure wrongfully imposed. The extent of the Exoo Enterprise's wrongfully imposed control and influence of the Teamsters can only be determined through discovery of the extortionate threats and communications between the Exoo Enterprise and the Teamsters in private messages, emails, and phone calls, which are in CWS' possession.

## I.     **MOTION TO DISMISS ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)**

A motion to dismiss or judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed as a motion to dismiss for failure to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). Our standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is plenary. Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

4

formulaic recitation of the elements of a cause of action." *Id*. When reviewing a motion to dismiss, the court must construe the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Twombly*, the Supreme Court set forth the plausibility standard for overcoming a motion to dismiss. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The Supreme Court's *Twombly* formulation of the pleading standard "can be summed up thus stating…a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). This standard "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*.

## I.     LEGAL ARGUMENT

### 1. An Attorney-Client Relationship Existed Between D'Ambly and CWS

The unique facts in this case, which includes an extortionate outside enterprise, a violently threatened and extorted employer, an extorted union member, a captive labor organization, and a deeply conflicted attorney precludes the rote application of *Section 301(b)* immunity. As a threshold matter, the American Bar Association ("ABA"), MODEL RULES OF PROF'L CONDUCT ("RPC") R. 1.13(f) was consulted to determine whether an attorney-client

5

relationship existed between D'Ambly and CWS. RPC 1.13 governs the nature of the client-lawyer relationship when an attorney represents an organization. RPC 1.13(f) requires the attorney to "explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." When the organization's interests and the constituent's interests are adverse or may become adverse, the lawyer should inform any "adverse" constituent "that the lawyer cannot represent" him and he "may wish to obtain independent representation." RPC. 1.13(f) cmt. 10. The lawyer must carefully assure the adverse constituent that "the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged." *Id.*

In this case, an implied attorney-client relationship was formed, which exists when a party shows "(1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Montgomery Academy v. Kohn*, 50 F. Supp. 2d 344, 350 (D.N.J. 1999) (quoting *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1495 (N.D. Ill. 1987). No formal "writing or speech" is necessary to confirm an attorney's agreement to represent a client, "under certain circumstances [representation can] be inferred from the conduct of the parties." *In re Palmieri*, 76 N.J. 51, 58-59 (1978). The attorney-client relationship begins with a non-lawyer's reliance on the professional skills of an attorney, who, in turn, knows of this reliance and accepts responsibility for it. *Delso v. Trustees for Ret. Plan for Hourly Employees of Merck & Co., Inc.*, No. 04-3009, 2007 U.S. Dist. LEXIS 16643 *22, 2007 WL 766349 (D.N.J. 2007). The client must demonstrate from an identifiable action or manifestation, reliance on an attorney in his professional capacity. *Herbert v. Haytaian*, 292 N.J. Super, 426, 436-37 (App. Div. 1996).

D'Ambly reasonably believed that an attorney-client relationship was formed, because he shared confidential materials in an effort to rectify his unwarranted termination and reinstate his employment.

### 2. **CWS Cannot Argue their Negligence was an act of the Union as an Entity**

CWS did not act as the union, because they ignored the Exoo Enterprise's extortion that rendered the Teamsters a captive labor organization that could not make a business decision free from outside pressure wrongfully imposed. The Exoo Enterprise's extortion caused D'Ambly's resultant termination and effective expulsion from the Teamsters. The "Third Circuit has held that fiduciary duty of union officers under [29 U.S.C.] *§ 501* are broad in scope, *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1250 (3d Cir. 1972), and includes an obligation to protect the political rights of its members." *Kovach v. Turner Dairy Farms, Inc.,* 929 F. Supp. 2d 477, 494 (W.D. Pa. 2013). The pertinent point in this case is whether CWS' representation of D'Ambly when they ignored the Exoo Enterprise's extortion constitutes an act of the union as an entity under the CBA that would entitle them to *§ 301(b)* immunity when the Teamsters were a captive labor organization and incapable of protecting D'Ambly's political rights.

CWS argues that it represented D'Ambly pursuant to the CBA and is therefore immune from suit under *LMRA § 301(b),* because the "union as an entity…be the sole recovery for injury inflicted by it." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249 (1962). CWS cites to *Atkinson* and its progeny wherein attorneys are granted immunity for providing services "within the ambit of the collective bargaining process." *Montplaisir v. Leighton*, 875 F. 2d 1, 4 (1st Cir. 1989); *Carino v. Stefan*, 376 F. 3d 156, 162 (3d Cir. 2004) ("immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement."); *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir. 1985) ("attorneys who perform services for and on

behalf of a union may not be held liable in malpractice to individual grievant where the services the attorneys perform constitute a part of the collective bargaining process."); *Breda v. Scott*, 1 F.3d 908, 909 (9th Cir. 1993) (where Peterson applied *§ 301* immunity to in-house counsel, Breda expanded *§ 301* immunity to in-house and outside counsel.").

CWS' cited authorities cited above are couched in the belief that D'Ambly's malpractice claim is an attempt to get around the six-month statute of limitation deadline that applies to breach of the duty of fair representation. However, fair representation claims are not the union members' only remedy, D'Ambly could have pursued a claim under *Section 501(a)* of the LMRDA, because "there is no statute of limitations set forth in LMRDA for claims arising under Title V." *Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenawalt*, 880 F. Supp. 1076, 1083 (M.D. Pa. 1995); see also *Fonti v. Health Professionals & Allied Emp.*, 2015 U.S. Dist. LEXIS 43526 *14, 2015 WL 1523834 (D.N.J. Apr. 2, 2015) ("Section 501(a) claims are equitable in nature. Therefore, the doctrine of laches, rather than a specific statute of limitations, applies to timeliness."). Under *Section 501* union officers have a fiduciary duty to protect its members political rights. *Tomko v. Hilbert*, 288 F.2d 625, 627 (3d Cir. 1961)

Further, CWS claims its *§ 301(b)* immunity is found in *Carino v. Stefan*, 376 F.3d 156 (3d Cir. 2004). However, unlike the plaintiff in *Carino*, wherein a union member was accused of misconduct related to the sales of insurance products, later sued the union attorney, who convinced her to sign a waiver of her rights without her knowledge. D'Ambly was not accused of misconduct or a violation of the CBA, and he could not be punished for his political speech, which was the alleged cause of his termination. Moreover, D'Ambly was not provided the opportunity to exhaust internal remedies, whereas in *Carino*, "following the procedures established by the collective bargaining agreement, the Union filed a grievance on Carino's

8

behalf, contesting her termination." *Carino*, 376 F.3d at 158. The facts in *Carino* illustrate an attorney acting as the agent of the union as an entity, because the union's decision not to represent one of its members "flow[ed] from the union's political or tactical choices" which was not to represent a union member accused of criminal misconduct. *Id.* at 161.

      D'Ambly was terminated, because the Exoo Enterprise extorted the Teamsters right to "make a business decision free from outside pressure wrongfully imposed," which caused the Teamsters to be a captive labor organization. *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978). It is "unlawful for any person through threats or use of for or violence to attempt to or to in fact interfere with or prevent the exercise of any or all rights that a union member may have" under the LMRDA. *Tomko*, 288 F.2d at 627. Congress' intent when it enacted the LMRDA was "to preserve for union members the right of free expression secure from interference by force or threat of force from any person." *United States v. Roganovich*, 318 F.2d 167, 170 (7th Cir. 1963).

      A "captive labor organization" is an organization that has been "dominated through fear and intimidation" by persons who "used its control…to victimize both individual members of the Local" and industry segments. *United States v. Local 560 Int'l Bhd. of Teamsters*, 581 F. Supp. 279, 319 (D.N.J. 1984). A captive labor organization exists when there is evidence that any persons controlled the union through violence, intimidation, or extortion of union members' rights. *United States v. Local 30, United Slate, etc.,* 871 F.2d 401, 406 (3d Cir. 1989). A union local is a captive labor organization when persons, insiders or outsiders use "a pervasive and compelling climate of intimidation" to control union decisions. *United States v. Local 560 (I.B.T.)*, 694 F. Supp. 1158, 1163 (D.N.J. 1988).

The Exoo Enterprise gained control and influence over the Teamsters "through violence, intimidation and extortion of the members' rights." *Local 30*, 871 F.2d at 406. Extortion as applied to the present circumstances "in no way depends upon having a direct benefit conferred on the person who obtains the property." *United States v. Green*, 350 U.S. 415, 420 (1956). The Teamsters were captive, because the extortion caused "the relinquishment of the union members' LMRDA rights." *United States v. Gotti*, 459 F.3d 296, 320-326 (2d Cir. 2006).

CWS will argue the above cited cases are not analogous, because they are cases of labor organizations controlled by violent gangsters. However, the lynchpin of a captive labor organization is not the character of the persons in control, it is the deprivation of the union members' rights under the LMRDA. *United States v. Local 560, I.B.T.*, 581 F. Supp. 279 (D.N.J. 1984) *aff'd*, 780 F.2d 267 (3d Cir. 1985). The Teamsters were not free to make a business decision, therefore, D'Ambly's representation or lack thereof, could not flow from the Teamsters' political or tactical choices. CWS' knowledge of the Exoo Enterprise's extortion precludes their ability to invoke the immunity protections of *§ 301(b)*, because an extorted business decision is not a union act.

### 3. But for the Exoo Enterprise's Extortion, D'Ambly Could not have been Terminated because he did not commit any Terminable Acts

D'Ambly was not terminated for his misconduct or any violation of the CBA. D'Ambly's termination was the result of the Exoo Enterprise's acts of workplace violence that extorted his termination. According to the *Occupation Safety and Health Act of 1970* ("OSHA"), *29 U.S.C. § 651*, workplace violence is "any act or threat of physical violence, harassment, intimidation, or other threatening disruptive behavior that occurs at the worksite."[1] The *Center*

---

[1] United States Department of Labor, Occupational Safety and Health Administration, Safety and Health Topics, Workplace Violence, *available* at https://www.osha.gov/workplace-violence, (last accessed May 5, 2021).

*for Disease Control ("CDC"), National Institute of Occupational Safety and Health* ("NIOSH"), defines workplace violence as "violent acts (including physical assaults and threats of assaults) directed toward persons at work or on duty."[2]  D'Ambly and his employer were threatened, harassed, and intimidated at their workplace, which is not a terminable offense and should have triggered the Daily News' duty to ensure a safe workplace.

As far as D'Ambly's political speech is concerned, the Teamsters could not have punished D'Ambly for political speech, because union members, such as D'Ambly, enjoy broad free speech protections under the *Bill of Rights of Members of Labor Organizations*, *29 U.S.C. § 411*, *Section 101*, of the *Labor Management Reporting and Disclosure Act* ("LMRDA").  The "Third Circuit has articulated a general rule that under the LMRDA, the [union] members' right of free speech is given an expansive protection."  *Kovach v. Turner Dairy Farms, Inc.,* 929 F. Supp. 2d 477, 491 (W.D. Pa. 2013) (quoting *Mallick v. Int'l Bhd. of Elec. Workers*, 644 F.2d 228, 235 (3d Cir. 1981)).  As stated in subsection 411(a)(2) "every member has the right to express any views, arguments, or opinions."  *Kovach*, 929 F. Supp. 2d at 490.   The compelling need to avoid the "chilling effect upon the exercise of the First Amendment" is "just as compelling in the context of the Landrum-Griffin Act [LMRDA 29 U.S.C. § 411]."  *Mallick v. Int'l Bhd. of Elec. Workers*, 644 F.2d 228, 236 (3d Cir. 1981)).  In some cases, "even a loosely-worded threat to a fellow union member may not at times be sufficient to justify punishment."  *Semancik v. United Mine Workers*, 466 F.2d 144, 153 (3d Cir. 1972).

The Teamsters' inability to punish D'Ambly for his political speech is further compounded by the Daily News' confirmation in D'Ambly's "Last and Final Warning" ("LFW")

---

[2] United States Department of Labor, Occupational Safety and Health Administration, OSHA Instruction, Directive No. CPL-02-01-058, Enforcement Procedures and Scheduling for Occupational Exposure to Workplace Violence, Effective Date: January 10, 2017, *available* at
https://www.osha.gov/sites/default/files/enforcement/directives/CPL_02-01-058.pdf. (last accessed Apr. 30, 2021)

letter dated January 11, 2019, that D'Ambly's political activities had not "spilled over into the workplace" and had not "occurred at work and/or [no] derogatory comments were made about any co-workers," thus, the Daily News had no reason to fire him.  The cause of D'Ambly's termination was the Exoo Enterprise's extortionate patterns of racketeering activities, which the TOE confirmed when the Daily News stated "you are being targeted by this group."

CWS chose to represent D'Ambly, an alleged white supremacist, who expected to have his employment and union membership reinstated, on a union that had publicly stated its opposition to having white supremacist members.  CWS' deep conflict required them to advise D'Ambly to seek outside counsel, because they knew the Teamsters had made several public statements against white supremacy, including blaming white supremacy for economic inequality,[3] and "White supremacy and low wages go hand-in-hand,"[4] and "Unions: We Must lead the Opposition to White Supremacy,"[5] and "are not white supremacists."[6]

    **4. There are No Grounds for Sanctions Because Plaintiff has a Good-Faith Belief That the Facts Support his Complaint**

Rule 11 identifies three grounds for sanctions: (1) either affirmative claims or denials lack evidentiary support Fed. R. Civ. P. 11(b)(3)-(4); (2) legal arguments must either be warranted under existing law or present a good-faith argument to reverse or extend the law Fed. R. Civ. P. 11(b)(2); and (3) the paper must not be filed for an improper purpose.  In order to

---

[3] Twitter.com, @Teamsters, "RT @jwjnational We can't win against economic inequality w/o addressing racism & white supremacy #BlackWorkMatters bit.ly/2c941AS, Sep. 1, 2016, https://twitter.com/Teamsters/status/771383474825592832?s=20 (last visited Apr. 30, 2021).
[4] Twitter.com, @Teamsters, "RT @jwjnational White supremacy and low wages go hand-in-hand.  Bit.ly/2xsVTSa #fightfor15, Aug. 25, 2017, https://twitter.com/Teamsters/status/901103346332966912?s=20s=20 (last visited Apr. 30, 2021).
[5] Twitter.com, @Teamsters, "Unions: We Must Lead the Opposition to White Supremacy – laborpress.org/political-action/unions-we-must-lead-the-opposition-to-white-supremcy/24402" #Teamsters #1u #charlottesville, Aug 18, 2017, https://twitter.com/Teamsters/status/898552109049692161?s=20 (last accessed May 2, 2021).
[6] Twitter.com, @Teamsters, "This article rightly puts down white supremacists, and we won't apologize for that.  Our members are not white supremacists."  Nov. 10, 2016, https://twitter.com/Teamsters/status/796735172028809217?s=20  (last visited Apr. 30, 2021)

satisfy its obligations under Rule 11, a party must conduct a reasonable inquiry into the facts alleged in its pleadings.  *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015).  Reasonableness is an "objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact.  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991).

## II.     CONCLUSION

The Exoo Enterprise through harassment, intimidation, and threatened violence that included death threats and threats of bloodshed, extorted D'Ambly's termination from the Daily News, which the Daily News cited as the reason for his termination.  The Exoo Enterprise also directed its violent patterns of racketeering activities at the Teamsters in order to gain control of the Teamsters' right to make a business decision free from outside pressure wrongfully imposed to extort D'Ambly's termination.  CWS knew of the Teamsters' inability to make a business decision free from outside pressure wrongfully imposed which violated his political rights, but chose to represent D'Ambly without addressing the Teamsters' compromised position.  CWS' failure to acknowledge that the Teamsters were a captive labor organization does not implicate the safe harbor of *§ 301(b)*.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

                              Respectfully Submitted,

Dated: May 6, 2021     _____
                              Patrick Trainor, Esq.
                              *Attorney for Plaintiff Daniel D'Ambly.*