Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI, | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** <br><br> CIVIL ACTION NO.:  2:20-cv-12880 |
| Plaintiff, | |
| vs. | |
| CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, | |
| Defendants. | |

---

**PLAINTIFFS BRIEF IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT CHRISTIAN EXOO a/k/a @ANTIFASHGORDON'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6) AND 12(b)(2)**

---

**MOTION DAY: JULY 6, 2021**

## <u>TABLE OF CONTENTS</u>

I.     Table of Authorities ................................................................. ii

II.    Introduction........................................................................ 2

III.   Standard of Review............................................................ 4

     1.  Rule 12(b)(6) Standard ................................................ 4

     2.  Rule 12(b)(2)................................................................ 5

IV.   Legal Argument ................................................................. 7

     1.  Exoo Admitted in Multiple Published Profiles That He Directs An
         Enterprise Engaged in Patterns Of Racketeering Activities ............. 7

     2.  Exoo Enterprise Associates Admit That The Enterprise Exists,
         Admit That The Enterprise Derives Financial Compensation From
         Its Patterns Of Racketeering Activities And Exoo Rewards
         Associates With Cash Compensation, Employment Opportunities
         And Media Opportunities Through His Friends In The Media ........ 10-11

     3.  Harassment, Threats, Intimidation, And Extortion Are Not
         Protected Speech Under The First Amendment................................ 12

     4.  Exoo Tortiously Interfered With Plaintiffs Prospective Economic
         Advantage ........................................................................ 16

     5.  An Association-in-Fact RICO Enterprise Exists .............................. 18

     6.  The Enterprise Obtained D'Ambly's Intangible Property Rights
         Under the LMRDA .............................................................. 21

V.     Conclusion ...................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*American Society of Mechanical Engineers v. Hydrolevel Corp.,*
    456 U.S. 556, 570 (1982)............................................................................   24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................   4

*Banks v. Wolk,*
    918 F.2d 418 (3d Cir., 1990)..............................................................   19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................   4, 5

*Boyle v. United States,*
    556 U.S. 938, 943-44 (2009) .............................................................   18

*Buckley v. Valeo,*
    424 U.S. 1, 14 (1976)...........................................................................   13

*Calder v. Jones,*
    465 U.S. 783, 789-790 (1984) ..........................................................   6

*Chaplisnky v. N.H.,*
    315 U.S. 568, 570-71 (1942) ............................................................   15

*Colorado Riv. Water Conserv. Dist. v. United States*
    424 U.S. 800, 817 (1976).....................................................................   5

*Dusing v. Nuzzo,*
    177 Misc. 35 (Sup. Ct. Ulster County) (*aff'd* 263 A.D. 59) (1941)...............   21

*Erie Railroad v. Tompkins,*
    304 U.S. 64, 78 (1938)..........................................................................   24

*Eu v. San Francisco Democratic Cent. Comm.,*
    489 U.S. 214, 223 (1989)......................................................................   13

*Finnegan v. Leu*
    456 U.S. 431, 435-36 (1982) ............................................................   21

*Giboney v. Empire Storage & Ice Co.,*
    336 U.S. 490 (1949)..............................................................................   15, 16

*Gulf Oil Corp. v. Gilbert*
    330 U.S. 501, 508 (1947)................................................................. 5

*Harris v. Perl,*
    41 N.J. 455 (1964) ....................................................................... 17

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989)..................................................................... 19

*IMO Indus. v. Kiekert AG,*
    155 F.3d 254 (3d. Cir. 1998)......................................................... 6

*In re Asbestos Prods. Liab. Litig (No. VI)*
    822 F.3d 125, 133-34 (3d Cir. 2016) ......................................... 4, 5

*Int'l Ass'n. of Machinists v. Jackson,*
    No. 09-150, 2010 U.S. Dist. LEXIS 15885, at *21-22 (E.D. Pa. Feb 19, 2010)    20

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310, 316 (1945).............................................................. 6

*Laurel Gardens, LLC, v. McKenna,*
    948 F.3d 105, 122 (3d Cir. 2020).............................................. 6, 7

*Lightning Lube v. Witco Corp.,*
    4 F.3d 1153, 1167 (3d Cir. 1993)................................................ 17

*Louis Kamm, Inc. v. Flink,*
    113 N.J.L. 582 (E & A 1934)........................................................ 17

*Meyer v. Grant,*
    486 U.S. 414, 422 (1988)............................................................ 13

*Miller Yacht Sales, Inc. v. Smith,*
    384 F.3d 93, 97 (3d. Cir. 2004)................................................. 5, 6

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982)..................................................................... 14

*O'Connor v. Sandy Lane Hotel Co.,*
    496 F.3d 312, 317 (3d. Cir. 2007)................................................ 6

*Petro-tech Inc. v. Western Co. of North America,*
    824 F.2d 1349, 1356 (3d Cir. 1987).......................................... 19, 24

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008)............................................................ 5

*Pinker v. Roche Holdings, Ltd.,*
    292 F.3d 361 (3d Cir. 2002)............................................................ 7

*Pittsburgh Press Co. v Pittsburgh Comm'n on Human Relations,*
    413 U.S. 376, 388 (1973)............................................................... 15

*Planned Parenthood of the Columbia/Williamette, Inc., v. Am. Coal. Of Life, Activists,*
    290 F.3d 1058 (9th Cir. 2002)(Reinhardt, J., dissenting) ............................ 14

*Printing Mart-Morristown v. Sharp Electronics Corp.,*
    116 N.J. 739, 751 (1989) ............................................................... 17

*Republican Party of Pa. v. Cortes,*
    218 F. Supp. 3d 396 (2016) ............................................................ 13

*Schiedler v. NOW, Inc.,*
    537 U.S. 393, 405 (2003)............................................................... 20

*State v. Ball,*
    268 N.J. Super. 72, 105-107 (App. Div. 1993)...................................... 20

*Swistock v. Jones,*
    884 F.2d 755, 758 (3d Cir. 1989)..................................................... 5, 18

*United States v. Adams,*
    759 F.2d 1099, 1166 (3d Cir. 1985).................................................. 19

*United States v. Boffa,*
    688 F.2d 919, 930-931 (1982) ........................................................ 22

*United States v. Elonis,*
    841 F.3d 589 (3d Cir. 2016)........................................................... 15

*United States v. Fullmer,*
    584 F.3d 132 (3d Cir. 2009)........................................................... 14

*United States v. Gregg,*
    226 F.3d 253, 267-68 (3d Cir. 2000) ................................................ 14, 16

*United States v. Kosma,*

951 F.2d 549, 555 (3d Cir. 1991)..................................................................... 15

*United States v. Lampley,*
573 F.2d 783, 786 (3d Cir. 1978)...................................................................... 16

*United States v. Local 560 of the Int'l Bhd. of Teamsters,*
550 F. Supp. 511, 516-518 (D.N.J. 1982)........................................................ 21

*United States v. Local 560 Int'l Bhd. of Teamsters,*
780 F.2d 267 (3d Cir. 1985)........................................................................ *passim*

*United States v. Matusiewicz,*
84 F. Supp. 3d 363, 369 (D. Del. 2015)........................................................... 16

*United States v. Sander,*
615 F.2d 215, 218 (5th Cir. 1980) ................................................................... 22

*United States v. Santoni,*
585 F.2d 667(4th Cir. 1978) ............................................................................ 22

*United States v. Stock,*
728 F.3d 287, (3d Cir. 2013)............................................................................ 14

*United States v. Tropiano,*
418 F.2d 1069 (1969)................................................................................. 20, 21

*United States v. Turkette,*
452 U.S 576, 583 (1981)............................................................................ 18, 19

**Statutes**

18 U.S.C. § 1951 ("Hobbs Act") ................................................................. 20, 23

18 U.S.C. § 1952.............................................................................................. 23

18 U.S.C. § 1965(b) (2018.................................................................................. 7

18 U.S.C. 2261A(2)(A)................................................................................ 16, 23

Labor Management Recording and Disclosure Act,
29 U.S.C. §§ 411-531 ................................................................................ *passim*

Railway Labor Act, 45 U.S.C. §§ 151-165....................................................... 20

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ............................................................. 4

Federal Rule of Civil Procedure 12(b)(2) ................................................... 2, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 2, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 5

Federal Rule of Civil Procedure 12(d).................................................................... 5

Federal Rule of Civil Procedure 56 ........................................................................ 5

Federal Rule of Civil Procedure 56(d).................................................................... 5

**Other Sources**

Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*,
Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-
254f62be2a95 (last accessed May 11, 2021) ......................................................... 8, 9, 11

Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14,
2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-
militia-trump-insurrection-1121933/ (last accessed May 11, 2021)........................ 9-11

*Antifash Gordon's Abuse Abusers not welcome here: A statement of separation
from AntiFash Gordon*, (Apr. 9, 2021), https://antifashgordon.noblogs.org/ (last
accessed May 12, 2021).......................................................................................... *passim*

*Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of
Abuse* (Apr. 9, 2021), https://torchantifa.org/concerning-antifash-gordon-a-torch-
statement-in-solidarity-with-victims-of-abuse/ (last accessed May 12, 2021) .......... *passim*

Robert Klemko, *A small group of sleuths had been identifying right-wing
extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10,
2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-
identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last
accessed May 11, 2021) .......................................................................................... 10, 11

Plaintiffs Daniel D'Ambly (hereinafter "D'Ambly"), Aaron Wolkind ("Wolkind") Steve Hartley ("Hartley"); Richard Schwetz ("Schwetz"); Jobel Barbosa ("Barbosa"); Matthew Reidinger ("Reidinger"); John Hugo ("Hugo"); Sean-Michael David Scott ("Scott"); Thomas Louden ("Louden"); Zachary Rehl ("ZRehl"); Amanda Rehl ("ARehl"); K.R., A Minor, By And Through Her Father Zachary Rehl And Her Mother Amanda Rehl, Mark Anthony Tucci ("Tucci") (plaintiffs collectively referred to as "Plaintiffs"), submits this Brief in opposition to Defendant Christian Exoo a/k/a @AntiFashGordon ("Exoo") Motion to Dismiss the First Amended Complaint for an alleged failure to state a claim under Fed.R.Civ.P. 12(b)(6) and for lack of personal jurisdiction over all Plaintiffs except D'Ambly under Fed.R.Civ.P. 12(b)(2).  For the reasons that follow, Exoo's motion should be denied.

## **INTRODUCTION**

As a matter of first business, in the strongest sense possible, Plaintiffs and counsel for Plaintiffs, fiercely oppose Defendant Exoo's characterization of Plaintiffs as white supremacists, fascists, and Nazi's (collectively "Nazis").  Moreover, if Plaintiffs are as Exoo alleges, so what. There was no law passed or decree handed down that commissioned Defendant Exoo and associates to violently attack and extort American citizens for thought crimes.  As, retired FBI special agent and Brennan Center for Justice at New York University fellow Michael German, stated to Rolling Stone magazine "Nobody has deputized" them, "so whose authority are they working under and who is holding them accountable?[1]

Second, Exoo's Motion to Dismiss is fraught with lies, misstatements, and omissions. Plaintiffs have never estimated the number of enterprise associates, but throughout his Motion to

---

[1] Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14, 2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed May 11, 2021).

Dismiss ("Def. MTD") Exoo falsely stated that Plaintiffs alleged there are more than 100,000 enterprise associates ("Exoo Enterprise" or "enterprise").  Defendant's Motion to Dismiss ("Def. MTD.") 2, 4, 15, 17, 33, 34.  Exoo also claimed that Plaintiffs Schwetz, Hartley, Tucci, Reidinger, Barbosa, Scott, Hugo, and Louden do not have actionable claims, because they were not terminated.  Def. MTD. 11, 12, 13, 14, 15, 17.  This is another false claim, because as stated in the Complaint, "all Plaintiffs were terminated due to the enterprise's patterns of racketeering activities."  First Amended Complaint ("Complaint" or "FAC") at ¶ 37.

Exoo spent an exhaustive amount of time in his opinion explaining that Plaintiffs are bad white people, and also showcased his clairvoyance, because Exoo referenced events that are alleged to have occurred on January 6, 2021, as justification for extortionate patterns of racketeering activities that he directed as far back as 2016, Plaintiffs are not confident that Exoo is clairvoyant.

Exoo's argument is that he simply posted truthful publicly available information, which makes his doxing protected speech under the First Amendment.  Exoo directs an enterprise engaged in patterns of racketeering activities that commence once he publishes the dox.  A dox is just the beginning of the harm caused to doxing targets, it is not the end as Exoo's argument implies.  Plaintiffs will put forth evidence that proves Exoo used Plaintiffs dox to direct his associates to extort Plaintiffs' terminations.

Plaintiffs will rely on Exoo's own public statements and statements of his associates to prove the existence of an association-in-fact enterprise.

Defendant Exoo uses his Twitter account @AntiFashGordon as a twenty first century social club from where he meets with associates to trade illicitly obtained data concerning a target's identity, and from where they receive their orders.  Exoo conducts his activities visibly

3

in public doxes, but also in expansive behind the scenes communications hidden from public view, including private direct messages, private emails, text messages, and messaging apps or encrypted forms of communication.  Exoo included several Exhibits with his MTD, but he did not provide complete communications or the direct messages ("DM"), emails, texts, etc., that accompany the public record.

As stated above, Exoo implies he is clairvoyant, because he introduces irrelevant events that occurred on January 6, 2021, to justify his pre-January 2021 misconduct.  Exoo's reference to the events of January 6, 2021, which have no bearing on this action, is salacious and an attempt to besmirch an innocent man, and prejudice the Court.  Plaintiffs argue that Exoo's reference to January 6, 2021, is a "yeah, but Johnny did…" admission of his misconduct, and ask the Court to consider it as such.

I.      **LEGAL STANDARDS FOR RULE 12(b)(6) AND 12(b)(2)**

1.      **Rule 12(b)(6) Standard**

Under *Rule 8(a)(2)*, the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The "courts are not required to accept merely conclusory factual allegations or legal assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).  However, the court "still must accept as true all plausible allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." *Twombly*, 550 U.S. at 555.   A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency.  *In re Asbestos Prods. Liab. Litig (No. VI)*, 822 F.3d 125, 133-34 (3d

Cir. 2016).  A court's reliance on facts alleged outside the complaint may "constitute a procedural error under Rule 12(b)(6)."  *Id.*

The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  RICO "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery."  *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

Defendant's motion to dismiss includes frivolous materials that are outside the complaint, therefore, under *Rule 56,* the Court in its discretion may convert Defendant's motion to dismiss to a Motion for Summary Judgment.  Federal Rule of Civil Procedure 12(d) provides that "if on a motion *Rule 12(b)(6)* or *12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule 56*, and the parties be given reasonable notice."  *In re Asbestos Prods. Liab. Litig (No. VI), 822 F.3d at 134*. Summary judgment in this matter is premature, however, in the event the Court converts Defendant's motion to a motion for summary judgment, Plaintiffs make a request for discovery under *Rule 56(d)*, because through discovery Plaintiffs will show a genuine issue of material fact.

2.  **The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction over Defendant Exoo**

The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  A plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d. Cir. 2004).  Federal courts have a "virtually unflagging obligation…to exercise the

jurisdiction given to them" and "only the clearest of justifications will warrant dismissal." *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976).  In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 122 (3d Cir. 2020).

New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.  *Miller Yacht,* 384 F.3d. at 96.  Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts with the forum can create specific jurisdiction in two ways.  *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998).  First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007).  Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state."  *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident."  *O'Connor,* 496 F.3d at 317-318 (jurisdiction was proper over defendant that mailed brochures to plaintiff in Pennsylvania after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa).  Here, the District Court

has statutory personal jurisdiction under *18 U.S.C. § 1965(b)* (2018), which provides for

"nationwide service of process and jurisdiction over other parties not residing in the district, who

may be additional defendants of any kind, including co-defendants, third-party defendants, or

additional counter-claim defendants." *Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 118 (3d

Cir. 2020) (internal quotations omitted).  When a federal statute provides for nationwide service

of process, it becomes the "statutory basis for personal jurisdiction." *Id.* at 117.  The federal

RICO statute is one such federal statute that "includes a specific provision." *Id*. at 113.

Jurisdiction is proper in any "district court where personal jurisdiction based on minimum

contacts is established as to at least one defendant." *Id.* at 118.  In instances "where Congress

has spoken by authorizing nationwide service of process... jurisdiction of a federal court need

not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker*

*v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).

## II.    LEGAL ARGUMENT

### 1.   Exoo Admitted in Multiple Published Profiles that he Directs an Enterprise Engaged in Patterns of Racketeering Activities

Exoo belittles Plaintiffs claims that he directs an enterprise engaged in patterns of

racketeering activities as a "tin foil hat conspiracy," but Exoo's own statements and statements

of his associates admit the enterprise's existence.  Def. MTD at 2.  Defendant Exoo has been

interviewed by various media outlets about the enterprise's doxing activities.  In some he was

interviewed under his real name and in others he was interviewed under his Twitter username

@AntiFashGordon (hereinafter sometimes "AFG").  Exoo admitted conspiring with associates

and explains the enterprise intends to cause personal, financial, and professional harm.  In all

profiles, Exoo acknowledged the enterprise's existence, acknowledged he obtains non-public

data, and admitted the enterprise owns assets and has an operational budget.  Moreover,

enterprise associates describe the enterprise's hierarchy with Exoo on top and financially dependent associates below.

For instance, in a profile published on September 9, 2019, on *Medium.com* ("Medium"), titled *"Anti-Fascists Are Waging a Cyber War – And They're Winning,"*[2]  *See* Exhibit A ("Ex. A. Pl. Opp.").  In the *Medium* profile, he was interviewed on a college campus following a doxing seminar he teaches as @AntiFashGordon.  In the profile, Exoo admitted "I have a whole affinity group of people sharing intel with me" (information necessary to dox their targets).  Ex. A. Pl. Opp. at EXA015.

He then went on to explain that once a target has been identified the enterprise moves into the "operationalizing" phase, which begins by creating dossiers of "personal photos and screengrabs of [the target's alleged] incendiary posts" that are stored in the "vast stockpile of [other] dossiers" in Exoo's laptop.  Ex. A. Pl. Opp. at EXA012.  The dossiers are "saved until a given target did something that warranted the publicity."  *Id.*  The 'something' that warrants publicity is anybody's guess.

In the next step in "operationalizing" the target's "information is then publicized [doxed] in hopes that social media sites, financial services companies, and public venues will de-platform [*e.g.,* expel, fire, deny service, terminate contracts, etc.] the target, and that employers, schools, clients, and others will shun them."  Ex. A. Pl. Opp. at EXA002.  As Exoo explained, the intention with doxing Nazis is "how do we make their lives worse because of fascism?"  Ex. A. Pl. Opp. at EXA002.

As leader of the enterprise Exoo publishes the dox to his massive Twitter following.  If the dox does not cause an immediate termination the enterprise intensifies their harassment,

---

[2] Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed May 11, 2021).

intimidation, and extortion until as Exoo put it [they] "find some point of vulnerability: employer, landlord, school, church, anywhere where they [the target] would lose some kind of social status or take a hit.  Often, a single phone call to an employer…was enough to get someone fired; other times, an online publicity campaign is launched to apply community pressure."  Ex. A. Pl. Opp. at EXA012.  An example of the enterprise's "community pressure" is the threat an enterprise associate called in to the New York Daily News that "any violence of blood spilled is also on your hands," which extorted D'Ambly's termination from the Daily News.  Complaint at ¶ 52; *See also* Tribune Company LLC/New York Daily News Answer at ¶ 52 (audio recording available).

Moreover, in the *Medium* profile, Exoo admitted he uses a secret "antifash phone for communicating with others in the movement" and that "[W]e fight fascism on a budget.  For our entire crew – and this includes database subscriptions, VPN's, burner phones, and encrypted storage – it comes to about $50 a month."  Ex. A. Pl. Opp. at EXA010.

In another profile published in *Rolling Stone* magazine (Rollingstone.com) on February 14, 2021, titled *"Meet the Undercover Anti-Fascists,"*[3] Exoo is described as the "de-facto leader" and someone who "connects-up-and-comers with others in the movement" and who "runs workshops several times a month on how to use open-source intelligence (OSINT)…to run investigations and identify individuals [targets]."  *See* Ex. B. Pl. Opp. at EXB003.  OSINT is defined as "social media, newspaper databases, forums, property records, tax records, voting records, DMV records, and *leaked or breached data sets*." (emphasis added).  *Id.*  Doxing is accurately defined as the inherently violent act of "posting someone's home address, phone

---

[3] Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14, 2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed May 11, 2021).

number, or other personal information in an effort to harass, intimidate, and ***endanger***" them. Ex. B. Pl. Opp. at EXB006.  (emphasis added).

Extracting data from "leaked or breached data sets" as Exoo admitted he does, illustrates the falsity of Exoo's MTD, wherein he stated eleven (11) times that he only doxes "publicly available" information.  Def. MTD. 2, 7, 10, 11, 12, 13, 16, 21.  Exoo admitted to having financial motivations for doxing others, because he was paid a stipend and funded with seed money from an anonymous "progressive not-for-profit."  Ex. B. Pl. Opp. at EXB002.

On January 10, 2021,[4] the *Washington Post* profiled Exoo alongside a few of his often-credited high-profile associates, Twitter usernames @socialistdogmom, @emilygorcenski, and @LCRWnews, who collectively are described as a "nationwide network of left-wing activists, who seek out and publish the identities of those they believe to be violent fascists."  *See* Ex. C. Pl. Opp. at EXC001.  They then endanger the people that they believe to fascists, because as Exoo says "these people need consequences."  Ex. C. Pl. Opp. at EXC006.

The profiles are an attempt to inject legitimacy into the enterprise's patterns of racketeering activities, but there is no legitimacy to endangering people's lives, which explains why the not-for-profit demanded it remain anonymous in the Rolling Stone profile.

> **2. Exoo Enterprise Associates Admit that the Enterprise Exists, admit that the Enterprise Derives Financial Compensation From its Patterns of Racketeering Activities and Exoo Rewards Associates with Cash Compensation, Employment Opportunities and Media Opportunities Through His Friends in The Media**

In addition to Exoo's admissions in the *Medium, Rolling Stone, and Washington Post* profiles that he has "a whole affinity group of people sharing intel with me," enterprise

---

[4] Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10, 2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed May 11, 2021).

associates have confirmed the enterprise's existence.  On or about April 9, 2021, enterprise associates published "*Antifash Gordon's Abuse Abusers not welcome here: A statement of separation from AntiFash Gordon*"[5] ("AFG Abuse").  The separation announcement was signed by thirty-three (33) of Exoo's former associates and it detailed the enterprise's inner workings. *See* Ex. D. Pl. Opp.  One of the signatories of AFG Abuse is @WaNaziWatch, who, along with Puget Sound Anarchists, conspired with Exoo to dox Plaintiff Scott on September 16, 2019 as evidenced by the date stamps in defendant's exhibits.  *See* Defendant's Exhibits B-III, F-1, and F-11.  Of note, the conspiracy is found in defendants in the private DM's, emails, and text messages, but defendant's exhibits do not include these documents.

The AFG Abuse statement is full of inane far left pablum, but it confirms the enterprise's existence and that it is led by Exoo, "a cis white man with financial means" who has "leveraged his online clout and reputation as a legitimate antifascist for his own professional gain."  Ex. D. Pl. Opp. at EXD002-EXE006.  According to former enterprise associates, the Exoo Enterprise has access to several streams of income, and Exoo "uses the network of clout he has cultivated to create rewards for his inner circle" of doxers.  Ex. E. Pl. Opp. at EXD002.  The rewards Exoo provides associates are "money, connections to jobs, and opportunities for media appearances with his friends in the press."  *Id.* at EXD007-008

Exoo's wealth and access to multiple streams of income has allowed him to "establish control and create hierarchy" with him on top, because he "encouraged his proteges or collaborators to become financially dependent on him," by "resource bombs[ing]" associates with "money, connections to jobs, and opportunities for media appearances with his friends in the press."  *Id*. at EXD007.

---

[5] *Antifash Gordon's Abuse Abusers not welcome here: A statement of separation from AntiFash Gordon*, (Apr. 9, 2021), https://antifashgordon.noblogs.org/ (last accessed May 12, 2021).

Additionally, Enterprise associates separated from Exoo because associates are fearful of criticizing Exoo's monetization of doxing, because he weaponizes his Twitter account to silence critics of his financial reward system, and "with almost fifty-seven thousand followers, his Twitter account is significantly larger than most of the antifascist accounts he interacts with, making it difficult for accounts with only a few hundred or even a few thousand followers to speak out about his behavior," and connections to his activities present "legal entanglements." Ex. E. Pl. Opp. at EXD002.

On or about the same date as the AFG Abuse statement was released, another batch former enterprise associates, who call themselves the "Torch Antifa Network" issued a statement titled "*Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of Abuse*"[6] ("Torch Net") in support of the enterprise associates, who signed the AFG Abuse statement.  *See* Ex. E. Pl. Opp.  Torch Net confirmed Exoo as the leader Exoo's propensity for financial abuse as he is the "arbiter and distributor of research information, media opportunities, and financial resources."  Id. at EXE004.  Further, Torch Net was angered that although Exoo "acknowledged in interviews" the doxes "published on the Antifash Gordon account is generated by an entire team" he [Exoo] never edited the [AFG Twitter] account to show that the doxes are the product of "collective labor;" and not just the account of a single "white cis man."  Ex. E. Pl. Opp. at EXE003.  Torch Net confirmed they will no longer "collaborate with AFG."  Id. at EXE005.

### 3.  Harassment, Threats, Intimidation, and Extortion Are Not Protected Speech Under the First Amendment

Exoo incorrectly claims Plaintiffs do not have an actionable claim, because doxing and conspiring with others is political speech and not a true threat.  Political speech is defined, it has

---

[6] *Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of Abuse* (Apr. 9, 2021), https://torchantifa.org/concerning-antifash-gordon-a-torch-statement-in-solidarity-with-victims-of-abuse/ (last accessed May 12, 2021).

a purpose, and that purpose is not to get people fired, de-homed, or expelled from school. Political speech is "interactive communication concerning political change." *Meyer v. Grant*, 486 U.S. 414, 422 (1988). It "includes, among other things, speech uttered during a campaign for political office," *Eu v. San Francisco Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989), and "discussion of public issues and debate on the qualifications of candidates," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 414-15 (2016). Political speech includes "advocacy of political reform, handing out leaflets in the advocacy of a politically controversial viewpoint, persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and speech designed to influence referendum issues." *Id.* at 415. Exoo does not engage in political speech.

Exoo analogizes his direction of an extortionate enterprise with no legitimate purpose to overtly political issues, abortion, and civil rights, however, his cited cases prove his speech is not political speech. Exoo claims threats and extortion is political speech, albeit "political speech, ugly or frightening…" *Planned Parenthood of the Columbia/Williamette, Inc., v. Am. Coal. Of Life, Activists*, 290 F.3d 1058, 1089 (9th Cir. 2002)[(Reinhardt, J., dissenting)], Def. MTD at 18. However, Exoo deceptively omitted from the citation that the quote was from the dissent, and the majority opinion found threats were not protected. In *Planned Parenthood of Columbia/Williamette*, the Ninth Circuit rejected abortion protesters' challenge to an injunction and fines they received for violating the Freedom to Access [abortion] Clinics Act (FACE). The court found that the abortion protesters "Wanted" and "unWanted" signs that featured abortion providers photos and names, and a "Nuremberg Files" website which showed abortion providers, who the group claimed may someday be brought up on charges for crimes against humanity, constituted a true threat. To reach their conclusion that the signs and website "made statements

13

to intimidate the physicians" and constituted a true threat, the majority looked at the totality of the circumstances, which included several murders of abortion providers. *Planned Parenthood of Columbia/Williamette,* 290 F.3d at 1063.

Exoo cited *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 929 (1982). In *Claiborne Hardware*, the NAACP was sued, because it orchestrated boycotts of white-owned businesses. To enforce the boycotts, the NAACP kept blacklists of blacks who patronized white-owned stores and read their names at meetings, and there were instances of violence. The Supreme Court held that "Charles Evers'" (Exoo misidentifies speaker as "Medger Evers") statement "we're gonna break your damn neck" was protected speech, but he made the statement on the political stump and did not direct it at any one individual. In *Claiborne Hardware*, which is discussed at some length in *Planned Parenthood of Columbia/Williamette*, the Court found boycotts and collective action were protected speech and expressions were a form of petitioning the government that intended to "vindicate rights of equality and freedom." *Claiborne Hardware Co.*, 458 U.S. at 914.

It is a matter of well settled law that whether a true threat exists is determined by the "context and totality of a communication to determine whether it constitutes a true threat outside the protection of the First Amendment." *United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009). The determination of whether a threat constitutes a "true threat" is ultimately a "matter to be decided by the trier of fact." *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000). Whether a jury could conclude something was a threat is "based on a consideration of the alleged statement as a whole, and in the context in which it was made." *United States v. Stock*, 728 F.3d 287, (3d Cir. 2013). Whether a "speaker's language constitutes a threat is a matter to be decided by the trier of fact." *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991). Furthermore,

threats made over Twitter do not negate the severity of the threats, because "in the age of social media…the recipient of the communication may be a defendant's Facebook followers or even the general public." *United States v. Elonis*, 841 F.3d 589, 597 at n.7 (3d Cir. 2016)

"Free speech is not absolute at all times and under all circumstances." *Chaplisnky v. N.H.*, 315 U.S. 568, 570-71 (1942). There are "certain well-defined and narrowly limited classes of speech," that have never been considered protected speech. *Id.* Classes of speech such as "lewd and obscene speech, the profane, the libelous, and the insulting or fighting words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* In *Chaplinsky*, plaintiff was ticketed for calling a man "a damned fascist" on a public street. *Chaplinsky*, 315 U.S. at 569. The fine was upheld, because calling a man "a damned fascist" was fighting words, because it constituted a breach of the peace, which is not protected. *Id.* at 573. Fighting words, be they newly used or classical are not protected, "if they are likely to cause violence and other disorderly words, including profanity, obscenity and threats." *Id.* The enterprise's activities cause disorder and threaten, as the Rolling Stone profile acknowledged doxing is an "effort to harass, intimidate, and endanger." Ex. B. Pl. Opp. at EXB006.

The law has long understood that "it has rarely been suggested that the constitutional freedom for speech and press extends its immunity to speech and writing used as an integral part of conduct in violation of a valid criminal statute. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). To make "offers to engage in illegal transactions are categorically excluded from First Amendment protection." *Pittsburgh Press Co. v Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388 (1973). There is no protection for "speech as a means to cause another party to commit an offense" or "offers to engage in illegal transactions, offers to

15

provide or requests to obtain unlawful material, and speech in furtherance of a conspiracy."
*United States v. Matusiewicz*, 84 F. Supp. 3d 363, 369 (D. Del. 2015).

The Third Circuit has held "activities that injure, threaten, or obstruct are not protected by
the First Amendment, whether or not such conduct communicates a message." *Gregg*, 226 F.3d
at 267-268.  In *Giboney*, the Supreme Court found that union picketers and their signs, although
normally protected speech, were not protected by the First Amendment, because they were a
means to cause another party to commit an offense that violated state trade restraint laws.

In *Matusiewicz*, court denied defendant's motion to dismiss cyberstalking charges
brought against her under *section 2261A(2)*, because it found defendant's true objective for
reporting child abuse was to harass and intimidate, not report child abuse.  The Third Circuit has
held that telephonic or electronic means to harass, intimidate, and communicate threats is not
protected speech.  In *United States v. Lampley*, a jilted lover "launched…a telephonic assault" on
the victim "and others, unleashing a barrage of incessant and subsequently abusive telephone
calls." *United States v. Lampley*, 573 F.2d 783, 786-87 (3d Cir. 1978) (Congress has "a
compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the
hands of persons who employ the telephone not to communicate, but for other, unjustifiable
motives.")  Here, Plaintiffs harms are the result of the enterprise's dogpiling at Exoo's direction
and analogous to the "barrage of incessant" calls in *Lampley*.

### 4.  Exoo Tortiously Interfered with Plaintiffs Prospective Economic Advantage

In order to show tortious interference with prospective economic advantage, the plaintiff
must allege facts that show some protectable right – a prospective economic or contractual
relationship, plaintiff was in pursuit of business, and the interference was done intentionally and
with malice, as in the harm was inflicted intentionally and without justification or excuse, and

interference must allege facts to conclude interference caused loss of prospective gain and no loss without interference. *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989).  The right to "to pursue one's business, calling or occupation free from undue influence or molestation" is a property right that the law protects against unjustifiable interference. *Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 586 (E & A 1934).  The law protects a [person's] interest in reasonable expectations of economic advantage. *Harris v. Perl*, 41 N.J. 455 (1964).  Liability for tortious interference is present in cases where the defendant's interference was "tortious solely because the intent, the result, or both were to disrupt a particular contractual relationship." *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993).

The malice element, requires showing the interference was intentional, is answered by the header of the @AntiFashGordon account, which says I get people "de-homed, fired" as well as Exoo's statements in interviews.  For instance, in the Washington Post interview he stated, "these people need consequences," and in the Medium he said we "find some point of vulnerability: employer…anywhere where they [the target] would lose some kind of social status or take a hit."  Here, at Exoo's command enterprise associates tortiously interfered with Plaintiffs economic advantage by conducting a "dogpiling" campaign of threatening communications that harassed and intimidated Plaintiffs' employers and extorted Plaintiffs' termination.  All Plaintiffs were pursuing lawful employment when Exoo designated them Nazis and tortiously interfered with their prospective economic advantage.

For instance, as stated in D'Ambly's Termination of Employment letter dated January 22, 2019, "you are being targeted by this group," who left the Daily News "two threatening voice-mails…on a Company voice-mail box…which caused our company to have serious concern for

the safety of our employees."[7]  First Amended Complaint ¶¶ 50-59.  Exoo extorted Tucci's

employer to make a public statement in the middle of Tucci's shift before he called off the

enterprise.  Louden's job of twenty-three years was extorted, because he went to a gun range and

a website.  The Court need look no further than the steps in Louden's invasive dox that Exoo

published at Defendant's Exhibit B-XI to determine whether a reasonable person would be

offended by Exoo's tortious intrusion.  Exoo describes a seventeen (17) step process to discover

Louden's true identity.  For absolutely no legitimate reason, other than it was a favor for one his

media contacts, Exoo targeted a complete stranger and posted photos of his home, vehicle, street

name, employer, and extorted his employment termination with the help of his associates.

### 5.  An Association-in-Fact RICO Enterprise Exists

A Racketeering Influenced and Corrupt Organization Act ("RICO") enterprise "includes

any individual, partnership, corporation, association, or other legal entity, and any union or group

of individuals associated in fact.  *Boyle v. United States*, 556 U.S. 938, 943-44 (2009).  An

"association-in-fact enterprise is a group of persons associated together for a common purpose of

engaging in a course of conduct."  *Id.* at 946.  The Exoo Enterprise is an association-in-act

enterprise, and "each person" who associates in fact may be held liable under RICO.  *United*

*States v. Turkette*, 452 U.S 576, 583 (1981).  As discussed herein, Exoo and enterprise associates

have publicly acknowledged an association-in-fact enterprise working towards a common goal.

In RICO actions "plaintiffs will be able to withstand a facial attack on the complaint and

have the opportunity to have their pattern allegations threshed out in discovery.  *Swistock v.*

*Jones*, 884 F.2d 755, 758 (3d Cir. 1989).  RICO is to "be liberally construed to effectuate its

---

[7] Plaintiff's counsel possesses audio copies of the threatening voicemails.  The Termination of Employment letter did not discuss the background investigation the Daily News hired a private investigation firm to conduct or the thousands of Tweets, emails, phone calls and other communications they had received, and it did not name the person(s) who informed Exoo on January 13, 2019 that D'Ambly was terminated.

remedial purposes." *Turkette*, 452 U.S. at 586-587.  RICO should be broadly construed and there is nothing in the act that limits its application to organized crime enterprises.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).  As discussed above, Exoo admitted conspiring with numerous associates when he admitted "I have a whole affinity group of people sharing intel with me," Ex. A. Pl. Opp. at EXA015.

The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses.  *Petro-Tech Inc. v. Western Co. of North America*, 824 F.2d 1349, 1356 (3d Cir. 1987).  A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity.  *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir., 1990).  The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses."  *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 288 n. 25 (3d Cir. 1985).  To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts."  *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985).

In their separation statements former associates described financial motivations for associates conduct and an enterprise with the hierarchical structure Defendant states is required.  The AFG Abuse and Torch Net former enterprise associates acknowledged Exoo rewards associates with "money, connections to jobs, and opportunities for media appearances with his friend in the press."  Ex. E. Pl. OPP. at EXE007.  Further, former associates acknowledged that Exoo's activities are the product of "collective labor" of an enterprise.  Ex. F. Pl. Opp. EXE003.  The Torch Net statement confirmed Exoo is the "arbiter and distributor of research information, media opportunities, and financial resources."  Id. at EXE004.

The existence of the federal RICO enterprise explained above satisfies New Jersey's RICO requirement.  New Jersey's "RICO law is even broader in scope that its federal counterpart" and its definition of an enterprise is more expansive that that contained in the federal version," and all that is required to satisfy the New Jersey RICO enterprise element is a group of people, however loosely associated, whose existence provides the common purpose of committing two or more predicate acts."  *State v. Ball*, 268 N.J. Super. 72, 105-107 (App. Div. 1993).

### 6.  The Enterprise Obtained D'Ambly's Intangible Property Rights under the LMRDA

Exoo states that his conduct does not satisfy the statutory requirements for extortion under *18 U.S.C. § 1951* ("*Hobbs Act*"), because he did not "obtain" or "seek to obtain" property from Plaintiffs.  *Schiedler v. NOW, Inc.*, 537 U.S. 393, 405 (2003).  Union membership has long been recognized as a protectable intangible property interest, because union membership constitutes "a source or element of wealth," and Exoo caused the deprivation of D'Ambly's rights as a union member.  *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 281-82, 287 (3d Cir. 1985).  In *Schiedler*, the Supreme Court held that preventing abortion providers from providing abortion services, may have deprived them of the right to work, but Defendant's did not obtain the abortion providers right to perform abortions.  Defendant also cites *Int'l Ass'n. of Machinists v. Jackson*, No. 09-150, 2010 U.S. Dist. LEXIS 15885, at *21-22 (E.D. Pa. Feb 19, 2010) (minor dispute implicating CBA and RICO claims were precluded by the Railway Labor Act, *45 U.S.C. §§ 151-165*).

*Schiedler*, did not disturb *United States v. Tropiano*, 418 F.2d 1069 (1969), in which the intangible right to solicit business was property under the Hobbs Act.  *Schiedler* also did not decide whether a defendant who obtains or seeks to obtain the exercise of a victim's intangible

property rights to profit himself or his associates has violated the Hobbs Act, which is an issue in this case.  In *Tropiano*, defendants, garbage company owners, were convicted of Hobbs Act extortion for using threats, violence, and fear to prevent competitors from bidding on their garbage collection contracts.  The Exoo Enterprise extorted the intangible property rights of a Plaintiff whose union membership is an intangible property rights, provided by the Labor Management Recording Disclosure Act ("LMRDA") *29 U.S.C. §§ 401-531.*

The LMRDA's "primary objective is ensuring that unions are democratically governed and responsive to the will of their memberships" and protects "the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean the loss of union membership and in turn loss of livelihood."  *Finnegan v. Leu*, 456 U.S. 431, 435-36 (1982).  The Third Circuit has held that LMRDA rights are intangible property within the meaning of the Hobbs Act, because union member rights are economic rights that constitute a "source or element of wealth" that secures financial benefits through collective bargaining and corrupt deprivation of these rights may cause loss of income or benefits.  *United States v. Local 560 of the Int'l Bhd. of Teamsters,* 780 F.2d 267, 281-282 (3d Cir. 1985); *United States v. Local 560 of the Int'l Bhd. of Teamsters*, 550 F. Supp. 511, 516-518 (D.N.J. 1982).

The Third Circuit has concluded that a union member's rights under the LMRDA are *"properly considered extortable property for purposes of the Hobbs Act."  Local 560 (1985)*, 780 F.2d at 282.  And confirmed that a "union member has a property right in his position on the roster."  *Local 560 (1985)*, 780 F.2d at 281 (*quoting Dusing v. Nuzzo*, 177 Misc. 35 (Sup. Ct. Ulster County) (aff'd 263 A.D. 59) (1941).Furthermore, the LMRDA imposes "fiduciary duties on union officials" and the "right in the members to the honest and faithful services of union officials."  *United States v. Local 560 of the Int'l Bhd. of Teamsters*, 550 F. Supp. 511, 517-518

(D.N.J. 1982) (*quoting United States v. Boffa*, 688 F.2d 919, 930-931 (1982).  The Courts have

upheld Hobbs Act extortion prosecutions based on the loss of not only of tangible property, but

also intangible property rights.  *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

Hobbs Act violations "frequently involve schemes to extort through the creation of

indirect fear."  *Local 560,* 780 F.2d at 283.  Even "subtle extortions are covered under the Hobbs

Act."  *United States v. Sander*, 615 F.2d 215, 218 (5th Cir. 1980).  As in *United States v. Local

560,*  780 F.2d at 283.  The extortion of Plaintiff's rights under the Labor Management

Recording Disclosure Act ("LMRDA") *29 U.S.C. §§ 401-531* ("LMRDA") were "achieved, not

so much by direct physical assault, (as is proscribed in [47 U.S.C] *section 530*), but by more

sophisticated and indirect physical and economic threats."  *Local 560,* 780 F.2d at 283.

The enterprise extorted D'Ambly's rights under the LMRDA by intimidating and

threatening violence the enterprise extorted his termination from the Daily News, which extorted

his intangible property rights.  D'Ambly's alleged conduct was not the cause of his termination,

because the LMRDA protects the "the rights of union members to freedom of expression without

fear of sanctions by the union, which in many instances could mean the loss of union

membership and in turn loss of livelihood."  *Finnegan*, 456 U.S. at 435-36.  D'Ambly's extorted

termination economically deprived him of the "source [and] or element of wealth" and benefits

that derives from his intangible property rights as a union member, including his hourly wage,

pension credits, annuity credits, and health benefits that were secured by the collective

bargaining agreement.  *Local 560 (1985)*, 780 F.2d at 281-282.  The Third Circuit has held such

deprivation of LMRDA rights to be extortion.

In addition to extorting Plaintiffs' terminations, the Exoo Enteprise has committed

multiple acts against Plaintiffs in violation of *18 U.S.C. § 1952*, the Travel Act, which prohibits

use of the "mail or any facility in interstate or foreign commerce," to promote any unlawful

activity, which in this instance is extortion.  For instance, on January 11, 2019 at 10:14 a.m.,

after D'Ambly's organization the European Heritage Association "announced" a march to be

held January 12, 2019, in Princeton, New Jersey, Exoo announced a planned counterprotest and

re-published D'Ambly's employer's telling associates "to contact the @NYDailyNews."  At

10:21 a.m., on January 11, 2019, merely seven minutes after Exoo re-published D'Ambly's dox

the Daily News received a voicemail from (732) 744-**** that threatened violence if D'Ambly

was not terminated, which caused the Daily News to fear for their safety.  Ex. F. Pl. Opp. Twitter

account @nstricklanded published a tweet to @AntiFashGordon with a photograph of a

European Heritage Association flyer.  That same evening unknown person(s) committed criminal

mischief, N.J.S.A. 2C:17-3 and slashed D'Ambly's vehicles tires and "keyed" the vehcle.  The

following day D'Ambly was the victim of a bias incident and harassment, N.J.S.A. 2C:33-4,

when he received a text message from (732) 744-****, the same number that called in the death

threat to the Daily News.  *Id.*  The text message acknowledged it was the perpetrator of the

criminal mischief, because the message asked D'Ambly if he got "there ok?" meaning the

purported march.  In short, Exoo issued a directive to enterprise associates to shut down a

planned march D'Ambly was to attend, immediately thereafter an enterprise associate called in a

death threat to the Daily News, physically attacked D'Ambly that evening, and sent him a

threatening text message the following day.  *Id.*

In addition to the multiple violations of RICO predicates *18 U.S.C. §§ 1951 and 1952*,

plaintiffs brought actions under *18 U.S.C. 875(c)* threats in interstate communications and *18*

*U.S.C. 2261A(2)(A)*, interstate stalking, for which Defendant claims provides Plaintiff no relief.

There is no federal general common law.  *Erie Railroad v. Tompkins,* 304 U.S. 64, 78 (1938).

The applicability of common law doctrines in litigation under federal statutes depends on whether those principles advance the goals of the particular federal statute which plaintiffs allege has been violated. *Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1356 (3d Cir. 1987) (*quoting American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 570 (1982). In *Petro-Tech*, the Third Circuit found an aider and abettor can be civilly liable under RICO, because although normally a criminal statute RICO was intended "to permit recovery by victims of racketeering activity." *Petro-Tech*, 824 F.2d at 1357. In *Mechanical Engineers*, the Court found common law liability for violations of antitrust laws was "consistent with the intent behind the antitrust laws." *Mechanical Engineers*, 456 U.S. at 570. Here, liability is consistent with congressional intent to prevent the use of interstate communications to cause violence and stalking.

### III.    CONCLUSION

Exoo and enterprise associates confirm the enterprise's existence and evidence confirms its patterns of racketeering activities. The Enterprise committed multiple intentional torts to extort Plaintiffs intangible property rights.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

Respectfully Submitted,

Dated: May 20, 2021      _____
Patrick Trainor, Esq.
*Attorney for Plaintiffs*