Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI, | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** |
| | CIVIL ACTION NO.:  2:20-cv-12880 |
| Plaintiff, | |
| vs. | |
| CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, | |
| Defendants. | |

**PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANT St. LAWRENCE UNIVERSITY'S MOTION TO DISMISS**

**Motion Day: July 6, 2021**

## <u>TABLE OF CONTENTS</u>

I.      Table of Authorities .................................................................   ii

II.     Introduction..........................................................................   2

III.    Standard of Review..............................................................   4

IV.     Argument .............................................................................   7

        1.  An Association-in-Fact RICO Enterprise Exists .............................   7

        2.  STL  Aids And Abets The Association-in-Fact Enterprise ..............   10

        3.  St. Lawrence Is Obligated To Stop Their Employee From Using
            STL's Resources To Harm Others.......................................................   12

V.      Conclusion ............................................................................   14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                             **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................  4

*Banks v. Wolk,*
    918 F.2d 418 (3d Cir., 1990)...........................................................................  10, 11

*Beckwith v. Bethlehem Steel Corp.,*
    182 N.J. Super. 376, 383 (N.J. Super. Ct. Law Div. 1981) ........................  6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................  3, 4

*Boyle v. United States,*
    556 U.S. 938, 943-44 (2009) ........................................................................  8

*Calder v. Jones,*
    465 U.S. 783, 789-790 (1984) .......................................................................  5

*Colorado Riv. Water Conserv. Dist. v. United States*
    424 U.S. 800, 817 (1976)................................................................................  5

*Doe v. XYC Corp.,*
    382 N.J. Super 122, 142 (App. Div. 2005) .................................................  12, 13

*Goldberg v. Housing Authority of Newark,*
    38 N.J. 578 (1962) .........................................................................................  13

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*
    988 F.2d 476, 482 (3d Cir. 1993)..................................................................  6

*Gulf Oil Corp. v. Gilbert*
    330 U.S. 501, 508 (1947)..............................................................................  4

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989)........................................................................................  9

*Hopkins v. Fox & Lazo Realtors,*
    132 N.J. 426, 439 (1993) .............................................................................  12

*Hurley v. Atlantic City Police Dep't.,*
    174 F.3d 95, 127 (3d Cir. 1999)....................................................................  11

*IMO Indus. v. Kiekert AG*,
     155 F.3d 254 (3d. Cir. 1998)............................................................ 5

*In re Ins. Brokerage Antitrust Litig.*,
     618 F.3d 300, 314 (3d Cir. 2010)................................................... 4

*Int'l Shoe Co. v. Washington*,
     326 U.S. 310, 316 (1945)............................................................ 6

*Jaguar Cars v. Royal Oaks Motor Car Co.*,
     46 F.3d 258, 270 (3d Cir. 1995)..................................................... 11

*Laurel Gardens, LLC, v. McKenna*,
     948 F.3d 105, 122 (3d Cir. 2020)................................................... 5, 6, 7

*Miller Yacht Sales, Inc. v. Smith*,
     384 F.3d 93, 97 (3d. Cir. 2004)..................................................... 5, 6

*O'Connor v. Sandy Lane Hotel Co.*,
     496 F.3d 312, 317 (3d. Cir. 2007)................................................... 5

*Petro-Tech Inc. v. Western Co. of North America*,
     824 F.2d 1349, 1356 (3d Cir. 1987)................................................ *passim*

*Phillips v. County of Allegheny*,
     515 F.3d 224 (3d Cir. 2008)......................................................... 4

*Pinker v. Roche Holdings, Ltd.*,
     292 F.3d 361 (3d Cir. 2002)......................................................... 7

*Remick v. Manfredy*,
     238 F.3d 248, 256 (3d. Cir. 2001)................................................... 6

*State v. Ball*,
     268 N.J. Super. 72, 105-107 (App. Div. 1993).................................. 14

*Swistock v. Jones*,
     884 F.2d 755, 758 (3d Cir. 1989)................................................... 4, 9

*United States v. Adams*,
     759 F.2d 1099, 1166 (3d Cir. 1985)................................................ 11, 12

*United States v. Dixon*,
     658 F.2d 181, 189, n. 17. (3d Cir. 1981)......................................... 12

*United States v. Local 560 Int'l Bhd. of Teamsters*,
　　780 F.2d 267 (3d Cir. 1985)................................................................. *passim*

*United States v. Turkette,*
　　452 U.S 576, 583 (1981)................................................................. *8*

**Statutes**

18 U.S.C. § 1951 ("Hobbs Act") ................................................................. 10

18 U.S.C. § 1952................................................................................ 10

18 U.S.C. § 1962(d) ........................................................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ....................................................... 3

Federal Rule of Civil Procedure 12(b)(2) ...................................................... 2, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 2, 4, 5

Federal Rule of Civil Procedure 12(d)........................................................... 5

Federal Rule of Civil Procedure 56 ............................................................ 5

Federal Rule of Civil Procedure 56(d).......................................................... 5

Restatement (Second) of Torts § 317............................................................ *13*

**Other Sources**

Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*,
Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed May 11, 2021) ............................................. 7, 8

Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14,
2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed May 11, 2021)........................ 2, 7

Robert Klemko, *A small group of sleuths had been identifying right-wing
extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10,
2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last
accessed May 11, 2021)......................................................................... 8

*Antifash Gordon's Abuse Abusers not welcome here: A statement of separation
from AntiFash Gordon*, (Apr. 9, 2021), https://antifashgordon.noblogs.org/ (last
accessed May 12, 2021)......................................................................... 9

*Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of Abuse* (Apr. 9, 2021), https://torchantifa.org/concerning-antifash-gordon-a-torch-statement-in-solidarity-with-victims-of-abuse/ (last accessed May 12, 2021) .......... 10

Plaintiffs Daniel D'Ambly (hereinafter "D'Ambly"), Aaron Wolkind ("Wolkind") Steve Hartley ("Hartley"); Richard Schwetz ("Schwetz"); Jobel Barbosa ("Barbosa"); Matthew Reidinger ("Reidinger"); John Hugo ("Hugo"); Sean-Michael David Scott ("Scott"); Thomas Louden ("Louden"); Zachary Rehl ("ZRehl"); Amanda Rehl ("ARehl"); K.R., A Minor, By And Through Her Father Zachary Rehl And Her Mother Amanda Rehl, Mark Anthony Tucci ("Tucci") (plaintiffs collectively referred to as "Plaintiffs"), submits this Brief in opposition to Defendant St. Lawrence University's ("STL") motions to dismiss for an alleged lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons that follow, STL's motions should be denied.

## INTRODUCTION

Beginning as early as 2016, STL's co-Defendant Christian Exoo ("Exoo"), who is also employed in STL's library employee and as a lecturer, has directed an enterprise ("Exoo Enterprise" or "Enterprise") engaged in patterns of racketeering activities that harasses, intimidates, threatens, and extorts.  STL has aided and abetted Exoo's direction of the Exoo Enterprise by allowing him use university resources in furtherance of his scheme to "dox" alleged white supremacists, fascist, and Nazis (collectively "Nazis") in order to extort their employment terminations, school expulsions, and force their exit from society.  To dox someone means to  posting someone's home address, phone number, or other personal information in an effort to harass, intimidate, and endanger them.[1]  The dox of another person triggers an inherently violent reaction from enterprise associates, who commence a practice referred to as "dogpiling," wherein enterprise associates flood the email, social media accounts, and phone

---

[1] Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14, 2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed May 11, 2021).

systems with an untold number of harassing and threatening communications, including death threats.

Exoo's family has deep personal relationships with STL's leadership.  Exoo's father was an STL professor for decades before his recent retirement, his brother is believed to currently be a professor at STL, and his late mother was a longtime adjunct professor at STL.  Rabid far-left ideology is their collective calling card.  In fact, not only does STL aid and abet the Exoo Enterprise, the office of STL's President gave their blessing to Exoo's mother when she gave her students extra credit to attend Saint Lawrence County Legislature meetings and harass local Republicans.  STL claimed they were proud of it.

STL aids and abets Exoo's direction of the enterprise by allowing him to use their technological resources and property to direct the enterprises patterns of racketeering activities, STL aids Exoo's recruitment of potential associates, proteges, or collaborators through his on-campus lectures on his open-source intelligence ("OSINT") method that he uses to obtain the private information pertinent to his activities.  STL's leadership continues to aid and abet the enterprise and has refused to stop Exoo's misconduct in the face of hundreds of complaints from submitted to them through multiple channels, phone calls, emails, Twitter by enterprise victims.

## I. LEGAL STANDARDS

### 1. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER FED. R. CIV. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action." *Id*.  When reviewing a motion to dismiss, the court must construe the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In *Twombly*, the Supreme Court set forth the plausibility standard for overcoming a motion to dismiss.  The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570.  A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The Supreme Court's *Twombly* formulation of the pleading standard "can be summed up thus stating…a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556).  This standard "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id*.  In RICO actions "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery. *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

## 2.   <u>The District Court has Jurisdiction over STL through its Jurisdiction over Defendant Exoo</u>

The District Court's exercise of jurisdiction over STL is proper.  The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  A plaintiff "need only establish a prima facie case of personal

jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d. Cir. 2004). Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given to them" and "only the clearest of justifications will warrant dismissal." *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976).  In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 122 (3d Cir. 2020).

A defendant's contacts with the forum can create specific jurisdiction in two ways. *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998).  First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007).  Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

To satisfy the first prong of the three-part analysis, the defendant must direct its activities at a forum by "deliberately targeting" the forum.  *O'Connor,* 496 F.3d at 317.  A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident." *Id*. at 317-318 (holding that a defendant directed its activities toward Pennsylvania when the defendant, a hotel company located in Barbados, mailed brochures to the plaintiffs, mailed a spa brochure to plaintiff after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa). *See Remick v. Manfredy*, 238 F.3d

248, 256 (3d. Cir. 2001) (personal jurisdiction existed when defendant placed a call at the plaintiff's office which led to the formation of a contract signed in, and returned to Pennsylvania); *See also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communication sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.").

New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Miller Yacht,* 384 F.3d. at 96. Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). New Jersey has a strong interest in providing access to its courts for citizens who have sustained injury due to the actions of an out of state defendant and has adopted a judicial policy which permits jurisdiction over foreign corporations to the outer limits permitted by the due process clause of the United States Constitution. *Beckwith v. Bethlehem Steel Corp.*, 182 N.J. Super. 376, 383 (N.J. Super. Ct. Law Div. 1981). In cases where jurisdiction has been challenged, New Jersey courts have given strong consideration to the type of action in determining sufficiency of minimum contacts. *Id*. at 384. Jurisdiction in tort actions may be premised upon a single contact with the forum if the contact results in injury to one of its residents. *Id.*

Jurisdiction is proper in any "district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020) (internal quotations omitted). In instances "where Congress has spoken by authorizing nationwide service of process… jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v.*

*Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).  The District Court has statutory personal

jurisdiction under *18 U.S.C. § 1965(b)* (2018), which provides for "nationwide service of process

and jurisdiction over other parties not residing in the district, who may be additional defendants

of any kind, including co-defendants, third-party defendants, or additional counter-claim

defendants."  *Laurel Gardens,* 948 F.3d at 118.  When a federal statute provides for nationwide

service of process, it becomes the "statutory basis for personal jurisdiction."  *Id.* at 117.  The

federal RICO statute is one such federal statute that "includes a specific provision."  *Id*. at 113.

 Here, the District Court can properly exercise jurisdiction over Exoo, because he

purposefully directed his activities and the enterprise's activities into the State of New Jersey

specifically at D'Ambly's place of employment that was located in Jersey City, New Jersey.  The

District Court, by virtue of its proper exercise of jurisdiction over co-defendant Exoo can

properly exercise jurisdiction over STL.

## II. <u>ARGUMENT</u>

### 1.  An Association-in-Fact RICO Enterprise Exists

 Unquestionably a RICO enterprise exists and Exoo has admitted its existence in multiple

published interviews.  For instance, in a profile published on September 9, 2019, on *Medium.com*

("Medium"), titled *"Anti-Fascists Are Waging a Cyber War – And They're Winning,"*[2]  *See*

Exhibit A, EXA012.  In an interview published in *Rolling Stone* magazine (Rollingstone.com) on

February 14, 2021, titled *"Meet the Undercover Anti-Fascists,"*[3] Exoo is described as the "de-

facto leader" and someone who "connects-up-comers with others in the movement" and who

---

[2] Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed May 11, 2021).
[3] Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14, 2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed May 11, 2021).

"runs workshops several times a month on how to use open-source intelligence (OSINT)…to run investigations and identify individuals [targets]."  *See* Ex. B. Pl. Opp. at EXB003.  Exoo and some of his high-profile associates, @socialistdogmom, @emilygorcenski, and @LCRWnews were profiled in the *Washington Post* on January 10, 2021, and described as a member of a "nationwide network of left-wing activists, who seek out and publish the identities of those they believe to be violent fascists."[4] *See* Ex. C. Pl. Opp. at EXC001.

A Racketeering Influenced and Corrupt Organization Act ("RICO") enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact.  *Boyle v. United States*, 556 U.S. 938, 943-44 (2009).  An "association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct."  *Id.* at 946.  *See* Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com.  RICO is to "be liberally construed to effectuate its remedial purposes."  *United States v. Turkette*, 452 U.S. 573, 586-587 (1984).  A RICO enterprise does not require the militaristic structural rigidity that STL argues it does.  However, a structured enterprise exists, because Exoo's wealth and access to multiple income streams has allowed him to "establish control and create hierarchy" with him on top and "his proteges or collaborators to become financially dependent on him" beneath him.  Ex D. Pl. Opp. at EXD006.  The Exoo Enterprise is an association-in-fact enterprise engaging in a course of conduct, and "each person" who associates in fact may be held liable under RICO.  *United States v. Turkette*, 452 U.S 576, 583 (1981).  The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses.  *Petro-Tech Inc. v. Western Co. of North America*,

---

[4] Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10, 2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed May 11, 2021).

824 F.2d 1349, 1356 (3d Cir. 1987).  RICO should be broadly construed and there is nothing in

the act that limits its application to organized crime enterprises.  *H.J. Inc. v. Northwestern Bell*

*Tel. Co.*, 492 U.S. 229 (1989).  In RICO actions "plaintiffs will be able to withstand a facial

attack on the complaint and have the opportunity to have their pattern allegations threshed out in

discovery.  *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

Moreover, enterprise associates have confirmed the existence of an association-in-fact

enterprise.  On or about April 9, 2021, enterprise associates published "*Antifash Gordon's Abuse*

*Abusers not welcome here: A statement of separation from AntiFash Gordon*"[5] ("AFG Abuse").

The separation announcement was signed by thirty-three (33) of Exoo's former associates and it

detailed the enterprise's inner workings.  *See* Ex. D. Pl. Opp.  Interestingly, one of the signatories

of AFG Abuse was @WaNaziWatch, but to deny the existence of an associated-in-fact

enterprise, Exoo points to the dox of Plaintiff Scott, who was doxed in coordinated doxes on

September 16, 2019, with @WaNaziWatch and Puget Sound Anarchists.  *See* Exoo's Exhibits B-

III, F-1, and F-11.

The AFG Abuse statement is full of inane far left pablum, but it confirms the enterprise's

existence and that it is led by "a cis white man with financial means" who has "leveraged his

online clout and reputation as a legitimate antifascist for his own professional gain."  Ex. D. Pl.

Opp. at EXD002-EXD006.  The AFG Abuse statement confirms the enterprise financially

benefits its patterns of racketeering activities.  According to former enterprise associates, the

Exoo Enterprise has access to several streams of income, and Exoo "uses the network of clout he

has cultivated to create rewards for his inner circle" of doxers.  Ex. D. Pl. Opp. at EXD002.  The

---

[5] *Antifash Gordon's Abuse Abusers not welcome here: A statement of separation from AntiFash Gordon*, (Apr. 9, 2021), https://antifashgordon.noblogs.org/ (last accessed May 12, 2021).

rewards Exoo provides associates are "money, connections to jobs, and opportunities for media appearances with his friends in the press." *Id.* at EXD007-008

On or about the same date as the AFG Abuse statement was released, former enterprise associates, who call themselves the "Torch Antifa Network" issued a statement titled "*Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of Abuse*"[6] ("Torch Net") in support of the AFG Abuse statement signatories. *See* Ex. E. Pl. Opp.  The Torch Net statement confirmed the allegations of Exoo's financial abuse and acknowledged Exoo as the leader and the "arbiter and distributor of research information, media opportunities, and financial resources." *Id.* at EXE004.  However, Torch net took issue with the fact that although Exoo has "acknowledged in interviews that the research published on the Antifash Gordon account is generated by an entire team" he never edited the [AFG Twitter] account to show that the doxes are the product of "collective labor," and not just the account of a single "white cis man."  Ex. E. Pl. Opp. at EXE003.  Torch Net acknowledged formerly conspiring with Exoo, but as of this statement they will no longer "collaborate with AFG."  Id. at EXE005.

## 2.  STL Aids and Abets the Association-in-Fact Enterprise

STL violated *18 U.S.C. § 1962(d)* when they conspired to violate *18 U.S.C. §§ 1951* and *1952*, by aiding and abetting the enterprise that directed into New Jersey, a violent, systematic, and continuous patterns of racketeering activities to induce fright and panic in order to extort Plaintiffs' employment terminations.  A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity.  *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir., 1990).  The Third Circuit has held "under RICO, an individual need

---

[6] *Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of Abuse* (Apr. 9, 2021), https://torchantifa.org/concerning-antifash-gordon-a-torch-statement-in-solidarity-with-victims-of-abuse/ (last accessed May 12, 2021).

not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 288 n. 25 (3d Cir. 1985). To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985). The Third Circuit has similarly "held a defendant may be liable under RICO if he aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 270 (3d Cir. 1995).

When RICO cases are "civil in character, the criminal standard for aiding and abetting applies." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985). The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro-Tech Inc.,* 824 F.2d at 1356. A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity. *Banks,* 918 F.2d at 421. The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *Local 560,* 780 F. 2d at 288, n. 25. To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985).

To aid and abet requires that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant mut be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Hurley v. Atlantic City Police*

11

*Dep't.*, 174 F.3d 95, 127 (3d Cir. 1999).  "The Restatement (second) of Torts § 876(b) holds that liability "for harm resulting to a third person from the tortious conduct of another…[can be imposed upon a party who] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."  *Petro-Tech*, 824 F.2d at 1357.  "Plaintiff need not offer direct evidence of intent. Rather, the fact finder may infer a defendant's knowledge and intent from circumstantial evidence."  *United States v. Dixon,* 658 F.2d 181, 189, n. 17. (3d Cir. 1981).

### 3.  St. Lawrence Is Obligated to Stop their Employee From Using STL's Resources to Harm Others

Employers are "under a duty to exercise reasonable care" to stop its employee's from using employer property to commit criminal acts such as stalking, harassing, intimidating, and conducting other activities that constitute a threat to others.  *Doe v. XYC Corp.,* 382 N.J. Super 122, 142 (App. Div. 2005) (employee had duty to terminate employee or report to law enforcement employee who was viewing child pornography from work computer).  It has long been established that "if an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from this inaction.  Moreover, it has long been settled that it is permissible to infer from circumstantial evidence the existence of intent."  *Local 560 (1985)*, 780 F. 2d at 284.  As a matter of law, the obligation of an employer to stop its employee from harming others from their employer's workspace "derives from considerations of public policy and fairness."  *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993).  The *Restatement (Second) of Torts § 317* says:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> > (a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.

*Doe v. XYC Corp.*, 382 N.J. Super. at 132.

Whether the duty exists turns on whether imposing the duty "satisfies an abiding sense of fairness…in light of considerations of public policy." *Goldberg v. Housing Authority of Newark*, 38 N.J. 578 (1962). Here, Exoo's conduct satisfies all of the elements as stated above. He directs the enterprise's activities from his workstation upon STL's premises, which STL permits him to enter as the servant. He uses STL's chattel (internet technology, cloud computing, etc.) to direct the enterprise's activities, STL knows of Exoo's activities and they should know his activities are unlawful, and STL is capable of stopping him from using their property and resources to direct his activities through various means. Public policy disfavors harassment, intimidation, threatened violence and extortion, all of the activities Exoo directs from STL's campus satisfies the elements for employer liability for harms caused by its employee.

Employers are "under a duty to exercise reasonable care" to stop its employee's from using employer property to commit criminal acts such as stalking, harassing, intimidating, and conducting other activities that constitute a threat to others. *Doe v. XYC Corp.,* 382 N.J. Super 122, 142 (App. Div. 2005). It has long been established that "if an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from this inaction. Moreover, it has long been settled that it is permissible to infer from circumstantial evidence the existence of intent." *Local 560* (1985) 780 F. 2d at 284.

13

The existence of the federal RICO enterprise explained above satisfies New Jersey's RICO requirement.  New Jersey's "RICO law is even broader in scope that its federal counterpart" and its definition of an enterprise is more expansive that that contained in the federal version," and all that is required to satisfy the New Jersey RICO enterprise element is a group of people, however loosely associated, whose existence provides the common purpose of committing two or more predicate acts."  *State v. Ball*, 268 N.J. Super. 72, 105-107 (App. Div. 1993).

Furthermore, co-defendant Exoo is not a rogue employee operating from the shadows of a monstrous multi-national conglomerate, he is a well-known campus fixture and long-time library employee and lecturer at a "small, private liberal arts university."  Def. STL MTD at 8. Exoo is intimately familiar with STL's leadership because several of Exoo's family members are either current or former members of STL's faculty.

## III.     CONCLUSION

STL leadership is well acquainted with Exoo, activities and they even allow him to give OSINT lectures on STL's campus.  STL has a duty to prevent their employees from using STL's resources to harass, intimidate, and extort others.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

Respectfully Submitted,

Dated: May 20, 2021      _____
                        Patrick Trainor, Esq.
                        *Attorney for Plaintiffs*

14