Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
848 Paterson Avenue
East Rutherford, New Jersey 07073
P: (201) 777-3327
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100,<br><br>                    Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br><br>CIVIL ACTION NO.:  2:20-cv-12880 |

---

**PLAINTIFFS BRIEF IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS VIJAYA GADDE AND TWITTER, INC.'s, MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

**Motion Day: July 6, 2021**

## <u>TABLE OF CONTENTS</u>

I.      Table of Authorities ................................................................. ii

II.     Introduction ............................................................................. 2

III.    Standard of Review ................................................................. 4

IV.     Legal Argument ...................................................................... 6

     1.   Twitter Materially Contributed to the development of Exoo's
        Harmful and offensive content........................................... 6

     2.   An Association-in-Fact RICO Enterprise Exists .............................. 14

     3.   Twitter Aided and Abetted the Development of Exoo's Offensive
        Content.................................................................... 17

V.      Conclusion ............................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Apex Oil Co v. United States*,
    530 F.2d 1291, 1295 (8th Cir. 1976) ............................................................   14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................   4

*Banks v. Wolk*,
    918 F.2d 418 (3d Cir., 1990)......................................................................   15, 17

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096, 1100 (9th Cir. 2009) ............................................................   10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................   4, 5

*Boyle v. United States*,
    556 U.S. 938, 943-44 (2009) .......................................................................   15

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119, 1122 (9th Cir. 2003) ............................................................   7, 9

*Chi. Lawyers' Comm. For Civ. Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666, 668-71 (7th Cir. 2008) ...........................................................   10

*Crosby v. Twitter, Inc.*,
    303 F. Supp. 3d 654 (E.D. Mich. 2018).........................................................   *passim*

*Dimeo v. Max*,
    433 F. Supp. 2d 523 (E.D. Pa. 2006) ............................................................   8

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) .......................................................................   9, 10

*Doe v. Myspace*,
    528 F.3d 413 (5th Cir. 2008) .......................................................................   9

*Doe v. XYC Corp.*,
    382 N.J. Super 122, 142 (App. Div. 2005) ....................................................   15

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) .............................................   *passim*

*Federal Trade Comm'n. v. Accusearch, Inc.,*
    570 F.3d 1187, 1199 (10th Cir. 2009) ............................................................ 7, 11

*Fields v. Twitter, Inc.*,
    217 F.Supp. 3d 1116 (N.D. Cal. 2016) ............................................................ *passim*

*Genty v. Resolution Trust Corp.,*
    937 F.2d 899 (3d Cir. 1991)................................................................................ 16

*Gomez v. Toledo,*
    446 U.S. 635, 642 (1980)................................................................................... 6

*Green v. Am. Online (AOL),*
    318 F.3d 465 (3d Cir. 2003)............................................................................... 8

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989)........................................................................................... 16

*Huon v. Denton*,
    841 F.3d 733, 741 (7th Cir. 2016) .................................................................... *passim*

*Hurley v. Atlantic City Police Dep't.*,
    174 F.3d 95, 127 (3d Cir. 1999)........................................................................ 18

*Ieradi v. Mylan Labs., Inc.*,
    230 F.3d 594, 598, n.2 (3d Cir. 2000)............................................................... 3

*In re Asbestos Prods. Liab. Litig (No. VI)*
    822 F.3d 125, 133-34 (3d Cir. 2016) ............................................................... 5

*Jaguar Cars v. Royal Oaks Motor Car Co.,*
    46 F.3d 258, 270 (3d Cir. 1995)........................................................................ 18

*Jane Doe No. 14 v. Internet Brands, Inc.*,
    767 F. 3d 894, 898 (9th Cir. 2014) ................................................................... *passim*

*Jones v. Bock,*
    549 U.S. 199 (2007)........................................................................................... 6

*Laurel Gardens, LLC, v. McKenna,*
    948 F.3d 105, 122 (3d Cir. 2020)...................................................................... 6, 7

*Miller Yacht Sales, Inc. v. Smith*,

384 F.3d 93, 97 (3d. Cir. 2004)............................................................... 5, 6

*Obado v. Magedson,*
612 Fed. App'x 90 (3d Cir. 2015).............................................. 8

*Pace v. Baker-White*,
432 F. Supp. 3d 495, 504 (E.D. Pa. 2020) ..................................... *passim*

*Petro-tech Inc. v. Western Co. of North America,*
824 F.2d 1349, 1356 (3d Cir. 1987)........................................... *passim*

*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008).................................................. 5

*Saponaro v. Grindr, LLC,*
93 F. Supp. 3d 319, 324 (D.N.J. 2015) ........................................ 9

*Schmidt v. Skolas,*
770 F.3d 241, 248 (3d Cir. 2014)............................................. 6

*State v. Ball,*
268 N.J. Super. 72, 105-107 (App. Div. 1993).............................. 17

*Swistock v. Jones*,
884 F.2d 755, 758 (3d Cir. 1989)........................................... 5, 16

*United States v. Adams,*
759 F.2d 1099, 1166 (3d Cir. 1985)......................................... 16, 17

*United States v. Dixon,*
658 F.2d 181, 189, n. 17. (3d Cir. 1981).................................... 18

*United States v. Kegler*,
233 U.S. App. D.C. 58 (D.C. Cir. 1984)..................................... 16

*United States v. Local 560 Int'l Bhd. of Teamsters,*
780 F.2d 267 (3d Cir. 1985).................................................. *passim*

*United States v. Turkette,*
452 U.S 576, 583 (1981).................................................... 15, 16

*Zeran v. Am. Online Inc.,*
129 F.3d 327, 331 (4th Cir. 1997) ......................................... 7, 8

iv

**Statutes**

18 U.S.C. § 1951 ("Hobbs Act") ................................................................. 15

18 U.S.C. § 1952 .......................................................................................... 15

18 U.S.C. § 1962(d) ..................................................................................... 15

Communications Decency Act,
      47 U.S.C. 230 ..................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ...................................................... 4

Federal Rule of Civil Procedure 12(b)(6) .................................................... 5

Federal Rule of Civil Procedure 12(c) ......................................................... 5

Federal Rule of Civil Procedure 12(d) ......................................................... 5

Federal Rule of Civil Procedure 56 .............................................................. 5

Federal Rule of Civil Procedure 56(d) ......................................................... 5

Restatement (second) of Torts § 876(b) ....................................................... 18

**Other Sources**

Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*,
Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-
254f62be2a95 (last accessed May 11, 2021) ............................................... 8, 9, 11

Andy Kroll, *Meet the Undercover Anti-Fascists*, Rollingstone.com, (Feb. 14,
2021), https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-
militia-trump-insurrection-1121933/ (last accessed May 11, 2021) ........................ 9-11

*Antifash Gordon's Abuse Abusers not welcome here: A statement of separation
from AntiFash Gordon*, (Apr. 9, 2021), https://antifashgordon.noblogs.org/ (last
accessed May 12, 2021) ................................................................................ *passim*

*Concerning Antifash Gordon: A Torch Statement In Solidarity with the Victims of
Abuse* (Apr. 9, 2021), https://torchantifa.org/concerning-antifash-gordon-a-torch-
statement-in-solidarity-with-victims-of-abuse/ (last accessed May 12, 2021) .......... *passim*

*Episode #1258 – Jack Dorsey, Vijaya Gadde & Tim Pool*, The Joe Rogan
Experience (Mar. 5, 2019)*, available at*
https://www.youtube.com/watch?v=DZCBRHOg3PQ;
https://open.spotify.com/episode/1R23aydtvvAFkAb5iCj0et .................................. 3

Interview by Kara Swisher and Peter Kafka with Kayvon Beykpour and Vijaya
Gadde, *Twitter's Kayvon Beykpour and Vijaya Gadde: The Code Conference*

*interview* (transcripts) Vox.com (June 27, 2019)
https://www.vox.com/recode/2019/6/27/18760444/twitter-kayvon-beykpour-vijaya-gadde-kara-swisher-peter-kafka-code-conference-interview-transcript (last accessed May 17, 2021)..................................................................... 3, 14

Interview by Rebecca Quick with Ned Segal, CFO, Twitter, Inc., Squawk Box, *available* at CNBC.com (Feb. 10, 2021) .................................................. 3

Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10, 2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed May 11, 2021)..................................................................... 10, 11

Twitter Rules, Following and unfollowing, Following FAQ's (May 18, 2021); https://help.twitter.com/en/using-twitter/following-faqs ........................................... 15

Plaintiffs Daniel D'Ambly (hereinafter "D'Ambly"), Aaron Wolkind ("Wolkind") Steve Hartley ("Hartley"); Richard Schwetz ("Schwetz"); Jobel Barbosa ("Barbosa"); Matthew Reidinger ("Reidinger"); John Hugo ("Hugo"); Sean-Michael David Scott ("Scott"); Thomas Louden ("Louden"); Zachary Rehl ("ZRehl"); Amanda Rehl ("ARehl"); K.R., A Minor, By And Through Her Father Zachary Rehl And Her Mother Amanda Rehl, Mark Anthony Tucci ("Tucci") (plaintiffs collectively referred to as "Plaintiffs"), submits this Brief in opposition to Defendants Vijaya Gadde ("Gadde") and Twitter, Inc.'s ("Twitter") (Gadded and Twitter usually collectively "Twitter") Motion to Dismiss the First Amended Complaint for a failure to state a claim under Fed.R.Civ.P. 12(b)(6).  For the reasons that follow, Twitter's motions should be denied.

## **INTRODUCTION**

This case is factually distinct from Twitter's cited authorities and exempts Twitter from Samaritan immunity protections of the Communications Decency Act, *47 U.S.C. 230* ("CDA"). The common denominator found in Twitter's cited authorities is that the interactive computer services ("providers") were neutral conduits or passive transmitters of content posted by unidentified persons or unknown persons.  This case does not involve unidentified persons, it is not the result of Twitter's routine provisioning of accounts, minors misrepresenting their age to access services, and this is not a case where Twitter has failed at whack-a-mole and has not immediately slammed down a succession of offensive accounts, such as "doxtwitter2" and "doxtwitter3," and so on as they are created and begin posting content.

Here, unlike the unidentified persons in Twitter's cited authorities, co-defendant Christian Exoo a/k/a Twitter username @AntiFashGordon ("Exoo or "AFG") was well-known to Twitter as a persistent abuser and a two-time permanently banned user, with hundreds of active

2

doxing and abusive behavior complaints when Gadde agreed to his unprecedented username change from @DoxSavage to @AntiFashGordon.[1]  The agreement to allow Exoo's unprecedented username change was in keeping with Twitter's shared common purpose with Exoo's goal of de-platforming white supremacists.[2]  Exoo's unprecedented username change contradicts Gadde's statements that permanent bans are lifetime bans[3] and statements by Twitter's Chief Financial Officer, Ned Segal, who when asked if President Trump would ever be allowed back on Twitter, responded "the way are policies work when you're removed from the platform, you're removed from the platform, whether you're a commentator, or whether you're a former or current public official."[4]

In addition to de-platforming of white supremacists, Twitter selfishly agreed to allow Exoo's unprecedented username change to benefit its mDAU.  The mDAU is Twitter's "Monetizable Daily Active Usage," which Twitter uses to measure user engagement and is Twitter's key advertising rate setting metric.  Exoo's Twitter account @AntiFashGordon is

---

[1] The Court may take judicial notice of published interviews wherein Vijaya Gadde acknowledged that she is the only person at Twitter who issues permanent user bans.  *See Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598, n.2 (3d Cir. 2000);  Kurt Wagner and Bloomberg, *Meet Twitter's top lawyer, who has the final word on blocking tweets-including Donald Trump's*, Fortune (Jan. 15, 2020), https://fortune.com/2020/01/15/twitter-top-lawyer-vijaya-gadde-blocks-tweets-donald-trump/; *Has your tweet been removed? She is the woman responsible*, Khaleej Times, Offbeat (January 17, 2020), https://www.khaleejtimes.com/offbeat/has-your-tweet-been-removed-she-is-the-woman-responsible.

[2] Interview by Kara Swisher and Peter Kafka with Kayvon Beykpour and Vijaya Gadde, Twitter's Kayvon Beykpour and Vijaya Gadde: The Code Conference interview (transcripts) Vox.com (June 27, 2019) https://www.vox.com/recode/2019/6/27/18760444/twitter-kayvon-beykpour-vijaya-gadde-kara-swisher-peter-kafka-code-conference-interview-transcript (last accessed May 17, 2021)

[3] *Episode #1258 – Jack Dorsey, Vijaya Gadde & Tim Pool*, The Joe Rogan Experience (Mar. 5, 2019)*, available* at https://www.youtube.com/watch?v=DZCBRHOg3PQ; https://open.spotify.com/episode/1R23aydtvvAFkAb5iCj0et;

[4] Interview by Rebecca Quick with Ned Segal, CFO, Twitter, Inc., Squawk Box, *available* at CNBC.com (Feb. 10, 2021).

heavily engaged, with more than fifty-five thousand users, which places it in the highest percentile of Twitter accounts by follower count, and extrapolated by associates and followers represents a significant contribution to Twitter's mDAU.

Twitter is not entitled to the Good Samaritan immunity protections of *Section 230,* because Twitter agreed to allow a known ban evader engaged in doxing and abusive behaviors, undergo an unprecedented username change to preserve continue his activities.  Furthermore, Plaintiffs will put forth evidence that shows that decision was intended to aid and abet the enterprise, and will prove a verifiable direct link between Twitter CEO, Jack Dorsey, and the Exoo Enterprise.

Like Exoo, Twitter is clairvoyant and introduces irrelevant events that occurred on January 6, 2021, to justify their pre-January 2021 misconduct.  As Twitter is claiming *Section 230* as an affirmative defense, the reference to the events of January 6, 2021, which have no bearing on this action, is salacious and nothing more than an effort to besmirch an innocent man, and prejudice the Court.  Plaintiffs argue that Twitter's affirmative defense combined with justifying reference to January 6, 2021, is an admission, akin to a childlike "yeah, but Johnny did…" admission of misconduct, and ask the Court to consider it as such.

## **FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS STANDARD**

Under *Rule 8(a)(2)*, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests" and must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The "courts are not required to accept merely conclusory factual allegations or legal assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).  However, the court "still must accept as true all

4

plausible allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." *Twombly*, 550 U.S. at 555.   A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency.  *In re Asbestos Prods. Liab. Litig (No. VI)*, 822 F.3d 125, 133-34 (3d Cir. 2016).  A court's reliance on facts alleged outside the complaint may "constitute a procedural error under Rule 12(b)(6)."  *Id.*

The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  RICO "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery."  *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

Defendant's motion to dismiss includes frivolous materials that are outside the complaint, therefore, under *Rule 56,* the Court in its discretion may convert Defendant's motion to dismiss to a Motion for Summary Judgment.  When a court relies on materials outside the complaint, Federal Rule of Civil Procedure 12(d) provides that "if on a motion *Rule 12(b)(6)* or *12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule 56*, and the parties be given reasonable notice." *In re Asbestos Prods. Liab. Litig (No. VI), 822 F.3d at 134*.  Summary judgment in this matter is premature, however, in the event the Court converts Defendant's motion to a motion for summary judgment, Plaintiffs make a request for discovery under *Rule 56(d)*, because through discovery Plaintiffs would show a genuine issue of material fact.

Moreover, Twitter raised the affirmative defense of the Good Samaritan immunity protections provided by the *Section 230(c)(1)* of the Communications Decency Act, *47 U.S.C. 230* (2018) ("CDA").  There are "some exceptions, [however] affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under *Rule 12(b)*, because the facts necessary to establish an affirmative defense must generally come from matters outside of the complaint."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat" an affirmative defense.  *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014).  The defendant has the burden of persuasion with respect to the affirmative defense.  *Gomez v. Toledo*, 446 U.S. 635, 642 (1980).

## LEGAL ARGUMENT

### I.   Twitter Materially Contributed to the Development of Exoo's Harmful and Offensive Content

Twitter incorrectly argues that they had no part in the development of Exoo's content and are therefore, protected from liability under the CDA's Good Samaritan protections.  *47 U.S.C. 230(c)(1)*.  Twitter is far from a Good Samaritan, neutral conduit, or passive transmitter, they took extraordinary actions to ensure the visibility and usability of Exoo's content and the continuance of his enterprise activities, which exempts them from the CDA's protections. *Section 230* states no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.  *47 U.S.C. § 230(c)(1)*.  An information content provider means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service.  *47 U.S.C. § 230(f)(3)*.  Congress enacted *§ 230* "to promote the free exchange of information and ideas over the internet and to encourage

voluntarily monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Congress was mindful that the immense volume of users and communications exchanged over the internet potentially created a "specter of tort liability in an area of such prolific speech would have an obvious chilling effect." *Zeran v. Am. Online Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). The intention of *Section 230* was "to remove disincentives for the development and utilization of blocking and filtering technologies." *Id.*

A service provider cannot be liable for the development of the offensive content if its "conduct was neutral with respect to the offensiveness of the content (as would be the case with the typical Internet bulletin board)." *Federal Trade Comm'n. v. Accusearch, Inc.,* 570 F.3d 1187, 1199 (10th Cir. 2009). However, an interactive computer service or website operator "can be both a service provider and a content provider: If it passively displays content created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is responsible, in whole or in part for creating or developing the website is also a content provider." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).

Twitter reliance on well cited cases where providers that acted as neutral conduits or passive transmitters were immunized by Section 230, because the content was posted by unknown persons or unidentified persons is irrelevant to this dispute. The facts in this case illustrate that Twitter was not a neutral conduit or passive transmitter of third-party content. Twitter acted affirmatively when it agreed to allow a two time permanently banned user that was caught operating a ban evasion account undergo an unprecedented username change in order to continue his abusive behavior. Furthermore, none of Twitter's cited cases evidenced a direct link between the bad actor(s) and Twitter as Plaintiffs do here. In this case, Plaintiffs will prove a

direct link between Twitter CEO, Jack Dorsey, and an enterprise associate, who is a verified blue checked Twitter user.

Section 230 cases exist along a continuum with internet "service providers being immunized" and "content providers" are not. *Pace v. Baker-White*, 432 F. Supp. 3d 495, 504 (E.D. Pa. 2020). However, *Section 230* is not blanket immunity, it is immunity for neutrality, for being a passive conduit of third-party content. *Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006). *Section 230(c)(1)* prohibits "only liability that treats a website as a publisher or speaker of content provided by somebody else…" *Jane Doe No. 14 v. Internet Brands, Inc.*, 767 F. 3d 894, 898 (9th Cir. 2014).

Good Samaritan protections are granted when an unknown or unidentified person posts offensive content or where the provider is the neutral conduit or passive transmitter that hosted content created by a third party. The "unidentified person" or "unknown person" being the hallmark of *Section 230* immunity cases and present in all of Twitter's cited authorities. For instance, in *Zeran v. Am. Online, Inc.*, America Online ("AOL") was immune from liability for defamatory messages posted to an AOL bulletin board by an unidentified person. *Zeran,* 129 F.3d at 329. *See Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) (AOL immunized for defamatory statements and a 'punter' that was posted to an AOL chat room by John Does); *Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006) (website immunized against defamatory statements posted in its comments section by unknown users); *Obado v. Magedson,* 612 Fed. App'x 90 (3d Cir. 2015) (immunity for provider that refused to allow a user post a rebuttal to defamatory blog postings by an anonymous user); *Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 654 (E.D. Mich. 2018) (providers immunized from liability from suit by families of Pulse Nightclub murder victims, because Twitter did not know identity of persons posting terrorism materials and

did not agree with any person or entity to promote terrorism);  *Fields v. Twitter, Inc.*, 217

F.Supp. 3d 1116 (N.D. Cal. 2016) (Twitter immunized against claims it provided material

support to ISIS through the provisioning of accounts, but routine provisioning of accounts was

considered a publishing act).

Passive transmitters of content have also been granted *Section 230* immunity when

unknown third parties create fake or malicious accounts.  *See Carafano v. Metrosplash.com, Inc.*,

339 F.3d 1119 (9th Cir. 2003).  In *Carafano*, an unknown third party created a fake dating

website profile using the identify of an actress alleging she was seeking sexual encounters and

provided her phone number and home address.  The website was not liable, because it had no

role in "creating, developing, or transforming the relevant information."  *Carafano*, 339 F.3d at

1125.

Neutral conduits have been granted immunity based on negligence claims for failure to

monitor in cases where minors lied about their age in order to circumvent age restrictions and

gain access to the providers services.  In *Doe v. Myspace*, to create a Myspace account a 13-year-

old girl misrepresented her age as eighteen years old, she then met and was sexually assaulted by

a nineteen-year-old man she met through Myspace.  *Doe v. Myspace*, 528 F.3d 413 (5th Cir.

2008).  *See Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 324 (D.N.J. 2015) (gay dating

application that provided "neutral tools" was not liable to a man who engaged in criminal sexual

conduct with a 13-year-old boy he met through the dating app, who lied about his age to create a

dating profile.)

Content hosts are immunized providers when they only that hosted illicit content posted

by an unknown third party.  In *Doe v. GTE Corp.*, provider not liable to college athletes who

were secretly video recorded in bathrooms, showers, and locker rooms, because GTE did not

"intercept or disclose any communication." *Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir. 2003). *See Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) (Provider "cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments."); *Chi. Lawyers' Comm. For Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 668-71 (7th Cir. 2008) (Craigslist was immunized because it was only the "messenger" of third parties who posted racially discriminatory housing ads that stated "no minorities").

Section 230(c) is titled "[p]rotection for Good Samaritan blocking and screening of offensive material" and "can and should be interpreted consistent with its caption." *Roommates.com*, 521 F.3d at 1163-1164. While CDA's scope is broad and immunizes providers from liability as either "publishers or speakers…[neither section] declares a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). Congress did not provide "an all-purpose get-out-of-jail-free card for businesses that publish user content on the internet." *Internet Brands*, 767 F. 3d at 899. It "was not meant to create a lawless no-man's land on the internet. If the conduct is unlawful when committed "face-to-face or by telephone" it does not "magically become lawful when" committed online. *Roommates.com,* 521 F.3d. at 1164.

*Section 230* does not "grant immunity for inducing third parties to express illegal preferences." *Fair Hous Council v. Roomates.com, LLC*, 521 F.3d 1157, 1165 (9th Cir. 2008). In *Roomates.com,* a roommate arranging website required its users to answer a series of housing related questions before accessing the service was not immunized, because the user's responses were potentially unlawfully discriminatory, and inducing illegal activity is not protected, therefore Roommates was not a passive transmitter.

Providers are liable as content developers for "creating and posting, inducing another to post, or otherwise actively participating in the posting." *Huon*, 841 F.3d at 742.  Liability exists when a provider "in some way specifically encourages development of what is offensive about the content." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 508 (E.D. Pa. 2020) (quoting *Federal Trade Comm'n. v. Accusearch, Inc.,* 570 F.3d 1187, 1199 (10th Cir. 2009).  The definition of development "that is far more suitable to the context in which we operate:" means "making usable or available." *Roommates.com*, 521 F.3d at 1168.  The "core meaning" of the word "develop…is the act of drawing something out, making it visible content means to make it visible, active, or usable." *Accusearch, Inc.,* 570 F.3d at 1198.  A website that helps develop unlawful content, and "thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Accusearch, Inc.,* 570 F.3d at 1200.

Providers are exempt from Good Samaritan immunity "if it in some way specifically encourages development of what is offensive about the content" or if they create content "in whole or in part for the creation of content." *Baker-White,* 432 F. Supp. 3d at 507-08 (quoting *Federal Trade Comm'n. v. Accusearch, Inc.,* 570 F.3d 1187, 1197 (10th Cir. 2009).  To be responsible for a means to be "accountable for one's actions or to be the cause or originator of something." *Baker-White,* 432 F. Supp. 3d. at 508.

In *Roommates*, the provider was "responsible at least in part for developing the content," when it created questions to extract user housing preferences information that was used to create housing matches. *Roommates*, 521 F.3d at 1166.  In *Accusearch*, the provider was not a neutral conduit, because he encouraged the development of the offensive content when he hired researchers to obtain confidential telephone information, because it knew its "researchers were likely to use improper methods." Accusearch, Inc., 570 F.3d at 1200.  The court cited internal

11

company emails when it rejected Accusearch's "claim of blissful ignorance," of researcher impropriety as "simply not plausible." *Id.* at 1200-01.  In *Huon*, the provider was not a neutral conduit or passive transmitter, because it intended to monetize defamatory comments in its comments section, so it allowed its employees alter or create comments that labeled plaintiff a rapist on the day he was acquitted of rape.

Providers have been exempted from *§ 230* immunity when a state law complaint for had "nothing to do with [defendant] Internet Brands' efforts, or lack thereof, to edit or remove user generated content."  *Internet Brands,* 767 F.3d at 898.  The court stated that Congress has not provided an all-purpose get-out-of-jail free card for businesses that publish user content on the internet.  *Id.* at 899.  In *Internet Brands*, the provider was exempt from immunity, because the provider knew rapists prowled its model casting website (*modelmayhem.com*) to lure models to bogus modeling assignments, where the models were drugged, and filmed being raped, but did not alert the models.  More so than in *Internet Brands* where the provider knew rapists prowled its website for victims, but did nothing, Twitter knows Exoo uses Twitter to dox people, but it agreed to his unprecedented username change.

In *Baker-White,* a provider was held to have developed content in part, when it added prefatory language to the officers' personal social media posts to argue the cops were racists and white supremacists.  The provider was exempted from *§ 230*, because the court stated the provider "did much more than merely packaging and contextualizing" they framed the officers' social media comments to make them more "usable and visible" to fit the websites narrative that police officers were racist.  *Id. at* 507.

Twitter is not a Good Samaritan, Twitter is responsible for Exoo's content, because they materially contributed in whole or part to the development of his content by making it more

usable and visible.  Twitter agreed to allow a known ban evader, who was caught operating a ban evasion account with doxing complaints pending against it, undergo an unprecedented username change in order to continue his activities.  Twitter's agreement was driven in part by likeminded goals that enabled Twitter to maintain a significant contributor to its mDAU, and therefore its profits.

Similar to the provider in *Accusearch*, Twitter's attempt to claim blissful ignorance must fail.  Unlike, *Fields*, Twitter cannot site Exoo's account was created as part of Twitter's routine provisioning of accounts, because Exoo was identified as a permanently banned user, which is someone Twitter had already decided they would not provision an account to.  A Good Samaritan would have deleted the ban evader's account when he was caught doxing, but Twitter agreed to allow his username change.  Twitter's knowing of Exoo distinguishes this case from *Crosby*, where Twitter was immunized, because no agreement was shown.

Providers are complicit when they know the identity of persons posting offensive materials, especially as in this case, when the provider had issued lifetime permanent bans to the user for the same misconduct, he was caught engaging in.  For instance, had Plaintiffs in *Crosby* shown an agreement between Twitter and Omar Mateen that allowed him to undergo a username change, so he could continue posting and or accessing jihadi materials, would have rendered a different outcome by an agreement with Mateen's "cause of promoting international terrorism" and.  *Crosby*, 303 F. Supp. 36 at 575.

Gadde agrees with the Exoo Enterprise's purpose of de-platforming white supremacists. In published interviews, she stated white supremacists, "the KKK, the American Nazi Party.  If you have any affiliation, you claim any affiliation to those parties, you are not allowed on

13

Twitter, period.  You can't have any accounts.[5]  In fact, Twitter correctly states that Plaintiffs do not have Twitter accounts, because they were all permanently banned as soon as they were identified as Proud Boys, regardless of content.

Twitter is exempt from *Section 230* immunity, because they altered the ordinary conduct of their business to make Exoo's content more usable and offensive.  Twitter did more than "packaging and contextualizing" they knew or should have known that Exoo would continue to use that account in ways that were likely to harm others, because that is why they permanently banned him.  *Baker-White*, 432 F. Supp. 36d at 507.

Twitter cannot claim they do not know of @AntiFashGordon's and the Exoo Enterprise's doxing and abusive behaviors, because the enterprise has a direct link to Twitter through Twitter account @EmilyGocenski.  @EmilyGorcenski is a blue checked verified Twitter account, and according to Twitter's Terms of Service verified accounts belong to notable figures.  In this case, Twitter CEO Jack Dorsey follows @EmilyGorcenski, who is Exoo's very close associate that conspires to dox people with Exoo.  Jack Dorsey receives @EmilyGorcesnki's Tweets and doxes in real time, and that accounts their updates appear in his home timeline and @EmilyGorcesnki can send him direct messages.[6]  Jack's knowledge of @EmilyGorcenski's conduct is Twitter's knowledge, because the courts have long understood, "knowledge of the employees is the knowledge of the corporation."  *Apex Oil Co v. United States*, 530 F.2d 1291, 1295 (8th Cir. 1976).

## II.     An Association-in-Fact RICO Enterprise Exists

---

[5] Interview by Kara Swisher and Peter Kafka with Kayvon Beykpour and Vijaya Gadde, Twitter's Kayvon Beykpour and Vijaya Gadde: The Code Conference interview (transcripts) Vox.com (June 27, 2019) https://www.vox.com/recode/2019/6/27/18760444/twitter-kayvon-beykpour-vijaya-gadde-kara-swisher-peter-kafka-code-conference-interview-transcript (last accessed May 17, 2021)

[6] Twitter Rules, Following and unfollowing, Following FAQ's (May 18, 2021); https://help.twitter.com/en/using-twitter/following-faqs

A Racketeering Influenced and Corrupt Organization Act ("RICO") enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact. *Boyle v. United States*, 556 U.S. 938, 943-44 (2009). An "association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 946. The Exoo Enterprise is an association-in-act enterprise, and "each person" who associates in fact may be held liable under RICO. *United States v. Turkette*, 452 U.S 576, 583 (1981).

Twitter violated *18 U.S.C. § 1962(d)* when they conspired to violate *18 U.S.C. §§ 1951* and *1952*, by aiding and abetting the enterprise that directed into New Jersey, a violent, systematic, and continuous patterns of racketeering activities to induce fright and panic in order to extort Plaintiffs' employment terminations. A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity. *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir., 1990). The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 288 n. 25 (3d Cir. 1985). The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro-Tech Inc. v. Western Co. of North America*, 824 F.2d 1349, 1356 (3d Cir. 1987). In RICO actions "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery. *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989). When RICO cases are "civil in character, the criminal standard for aiding and abetting applies." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985). RICO is to "be liberally construed to effectuate its remedial purposes."

15

*United States v. Turkette*, 452 U.S. 573, 586-587 (1984).  RICO should be broadly construed and there is nothing in the act that limits its application to organized crime enterprises.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).  To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts."  *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985).  The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses."  *Local 560 (1985),* 780 F. 2d at 288, n. 25.

Applying "teachings of *Mechanical Engineers* in the aiding and abetting context, we note that one important purpose of RICO's civil provisions is to permit recovery by the victims of racketeering activity."  *Petro-Tech*, 824 F.2d at 1357.  Whoever "aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  *Petro-Tech*, 824 F.2d at 1357 (*quoting United States v. Kegler*, 233 U.S. App. D.C. 58 (D.C. Cir. 1984).  "It has long been settled that it is permissible to infer from circumstantial evidence the existence of intent."  *Genty v. Resolution Trust Corp.,* 937 F.2d 899 (3d Cir. 1991).  The court can infer from Twitter's agreement to allow a prohibited user caught conducting prohibited activities undergo an unprecedented username change when it knew the user would continue to conduct prohibited activities was intended to further the enterprise's activities.

The existence of the federal RICO enterprise explained above satisfies New Jersey's RICO requirement.  New Jersey's "RICO law is even broader in scope that its federal counterpart" and its definition of an enterprise is more expansive that that contained in the federal version," and all that is required to satisfy the New Jersey RICO enterprise element is a group of people, however loosely associated, whose existence provides the common purpose of

committing two or more predicate acts." *State v. Ball*, 268 N.J. Super. 72, 105-107 (App. Div. 1993).

### III.     Twitter Aided and Abetted the Development of Exoo's Offensive Content

To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d at 1166.  The Third Circuit has similarly "held a defendant may be liable under RICO if he aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 270 (3d Cir. 1995).

When RICO cases are "civil in character, the criminal standard for aiding and abetting applies." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985).  RICO is to "be liberally construed to effectuate its remedial purposes." *United States v. Turkette*, 452 U.S. 573, 586-587 (1984).  The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro-Tech Inc.,* 824 F.2d at 1356. A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity. *Banks,* 918 F.2d at 421.  The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *Local 560,* 780 F. 2d at 288, n. 25.  To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *Adams*, 759 F.2d at 1166.

To aid and abet requires that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant mut be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant

17

must knowingly and substantially assist the principal violation. *Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 127 (3d Cir. 1999). "The Restatement (second) of Torts § 876(b) holds that liability "for harm resulting to a third person from the tortious conduct of another…[can be imposed upon a party who] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Petro-Tech*, 824 F.2d at 1357. "Plaintiff need not offer direct evidence of intent. Rather, the fact finder may infer a defendant's knowledge and intent from circumstantial evidence." *United States v. Dixon*, 658 F.2d 181, 189, n. 17. (3d Cir. 1981).

## IV.  CONCLUSION

Defendant's motion to dismiss must be denied, because Twitter is not a Good Samaritan entitled to protection.  Twitter aided and abetted an association-in-fact enterprise, because Gadde has a stated common alignment with the Exoo Enterprise's goal to de-platform alleged Nazis. Twitter knowingly agreed to allow ban operator that they caught operating a ban evasion account undergo an unprecedented username change to continue his offensive and harmful conduct.  The offending party was not an unknown or unidentified person as is the hallmark of every case, wherein the provider was a Good Samaritan immunized from liability by *Section 230*.

Further obstructing Twitter's Good Samaritan claim for relief is that in this case, the person posting is identified, and Plaintiffs will prove a direct link between the Exoo Enterprise and Twitter CEO, Jack Dorsey via a verified blue check Twitter user.

For the foregoing reasons, defendants' motions to dismiss should be denied in their entirety.

Respectfully Submitted,

18

Dated: May 19, 2021

_____
Patrick Trainor, Esq.
*Attorney for Plaintiffs.*