**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND, STEVE HARTLEY, RICHARD SCHWETZ, JOBEL BARBOSA, MATTHEW REIDINGER, JOHN HUGO, SEAN-MICHAEL DAVID SCOTT, THOMAS LOUDEN, ZACHARY REHL, AMANDA REHL, K.R., a minor, by and through her father ZACHARY REHL, and her mother AMANDA REHL, MARK ANTHONY TUCCI, | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JSA |
| Plaintiffs,<br><br>vs. | Hon. John M. Vazquez, U.S.D.J.<br><br>Oral Argument Requested |
| CHRISTIAN EXOO a/k/a ANTIFASH GORDON, ST. LAWRENCE UNIVERSITY, TRIBUNE PUBLISHING COMPANY, NEW YORK DAILY NEWS, VIJAYA GADDE; TWITTER, INC., COHEN, WEISS AND SIMON, LLP, | Return Date: July 6, 2021 |
| Defendants. | |

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT EXOO'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

THE MARLBOROUGH LAW FIRM, P.C.
Christopher Marlborough, Esq.
445 Broad Hollow Road, Suite 400 Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com

Richard Torres, Esq
63 Tooker Avenue
Springfield, New Jersey 07081
Phone: (347) 742-5362
E-mail: richardtorresdna@gmail.com

ZMO LAW PLLC
Victoria Medley
260 Madison Avenue, 17th Floor
New York, New York 10016
Phone: (212) 685-0999
Fax: (212) 991-8952
E-mail: vm@zmolaw.com

*Counsel for Defendant Christian Exoo*

**Table of Authorities**                                            **Page**

**US Constitution**

First Amendment                                                      1, 4-9

Fourteenth Amendment                                                 5

**Statutes and Rules**

Labor Management Recording Disclosure Act
29 U.S.C. 401 *et seq.*                                             13

NJ RICO
N.J.S.A. 2C:41                                                      15

RICO
18 U.S.C. §§ 1961–1968                                             1, 12-15

**Cases**

*Amawi v. Pfleugerville Ind. School Dist.*,
373 F. Supp. 3d 717 (W.D. Tx 2018)                                 4

*Bartnicki v. Vopper*, 532 U.S. 514 (2001)                         4-5

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)                                             15

*Fellner v. Tri-Union Seafoods, L.L.C.*, 06-CV-0688 (DMC),
2010 U.S. Dist. LEXIS 36195 (D.N.J. Apr. 13, 2010)                 3

*Garrett v. United States Dep't of Veterans Affairs*,
05-cv-1164 (JLL), 2006 U.S. Dist. LEXIS 65172
(D.N.J. Sep. 13, 2006)                                             11-12

*Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011
(C.D. Cal. 2015)                                                   4

*Hannah v. Johnson & Johnson Inc.*, 18-1422 (FLW),
2020 U.S. Dist. LEXIS 113284 (D.N.J. June 29, 2020)                          15

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982)                      5, 8, 9

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410
(3d Cir. 1997)                                                               2

*Int'l Ass'n of Machinists v. Jackson*, 09-CV-150,
2010 U.S. Dist. LEXIS 15885 (E.D. Pa. Feb. 19, 2010)                        13

*Kowalski v. Tesmer*, 543 U.S. 125 (2004)                                    9

*Planned Parenthood v. Amer. Coal. Of Life*,
945 F. Supp. 1355 (9th Cir 2002)                                         6, 7, 8

*Rankin v. McPherson*, 483 U.S. 378 (1987)                                   5

*Saxton v. Cent. Pa. Teamsters Pension Fund*, 02-CV-986,
2003 U.S. Dist. LEXIS 23983 (E.D. Pa. Dec. 9, 2003)                         12

*Schiedler v. NOW, Inc.*, 537 U.S. 393 (2003)                               13

*Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979)                    4-5

*State v. Metzinger*, 456 S.W.3d 84 (Mo. Ct. App. 2015)                    6, 7

*Thompson v. Thompson*, 484 U.S. 174 (1988)                                 12

*United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Mar. 2011)               8

*United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020)               6

*United States v. Stock*, 728 F.3d 287 (3d Cir 2013)                         5

*United States v. Viefhaus*, 168 F. 3d 392 (10th Cir 1999)                  5-6

*United States v. White*, 670 F.3d 498 (4th Cir. 2012)                       7

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993)                              2

*Watts v. United States*, 394 U.S. 705 (1969)                    6

## **Introduction**

Defendant Exoo submits this reply to Plaintiffs' opposition to his motion to dismiss the First Amended and Supplemental Complaint ("FASC"). Plaintiffs' opposition does nothing more than attempt to bolster a fantastical conspiracy theory with inadmissible material well beyond the four corners of the pleadings. Plaintiffs' brief relies on these outside sources at the expense of responding substantively to Plaintiffs' legal arguments.

Plaintiffs ignore Defendant Exoo's argument that they failed to satisfy the elements for intrusion upon seclusion claim. They provide no support for their position that a private civil cause of action exists for the criminal statutes which serve as the basis for Counts IV, V, VI. They fail to rebut Exoo's argument that his alleged actions were anything other than constitutionally-protected speech or to plausibly demonstrate that Exoo's statements could amount to true threats. Moreover, Plaintiffs fail to plausibly assert that Exoo is guilty by association for the actions of unnamed third parties and for retweeting news articles and statements from other researchers. Finally, Plaintiffs failed to satisfy RICO's predicate act requirement and failed to plausibly allege the existence of a RICO enterprise or a RICO conspiracy.

## <u>Argument</u>

**A. The Court May Consider Exoo's Exhibits Incorporated By Reference in the Complaint and Subject to Judicial Notice**

Plaintiffs misconstrue the legal standard for consideration of documents outside the complaint on a motion to dismiss. *See* Opp. Brief at 5. The vast majority of the exhibits submitted by Plaintiffs were either incorporated by reference into the Complaint or judicially noticeable.

With respect to documents incorporations by reference into the Complaint, "the primary problem raised by looking to documents outside the complaint -- lack of notice to the plaintiff -- is dissipated "where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint."" *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

Plaintiffs' Exhibits include the very Twitter tweets upon which Plaintiffs' claims are based and documents linked to those Tweets that served as the basis for Plaintiffs' claims. *See* Torres Decl., Exhs. B1-B11. In some cases, Plaintiffs accuse Defendant Exoo of being liable for merely retweeting or reposting information previously posted by other Twitter users or news articles referring to the Plaintiffs. *See e.g.*, Torres Decl., Exhs. B-3 (Exoo-Scott Tweets), B-5, Exoo-Rehl Tweets at 8

(quoting Rehl, "It's not a Proud Boys Rally, Were not interested in having any racist groups there"), 41, F-1, F-2 (Collectively, the "WANaziWatch" documents). These documents are also incorporated by reference into the Complaint.

In addition, several defense exhibits are government documents which may be judicial noticed by the Court, including the Terrorism Assessment Reports of the N.J. Dep't of Homeland Security and Preparedness (Torres Decl., Exhs. C and D). *See* Exoo Brief at 6, fn. 3 citing *Fellner v. Tri-Union Seafoods, L.L.C.*, 06-CV-0688 (DMC), 2010 U.S. Dist. LEXIS 36195, at *19 fn. 8 (D.N.J. Apr. 13, 2010) (taking judicial notice of publicly available governmental reports).

Plaintiffs take exception to the consideration of certain other government documents created after the filing of the FASC. Plaintiff Rehl maintains that he is innocent of the conspiracy and other charges relating to his alleged participation and coordination of the Proud Boys' alleged insurrectionist activities at the Capitol riot. *See* Opp Brief at 4. For this motion, Defendant Exoo agrees to withdraw from the Court's consideration Plaintiff Rehl's criminal indictment (Torres Decl., Exh. E), the Complaint and information concerning the leaders of Super Happy Fun America's participation in the Capitol riot (Torres Decl., Exhs. G1-G2), and the Canadian government's document designating the Proud Boys as a terrorist entity.

**B. Plaintiffs' Exhibits May Not Be Considered in Opposition to the Motion**

Plaintiffs attempt to impermissibly bolster their own pleading by submitting news articles and blog posts outside the four corners of the FASC. *See* Plaintiffs' Opp., Exhibits A-E. First, Plaintiffs' articles and blog posts were not submitted with a declaration supporting their admission. Second, unlike the publicly issued government documents submitted by Defendant Exoo, none of Plaintiffs' exhibits are subject to judicial notice. Third, none of the documents were attached as exhibits to the Complaint and only Exhibit A was even referenced in the FASC. Fourth, all but one of the articles (Exhibits B-E) were created *after* Plaintiffs' Motion to Amend was filed. Finally, courts routinely refuse to consider internet articles and blog posts like those submitted by Plaintiffs at the pleading stage. *Gerritsen v. Warner Bros. Entm't Inc*., 112 F. Supp. 3d 1011, 1025-26 (C.D. Cal. 2015) ("[T]he court can consider only documents that can be judicially noticed or that have been incorporated by reference in the complaint, the court cannot consider the blog post purportedly made by Gerritsen."). The Court should reject Plaintiffs' unfair surprise tactic and disregard Plaintiffs' exhibits.

**C. Defendant Exoo is Protected by the First Amendment**

Plaintiffs fail to rebut Defendant Exoo's argument that his speech is protected by the First Amendment. First, it is well settled that "state action to punish the publication of truthful information seldom can satisfy constitutional

standards." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 102 (1979), *quoted in*

*Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001).

Second, Plaintiffs falsely assert that Exoo's stated efforts to "expose fascists,

get them fired, dehomed [sic], kicked out of school, etc.," do not constitute

political speech. *See* Opp. at 13. However, alerting employers of their employees'

public, political actions is protected speech and is no different from a boycott for

non-economic purposes – an online equivalent of picketing. *See Amawi v.*

*Pfleugerville Ind. School Dist.*, 373 F. Supp. 3d 717, 747 (W.D. Tx 2018) (noting

"political boycotts are protected speech"). The Supreme Court held, "[t]he use of

speeches, marches, and threats of social ostracism cannot provide the basis for a

damages award." *NAACP v. Claiborne Hardware*, 458 U.S. 886, 934 (1982)

(noting "[p]etitioners sought to vindicate rights of equality and of freedom that lie

at the heart of the Fourteenth Amendment itself"). *Id.* at 914 (internal quotations

omitted). "The inappropriate or controversial character of a statement is irrelevant

to the question whether it deals with a matter of public concern." *Rankin v.*

*McPherson*, 483 U.S. 378, 387 (1987).

Third, contrary to Plaintiffs' assertions, a determination as to whether a

statement is a true threat can be made on a motion to dismiss. *See United States v.*

*Viefhaus*, 168 F. 3d 392, 397 (10th Cir 1999)("[i]f there is no question that a

defendant's speech is protected by the First Amendment, the court may dismiss the

charge as a matter of law."); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir 2013) ("[i]t is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat."). *See also Watts v. United States*, holding as a matter of law that the defendant's statement was merely 'political hyperbole' that did not constitute a true threat. 394 U.S. 705, 708 (1969).

Fourth, Plaintiffs incorrectly claim that Defendant Exoo's statements constitute true threats to Plaintiffs. When determining whether a true threat exists, courts must consider the context in which the statement is made. In a similar case, the Missouri Court of Appeals found that the context of Defendant's Tweets concerning rival sports teams revealed that they did not constitute a true threat. *See State v. Metzinger*, 456 S.W.3d 84, 97 (Mo. Ct. App. 2015) ("While Defendant's references to pressure cookers and allusions to the Boston Marathon bombing were tasteless and offensive, the context of his tweets was such that a reasonable recipient would not interpret them as serious expressions of an intent to commit violence."). Likewise, "sharing public information, while potentially offensive and disagreeable, does not rise to the level of a true threat." *United States v. Cook*, 472 F. Supp. 3d 326, 335 (N.D. Miss. 2020).

In his opening brief, Defendant Exoo inadvertently cited a dissent as the holding in *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002). However, the majority opinion in that

case provides that a true threat must be "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *Id*. at 1078 (*quoting United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976)). In contrast to this case, the context of defendants' statements in *Planned Parenthood* called for the immediate murder of the plaintiffs' doctors after several other doctors had been assassinated under similar circumstances. *Id*. at 1079. *See also United States v. White*, 670 F.3d 498, 505-506, 513-514 (4th Cir. 2012) (holding that the First Amendment protected even the rights of a white supremacist's online disclosure of the home address of a Jewish civil rights lawyer while calling for the lawyer's assassination).

In this case, as in *Metzinger* and *White*, but in contrast to *Planned Parenthood*, the statements at issue do not include any true threats. At worst, Plaintiffs refer to a tweet responding to NJEHA's cancelation of a white supremacist rally amid widespread public outrage. *See* Torres Decl. Exh. B-2, Exoo D'Ambly Tweets at 33-35 (noting the cancellation and stating "NJEHA would like to formally thank … Jewish supremacist news outlets and many other communist snowflakes who are making us a household name"). Exoo tweeted that he was going to spend the next week wrecking Plaintiff D'Ambly's life. *Id*. at 36. *See also* FASC at ¶¶ 55, 58. In context, it is clear that Defendant Exoo's tweets do not constitute a true threat. Defendant Exoo was clearly communicating the lawful

means by which he conducts his open-source information gathering activities, rather than a threat of murder or physical violence like the defendants in *Planned Parenthood*. Further, Plaintiff D'Ambly's status as a public figure heightens Defendant Exoo's First Amendment protections. *United States v. Cassidy*, 814 F. Supp. 2d 574, 583 (D. Mar. 2011)(finding threatening and sexually vulgar tweets directed at a religious leader protected in part because of the leader's public status).

Fifth, Plaintiffs allege Defendant Exoo is guilty by association for: 1) instances of alleged property damage against certain Plaintiffs by "unknown persons;" 2) retweeting doxing posts by third parties; and 3) retweeting media articles about Plaintiffs. *See* Opp. at 23. *See also* FASC at ¶¶ 128, 82; Torres Decl. Exh. B-3, retweeting WaNaziWatch Tweets; Torres Decl. Exh. B-5, Exoo Rehl Tweets at 8, 41-42 (retweeting PhillyVoice.com article concerning Rehl's coordination of an alleged white supremacist rally).

In *Claiborne*, the Supreme Court rejected similar efforts to prosecute individuals for the conduct of third parties. The Court noted:

> [a] massive and prolonged effort to change the social, political, and economic structure of a local environment cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts. Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means, that carefully identify the impact of such unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity.

*NAACP v. Claiborne,* 458 U.S. at 933-34.

Plaintiffs do not even come close to plausibly alleging that Defendant Exoo is responsible for the alleged violent or destructive actions of any non-parties.

Finally, Plaintiffs argue that the volume of calls made to employers strips Exoo of First Amendment protections and causes harm to Plaintiffs' employers' businesses. Plaintiffs lack standing to make this argument. "A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). None of the Plaintiffs alleged to be business owners affected by any harassment. Moreover, several of Plaintiffs' employers expressed appreciation for being informed about the dangerous extremist activities of their employees. *See e.g.*, Torres Decl., Exh. F-2, WANaziWatch Tweets at 11 ("Thank you for sharing your concerns").

## D. Count II For Tortious Interference Must Be Dismissed

Despite Plaintiffs claims to the contrary, the FASC clearly does not provide sufficient information to plausibly allege that each of the Plaintiffs lost their jobs as a result of Defendant Exoo's activities. Plaintiffs refer to a vague statement in paragraph 37 of the FASC that all of the Plaintiffs were terminated. However, the sections of the FASC referring to the individual Plaintiffs' experiences, do not allege that Plaintiffs Hartley, Tucci, Schwetz, Reidinger, Wolkind, Amanda Rehl

or K.R. suffered any loss of employment. ¶¶ 83-121. Moreover, with respect to Plaintiff Amanda Rehl, the FASC includes no allegation whatsoever concerning her employment, disclosure of her employer's information, efforts to contact her employer, or loss of employment. ¶¶ 83-88. Plaintiffs' threadbare allegations fail to satisfy the most liberal notice pleading standard.

Finally, the opposition brief cites the facts surrounding the terminations of Plaintiffs D'Ambly and Louden as their best examples of tortious interference. *See* FASC at ¶¶ 26, 139. However, it is clear that D'Ambly and Louden's employers only terminated them after their employers independently confirmed their participation in extremist activities and determined that these activities were inconsistent with the employers' values. First, D'Ambly maintains that he was terminated for his white supremacist views, while non-white employees were not punished or terminated for their "racially identifiable associations." *Id*. at ¶¶ 58. *See* ECF No. 35 at 7 (admitting "D'Ambly was terminated for being an alleged "white supremacist," because he was captured on video saying the word "kike"). *See also* ECF No 81 at 12 (complaining that D'Ambly's union does not support him because of its opposition to white supremacy). In the case of Plaintiff Louden, Defendant Exoo identified Louden's dangerous extremist activities, including the formation of a militia unit in preparation for an imminent race war and the recruitment of a top sniper for that unit. *See* Torres Decl., Exh. B-11, Exoo-Louden

Tweets at 8, 9,11, 13, 28, 30. *But see* Opp. at 18 (disingenuously asserting that Louden was doxed merely because he "went to a gun range"). Louden admitted he was only terminated after his employer "quizzed him about his membership in a right wing extremist group" ¶¶ 139. *See also* Torres Decl., Exh. B-XI, Exoo-Louden Tweets at 31 (Jefferson Health Twitter Account: "Upon review of the facts, we will address the matter consistent with our values, which condemn hate speech and violence of any kind."). The law does not require that Louden's double life as a sniper-recruiting, militia leader gunning for a race war remain a secret from his employer, and it does not call for punishment of the person who warns others of that dangerous secret.

In sum, Plaintiffs clearly fail to state a claim for tortious interference. Rather, the FASC, including the tweets incorporated by reference in the FASC, reveal that to the extent any Plaintiffs were terminated from their jobs, their respective employers made informed decisions about the values of their respective businesses and the individuals they choose to retain for employment.

## E. Count III For Intrusion Upon Seclusion Must Be Dismissed

Plaintiffs' opposition papers failed to address the defense arguments concerning their claims for intrusion upon seclusion. *See generally*, Opp Brief. This claim should be dismissed as the inadequacy of the pleading is not in dispute. "In the Third Circuit, courts have routinely held [claims] to have been abandoned,

if not defended in the plaintiff's opposition to defendant's motion" to dismiss. *Garrett v. United States Dep't of Veterans Affairs*, 05-cv-1164 (JLL), 2006 U.S. Dist. LEXIS 65172, at \*26 n.2 (D.N.J. Sep. 13, 2006). *See Saxton v. Cent. Pa. Teamsters Pension Fund*, 02-CV-986, 2003 U.S. Dist. LEXIS 23983, at \*85 (E.D. Pa. Dec. 9, 2003) ("We suppose that, given their lack of response, Plaintiffs do not challenge this dismissal."). Therefore, Plaintiffs' claims for intrusion upon seclusion must be dismissed.

## F.  Counts IV, V, and VI Are Not Actionable In a Civil Case

Plaintiffs' opposition papers also fail to address any of the cases cited by Exoo holding that there is no private cause of action for the criminal statutes that serve as the basis for Counts IV, V and VI of the FASC. Plaintiffs merely allege that a private cause of action must exist because prohibiting the alleged conduct is consistent with legislative intent. *See* Opp. at 23-24. However, "a private remedy will not be implied unless legislative intent can be inferred from statutory language or elsewhere." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). Plaintiffs fail to cite any legislative language to support their position.

## G. Counts IX and X for RICO Violations Must Be Dismissed

### 1.  *Plaintiffs Fail to Satisfy the Predicate Acts Requirement*

In his opening papers, Defendant Exoo noted the legal distinction between allegations of "extortion" and "coercion." *See* Exoo Brief at 29-33. Extortion

requires that the tortfeasor "obtain" the property of the victim, while coercion does not. Plaintiffs ignore this fundamental "obtainment" requirement and allege that Defendant Exoo committed extortion even though he did not obtain any of the Plaintiffs' jobs or other property. *See* Opp. at 3, 9, 12-13, 17, 18, 20-24.

Plaintiffs then raise an all-new basis for their RICO claims under the completely irrelevant Labor Management Recording Disclosure Act (LMDRA), which is not referenced at all in the FASC. *See* Opp. at 20-22. The LMRDA only applies to labor organizations and does not change the definition of extortion as articulated by the United States Supreme Court in *Schiedler v. NOW, Inc*., 537 U.S. 393, 405 (2003). While Plaintiff D'Ambly may have had a property interest in his job as a printer, Defendant Exoo did not "obtain" Plaintiff D'Ambly's job. *See Int'l Ass'n of Machinists v. Jackson*, 09-CV-150, 2010 U.S. Dist. LEXIS 15885, at *21-22 (E.D. Pa. Feb. 19, 2010) ("the complaint d[id] not allege that the Individual Defendants obtained Plaintiffs' jobs.").

2. *Plaintiffs Fail To Plausibly Allege a RICO Enterprise or Conspiracy*

Plaintiffs' opposition fails to rebut Exoo's argument that the FASC does not plausibly identify any RICO enterprise. Plaintiffs' suggestion that Exoo's employer, Twitter, and a top Twitter executive are taking orders from a part-time college librarian in furtherance of Exoo's goal of exposing the activities of white supremacists and fascists is absurd. Expanding the scope of their cockamamie

conspiracy, Plaintiffs now claim that Exoo controls the Teamsters. *See* Dkt. Entry

No. 81, Opp. to CWS Motion to Dismiss (alleging "[t]he Teamsters were a captive

labor organization controlled and influenced by the Exoo Enterprise").

### 3. *Plaintiffs Should be Required To File a RICO Statement*

Plaintiffs failed to address Defendant Exoo's argument that Plaintiffs should

be ordered to file a RICO Statement pursuant to Local Civil Rule 16.1(b)(4) in the

event the RICO claims are not dismissed with prejudice. *See* Exoo Brief at 35-36.

Yet, Plaintiffs' opposition papers highlight the need for a RICO statement to

clarify their vague and convoluted racketeering claims. For example, the FASC

suggests that the enterprise includes more than 100,000 members. *See* Exoo Brief

at 2; Torres, Decl. Exh. B-3, Exoo-Scott Tweets (revealing that Exoo merely

retweeted Scott's information posted by another Twitter user); ¶¶ 128 (alleging that

Exoo was personally liable for doxing Plaintiff Scott); FASC at ¶¶ 133 (asserting

that Exoo's Tweet concerning one Plaintiff was retweeted more than 100,000

times). Plaintiffs deny that they suggested the Exoo enterprise includes 100,000

people, but admit they failed to give the Court any indication of the size of the vast

enterprise that Exoo purportedly operates. *See* Opp. at 2 ("Plaintiffs have never

estimated the size of the enterprise"). A RICO statement can only provide more

clarity as to Plaintiffs' vague and ambiguous claims. *See* Torres Decl., Exh. H,

Model RICO Case Order at 1 (requiring plaintiffs to identify a list of alleged wrongdoers and identify the scope of the enterprise).

## H. Counts VIII for N.J. RICO Violations Must Be Dismissed

Plaintiffs' opposition failed to address Exoo's arguments concerning Plaintiffs' NJ RICO claim except to state that the New Jersey statute is broader than the federal statute. *See* Exoo Brief at 36-38. Plaintiffs fail to allege any predicate acts under the New Jersey RICO statute, and fail to plausibly allege a New Jersey RICO enterprise.

## I.  Jurisdiction over the claims of the Non-New Jersey Plaintiffs

Plaintiffs fail to address Defendant Exoo's argument concerning jurisdiction over the claims of the eleven non-New Jersey Plaintiffs. *See* Exoo Brief at 38-39. In the event that the Federal RICO claims are dismissed, all claims of the non-New Jersey Plaintiffs must also be dismissed for lack of personal jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1782 (2017); *Hannah v. Johnson & Johnson Inc*., 18-1422 (FLW), 2020 U.S. Dist. LEXIS 113284, at *101 (D.N.J. June 29, 2020).

### Conclusion

For the foregoing reasons, the Court should grant Defendant Exoo's motion to dismiss Plaintiffs' First Amended and Supplemental Complaint with prejudice.

Dated:        June 17, 2021
              Springfield, New Jersey

                              Respectfully submitted,

                              _____
                              Richard Torres, Esq.
                              63 Tooker Avenue
                              Springfield, New Jersey 07081
                              Phone: (347) 742-5362
                              E-mail: richardtorresdna@gmail.com

                              **THE MARLBOROUGH LAW FIRM, P.C**
                              Christopher Marlborough
                              445 Broad Hollow Road, Suite 400
                              Melville, New York 11747
                              Phone: (212) 991-8960
                              Fax: (212) 991-8952
                              E-mail: chris@marlboroughlawfirm.com

                              **ZMO Law PLLC**
                              Victoria Medley
                              260 Madison Avenue, 17th Floor
                              New York, New York 10016
                              Phone: (212) 685-0999
                              Fax: (212) 991-8952
                              E-mail: vm@zmolaw.com

                              *Counsel for Defendant Christian Exoo*