# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL; MARK ANTHONY TUCCI,<br><br>       Plaintiffs,<br><br>  vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP, UNNAMED ASSOCIATES 1 – 100,<br>       Defendants. | Civil Action No.<br><br>2:20-cv-12880-JMV-JSA<br><br>Honorable John Michael Vazquez<br>United States District Judge<br><br>**Oral Argument Requested**<br><br>Motion Date: July 6, 2021 |

## REPLY IN SUPPORT OF TWITTER, INC.'S AND VIJAYA GADDE'S MOTION TO DISMISS WITH PREJUDICE COUNTS VIII-XII OF PLAINTIFFS' FIRST AMENDED COMPLAINT AND CROSS-CLAIMS OF COHEN, WEISS AND SIMON

| | |
|---|---|
| Lawrence S. Lustberg (ID#023131983)<br>Lauren James-Weir (ID#025202007)<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4731<br>Facsimile: (973) 639-6285<br>llustberg@gibbonslaw.com<br>ljames-weir@gibbonslaw.com | Patrick J. Carome (*pro hac vice*)<br>Ari Holtzblatt (*pro hac vice*)<br>**WILMER CUTLER PICKERING<br> HALE AND DORR LLP**<br>1875 Pennsylvania Avenue, NW<br>Washington, D.C. 20006<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>patrick.carome@wilmerhale.com<br>ari.holtzblatt@wilmerhale.com<br><br>*Attorneys for Defendants Twitter, Inc.<br> and Vijaya Gadde* |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

I. The Court Should Dismiss Counts VIII, IX, XI, And XII, As To Which Plaintiffs' Opposition Simply Defaults............................................2

II. Section 230 Mandates Dismissal Of All Of Plaintiffs' Claims..................3

    A. The Court Can, And Should, Apply Section 230 At The Motion To Dismiss Stage..................................................................4

    B. Twitter And Ms. Gadde Did Not Develop The Content At Issue ..............................................................................................5

    C. Plaintiffs' Remaining Arguments Fail ............................................8

III. The FAC Fails To Plausibly Allege A RICO Conspiracy Offense..........10

    A. The FAC Does Not Allege Multiple Elements Of A RICO Conspiracy Claim..........................................................................10

    B. Plaintiffs Cannot Save Their RICO Conspiracy Claim Based On An Unpled Aiding-And-Abetting Theory ...............................14

CONCLUSION .............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albert v. Specialized Loan Servicing, LLC*,
 2020 WL 865435 (D.N.J. Feb. 14, 2020) ....................................................... 3

*Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*,
 1999 WL 727402 (D.N.M. Mar. 1, 1999) ..................................................... 10

*Blumenthal v. Drudge*,
 992 F. Supp. 44 (D.D.C. 1998) .................................................................. 9, 10

*Burroughs v. City of Newark*,
 2013 WL 4047588 (D.N.J. Aug. 9, 2013) ..................................................... 15

*Cent. Bank of Denver v. First Interstate Bank of Denver*,
 511 U.S. 162 (1994) ...................................................................................... 14

*Doe v. Internet Brands, Inc.*,
 824 F.3d 846 (9th Cir. 2016) .......................................................................... 8

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2009) .................................................................... 5, 6

*Fed. Trade Comm'n v. Accusearch Inc.*,
 570 F.3d 1187 (10th Cir. 2009) ...................................................................... 7

*Fields v. Twitter*,
 217 F. Supp. 3d 1116 (N.D. Cal. 2016) ......................................................... 6

*Force v. Facebook, Inc.*,
 934 F.3d 53 (2d Cir. 2019) ................................................................... 4, 5, 6, 7

*Green v. Am. Online (AOL)*,
 318 F.3d 465 (3d Cir. 2003) ................................................................ 4, 6, 7, 9

*Huon v. Denton*,
 841 F.3d 733 (7th Cir. 2016) .......................................................................... 5

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010) .................................................................... 11, 12

*Inventel Prods., LLC v. Li*,
 2019 WL 5078807 (D.N.J. Oct. 10, 2019) ..................................................... 3

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .............................................................. 1, 6, 7, 9

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .................................................................... 7

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) .......................................................................... 11

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ................................................................. 4, 7, 9

*Obado v. Magedson*,
    2014 WL 3778261 (D.N.J. July 31, 2014) ............................................. 4, 7, 9

*Obado v. Magedson*,
    612 F. App'x 90 (3d Cir. 2015) .................................................................. 4, 9

*Olson v. Ako*,
    724 F. App'x 160 (3d Cir. 2018) ............................................................ 10, 14

*Pennsylvania Assoc. of Edwards Heirs v. Rightenour*,
    235 F.3d 839 (3d Cir. 2000) ....................................................................... 14

*Powell v. Verizon*,
    2019 WL 4597575 (D.N.J. Sept. 20, 2019) ................................................... 3

*Radcliff v. Radcliff*,
    2020 WL 7090687 (D.N.J. Dec. 4, 2020) ..................................................... 5

*Rehkop v. Berwick Healthcare Corp.*,
    95 F.3d 285 (3d Cir. 1996) .......................................................................... 11

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989) ........................................................................ 11

*Saponaro v. Grindr, LLC*,
    93 F. Supp. 3d 319 (D.N.J. 2015) .................................................................. 4

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003) .................................................................................... 12

*Shiamili v. Real Estate Grp. of N.Y., Inc.*,
    952 N.E.2d 1011 (N.Y. 2011) ........................................................................ 7

*The Knit With v. Knitting Fever, Inc.*,
    625 F. App'x 27 (3d Cir. 2015) .............................................................. 13, 14

*United States v. Cain*,
    671 F.3d 271 (2d Cir. 2012) .................................................................................. 12

*United States v. Local 560 of Int'l Brotherhood of Teamsters*,
    780 F.2d 267 (3d Cir. 1985) .................................................................................. 11

*United States v. Tropiano*,
    418 F.2d 1069 (2d Cir. 1969) .......................................................................... 11, 12

*Zeran v. Am. Online, Inc*,
    129 F.3d 327 (4th Cir. 1997) ............................................................... 6, 8, 9, 10

**STATUTES, RULES, AND REGULATIONS**

47 U.S.C. § 230 ........................................................................................... *passim*

47 U.S.C. § 230(c)(1) ....................................................................................... 4, 5, 6

47 U.S.C. § 230(f)(3) ............................................................................................. 5

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 876(b) ............................................................... 15

## INTRODUCTION

Plaintiffs' Opposition to Twitter's and Twitter executive Vijaya Gadde's ("Twitter Defendants") motion ignores four of the five causes of action that their First Amended Complaint ("FAC") asserted against these Defendants. Instead, Plaintiffs use their Opposition solely to address arguments relating to their RICO conspiracy claim (Count Ten). But Plaintiffs offer no persuasive reason why 47 U.S.C. § 230 ("Section 230") does not mandate dismissal of that claim, as well as all of their other claims against the Twitter Defendants. Plaintiffs seek to elide Section 230 by arguing that Twitter and Ms. Gadde "develop[ed]" the online content that allegedly led to Plaintiffs' injuries (Opp. 6-14, ECF No. 85), but that position fails because Plaintiffs have not, and cannot, allege any facts sufficient to show that Twitter and Ms. Gadde "contributed" at all, let alone "materially," to Mr. Exoo's alleged doxxing or to any other allegedly "unlawful" content. *See Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014).

Moreover, even aside from Section 230, the Court should specifically dismiss Count Ten because the FAC fails to allege the essential elements of a RICO conspiracy. As explained in the Twitter Defendants' motion to dismiss (at 25-34, ECF No. 78-1), the FAC fails to plausibly allege: (1) the existence of a racketeering "enterprise;" (2) that the alleged wrongful acts of the alleged enterprise caused the injuries of the Plaintiffs; (3) that the alleged enterprise committed any predicate acts of "racketeering;" or (4) any "agreement" among those who allegedly entered into the conspiracy. Plaintiffs ignore the

insufficiencies in their pleading and now attempt to pivot to a new theory not alleged in the FAC: that Twitter and Ms. Gadde are liable for "aiding and abetting" the commission of a RICO predicate offense. Opp. 17-18. But there is no aiding and abetting cause of action under RICO. And in any event, Plaintiffs' failure to plausibly allege the enterprise, predicate acts, and proximate cause elements of a RICO offense would still render such a claim legally insufficient.

All claims against the Twitter Defendants should be dismissed. And because Plaintiffs have still failed to state a claim even after amendments responding to the prior motion to dismiss, dismissal should be with prejudice.

## ARGUMENT

### I. The Court Should Dismiss Counts VIII, IX, XI, And XII, As To Which Plaintiffs' Opposition Simply Defaults.

Plaintiffs default on four of the claims they assert against Twitter and Ms. Gadde—negligent entrustment (Count Eleven), breach of an alleged covenant of good faith (Count Twelve), and violations of RICO and the New Jersey anti-racketeering statute (Counts Eight and Nine).[1] Twitter and Ms. Gadde moved to dismiss all four claims, in addition to Plaintiffs' RICO conspiracy claim (Count Ten), pursuant to Section 230, *see* Mot. 11-19, and based on Plaintiffs' failure to plead essential elements of each claim, *see* Mot. 19-38. Plaintiffs' Opposition, however, responds only to the Twitter Defendants' arguments regarding

---

[1] The claim under New Jersey's anti-racketeering statute was asserted solely by Plaintiff D'Ambly. FAC ¶¶ 186-190.

Plaintiffs' RICO conspiracy claim (Count Ten). By ignoring the Twitter Defendants' arguments with respect to Counts Eight, Nine, Eleven, and Twelve, Plaintiffs leave the Twitter Defendants' arguments unrebutted and thereby concede that these Counts should be dismissed. *Powell v. Verizon*, 2019 WL 4597575, at *9 (D.N.J. Sept. 20, 2019) ("A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss it under Fed. R. Civ. P. 12(b)(6)."); *see also Albert v. Specialized Loan Servicing, LLC*, 2020 WL 865435 at *4 (D.N.J. Feb. 14, 2020) (collecting cases).[2]

## II.  Section 230 Mandates Dismissal Of All Of Plaintiffs' Claims.

With respect to those arguments to which Plaintiffs do respond, their Opposition provides no basis to avoid dismissal of Plaintiffs' RICO conspiracy claim (in addition to their other claims) based on Section 230. Mot. 11-19. Plaintiffs do not dispute that their claims against Twitter and Ms. Gadde satisfy two of the three prerequisites for Section 230 immunity: "'that the defendant is a provider or user of an 'interactive computer service'" and "'that the asserted claims treat the defendant as the publisher or speaker of the information.'" *Inventel Prods., LLC v. Li*, 2019 WL 5078807, at *8 (D.N.J. Oct. 10, 2019); *see also* Mot. 14-19. And Plaintiffs miss the mark in challenging the third prerequisite—"that the information is provided by another 'information content

---

[2]  For the same reason, the Court should dismiss the cross-claims filed against Twitter and Ms. Gadde by co-defendant Cohen, Weiss, and Simon LLP ("CWS"), as to which CWS has likewise failed to respond. *See* Mot. 38-40.

provider'"—because the content at issue here (contained in Mr. Exoo's Tweets) was indisputably created and developed not by Twitter or Ms. Gadde, but by Mr. Exoo. *See* Mot. 15-16. All claims against Twitter and Ms. Gadde should be dismissed with prejudice on this basis alone.

### A. The Court Can, And Should, Apply Section 230 At The Motion To Dismiss Stage.

Plaintiffs are wrong that Section 230 should not be adjudicated on a motion to dismiss.[3] Opp. 6. As numerous courts have held, Section 230 immunity should be determined "at the earliest possible stage of the case because [it] protects websites not only from 'ultimate liability' but also from 'having to fight costly and protracted legal battles.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 63 n.15 (2d Cir. 2019) ("[T]he application of Section 230(c)(1) is appropriate at the pleading stage when . . . 'the statute's barrier to suit is evident from the face of'" the complaint). For this reason, myriad cases have dismissed claims under Section 230 on the pleadings, including the leading case in the Third

---

[3] Plaintiffs separately err in arguing that the Court should convert the present motion into a motion for summary judgment. While Plaintiffs assert (at 5) that the Twitter Defendants' motion cites "frivolous materials that are outside the complaint," the only extra-complaint "material[]" that the Twitter Defendants cited in their motion was the federal indictment of several Proud Boys, including Plaintiff Zachary Rehl, for crimes allegedly committed in the January 6 attack at the U.S. Capitol. *See* Mot. 4-5 and n. 3. Plaintiffs have no response to the Twitter Defendants' showing that the indictment is judicially noticeable. Mot. n.3. And it is well-settled that "a court may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment." *Radcliff v. Radcliff*, 2020 WL 7090687, at *4 (D.N.J. Dec. 4, 2020).

4

Circuit. *See Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003); *Obado v. Magedson*, 2014 WL 3778261 (D.N.J. July 31, 2014), *aff'd* 612 F. App'x 90 (3d Cir. 2015); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015). This Court should do the same here.

> **B.    Twitter And Ms. Gadde Did Not Develop The Content At Issue.**

Plaintiffs further err in contending that Twitter and Ms. Gadde are not entitled to Section 230 immunity because they "develop[ed]" the content at issue. Opp. 6 (citing 47 U.S.C. § 230(f)(3)). For purposes of §§ 230(c)(1) & (f)(3), "a defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'" *Force*, 934 F.3d at 68; *accord Fair Hous. Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1167-68 (9th Cir. 2009); *Jones*, 775 F.3d at 410-11. Here, Plaintiffs allege that the portions of Mr. Exoo's Tweets that "made the content itself 'unlawful,'" *Force*, 934 F.3d at 68, were Mr. Exoo's alleged disclosure of Plaintiffs' private information and Mr. Exoo's alleged "direct[ion]" of others to harass Plaintiffs and their acquaintances. *See, e.g.*, FAC p. 2. But Twitter and Ms. Gadde are not alleged to have contributed at all—let alone "materially"—to any of that content. The FAC does not allege that Twitter or Ms. Gadde authored even a single word in Mr. Exoo's Tweets. *See Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). Nor does it allege that they "edit[ed] (or suggest[ed] edits)" for that content. *See Force*, 934 F.3d at 69-70.

5

Instead, the FAC alleges only that Twitter and Ms. Gadde did not remove Mr. Exoo's allegedly unlawful Tweets and did not ban Mr. Exoo from Twitter. FAC ¶¶ 30, 198. But the "'material contribution'" test "'draw[s] the line at the crucial distinction between, on the one hand, taking actions . . . to . . . display . . . actionable content,'" for which Section 230(c)(1) provides immunity, "'and, on the other hand, responsibility for what makes the displayed content [itself] illegal or actionable,'" for which Section 230(c)(1) immunity is not available. *Force*, 934 F.3d at 69. Not removing a user's content, or not blocking a user's account, falls squarely on the side of "taking actions . . . to . . . display" the content. *E.g.*, *Jones*, 755 F.3d at 414; *Force*, 934 F.3d at 70; *Roommates.com*, 521 F.3d at 1174. Indeed, such conduct is a paradigmatic type of "publishing" activity that Section 230 was intended to protect. *See, e.g.*, *Green*, 318 F.3d at 470 (Section 230 immunized website from claims "for its alleged negligent failure to properly police its network"); *Zeran v. Am. Online, Inc*, 129 F.3d 327, 328 (4th Cir. 1997) (Section 230 immunity applied even if service provider knew about, but "unreasonably delayed in removing[,] defamatory messages"); *Fields v. Twitter*, 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016) ("Providing accounts to [a user] is publishing activity, just like monitoring, reviewing, and editing content.").

Similarly, allegations that Twitter and Ms. Gadde acted contrary to Twitter's terms of service by not banning Mr. Exoo from Twitter do not transform them into content developers. Opp. 7. As the court explained in *Obado*, "§ 230 immunity extends to the service provider's decisions about how to treat

6

potentially objectionable material." *Obado*, 2014 WL 3778261, at *5. Courts have therefore repeatedly rejected the argument that Section 230 does not apply when a defendant fails to remove content "in violation of [its] terms of use and privacy policies." *Id.*; *see also, e.g.*, *Green*, 318 F.3d at 471; *Force*, 934 F.3d at 71; *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014).

The Section 230 case law on which plaintiffs rely—*Accusearch*, *Internet Brands*, and the portion of *Roommates.com* that allowed a housing discrimination claim to proceed (Opp. 10-12)—are entirely inapposite. *Roommates* and *Accusearch* involved allegations that the defendants specifically sought, or required, the posting of inherently illegal content. In *Accusearch*, the website operator allegedly paid for and "solicited requests for confidential information protected by law"—thereby "'almost inevitably requir[ing] [the operator's researchers] to violate'" the law, *Shiamili v. Real Estate Grp. of N.Y., Inc.*, 952 N.E.2d 1011, 1019 (N.Y. 2011) (quoting and distinguishing *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1192 (10th Cir. 2009)); *see also Jones*, 755 F.3d at 414 (distinguishing *Accusearch*). "[T]he website in *Roommates.com* required users to input illegal content as a necessary condition of use of the website, and thereby forfeited immunity with respect to the particular content that the users were compelled to provide." *Nemet*, 591 F.3d at 257 (distinguishing that portion of *Roommates.com*). The FAC's allegations are not even remotely similar. Twitter and Ms. Gadde are not alleged to have "solicited," "paid" for, or "required" Mr. Exoo to disclose private information about Plaintiffs or to direct

7

anyone to harass Plaintiffs.

As for *Internet Brands*, the court in that case declined to apply Section 230 because it found that the plaintiffs' failure-to-warn claim did not seek to hold the defendants liable for any conduct relating to the substance of third-party content posted on their platform or any failure to monitor or remove such content. *See Doe v. Internet Brands, Inc.*, 824 F.3d 846, 848-49 (9th Cir. 2016). But Plaintiffs' claims, unlike the claim in *Internet Brands*, directly turn on the allegedly harmful effects of content that Mr. Exoo posted on Twitter, and seek to impose liability on Twitter and Ms. Gadde for their alleged failure to block or remove that content. *See, supra* pp. 5-7. Section 230 thus readily applies here.

### C. Plaintiffs' Remaining Arguments Fail.

Plaintiffs' other attempts to circumvent Section 230 are meritless.

*First*, Plaintiffs are incorrect that Section 230 applies only where a service provider acts as a "neutral conduit[] or passive transmitter[]" of content. Opp. 2. An "important purpose" of Section 230 was "to encourage service providers to self-regulate the dissemination of offensive material over their services." *Zeran*, 129 F.3d at 331. Courts have even applied Section 230 in cases (unlike this one) in which a service provider actively sought and promoted the creation of the particular type of content at issue because "Congress . . . made a . . . policy choice . . . [to provide] immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998). In *Obado v.*

8

*Magedson*, for example, the Third Circuit affirmed dismissal of claims pursuant to Section 230 notwithstanding allegations that the defendants "manipulated search engines to maximize search results relating to the alleged defamatory content." 612 F. App'x at 93-94.  Likewise, in *Nemet*, the defendant website operator had allegedly "solicit[ed]" consumer complaints and "'steered' them into 'specific categor[ies] designed to attract attention by consumer class action lawyers.'" 591 F.3d at 256.  Still, the court there held that the website operator was not a content provider of those complaints.  *See id.* at 257-58.  And in *Jones*, the court held that Section 230 barred claims despite allegations that the website operator had invited and encouraged users to post gossip, selected specific posts to publish, edited the posts, and then added a short comment of his own after many posts.  *See* 755 F.3d at 402-03.

*Second*, Plaintiffs are simply wrong that Twitter was transformed into an information content provider of Mr. Exoo's Tweets merely because it allegedly was made aware of the content at issue.  Opp. 13.  Beginning with the Fourth Circuit's seminal decision in *Zeran*, courts have repeatedly rejected the argument that Section 230 does not apply if the service provider had "notice" of the alleged unlawful or injurious content.  *See* 129 F.3d 327; *see also, e.g.*, *Green*, 318 F.3d at 469; *Obado*, 2014 WL 3778261; *Jones*, 755 F.3d at 404.  As *Zeran* explained, "[l]iability upon notice would defeat the dual purposes advanced by § 230 of the CDA . . . [because it] reinforces service providers' incentives to restrict speech and abstain from self-regulation." 129 F.3d at 333.  Nor does Section 230

9

immunity turn on the content's author being "anonymous" or "unknown," as Plaintiffs suggest (at 8). *See, e.g.*, *Blumenthal*, 992 F. Supp. at 52 (dismissing claims against AOL based on content created by its independent contractor).

*Finally*, new assertions in Plaintiffs' Opposition of some "direct link" between Twitter and the alleged Exoo enterprise change nothing. Opp. 14. This supposed "direct link" appears nowhere in the FAC, and so should be disregarded. *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (it is "'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"). More fundamentally, any existence of a "direct link" between a service provider and a third-party content creator does not negate Section 230's protection. Courts have upheld Section 230 immunity even where the defendant *paid* third-parties for their content. *See Blumenthal*, 992 F. Supp. at 52 (Section 230 barred claims against AOL arising from an allegedly defamatory story written by gossip columnist whose sole, consistent source of income was royalties paid by AOL); *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 1999 WL 727402, at *1 (D.N.M. Mar. 1, 1999) (Section 230 immunized AOL against liability for defamatory errors in financial data that AOL paid third-party vendors to supply), *aff'd*, 206 F.3d 980 (10th Cir. 2000). Here, Plaintiffs assert far less.

### III. The FAC Fails To Plausibly Allege A RICO Conspiracy Offense.

#### A. The FAC Does Not Allege Multiple Elements Of A RICO Conspiracy Claim.

Plaintiffs' RICO conspiracy claim should also be dismissed on the

independent ground that the FAC fails to plausibly allege several essential elements of such a claim, including the existence of a RICO "enterprise," predicate acts of "racketeering," injury "by reason of" those predicate acts (or by reason of the alleged conspiracy), and an agreement. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (similar); *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 290 (3d Cir. 1996) (explaining "by reason of" standard for a 1962(d) claim); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (claim under 1962(d) must plead "agreement"); *see also* Mot. 25-35.

The Opposition fails even to respond to Twitter and Ms. Gadde's arguments that the FAC does not plausibly allege the predicate act and causation elements, *see* Mot. 31-34, and Plaintiffs have therefore waived their opportunity to oppose these arguments, *see Lightning Lube*, 4 F.3d at 1191. And waiver aside, the response that Plaintiffs offer to a similar argument in their opposition to Mr. Exoo's brief is erroneous. Plaintiffs attempt there to establish an extortion predicate offense by asserting that, under *United States v. Local 560 of Int'l Brotherhood of Teamsters,* 780 F.2d 267 (3d Cir. 1985), and *United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969), extortion may be based on the deprivation of certain "intangible rights." *See* ECF No. 83 pp. 20-22. But neither of those decisions can undermine the Supreme Court's more recent holding in

11

*Scheidler v. National Organization for Women, Inc.*, in which the Court explained that, to plead extortion, a plaintiff must allege that a defendant "pursued [or] received something of value from [the plaintiff] that [the defendant] could exercise, transfer, or sell." 537 U.S. 393, 394 (2003); *see also United States v. Cain*, 671 F.3d 271, 282 (2d Cir. 2012) (distinguishing *Tropiano*, in light of *Scheidler*). The FAC fails to plausibly allege that element. *See* Mot. 33-34.

As for the "enterprise" element, Plaintiffs' conclusory assertion (Opp. 15) that they have pled an "association in fact" enterprise is both insufficient and wrong. There are no allegations that the Twitter Defendants ever even communicated with Mr. Exoo, his "associates," or St. Lawrence University, much less that they "associated" with those entities for a "common purpose of engaging in a course of conduct." *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 365. The FAC's factual allegations "do not plausibly imply anything more than parallel conduct by [the Defendants]," which is insufficient. *Id.* at 374.

Plaintiffs likewise fail to allege any "common purpose" that Twitter and Ms. Gadde shared with the other "enterprise" participants. Mot. 28-29. There are no allegations that either Twitter or Ms. Gadde desired to "threaten violence, intimidate, harass, and extort others," which is the "purpose" that the FAC ascribes to the "enterprise." FAC ¶ 193. Plaintiffs' Opposition appears to suggest a new shared purpose of "de-platforming white supremacists" (Opp. 13), but that allegation appears nowhere in the FAC. The FAC alleges that Mr. Exoo and his associates engaged in doxxing not to "deplatform" Plaintiffs from Twitter, but

12

"to deluge Plaintiffs' employers with violent Tweets, phone calls, [and] emails . . . in order to extort Plaintiffs' terminations." FAC p. 3. And a "deplatforming" theory, even if pleaded, would make no sense in light of the rest of the FAC's allegations. The entire thrust of the FAC is that Mr. Exoo allegedly caused harm to Plaintiffs *off-platform* in their workplaces and homes. The FAC does not even allege that Plaintiffs are (or ever were) Twitter accountholders, let alone that anyone took any steps to "deplatform" them from the Twitter platform. Mot. 2.

Plaintiffs' Opposition fares no better (at 16) in attempting to demonstrate that the FAC alleges the "agreement" required for any RICO conspiracy claim. As the Third Circuit has observed, "'a defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise.'" *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 35 (3d Cir. 2015). While the requisite agreement may be inferred, a defendant's mere provision of "services" to an alleged enterprise participant, even when combined with some "aware[ness]" of the alleged enterprise's activities, is insufficient, as a matter of law, to plausibly allege an "agreement." *Id.* at 38-39. Rather, the complaint must contain non-conclusory allegations that the services offered were "purposely and knowingly directed at facilitating a . . . pattern of racketeering activity." *Id.* at 35. Here, the Opposition argues that an agreement between Mr. Exoo and Twitter and Ms. Gadde should be inferred based on their alleged decision to allow Mr. Exoo to remain on the Twitter platform, notwithstanding Exoo's alleged

13

"doxxing." Opp. 16. But that allegation, even if taken as true, is insufficient to plausibly allege an "agreement" under Third Circuit law, because it suggests, at most, that the Twitter Defendants provided "services" to Mr. Exoo while "aware" of certain content on the Twitter platform (that Plaintiffs characterize as "doxxing"). *See The Knit With*, 625 F. App'x at 38-39. There are no allegations that the Twitter Defendants "purposefully" took any action "directed at facilitating" the "racketeering activity" of "extortion" and making "terroristic threats." FAC ¶¶ 205, 188(b), 188(c).

### B. Plaintiffs Cannot Save Their RICO Conspiracy Claim Based On An Unpled Aiding-And-Abetting Theory.

Finally, Plaintiffs cannot avoid dismissal by now seeking to recast their RICO conspiracy claim as an aiding-and-abetting claim. *See* Opp. 17-18. The words "aiding and abetting" appear nowhere in the FAC. Plaintiffs' new "aiding and abetting" theory is tantamount to an entirely new and unpleaded claim, and should be disregarded. *See Olson*, 724 F. App'x at 166. More fundamentally, aiding-and-abetting liability does not exist under RICO because, subsequent to the cases cited by Plaintiffs (at 17-18), and the Supreme Court's seminal decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), the Third Circuit held that "RICO's statutory text does not provide for a private cause of action for aiding and abetting." *Pennsylvania Assoc. of Edwards Heirs v. Rightenour*, 235 F.3d 839, 840 (3d. Cir. 2000).

In any event, the FAC fails plausibly to allege the essential elements of any

14

aiding-and-abetting claim, as there are no allegations that Twitter or Ms. Gadde allowed Exoo to remain on the Twitter platform for the purpose of facilitating racketeering. *See Burroughs v. City of Newark*, 2013 WL 4047588 at *7 (D.N.J. Aug. 9, 2013) ("aiding and abetting 'require[s] active and purposeful conduct'"). Restatement (Second) of Torts § 876(b) (to be liable for aiding and abetting, defendant must give "substantial assistance or encouragement" to the principal tortfeasor "*so to conduct himself*.") (emphasis added). The FAC alleges that Twitter "benefits economically" from @AntiFashGordon's large Twitter following (FAC ¶ 202), but such commercial benefit is not the same as intent to facilitate "extortion," or the making of "terroristic threats." And, of course, the FAC alleges that Twitter and Ms. Gadde shared with Exoo (and St. Lawrence University) a dislike of white supremacists. FAC ¶¶ 201, 203. But that shared disdain, no doubt also shared by large swaths of the population, is a far cry from allegations that Twitter and Ms. Gadde "knowingly and substantially assisted" in Exoo's alleged "racketeering."

## CONCLUSION

The Court should dismiss, with prejudice, all claims against Twitter and Ms. Gadde.

                                              Respectfully submitted,

June 17, 2021                                     /s/ Lawrence S. Lustberg