**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL D'AMBLY, et al.,

    *Plaintiffs*,

v.

CHRISTIAN EXOO a/k/a ANTIFASH GORDON, et al.,

    *Defendants*.

Civil Action No. 20-12880

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Presently before the Court is Defendant Cohen, Weiss, and Simon LLP's ("Defendant" or "CWS") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c). Defendant seeks to dismiss Count XIII of the Amended Complaint, which asserts a legal malpractice claim. D.E. 74. Plaintiff Daniel D'Ambly ("Plaintiff" or "D'Ambly") filed a brief in opposition, D.E. 81, to which Defendant replied, D.E. 82.[1] The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion is **GRANTED**.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

    In this matter, Plaintiffs assert numerous claims against Defendant Christian Exoo and his alleged associates because Exoo instructed associates to "dox" Plaintiffs after identifying them as

---

[1] Defendant's brief in support of its motion to dismiss (D.E. 74-1) will be referred to as "Def. Br."; Plaintiff's opposition brief (D.E. 81) will be referred to as "Plf. Opp."; and Defendant's reply brief (D.E. 82) will be referred to as "Def. Reply."

fascists or white supremacists.² Doxing refers to "publicly disclos[ing] a person's identity, employer, school, home address, etc., for the purpose of causing harm to that person." Am. Compl., Statement of the Case. The instant motion involves Plaintiff D'Ambly's stand-alone malpractice claim against CWS. Thus, the Court only discusses facts pertinent to that claim.

Briefly, D'Ambly alleges that Exoo identified D'Ambly as a white supremacist and fascist in January 2018, and beginning in October 2018, D'Ambly was doxed. *Id.* ¶¶ 39, 44. D'Ambly is a member of the New Jersey European Heritage Association ("EHA"), "a non-violent, pro-domestic policy organization." *Id.* ¶ 1. In tweets, Exoo instructed his Twitter followers to send harassing and threatening tweets and phone calls to D'Ambly's employer, the New York Daily News ("Daily News"), to get D'Ambly fired. *Id.* ¶ 45. Between October 29, 2018, and January 11, 2019, "the Exoo Enterprise directed no less than fifty-four (54) threatening Tweets to @DailyNews plus an unknown number of threatening phone calls." *Id.* Exoo doxed Plaintiff for a second time on January 11, 2019, again via Twitter. *Id.* ¶ 51. The same day, callers left threatening phone messages for the Daily News. *Id.* ¶ 52. In January 2019, D'Ambly attended two meetings with the representatives of his union, Local One-L, and the Daily News and its parent company about the doxing and D'Ambly's political associations, including with the EHA. *Id.* ¶¶ 50, 56. On January 14, 2019, the Daily News told D'Ambly not to report to work until informed otherwise. *Id.* ¶ 62. D'Ambly was terminated on January 16, 2019, during a phone call with

---

² The factual background is taken from Plaintiff's Amended Complaint ("Am. Compl."). D.E. 66. As discussed below, the Court construes Defendant's motion as one filed pursuant to Federal Rule of Civil Procedure 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Yet, the standard would be the same under a Rule 12(c) motion. When deciding a motion for judgment on the pleadings pursuant to Rule 12(c), the Court accepts as true all well-pleaded facts in a complaint. *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018).

D'Ambly, two employees of the Daily News' parent company, and a representative of Local One-L. *Id.* ¶ 63.

On January 23, 2019, the president of Local One-L "informed the Daily News that they were appealing D'Ambly's termination pursuant to terms of the Contract."[3] *Id.* ¶ 64. Local One-L filed a grievance on D'Ambly's behalf, *id.* ¶ 68, and the Union retained . . . Cohen, Weiss, and Simon, LLP . . . to represent D'Ambly[,]" *id.* Thereafter, Plaintiff had phone conferences with two attorneys from CWS, who both separately expressed their disdain for D'Ambly's beliefs. *Id.* ¶¶ 69-70. In addition, both attorneys dismissed D'Ambly's desire to have his employment reinstated. *Id.* On January 15, 2019, D'Ambly executed a separation agreement (presumably with the Daily News) that CWS negotiated on D'Ambly's behalf. Through the separation agreement, D'Ambly received a lump sum payment and the Union agreed to withdraw the pending arbitration case with prejudice. *Id.* ¶ 73. Plaintiff alleges that the CWS attorneys' bias against his political views impacted their representation and that they failed to adequately investigate the conduct that led to Plaintiff's termination. *Id.* ¶¶ 71-72.

D'Ambly filed suit on September 21, 2020. His thirteen-count Complaint largely addresses Defendants' alleged doxing campaign. Count XIII, however, is asserted solely by D'Ambly, and is a claim for legal malpractice against CWS. Count XIII is related to D'Ambly's termination from the Daily News and CWS's involvement in the resulting grievance. *See* Compl, ¶¶ 154-61. D'Ambly does not allege that CWS was involved in any of the doxing efforts, and the other twelve counts are not asserted against CWS. CWS subsequently filed its Answer. D.E. 12.

---

[3] The Court presumes that the "Contract" D'Ambly refers to is Local One-L's collective bargaining agreement with the Daily News.

On March 25, 2021, Plaintiffs filed the Amended Complaint, which includes allegations about additional Plaintiffs, but the allegations and claim asserted against CWS are unchanged. D.E. 66. CWS did not file an amended Answer. Instead, Defendant filed the instant motion, pursuant to Federal Rule of Civil Procedure 12(c), on April 22, 2021. D.E. 74. Defendants Christian Exoo, St. Lawrence University, Vijaya Gadde, and Twitter, Inc. filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). D.E. 75, 78, 79. Those motions will be addressed in a separate opinion or opinions.

## II.     STANDARD OF REVIEW

Defendant brings its motion to dismiss pursuant to Rule 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pleadings are "closed" after the complaint and answer are filed. *Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). In a multiparty case, "pleadings are not considered closed until *every* defendant has answered the complaint." *Newton v. Greenwich Township*, No. 12-238, 2012 WL 3715947, at *1 n.1 (D.N.J. Aug. 27, 2012). Here, the other Defendants in this matter have not answered the Amended Complaint. In addition, although CWS answered the original complaint, it did not file an answer to the Amended Complaint. An amended pleading supersedes all prior pleadings. *See Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC*, 417 F. Supp. 2d 632, 642 n.15 (D.N.J. 2006). As a result, Defendant should have answered the Amended Complaint before filing the instant motion. But more importantly, because no Defendant has answered the Amended Complaint, the pleadings are not closed. Thus, Defendant's motion is procedurally improper. But because Defendant could simply re-file the instant motion as a Rule 12(b)(6) motion and because a Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion,

the Court will construe Defendant's motion as having been filed pursuant to Rule 12(b)(6). *See, e.g.*, *Rivera v. Camden Bd. of Educ.*, 634 F. Supp. 2d 486, 488 (D.N.J. 2009) (construing motion to dismiss filed after answer as a Rule 12(c) motion).

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III.   ANALYSIS

Defendant argues that Count XIII should be dismissed because there was not an attorney-client relationship between Plaintiff and Defendant. Specifically, Defendant contends that under the Labor Management Relations Act ("LMRA"), the union was its client, not Plaintiff. Defendant continues that because the union was its client, Plaintiff's claims are barred by the LMRA. Def. Br. at 8-12. Legal malpractice is negligence relating to an attorney's representation of a client. *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001). To state a claim for attorney malpractice, a plaintiff must demonstrate "(1) the existence of an attorney-client relationship creating a duty of

care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Id.* "The existence of an attorney-client relationship is, of course, essential to the assertion of a cause of action for legal malpractice." *Froom v. Perel*, 872 A.2d 1067, 1074 (N.J. App. Div. 2005).

*Carino v. Stefan*, 376 F.3d 156 (3d Cir. 2004) is directly on point. In *Carino*, the Third Circuit broadly construed Section 301(b) of the LMRA,[4] "holding that § 301 of the LMRA immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice." *Id.* at 162. Consequently, the Circuit affirmed the district court's order dismissing state law claims, including a claim for malpractice, against an attorney and law firm that the union retained to file "a grievance on [Plaintiff's] behalf, contesting her termination." *Id.* at 158, 162. The Circuit explained that "the protection of § 301(b) only applies where a union agent's liability grows out of activities performed in relation to a collective bargaining agreement." *Id.* at 162. The Circuit concluded that the attorney's alleged improper conduct grew out of the union's retention of the attorney to represent the plaintiff during arbitration of the grievance and convincing the plaintiff to withdraw the grievance "was an activity performed in relation to the collective bargaining agreement." *Id.*

Here, Plaintiff pleads that after he was terminated by the Daily News, Plaintiff's union told the newspaper that it was going to appeal D'Ambly's termination "pursuant to terms of the Contract." Am. Compl. ¶ 65. Thereafter, the union filed a grievance on Plaintiff's behalf. Plaintiff further alleges that the union hired Defendant to represent Plaintiff with respect to the grievance.

---

[4] Section 301(b) states, in part, that "[a]ny money judgment against a labor organization . . . shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). Overall, "Section 185(b) has been interpreted expansively by the courts to provide broad protection for union representatives." *Cole v. Beros*, No. 08-541, 2008 WL 2225825, at *2 (W.D. Pa. May 29, 2008).

6

*Id.* ¶ 68. In the malpractice claim, Plaintiff alleges that Defendant conducted inadequate legal research and investigation into the accusations that led to Plaintiff's termination. Plaintiff seems to allude that had Defendant conducted an appropriate investigation, it would have led to reinstatement. *Id.* ¶¶ 71-72, 239-45. Plaintiff's allegations fit squarely into the parameters discussed in *Carino*. Namely, Plaintiff seeks to hold Defendant liable because of the actions (or inaction) of two attorneys in representing the grievance related to Plaintiff's termination. Because the union retained Defendant to represent Plaintiff as to the grievance, Section 301(b) bars Plaintiff from asserting malpractice claims against Defendant.

Plaintiff contends that there are "several factors that preclude [Defendant] from invoking the safe harbor protections of § 301(b)." Plf. Opp. at 3. First, Plaintiff argues that there was an implied attorney-client relationship between him and CWS. *Id.* at 5-6. An implied attorney-client relationship "requires more than a subjective belief that such relationship exists." *Oestreicher v. Rutgers*, No. 02-959, 2015 WL 6460423, at *6 (D.N.J. Oct. 26, 2015). Rather, a court may find that an implied attorney-client relationship existed if a party shows "(1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Montgomery Acad. v. Kohn*, 50 F. Supp. 2d 344, 350 (D.N.J. 1999) (quoting *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1495 (N.D. Ill. 1987)).

Plaintiff maintains that an implied attorney-client relationship was formed because he shared confidential materials with Defendant. Plf. Opp. at 6-7. But the allegations in the Amended Complaint involve Defendant's failure to conduct an adequate investigation and its bias against Plaintiff's political beliefs and associations. *See* Am. Compl. ¶¶ 72, 239. Plaintiff does not allege that he shared any confidential information with Defendant. Plaintiff cannot amend his pleading

7

through a brief. *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). Accordingly, Plaintiff fails to plead facts through which the Court could assume that an implied attorney-client relationship existed.[5]

But even if an implied attorney-client relationship existed between Plaintiff and Defendant, it does not change the fact that Plaintiff's union retained Defendant and Defendant was working on the union's behalf. In *Carino*, the Circuit acknowledged that the attorney may have owed Carino a duty of care but explained that "this does not alter the fact that he was acting on behalf of the Union." *Carino*, 376 F.3d at 162. The Third Circuit explained that this additional duty owed to the individual employee does not alter the § 301(b) bar. *Id.* Consequently, even assuming that an implied attorney-client relationship here, which it did not, Section 301(b) would likely still bar Plaintiff's claims against Defendant.

Next, Plaintiff argues that Section 301(b) does not apply because the union was a captive labor organization. Plf. Opp. at 7-10. The term "captive labor organization" appears in several cases from the 1980s where the United States brought civil RICO claims against mob families. In those cases, the court determined that a union was a captive labor organization because certain

---

[5] Plaintiff also argues that Defendant violated New Jersey Rule of Professional Conduct ("RPC") 1.13, which addresses an attorney's ethical duties in representing an organization. Plf. Opp. at 6. RPC 1.13, however, does not establish that Defendant represented Plaintiff as a member of the organization. In fact, RPC 1.13 states otherwise. Specifically, RPC 1.13(a) provides that "[a] lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." RPC 1.13(a). Plaintiff further argues that Defendant violated other subsections of RPC 1.13. While an attorney's failure to comply with an RPC "can be considered evidence of malpractice," *Baxt v. Liloia*, 714 A.2d 271, 276 (N.J. 1998) (quoting *Albright v. Burns*, 503 A.2d 386, 390 (N.J. App. Div. 1986)), the Court does reach this issue due to the absence of an attorney-client relationship between Plaintiff and Defendant.

8

individuals "dominated [union members] through fear and intimidation and [] exploited through fraud and corruption."  *United States v. Local 560, Int'l Bhd. of Teamsters, Chauffers, Warehousemen, & Helpers of Am.*, 581 F. Supp. 279, 319 (D.N.J. 1984), *aff'd* 780 F.2d 267 (3d Cir. 1985).  Although Plaintiff asserts civil RICO claims in the Amended Complaint, there are absolutely no allegations that remotely suggest that the alleged RICO enterprise controlled or influenced Plaintiff's union, let alone did so through fear and intimidation.  Moreover, Plaintiff cites no legal authority demonstrating that Section 301(b) does not apply if there is a captive labor organization.  This argument, therefore, is rejected.

Plaintiff also appears to argue that because he could have asserted a claim under Section 501(a) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), Section 301(b) of the LMRA does not apply.  Plf. Opp. at 8.  Section 501(a) of the LMRDA addresses duties that union officers owe to members of the union.  29 U.S.C. § 501(a).  "Members of a labor organization may sue officers for violations of their fiduciary duties under Section 501(a)."  *Fonti v. Health Prof'ls & Allied Emps.*, No. 13-4231, 2015 WL 1523834, at *3 (D.N.J. Apr. 2, 2015).  But again, Plaintiff does not provide any legal authority addressing how a claim under Section 501(a) of the LMRDA impacts Section 301(b).  More importantly, Plaintiff is not asserting any breach of fiduciary duty claims in this matter nor does he allege facts demonstrating that any union official breached fiduciary duties the official owed to the union.  Therefore, this argument is also rejected.

Finally, in his opposition brief, Plaintiff addresses whether he committed a terminable offense under his collective bargaining agreement and contends that he was engaged in political speech.  Plaintiff continues that because Defendant disagreed with his political speech, it should have informed Plaintiff that there was a conflict that required Plaintiff to seek outside counsel.  Plf.

Opp. at 10-12. But because Section 301(b) bars Plaintiff's claim against Defendant and there was not an attorney-client relationship between Plaintiff and Defendant, the Court does not address whether CWS breached any duties.

## IV. CONCLUSION

For the foregoing reasons, Defendant Cohen, Weiss, and Simon LLP's motion (D.E. 74) is **GRANTED**. Count XIII of the Amended Complaint and Cohen, Weiss, and Simon LLP as a Defendant are **DISMISSED without prejudice** in this matter. Although it appears that any amendment would be futile in light of the Section 301(b) bar, the Court recognizes that D'Ambly raised potential new allegations in his opposition brief. As a result, the Court will provide Plaintiffs with leave to file an amended pleading that remedies the identified deficiencies. Plaintiffs' amended pleading must be filed within thirty (30) days of the date of this Opinion and the accompanying Order. If Plaintiffs fail to file an appropriate amended pleading within this time, the claim against Cohen, Weiss, and Simon LLP and Cohen, Weiss, and Simon LLP as a Defendant will be **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

Dated: November 1, 2021

_____
John Michael Vazquez, U.S.D.J.