**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

DANIEL D'AMBLY, et al.,

        *Plaintiffs*,

    v.

CHRISTIAN EXOO a/k/a ANTIFASH
GORDON, et al.,

        *Defendants*.

Civil Action No. 20-12880

**OPINION**

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiffs—purported far right activists—take aim at Defendant Christian Exoo—a purported far left activist—and others.  It seems as though Plaintiffs want to express their views without a negative impact on other aspects of their lives.  Similarly, it seems like Exoo wants to criticize Plaintiffs because of their views and try to get Plaintiffs fired from their jobs.  The general question raised here is whether Exoo's communications about Plaintiffs crossed a legal line into unlawful action.

Presently before the Court are motions to dismiss from the following Defendants: (1) St. Lawrence University ("SLU"), D.E. 75; (2) Vijaya Gadde and Twitter, Inc. ("Twitter" and collectively, the "Twitter Defendants"), D.E. 78; and (3) Christian Exoo (collectively, the "Moving Defendants"), D.E. 79.  Plaintiffs filed briefs in opposition, D.E. 83, 84, 85, to which the Moving Defendants replied, D.E. 88, 89, 90.[1]  The Court reviewed the parties' submissions and decided

---

[1] SLU's brief in support of its motion (D.E. 75-1) will be referred to as "SLU Br.", the Twitter Defendants' brief in support of their motion (D.E. 78-1) will be referred to as "Twitter Br.", and Exoo's brief in support of his motion (D.E. 79-1) will be referred to as "Exoo Br.".  Plaintiffs'

the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For

the reasons set forth below, the Moving Defendants' motions are **GRANTED**.

## I.  FACTUAL[2] AND PROCEDURAL BACKGROUND

Plaintiffs brought suit after Defendant Christian Exoo identified Plaintiffs as fascists or

white supremacists, and "doxed" them on Twitter.  Doxing refers to "publicly disclos[ing] a

person's identity, employer, school, home address, etc., for the purpose of causing harm to that

person." Am. Compl., Statement of the Case, ¶ 27.  Plaintiffs allege that when doxing individuals,

Exoo does not act alone.  Rather, Plaintiffs allege that Exoo directs a group, which includes Exoo's

employer, SLU; Twitter; Gadde, Twitter's Head of Legal, Public Policy, and Trust and Safety

Lead; and multiple unidentified individuals, who presumably are at least some of Exoo's Twitter

followers.  *Id.* ¶ 16, 20, 22.  Plaintiffs allege that Exoo and his associates work to identify neo-

Nazis, fascists, and white supremacists.  *Id.* ¶ 32.  After learning their personal identities, Exoo

doxes the individual using the Twitter handle @AntiFashGordon.  Exoo also directs his associates

to call, email, and send Tweets to the individual's employers, co-workers, and school

administrators to get the individual fired or expelled from school.  *Id.* ¶ 33.  Plaintiffs allege that

after being identified and doxed by Exoo and his associates, they received violent threats, their

homes or personal items were vandalized, and they were terminated from their jobs. *Id.* ¶ 37.  The

Court discusses more specific allegations in the analysis section below.

---

opposition to SLU's motion (D.E. 84) will be referred to as "SLU Opp.", their opposition to the
Twitter Defendants' motion (D.E.  85) will be referred to as "Twitter Opp.", and their opposition
to Exoo's motion (D.E. 83) will be referred to "Exoo Opp.".  SLU's reply brief (D.E. 88) will be
referred to as "SLU Reply", the Twitter Defendants' reply brief (D.E. 90) will be referred to as
"Twitter Reply", and Exoo's reply brief (D.E. 89) will be referred to as "Exoo Reply".

[2] The factual background is taken from Plaintiffs' Amended Complaint ("Am. Compl.").  D.E. 66.
When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts
in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

D'Ambly filed suit on September 21, 2020, after he was doxed by Exoo and terminated from his job at the New York Daily News (the "Daily News").  His thirteen-count Complaint largely addressed the alleged doxing campaign through federal and state RICO claims, tort claims, and claims alleging violations of federal and New Jersey criminal statutes.  D'Ambly also asserted an employment discrimination claim against his employer, in addition to a malpractice claim against Cohen, Weiss, and Simon, LLP ("CWS").  D'Ambly's union hired CWS to represent it, on D'Ambly's behalf, with respect to an employment grievance that was filed after D'Ambly's termination.  D.E. 1-1.  On March 25, 2021, Plaintiffs filed the Amended Complaint, which includes allegations about additional Plaintiffs who were also allegedly doxed by Exoo and his associates.  The factual allegations as to D'Ambly remain the same in the Amended Complaint. D.E. 66.  Further, Plaintiffs assert the same claims that D'Ambly asserted in his initial pleading.

The Moving Defendants subsequently filed motions to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  D.E. 75, 78, 79.  CWS also filed a motion to dismiss, D.E. 74, which is addressed in a separate opinion.  Finally, Defendants New York Daily News and Tribune Publishing Company, LLC, D'Ambly's former employer, answered the Amended Complaint.  D.E. 76.

## II.    STANDARD OF REVIEW

The Moving Defendants seek to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Rule 12(b)(2) permits a party to move to dismiss a case for lack of personal jurisdiction.  In such a motion, the plaintiff bears the burden of demonstrating "sufficient facts to establish that jurisdiction is proper."  *Mellon Bank PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  In reviewing a motion to dismiss for lack of personal jurisdiction, a court "must accept all of the plaintiff's allegations as true and construe disputed

facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). But when a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Thus, to withstand a Rule 12(b)(2) motion, a plaintiff may not rely on the pleadings alone, as it "is inherently a matter which requires resolution of factual issues *outside the pleadings*." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (emphasis added). In conducting this jurisdictional analysis, district courts may rely upon the parties' declarations for relevant factual support. *See, e.g.*, *Pausch LLC v. Ti-Ba Enters.*, No. 13-6933, 2014 WL 5092649, at *6-7 (D.N.J. Oct. 8, 2014) (using declarations from both parties to conclude that contacts with the forum were insufficient for personal jurisdiction); *Shnayderman v. Cell-U-More, Inc.*, No. 18-5103, 2018 WL 6069167, at *11 (D.N.J. Nov. 20, 2018) (using information from the plaintiff's complaint and declaration to determine that the defendant did not travel to the forum state or solicit a loan from the plaintiff in the forum state). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery

will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III.   ANALYSIS

At the outset, the Court reviews the scope of the First Amendment.  Plaintiffs indicate that their political speech is protected under the First Amendment.  *See, e.g.*, Am. Compl. ¶ 1. Similarly, Exoo maintains that that Counts II and III must be dismissed because he was engaged in constitutionally protected political speech.   Exoo Br. at 18-21.   The First Amendment "guarantees freedom of expressions by prohibiting Congress from restricting . . . the rights of individuals to speak freely."  U.S. Const. amend. I.  But the speech at issue seemingly only involved private actors.  "[T]he First Amendment protections for freedom of speech are directed only to state action, not private action." *Pietrylo v. Hillstone Rest. Grp.*, No. 06-5754, 2008 WL 6085437, at *5 (D.N.J. July 25, 2008).  Consequently, without sufficient allegations demonstrating that a governmental actor somehow attempted to improperly restrict Plaintiffs or Exoo's free speech rights, the First Amendment is not implicated.

### A.  RICO Claims (Counts VIII through X)

In Counts IX and X, Plaintiffs assert federal RICO claims, for racketeering and a civil RICO conspiracy, respectively, under the federal RICO statute, 18 U.S.C. § 1961 *et seq*.  In Count VIII, Plaintiffs assert a claim for racketeering under the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-1 *et seq*.  *See* Am. Compl. ¶¶ 186-217.  "The civil RICO statute allows '[a]ny person

injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court.'" *Anderson v. Ayling*, 396 F.3d 265, 268-69 (3d Cir. 2005) (quoting 18 U.S.C. § 1964(c)).  To bring a federal civil RICO claim in accordance with 18 U.S.C. § 1962, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998).  To establish a pattern of racketeering activity, a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013).  Racketeering activity is defined in Section 1961(1)(B) as "any act which is indictable under" a number of enumerated federal laws; these federal offenses are called "predicate acts."  *See* 18 U.S.C. § 1341; 18 U.S.C. § 1962(1)(B).

The Moving Defendants seek to dismiss Plaintiffs' RICO claims on numerous grounds, including a failure to allege a pattern of racketeering activity.  *See, e.g.*, Exoo Br. at 29-34.  The Amended Complaint alleges that the pattern involves an "attempt to extort employment terminations and compel school expulsions, by directing waves of threatening phone calls, emails, Twitter messages, social media comments at the target's employers, co-workers, and school administrators."  Am. Compl. ¶ 33.  Plaintiffs further allege that the purported Exoo Enterprise's pattern of racketeering activity includes "multiple indictable acts" under 18 U.S.C. §§ 1951 and 1952.  *Id.* ¶ 205.

The Hobbs Act, 18 U.S.C. § 1951, states that

> [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this

6

section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951.  Plaintiffs repeatedly allege that they were extorted by Defendants.  But, as pled, no Plaintiff was the victim of extortion because extortion requires "the obtaining of property from another."  18 U.S.C. § 1951(b)(2); *see United States v. Hedaithy*, 392 F.3d 580, 602 n.21 (3d Cir. 2004) (explaining that "the Hobbs Act expressly requires the Government to prove that the defendant 'obtain[ed] property from another'" (quoting 18 U.S.C. § 1951(b)(2))).  Plaintiffs' focus their RICO claims on allegations that they lost their jobs because of Exoo's doxing, but the loss of a job alone does not constitute a Hobbs Act violation because no one obtains another person's property.[3]  *See Carson v. Vernon Township*, No. 09-6126, 2010 WL 2985849, at *12 (D.N.J. July 21, 2010) ("Plaintiff's loss or threatened loss of his council positions is not the surrender of property," therefore "they are not predicate acts of racketeering activity under the [Hobbs Act]."). Moreover, nothing in the Amended Complaint suggests that Defendants obtained any other property or property right from any Plaintiff.  Consequently, Plaintiffs fail to sufficiently allege a violation of the Hobbs Act.

The Travel Act, 18 U.S.C. § 1952, applies to certain "unlawful acts."  18 U.S.C. § 1952(a). Broadly speaking, an unlawful act involves (1) a business enterprise involving gambling, liquor, narcotics, or controlled substances as well as unlawful prostitution offenses; (2) extortion, bribery, or arson; or (3) indictable offenses involving money laundering.  18 U.S.C. § 1952(b).  Again,

---

[3] In their opposition brief, Plaintiffs maintain that union membership is a protectable property interest, and the Exoo Enterprise deprived D'Ambly of his rights as a union member.  Plfs. Opp. at 20-22.  Because Plaintiffs fail to allege how D'Ambly's union membership was affected in the Amended Complaint, the Court will not address this argument.  *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).  Even if the Court were to consider this argument, Plaintiffs have not indicated how another obtained this protectable property interest.

Plaintiffs' allegations involve Exoo's directions to place threatening phone calls, emails, Twitter messages, social media comments to Plaintiffs' employers to get Plaintiffs fired. *See* Am. Compl. ¶ 33.  Nothing in Amended Complaint suggests that any member of the purported Exoo Enterprise engaged in unlawful activity as defined by the Travel Act.  Therefore, Plaintiffs fail to adequately plead a predicate act under the Travel Act.

Without sufficient predicate acts, Plaintiffs cannot plausibly allege that there was a pattern of racketeering activity.  Plaintiffs' substantive federal RICO claim therefore fails.  In addition, because Plaintiffs fail to establish a substantive RICO claim, their RICO conspiracy claim must also be dismissed. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

To state a claim under the New Jersey RICO statute, a plaintiff must also plead facts establishing a RICO enterprise and a pattern of racketeering activity. *State v. Ball*, 661 A.2d 251, 261 (N.J. 1995).  A RICO enterprise must "have an 'organization'" meaning that it consists of "interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose." *Id.*  In addition, a plaintiff should provide evidence as to the following:

> [T]he number of people involved and their knowledge of the objectives of their association, how the participants associated with each other, whether the participants each performed discrete roles in carrying out the scheme, the level of planning involved, how decisions were made, the coordination involved in implementing decisions, and how frequently the group engaged in incidents or committed acts of racketeering activity, and the length of time between them.

*Id.*  Finally, a member of an enterprise must "act purposefully and knowingly in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist, or help effectuate the goals of the enterprise."  *Id.* at 268.

Here, Plaintiffs plead that the Exoo Enterprise is directed by Exoo and includes "associates of St. Lawrence University, the Twitter Defendants, and other unknown associates."  Am. Compl. ¶ 187.  But outside of the allegation that Exoo directs the Enterprise, Plaintiffs provide no further details about the Enterprise's organization.  For example, the Amended Complaint does not address the other alleged members' roles within the Enterprise, what planning occurred, or even if there were any interactions between the members to further the Enterprise's goal.  Without sufficient allegations, the Court cannot reasonably infer that any Defendant operated within a group.  *See Demodulation, Inc. v. Applied DNA Sciences, Inc.*, No. 11-296, 2012 WL 6204172, at *5 (D.N.J. Dec. 12, 2012) (dismissing New Jersey RICO claim because "Plaintiff did not even allege facts suggesting that Defendants worked together as a group, let alone that the group had a structure or made plans or coordinated any activities.").  In fact, Plaintiffs fail to indicate that any of the alleged members of the Exoo Enterprise were even aware of the Enterprise or its goals.  Plaintiffs, therefore, do not adequately plead that a RICO enterprise existed under the New Jersey RICO statute.

Plaintiffs counter that Exoo has admitted that a RICO enterprise exists.  In making this argument, however, Plaintiffs rely on facts in multiple news articles from, for example, *Rolling Stone* magazine and *Medium.com*, rather than on allegations in the Amended Complaint.  *See* SLU Opp. at 7-10.  In deciding a Rule 12(b)(6) motion, a court ordinarily considers only the factual

allegations, exhibits attached to the complaint, and matters of public record.[4]  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  A court may also rely on "a document *integral to or explicitly relied* upon in the complaint" to decide a Rule 12(b)(6) motion.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original) (citation omitted).  A document is integral if a "claim would not exist but-for the existence of the document."  *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011).  Here, the articles that Plaintiffs cite are not integral to Plaintiffs' claims or public records, nor did Plaintiffs include them as exhibits to the Amended Complaint.  Although Plaintiff references some of the articles in a footnote in the Amended Complaint, *see* Am. Compl. ¶ 16 n.1, Plaintiffs appear to reference the articles to establish Exoo's infamy.  Plaintiffs do not cite the articles or any facts contained therein when discussing the purported RICO enterprise.   Accordingly, the Court does not consider these articles for the reasons that Plaintiffs use them in their opposition briefs.[5]  Plaintiffs do not otherwise challenge Defendants' arguments regarding the existence of a RICO enterprise.  As a result, Plaintiffs fail to plausibly plead that a RICO enterprise existed.

---

[4] If matters outside the pleading are presented on a motion to dismiss and are considered by the court, the motion must be treated as a motion for summary judgment under Rule 56, and all parties must be given an opportunity to present all pertinent material. Fed. R. Civ. P. 12(d).  Although Plaintiffs recognize that the Court may convert a motion to dismiss into one for summary judgment pursuant to Rule 12(d), Plaintiffs expressly asks that this Court *not* convert the instant motions. *See* Exoo Opp. at 5.  Because the Court does not consider any matters outside the pleadings in deciding the current motions, there is no need to convert the motions into ones for summary judgment.

[5] In addition to relying on information outside the pleadings, Plaintiffs also appear to assert various new claims against Defendants in their opposition briefs. *See, e.g.*, SLU Opp. at 12-14 (seemingly asserting a tort claim by contending that SLU had a duty to ensure that Exoo did not harm others); Twitter Opp. at 17-18 (arguing that Twitter aided and abetted a RICO enterprise).  Again, Plaintiffs cannot amend their Amended Complaint through a brief. *Zimmerman*, 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc.*, 745 F.2d at 1107).  Consequently, any new allegation or claim that appears in Plaintiffs' opposition briefs is disregarded.

As a result, Plaintiffs' three RICO claims are dismissed pursuant to Rule 12(b)(6).

### B. Personal Jurisdiction

Next, Exoo maintains that if Plaintiffs' RICO claims are dismissed, the claims asserted by every Plaintiff except for D'Ambly must be dismissed for lack of personal jurisdiction as to Exoo, SLU, and the Twitter Defendants.  Exoo Br. at 38-39.  Plaintiffs do not address this argument. SLU separately contends that Plaintiffs fail to establish personal jurisdiction as to it.  SLU Br. at 17-21.  Plaintiffs, however, only assert RICO claims against SLU.  Because the RICO claims are dismissed, the Court does not reach SLU's personal jurisdiction arguments.  Exoo also fails to explain his authority to assert a defense on behalf of the Twitter Defendants.  Consequently, the Court will only consider Exoo's arguments for lack of personal jurisdiction as to him.

Section 1965(b) authorizes nationwide service of process for a plaintiff asserting a RICO claim.  18 U.S.C. § 1965.  "Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process." *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020) (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006)).  But because Plaintiffs' RICO claims are dismissed for failure to state a claim, Plaintiffs cannot rely on the RICO statute to establish personal jurisdiction. *See Pop Test Cortisol, LLC v. Univ. of Chic.*, No. 14-7174, 2015 WL 3822237, at *5 (D.N.J. June 18, 2015) (stating that because the plaintiff did not allege a plausible RICO claim "18 U.S.C. § 1965(d) cannot rightly form a basis for asserting personal jurisdiction over defendants").  As a result, Plaintiffs must each establish that personal jurisdiction exists over Exoo. *See Bristol-Myers Squibb Co. v. Super. Ct. of Ca., S.F. Cty.*, 137 S. Ct. 1773, 1781-82 (2017) (explaining that the requirements for personal jurisdiction must be satisfied for each defendant and a defendant's relationship with a third party

is an insufficient basis to confer personal jurisdiction); *see also Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 550 (E.D. Pa. 2020) (concluding that the court could not exercise personal jurisdiction over out-of-state plaintiffs' claims even though they suffered the same harms as in-state plaintiffs).

Personal jurisdiction can be established in a number of ways:  general personal jurisdiction, specific personal jurisdiction, waiver, consent, and in-state service of an individual.  Here, the focus is on specific personal jurisdiction.  A federal court must have both statutory and constitutional authority to assert personal jurisdiction over an out-of-state defendant.  *IMO Indus. Inc. v. Kiekert*, 155 F.3d 254, 259 (3d Cir. 1998).  This two-step inquiry first looks to the forum state's long-arm statute then to the Due Process Clause of the Fourteenth Amendment to determine if the exercise of jurisdiction is permitted.  *Id*.  In New Jersey, however, the two steps are collapsed into a single inquiry because the New Jersey long-arm statute allows for the "exercise [of] jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution."  *Nicastro v. J. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (N.J. 2010) (internal quotation marks omitted); *rev'd on other grounds*, 564 U.S. 873 (2011).  Therefore, for a court to exercise personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Minimum contacts may be established by means of general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction exists if a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Id*.  "With respect to a corporation, the place of

incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Here, Plaintiffs allege that Exoo is domiciled in New York.  Am. Compl. ¶ 16.  As a result, general personal jurisdiction does not exist as to Exoo.

Specific jurisdiction may exist "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 473.  In light of Supreme Court precedent, the Third Circuit developed a three-part test to determine whether specific personal jurisdiction exists. First, the defendant must have "purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted).  The first requirement of this test is also known as "purposeful availment," and seeks to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated contacts" or based on the "unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).  Second, the litigation must "arise out of or relate to at least one of those activities." *Id*. (internal quotation marks omitted).  Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id*. (internal quotation marks omitted).

Here, except for D'Ambly, none of the Plaintiffs live or work in New Jersey.  Because the alleged wrongful conduct here involves interference with their home life and employment, these Plaintiffs do not establish that the Court has specific personal jurisdiction over Exoo.  Consequently, all Plaintiffs except for D'Ambly fail to demonstrate a sufficient connection

between New Jersey, their claims, and Exoo.  These Plaintiffs, therefore, fail to allege that Exoo

purposefully availed itself of the New Jersey forum.  Without purposeful availment, this Court

cannot conclude that specific personal jurisdiction exists over Exoo.[6]  Consequently, the claims

asserted by all Plaintiffs except for D'Ambly are dismissed as to Exoo for lack of personal

jurisdiction.[7]

### C. Tortious Interference (Count II)

In Count Two, D'Ambly alleges that Exoo intentionally interfered with his prospective

economic benefit.  D'Ambly indicates that Exoo's interference caused D'Ambly's employer to

terminate his employment.  Am. Compl. ¶¶ 148-55.  Exoo seeks to dismiss the tortious interference

claim on numerous grounds.  First, Exoo argues that providing truthful information to an employer

does not constitute improper interference with an economic opportunity.  Exoo Br. at 21-23.  Under

New Jersey law, a plaintiff must plead the following elements to establish a claim:

> (1) a plaintiff's reasonable expectation of economic benefit or
> advantage, (2) the defendant's knowledge of that expectancy, (3) the
> *defendant's wrongful, intentional interference* with that expectancy,
> (4) in the absence of interference, the reasonable probability that the
> plaintiff would have received the anticipated economic benefit, and
> (5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir.1992) (emphasis added)

(citing *Printing Mart–Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989)).  However,

"it is generally recognized that a party may not be liable for tortious interference for merely

providing truthful information to one of the contracting parties."  *E. Penn Sanitation, Inc. v.*

---

[6] Because these Plaintiffs fail to allege purposeful availment, the Court will not address the
remaining two requirements to establish specific personal jurisdiction over Exoo.

[7] Due to this conclusion, as to Exoo, the remainder of this Opinion only addresses D'Ambly's
claims against him.

*Grinnell Haulers, Inc.*, 682 A.2d 1207, 1218 (N.J. App. Div. 1996); *see also Snitken v. Franklin Sussex Auto Mall*, No. A-2125-06T12125-06T1, 2008 WL 539024, at *4 (N.J. App. Div. Feb. 29, 2008) ("[T]he *Restatement (Second) of Torts § 727* comment B provides [that] [t]here is of course no liability for interference with a contract or a prospective contractual relation on the part of one who merely gives truthful information to another.").

The Court determines that D'Ambly's allegations as to wrongful and intentional interference are insufficient to survive a motion to dismiss.  There appears to be no dispute that Exoo's conduct was intentional.  Accordingly, the Court focuses on the wrongful requirement vis-à-vis D'Ambly's employment.  Through the Tweets, Exoo allegedly publicized that D'Ambly is a fascist and a white supremacist.  *See, e.g.*, Am. Compl. ¶ 39.  D'Ambly does not outright deny either allegation.  Instead, D'Ambly avers that he is a member of the New Jersey European Heritage Association ("EHA").  *Id.* ¶ 1.  Other than indicating that the association is a "non-violent, pro-domestic policy organization," *id.*, Plaintiffs fail to indicate any specifics about the EHA. Exoo, however, provides relevant Twitter threads as exhibits to his motion to dismiss, which demonstrate that the EHA adheres to white supremacist views.[8]  *See* Torres Decl., Ex. B-II.  For example, the Twitter thread points out that EHA's website includes the "14 words" slogan, which is a phrase used frequently amongst white supremacists, *see 14 Words*, ANTI-DEFAMATION LEAGUE, https://adl.org/education/references/hate-symbols/14-words, and that its YouTube page contains antisemitic images, including the Swastika.  Torres Decl., Ex. B-II at 4, 13.  Moreover, in the Amended Complaint, D'Ambly admits that there are videos of him "using imprudent

---

[8] The Court considers these exhibits as the doxing Twitter threads are integral to Plaintiffs' claims. *See U.S. Express Lines Ltd.*, 281 F.3d at 388.

language during political rallies." *Id.* ¶ 46. In short, it does not appear that D'Ambly is claiming that Exoo defamed him or otherwise spread false information about D'Ambly.

D'Ambly also indicates that Exoo retweeted information about D'Ambly and an "It's okay to be white" march. *Id.* ¶¶ 48, 51. This information appears to focus on D'Ambly's activities outside of work. The information is also not alleged to be false. Similarly, D'Ambly asserts that his employer conducted its own investigation into D'Ambly's activities, and its investigatory report included videos of D'Ambly "using imprudent language during political rallies." *Id.* ¶ 46. As pled, the Amended Complaint appears to indicate that the information came from his employer's investigation rather than from Exoo. Critically, D'Ambly often uses conclusory terms as to alleged improper conduct, such as "threatening Tweets[,]" "death threats[,]" and "threats of physical violence[.]" *Id.* ¶¶ 46d, 52, 59. Likewise, D'Ambly alleges that Exoo directed his associates to send "harassing, intimidating, and threatening phone calls and Tweets" to the Daily News to get D'Ambly fired. *Id.* ¶ 45. But these conclusory allegations and labels are not entitled to the presumption of truth. The doxing thread itself does not include such instructions. *See* Torres Decl., Ex. B-II. Thus, as pled, Plaintiffs fail to sufficiently allege any wrongful conduct.

D'Ambly makes two allegations that demand closer scrutiny. First, D'Ambly indicates that on January 11, 2019, Exoo tweeted "Regardless, I'm gonna spend the next week wrecking your f-----g life, Dan D'Ambly" in response to an EHA Tweet. *Id.* ¶ 58. Exoo's statement certainly reflects an intent to take imminent action against D'Ambly. D'Ambly adds that the same night, his car was vandalized; his vehicle was "keyed," and its tires were slashed. *Id.* ¶ 59. As a result, D'Ambly demonstrates a strong temporal connection between Exoo's statements and unlawful activity. But the activity is not related to D'Ambly's employment, and D'Ambly's termination forms the basis for Count II.

Second, D'Ambly asserts that on January 11, 2019, a Tribune executive "delivered recordings of the death threats to the Daily News.  The callers threatened D'Ambly and stated the Daily News was responsible for 'any violence or blood spilled is also on your hands.'"  *Id.* ¶ 52. As to the alleged "death threat," the Court has already found that the conclusory term is not entitled to the presumption of truth.  D'Ambly also does not indicate when the calls were actually made. The reference to any violence or blood spilled could support a finding of wrongful and intentional interference, but more factual support is needed.  It is not clear to the Court whether the callers were referring to *D'Ambly's* blood being spilled or violence as to him, to D'Ambly engaging in violence, or to some other activity or persons.  Consequently, this allegation does not sufficiently allege wrongful conduct.

In sum, D'Ambly's tortious interference claim is not plausibly pled.  Presumably, D'Ambly has, or knows the content of, the threats and other allegedly improper activity.  D'Ambly will have to provide more factual support in his amended pleading.  Because the Court finds that Count II is insufficiently alleged, it does not reach the remainder of Exoo's arguments.

### D.  Intrusion Upon Seclusion (Count III)

In Count III, D'Ambly pleads a claim for intrusion upon seclusion because Exoo directed and carried out efforts to publicize private information about D'Ambly.  Am. Compl. ¶¶ 156-60. Amongst other things, Exoo argues that this claim must be dismissed because Plaintiffs do not allege that Exoo entered into D'Ambly's "private" space when doxing him.  Exoo Br. at 25.

"To establish a prima facie claim for an invasion of privacy by an unreasonable intrusion upon the seclusion of another, a plaintiff must demonstrate: (1) an intentional intrusion; (2) into the solitude, seclusion, or private affairs of another; (3) that is highly offensive to a reasonable person."  *Swift v. United Food Commercial Workers Union Local 56*, No. A-2612-06T12612-

06T1, 2008 WL 2696174, at *3 (N.J. App. Div. July 11, 2008) (quoting *Kinsella v. Welch*, 827 A.2d 325, 333 (N.J. App. Div. 2003)); *see also Rumbauskas v. Cantor*; 649 A.2d 853, 856 (N.J. 1994) .  As the New Jersey Appellate Division has observed:  "The thrust of this aspect of the tort is, in other words, that a person's private, personal affairs should not be pried into.  The converse of this principle is, however, of course, that there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known."  *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Sup. Ct. App. Div. 1982) (citing *Prosser, Law of Torts* (4 ed. 1971), § 117 at 807–809).

In *Brisbee*, for example, a homeowner sued his real estate broker over a press release.  452 A.2d at 690.  The release included a picture of the house, taken without the plaintiff's consent; the purchase price, the property address, the name of the plaintiff, and the plaintiff's job, among other things.  *Id.*  The Appellate Division found that the plaintiff's intrusion upon seclusion claim failed as a matter of law:

> It can accordingly be seen that plaintiff's first count must fail, both because reasonable men could not find any highly offensive intrusion upon the Bisbees here, and because all of the matters at issue herein were otherwise known and public.  The photograph which the *Press* printed was taken from the street, a public thoroughfare, and merely represented a view which is available to any bystander.  Most of the facts in the article are matters of public record, readily available to anyone who would wish to ascertain them.  For instance, the deed and the acknowledgment thereto must contain the true consideration as required for recording by [N.J. Stat. Ann. §] 46:15–6.  The realty transfer fee imposed by [N.J. Stat. Ann. §] 46:15–7 is endorsed on the deed by the recording officer and that amount also reflects the consideration paid for the purchase. Defendants did nothing wrongful in obtaining or compiling this information.

*Id.* at 691 (footnote omitted).

D'Ambly insufficiently alleges a claim in Count III.  Like Count II, D'Ambly relies on conclusory statements and labels instead of plausible facts.  D'Ambly alleges that "Defendant Exoo publishes Tweets and doxes other persons private and undisclosed information."  Am. Compl. ¶ 27.  D'Ambly further claims "enterprise associates stalked D'Ambly to uncover his true identity."  *Id.* ¶ 39.  With the exception of the pejorative and conclusory word "stalked," D'Ambly fails to assert any facts indicating that Exoo (or his associates) used anything other than public and permissible means to identify him.  D'Ambly indicates that on October 29, 2018, Exoo "publicly disclosed for the first time D'Ambly's name, hometown, photograph, employer, occupation, employer's location, multiple telephone numbers for his employer, a labor union Referendum Board he chaired, and the names of the other Referendum Board members."  *Id.* ¶ 44.  But D'Ambly fails to adequately allege that the information was acquired by wrongful means.  For example, D'Ambly does not indicate that such information was not publicly available or that he took steps to ensure that some or all of the information remained private.  *See Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 663-54 (N.J. 2010) (explaining that the plaintiff subjectively had a reasonable expectation of privacy to personal emails that she exchanged with her attorney on her work laptop with a password protected, personal email account); *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 872 F. Supp. 2d 369, 374 (D.N.J. 2012) (denying intrusion upon seclusion claim involving allegation that the plaintiff's supervisor accessed postings on her Facebook "wall" that could be viewed only by her Facebook friends).  Indeed, it appears that not only was D'Ambly an admitted member of EHA, but that he also "actively participates with other EHA member in political rallies, peaceful political protests, pamphleteering, and speech[.]" Am. Compl. ¶ 1.  Such public activity by definition does not reflect D'Ambly's solitude, seclusion, or private affairs.

For the foregoing reasons, Count III is dismissed.

### E.  Violations of Criminal Statutes (Counts IV, V, and VI)

In Counts IV, V, and VI, D'Ambly alleges that Exoo violated provisions of the New Jersey Criminal Code and federal criminal statutes.  Am. Compl. ¶¶ 161-77.  Exoo maintains that all three claims must be dismissed because there is no private right of action for any of the cited criminal statutes.  Exoo Br. at 26-29.

Ordinarily, federal criminal statutes do not provide individuals with a private right of action in a civil case.  *See Weeks v. Bowman*, No. 16-9050, 2017 WL 557332, at *2 (D.N.J. Feb. 10, 2017) (dismissing civil matter for lack of subject matter jurisdiction because criminal statutes cited by the plaintiff did not create a private right of action).  If a statute provides a private right of action, however, an individual may "bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement."  *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007).  In Count V, D'Ambly alleges that Exoo violated 18 U.S.C. § 875(c), and in Count IV, that Exoo violated 18 U.S.C. § 2261A(2).  There is no private right of action for either statute.  *Chadda v. Mullins*, No. 10-4029, 2010 WL 4484622, at *2 (E.D. Pa. Nov. 9, 2010) (dismissing claim because "18 U.S.C. § 875 does not authorize a private cause of action"); *Humphrey v. Pa. Court of Common Pleas of Phila.*, 462 F. Supp. 3d 532, 534 n.2 (E.D. Pa. 2020) (dismissing claims premised on 18 U.S.C. § 2261-2262 and noting that "[n]umerous federal courts held that no private right of action exists under this specific statute).  As a result, Counts V and VI are dismissed.

In Count IV, D'Ambly alleges that Exoo violated N.J. Stat. Ann. §§ 2C:33-4.1 and 2C:30-31(a).  Am. Compl. ¶¶ 161-66.  Neither section of the New Jersey Criminal Code contains a private right of action.  Courts in New Jersey are "reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action."  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l*

*Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001).  D'Ambly does not identify any authority

suggesting the Court should infer that a statutory private right of action exists for either statute.

Therefore, the Court will not infer a private right of action.  As a result, Count IV is also dismissed.

### F.  Negligent Entrustment (Count XI)

Next, in Count XI, Plaintiffs assert a negligent entrustment claim against the Twitter

Defendants.  Am. Compl. ¶¶ 218-26.  A claim for negligent entrustment may arise by

> permit[ing] a third person to use a thing or to engage in an activity
> which is under the control of the actor, if the actor knows or should
> know that such person intends or is likely to use the thing or to
> conduct himself in the activity in such a manner as to create an
> unreasonable risk of harm to others.

*N.J. Citizens United v. Hernandez*, No. A-4060-04T54060-04T5, 2006 WL 686571, at *4 (N.J.

App. Div. Mar. 20, 2006) (quoting *Restatement (Second) of Torts* § 308 (1965)).  To state a claim

for negligent entrustment, a plaintiff must plead there was an "entrustment of [a] dangerous

instrumentality."  *Id.* (quoting 57A *Am. Jur.2d Negligence* § 318 (2005)).  The Twitter Defendants

argue that Twitter does not constitute a dangerous instrumentality.  Twitter Br. at 20.  The Court

agrees.

Negligent entrustment claims involve activities or items that are inherently dangerous, such

as firearms, automobiles, or furnishing alcohol to minors.  *See Stelting v. Hauck*, 159 A.2d 395,

389 (N.J. 1960) (explaining that firearms, "poisons, knives, and the like" are "instrumentalities of

potential harm to children); *Quigley v. Arthur*, No. 10-4308, 2011 WL 5519839, at *2 (D.N.J. Nov.

10, 2011) (denying summary judgment for negligent entrustment claim involving use of an

automobile that was involved in an accident); *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, (W.D.

Pa. 2004) ("It is sufficiently alleged that the institutional defendants were aware of Krawczyk's

propensity to furnish alcohol to minors in his position as a priest, and knew or should have known

that an unreasonable risk of harm to individuals under the age of twenty-one would be created by permitting Krawczyk to retain his position as pastor[.]"); *see also Restatement (Second) of Torts* § 308, Illustrations (1965) (solely using car accidents as basis for negligent entrustment claim). Twitter, an online communications platform, is materially different.  Simply stated, there is nothing inherently dangerous about a technology that facilitates communication, and the Court is unaware of any authority that suggests the opposite.

As a result, Plaintiffs' negligent entrustment claim is dismissed.

### G. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count XII)

Finally, Plaintiffs assert a claim for breach of the implied covenant of good faith and fair dealing against the Twitter Defendants.  Am. Compl. ¶ 227-37.  The Twitter Defendants contend that this claim must be dismissed because Plaintiffs fail to allege that there was a contract between any Plaintiffs and either of the Twitter Defendants.  Twitter Br. at 36.  The implied covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith[,]" that is, they must "adher[e] to community standards of decency, fairness, or reasonableness."  *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted).  But "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *Noye v. Hoffman-La Roche Inc.*, 570 A.2d 12, 14 (N.J. App. Div. 1990); *see also FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (stating that the circuit did not believe that the New Jersey Supreme Court would support "the proposition that *non-parties* to a contract can be held liable for a breach of a contractual duty of good faith and fair dealing") (emphasis in original).  Here, Plaintiffs fail to assert that any contract existed.  Without a contract, Plaintiffs' implied covenant of good faith and fair dealing claim fails.

Count XI, therefore, is dismissed.[9]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part** and **DENIED in** part.  Dismissal is without prejudice.  Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiffs do not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated: November 1, 2021

John Michael Vazquez, U.S.D.J.

---

[9] Because the Court concludes that Plaintiffs fail to state any claims against the Twitter Defendants, the Court does not reach the Twitter Defendants' argument that they are immune from Plaintiffs' claims under 47 U.S.C. § 230, which is an affirmative defense.  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) ("Preemption under the Communications Decency Act[, 47 U.S.C. § 230] is an affirmative defense.").  The Court notes, however, that a district court "may grant a Rule 12(b)(6) motion on the basis of an affirmative defense '*if* the predicate establishing the defense is apparent *from the face of the complaint*.'"  *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)).