# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DANIEL D'AMBLY, ET AL.,

                  Plaintiffs,

    vs.

CHRISTIAN EXOO a/k/a ANTIFASH
GORDON, ET AL.,

                Defendants.

Civil Action No.

 2:20-cv-12880-JMV-JSA

Hon. John M. Vazquez
United States District Judge

**Oral Argument Requested**

**Motion Date: February 7, 2022**

---

### DEFENDANTS TWITTER, INC. AND VIJAYA GADDE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE COUNTS IV, V, AND VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT AND CROSS-CLAIMS FILED BY CO-DEFENDANT COHEN, WEISS AND SIMON, LLP

Lawrence S. Lustberg (ID#023131983)
Lauren James-Weir (ID#025202007)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4731
Facsimile:  (973) 639-6285
llustberg@gibbonslaw.com
ljames-weir@gibbonslaw.com

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:   (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

*Attorneys for Defendants Twitter, Inc.
  and Vijaya Gadde*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

LEGAL STANDARD ....................................................................................... 10

ARGUMENT .................................................................................................... 11

I.      The Court Should Dismiss Plaintiffs' RICO Claims (Counts Four
        and Five) Because The SAC Fails To Cure The Fatal Defects That
        This Court Already Identified, And Multiple Other Defects
        Warrant Dismissal. ................................................................................. 11

        A.      The SAC Still Does Not Plausibly Allege A RICO Predicate
                Offense. ....................................................................................... 13

        B.      The SAC Still Does Not Plausibly Allege A RICO
                Enterprise Encompassing The Twitter Defendants ...................... 16

        C.      The SAC Fails To Plausibly Allege That The Twitter
                Defendants Engaged In The Requisite Racketeering
                "Conduct." ................................................................................... 20

        D.      The SAC Fails To Plausibly Allege That The Alleged
                Racketeering Proximately Caused Plaintiffs' Injuries. ................ 22

        E.      Many Plaintiffs Are Not Alleged To Have Suffered Any
                "Injury" That Is Compensable Under RICO. ................................ 24

        F.      The SAC Fails To Plausibly Allege That The Twitter
                Defendants Were Part Of Any Racketeering "Agreement." .......... 25

        G.      The Court Should Dismiss Plaintiffs' RICO Claims With
                Prejudice. ..................................................................................... 27

II.     The Court Should Dismiss D'Ambly's LMRDA Claim (Count
        Seven). .................................................................................................... 28

III.    Section 230 Bars All Of Plaintiffs' Claims. ........................................... 30

IV.     The Court Should Dismiss the Cross-Claims Previously Filed By
        Cohen, Weiss and Simon, LLP ............................................................... 37

CONCLUSION ................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*,
  2021 WL 1840039 (D.N.J. May 7, 2021) ...................................................... 27

*Apgar v. Lederle Labs.*,
  588 A.2d 380 (N.J. 1991) ............................................................................. 38

*Allied Corp. v. Frola*,
  730 F. Supp. 626 (D.N.J. 1990) ................................................................... 38

*Alvin v. Suzuki*,
  227 F.3d 107 (3d Cir. 2000) .................................................................. 11, 27

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ................................................................... 26

*Argent Holdings, LLC v. E. El Paso Physicians Med. Ctr., LLC*,
  2018 WL 548676 (W.D. Tex. Jan. 23, 2018) ............................................... 37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 10, 38

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
  88 F. Supp. 3d 543 (E.D. Va. 2015) ............................................................ 35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 10, 26

*Carson v. Vernon Twp.*,
  2010 WL 2985849 (D.N.J. July 21, 2010) ............................................. 14, 15

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019) ....................................................................... 32

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ....................................................................... 36

*Doe v. Oesterblad*,
  2015 WL 12940181 (D. Ariz. June 9, 2015) ................................................ 35

*Elsevier Inc. v. W.H.P.R., Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010) ......................................................... 19

*Fields v. Twitter, Inc.*,
  200 F. Supp. 3d 964 (N.D. Cal. 2016)......................................................32, 36

*Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*,
  2018 WL 1069417 (D.N.J. Feb. 26, 2018)...................................................38

*Foman v. Davis*,
  371 U.S. 178 (1962).................................................................. 10-11, 27, 29

*Force v. Facebook, Inc.*,
  304 F. Supp. 3d 315 (E.D.N.Y. 2018)..........................................................35

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ...................................................................30, 35

*Force v. Facebook, Inc.*,
  140 S. Ct. 2761 (2020)................................................................................35

*Genty v. Resolution Trust Corp.*,
  937 F.2d 899 (3d Cir. 1991) .......................................................................24

*Gonzalez v. Google, Inc.*,
  335 F. Supp. 3d 1156 (N.D. Cal. 2018).......................................................35

*Gonzalez v. Google, Inc.*,
  2 F.4th 871 (9th Cir. 2021) .........................................................................35

*Green v. Am. Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003) ...................................................... 30-31, 33, 34

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010)........................................................................................22

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)....................................................................................22

*Hunsberger v. The Original Fudge Kitchen*,
  2020 WL 6620156 (D.N.J. Nov. 12, 2020) ..................................................38

*Icon Health & Fitness, Inc. v. Consumer Affairs.com*,
  2017 WL 2728413 (D. Utah June 23, 2017) ................................................35

*Igbonwa v. Facebook, Inc.*,
  2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ................................................33

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................17, 19, 20, 21

*Inventel Prods., LLC v. Li*,
  2019 WL 5078807 (D.N.J. Oct. 10, 2019) ....................................................32

*Jones v. Twitter, Inc.*,
  2020 WL 6263412 (D. Md. Oct. 23, 2020) ..................................................32

*Katz v. Holzberg*,
  2013 WL 5946502 (D.N.J. Nov. 4, 2013) .....................................................39

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ......................................................................35

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014)....................................................................33

*La 'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017).........................................................12

*Lentini v. McDonald's USA*,
  2019 WL 4746420 (D.N.J. Sept. 30, 2019) ...........................................17, 18

*Manchanda v. Google*,
  2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016)...............................................35

*McCullough v. Zimmer, Inc.*,
  382 F. App'x 225 (3d Cir. 2010) ...........................................................17, 20

*N.V.E., Inc. v. Palmeroni*,
  2015 WL 13649814 (D.N.J. Feb. 23, 2015) .................................................19

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994).......................................................................................12

*Nayak v. C.G.A. Law Firm*,
  620 F. App'x 90 (3d Cir. 2015) ....................................................................27

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ..................................................................30, 33

*NetChoice, LLC v. Moody*,
  2021 WL 2690876 (N.D. Fla. June 30, 2021) .........................................12-13

*NetChoice, LLC v. Paxton*,
  2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ..............................................12

*O'Handley v. Padilla,*
   2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ............................................... 12, 13

*Obado v. Magedson,*
   2014 WL 3778261 (D.N.J. July 31, 2014) ................................... 31, 35, 36, 37

*Obado v. Magedson,*
   612 F. App'x 90 (3d Cir. 2015) ......................................................... 10, 31, 34

*Parker v. Google, Inc.,*
   242 F. App'x 833 (3d Cir. 2007) ............................................................. 32, 34

*Phillips v. Cnty. of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) .................................................................... 11, 29

*Regions Bank v. Kaplan,*
   2013 WL 1193831 (M.D. Fla. Mar. 22, 2013) ............................................. 37

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ........................................................................... 12, 21-22

*Ricci v. Teamsters Union Local 456,*
   781 F.3d 25 (2d Cir. 2015) ............................................................................ 30

*Rodriguez v. Serv. Emps. Int'l,*
   755 F. Supp. 2d 1033 (N.D. Cal. 2010) ........................................................ 28

*Rodzejewski v. Prudential Ins. Co. of Am.,*
   2010 WL 11570248 (D.N.J. Mar. 12, 2010) ................................................. 28

*Roman Restoration, Inc. v. Operative Plasterers' and Cement
   Masons' Int'l Ass'n of the United States and Canada Local #8,*
   2008 WL 2684350 (D.N.J. June 30, 2008) ............................................. 14, 15

*Sanchez v. Dankert,*
   2002 WL 529503 (S.D.N.Y. Feb. 22, 2002) ................................................. 28

*Saponaro v. Grindr, LLC,*
   93 F. Supp. 3d 319 (D.N.J. 2015) .................................................................. 31

*Scheidler v. Nat'l Org. for Women, Inc.,*
   537 U.S. 393 (2003) ....................................................................................... 14

*Scheidler v. Nat'l Org. for Women, Inc.,*
   547 U.S. 9 (2006) ........................................................................................... 14

*Schonfeld v. Raftery*,
    335 F. Supp. 846 (S.D.N.Y. 1971) ...........................................................28-29

*Schrager v. Aldana*,
    2013 WL 12153584 (D.N.J. Mar. 29, 2013) .................................................30

*Smith v. Berg*,
    247 F.3d 532 (3d Cir. 2001) ..........................................................................25

*Smith v. Jones, Gregg, Creeham & Gerace, LLP*,
    2008 WL 5129916 (W.D. Pa. Dec. 5, 2008) .................................................25

*Tedeschi v. Smith*,
    2010 WL 148424 (D.N.J. Jan. 12, 2010)......................................................21

*The Knit With v. Knitting Fever, Inc.*,
    625 F. App'x 27 (3d Cir. 2015) ........................................................25, 26, 27

*Univ. of Maryland at Balt. v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) ........................................................................21

*United States v. Applins*,
    637 F.3d 59 (2d Cir. 2011) ............................................................................26

*United States v. Local 560*,
    550 F. Supp. 511 (D.N.J. 1982)................................................................28-29

*United States v. Local 560 of Int'l Bhd. of Teamsters, Chauffeurs,
    Warehousemen, and Helpers of Am.*,
    780 F.2d 267 (3d Cir. 1985) ..........................................................................28

*United States v. Nardello*,
    393 U.S. 286 (1969)......................................................................................16

*United States v. Turkette*,
    452 U.S. 576 (1981)......................................................................................20

*United States v. Walker*,
    657 F.3d 160 (3d Cir. 2011) ..........................................................................14

*United States v. Williams*,
    974 F.3d 320 (3d Cir. 2020) ..........................................................................27

## Statutes, Rules, and Regulations

18 U.S.C. § 1951 ......................................................................................7, 13, 15

18 U.S.C. § 1951(b)(1)......................................................................15

18 U.S.C. § 1951(b)(1)......................................................................15

18 U.S.C. § 1952(a) ...........................................................................2

18 U.S.C. § 1964(c) .........................................................................22

47 U.S.C. § 230 ..........................................................................3, 11

47 U.S.C. § 230(c)(1)..................................................................31, 34

47 U.S.C. § 230(f)(2) ........................................................................32

29 U.S.C. § 530...................................................................3, 11, 28, 29

N.J.S.A. 2A:53A ..............................................................................10

Fed. R. Civ. P. 12(b)(6)................................................................10, 38

## INTRODUCTION

For the third time, Plaintiffs repeat the same mistakes that required dismissal of their first two complaints against Twitter, Inc. and its executive Vijaya Gadde (together, the "Twitter Defendants").  As with those prior claims, Plaintiffs seek to transform their apparent disagreement with how Twitter moderated third-party content on its online platform into a federal offense. Because Plaintiffs have done nothing to cure the fatal flaws this Court already identified, or the numerous additional grounds for dismissal that this Court did not previously have to address, all claims against the Twitter Defendants should be dismissed with prejudice.  Three times Plaintiffs have tried to state valid claims.  Three times they have failed.  The SAC should be dismissed with prejudice.

Plaintiffs have abandoned three of the five claims that they previously asserted against the Twitter Defendants in the First Amended Complaint ("FAC").[1]  The two remaining claims assert violations of the federal RICO statute (Count Four) and conspiracy to commit racketeering under RICO (Count Five). This Court previously dismissed these claims because Plaintiffs had not plausibly alleged any RICO predicate act, or the existence of a RICO enterprise.  ECF No. 99 (Nov. 1, 2021) ("Dismissal Op.") at 7-10; *see also id.* at 8 (dismissing RICO

---

[1]     The abandoned claims were for racketeering under New Jersey's state racketeering statute, N.J.S.A. 2C:41-1-6.2, negligent entrustment, and breach of implied covenant of good faith – promissory estoppel.  *See* FAC ¶¶ 186-90, 218-26, 227-37.

1

conspiracy claim based on Plaintiffs' failure to plausibly allege a substantive RICO claim).[2] The SAC does nothing to solve either defect. As to the first defect, Plaintiffs still do not plausibly allege that any member of the supposed RICO enterprise "obtain[ed] the property of another," as required to state a predicate offense under the Hobbs Act. Likewise, Plaintiffs still do not plausibly allege that Defendants engaged in extortion or any of the other enumerated "unlawful acts" set forth in 18 U.S.C. § 1952(a) (such as gambling, bribery, arson, or money laundering), as is required to allege a predicate offense under the Travel Act. *See* Dismissal Op. at 7.

As for the second defect, the SAC again contains no allegations that plausibly imply the existence of a RICO enterprise that included the Twitter Defendants. *See* Dismissal Op. at 9 (discussing similar requirement under NJ RICO statute). And the SAC also—again—fails to allege that the Twitter Defendants shared a common and unlawful purpose with other members of the supposed enterprise. *Id.*

Plaintiffs' failure to cure the deficiencies in their RICO claims leaves no question that those deficiencies cannot be cured. Accordingly, these claims should be dismissed with prejudice as to the Twitter Defendants because any further amendment of the claims would be futile. Moreover, there are numerous other fundamental gaps in Plaintiffs' RICO allegations, including failing to allege

---

[2]    The Court also considered the FAC's NJ RICO claim as part of its RICO analysis, though Plaintiffs have since abandoned that claim.

2

the requisite conduct, causation, injury, and agreement elements.

Plaintiffs also add a new claim in the SAC against the Twitter Defendants (Count Seven) for alleged Deprivation of Rights under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 530 ("Section 530").[3] That claim fails at the threshold. Section 530 is a *criminal* statute that does not provide a civil cause of action. This Court previously dismissed claims asserted against another Defendant under other criminal statutes for precisely the same reason. *See* Dismissal Op. at 20-21. Any amendment of this claim would also be futile, and this claim should be dismissed with prejudice as well.

These failings are alone sufficient to end this case against the Twitter Defendants. But as previously explained, *see* ECF No. 78-1 (Apr. 22, 2021), a federal statute, 47 U.S.C. § 230 ("Section 230"), also bars all of Plaintiffs' claims against the Twitter Defendants. Section 230 shields interactive computer service providers, such as the Twitter Defendants, from precisely the type of suit that Plaintiffs bring here: an action premised on allegations that the Twitter Defendants failed to terminate the account of a third party who allegedly posted offensive or unlawful online content.

Finally, the Court should also dismiss with prejudice the cross-claims against the Twitter Defendants for indemnification and contribution that were filed by co-Defendant Cohen, Weiss and Simon, LLP ("CWS") in its Answer to

---

[3]     Plaintiffs incorrectly cite the relevant statute as 18 U.S.C. § 530. The correct citation is 29 U.S.C. § 530.

Plaintiffs' original complaint (to the extent that those claims are not deemed moot). CWS's conclusory allegations fall far short of satisfying basic pleading requirements. Beyond that, CWS's cross-claims against the Twitter Defendants are barred by Section 230 and fail to allege the elements required under New Jersey law to establish any right to indemnification.

In sum, despite Plaintiffs now having had three tries, their claims against the Twitter Defendants remain legally deficient. The cross-claims brought by co-defendant CWS are deficient as well. The Court should dismiss with prejudice all claims against the Twitter Defendants.

## BACKGROUND

Twitter operates an Internet communications platform that allows hundreds of millions of people around the world to share views and track current events by reading and posting "Tweets"—short messages limited to 280 characters. Every day, people use this platform to send and receive hundreds of millions of Tweets. Defendant Vijaya Gadde is Twitter's Legal, Public Policy, and Trust and Safety Lead. SAC ¶ 20. Twitter generally offers its services to members of the public without any charge, but it requires all accountholders to agree to abide by Twitter's User Agreement, which comprises the Twitter Terms of Service, Twitter Rules, and Twitter Privacy Policy.[4]

---

[4]    *See* Twitter User Agreement, https://twitter.com/en/tos (last accessed Jan. 14, 2022). Paragraph 31 of the SAC refers to (and incorporates by reference) Twitter's "Terms of Service and Rules."

Plaintiffs allege that they were injured after Defendant Christian Exoo created and disseminated Tweets identifying them (or, in the case of two of the Plaintiffs, their family member) as members of far-right political organizations. According to Plaintiffs, these Tweets set off a chain of events that ultimately resulted in the termination of their employment or their suffering other harms. SAC ¶¶ 40, 47-147.  Lead Plaintiff Daniel D'Ambly, for example, alleges that Exoo published Tweets linking D'Ambly to the European Heritage Association ("EHA")—an alleged white supremacist organization led by D'Ambly that organized an "It's okay to be white" march in January 2019.  *Id.* ¶¶ 1, 47-49, 51-53.  According to the SAC, Exoo's Tweets also encouraged people following Exoo's Twitter account to harass D'Ambly and his employer, the New York Daily News, allegedly triggering a series of other incidents that led to D'Ambly losing his job and to his car being vandalized.  *Id.* ¶¶ 50, 54-76.  Most of the other Plaintiffs likewise allege that Exoo's Tweets caused them to lose jobs and/or face harassment or property damage.  *Id.* ¶¶ 77-147.

Although the SAC includes allegations that Plaintiffs engaged in conduct that publicly displayed their affiliations with and support for far-right organizations, including by participating in public rallies or organizing public events, *see, e.g.*, SAC ¶¶ 1, 15, 78-80, 120, Plaintiffs blame Exoo's Tweets for publicly disclosing their organizational associations, *id.* at 2.  According to the SAC, Exoo's Tweets amounted to "doxing," which the SAC defines as "publicly identify[ing] or publish[ing] private information about (someone) especially in

the form of punishment or revenge." *Id.* at 2 n.1.  The SAC alleges that following Exoo's alleged "doxing," Exoo's "associates" (and other unidentified persons) engaged in "direct action" against Plaintiffs,[5] which included contacting Plaintiffs' employers to urge Plaintiffs' termination, and, in a few instances, damaging Plaintiffs' property. *E.g.*, *id.* ¶¶ 83, 111.  The SAC also alleges that Exoo's Tweets indirectly set off a chain of reactions by other individuals and organizations that culminated in Plaintiffs losing their jobs, suffering property damage, and/or enduring emotional distress. *See id.* ¶¶ 40, 65, 79, 128, 139.

Plaintiffs bring two claims against the Twitter Defendants that purport to be premised on the federal RICO statute—Count Four, which asserts that the Twitter Defendants engaged in "racketeering," and Count Five, which asserts that the Twitter Defendants entered into a racketeering "conspiracy."  SAC ¶¶ 170-95.  Through both of these claims, Plaintiffs seek to impose liability on the Twitter Defendants for allegedly allowing Exoo to post Tweets that supposedly led indirectly to Plaintiffs' injuries.  In particular, the SAC alleges that at some unspecified time, Twitter permanently banned two Twitter accounts operated by Exoo due to his having used those accounts for "doxing." *Id.* ¶ 33.  Although Twitter ordinarily bars individuals with banned accounts from creating new ones, the SAC alleges that Twitter allowed Exoo to create a new account, and then to change the name of that account from @DoxSavage to @AntiFashGordon. *Id.*

---

[5]     The SAC defines "direct action" as "the use of strikes, protests, etc. instead of discussion in order to get what you want."  SAC at, n.2.

¶ 34.  According to the SAC, the Twitter Defendants' supposed failure to keep Exoo off their platform altogether, and to more thoroughly prevent him from violating Twitter's Rules, makes them responsible as members of an alleged "enterprise" and "conspiracy" under the federal RICO statute, and renders them liable for all harms to Plaintiffs that allegedly resulted, directly or indirectly, from Tweets posted through the @AntiFashGordon account, which the SAC asserts was controlled by Exoo.  *See id.* ¶¶ 170-95.

This Court previously dismissed virtually identical RICO claims asserted in the FAC against the Twitter Defendants under the federal and New Jersey RICO statutes.  The Court dismissed Plaintiffs' federal RICO claims on the ground that Plaintiffs had failed to plausibly allege a RICO predicate act under the Hobbs Act, 18 U.S.C. § 1951, or the Travel Act, 18 U.S.C. § 1952.  Dismissal Op. at 7-10.  Specifically, the Court held that the FAC did not allege that Defendants "obtain[ed] property from another," as required for a Hobbs Act violation, and included no credible allegations that Defendants engaged in any of the "unlawful acts" (such as extortion, bribery, arson, or money laundering) criminalized under the Travel Act.  *Id.* at 7-8.  The Court also held that "because Plaintiffs fail to establish a substantive RICO claim, their RICO conspiracy claim must also be dismissed."  *Id.* at 8.  The Court dismissed the claims brought under New Jersey's state racketeering statute on the ground that the FAC did not plausibly allege the existence of a RICO "enterprise."  *Id.* at 8-10.  The Court then gave the Plaintiffs "thirty (30) days to file an amended complaint that cures

the deficiencies noted herein." *Id.* at 23.

Plaintiffs' Second Amended Complaint adds only a handful of new factual allegations relating to the Twitter Defendants, limited to the following: (1) that Exoo is "connected to Twitter through his association with the account holder of @emilygorcenski," who, the SAC alleges, was "followed"[6] by former Twitter CEO Jack Dorsey, SAC ¶ 180; *see also id.* ¶¶ 37-39; (2) that Twitter's Terms of Service prohibit "social coordination"[7] (in addition to doxing), and that the Twitter Defendants received complaints that Exoo had engaged in "social coordination," *id.* ¶¶ 32, 177; (3) that the Twitter Defendants "have classified alleged white supremacists as a greater threat than drug cartels or Islamic terrorists," *id.* ¶ 181; and (4) that Twitter at one point suspended Exoo's account for doxing, but later allowed the account to be reinstated. *Id.* ¶ 178.

In addition, the SAC also contains new allegations purporting to identify a RICO "enterprise" encompassing Exoo (as its leader), new Defendants Nick

---

[6]     When a person is "followed" on the Twitter platform, it means that: (1) the follower's Twitter handle will be listed on the person's "followers list," (2) the follower will see the person's Tweets in the follower's home timeline when the follower logs into Twitter; and (3) the person being followed may start a private conversation with the follower. *See* Twitter Help Center, "Following FAQs," https://help.twitter.com/en/using-twitter/following-faqs (last accessed Jan. 14, 2022) (cited at SAC at 15 n.18).

[7]     The SAC alleges that Twitter defines "social coordination" as "on or off-Twitter coordination among a group of people to amplify or propagate a specific message," which might occur when "an individual us[es] Twitter to incite their followers to say or do a specific thing, such as reply to another person with abusive messaging—a practice referred to as 'dogpiling.'" SAC ¶ 32.

Strickland and the Torch Antifa Network, and various unnamed Exoo "associates," SAC ¶¶ 22, 172—all of whom allegedly "dox people (targets) that they claim are 'fascists' and 'white supremacists,'" *id.* at 2; *see also id.* ¶¶ 22, 63, 78, 83, 85, 98, 101, 104, 110, 113, 122, 126, 134, 136.[8]  The SAC also alleges that Exoo admitted to "leading, associating with, and conspiring with" other members of the Antifa movement.  *Id.* at 3.  It makes no such allegation regarding the Twitter Defendants, nor does it allege that either of them was involved in the Antifa movement.

Finally, the SAC purports to assert an entirely new cause of action against the Twitter Defendants.  Count Seven, which is brought solely by Plaintiff D'Ambly, alleges that the Twitter Defendants, together with Exoo and St. Lawrence University, violated D'Ambly's rights under the LMRDA.  SAC ¶¶ 204-11.  As supposed support for this claim, D'Ambly alleges that Exoo and his associates directed Tweets to D'Ambly's union, the Teamsters, with the "inten[t] to prevent D'Ambly from exercising his rights provided by the LMRDA."  *Id.* ¶ 208.  D'Ambly also alleges that his termination from the New York Daily News resulted in his "expulsion from the Teamsters." *Id.* ¶ 207.

In response to Plaintiff D'Ambly's original complaint, filed September 21,

---

[8]  Although the SAC refers to "Exoo and associates" as an alleged RICO criminal enterprise, SAC ¶ 22, characterizes Torch Antifa Network as an "associate" of Exoo, *id.* at 3, and describes Strickland as working with Exoo to engage in "direct action," *id.* at ¶¶ 57, 63, it does not purport to assert RICO—or any other—claims against either newly joined defendant.

2020 (ECF No. 1), Defendant CWS filed an Answer that also asserted cross-claims against the Twitter Defendants (together with CWS's other co-Defendants). ECF No. 12 (Oct. 22, 2020). CWS's cross-claim for contribution conclusorily alleges that "if Defendant CWS is adjudged liable, then Defendant CWS demands contribution from all Co-Defendants, pursuant to the provisions of New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A." ECF No. 12 at 17. The cross-claim for indemnification conclusorily alleges that "if Defendant CWS is adjudged liable to Plaintiff, Defendant CWS demands equal indemnification from the Co-Defendants." *Id.* CWS provided no factual allegations whatsoever to support its cross-claims.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court on a motion under Rule 12(b)(6) must "accept as true all material allegations," *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015), a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Dismissal with prejudice is proper where a plaintiff has "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed," or where any further amendment would be "futil[e]." *Foman v. Davis*, 371 U.S. 178, 182

10

(1962); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (recognizing that district court need not provide leave to amend when "amendment would be inequitable or futile").   "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."   *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

## ARGUMENT

The Court should dismiss, with prejudice, each of Plaintiffs' claims against the Twitter Defendants.   *First*, Plaintiffs' RICO claims (Counts Four and Five) fail both because the SAC fails to cure the fatal legal defects that previously caused the Court to dismiss those claims, and because they are independently doomed by multiple other defects—including failure to allege the requisite conduct, causation, injury, agreement, and intent elements of a RICO or RICO conspiracy offense.   *Second*, Plaintiff D'Ambly's claim under the LMRDA (Count Seven) must be dismissed because that Act does not authorize a civil cause of action for alleged violations of 29 U.S.C. § 530.   *Finally*, 47 U.S.C. § 230 bars all of Plaintiffs' claims against the Twitter Defendants.

## I.   The Court Should Dismiss Plaintiffs' RICO Claims (Counts Four and Five) Because The SAC Fails To Cure The Fatal Defects That This Court Already Identified, And Multiple Other Defects Warrant Dismissal.

This Court dismissed the prior incarnation of Plaintiffs' RICO and New Jersey RICO ("NJ RICO") claims on two independently sufficient grounds: (1)

that Plaintiffs failed to plausibly allege any RICO predicate act, *see* Dismissal Op. at 5-8, and (2) that Plaintiffs failed to plausibly allege a racketeering "enterprise," *id.* at 8-10. In addition, the Court held that because Plaintiffs had failed to establish a substantive RICO violation, their RICO conspiracy claim necessarily failed. *Id.* at 8. The SAC fails to cure these fundamental deficiencies.

Moreover, and as the Twitter Defendants' prior motions to dismiss also explained, Plaintiffs' RICO claims fail as a matter of law for several additional, independent reasons. Plaintiffs' RICO claims are highly unusual. Although RICO's text is broad, RICO's breadth is "not an invitation to apply RICO to new purposes that Congress never intended." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Courts should be particularly wary of stretching civil RICO's elements to encompass "fully protected First Amendment activity." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, *J.*, concurring). That warning applies with particular force here, where Plaintiffs challenge Twitter's decisions about "what to publish and what not to publish on its platform"—decisions that are fully protected by the First Amendment. *La 'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017).[9]

---

[9]     *Accord O'Handley v. Padilla*, 2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022) ("Like a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment."); *NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *7 (W.D. Tex. Dec. 1, 2021) ("Social media platforms have a First Amendment right to moderate content disseminated on their platforms."); *NetChoice, LLC v. Moody*, 2021 WL 2690876, at *1 (N.D. Fla. June 30, 2021) (preliminarily enjoining state law that would compel social media providers to

Plaintiffs also do not plausibly allege facts sufficient to establish several additional required elements of their RICO claims, including: (1) the requisite "conduct" element for a racketeering offense; (2) that Plaintiffs were injured "by reason of" any of the alleged predicate acts; (3) that many Plaintiffs suffered an "injury" cognizable under RICO; (4) the requisite "agreement" required for a RICO conspiracy claim; and (5) that the Twitter Defendants "knowingly" and "purposefully" acted to facilitate a RICO enterprise, as required for a RICO conspiracy claim.   These fundamental defects in Plaintiffs' claims (each discussed below) provide yet another reason why Plaintiffs' RICO claims against the Twitter Defendants should be dismissed with prejudice.

## A.   The SAC Still Does Not Plausibly Allege A RICO Predicate Offense.

As in the FAC, Plaintiffs again base their RICO claims in the SAC on two alleged RICO predicate acts: (1) violation of the Hobbs Act, 18 U.S.C. § 1951, and (2) violation of the Travel Act, 18 U.S.C. § 1952.  SAC ¶ 183.  But Plaintiffs once again fail to plausibly allege violations of either statute.

The Court previously explained that a viable claim under the Hobbs Act, which criminalizes robbery and extortion, requires the plaintiff to allege that the defendant "obtained property from another."  Dismissal Op. at 7 (quoting *United States v. Hedaithy*, 392 F.3d 580, 601 n.21 (3d Cir. 2004)).  Here, Plaintiffs again

---

host certain types of speech and "forbid[] providers from speaking as they otherwise would.").

13

"focus their RICO claims on allegations that they lost their jobs because of Exoo's doxing." *Id.* As this Court already held, however, "the loss of a job alone does not constitute a Hobbs Act violation because no one obtains another person's property." *Id.* (quoting *Carson v. Vernon Twp.*, 2010 WL 2985849, at *12 (D.N.J. July 21, 2010)). The SAC's allegations concerning property damage or "harassment" are likewise insufficient, because Plaintiffs do not allege that any Defendant ever "pursued [or] received something of value from [Plaintiffs] that they could exercise, transfer, or sell." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003); *see also Roman Restoration, Inc. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the United States and Canada Local #8*, 2008 WL 2684350, at *4 (D.N.J. June 30, 2008) (allegations of "violence or threats of violence" do not state a Hobbs Act violation unless they are "related to an attempt to obtain another's property").

Rather than attempt to plead that any Defendant (let alone the Twitter Defendants) "obtained property" from any Plaintiff, the SAC tries to avoid that requirement by mischaracterizing the Hobbs Act as criminalizing "[i]nterference with commerce by threats or violence." SAC ¶ 183. But binding Supreme Court and Third Circuit precedents foreclose that argument. The Hobbs Act criminalizes robbery and extortion, not "threats" or "violence" unconnected to robbery and extortion. *See Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 16 (2006) ("[P]hysical violence unrelated to robbery or extortion falls outside the scope of the Hobbs Act."); *United States v. Walker*, 657 F.3d 160, 178-79 (3d

14

Cir. 2011) ("To obtain a conviction under the Hobbs Act, the government must show that the defendant committed robbery or extortion or attempted or conspired to do so.").

And, as this Court has already recognized, Dismissal Op. at 6-7, a critical element of both robbery and extortion, for purposes of the Hobbs Act, is that the defendant obtained the plaintiff's property, *see* 18 U.S.C. § 1951(b)(1) (defining "robbery" to mean "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury . . ."); *id.* § 1951(b)(2) (defining "extortion" to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right"); *see also Roman Restoration*, 2008 WL 2684350, at *3 ("The requirement that the defendant 'obtain' the property is [] an essential element of an extortion claim"); *Carson*, 2010 WL 2985849, at *12 ("[T]he Hobbs Act requires a wrongful taking of property."). Because the Plaintiffs do not allege that the Twitter Defendants obtained any of the Plaintiffs' property and thereby robbed or extorted them (or attempted or conspired to do so), the SAC does not plausibly allege a violation of the Hobbs Act.

The SAC likewise fails to plausibly allege a violation of the Travel Act. To plead a Travel Act violation, a plaintiff must allege: "(1) a business enterprise involving gambling, liquor, narcotics, or uncontrolled substances [or] unlawful prostitution offenses; (2) extortion, bribery, or arson; or (3) indictable offenses

involving money laundering."  Dismissal Op. at 7.  Plaintiffs do not allege that any Defendant (let alone the Twitter Defendants) participated in any such conduct.  Indeed, the SAC *omits* many of the FAC's references to "extortion," which is the only enumerated Travel Act offense that is even mentioned in either the FAC or the SAC.  *Compare, e.g.*, FAC ¶ 213 *with* SAC ¶ 191; *see also* FAC ¶¶ 34-35; SAC at 5.  And Plaintiffs have not alleged extortion, which requires obtaining property from another person.  *See United States v. Nardello*, 393 U.S. 286, 290, 296 (1969) (explaining that "extortion" under the Travel Act, like extortion under the Hobbs Act, refers to "obtaining something of value from another").  Because Plaintiffs have again failed to plausibly allege any RICO predicate act, this Court should again dismiss Plaintiffs' RICO claims (Counts Four and Five), this time with prejudice.

## B.    The SAC Still Does Not Plausibly Allege A RICO Enterprise Encompassing The Twitter Defendants.

Plaintiffs likewise fail to cure the second fundamental defect that this Court held doomed the prior versions of their RICO claims:  Plaintiffs still do not plausibly allege the existence of any RICO "enterprise" that includes the Twitter Defendants.  While the Court previously addressed the "enterprise" requirement in the context of D'Ambly's NJ RICO claim (which Plaintiffs have abandoned), *see* Dismissal Op. at 8, the federal RICO statute also contains an "enterprise" requirement, with elements that are similar to those in the New Jersey statute. Under federal law, to satisfy the enterprise requirement, Plaintiffs would have to

plead facts "plausibly implying the existence of an enterprise with . . . a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369-70 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *see also McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d Cir. 2010); *Lentini v. McDonald's USA*, 2019 WL 4746420, at *5 (D.N.J. Sept. 30, 2019).

In dismissing the FAC, this Court held that Plaintiffs had failed to plausibly allege an enterprise for two reasons.  First, it held that the FAC did not plausibly allege that the purported enterprise had the requisite "organization," because, apart from allegations that Exoo directed the "enterprise," the FAC did not address the other alleged members' roles, "what planning occurred, or even if there were any interactions between the members to further the Enterprise's goal."  Dismissal Op. at 8-9.  Without such allegations, the Court reasoned, "the Court cannot reasonably infer that any Defendant operated within a group."  *Id.* at 9.  Second, the Court held that the FAC did not adequately allege that the alleged members of the enterprise "act[ed] purposefully and knowingly in the affairs of the enterprise," as the FAC "fail[ed] to indicate that any of the alleged members of the [enterprise] were even aware of the Enterprise or its goals."  *Id*.

The SAC cures neither of these defects, both of which also require dismissal of Plaintiffs' federal RICO claims against the Twitter Defendants.  First, Plaintiffs still fail to allege that there were any "interactions" between and

17

among the Twitter Defendants, on the one hand, and the other alleged members of the purported enterprise (Exoo, St. Lawrence University, and Exoo's "associates"), on the other, so as to indicate that these individuals and entities operated as a group. Dismissal Op. at 9; *see also Lentini*, 2019 WL 4746420, at *6 (dismissing federal RICO claims and explaining that "[w]ithout some allegation as to how [the alleged enterprise members] are connected, Plaintiffs cannot allege the existence of an association in fact enterprise."). The only new allegation in the SAC concerning *any* relationship at all between the Twitter Defendants and the other alleged "enterprise" participants is an allegation that Twitter was somehow "connected" to Exoo through the holder of Twitter account @emilygorcenski, who (allegedly) was a "mentor" to Exoo, and who also (allegedly) was followed on the Twitter platform by then-CEO Jack Dorsey. SAC ¶¶ 37-38, 180. Of course, that allegation does not lead to any plausible inference that the Twitter Defendants were somehow connected to Exoo (or St. Lawrence University, or Exoo's "associates") for any purpose related to Exoo's alleged doxing or that the Twitter Defendants participated in any "planning" or "interactions" with the alleged "enterprise" in furtherance of its goals. *See* Dismissal Op. at 9.

The SAC also adds allegations that appear to define the alleged enterprise as comprising "Exoo and associates." SAC ¶ 22. It alleges that Exoo "admits leading, associating with, and conspiring with others in an enterprise that doxes and conducts direct action against alleged fascists and white supremacists." SAC

at 3.  It supports this allegation with news articles citing Exoo's prominent role within the Antifa movement.  *Id.*  The SAC also adds as Defendants an individual (Nick Strickland) and an entity (Torch Antifa Network) that allegedly participated with Exoo in doxing and direct action.  *Id.* ¶¶ 63, 78, 83, 85, 98, 101, 104, 110, 113, 122, 126, 134, 136.  Whether or not such allegations might be sufficient to plausibly allege an enterprise consisting of Exoo, Strickland, Torch Antifa Network, and Exoo's other Antifa "associates," they are plainly insufficient to allege an enterprise that included the Twitter Defendants, as they say nothing at all about how *Twitter* was associated with such an enterprise.  *See In re Ins. Brokerage Antitrust Litig*, 618 F.3d at 374 (affirming dismissal where plaintiffs did not show that defendants were associated with the alleged enterprise and explaining that for the enterprise requirement to be met, '"there has to be something that ties together the various defendants allegedly comprising the [enterprise]"') (quoting *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010)); *N.V.E., Inc. v. Palmeroni*, 2015 WL 13649814, at *7 (D.N.J. Feb. 23, 2015) (dismissing claims and holding enterprise requirement not met where complaint "fail[ed] to allege any connection at all" between two groups of Defendants).

Second, the SAC, like the FAC, fails to adequately allege that the Twitter Defendants and the other alleged enterprise participants acted together for any common purpose, as is required for claims under the federal RICO statute.  *See* Dismissal Op. at 9 (discussing similar requirement under NJ RICO); *see also*

*United States v. Turkette*, 452 U.S. 576, 583 (1981) ("[An] enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct.").   Certainly, the SAC does not allege that either Twitter Defendant ever participated in doxing or ever desired that "direct action" be taken against alleged white supremacists by harassing them or damaging their property. The SAC alleges only that the Twitter Defendants "have classified alleged white supremacists as a greater threat than drug cartels or Islamic terrorists," and that Ms. Gadde is "very, very focused on . . . the KKK, the American Nazi Party" because of the racist treatment that her parents previously experienced.   SAC ¶ 181.   Even accepting those allegations as true, they do not remotely suggest, and thus the Plaintiffs do not plausibly allege, that either Twitter Defendant "combined as a unit" with Exoo, St. Lawrence University, or Exoo's "associates" for the "common purpose" of conducting racketeering activities.   *See McCullough*, 382 F. App'x at 231-32.

### C.   The SAC Fails To Plausibly Allege That The Twitter Defendants Engaged In The Requisite Racketeering "Conduct."

To be liable for racketeering under RICO, the defendant must have participated in the alleged enterprise "'through a pattern of racketeering activity.'"   *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371 (citing 18 U.S.C. § 1962(c)).   "The plain language of [RICO] requires that the 'pattern of racketeering activity' be a means by which the defendant 'participate[s], directly or indirectly, in the conduct of [the] enterprise's affairs.'"   *Id.*   Thus, "[s]imply

20

because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *Univ. of Maryland at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). Courts routinely dismiss racketeering claims where plaintiffs fail to allege that the defendants themselves engaged in any racketeering activity. *See, e.g.*, *Tedeschi v. Smith*, 2010 WL 148424, at *4 (D.N.J. Jan. 12, 2010) (dismissing claims where defendant's conduct was "opening and maintaining of a bank account utilized" by one of the individuals responsible for the alleged pattern of racketeering).

Here, even if "doxing" or the sending of harassing messages could be construed as "racketeering activity," *but see supra* 13-16, the SAC contains no allegations that either Twitter Defendant engaged in doxing or harassment. The SAC does not explain how the conduct ascribed to the Twitter Defendants— allegedly allowing Exoo to maintain his Twitter account, and allegedly failing to prevent him from violating certain Twitter rules—could constitute any RICO predicate offense. *See supra* pp. 13-16. Moreover, the alleged actions or inactions of the Twitter Defendants relate entirely to Twitter's own business: they concern Twitter's alleged enforcement of its own rules in the ordinary course of its own business operations. But to assert a racketeering claim, a plaintiff must plausibly allege that the defendant participated in "the conduct of the '*enterprise's* affairs,' not just [its] own affairs." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371 (quoting *Reves*, 507 U.S. at 185). Furthermore, the defendant must have participated in the "operation or management" of the

21

enterprise. *Reves*, 507 U.S. at 177-78. Here, the SAC does not allege that either Twitter Defendant played any kind of "management" or "operation[al]" role in the alleged "Exoo enterprise."

### D. The SAC Fails To Plausibly Allege That The Alleged Racketeering Proximately Caused Plaintiffs' Injuries.

To succeed on a RICO claim, Plaintiffs also must plausibly allege that they were injured "by reason of" the alleged racketeering conduct—in other words, that the alleged racketeering proximately caused their alleged injuries. *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992); *see also* 18 U.S.C. § 1964(c). Proximate cause requires "some *direct* relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. Where "[m]ultiple steps . . . separate the alleged [predicate offenses] from the asserted injury" and a plaintiff's "theory of liability rests on the independent actions of third and even fourth parties," the "by reason of" requirement is not satisfied. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 4-5, 15 (2010).

Here, many intervening events and actors stand between the "racketeering" conduct that Plaintiffs allege and the injuries that Plaintiffs allegedly sustained. For instance, D'Ambly points to two injuries that he allegedly suffered—vandalism to his vehicle (SAC ¶ 61) and losing his job (SAC ¶ 65). But D'Ambly's vehicle was damaged by unknown individuals, who may not have had any connection with Exoo or his alleged "doxing." *See* SAC ¶ 61. And the Daily News terminated D'Ambly only after it had questioned him about his ties to the

22

EHA and concluded that he was "not an innocent victim," that the calls that the Daily News had received about D'Ambly were attributable to his "choice to associate with the [EHA] and to go into the public making anti-Semitic and racist comments," and that D'Ambly's actions in connection with the EHA were "in stark contrast to the values and mission of our newspaper and this Company." *Id.* Ex. D at 3, 2. Moreover, the Daily News terminated D'Ambly only after an independent third party, Insite Risk Management, had investigated his association with the EHA and confirmed that there were videos showing him using "imprudent language" during EHA political rallies. *Id.* ¶ 50. In short, the independent decisions of at least four sets of independent actors—the Daily News, Insite Risk Management, the person(s) who vandalized D'Ambly's car, and D'Ambly himself—sever the requisite "direct relation" between the alleged conduct of Exoo and D'Ambly's alleged injuries. And the Twitter Defendants are even further removed from Exoo's actions.

For many of the other Plaintiffs, the SAC likewise fails to establish the necessary "direct relation" between each of their alleged injuries and the alleged conduct of Exoo (let alone the Twitter Defendants). One Plaintiff—Jobel Barbosa—alleges that he was terminated after Exoo's Tweets were "promoted," not by Exoo (or his "associates"), but by "comedienne Kathy Griffin." SAC ¶ 126. Three Plaintiffs—Zachary Rehl, Amanda Rehl, and K.R.—base their claims on "doxing" that allegedly began in August 2017, more than a year *before* the Twitter Defendants allegedly allowed Exoo to continue using the Twitter

platform under a different account name rather than permanently banning him from the platform. *Id.* ¶¶ 78, 88, 93. Other Plaintiffs admit that their membership or leadership in controversial organizations was public. *See supra* pp. 5-6 (detailing allegations). Given these allegations, the Court should not accept the SAC's conclusory statements that it was the Tweets that Plaintiffs attribute to Exoo—as opposed to Plaintiffs' own voluntary decisions to publicly align themselves with controversial organizations—that led other actors to harass Plaintiffs, fire them from their jobs, or damage their property. And again, any connection between those alleged injuries and the Twitter Defendants is even more attenuated.

### E. Many Plaintiffs Are Not Alleged To Have Suffered Any "Injury" That Is Compensable Under RICO.

Multiple Plaintiffs fail to allege *any* type of cognizable RICO injury at all. The RICO statute requires injury to "business or property"; "personal injuries" are not compensable under RICO. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3d Cir. 1991) (rejecting plaintiffs' RICO claims premised on "injuries to physical and mental health, including emotional distress"). Yet two Plaintiffs—Aaron Wolkind and Thomas Louden—allege only that Exoo's doxing led to their receiving "threatening and harassing phone calls" (SAC ¶ 107) and to the posting of some of their "personal information" online (SAC ¶ 146). Any injury which these alleged events could have caused would plainly be within the realm of "personal injuries," which are not compensable under RICO. Moreover,

three Plaintiffs—Mark Anthony Tucci, Richard Schwetz, and Matthew Reidinger—fail to allege any injury at all.  These Plaintiffs allege that Exoo published Tweets that identified them as members of far-right political organizations, and that Exoo encouraged his "associates" to contact Plaintiffs' employers, but do not allege what—if anything—occurred as a result.  SAC ¶¶ 112-16, 117-20, 121-24.

### F.   The SAC Fails To Plausibly Allege That The Twitter Defendants Were Part Of Any Racketeering "Agreement."

Plaintiffs' RICO conspiracy claim (Count Five) also fails for additional, independent reasons.  As the Third Circuit has explained, "'[b]are allegations of conspiracy described in general terms may be dismissed.'"  *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015) (quoting *Smith v. Jones, Gregg, Creeham & Gerace, LLP*, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008)).  Here, the SAC's conspiracy allegations are entirely conclusory, and Plaintiffs do not plausibly allege two of the fundamental elements of any RICO conspiracy:  (1) that the Twitter Defendants reached any "agreement" with the other alleged RICO enterprise participants, *see Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001), and (2) that the Twitter Defendants "purposefully and knowingly" directed their services at facilitating a pattern of racketeering activity, *see The Knit With*, 625 F. App'x at 35.

The SAC fails to allege facts sufficient to establish the requisite "agreement" element because it does not allege that the Twitter Defendants

"objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise." *The Knit With*, 625 F. App'x at 36.  Plaintiffs claim that "as a permanently banned user, Exoo could not possess an account without Twitter's consent or agreement when he was allowed to change his . . .  account username from @DoxSavage to @AntiFashGordon."  SAC ¶ 179.  But that assertion certainly does not raise a plausible inference that the Twitter Defendants agreed to participate in the affairs of a RICO enterprise.  *The Knit With*, 625 F. App'x at 36.  At most, the SAC alleges that the Twitter Defendants (and St. Lawrence University) acted in parallel with Exoo and his "associates"—not that there was any "meeting of the minds" among them, as would be required to plausibly allege an "agreement."  *See, e.g.*, *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (affirming dismissal of RICO conspiracy claim because "Plaintiffs' allegations of Defendants' parallel conduct, absent a plausibly-alleged 'meeting of the minds,' fail to 'nudge[] their claims across the line from conceivable to plausible") (quoting *Twombly*, 550 U.S. at 557, 570); *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011) (explaining that the conspirators must have "reached a meeting of the minds as to the operating of the affairs of the enterprise through a pattern of racketeering conduct").

Plaintiffs' RICO conspiracy claim is independently defective because the SAC does not allege that the Twitter Defendants "purposefully and knowingly" directed the use of their services (the Twitter platform) at "facilitating a . . . pattern of racketeering activity."  *The Knit With*, 625 F. App'x at 35; *see also United*

*States v. Williams*, 974 F.3d 320, 369-70 (3d Cir. 2020) (RICO co-conspirator must have the "intention of furthering or facilitating" the RICO enterprise's objectives).  As the Third Circuit has made clear, a defendant's mere provision of "services" to an alleged enterprise participant is insufficient, as a matter of law, to plausibly allege a RICO conspiracy.  *The Knit With*, 625 F. App'x at 38-39. Here, the SAC alleges only that the Twitter Defendants continued to allow Exoo to use the Twitter platform, notwithstanding Exoo's allegedly violating Twitter's rules.  Even if Exoo's "doxing" could be construed as "racketeering activity," *but see supra* 13-16, the SAC does not allege that the Twitter Defendants "purposefully and knowingly" agreed to "facilitat[e]" doxing.  Instead, the SAC alleges only that the Twitter Defendants, like countless others, are opposed to the ideas of white supremacists.  *See* SAC ¶ 181.

### G.   The Court Should Dismiss Plaintiffs' RICO Claims With Prejudice.

Plaintiffs' repeated failure to cure the deficiencies in their RICO claims lays bare the simple truth:  They cannot do so.  Accordingly, the Court should not just dismiss these claims; it should dismiss them *with prejudice*.  *See Foman*, 371 U.S. at 182; *Alvin*, 227 F.3d at 121; *Nayak v. C.G.A. Law Firm*, 620 F. App'x 90, 94 (3d Cir. 2015) (affirming dismissal of amended complaint with prejudice because granting plaintiff leave "to file yet another amended complaint would have been futile"); *A&E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, 2021 WL 1840039, at *1 (D.N.J. May 7, 2021) (dismissing counts in second

amended complaint with prejudice because plaintiff failed to cure deficiencies in first amended complaint); *Rodzejewski v. Prudential Ins. Co. of Am.*, 2010 WL 11570248, at *2 (D.N.J. Mar. 12, 2010) (similar).

## II. The Court Should Dismiss D'Ambly's LMRDA Claim (Count Seven).

D'Ambly's new LMRDA claim suffers from a fatal flaw at the threshold: 29 U.S.C. § 530[10] is a *criminal* statute for which there is no corresponding private right of action.  *See, e.g.*, *Rodriguez v. Serv. Emps. Int'l*, 755 F. Supp. 2d 1033, 1048 (N.D. Cal. 2010) ("Section 530 does not give rise to a private cause of action."); *Sanchez v. Dankert*, 2002 WL 529503, at *7 (S.D.N.Y. Feb. 22, 2002) ("Section 530 is a criminal statute which does not give rise to a private right of action."); *United States v. Local 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 282 (3d Cir. 1985) (referring to Section 530 as a "criminal sanction for violating a union member's rights"); *United States v. Local 560*, 550 F. Supp. 511, 520 (D.N.J. 1982) (explaining that Section 530 is "a specific criminal provision of the LMRDA"); *Schonfeld v. Raftery*, 335 F. Supp. 846, 851 (S.D.N.Y. 1971) ("The provisions of [Section 530]

---

[10]   Titled "Deprivation of rights by violence; penalty," Section 530 reads:

It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter.  Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

cannot be enforced by civil action."). D'Ambly's claim under 29 U.S.C. § 530 of the LMRDA therefore cannot be pursued in this civil case, and should be dismissed.

This is not the first time that Plaintiffs have attempted to impermissibly assert civil claims under a criminal statute. The Court previously dismissed Counts Four, Five, and Six of the FAC (which Plaintiffs have abandoned and not re-pleaded in the SAC) because those claims were based on criminal statutes that did not provide a private right of action. *See* Dismissal Op. at 20. As the Court explained, "[o]rdinarily, federal criminal statutes do not provide individuals with a private right of action in a civil case." *Id.* (quoting *Weeks v. Bowman*, 2017 WL 557332, at *2 (D.N.J. Feb. 10, 2017)). That same principle dictates dismissal of D'Ambly's LMRDA claim.

Dismissal of D'Ambly's LMRDA claim should also be with prejudice. Because the LMRDA does not provide a private right of action for violating Section 530, it is not possible for D'Ambly to amend the claim to cure its legal deficiencies, and thus any amendment would be futile. As the Third Circuit has recognized, a district court need not provide leave to amend when amendment would be "inequitable or futile." *Phillips*, 515 F.3d at 236; *see also Foman*, 371 U.S. at 182. For this reason, courts in this district have often dismissed a claim with prejudice where it is based on a statute that provides no private right of action. *See, e.g.*, *Portfolio Recovery Assocs.*, 2021 WL 4398650, at *3 (dismissing with prejudice claim under New Jersey Consumer Finance Licensing

29

Act because Act provides no private right of action); *Schrager v. Aldana*, 2013 WL 12153584, at *2 (D.N.J. Mar. 29, 2013) (same where plaintiffs alleged violations of criminal statutes that did not provide private rights of action).  And prejudicial dismissal is especially appropriate here given that the Court—for precisely the same reason—previously dismissed several claims asserted under other criminal statutes.

### III.   Section 230 Bars All Of Plaintiffs' Claims.

Finally, all of Plaintiffs' claims against the Twitter Defendants independently fail as a matter of law for yet another reason: Section 230 bars them.

Section 230 immunity can, and should, be determined at the motion to dismiss stage.  As numerous courts have held, the application of Section 230 should be adjudicated "at the earliest possible stage of the case because [it] protects websites not only from ultimate liability but also from having to fight costly and protracted legal battles." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 63 n.15 (2d Cir. 2019) ("[T]he application of Section 230(c)(1) is appropriate at the pleading stage when . . . the 'statute's barrier to suit is evident from the face of'" the complaint) (quoting *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015)). For this reason, myriad courts have dismissed claims under Section 230 on the pleadings, including the Third Circuit in the seminal *Green v. America Online*

decision. 318 F.3d, 468 (3d Cir. 2003); *see also Obado v. Magedson*, 2014 WL 3778261 (D.N.J. July 31, 2014), *aff'd* 612 F. App'x 90 (3d Cir. 2015); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015).

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In addition, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). These provisions bar "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content." *Green*, 318 F.3d at 471 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). "Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Id.* (quoting *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000)). The statute thus precludes suits seeking to hold an interactive computer service liable for "decisions relating to the monitoring, screening, and deletion of content from its network." *Id.*

"'The elements required for [Section 230(c)] immunity are: (1) that the defendant is a provider or user of an 'interactive computer service;' (2) that the asserted claims treat the defendant as the publisher or speaker of the information; and (3) that the information is provided by another 'information content

31

provider.'" *Inventel Prods., LLC v. Li*, 2019 WL 5078807, at *8 (D.N.J. Oct. 10, 2019) (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007)). Each of these elements is satisfied here, and this is plain from the face of the SAC.

*First*, Twitter is unquestionably a "provider" of an "interactive computer service." The statute defines "interactive computer service" to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Twitter satisfies this definition because it provides an online forum that allows "users" holding Twitter "accounts" to share content with others through Twitter's online platform. *See, e.g.*, SAC at 2-5 (alleging that Defendant Exoo uses his Twitter account to publish certain information about alleged fascists and white supremacists); *id.* ¶¶ 37, 48, 109 (showing examples of users uploading and sharing content with others on Twitter). And courts across the country have routinely held that Twitter meets the definition of a "provider" of an "interactive computer service." *See, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 n.7 (6th Cir. 2019); *Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016), *aff'd on other grounds* 881 F.3d 739 (9th Cir. 2018); *Jones v. Twitter, Inc.*, 2020 WL 6263412, at *3 (D. Md. Oct. 23, 2020).[11]

Ms. Gadde likewise satisfies the definition of a "provider" of an

---

[11]     Indeed, in the FAC the Plaintiffs themselves specifically acknowledged that the Twitter platform is an "interactive computer service." *See* FAC ¶ 188 ("Defendant Exoo *used an interactive computer service* to direct the Exoo Enterprise's patterns of racketeering activities") (emphasis added).

"interactive computer service" because Plaintiffs seek to hold her liable for "[her] role in making [an interactive computer service] available." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014) (holding senior executive of Facebook to be a "provider" of an "interactive computer service" entitled to the protections of Section 230); *see also Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018) (same).  Plaintiffs' claims against Ms. Gadde allegedly derive from her purported role as the "sole decision maker and person authorized to permanently ban Twitter users who violated Twitter's Terms of Service and Rules."  SAC ¶ 20.  Thus, Ms. Gadde has the same protections under Section 230 as does Twitter.  *Klayman*, 753 F.3d at 1357-58; *Igbonwa*, 2018 WL 4907632, at *5.

*Second*, all of Plaintiffs' claims against the Twitter Defendants concern their alleged failure to prevent the dissemination of information (Tweets) posted by *another* "information content provider" (allegedly Exoo or one of Exoo's "associates").  *See* SAC ¶¶ 182-83, 192, 208-11.  Section 230(f)(3) defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content that allegedly resulted in harm to the plaintiff.  In assessing this requirement, a court asks whether the online service provider itself "creat[ed] or develop[ed]" the content at issue, or whether someone else—*i.e.*, one or more "third parties"—did so. *Nemet Chevrolet*, 591 F.3d at 254; *Green*, 318 F.3d at 470.  Here, the SAC alleges that Exoo (and in certain instances Exoo's "associate" Torch Antifa Network)—

33

not the Twitter Defendants—authored and posted all of the Tweets that allegedly led indirectly to Plaintiffs' injuries.  SAC ¶¶ 47-49, 52-53, 78, 80-82, 98-99, 107, 108-10, 113-16, 120, 122-24, 126, 128, 132, 134, 138-39, 144.  Those Tweets thus plainly constituted "information created by another information content provider" under 47 U.S.C. § 230(c)(1).

*Third*, all of the claims that the SAC asserts against the Twitter Defendants attempt to treat the Twitter Defendants as the "publisher or speaker" of content created by another.  That is because the Plaintiffs seek to hold the Twitter Defendants liable for "fail[ing] to address certain harmful content on its network."  *Green*, 318 F.3d at 471; *accord Parker*, 242 F. App'x at 838; *see also Obado*, 612 F. App'x at 94.  The gravamen of each of Plaintiffs' claims is that the Twitter Defendants "received complaints" concerning Exoo's alleged "doxing" and "social coordination," and that although they temporarily suspended his Twitter account, they later allowed him to continue to use it under a different username, thereby allegedly enabling his posting of content that indirectly led to Plaintiffs' alleged injuries.  SAC ¶¶ 177-79.

To be sure, the Plaintiffs style their claims as alleged violations of the federal RICO and LMRDA statutes.  SAC ¶¶ 170-95; 204-11.  Section 230, however, requires a court to look to the *substance* of the claim—not just its name.  In other words, in determining whether a plaintiff's theory of liability treats a defendant as a publisher, "'[w]hat matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat

the defendant as the 'publisher or speaker' of content provided by another."' *Obado*, 2014 WL 3778261, at *4 (quoting *Barnes*, 570 F.3d at 1101-02). This flexible test prevents plaintiffs from using "artful" or "creative" pleading to "work around § 230." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016). Courts have accordingly held that Section 230 bars a wide array of different claims and legal theories, including the very RICO theories that Plaintiffs attempt to deploy here. *See, e.g.*, *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 547 (E.D. Va. 2015); *Icon Health & Fitness, Inc. v. Consumer Affairs.com*, 2017 WL 2728413, at *5 (D. Utah June 23, 2017); *Manchanda v. Google*, 2016 WL 6806250, at *2 (S.D.N.Y. Nov. 16, 2016); *Doe v. Oesterblad*, 2015 WL 12940181, at *2 (D. Ariz. June 9, 2015).

In this case, the essence of Plaintiffs' claims is that the Twitter Defendants allegedly failed to suspend Exoo's Twitter account, which allowed Exoo to continue creating and disseminating the Tweets that Plaintiffs claim led to their injuries. *See, e.g.*, SAC ¶¶ 176-79. Courts routinely recognize that claims challenging a platform operator's "provision of accounts" or decisions regarding "who may use [the] platform" are themselves editorial choices that fall within the purview of Section 230. *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 322 (E.D.N.Y. 2018), *aff'd* 934 F.3d 53, *cert. denied* 140 S. Ct. 2761 (2020); *see also Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1171 (N.D. Cal. 2018), *aff'd in relevant part*, 2 F.4th 871 (applying Section 230 to claims that defendant failed to take action to prevent users who had violated its terms of service from "re-

establish[ing]" accounts); *Fields*, 200 F. Supp. 3d at 972 (explaining that Section 230 would apply to decisions about "whether particular third parties may have Twitter accounts").

Dismissing the Twitter Defendants from this action based on Section 230 (or any other ground) will not leave Plaintiffs without a remedy for any online content that injured them. "Parties complaining that they were harmed by a Web site's [sic] publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008). Nothing in Section 230, in other words, "'means . . . that [an] original culpable party who posts [harmful] messages would escape accountability.'" *Id.* (quoting *Zeran*, 129 F.3d at 330-31); *Obado*, 2014 WL 3778261, at *9 (plaintiff "not entirely without recourse" as he "may bring suit against the actual bloggers who wrote these defamatory posts"). Indeed, Plaintiffs here have in fact asserted claims against Exoo, the person they allege was the "original culpable party who post[ed]" the majority of the messages at issue. *MySpace*, 528 F.3d at 419. But through Section 230, "'Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" *Id.* (quoting *Zeran*, 129 F.3d at 330-31). Accordingly, Section 230 provides yet another ground for this Court to dismiss, with prejudice, all of Plaintiffs' claims against the Twitter Defendants.

**IV.    The Court Should Dismiss the Cross-Claims Previously Filed By Cohen, Weiss and Simon, LLP.**

Finally, the Court should dismiss the conclusory and broad-brush cross-claims for contribution and indemnification that CWS purported to assert generally against all other defendants, including the Twitter Defendants. *See* ECF No. 12.  Some courts hold that the filing of an amended complaint moots any cross-claims and counterclaims that were previously filed.  *See, e.g.*, *Argent Holdings, LLC v. E. El Paso Physicians Med. Ctr., LLC*, 2018 WL 548676, at *4 (W.D. Tex. Jan. 23, 2018).  Because the SAC was filed after CWS's cross-claims, this Court should dismiss CWS's cross-claims as moot.

Even if CWS's cross-claims were not moot, though, the Court should in any event dismiss them. *First*, for the same reasons that Section 230 bars Plaintiffs' claims against the Twitter Defendants based on Twitter's alleged failure to prevent Exoo from posting Tweets, Section 230 also immunizes the Twitter Defendants from CWS's cross-claims for contribution and indemnification.  As explained above, *see supra* pp. 34-35, in evaluating the application of Section 230, what matters is not the name of the claim, but rather whether the claim arises out of the publication of "content originating from a third party." *Obado*, 2014 WL 3778261, at *4; *see also Regions Bank v. Kaplan*, 2013 WL 1193831, at *19 (M.D. Fla. Mar. 22, 2013), *reconsideration granted in part on other grounds by* 2015 WL 1456697 (M.D. Fla. Mar. 30, 2015) (applying Section 230 and dismissing cross-claims).  Here, the Twitter Defendants could be

liable for contribution or indemnification to CWS only if they bore some liability for allowing Exoo to operate an account and post content on the Twitter platform. As Section 230 immunizes the Twitter Defendants from liability to Plaintiffs based on those allegations, so too does it immunize the Twitter Defendants from liability to CWS.

*Second*, CWS's cross-claim against the Twitter Defendants for indemnification also fails because '"[i]ndemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification."' *Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*, 2018 WL 1069417, at *4 (D.N.J. Feb. 26, 2018) (quoting *Allied Corp. v. Frola*, 730 F. Supp. 626, 639 (D.N.J. 1990), *abrogated on other grounds by Apgar v. Lederle Labs.*, 588 A.2d 380 (N.J. 1991)). No such contract or special relationship exists between CWS and either Twitter Defendant, nor is any such contract or special relationship plausibly alleged.

In all events, CWS's cross-claims are far too conclusory to meet the pleading standard under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678. They contain no specific factual allegations, and they lump all co-Defendants together in group-pleaded fashion. These claims should therefore be dismissed under Fed. R. Civ. P. 12(b)(6). *See Hunsberger v. The Original Fudge Kitchen*, 2020 WL 6620156, at *1 (D.N.J. Nov. 12, 2020) (dismissing cross-claim and observing that the "standard of review for a motion to dismiss a crossclaim is the same standard

of review as a motion to dismiss a complaint"); *Katz v. Holzberg*, 2013 WL 5946502, at *5 (D.N.J. Nov. 4, 2013) (dismissing cross-claim for indemnification where cross-claim "fail[ed] to provide anything more than bare conclusions and a recitation of legal elements").

## CONCLUSION

For the foregoing reasons, this Court should dismiss with prejudice all of Plaintiffs' claims against Defendants Twitter, Inc. and Vijaya Gadde, as well as the cross-claims previously filed by CWS against the Twitter Defendants.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

January 14, 2022

<div style="margin-left: 50%;">

/s/   *Lawrence S. Lustberg*
Lawrence S. Lustberg (ID#023131983)
Lauren James-Weir (ID#023131983)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4731
Facsimile:  (973) 639-6285
llustberg@gibbonslaw.com
ljames-weir@gibbonslaw.com

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

*Attorneys for Defendants Twitter, Inc.
  and Vijaya Gadde*

</div>

39