# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY, AARON WOLKIND, STEVE HARTLEY, RICHARD SCHWETZ, JOBEL BARBOSA, MATTHEW REIDINGER, JOHN HUGO, SEAN-MICHAEL DAVID SCOTT, THOMAS LOUDEN, ZACHARY REHL, AMANDA REHL, K.R., a minor, by and through her father ZACHARY REHL, and her mother AMANDA REHL, MARK ANTHONY TUCCI,<br><br>    Plaintiffs,<br>  vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON, ST. LAWRENCE UNIVERSITY, TRIBUNE PUBLISHING COMPANY, NEW YORK DAILY NEWS, VIJAYA GADDE, TWITTER, INC., COHEN, WEISS AND SIMON, LLP, UNNAMED ASSOCIATES 1 - 100.<br><br>    Defendants. | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JSA<br><br><br>Hon. John M. Vazquez, U.S.D.J. |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTIAN EXOO'S MOTION TO DISMISS WITH PREJUDICE PURSUANT TO F.R.C.P. Rules 12(b)(2) and 12(b)(6)

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough, Esq.
445 Broad Hollow Road, Suite
400 Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com

*Counsel for Defendant Christian Exoo*

**Richard Torres, Esq**
63 Tooker Avenue
Springfield, New Jersey 07081
Phone: (347) 742-5362
E-mail: richardtorresdna@gmail.com

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

Procedural History ............................................................................................................. 3

STATEMENT OF FACTS .................................................................................................. 4

    A.  Defendant Christian Exoo ........................................................................................ 4

    B.  Plaintiff Daniel D'Ambly and the NJ European Heritage Association ............................. 5

    C.  The Proud Boys Plaintiffs ........................................................................................ 7

    D.  Plaintiff Hugo and Super Happy Fun America ........................................................... 14

    E.  Plaintiff Louden and His Violent Militia Groups ......................................................... 15

    F.  Plaintiffs' New Allegations in the SAC .................................................................... 16

ARGUMENT ...................................................................................................................... 19

    A.  Legal Standard ..................................................................................................... 19

    B.  Counts IV and V For RICO Violations Must be Dismissed ........................................... 20

        1.  Plaintiffs Failed to Allege Requisite Predicate Acts in Furtherance of a Conspiracy (Count IV) ........................................................................................................ 20

        2.  Plaintiffs Failed to Allege the Existence of RICO Enterprise ...................................... 23

        3.  Plaintiffs Failed to Allege a RICO Conspiracy (Count V) .......................................... 30

        4.  Plaintiff Should be Required to Submit a RICO Statement pursuant to Local Civil Rule 16.1(b)(4) ...................................................................................................... 31

    C.  Plaintiffs Whose Claims Have No Connection to New Jersey Must Be Dismissed from the Action for Lack of Personal Jurisdiction ..................................................................... 31

    D.  Count II For Tortious Interference Must Be Dismissed .................................................. 32

    E.  There Is No Private Right of Action for 29 U.S.C. § 530 ................................................ 35

    F.  Defendant Exoo's Alleged Conduct is Protected by the First Amendment and New Jersey Constitution ........................................................................................................... 36

        1.  The First Amendment Protects Private Individuals Against Being Sued in Court by Other Private Individuals ................................................................................... 36

        2.  Defendant Exoo's Speech Was Not a True Threat ................................................... 38

        3.  Exoo's statements do not make him liable for the actions of third parties. ................... 40

CONCLUSION ................................................................................................................... 40

# <u>TABLE OF AUTHORITIES</u>

CONSTITUTIONS

    United States Constitution, First Amendment……….…………3, 34, 36-40

    United States Constitution, Fourteenth Amendment………….… 3, 38

    New Jersey Constitution, Article One, Section Six……………...3, 33, 34, 38


STATUTES, RULES, AND REGULATTIONS

    18 U.S.C. § 1951……………………………………………...20-23

    18 U.S.C. § 1951(a)……………………………………………… 21, 22

    18 U.S.C. § 1952…………………………………………………...20, 22, 23

    18 U.S.C. § 1961 (4)……………………………………………2, 18, 23, 25, 29, 30

    18 U.S.C. § 1962…………………………………………………..1-4, 18-31, 37

    18 U.S.C. § 1962(c)……………………………………………… 20, 21

    18 U.S.C. § 1962(d)……………………………………………1, 4, 18, 20, 25, 30

    28 U.S.C. § 530……………………………………………………2, 4, 35, 36

    F.R.C.P. Rule 12(b)(2)……………………………………………31, 32

    F.R.C.P. Rule 12(b)(6)……………………………………………1

    Local Civil Rule 16.1(b)(4)……………………………………...31


CASES

    *Amawi v. Pfleugerville Ind. School Dist.,*
    373 F. Supp. 3d 717 (W.D. Tx 2018)…………………………... 38

    *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451 (2006)…………29

    *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)…………………………19

*Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.*,
2000 U.S. Dist. LEXIS 18728
(E.D. Pa. Dec. 7, 2000)……………………………………………33

*Binary Semantics Ltd. v. Minitab, Inc.*,
2008 U.S. Dist. LEXIS 28602 (M.D. Pa. Mar. 20, 2008)……… 30

*Boyle v. U.S*, 556 U.S. 938 (2009)
*Breininger v. Sheet Metal Workers Int'l Ass'n Local
Union No. 6*, 493 U.S. 67 (1989)………………………………..23

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)…………………………………………..31, 32

*E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc*.,
294 N.J. Super. 158 (1996) *cert. denied*,
148 N.J. 458 (1997)…………………………………………….. 34

*Fellner v. Tri-Union Seafoods, L.L.C.*,
2010 U.S. Dist. LEXIS 36195 (D.N.J. Apr. 13, 2010)…………..5 fn.2

*Grant v. Communications Workers of Am., Local 1101*
2014 U.S. Dist. LEXIS 96585 (S.D.N.Y. July 15, 2014)……….36

*Grant v. Communications Workers, Local 1101*,
2017 U.S. Dist. LEXIS 198188 (S.D.N.Y. Dec. 1, 2017)……… 36

*Helios Streaming, LLC v. Vudu, Inc.*,
2020 U.S. Dist. LEXIS 82376 (D. Del. May 11, 2020)…………5 fn. 3

*In re Amarin Corp. PLC Sec. Litig*.,
689 F. App'x 124 (3d Cir. 2017)…………………………………19

*In re Wellbutrin SR/Zyban Antitrust Litigation*,
281 F. Supp.2d 751 (E.D. Pa. 2003)…………………………….5 fn. 2

*Int'l Ass'n of Machinists v. Jackson*,
2010 U.S. Dist. LEXIS 15885 (E.D. Pa. Feb. 19, 2010)………... 22

*Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot.*,
2014 U.S. Dist. LEXIS 23411 (E.D. Pa. Feb. 24, 2014)………..19

*Magnum v. Archdiocese of Phila.*,
253 F. App'x 224 (3d Cir. 2007)………………………………...19

*Martin v. Local 556, Transp. Workers Union of Am.*, *AFL-CIO*,
2014 U.S. Dist. LEXIS 122755 (N.D. Tex. Sep. 3, 2014)………35, 36

*Moore v. Hoff*, 821 N.W.2d 591 (Minn. Ct. App. 2012)………..33

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982)………… 37 - 40

*Northeast Women's Center v. McMonagle*,
868 F.2d 1342 (3d Cir. 1989)……………………………………37

*Northland Ins. Co. v. Shell Oil Co.*,
930 F. Supp. 1069 (D.N.J. 1996)………………………………..31

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)……...19

*Pioneer Contracting, Inc. v. E. Exterior Wall Sys.*,
2005 U.S. Dist. LEXIS 5197 (E.D. Pa. Mar. 30, 2005)…………20-21

*Planned Parenthood of the Columbia/Willamette, Inc.*
*v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002)….. 38-39

*Rankin v. McPherson*, 483 U.S. 378, 387 (1987)………………38

*Rodriguez v. Serv. Emples. Int'l*,
755 F. Supp. 2d 1033 (N.D. Cal. 2010)…………………………36

*Rothberg v. Marger*,
2012 U.S. Dist. LEXIS 71088 (D.N.J. May 21, 2012)…………..31

*Scheidler v. NOW, Inc.*, 537 U.S. 393 (2003)……………………21, 22

*Scheidler v. NOW, Inc.*, 547 U.S. 9 (2006)………………………21

*Schonfeld v. Raftery*, 335 F. Supp. 846 (S.D.N.Y. 1971)………..36

*Sedima, S.P.R.L v. Imrex Co*., 473 U.S. 479 (1985)……………20

*Snyder v. Phelps*, 562 U.S. 443 (2011)……………………………37

*United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976)………… 38, 39

*United States v. Kindred Healthcare, Inc*.,
469 F. Supp. 3d 431 (E.D. Pa. 2020)…………………………… 19

*United States v. Nordean*,
2021 U.S. Dist. LEXIS 246752 (D.D.C. Dec. 28, 2021)………..8

*Warden v. McLelland*, 288 F.3d 105 (3d Cir. 2002)……………20

*Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*,
281 Pa. Super. 560 (Pa. Super. 1980)……………………………33

*Zavala v. Wal-Mart Stores, Inc*., 691 F.3d 527 (3d Cir. 2012)….30

*Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495
(D. Del. 2012)……………………………………………………30

TREATISE
Restatement (Second) of Torts § 772(a) (1977)…………………33, 34

## **INTRODUCTION**

This Court dismissed Plaintiffs' first amended Complaint ("FAC") in an Opinion and Order dated November 1, 2021. Plaintiffs were granted leave to file an amended pleading limited to amendments that "cure the deficiencies noted" in the Court's Opinion. *See* ECF No. 99, Opinion at 23. Plaintiffs filed a second amended Complaint ("SAC") that failed to cure the fatal defects in the FAC. Plaintiffs instead added two named Defendants and added a new claim against Defendant Exoo based on a criminal statute for which no civil cause of action exists.

Defendant Exoo seeks dismissal of Counts II, IV, V, and VII in the SAC pursuant to F.R.C.P. Rule 12(b)(6) for failure to state a claim. Plaintiffs' allegations are refuted by the very Tweets that Plaintiffs assert give rise to their claims. Those Tweets are incorporated by reference into the SAC. Defendant Exoo also seeks dismissal of the claims of the twelve non-New Jersey Plaintiffs (all Plaintiffs other than D'Ambly) for lack of personal jurisdiction.

First, the SAC fails to state a claim for violation of the RICO statute (Counts IV and V of the SAC) for the reasons set forth in the Court's Opinion dismissing those claims in the FAC. Plaintiffs failed to plausibly allege a pattern of RICO activity, the existence of a RICO enterprise, and the existence of a RICO conspiracy. *See* ECF No. 99, Opinion at 5-11.

Second, the Court lacks personal jurisdiction over Defendant Exoo with respect to the non-RICO claims of Plaintiffs other than Plaintiff D'Ambly. As noted in the Opinion, only the RICO claims permit nationwide service of process. The claims of Plaintiffs other than D'Ambly have no connection to Exoo's jurisdictional contacts with the State of New Jersey. *See* ECF No. 99, Opinion at 11-14. Plaintiffs' amendments have done nothing to cure this fatal defect.

Third, Plaintiffs' claims for tortious interference fail for the same reason stated in the Opinion. Plaintiffs failed to dispute the truth of Exoo's alleged statements. *See* ECF No. 99, Opinion at 14-17. Plaintiffs resubmitted identical claims for tortious interference without disputing the truthfulness of Exoo's alleged claims. Further, many of the Plaintiffs failed to plead any interference with their business interests.

Fourth, Plaintiff D'Ambly's new unauthorized claim for violation of the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 530) must be dismissed for failure to state a cause of action. In its Opinion, the Court dismissed three of Plaintiffs' claims against Defendant Exoo because they allege violations of four criminal statutes with no private right of action. *See* ECF No. 99, Opinion at 20-21 (dismissing Counts IV, V and VI of the FAC). Plaintiffs responded by withdrawing those dismissed criminal claims and asserting a new claim based on a

fifth criminal statute which also has no private right of action. SAC at Count VII,
¶¶ 204-211.

Finally, even if the counts in the SAC were properly plead, the SAC alleges
actions which, if true, constitute speech protected by the First and Fourteenth
Amendments to the United States Constitution and Article One, Section Six of the
New Jersey State Constitution.

## PROCEDURAL HISTORY

On September 21, 2020, Plaintiff Daniel D'Ambly commenced the instant
action. ECF No. 1. Defendant Exoo filed a motion to dismiss the initial complaint
on December 6, 2020. ECF No. 41.

On March 25, 2021, the Court Plaintiff D'Ambly's motion to amend his
Complaint to add the twelve new Plaintiffs. ECF No. 65. Plaintiffs filed the FAC
on the same day. ECF No. 66. Defendant Exoo filed a motion to dismiss the FAC
on April 22, 2021. ECF No. 79.

On November 1, 2021, the Court granted Defendant Exoo's motion to
dismiss the First Amended Complaint. *See* Opinion and Order, ECF Nos. 99-100,
annexed to the Declaration of Richard Torres as Exhibits A and B respectively.
Specifically, the Court dismissed Plaintiffs' claims against Defendant Exoo for
Tortious Interference, Intrusion Upon Seclusion, Federal RICO, New Jersey RICO,
and the three Counts asserted under four criminal statutes. In its Opinion and

Order, the Court afforded Plaintiffs limited "leave to ***file an amended pleading that remedies the identified deficiencies***." *See* ECF No. 100, Order  (Emphasis added) *See also* ECF No. 99, Opinion at 23 ("Plaintiffs shall have thirty (30) days to file an amended complaint ***that cures the deficiencies noted herein***.") (Emphasis added).

Plaintiffs filed the SAC on November 30, 2021, asserting the following four claims against Defendant Exoo: 1) Tortious Interference with Prospective Economic Benefit (Count II); 2) RICO (Count IV); 3) RICO Conspiracy (Count V), and 4) a new claim alleging violation of Section 610 of the LMRDA (29 U.S.C. § 530) based on a new legal theory of liability without seeking leave to add the new claim.[1]

## STATEMENT OF FACTS

### A. Defendant Christian Exoo

Defendant Exoo is one of more than 300 million Twitter users. The Exoo Tweets referenced in the SAC do not condone or advocate any form of violence. *See generally* Torres Decl. Exh. D, Exoo Tweets. Contrary to Plaintiffs' assertions, nothing in the Exoo Tweets referenced in the SAC can plausibly be interpreted as predicate RICO acts or acts in furtherance of a RICO conspiracy. Further,

---

[1] While the SAC erroneously cites this statute as 18 U.S.C. § 530, it is clear from the reference to the LMRDA and the quotation in paragraph 205 of the SAC that Plaintiffs are referring to 29 U.S.C. § 530.

Plaintiffs do not dispute the truthfulness of Mr. Exoo's statements precluding liability for claims of tortious interference.

## B. **Plaintiff Daniel D'Ambly and the NJ European Heritage Association**

Plaintiff Daniel D'Ambly is the leader of New Jersey European Heritage Association ("EHA"), an organization designated by the New Jersey Office of Homeland Security and Preparedness ("NJOHSP") as a "white supremacist extremist group" and by the Southern Poverty Law Center as a "hate group." *See* Exh. E-I, NJOHSP Terrorism Threat at 17 (describing the white supremacist recruitment activities of D'Ambly's organization).[2] *See also* Exh. D-II, Exoo-D'Ambly Tweets at 11-18, 39.[3]

---

[2] Defendant Exoo requests that the Court take judicial Notice of the Terror Threat Assessment Reports (Exhs. E-I and II). *See Fellner v. Tri-Union Seafoods, L.L.C.*, Civil Action No. 06-CV-0688 (DMC), 2010 U.S. Dist. LEXIS 36195, at *19 n.8 (D.N.J. Apr. 13, 2010) (taking judicial notice of publicly available governmental reports); *In re Wellbutrin SR/Zyban Antitrust Litigation*, 281 F. Supp.2d 751, 754 (E.D. Pa. 2003) (taking judicial notice of FDA report posted on the official FDA website).

[3] The Exoo Tweets (Torres Decl. Exh. C) and the information he reposted (Torres Decl. Exh. G) are incorporated by reference into the complaint. *See* SAC ¶¶ 1, 2, 5-13, 16, 29, 30, 33, 34, 36, 37, 40, 43, 45-50, 52, 53, 55-57, 60, 64, 74, 78-82, 84, 88-90, 93-95, 98, 99, 101, 102, 107, 108-111, 113-116, 119, 120, 122-124, 126, 128, 129, 132, 134, 138, 139, 144, 146, 147, 157-159, 161, 172, 174-179, 182-184, 189-193, 208, 210. *See also Helios Streaming, LLC v. Vudu, Inc.*, 2020 U.S. Dist. LEXIS 82376, at *21 (D. Del. May 11, 2020) (granting motion to dismiss and finding that plaintiff mischaracterized letter incorporated by reference into the complaint).

Plaintiff D'Ambly admits his termination was based on his employer's hostility to his white supremacist views. *See* SAC at ¶¶ 50 (noting D'Ambly's employer's report "included videos of D'Ambly and others using imprudent language during political rallies"), 151 (alleging discrimination because D'Ambly was terminated for his white supremacist views, while non-white employees were not punished or terminated for their "racially identifiable associations."). Moreover, D'Ambly's was only terminated after his employer confirmed D'Ambly's active participation in a white supremacist extremist organization and noted that it found his use of the word "kike" objectionable.[4]

Plaintiff D'Ambly alleges that Defendant Exoo was responsible for his termination because Exoo linked D'Ambly's publicly available employment information with D'Ambly's white supremacist activities on Twitter.com. SAC at ¶¶ 42-60, 64-69. However, Plaintiff D'Ambly exposed his own association with EHA by attending white supremacist extremist events like the EHA's "Jew Walk" event in Princeton, New Jersey, the deadly Unite the Right rally in Charlottesville, Virginia, and the Unite the Right 2 rally.



*See Torres Decl. Exh. D-II at 18 (D'Ambly holding "Expel the Jew" sign)*

---

[4] *See* ECF No. 35 at 7 (D'Ambly's counsel admitted that "D'Ambly was terminated for being an alleged "white supremacist," because he was captured on video saying the word "kike.""").

*See* Torres Decl. Exh. D-II, Exoo-D'Ambly Tweets at 11, 12, 16, 17, 18, 21, 22, 23. As shown in the Tweets, Plaintiff D'Ambly did not attempt to conceal his identity when he appeared in videos on EHA's "Jersey Goyz 14" YouTube channel holding a handmade sign that read: "**EXPEL THE JEW BY '22**." (Emphasis in original). *Id*. at 22.

Rather than accept responsibility for his own actions, D'Ambly blames Defendant Exoo for the consequences of his hateful extremist actions. As this Court has stated with respect to Plaintiffs' including D'Ambly, "It seems as though Plaintiffs want to express their views without a negative impact on other aspects of their lives." ECF. No. 99, Opinion at 1.

## C. The Proud Boys Plaintiffs

Eight plaintiffs are current or former members of the violent hate group the Proud Boys (Plaintiffs Zachary Rehl, Wolkind, Schwetz, Hartley, Barbosa, Tucci, Scott and Reidinger, collectively, the "Proud Boys Plaintiffs"). *See* SAC at ¶ 14; FAC at ¶ 14. *See also* Torres Decl. Exh. D-III, Exoo-Scott Tweets. Two Plaintiffs are members of Plaintiff Zachary Rehl's family (Amanda Rehl and K.R. Rehl) and their claims are based entirely on actions allegedly directed at Plaintiff Zachary Rehl.

The Proud Boys are a male-only group of self-identified "Western chauvinists," which has been identified as a "terrorist entity" and an "ideologically

motivated violent extremist group" by the Canadian government, a "designated hate group" by the Southern Poverty Law Center, and a "racist group" by Plaintiff Zachary Rehl, President of the Philadelphia Chapter of the Proud Boys.[5] The Proud Boys recently rose to ignominious international fame as a result of their alleged participation in and coordination of the attack on the United States Capitol which resulted in the arrest of more than two dozen of its members including Plaintiff Zachary Rehl for his alleged leadership role in the attack. *See e.g., United States v. Nordean*, 2021 U.S. Dist. LEXIS 246752, at **4-6 (D.D.C. Dec. 28, 2021)(denying Rehl's motion to dismiss and noting Rehl is alleged to have stated, "hopefully the firing squads are for the traitors that are trying to steal the election from the American people," prior to allegedly leading a contingent to the east side of the Capitol building for the attack).

Proud Boys' leadership has explained the importance of identifying and locating individuals considered by them to be members of Antifa for the purpose of inflicting grievous bodily harm against them. In September 2019 (on or about the

---

[5] *See e.g.,* Torres Decl. Exh. D-IV, Exoo-Wolkind Tweets at 2-5; Torres Decl. Exh. D-V Exoo-Rehl Tweets at 2, 3, 6, 7, 8, 11, 12, 17, 19, 21, 22, 26, 27, 32, 34, 35, 41. *See also* Public Safety Canada, *Government of Canada lists 13 new groups as terrorist entities and completes review of seven others,* Feb. 3, 2021, available at https://www.canada.ca/en/public-safety-canada/news/2021/02/government-of-canada-lists-13-new-groups-as-terrorist-entities-and-completes-review-of-seven-others.html (last visited Jan. 6, 2022).

date the initial Complaint in this action was filed), Proud Boys leadership

announced a public call for violence,[6] stating:

> We need to stop fighting antifa in the streets where the cops are and
> start fighting them in bars and alleys. We need to stomp them. We
> need to ruin their lives physically like they have ruined our lives
> financially with doxxing. We need to rack up their hospital bills. We
> need to use special operations tactics and lightning strike them.

None of the Proud Boys Plaintiffs allege any connection between their

claims and Defendant Exoo's activities in the State of New Jersey.

**Plaintiff Zachary Rehl** is President of the Philadelphia Proud Boys. He

alleges that his personal information was first associated with his Proud Boys

activities on or about August 2, 2017, resulting in the termination of his

employment in September 2017. *See* SAC at ¶¶ 78-79. As set forth in the Exoo-

Rehl Tweets, Defendant Exoo first referenced, Zachary Rehl on November 12,

2018, citing Rehl's statement that the Proud Boys are a "racist group." *See* Torres

Decl. Exh. D-V, Exoo-Rehl Tweets at 6, 20, 23, 24, 41 ("It's not a rally for Proud

Boys. We're not interested in having any racist groups there."). This was more

than a year after Zachary Rehl alleges that he was first doxed. *See* SAC at ¶ 78.

---

[6] The directive was issued by PB Chapter President, Charles Donohoe, a/k/a "Yut Yut Cowabunga," Rehl's co-defendant in the criminal conspiracy and obstruction case in connection with the attack on the U.S. Capitol. Kelly Weill, *New Proud Boys Busted for Capitol Riot Have Wild Police Ties*, Daily Beast (March, 20, 2021) https://www.thedailybeast.com/new-proud-boys-charles-donohoe-and-zach-rehl-busted-for-capitol-riot-have-wild-police-ties (last visited Jan. 6, 2022).

Moreover, Defendant Exoo merely identified Zachary Rehl's association with the Proud Boys. *See* Torres Decl. Exh. D-V Exoo-Rehl Tweets.

**Plaintiff Amanda Rehl** is the wife of Zachary Rehl and **Plaintiff K.R.** is their minor daughter. Neither Amanda Rehl nor K.R. allege that they were identified or doxed at all. *Id.* at ¶¶ 88-96. Nor does the SAC include any allegations concerning Amanda Rehl's employer. *Id.* at ¶¶ 88-91.

**Plaintiff Aaron Wolkind** is described by Rehl's criminal counsel in the Proud Boys obstruction and conspiracy case concerning the attack on the U.S. Capitol as Rehl's "deputy" in the Philadelphia Chapter of the Proud Boys.[7] Wolkind alleges that his public Proud Boys activities were associated with his public employment information by Defendant Exoo on Twitter. SAC at ¶ 98. Defendant Exoo identified Wolkind as the "Sergeant at Arms of the Philadelphia Proud Boys," and posted a photograph of Wolkind brandishing a can of mace at a Proud Boys rally. Torres Decl. Exh. D-IV, Exoo-Wolkind Tweets at 2, 6.

**Plaintiff Richard Schwetz** alleges that his publicly available employment information was first associated with his Proud Boys activities in June 2020 by an unnamed person posting on Twitter using the handle "We Will Be Ruthless." *See* SAC at ¶ 119. Plaintiffs allege that this Twitter user is "an Exoo associate," but the

---

[7] *See* Torres Decl. Exh. F., Accused Zachary Rehl's Third Supplement in Support of his Renewed Motion for Release of Accused Zachary Rehl from Pre-trial Detention and Motion to Re-open Detention Hearing at 2.

SAC contains no allegations establishing any connection between them. Plaintiff Schwetz alleged that Exoo first shared Schwetz's public information on Twitter on September 21, 2020, more than three months after Schwetz was doxed by a third-party. *Id.* at ¶¶ 119-120, Torres Decl. Exh. D-I, Exoo-Schwetz Tweets at 2.

Defendant Exoo republished Schwetz' public social media posts in which Schwetz brags about beating up "Antifags" and going undercover to obtain personal information including phone numbers and license plate numbers of journalists and individuals opposed to fascism for the purpose of doxing them. *Id.* at 2, 4, 5. Defendant Exoo also responded on Twitter to a request for assistance in identifying Plaintiff Schwetz in connection with a violent assault against a journalist at a Proud Boys rally. *Id.* at 13, 14.

**Plaintiff Hartley** alleges that his public Proud Boys activities were associated with his public employment information by Defendant Exoo on Twitter. SAC at ¶¶ 6, 14, 108-111. *See also* Torres Decl. Exh. D-VI, Exoo-Hartley Tweets. The SAC does not include any allegations that Exoo disclosed Hartley's home address or personal cell phone number. *See* SAC. at ¶¶ 108-111. Hartley alleges damage to his home occurred, but does not specify what was damaged or when other than to speculate that the damage was caused by Torch. *Id.* at ¶ 111.

**Plaintiff Tucci** alleges that his publicly available employment information was associated with his public Proud Boys activities by Defendant Exoo on

Twitter. SAC at ¶¶ 113-16. Tucci publicly disclosed his own association with the Proud Boys on social media long before Defendant Exoo shared that information using the hashtag #proudboys and posting a picture of himself wearing a Proud Boys shirt. Torres Decl. Exh. D-VII, Exoo-Tucci Tweets at 2-5.

**Plaintiff Reidinger** alleges that his publicly available employment information was associated with his public Proud Boys identity by Defendant Exoo on Twitter. SAC at ¶¶ 14, 122-124. In Defendant Exoo's Tweets concerning Reidinger, incorporated by reference into the SAC, Exoo identified Reidinger as Sergeant at Arms for the Harrisburg, PA Chapter of the Proud Boys. Torres Decl. Exh. D-VIII, Exoo-Reidinger Tweets at 2. Exoo also identified Reidinger's employer and republished portions of Reidinger's public social media pages in which Reidinger identifies himself as a Proud Boy and a "domestic terrorist." *Id.* at 3, 4, 14 (wearing a shirt saying "DOMESTIC TERRORIST" at 3).

**Plaintiff Barbosa** alleges that his public employer contact information was associated with his Proud Boys activities by Defendant Exoo. SAC at ¶ 9, 14, 125-131. As shown in the Exoo Tweets, Barbosa made no effort to conceal his identity when conducting activities on behalf of the Proud Boys. *See* Exh. D-IX, Exoo-Barbosa Tweets at 2, 3. Moreover, the Exoo-Barbosa-Tweets, incorporated by reference into the SAC, show that Exoo did not disclose Plaintiff Barbosa's home contact information, his personal phone number, or his wife's personal phone

number. Moreover, the SAC does not identify any person who allegedly disclosed this information or even the time when such information was released. *See* SAC at ¶ 131.

**Plaintiff Scott** alleges that Defendant Exoo disclosed his publicly available information on Twitter. SAC at ¶¶ 12, 133-136. As indicated in the Exoo Tweets, a group called Puget Sound Anarchists in a local Washington State Community Alert webpage first exposed many of Scott's vile anti-Semitic statements and Scott's efforts to dox individuals who are opposed to fascism. Torres Decl. Exh. D-III, Exoo-Scott Tweets; Exh. H. Puget Sound Anarchists Community Alert incorporated by reference into the SAC. The local Community Alert including information concerning Plaintiff Scott's Nazi and Proud Boys activities was republished on Twitter by a user named WANaziWatch. Exh. G, WANaziWatch Tweets ("POLITELY ask whether sending a neo-Nazi into people's homes and neighborhoods is appropriate."). Defendant Exoo was one of many individuals who reported on this disclosure third hand. *See* Torres Decl. Exh. D-III, Exoo-Scott Tweets; Exh. G. On September 19, 2019, Scott's employer confirmed his termination and thanked Twitter users for sharing their concerns about Scott. *See* Torres Decl. Exh. G, WANaziWatch Tweets at 11.

**D. Plaintiff Hugo and Super Happy Fun America**

**Plaintiff Hugo** is a former congressional candidate, public figure and President of Super Happy Fun America ("SHFA") who was featured on national television programs using his real name prior to alleging that he was doxed.[8] Several members of SHFA's leadership, including its Vice President, have been charged for their participation in the January 6th attack on the U.S. Capitol. *See* Torres Decl. Exh. I, Sahady Complaint Affidavit. Hugo described the arrestees as "freedom fighters" and boasted that SFHA's membership has swelled 50% since the attack on the U.S. Capitol.[9] From the stage of an SHFA "rally" in front of the Massachusetts State House, Plaintiff Hugo riled up the mob by calling for insurrection ("It is time to rise up. It is time for insurrection.").[10]

Plaintiff Hugo alleges that Defendant Exoo associated Hugo's public SHFA activities with his public employment information and labeled him a fascist and

---

[8] *See e.g.*, https://video.foxnews.com/v/6046132420001#sp=show-clips ("John Hugo: Straight Pride Parade Organizer") (last visited January 6, 2022).

[9] *See* Abigail Hauslohner, *After Its Members Were Charged in Capitol Riot, One Group Says It Is More Popular Than Ever*, Washington Post, April 8, 2021, available at https://www.washingtonpost.com/national/capitol-riot-group/2021/04/07/5a77bf7e-8cc6-11eb-a730-1b4ed9656258_story.html (last visited Jan. 6, 2022).

[10] *See* Zoe Greenberg and Laura Crimaldi, *Smiling on the outside: Super Happy Fun America always claimed to be kidding. But the group's history suggests otherwise*, Boston Globe, February 20, 2021 available at https://apps.bostonglobe.com/metro/politics/2021/02/super-happy-fun-america/ (last visited Jan. 6, 2022).

white supremacist. In fact, the Exoo Tweets concerning Plaintiff Hugo accurately identified Hugo's employer's contact information and accurately identified Hugo as a "former GOP Congressional candidate and organizer of the Boston Straight Pride Parade, an event with hate group ties." Torres Decl. Exh. D-X, Exoo-Hugo Tweets at ¶ 3, 4, 9. Hugo alleges that he receives "harassing phone calls from enterprise associates on a nearly daily basis" but provides no details as to what those calls are in the papers or how they are connected to Defendant Exoo. SAC at ¶ 140. While Plaintiffs stated that audio recordings of these calls would be provided to the Court and to Defendants' counsel, Plaintiffs failed to produce those recordings to Defendant Exoo's counsel and they have received no notice that the information has been provided to the Court. *See* SAC at fn. 20; Torres Decl. at ¶¶ 14-16.

## E. <u>Plaintiff Louden and His Violent Militia Groups</u>

Plaintiff Louden alleges that his employer's contact information was associated with his public militia activities by Defendant Exoo on Twitter. SAC at ¶¶ 13, 142-147. Defendant Exoo republished Louden's public profiles on Linkedin.com, CivilianDefenseForce.com and mymilitia.com. Torres Decl. Exh. D-XI, Exoo-Louden Tweets at 3, 5, 9, 10, 11, 12, 14, 17, 27, 34 (noting that Louden used his real name on his militia and Civilian Defense Force profiles until his public calls for violence intensified, when he changed his profile name to

"Mars," the ancient Roman God of War). Exoo also republished several of Plaintiff Louden's statements concerning his violent conspiracy theories, Louden's efforts to form his own armed militia unit, and Louden's efforts to recruit a "top sniper" for this unit. *Id*. at 3, 4, 6, 7, 8, 9, 10, 11, 13, 28, 33.

Exoo tweeted Louden's employers' public contact information and showed how he was able to identify Louden as the individual promoting violent conspiracy theories online. *Id*. The Exoo-Louden Tweets clearly did not reveal Loudens' home address, or the coordinates of his home. In fact, certain personally identifying information including Louden's address and vehicle license plate number were redacted before this publicly available information was republished by Exoo. *Id*.

Plaintiff Louden maintains that he was terminated from his job in the health care industry after being "quizzed" about his membership in extremist militia groups. SAC at ¶ 145. Rather than take responsibility for his own poor life choices, Plaintiff Louden blames Defendant Exoo, Twitter, and an esteemed university.

## F.  Plaintiffs' New Allegations in the SAC

The SAC adds new unauthorized Defendants to the case, asserts a new claim against Defendant Exoo, and adds a new legal theory of liability to the case. The SAC also provides additional allegations which do not advance Plaintiffs' claims in any way but only show how the claims in this case are patently implausible.

First, Plaintiffs added two new Defendants: Torch Antifa Network ("Torch") and Nick Strickland. Plaintiffs fail to draw any plausible connection between Torch and any events alleged in the SAC. Plaintiffs frequently ascribe conduct to Torch and then show tweets from various Twitter user accounts. Plaintiffs do not show that these Twitter users are in anyway associated with Torch. SAC at ¶¶ 103-105, 110, 114, 122, 126, 134-136. The only plausible allegations concerning Torch is a statement to the effect that Torch does not like Defendant Exoo and will never associate with him. *See* Plaintiff's Exh C. These allegations fail to make Plaintiffs' claims against Defendant Exoo or the existence of a conspiracy among the Defendants any more plausible than the claims dismissed in the FAC.

Second, Plaintiffs add facts learned from online news article headlines and baselessly ascribe that conduct to Defendants. Plaintiffs describe an incident where three individuals allegedly assaulted a group of Marine Reservists. SAC ¶¶ 85-86. The alleged assailants and the Marines are not parties to this litigation. Plaintiffs provide no plausible basis for their assertion that these assailants were associated with Exoo, Twitter, St. Lawrence or any Defendants. Similarly, Plaintiffs describe an incident concerning a tavern operated by non-parties to the litigation which was allegedly vandalized. *See* SAC at ¶¶ 103-105. Plaintiffs ascribe this vandalism to Torch, but the SAC provides no plausible connection between the alleged vandals and any Defendants.

Third, Plaintiffs seem to suggest that the actress, comedian, and archenemy of right-wing extremists Kathy Griffin is somehow involved in this matter by pointing out that she retweeted one of Mr. Exoo's Tweets. *See* SAC ¶ 126. What Plaintiffs actually illustrate is that a Twitter retweet does not plausible imply that individuals, acting independently, are necessarily working together or even know one another and certainly do not serve as the basis for a RICO enterprise or RICO conspiracy.

Fourth, Plaintiffs highlight a similar series of threadbare connections to tie the unrelated Defendants together into their conspiracy theory. For instance, Plaintiffs allege that Defendant Exoo, a Twitter user with more than 53,000 followers, is connected to Defendant Twitter because he uses Twitter and someone he knows once received a response from a message to Twitter's CEO. *See* SAC at ¶180. Plaintiffs also claim to have identified a person who called D'Ambly's employer and maintain that person sent messages complaining about D'Ambly's association with EHA to both Defendants Exoo and the Daily News. All that Plaintiffs demonstrate is that more than one person dislikes D'Ambly and disagrees his white supremacist views. This does not constitute a RICO conspiracy or a RICO enterprise.

# ARGUMENT

## A. Legal Standard

For the purpose of deciding the instant motion, the Court must take all alleged facts as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Nevertheless, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable…." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *See also*, *Magnum v. Archdiocese of Phila*., 253 F. App'x 224, 225 (3d Cir. 2007). To survive the motion, Plaintiffs must have alleged plausible facts sufficient to establish that they may eventually be entitled to redress such that one or more of their claims should be allowed to proceed to discovery, summary judgment motion practice, and, potentially, a trial on the merits. *Issaschar v. Eli Am. Friends of the Isr. Ass'n for Child Prot*., 2014 U.S. Dist. LEXIS 23411, at *3 (E.D. Pa. Feb. 24, 2014).

In determining the motion, the Court may consider documents incorporated by reference into the complaint. *In re Amarin Corp. PLC Sec. Litig*., 689 F. App'x 124, 128 n.6 (3d Cir. 2017). The Court may also take judicial notice of certain documents outside the four corners of the complaint. *United States v. Kindred Healthcare, Inc*., 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020).

**B.  Counts IV and V For RICO Violations Must be Dismissed**

To establish a claim for RICO, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute defines racketeering by a list of criminal activities that constitute predicate acts for purposes of RICO. *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).

The Court dismissed the RICO charges in the FAC because Plaintiffs failed to satisfy the predicate act requirement. *See* ECF No. 99, Opinion at 6-8. The Court noted,

> without sufficient predicate acts, Plaintiffs cannot plausibly allege that there was a pattern of racketeering activity. Plaintiffs' substantive federal RICO claim therefore fails. In addition, because Plaintiffs fail to establish a substantive RICO claim, their RICO conspiracy claim must also be dismissed.

In the SAC, Plaintiffs simply refiled the same claims without alleging predicate acts necessary to establish a pattern of RICO activity.

1.  *Plaintiffs Failed to Allege Requisite Predicate Acts in Furtherance of a Conspiracy (Count IV)*

Establishing a racketeering conspiracy requires the commission of two or more predicate criminal acts under RICO, 18 U.S.C. 1962(c). *Pioneer Contracting, Inc. v. E. Exterior Wall Sys.*, No. 04-cv-01437, 2005 U.S. Dist. LEXIS 5197, at *4 (E.D. Pa. Mar. 30, 2005) (dismissing RICO claim where plaintiff failed to properly

allege predicate acts). Plaintiffs have alleged none. Count IV of the SAC alleges

violations of 18 U.S.C. §§ 1951 (the "Hobbs Act") and 1952 (the "Travel Act").

    a. <u>Plaintiffs Failed to Plead Robbery or Extortion</u>

First, Plaintiffs fail to satisfy the predicate act requirement under the Hobbs

Act because the facts as alleged do not constitute robbery or extortion. The Hobbs

Act provides, in part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the
> movement of any article or commodity in commerce, by robbery or
> extortion or attempts or conspires so to do, or commits or threatens physical
> violence to any person or property in furtherance of a plan or purpose to do
> anything in violation of this section ….

18 U.S.C. § 1951(a).

This court held, "[p]laintiffs repeatedly allege that they were extorted by

Defendants. But, as pled, no Plaintiff was the victim of extortion because extortion

requires "the obtaining of property from another."" *See* ECF No. 99, Opinion at 6-

7. Plaintiffs still do not allege anything was taken from them. In *Scheidler v. NOW,*

*Inc.*, 537 U.S. 393, 405 (2003)("*Scheidler I*"), the Supreme Court held,

"eliminating the requirement that property must be obtained to constitute extortion

would not only conflict with the express requirement of the Hobbs Act, it would

also eliminate the recognized distinction between extortion and the separate crime

of coercion -- a distinction that is implicated in these cases." *Id*. Moreover, the

Supreme Court has held that even actual acts of physical violence do not satisfy the

predicate act requirement where those acts of violence are unrelated to robbery or extortion. *Scheidler v. NOW, Inc.*, 547 U.S. 9, 16 (2006) ("*Scheidler II*") ("We hold that physical violence unrelated to robbery or extortion falls outside the scope of the Hobbs Act."). Similarly in *Int'l Ass'n of Machinists v. Jackson*, No. 09-150, 2010 U.S. Dist. LEXIS 15885, at *21-22 (E.D. Pa. Feb. 19, 2010), the plaintiff asserted a RICO claim against defendants in connection with the loss of his employment. The claim was dismissed because "the complaint d[id] not allege that the Individual Defendants obtained Plaintiffs' jobs." *Id.*

Despite the Court's admonishment, Plaintiffs continue to accuse Exoo of extortion. *See e.g.*, SAC at ¶¶ 48, 152, 199. Plaintiffs claim Exoo's goal was to "extort D'Ambly's termination." *Id.* However, the pleading contains no actual allegations of extortion. Plaintiffs fail to allege that Defendant Exoo or anyone else tried to obtain for themselves Plaintiffs' jobs or any other property. This is the same defect that proved fatal to Plaintiffs' RICO claims in the FAC. *See* Opinion at 6-7. Plaintiffs' allegations in the SAC are implausible and fail to state a claim under the Hobbes Act.

> b. No allegations of an unlawful activity were plead to sustain a claim under the Travel Act

Plaintiffs fail to allege any predicate act defined by the Travel Act. The Court previously found that they failed to allege any violation of the Travel Act:

> The Travel Act, 18 U.S.C. § 1952, applies to certain "unlawful acts." 18 U.S.C. § 1952(a). Broadly speaking, an unlawful act involves (1) a business enterprise involving gambling, liquor, narcotics, or controlled substances as well as unlawful prostitution offenses; (2) extortion, bribery, or arson; or (3) indictable offenses involving money laundering. 18 U.S.C. § 1952(b)… Nothing in Amended Complaint suggests that any member of the purported Exoo Enterprise engaged in unlawful activity as defined by the Travel Act.

*See* Opinion at 7-8

Plaintiffs made no effort to cure the FAC to set forth a violation of the Travel Act. They simply reiterated the dismissed count. Because Plaintiffs fail to plausibly allege any RICO predicate acts under the Travel Act or the Hobbs Act, the RICO claims should be dismissed with prejudice for failing to allege a pattern of racketeering activity.

### 2. *Plaintiffs Failed to Allege the Existence of RICO Enterprise*

Plaintiffs also fail to plausibly allege the existence of a RICO enterprise. A RICO enterprise is defined in 18 U.S.C. § 1961 (4) as: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." A RICO enterprise, "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S*, 556 U.S. 938, 946 (2009).

Plaintiffs fail to clearly identify the known members of the enterprise and each member's role within the enterprise. Both RICO counts, Counts IV and V,

allege violations "against defendants Christian Exoo a/k/a "AntiFashGordon," St.

Lawrence University, Vijaya Gadde, and Twitter, Inc." Plaintiffs do not assert

Counts IV and V against Defendants Torch or Strickland (or comedian Kathy

Griffin, for that matter). In fact, Strickland and Torch are not identified as

Defendants under any Counts in the SAC.

Plaintiffs fail to plausibly allege facts from which to find that Exoo has a co-

conspirator relationship with Twitter or Gadde. Plaintiffs try to infer a relationship

because Gadde and Twitter are opposed to white supremacy. SAC at ¶ 181.

Opposition to fascism and white supremacy is hardly unique and does not imply

that all those who share that view are acting in concert. When required to plausibly

explain the connection between the alleged co-conspirators in more detail,

Plaintiffs failed miserably. *See* SAC at ¶180 (alleging that Exoo is connected to

Twitter's CEO because the CEO once responded to a message from one of Exoo's

alleged acquaintances).

Similarly, Plaintiffs fail to plausibly allege a co-conspirator relationship

between Defendant St. Lawrence University and Defendant Exoo. St. Lawrence is

merely Exoo's employer. Plaintiffs allege, "Exoo uses his employment and

lecturing at St. Lawrence to recruit." SAC at ¶ 175. To substantiate this, Plaintiffs

attach images of Tweets where Mr. Exoo states that he teaches OSINT (Open-

Source Intelligence) workshops concerning his lawful investigative techniques and

a tweet by GCMLP (The Global Media Literacy Project) showing a picture of Mr. Exoo seeming to give a presentation. Plaintiffs also allege that Saint Lawrence is opposed to "white nationalism." SAC at ¶ 174. These allegations fail to set out a conspiracy to violate the RICO Act.

Plaintiffs added Torch as a defendant based on a statement in which Torch criticizes Defendant Exoo. *See* Plaintiff's Exh. C. Plaintiffs do not plausibly allege any actions by Defendant Torch, but merely makes conclusory statements that Torch was somehow responsible for property damage and crimes alleged in newspaper articles which make no mention of Torch. *See e.g.*, SAC at ¶¶ 83 (alleging Defendant Torch vandalized Rehl's window), 85-86 (citing news articles concerning an assault which make no reference to Torch), 103-105 (citing West Philly.com news article and several Twitter Tweets which make no reference to Torch), 111 (alleging Torch "members caused damage to Hartley's home, which is what they consider to be self-protection."). All that is plausibly alleged of the relationship between Exoo and Torch is that Torch put out a statement that it does not like Defendant Exoo and wishes to distance itself from him. Plaintiffs Exh. C.

Moreover, Plaintiffs' allegations concerning Defendant Strickland do not support their claim for the existence of a RICO enterprise or a RICO conspiracy. Plaintiff D'Ambly publicly organized a march for EHA for January 12, 2019, called the "It's okay to be white…protest march." SAC ¶ 51. It is alleged that Mr.

Exoo was asking people to counter protest this march and tweeted after the march was cancelled, "Regardless, I'm going to spend the next week wrecking your fucking life, Dan D'Ambly." *Id.* at ¶¶ 52, 53, 55, 60.

Plaintiff D'Ambly alleged three things about Strickland. First, D'Ambly alleges Strickland replied to a tweet sent by Exoo to his thousands of followers with a photograph of an EHA poster that states, "THE WHITE RACE EARTH'S MOST ENDANGERED SPECIES Help preserve it." On Strickland's EHA flyer, there was a telephone number (848) 252-0468. Strickland captioned the photo, "@RacismDog I'm seeing these posted all over. I hate these guys. I'm pretty sure they kick puppies." *Id.* at ¶ 63. It seems from this post that Mr. Strickland came to learn of EHA and come into possession of an EHA flyer with D'Ambly's phone number through EHA's extensive white supremacist propaganda campaign rather than from a conspiracy with Twitter or any of the other Defendants. Indeed, Plaintiffs do not allege that Exoo disclosed D'Ambly's personal phone number at all.

Second, Plaintiffs allege that someone using a phone number that belongs to Strickland made a single phone call to the Daily News where the caller is alleged to have said "if [The Daily News] continued to employ D'Ambly the Daily News was responsible for 'any violence or blood spilled is also on your hands." SAC ¶ 57. In its Opinion dismissing the claims in the FAC against Defendant Exoo, this

Court required D'Ambly to provide more factual support for the context of the

statement. The Opinion notes:

> The reference to any violence or blood spilled could support a finding of
> wrongful and intentional interference, but more factual support is needed. It
> is not clear to the Court whether the callers were referring to D'Ambly's
> blood being spilled or violence as to him, to D'Ambly engaging in violence,
> or to some other activity or persons. Consequently, this allegation does not
> sufficiently allege wrongful conduct.

*See* Torres Decl. Exh. A, Opinion at 17.

Plaintiffs failed to provide any further context for the call as requested by the

Court. Plaintiffs stated that a USB thumb drive with the recording would be

provided to defense counsel and to the Court. *See* SAC at footnote 19. As noted

above, Plaintiffs failed to produce any recordings or any other documents to

Defendant Exoo's Counsel. Moreover, Exoo's Counsel has not received any notice

that any recordings or other documents have been produced to the Court. *See*

Torres Decl. at ¶¶ 14-16.

Finally, Plaintiffs allege that someone using Strickland's phone number sent

a text message to D'Ambly's number stating, "[s]o your thing went well today?

Did you guys get there ok?" *Id*. at 61. Plaintiffs fail to indicate whether D'Ambly's

phone number is the same as the number on the flyer that Strickland tweeted about.

*Id*. at 63 (including an EHA flyer with the number (848) 252-0468 and

conveniently redacted that portion of the police report annexed to the SAC as

Plaintiff's Exh. E). Moreover, based on the context of the E-mail, it appears that

Strickland was referring to EHA's January 12, 2019, white supremacist rally which was cancelled by EHA (asking "did you *guys* get there") (emphasis added).

D'Ambly alleges that his car was damaged prior to the scheduled rally and he identified a non-defendant schoolteacher named Martha Friend who he claimed posted a photo of his car online in November. Plaintiff's Exh. E. The call, the text message and the keying of the car all occurred at a time when D'Ambly was making headlines in connection with the well-publicized eleventh-hour cancellation of his white supremacist rally. *See* Torres Decl. Exh. D-II Exoo - D'Ambly Tweets at 31, 34, 36, 38. Hundreds of people turned out to counterprotest against D'Ambly's white supremacist rally. *See id.* at 36 (noting on January 11, 2019, that Black Lives Matter had applied for a permit to counterprotest D'Ambly's event). EHA basked in the negative attention it received on that day, taking to Twitter to thank, "the Jewish Supremacist news outlets and many other communist snowflakes for making [EHA] a household name." *See id.* at 38.[11] In

---

[11] Numerous politicians issued statements in opposition to EHA and in support of the counterprotest. The Mayor of Princeton stated, "We stand in opposition to this twisted attempt to spew hate." *See* Nick Muscavage, *Hundreds turn out in Princeton to rally against white supremacy,* Courier News and Home News Trib., (Jan 9, 2019) (available at) https://www.mycentraljersey.com/story/news/local/2019/01/12/hundreds-turn-out-princeton-rally-against-white-supremacy/2547103002/ ("There were no white supremacists rallying, as was planned on Saturday, but instead hundreds of people marching against hate.")(last visited Jan. 6, 2022).

light of EHA's headline-grabbing activities on that day, the convergence of unfortunate events for D'Ambly at that time is not surprising.

Defendant Exoo has more than fifty thousand Twitter followers. A random person's response to a public social media posting to more than 50,000 users stating that he dislikes a notorious white supremacist does not show a common purpose necessary to establish a RICO enterprise. Moreover, other than the allegation that Nick Strickland was one of more than a hundred million Twitter users, Plaintiffs fail to connect Strickland to any of the other Defendants. Plaintiffs offer no details for their claim that there is an association among the Defendants other than farfetched, unsubstantiated, conclusory connections that exist only in Plaintiffs' papers. Moreover, Plaintiffs have failed to plausibly allege a sufficient causal link between Defendants' actions and any harm they claim to have suffered. *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 453 (2006) (noting a plaintiff may only sue under RICO where the alleged RICO violation was the proximate cause of the plaintiff's injury). By Plaintiffs' own admission, they can only guess as to who was responsible for the damage and D'Ambly suggested that non-party, Ms. Friend, may be responsible.

Moreover, the SAC asserts no plausible allegations concerning the structure of the alleged enterprise and does not plausibly allege any "agreement" among co-conspirators. The SAC does not remotely suggest that Exoo, Twitter, Gadde, and

St. Lawrence combined as a unit or acted in concert for a common purpose.

Plaintiffs also fail to establish longevity of the alleged enterprise. Mr. Exoo is a

Twitter user who posts about what he believes are important social issues and,

according to the SAC, identifies the real-world identities of right-wing extremists.

The facts that he has a day job, uses Twitter, or even reaches a substantial audience

on social media does not give rise to a RICO enterprise.

### 3.  *Plaintiffs Failed to Allege a RICO Conspiracy (Count V)*

Where a plaintiff fails to state a claim for violation of the federal RICO

statute, "it follows that the Complaint also fails to state a claim for conspiracy to

violate th[is] statute []." *Zazzali v. Hirschler Fleischer, P.C*., 482 B.R. 495, 516-17

(D. Del. 2012), *citing Zavala v. Wal-Mart Stores, Inc*., 691 F.3d 527 (3d Cir.

2012) (affirming dismissal of RICO and conspiracy to commit RICO claims

because complaint did not adequately allege predicate acts required for RICO

claims). *See also Binary Semantics Ltd. v. Minitab, Inc*., 2008 U.S. Dist. LEXIS

28602, at *13 (M.D. Pa. Mar. 20, 2008) (stating that a RICO conspiracy claim

"necessarily fails due to failure to state a claim under RICO"). In this case,

Plaintiffs failed to state a claim under RICO, therefore, the RICO conspiracy claim,

18 U.S.C. § 1962(d) should be dismissed with prejudice.

### 4. *Plaintiff Should be Required to Submit a RICO Statement pursuant to Local Civil Rule 16.1(b)(4)*

In the event that the Court' permits Plaintiffs to take a fourth bite at the apple and file a Third Amended Complaint, Plaintiffs should be Ordered to file a RICO case statement pursuant to Local Civil Rule 16.1(b)(4). *See Northland Ins. Co. v. Shell Oil Co*., 930 F. Supp. 1069, 1076 (D.N.J. 1996) ("the RICO Case Order is supported by Congressional act, federal and local rule."). Such a ruling can "aid plaintiffs in framing their claims with particularity sufficient for the requirements of the RICO statute." *Northland*, 930 F. Supp. at 1073. *See Rothberg v. Marger*, 2012 U.S. Dist. LEXIS 71088, at *9 (D.N.J. May 21, 2012) ("Because Defendants' motions to dismiss Plaintiffs' RICO claim focus on Plaintiffs' failure to allege a pattern of racketeering activity and failure to allege a specific predicate statute, [] the Court orders Plaintiffs to file" a RICO case Statement.").

## C. **Plaintiffs Whose Claims Have No Connection to New Jersey Must Be Dismissed from the Action for Lack of Personal Jurisdiction**

Plaintiffs' federal RICO claims are the only claims that provide for nationwide personal jurisdiction over Defendant Exoo. The dismissal of the federal RICO claims requires the dismissal of all claims asserted by all Plaintiffs other Plaintiff D'Ambly against Defendant Exoo for lack of personal jurisdiction pursuant to F.R.C.P. Rule 12(b)(2). Absent specific jurisdiction for their personal claims, a plaintiff may not tag along in a federal action merely because one or

more other plaintiffs can satisfy the minimum contacts requirements. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1782 (2017). Defendant Exoo lives and works in New York. *See* Torres Decl. Exh. C, Exoo Decl. at ¶ 3-8, 11. He has no connection to the State of New Jersey sufficient to subject him to general or specific jurisdiction with respect to the twelve non-resident Plaintiffs' claims. *Id*. In its Opinion dismissing the FAC, the Court agreed with the holding *in Bristol-Myers Squibb*. *See* Opinion at 11-14. ("[A]ll Plaintiffs except for D'Ambly fail to demonstrate a sufficient connection between New Jersey, their claims, and Exoo."). The Court should do the same on this motion and dismiss all claims of the non-New Jersey Plaintiffs with prejudice.

**D. Count II For Tortious Interference Must Be Dismissed**

This court dismissed the Plaintiff D'Ambly's claim for tortious interference ruling that he failed to allege that what was said of him was untruthful and for failing to allege the element of improper activity. *See* ECF No. 99, Opinion at 14-16. This defect was not cured for D'Ambly or any of the other Plaintiffs.

This Court found that Plaintiff D'Ambly's failure to dispute the truth of Exoo's alleged claims proves fatal to his claim for tortious interference:

> However, "it is generally recognized that a party may not be liable for tortious interference for merely providing truthful information to one of the contracting parties." … In short, it does not appear that D'Ambly is claiming that Exoo defamed him or otherwise spread false information about D'Ambly.

Opinion P. 14-16 (citations omitted).

Plaintiffs still do not allege Mr. Exoo made untruthful statements. "The communication of truthful information does not constitute improper interference with another's contractual relationships." *Atiyeh Publ'g, LLC v. Times Mirror Magazines, Inc.,* 2000 U.S. Dist. LEXIS 18728, at *7-8 (E.D. Pa. Dec. 7, 2000), *citing Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Div.*, 281 Pa. Super. 560 n.12 (Pa. Super. 1980). *Moore v. Hoff*, 821 N.W.2d 591, 599 (Minn. Ct. App. 2012) is directly on point. In that case, the Minnesota Supreme Court held that an online blogger could not be liable for tortious interference with the plaintiff's employment contract when the plaintiff was fired from his job after the blogger exposed truthful information concerning the employee's conduct as that is constitutionally protected speech. *See id.* at 599. "Because truth is an absolute defense to a claim for defamation … truth should also be a defense to a claim for tortious interference with a contract arising out of an allegedly defamatory statement." *Id.* at 596-97.

Article One, Section Six of the New Jersey Constitution explicitly provides that truth is an absolute defense to defamation claims under New Jersey law. Similarly, truth must be an absolute defense to a claim for tortious interference with business contracts. Providing truthful information to employers about the conduct of their employees does not constitute interference with economic

opportunity. Restatement (Second) of Torts § 772(a) (1977) ("One who intentionally causes a third person not to perform a contract . . . does not interfere improperly with the other's contracted relation, by giving the third person truthful information"). *See also E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc*., 294 N.J. Super. 158, 180 (1996) *cert. denied*, 148 N.J. 458 (1997).

Moreover, most Plaintiffs including Hartley, Tucci, Schwetz, Reidinger, Wolkind, and Amanda Rehl fail to identify how Defendant Exoo interfered with their economic opportunity. ¶¶ 83-121. Indeed, paragraphs referencing Amanda Rehl provide no information about her employment, much less her loss of employment. ¶¶ 87-91. Plaintiffs merely conclude without factual allegations concerning these Plaintiffs that Exoo caused "Plaintiffs' employers to terminate their employment." SAC at ¶ 159. In addition, Defendant Exoo first mentioned Zachary Rehl more than a year after Plaintiffs alleges Rehl was terminated. *See* Torres Decl. Exh. D-V, Exoo-Rehl Tweets at 6.

With respect to Plaintiff D'Ambly's tortious interference claim brought solely against Defendant Exoo, the Court requested more detail about a call to D'Ambly's employer in support of the tortious interference claim. *See* ECF No. 99, at 17 (noting "it is not clear to the Court whether the callers were referring to D'Ambly's blood being spilled or violence as to him, to D'Ambly engaging in violence, or to some other activity or persons"). *See* ECF No. 99 at 17. Plaintiff

D'Ambly identified the phone number and a name associated with that number. *See* SAC at ¶¶ 57-63. D'Ambly does not allege that Exoo was the caller or that the call was made from Exoo's number. Moreover, Plaintiffs failed to provide the context of the statement as the Court directed. As noted above, despite Plaintiffs' statement that they would provide audio recordings of the voice mail message to the Court and Defendants' Counsel (SAC at ¶ 23, footnote 19), Plaintiffs failed to produce the recording to provide context for the statement.

### E.  There Is No Private Right of Action for 29 U.S.C. § 530

Count VII alleges a violation of Section 610 of the Labor-Management Relationship Disclosure Act (LMRDA), 28 U.S.C. § 530. Section 530 is a criminal statute that provides for a fine and imprisonment, but not civil monetary relief. Plaintiffs learned no lesson from this Court's Opinion dismissing the claims in the FAC against Defendant Exoo. Plaintiffs were informed quite clearly that criminal statutes do not create a private right of action unless the statute explicitly creates such a right. *See* ECF No. 99, Opinion at 20.

It is well-settled that there is no private of action for violations of Section 610 of the LMRDA (29 U.S.C. § 530) (providing for fine and imprisonment as the statute's only remedies). *See Martin v. Local 556, Transp. Workers Union of Am*., AFL-CIO, 2014 U.S. Dist. LEXIS 122755, at *12 (N.D. Tex. Sep. 3, 2014) ("Section 530 does not contain any language suggesting that Congress intended to

authorize a private cause of action."); *Rodriguez v. Serv. Emples. Int'l*, 755 F. Supp. 2d 1033, 1048 (N.D. Cal. 2010) ("Section 530 does not give rise to a private cause of action."); *Schonfeld v. Raftery*, 335 F. Supp. 846, 851 (S.D.N.Y. 1971) ("Plaintiff has no standing to enforce these criminal provisions"). *Grant v. Communications. Workers of Am., Local 1101* ("*Grant I*"), 2014 U.S. Dist. LEXIS 96585, at *6 n.3 (S.D.N.Y. July 15, 2014) ("is a criminal provision with no private civil right of action.") *citing Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 93 n.17 (1989); *Grant v. Communications Workers, Local 1101* ("*Grant II*"), 2017 U.S. Dist. LEXIS 198188, at *19 (S.D.N.Y. Dec. 1, 2017) (dismissing plaintiffs' claim under Section 530). The claim should be dismissed with prejudice.

**F. Defendant Exoo's Alleged Conduct is Protected by the First Amendment and New Jersey Constitution**

Even if the counts in the SAC were otherwise proper, the claims are barred by the First Amendment.

*1. The First Amendment Protects Private Individuals Against Being Sued in Court by Other Private Individuals*

In its Opinion dismissing the FAC, the Court stated that the First Amendment only protects a person against governmental action. *See* ECF No. 99, Opinion at 5. If Plaintiffs' claims were upheld, the government action in this case would be the Court's participation in infringement of Defendant's First

Amendment Right to freedom of speech. Plaintiffs seek to employ federal causes of action and a tort against Mr. Exoo by suing him in a federal courthouse.

It is well-settled that the First Amendment defense can apply to civil court proceedings between private individuals. *Snyder v. Phelps*, 562 U.S. 443 (2011), is instructive. Snyder, a private individual, brought a tort action against a congregation called the Westboro Baptist Church for their picketing at his son's funeral. The Supreme Court ruled, "[w]hether the First Amendment prohibits holding Westboro liable for its speech in this case turns largely on whether that speech is of public or private concern, as determined by all the circumstances of the case." *Id.* at 451. As *Snyder* illustrates, a civil action pursuant to laws of this country is, in itself, a government action that is subject to First Amendment scrutiny. *See also NAACP v. Claiborne Hardware*, 458 U.S. 886, 934 (1982) (First Amendment protects the NAACP against a civil lawsuit by private merchants.)

The Third Circuit has held that the First Amendment defense applies to civil RICO claims. *Northeast Women's Center v. McMonagle*, 868 F.2d 1342, 1348 (3d Cir. 1989). In distinguishing liability for trespass and property damage from liability for speech, the Third Circuit held, "[w]e would have grave concerns were these or any other defendants held liable under civil RICO for engaging in the expression of dissenting political opinions in a manner protected under the First Amendment." *Id.*

Plaintiffs fail to allege that Exoo engaged in anything other than protected, political speech. Identifying members of dangerous extremist groups on social media and alerting others to the extremists' employer's contact information is protected speech and is no different from a political boycott for non-economic purposes. "The use of speeches, marches, and threats of social ostracism cannot provide the basis for a damages award." *Claiborne*, 458 U.S. 934 (1982) (noting "[p]etitioners sought to vindicate rights of equality and of freedom that lie at the heart of the Fourteenth Amendment itself"). *Id*. at 914 (internal quotations omitted). "The inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). *See Amawi v. Pfleugerville Ind. School Dist*., 373 F. Supp. 3d 717, 747 (W.D. Tx 2018) ("political boycotts are protected speech"). Defendant Exoo's alleged speech is protected by the First and Fourteenth Amendments as well as Article One, Section Six of the New Jersey Constitution.

   2.  *Defendant Exoo's Speech Was Not a True Threat*

"True threats" are not protected speech. A true threat must be "so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1078 (9th Cir. 2002) (quoting *United States v. Kelner*, 534 F.2d 1020,

1027 (2d Cir. 1976). Plaintiffs failed to plausibly allege facts from which the Court can conclude that Defendant Exoo made any actionable true threats. Exoo's actions are non-violent. Even the strongest statement from Exoo alleged in the SAC: that Exoo was going to spend a week wrecking Plaintiff's D'Ambly's life is not a true threat and does not incite violence. *See e.g., Claiborne*, 458 U.S. 902, 929 (1982) (Finding "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck" to not be a true threat). That tweet was a declaration of what Defendant Exoo planned to do personally. It is not a call for action to other parties. If the context is examined, Defendant Exoo's entire Twitter presence demonstrates that he spends his time exposing people on the far right and that threat cannot be reasonably read to mean he was going to personally drive to New Jersey to assault Plaintiff D'Ambly. *See* Torres Decl. Exh. D

D'Ambly claims Defendant Strickland told his employer, not D'Ambly himself, that the Daily News would have blood on its hands if violence occurred. *See* SAC at ¶ 52. In its Opinion, the Court noted that Plaintiff D'Ambly provided no context for the statement in the FAC and it was unclear what the caller was referring to. *See* ECF No. 99, Opinion at 17. That remains unchanged and cannot be interpreted as a true threat as it is not, as plead, an unambiguous threat. SAC at ¶ 57, 62, 209, 211.

*3. Exoo's statements do not make him liable for the actions of third parties.*

Plaintiffs D'Ambly, Scott and the Rehl Plaintiffs' alleged property damage by unnamed third parties is not actionable against Exoo because Exoo's statements are constitutionally protected. SAC at ¶¶ 61, 83, 84, 91, 96, 136. Nowhere did Defendant Exoo call for damage to their property. Plaintiffs failed to plausibly allege a causal link between Exoo's Constitutionally protected statements and the alleged property damage of the Plaintiffs. In *Claiborne,* 458 U.S. 933-934 (1982), the Supreme Court rejected similar efforts to prosecute individuals for the conduct of third parties, noting:

> [a] massive and prolonged effort to change the social, political, and economic structure of a local environment cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts. Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means, that carefully identify the impact of such unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity.

Plaintiffs have failed to meet that standard.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Exoo asks this Court to grant the relief requested in this motion.

Dated: January 14, 2022
    Springfield, NJ

        Respectfully submitted,

By:

/s/ _____

_____
Richard Torres, Esq.
63 Tooker Avenue
Springfield, New Jersey 07081
Phone: (347) 742-5362
E-mail: richardtorresdna@gmail.com


**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Phone: (212) 991-8960
Fax: (212) 991-8952
E-mail: chris@marlboroughlawfirm.com

*Counsel for Defendant Christian Exoo*