Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY; AARON WOLKIND; STEVEN HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI, <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, <br><br> Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** <br><br><br> CIVIL ACTION NO.: 2:20-cv-12880 <br><br> (ELECTRONICALLY FILED) |

---

**PLAINTIFF'S COMBINED BRIEF IN SUPPORT OF HIS OPPOSITION TO DEFENDANT CHRISTIAN EXOO'S MOTION TO STRIKE PURSUANT TO F.R.C.P. 12(f); MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2) and 12(b)(6); AND MOTION FOR SANCTIONS**

---

**Motion Day: February 7, 2021**

## TABLE OF CONTENTS

|  |  |  |
|---|---|---|
| | Table of Authorities...................................................................... | ii |
| | Introduction ................................................................................. | 2 |
| I. | The New Jersey Department of Homeland Security Identifies Antifa as Anarchist Extremists Domestic Terrorists................................. | 8 |
| | A. Connection to New Jersey............................................... | 9 |
| II. | Legal Standards for Rule 12(b)(6) and 12(b)(2) ........................ | 10 |
| | A. The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction ...................................................... | 11 |
| III. | Plaintiffs Have Plead Sufficient Facts to Establish Liability for RICO .. | 13 |
| | A. Conspiracy to Violate 18 U.S.C. § 1962(d)................................. | 15 |
| | B. Wire Fraud as A Predicate Act Under § 1962(d)......................... | 16 |
| | C. D'Ambly's LMRDA Rights as A Union Member Were Extorted Through Numerous Violations of 29 U.S.C. § 530 – A Rico Predicate ........................................................ | 20 |
| IV. | Exoo Has Not Produced Any Evidence That Supports His Fraudulent Statements and Misrepresentations ........................................... | 23 |
| V. | This Case Does Not Implicate the First Amendment ............................. | 24 |
| VI. | Exoo Did Not Challenge Plaintiffs' Allegations That His Permanent Twitter Bans Were Lifted Due To Connection To Twitter Verified Blue Check User @EmilyGorcenski.......................................... | 27 |
| VII. | Conclusion................................................................................ | 31 |

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alpizar-Fallas v. Favero,*
    908 F.3d 910, 918-19 (3d Cir. 2018) ...........................................                17

*Anderson v. Ayling,*
    396 F.3d 265, 269-70 (3d Cir. 2005) ...........................................                17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................                10

*Beck v. Prupis,*
    529 U.S. 494, 505-06 (2000)......................................................                16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................                10,11

*Boyle v. United States,*
    556 U.S. 938, 943-44 (2009)......................................................                14

*Buckley v. Valeo,*
    424 U.S. 1, 14 (1976)................................................................                25

*Calder v. Jones,*
    *465 U.S. 783, 789-790 (1984)*......................................................                12

*Chaplisnky v. N.H.,*
    315 U.S. 568, 570-71 (1942).....................................................                26

*Colorado Riv. Water Conserv. Dist. v. United States,*
    424 U.S. 800, 817 (1976)..........................................................                11

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,*
    271 F.3d 374, 380-84 (D. Ct. 2001)...........................................                17-18

*Davis v. Wells Fargo,*
    824 F.3d 333 (3d Cir. 2016).......................................................                11

*Envtl. Tectonics v. W.S. Kirkpatrick, Inc.,*
    847 F.2d 1052, 1067 (3d Cir. 1988).............................................                17

*Eu v. San Francisco Democratic Cent. Comm.,*
    489 U.S. 214, 223 (1989)..........................................................                25

*Gulf Oil Corp. v. Gilbert,*
　　330 U.S. 501, 508 (1947)................................................................... 11

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
　　492 U.S. 229, 243-49 (1989)............................................................. 13

*In re Asbestos Prods. Liab. Litig (No. VI),*
　　822 F.3d 125, 133-34 (3d Cir. 2016) .............................................. 10-11

*Int'l Shoe Co. v. Washington*,
　　326 U.S. 310, 316 (1945)................................................................... 12

*IMO Indus. v. Kiekert AG,*
　　155 F.3d 254 (3d Cir. 1998)............................................................... 12

*Laurel Gardens, LLC v. McKenna,*
　　948 F.3d 105 (3d Cir. 2020).......................................................... 11, 13

*Lewis v. Lhu,*
　　696 F.Supp. 723, 727 (D.D.C. 1988)................................................ 18

*Maio v. Aetna, Inc.*,
　　221 F.3d 472, 483 (3d Cir. 2000)..................................................... 13

*Miller Yacht Sales, Inc. v. Smith,*
　　384 F.3d 93, 97 (3d Cir. 2004).......................................................... 11,12

*Meyer v. Grant,*
　　486 U.S. 414, 422 (1988)................................................................... 25

*NAACP v. Claiborne Hardware Co.,*
　　458 U.S. 886, 902, 929 (1982).......................................................... 26

*Nat'l Sec. Sys. v. Iola,*
　　*700 F.3d 65, 105 (3d Cir. 2012)*..................................................... 17

*Northeast Women's Center, Inc. v. McMonagle,*
　　862 F.2d 1342, 1349 (3d Cir. 1989).................................................. *passim*

*O'Connor v. Sandy Lane Hotel Co.,*
　　496 F.3d 312, 317 (3d Cir. 2007)..................................................... 12

*O'Rourke v. Crosley,*
　　847 F.Supp. 1208, 1213 (D.N.J. 1994)............................................. *passim*

iii

*Pinker v. Roche Holdings, Ltd.,*
   292 F.3d 361 (3d Cir. 2002)................................................................   13

*Procter & Gamble, Co. v. Amway Corp.,*
   242 F.3d 539, 542 (5th Cir. 2001).......................................................   18

*Peterson v. Kennedy,*
   771 F.2d 1244 (9th Cir. 1985)............................................................   7

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)...............................................................   11

*Republican Party of Pa. v. Cortes,*
   218 F.Supp. 3d 396, 414-15 (2016) ...................................................   25

*Rose v. Bartle,*
   871 F.2d 331, 366 (3d Cir. 1989)........................................................   15

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479, 488-93 (1985)..............................................................   7

*Smith v. Berg,*
   247 F.3d 532, 534 (3d Cir. 2001)........................................................   15, 16

*Swistock v. Jones,*
   884 F.2d 755, 758 (3d Cir. 1989)........................................................   11

*Tabas v. Tabas,*
   47 F.3d 1280, 1290 (3d Cir. 1995)......................................................   14

*United States v. Cosko, Jackson A.,*
   Case No. 1:18-mj-00121-DAR (D.D.C. filed Oct. 3, 2018) ........................   6

*United States v. Elonis,*
   841 F.3d 589, 597 at n.7 (3d Cir. 2016)...............................................   25

*United States v. Fattah,*
   914 F.3d 112, 162 (3d Cir. 2019)........................................................   16

*United States v. Fullmer,*
   584 F.3d 132, 154 (3d Cir. 2009)........................................................   25

*United States v. Gotti,*
   459 F.3d 296 (2d Cir. 2006)...............................................................   21

*United States v. Gregg,*

226 F.3d 253, 267-68 (3d Cir. 2000) .............................................................. *passim*

*United States v. Kosma,*
   951 F.2d 549, 555 (3d Cir. 1991)................................................................... 25

*United States v. Local 560 Int'l Bhd. of Teamsters,*
   780 F.2d 267 (3d Cir. 1985)......................................................................... 20, 21

*United States v. Local 560,*
   550 F.Supp. 511 (D.N.J. 1982) ..................................................................... 20

*United States v. Salinas,*
   522 U.S. 52, 63 (1997)................................................................................... 15

*United States v. Stock,*
   728 F.3d 287 (3d Cir. 2013).......................................................................... 25

*United States v. Turkette,*
   452 U.S. 576, 583 (1981)............................................................................... 14

*Walters v. McMahen,*
   684 F.3d 435, 440-41 (4th Cir. 2012) ........................................................... 14

*Whitfield v. United States,*
   543 U.S. 209, 213 (2005).............................................................................. 17

**Statutes**

18 U.S.C. § 1343............................................................................................ 16, 19

18 U.S.C. § 1951(a)........................................................................................ 21

18 U.S.C. § 1961(3) ....................................................................................... 14

18 U.S.C. § 1962(a)........................................................................................ *passim*

18 U.S.C. § 1962(b) ....................................................................................... passim

18 U.S.C. § 1964(c)........................................................................................ *passim*

18 U.S.C. § 1962(d) ....................................................................................... 14

18 U.S.C. § 1965(b) ....................................................................................... 13

29 U.S.C. § 530.............................................................................................. 19

N.J.S.A. 2A:64-1 ............................................................................................ 9

Labor Management Recording and Disclosure Act ("LMRDA")............................. *passim*

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. ¶¶ 1961 to 1968.................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 11............................................................... 2

Federal Rile of Civil Procedure 4(k)(1)(A)................................................... 11

Federal Rile of Civil Procedure 8(a)(2)........................................................ 10

Federal Rule of Civil Procedure 12(c) ......................................................... 2, 4

Federal Rule of Civil Procedure 12(b)(6)...................................................... 11

Federal Rule of Civil Procedure 8(a)(2)........................................................ 4

Federal Rule of Civil Procedure 17(b) .......................................................... 9

*See also* Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com, September 9, 2019, https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Jan. 16, 2022) .............................. *passim*

Andy Kroll, *Meet the Undercover Anti-Fascists*, RollingStone.com, https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed Jan. 16, 2022)...................................... 7

*Direct Action Definition*, TheFreeDictionary.com, *The use of immediately effective acts, such as strikes, demonstrations, or sabotage, to achieve a political or social end.* https://www.thefreedictionary.com/direct+action (last visited Jan. 15, 2022) .......................................................................................................... 3

*New Jersey Department of Homeland Security* ("NJDHS") *2019 Terror Threat Assessment, Anarchist Extremist Terrorism Snapshots* ............................................. *passim*

*Philly Antifa Join the Torch Network*, December 26, 2013, torchantifa.org, https://torchantifa.org/philly-antifa-joins-the-torch-network/ (last accessed Jan. 19, 2022) ................................................................................................... 9

Press Release, Department of Justice, *New York Man Sentenced to 24 Months in Prison For Internet Offenses, Including "Doxing," "Swatting," Making False Bomb Threat, and Cyber-Stalking*, (Jul. 11, 2016) (https://www.justice.gov/usao-dc/pr/new-york-man-sentenced-24-months-prison-internet-offenses-including-doxing-swatting).................................................................................................. 6

Phil McCausland, *Twitter suspends verifying accounts after white nationalist gets badge*, NBCNEWS.com, Nov. 9, 2017, https://www.nbcnews.com/news/us-news/twitter-suspends-verifying-accounts-after-white-nationalist-gets-badge-n819491 (last accessed Jan. 21, 2022). *See also* Jill Disis, Twitter suspends blue check mark verifications, CNN.com, Nov. 9, 2017,

https://money.cnn.com/2017/11/09/technology/business/twitter-blue-check-mark-paused/index.html (last accessed Jan. 21, 2022)...................................................... 30

Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, WashingtonPost.com, Jan. 10, 2021, https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed Jan. 16, 2022)................................................................................. 4, 7

Sean Illing, White supremacists are more afraid of us than we are of them, Vox.com, Sep. 1, 2017, https://www.vox.com/2017/9/1/16202908/antifa-charlottesville-alt-right-white-nationalist-protest (last accessed Jan. 16, 2022)........ 4

Spencer S. Hsu, *Former Democratic aide pleads guilty to 'doxing' GOP senators, threatening employee*, WashingtonPost.com Apr. 6, 2019 https://www.washingtonpost.com/local/public-safety/former-democratic-aide-pleads-guilty-to-doxing-gop-senators-threatening-employee/2019/04/05/4a197d1e-57c8-11e9-9136-f8e636f1f6df_story.html (last accessed Jan. 18, 2022) ............................................................. 6

Twitter.com, Help Center, Verified Accounts, About Verified Accounts, https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts.................................................................................................. 28

Victor Fiorillo, *Philly Antifa Activist Tom Keenan Charged in Assault on Marines,* November 26, 2018, *Phillymag.com* https://www.phillymag.com/news/2018/11/26/philly-antifa-tom-keenan-marine-attack/ (last accessed archives Jan. 16, 2022)............................................. 7

United States Department of Homeland Security, *How to Prevent Online Harassment from Doxxing*, (Apr. 2017). https://www.dhs.gov/sites/default/files/publications/How%20to%20Prevent%20Online%20Harrassment%20From%20Doxxing.pdf (last accessed Nov. 30, 2021) .... 6

## INTRODUCTION

In their Second Amended Complaint (hereinafter "SAC") in order to cure jurisdictional deficiencies that the Court cited in its Opinion dated November 1, 2021. (ECF No. 99, Opinion). Plaintiffs named as defendants, John "Nick" Strickland [1] ("Strickland") and Torch Antifa Network ("Torch"), who were unnamed associates in previous filings. Strickland, Torch and Defendant Christian Exoo a/k/a @AntiFashGordon ("Exoo" or "AFG") licitly and illicitly obtained Plaintiffs private information and doxed, dogpiled, and harmed Plaintiffs, whom they perceive to be their enemies.

Strickland is Exoo's associate and a proper defendant in this case. From January 8 to 11, 2019, Exoo Tweeted multiple times that he wanted his "Jersey friends" to "show up and shut down" a purported rally organized by D'Ambly. (ECF N. 103 at 21-23, Second Amended Complaint). At 10:14 a.m. on January 11, 2019, Exoo again told his associates to show up and stop the purported rally. (ECF No. 103 at 22). Strickland is the New Jersey resident, whose phone number (732) 744-4937 was captured at 10:21 a.m., on January 11, 2019, by D'Ambly's former employer's phone messaging system when he called to demand D'Ambly's termination or "any violence or blood spilled is also on your hands." (ECF No. 103 at 24). At 10:43 a.m. Strickland acknowledged the call when he replied to Exoo's Tweet, and that night Strickland went to D'Ambly's home and caused approximately $600 in damage to D'Ambly's vehicle that was parked in his driveway. D'Ambly received a text message from (732) 744-4937 that mocked the damage to his vehicle. (ECF No. 103 at 22-24). Strickland and D'Ambly are complete strangers the only link between them is Exoo's dox.

---

[1] In the caption to the Second Amended Complaint Defendant Strickland's first name was identified as Nick, however, Plaintiffs obtained official government records that show Strickland's first name John and Nick is his middle name. *See* Exhibit A.

Exoo attempted to deflect from his connection to Strickland with the false claim that "by Plaintiffs own admission, they can only guess as to who was responsible" for damaging D'Ambly's car. (ECF No. 118-1 at 29, Exoo's Motion to Dismiss). Plaintiff is certain Strickland is responsible, because Strickland took credit for the damage to D'Ambly's vehicle when he sent a text message that asked "did you guys get there ok?" (ECF No. 103 at 24). There was no way for Strickland to know that D'Ambly or any other complete stranger had transportation problems unless he caused the problem. Moreover, to reconcile whether (732) 744-4937 is Strickland's phone number, it is the same number Strickland provided when he was arrested for domestic violence in Milltown, NJ, Municipal Complaint-Warrant W-2021-000044-1212, issued on August 6, 2021.

W-2021-000044-1212   08/08/2021   05:33:23 PM   Pg 1 of 10   Trans ID: MCS2021860939

| COMPLAINT - WARRANT | |
|---|---|
| **COMPLAINT NUMBER** | *THE STATE OF NEW JERSEY* |

| 1212 | W | 2021 | 000044 | *THE STATE OF NEW JERSEY* |
|---|---|---|---|---|
| COURT CODE | PREFIX | YEAR | SEQUENCE NO. | *VS.* |

*VS.*
JOHN N STRICKLAND

MILLTOWN BORO MUNICIPAL COURT
39 WASHINGTON AVE
MILLTOWN                    NJ 08850-0000
732-247-3936 COUNTY OF: MIDDLESEX

ADDRESS:   82 KUHLTHAU AVENUE

MILLTOWN                    NJ 08850-0000

| # of CHARGES 4 | CO-DEFTS | POLICE CASE #: 21-008523 | DEFENDANT INFORMATION |
|---|---|---|---|
| COMPLAINANT NAME: SGT     C DELORENZO          39 WASHINGTON AVE          MILLTOWN          NJ 08850 | | | SEX: M   EYE COLOR: BLUE          DOB: 01/28/1977 DRIVER'S LIC #: S83584077501774          DL STATE: NJ SOCIAL SECURITY #: xxx-xx-X437          SBI #: TELEPHONE #: 732-744-4937   (C) LIVESCAN PCN #: |

Torch is a New Jersey based antifa network that has chapters in several states and cities and its members have committed acts of direct action[2] against Plaintiffs. (ECF No. 103 at 11, 22-23, 29-48). Exoo and associates are inspired to dox by their mentor Daryle Lamont Jenkins ("Jenkins") a New Jersey resident, who has been described as the "father" of doxing.[3] Jenkins

---

[2] *Direct Action Definition*, TheFreeDictionary.com, *The use of immediately effective acts, such as strikes, demonstrations, or sabotage, to achieve a political or social end.* https://www.thefreedictionary.com/direct+action (last visited Jan. 15, 2022).

[3] Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, WashingtonPost.com, Jan. 10, 2021, https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed Jan. 16, 2022).

has stated that his inspiration for doxing people he identifies as white supremacists came from anti-abortion activists of the late 1980's and 1990's.[4]  Jenkins' take on doxing is "that you have to be aggressive…they [white supremacists] know we can cause more damage to them than they can cause to us."[5]

Jenkins is a founding member of Torch and founder of One People's Project, an IRS 501(c)(3) non-profit organization based in New Brunswick that.  One People's Project is the registered owner and administrator of Torch's website *torchantifa.org*.  Torch members are responsible for causing approximately $600 in property damage to Plaintiffs Zachary Rehl ("ZRehl"), Amanda Rehl ("ARehl") and K.R.'s home on November 17, 2018, when they threw a brick through the front window of their home and vandalized it with graffiti.  (ECF No. 103 at 28-33).  Moreover, on November 18, 2018, Torch members attacked two Marines in an attempt to disrupt a "We the People" rally organized by ZRehl.

For purely prejudicial purposes, Exoo introduced salacious claims concerning unrelated parties, unrelated events, and information that is not integral to or relied upon in the complaint. Perhaps he is buoyed by the February 4, 2021, Telephone Status Conference that was held to discuss Defendant Tribune Publishing Company and New York Daily News' request for leave to file a motion for summary judgment, wherein, Exoo's characterization of D'Ambly as a white supremacist was accepted as fact and Exoo's conduct was not probed.  *Transcript of Telephone Status Conference of Tribune Publishing Company and New York Daily News*' request for leave to file a motion for summary judgment at 6-21, (Feb. 4, 2021).

---

[4] *Id.  See also* Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com, September 9, 2019, https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Jan. 16, 2022).
[5] Sean Illing, White supremacists are more afraid of us than we are of them, Vox.com, Sep. 1, 2017, https://www.vox.com/2017/9/1/16202908/antifa-charlottesville-alt-right-white-nationalist-protest (last accessed Jan. 16, 2022).

In his moving papers, Exoo relies on half-truths and misleading statements to rationalize his conduct.  Briefly, Exoo falsely claimed that Plaintiffs "failed to dispute" his claims that they are fascists and white supremacists.  (ECF No. 118-1 at 2).  But this is patently false.  In their brief in support of their opposition to Exoo's Motion to Dismiss First Amended Complaint, Plaintiffs disputed this claim when they stated ***"As a matter of first business, in the strongest sense possible, Plaintiffs and counsel for Plaintiffs, fiercely oppose Defendant Exoo's characterization of Plaintiffs as white supremacists, fascists, and Nazi's."***  (ECF No. 83 at 2).

Here, Plaintiffs' re-assert that they are not now white supremacists, Nazis, or fascists, and have never been.  As for Exoo's reliance on the *New Jersey Department of Homeland Security* ("NJDHS") *2019 Terror Threat Assessment* to paint Plaintiffs as white supremacists, Plaintiffs counter by stating the very same NJDHS *2019 Terror Threat Assessment* identifies antifa as domestic terrorist anarchist extremists.  (ECF No. 118-17 at 19).   In addition to the anarchist extremist designation, NJDHS *2019 Terror Threat Assessment*, supplement that *Anarchist Extremists Terrorism Snapshot,* identifies Torch members as the perpetrators of the violent assault and bias crime against two Marines to disrupt the "We the People" rally in Philadelphia. *See* Exhibit A, *New Jersey Department of Homeland Security*, *Anarchist Extremists, 2019 Terrorism Snapshots*.

Exoo and Torch are prolific doxers, and all doxes are embedded instructions to commence dogpiling Tweets, emails, phone calls, social media posts.  Dogpiling is a form of harassment conducted by a large number of people against one person.  Direct action is physical attacks against persons and/or property.  The Department of Justice defines doxing as "the act of gathering, by licit and illicit means, and posting on the internet personal identifying information ("PII") and other sensitive information about an individual," that "endanger[s] the safety of many

others" by enabling "harassers and assailants" to "know how and where to contact victims." Press Release, Department of Justice, *New York Man Sentenced to 24 Months in Prison For Internet Offenses, Including "Doxing," "Swatting," Making False Bomb Threat, and Cyber-Stalking*. (Jul. 11, 2016) (https://www.justice.gov/usao-dc/pr/new-york-man-sentenced-24-months-prison-internet-offenses-including-doxing-swatting). The United States Department of Homeland Security ("DHS") similarly defines doxing as "gathering an individual's Personally Identifiable Information (PII) and disclosing or posting it publicly, usually for malicious purposes such as public humiliation, stalking, identity theft, or targeting an individual for harassment."[6] Moreover, a former aide in the office of Democratic Senator Maggie Hassan was sentenced to four years in prison for doxing five Republican senators by "anonymously editing their Wikipedia pages to add phone numbers and home addresses."[7] *United States v. Jackson A. Cosko*, No. 1:18-mj-00121-DAR (D.D.C. filed Oct. 3, 2018).

Yet, throughout his papers, Exoo struggles to portray himself and his associates as non-violent good guys in a struggle against evil, but Plaintiffs produced evidence of Exoo and associates violent acts against them, and not the other way. For instance, Torch members threw a brick through the front window of Zach Rehl's home, and as widely reported in the media and documented by the NJDHS' *2019 Terrorist Threat Assessment*, Torch members assaulted two Marines to disrupt ZRehl's "We the People Rally."[8] (ECF No. 103 at 29-33). And after Exoo

---

[6] United States Department of Homeland Security, *How to Prevent Online Harassment from Doxxing*, (Apr. 2017). https://www.dhs.gov/sites/default/files/publications/How%20to%20Prevent%20Online%20Harassment%20From%20Doxxing.pdf. (last accessed Nov. 30, 2021).
[7] Spencer S. Hsu, *Former Democratic aide pleads guilty to 'doxing' GOP senators, threatening employee*, WashingtonPost.com Apr. 6, 2019 https://www.washingtonpost.com/local/public-safety/former-democratic-aide-pleads-guilty-to-doxing-gop-senators-threatening-employee/2019/04/05/4a197d1e-57c8-11e9-9136-f8e636f1f6df_story.html(last accessed Jan. 18, 2022).
[8] Victor Fiorillo, *Philly Antifa Activist Tom Keenan Charged in Assault on Marines,* November 26, 2018, *Phillymag.com* https://www.phillymag.com/news/2018/11/26/philly-antifa-tom-keenan-marine-attack/ (last accessed archives Jan. 16, 2022)

and Torch simultaneously doxed Plaintiff Sean-Michael David Scott ("Scott"), Torch members spray-painted his home and vandalized his apartment building, which caused Scott's eviction by his property manager, who was fearful of continued attacks. (ECF No. 103 at 44-45). Exoo did not challenge these allegations.

Exoo, who has gained a level of infamy as a result of doxing tries to have it both ways. On the one hand, he basks in his infamy that gets him featured in prominent publications, wherein he was feted for doxing fascists and anointed the leader of an army of antifa doxers and fascist fighters. In the *Washington Post*, Exoo stated his intention was to cause people harm, because "these people need consequences"[9] and in the *Rolling Stone* magazine he stated "we fight police. The police are absolutely a white supremacist institution."[10] But on the other hand, Exoo expects the Court to believe he is not connected to Torch or associates, because followers with mutual interests does not prove a common purpose. (ECF No. 118-1 at 17-18, 25-29). Exoo's argument that associates do not follow his orders or that he has no influence fails. Exoo routinely acknowledges controlling and directing his associates, when he thanks them for calling, and demands that they "keep calling" and "give them a call" and "here's what you can do for me" and "show up and shut down." (ECF No. 103 at 14, 19, 20, 21). Moreover, Exoo has admitted to working with "whole affinity group of people sharing intel with me" to dox people.[11]

In Exoo's perverted logic, labeling Plaintiffs white supremacists and Nazis satisfies his burden of proving Plaintiffs are not entitled to relief. To do so the Court must ignore admissions

---

[9] Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, WashingtonPost.com, Jan. 10, 2021, https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed Jan. 16, 2022).
[10] Andy Kroll, *Meet the Undercover Anti-Fascists*, RollingStone.com, https://www.rollingstone.com/politics/politics-features/antifa-proud-boys-militia-trump-insurrection-1121933/ (last accessed Jan. 16, 2022).
[11] Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com, September 9, 2019, https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Jan. 16, 2022).

from former associates, who described @AntiFashGordon as the public face of a "vast underground network" of doxers and other associates who admitted they were paid by Exoo to licitly or illicitly obtain confidential information of people to dox. (ECF No. 103 at 4-5). Moreover, the Court must ignore Torch's incriminating admission that they doxed people with Exoo. (ECF No. 103 at 5).

## I.   THE NEW JERSEY DEPARTMENT OF HOMELAND SECURITY IDENTIFIES ANTIFA AS ANARCHIST EXTREMIST DOMESTIC TERRORISTS ~~AND EXOO AND TORCH IDENTIFY AS ANTIFA~~

The New Jersey Department of Homeland Security ("NJDHS") identifies antifa as anarchist extremist domestic terrorists, who "condone[s] violence and the use of force" to "carry out criminal and violent acts" against their "perceived enemies" and "advocate violence in furtherance" of "their respective agendas." *See* Exhibit A, and below.

 

# ANARCHIST EXTREMISTS

### Background

- Anarchism is the belief that society should exist absent of "oppressive" governments, laws, police, or any other authority. Anarchist extremists advocate violence in furtherance of this idea, typically focusing on sub-movements such as anti-racism, anti-capitalism, anti-globalism, and environmental extremism.

- Anarchist extremists, or those subscribing to the ideology that condones violence and the use of force, do not have a central leadership and lack organizational hierarchy. These extremists are even often take advantage of otherwise legal protests to conduct violent counter-protests, destroy public and private property, and attack law enforcement.

- Common attack targets, chosen for their symbols of capitalism and government, include commercial infrastructure and the financial sector. Vandalism and arson are the most common attack types.

- A majority of New Jersey-based anarchist extremists are affiliated with Antifa and focus on issues of racism, immigration, and other perceived social injustices. There are three loosely organized chapters in New Jersey, known as North Jersey Antifa, South Jersey Antifa, and HubCity Antifa based in New Brunswick (Middlesex County).

 

*Anarchist extremist propaganda targeting the alt-right movement*   *Anarchist extremist slogans found in Princeton (Mercer County) in January*

### Additional Resources

2019 Terrorism Threat Assessment

### Threat to New Jersey: Moderate

*Anarchist extremists will mobilize in response to issues they believe are unjust, carry out criminal and violent acts during otherwise First Amendment-protected event and protests, and target perceived enemies.* Throughout 2018, anarchist extremists were actively engaged in criminal activities in the tri-state region, resulting in at least 20 arrests.

- In November, several hundred people, including a number of anarchist extremists, mobilized at the "We the People" rally in Philadelphia, which they perceived as a white supremacist event. That same month, an Antifa-related group, Smash Racism DC, vandalized and protested outside the home of the founder of the Daily Caller, stating that he was "promoting hate" and "an ideology that has led to thousands of people dying."

- Following the "We the People" rally in Philadelphia in November, a group of individuals, including anarchist extremists, Maced, punched, and kicked US Marine Corps reservists not affiliated with the event while calling them "Nazis" and "white supremacists." In October, anarchist extremists protested outside a Proud Boys event in New York City and engaged in acts of vandalism. After the event, one of the anarchist extremists threw a bottle at the Proud Boys, resulting in a fight.

- In June, a Nebraska-based anarchist extremist group tweeted a link to the names and photos of nearly 1,600 Immigration and Customs Enforcement (ICE) officials. Following the release, another individual disseminated the names, pictures, and home addresses of seven ICE employees and their spouses in Oregon, stating, "It's the public's right to know the faces of the gestapo and who is creating, enforcing, and filling concentration camps in our name."

  

*Thomas Keenan, Thomas Massey, and Joseph Aicoff (pictured from left, anarchist extremists charged with assaulting military service members in Philadelphia in November*

### ANTIFA

Antifa, or anti-fascists, is a movement that focuses on issues involving racism, sexism, and anti-Semitism, as well as other perceived injustices. The majority of Antifa members do not promote or endorse violence; however, the movement consists of anarchist extremists and other individuals who seek to carry out acts of violence in order to forward their respective agendas.



Anarchist extremists use the circle-A as one of their primary symbols. "A" represents "anarchism," while "O" stands for "order." Together, the letters mean "society seeks order in anarchy," which stems from 19th century French literature.



The red flag was one of the first anarchist symbols, used until the 1917 October Revolution in Russia when it became primarily associated with communist ideologies.



Since the late 19th century, anarchist groups have used the black flag as a rejection of the concept of representation or the idea that an institution can adequately represent a group of individuals.



Antifa consists of individuals who adhere to some form of the far-left school of thought, encompassing communists, anarchists, socialist groups, and others. Red and black flags flying together represents coming together against a perceived enemy.

*Information cutoff: February 6, 2019*                   UNCLASSIFIED

Exoo mistakenly claimed Plaintiffs failed to "draw any plausible connection between Torch and any events alleged in the SAC." (ECF No. 118-1 at 17, 29). Torch is an unincorporated association based in New Jersey comprised of chapters located in several states. (ECF No. 103 at 11). They are connected to New Jersey via state law, which says "any unincorporated organization or association, consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights, and liabilities." N.J.S.A. 2A:64-1. And Fed. R. Civ. P. 17(b) that says state law shall determine the capacity of unincorporated associations to be sued. Thomas Keenan one of the persons arrested for the mob attack of the Marines is the leader of Philly Antifa. (ECF No. 103 at 30-32). Philly Antifa has been a Torch Antifa Network member since 2013.[12]



*Concerning AntiFash Gordon: A Statement in Solidarity with the Victims of Abuse*, published on

---

[12] *Philly Antifa Join the Torch Network*, December 26, 2013, torchantifa.org, https://torchantifa.org/philly-antifa-joins-the-torch-network/ (last accessed Jan. 19, 2022).

or about April 9, 2021, wherein they acknowledged that prior to the publication of that statement they had worked with Exoo to conduct the activities described in the SAC. (ECF No. 103 at 4-5). Torch's statement is the statement of co-defendant and Exoo does not deny he worked with Torch, his defense to allegations he worked with Torch, is that Torch doesn't like me. (ECF No. 118-1 at 17, 25). Further, Exoo did not deny Keenan is a Torch member or put forth information that disproves Keenan's affiliation with Philly Antifa and Torch. Exoo's sole defense is that Plaintiffs' factual assertions supported by contemporaneous news reports of the arrests of Keenan, and Torch members Thomas Massey, and Joseph Alcoff for their assault of two Marines is that Plaintiffs "ascribe[s] conduct" to Torch. (ECF No. 118-1 at 16-18).

## II.   LEGAL STANDARDS FOR RULE 12(b)(6) AND 12(b)(2)

Under *Rule 8(a)(2)*, the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The "courts are not required to accept merely conclusory factual allegations or legal assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). However, the court "still must accept as true all plausible allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." *Twombly*, 550 U.S. at 555. A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency. *In re Asbestos Prods. Liab. Litig (No. VI)*, 822 F.3d 125, 133-34 (3d Cir. 2016). A court's reliance on facts alleged outside the complaint may "constitute a procedural error under Rule 12(b)(6)." *Id.*

The moving party bears the burden of showing Plaintiff has not adequately pled a claim for relief. *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016). The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). RICO "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery." *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

A.   **The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction**

The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d. Cir. 2004). Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given to them" and "only the clearest of justifications will warrant dismissal." *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 122 (3d Cir. 2020).

Federal Rule of Civil Procedure 4(k)(1)(A) "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located." Here, Strickland is a resident of the State of New Jersey and subject to the jurisdiction of a court of general jurisdiction within the State of New Jersey. Torch is an

unincorporated association subject to jurisdiction in the state where any of its members are located and Torch's website *torchantifa.org*, is registered by One People's Project, an IRS 501(c)(3) based in New Brunswick, New Jersey.

New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Miller Yacht*, 384 F.3d. at 96. Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts with the forum can create specific jurisdiction in two ways. *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998). First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007). Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident." *O'Connor*, 496 F.3d at 317-318 (jurisdiction was proper over defendant that mailed brochures to plaintiff in Pennsylvania after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa).

Furthermore, the District Court has statutory personal jurisdiction under *18 U.S.C. § 1965(b)* (2018), which provides for "nationwide service of process and jurisdiction over other

parties not residing in the district, who may be additional defendants of any kind, including co-defendants, third-party defendants, or additional counter-claim defendants." *Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020) (internal quotations omitted). When a federal statute provides for nationwide service of process, it becomes the "statutory basis for personal jurisdiction." *Id.* at 117. The federal RICO statute is one such federal statute that "includes a specific provision." *Id*. at 113. Jurisdiction is proper in any "district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Id.* at 118. In instances "where Congress has spoken by authorizing nationwide service of process… jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).

### III.   PLAINTIFFS HAVE PLEAD SUFFICIENT FACTS TO ESTABLISH LIABILITY FOR RICO VIOLATIONS

The civil component of the *Racketeer Influenced and Corrupt Organizations Act* ("RICO"), 18 U.S.C. ¶¶ 1961 to 1968 allows for a private right of action when a person suffers and injury to their business or property by reason of a defendant's violation of RICO. 18 U.S.C. § 1964(c). The § 1964(c) injury element is "satisfied by allegations and proof of actual monetary loss, i.e., out-of-pocket loss." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). In a RICO complaint the plaintiff must prove: (1) a violation of an § 1962 act; (2) injury to business or property; and (3) that the defendant caused the injury. Courts have rejected the notion that civil RICO complaints are only applicable to traditional organized crime families. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 243-49 (1989). The basic elements of a RICO claim are a culpable person, a pattern of racketeering activity, requisite mens rea, and an effect on interstate commerce.

A culpable person is an individual or entity capable of holding legal or beneficial interest in property. 18 U.S.C. § 1961(3). RICO liability is premised on criminal violations; therefore, Plaintiffs must prove that defendants intended to engage in the conduct with actual knowledge that it was illegal. *Walters v. McMahen*, 684 F.3d 435, 440-41 (4th Cir. 2012). The RICO claims must have some nexus to or otherwise affect interstate or foreign commerce. 18 U.S.C. § 1962(a). Defendants must have participated in a pattern of racketeering activities in violation of federal and state crimes. 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering activity." *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir. 1995). Racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488-93 (1985).

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact. *Boyle v. United States*, 556 U.S. 938, 943-44 (2009). An "association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 946. In an association-in-fact enterprise, "each person" who associates in fact may be held liable under RICO. *United States v. Turkette*, 452 U.S 576, 583 (1981). In *Boyle*, a core group of individuals conspired to rob bank night deposit boxes over the course of several years, the Court stated that the robbers advance planning and coordination was key to finding an association-in-fact enterprise existed. *Boyle*, 556 U.S. at 947 n. 4.

To bring a private action under *§ 1964(c)* Plaintiff must establish that they have been injured in their person or business. The RICO injury requirement is met "by evidence of injury to plaintiff's business or property." *Northeast Women's Center, Inc. v. McMonagle*, 862 F.2d 1342, 1349 (3d Cir. 1989). In *McMonagle*, Plaintiffs satisfied the injury requirement when

defendant anti-abortion protesters entered the premises of an abortion provider and caused $887 in damages to medical equipment.  *Id.*  Plaintiffs satisfy the RICO injury, by looking to D'Ambly's approximate $600 in damages to property caused by Strickland on or about January 11, 2019, and Torch caused approximately $600 in damages to Scott's property on or about April 15, 2020, and ZRehl sustained approximately $500 in damage to his property when Torch members threw a brick through the windows of his home and painted it with graffiti on November 17, 2018.  (ECF No. 103 at 24, 29, 45).

### A.  Conspiracy to Violate 18 U.S.C. § 1962(d)

A conspiracy claim under 18 U.S.C. § 1962(d) can proceed even if the claims under another section of section 1962 are dismissed.  *Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001); To establish liability for a *§ 1962(d)* claim Plaintiffs must allege an agreement to participate and that the defendant: (1) agreed to facilitate the operation of an enterprise through a pattern of racketeering activity; and (2) that defendant agreed that someone would commit at least two predicate acts.  *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).   In *Salinas*, the Supreme Court averred that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."  *United States v. Salinas*, 522 U.S. 52, 63 (1997). The Supreme Court declared RICO conspiracy is "unlike the general conspiracy provision applicable to federal crimes," it "is even more comprehensive than the general conspiracy offense," because it does not require proof of an overt act.  *Id.*  A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other."  *Id.* at 63-64.

The Third Circuit has held that the broad application of *§ 1962(d)* extends liability beyond those who have conspired personally to operate or manage a corrupt enterprise to those who are liable for a § 1962 violation on successful completion of the scheme. *Smith*, 247 F.3d at 534 (3d Cir. 2001). In *Smith*, the court emphasized that "one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators, which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, any particular element." *Id.* at 537. Accordingly, liability for a RICO conspiracy may be found where the conspirator intended to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *United States v. Fattah*, 914 F.3d 112, 162 (3d Cir. 2019) (quoting Salinas 522 U.S. at 65). To bring an action under *§ 1962(d)* Plaintiffs must show that they were injured "from an act that is analogous to an act of a tortious character…that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). However, the Supreme Court has not decided whether "a RICO conspiracy must allege an actionable violation under §§ 1962(a)-(c), or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury." *Beck*, 529 U.S. at 506 n. 10.

## B.  Wire Fraud as A Predicate Act Under § 1962(D)

The elements of wire fraud, 18 U.S.C. § 1343 are that a defendant: (1) knowingly devised a scheme or artifice to defraud for the purpose of obtaining money or property; (2) participation with the specific intent to defraud (cause some loss to someone); and (3) use of the mails or wire transmissions in furtherance of the scheme. *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012).

To establish standing to bring a *§ 1962(d)* conspiracy claim a plaintiff person must show that he was injured by an overt act in furtherance of the conspiracy, because "it is possible that a predicate act of racketeering that *directly* caused a plaintiff to lose his job could create civil RICO standing." *Anderson v. Ayling*, 396 F.3d 265, 269-270 (3d Cir. 2005).  Furthermore, liability for attempt to commit wire fraud under *18 U.S.C. § 1349,* does not require completion of an overt act, "[a]ny person who attempts or conspires to commit" wire fraud "shall be subject to the same penalties as those proscribed for the offense the commission of which was the object of the conspiracy." *Whitfield v. United States*, 543 U.S. 209, 213 (2005).

Pursuant to Federal Rule of Civil Procedure 9(b), a party who alleges fraud "must state with particularity the circumstances constituting fraud or mistake…and state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged" and "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918-19 (3d Cir. 2018).

RICO actions have proceeded when the financial loss suffered was an intangible property interest.  The Third Circuit found a RICO violation for a business injured when its competitor for a contract to supply airplane parts and equipment to a foreign government secured the contract by bribing a foreign official to secure a contract. *Envtl. Tectonics v. W.S. Kirkpatrick, Inc*., 847 F.2d 1052, 1067 (3d Cir. 1988).  The Second Circuit found that a company could sue a competitor for lost profits, when the competitor employed illegal aliens, which enabled the competitor to submit lower bids. *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380-84 (D. Ct. 2001).  The Fifth Circuit reversed a dismissal of RICO claims that were brought against a business that spread rumors about its competitor in order to lure its

customers. *Procter & Gamble, Co. v. Amway Corp.*, 242 F.3d 539, 542 (5th Cir. 2001). A telecommunications firm sustained RICO claims against its competitor based on damage to its business reputation that was caused by the competitors smear campaign. *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988). Exoo admits that his intention is to cause financial harm to his targets, his Twitter caption states "I get people de-homed, fired, kicked out of school, etc.," and because these people need consequences. Here, Exoo caused Plaintiffs to suffer pecuniary harm to person and business by leveraging doxing and dogpiling to cause reputational and business harms analogous to the reputational harm cases above.

Plaintiffs have put forth specific dates that Exoo, used the wires, specifically Twitter in interstate communications to knowingly make fraudulent statements and misrepresentations to injured Plaintiffs in their business and property. For instance, to cause D'Ambly to suffer the loss of the intangible property rights conferred by his union contract, on October 29, 2018, Exoo falsely claimed that D'Ambly operated and/or produced of YouTube channel "Jersey Goyz 14." (ECF No. 118-7 at 14; ECF No. 79-5 at 13). Exoo repeated this false statements to Insite Risk Management ("Insite") the private investigation firm hired by D'Ambly's former employer to investigate his background, and Insite repeated the statements within their Private Investigation Report that was transmitted to Daily News. Exoo has not produced evidence that proves D'Ambly produced, operated, or controlled Jersey Goyz 14 YouTube Channel.

On November 18, 2019, Exoo stated that Plaintiff Aaron Wolkind ("Wolkind"), is a member of a Nazi group, who recently dropped an antisemitic banner targeting an orthodox [Jewish] community in NYC." (ECF No. 118-9 at 10; ECF No. 79-7 at 10). Exoo's claim that Wolkind is antisemitic is preposterous, because Wolkind is Jewish. (ECF No. 66 at 21; ECF No. 103 at 33).

On November 14, 2018, to incite Torch and others to disrupt ZRehl's "We the People" rally, Exoo posted ZRehl was a Nazi and included images of groups and persons that had no connection to ZRehl to portray ZRehl as a Nazi.  (ECF No. 118-10; Exoo 79-8).  On November 29, 2018, in order to injure Plaintiff Steve Hartley ("Hartley") in his business, Exoo doxed Hartley, called him a Nazi and included antisemitic imagery that was published by other persons that Hartley did not participate in creating or distributing.  (ECF No. 118-11; ECF No. 79-9). Hartley's home address was doxed and Torch members went to his house and damaged Hartley's home.  (ECF No. 103 at 38).

On July 1, 2019, Exoo targeted Plaintiff Jobel Barbosa ("Barbosa') and painted him a white supremacist, who committed bias crimes against gay people by attending the Philadelphia Pride parade in an "attempt to intimidate LGBTQIA attendees," and "in a specific attempt to intimidate the LGBTQIA community."  (ECF No. 118-14 at 3, 8; ECF No. 79-12 at 3, 8).  As with all his doxes Exoo included photos, and news reports of violence against the gay community, but none of this information was connected to Barbosa.  Firstly, Exoo has not produced evidence that Barbosa did anything to harm or attempt to harm the LGBTQIA community.  Moreover, Barbosa attended the Philadelphia Pride parade with his family in support of gay family members and friends.  Secondly, as seen in the photographs that Exoo posted, Barbosa is an olive-skinned Puerto Rican, but Exoo knowingly transmitted fraudulent statements that he was a white supremacists in order to harm Barbosa property and business.

On January 1, 2020, Exoo violated 18 U.S.C. § 1343 when he transmitted knowingly false statements that Plaintiff John Hugo ("Hugo") was a Nazi and white supremacist in order to incite dogpiling to injure Hugo in his business.  (ECF No. 118-15).  In Hugo's dox, Exoo inserted Hugo's employer's contact information and above that photos of unrelated persons,

graphics, and references to groups not connected to Hugo to proclaim Hugo was anti-LGBTQIA

hate group leader.  (ECF No. 118-15 at 11).  There is no evidence to support Exoo's claims that

Hugo is a leader of a hate group or that he holds anti-LGBTQIA opinions.  The doxes Exoo

transmitted and distributed contain knowingly false and fraudulent statements and

misrepresentations intended to cause injury to Plaintiffs in their business or property.

### C. D'Ambly's LMRDA Rights as A Union Member Were Extorted Through Numerous Violations of 29 U.S.C. § 530 – A RICO Predicate

Exoo and associates committed numerous violations of 29 U.S.C. § 530 in order to

deprive D'Ambly of the rights of a union member guaranteed by the Labor Management

Reporting and Disclosure Act ("LMRDA").  (ECF No. 103 at 17-25).  Under *Section 530* of the

Labor Management Reporting and Disclosure Act ("LMRDA") it is:

> unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter

29 U.S.C. § 530

The Third Circuit has concluded that union members "intangible property right to

democratic participation in the affairs of their union is properly considered extortable property

for purposes of the Hobbs Act." *United States v. Local 560 of Int'l Bhd. of Teamsters*, 780 F.2d

267, 282 (3d Cir. 1985).  Further, the Third Circuit has concluded that extortion of union

member's rights guaranteed by the LMRDA "constituted predicate acts for purposes of section

1962(b) of the RICO Act." *United States v. Local 560*, 550 F.Supp. 511 (D.N.J. 1982).  The

courts have further held "that the extortion of one's LMRDA rights satisfies the predicate act

requirement of a RICO claim." *O'Rourke v. Crosley*, 847 F. Supp. 1208, 1213 (D.N.J. 1994).

The Hobbs Act, 18 U.S.C. § 1951(a) "applies not only to completed extortions, but to attempted

extortions and conspiracies to commit extortion as well." *Northeast Women's Center, Inc. v. McMonagle*, 670 F.Supp. 1300, 1307 (E.D. Pa. 1987). Section "1962(c) requires only that the Plaintiff[s] suffer damages from the predicate acts themselves, and not from the fact that the acts were performed as part of the conduct of an enterprise." *Local 560*, 780 F.2d at 295 n. 37.

A union membership guaranteed by the LMRDA creates intangible property rights on the grounds that such rights constitute a "source or element of wealth" because members secure financial benefits through collective bargaining, and corrupt deprivation of these rights may cause union members economic deprivation through loss of livelihood or reduced benefits. *US v. Gotti*, 459 F.3d 296, 320-321 (2d Cir. 2006). In *Local 560*, due to threats against the union members, extortionists were "unlawfully participating, directly and indirectly, in the conduct of Local 560's affairs." *Id.* at 270. The extortionists' relied on the "wrongful use of actual and threatened force, violence and fear of physical and economic injury" to create a "climate of intimidation" that "induced the members thereof to consent to the surrender of certain valuable property in the form of their union rights" guaranteed by the LMRDA." *Id.* at 271.

The conduct of Exoo and his associates that caused D'Ambly's termination and union expulsion is analogous to *O'Rourke v. Crosley*, where a union member filed a RICO complaint against the union's business manager and business agent, who threatened him to force his resignation. *O'Rourke*, 847 F.Supp. at 1211. The court found RICO liability against the union business agent Lowry, because he referred O'Rourke to a union job, but told him they did not approve of him working the job, because "another company at the construction site was being picketed." *Id.* at 1215. Because O'Rourke continued working Lowry came to the jobsite with other union members and "shouted abuses…harassed and intimidated Lowry" and "urged that plaintiff should be laid off" and also threatened the union company's "superintendent into

terminating plaintiff's employment." *Id.* The court found Lowry's threats "sufficient to state a claim under the Hobbs Act," because the threats "satisfy the elements as articulated in Local 560—namely, inducement to part with property, wrongful use of fear." *Id.*

As in *Local 560* and *O'Rourke*, Exoo and associates committed numerous acts in violation of 29 U.S.C. § 530 that threatened violence and created fear of economic injury to the Daily News, and Teamsters, which wrongful use of fear was leveraged to cause the inducement of the loss of D'Ambly's property. On October 29, 2018, Exoo and his associates commenced a campaign of threatened violence and intimidation directed at the Daily News and Teamsters in order to deprive induce the deprivation of D'Ambly rights as a union member. The Teamsters reacted to these threats and elected Teamster Joint Council 16 Trustee Bernadette Kelly communicated her agreement that D'Ambly must be expelled as seen below. The BKelly in the thumbnail on the left is Bernadette Kelly, who publishes Twitter account @TeamsterNYC.



From Exoo's initial dox of D'Ambly until he was terminated, fear of "counter attacks by antifa" controlled the Daily News and Teamsters. The acts committed in violation of 29 U.S.C. § 530 against D'Ambly under 29 U.S.C. § 530 are RICO predicates pursuant to § 1962(b).

## IV.    EXOO HAS NOT PRODUCED ANY EVIDENCE THAT SUPPORTS HIS FRAUDULENT STATEMENTS AND MISREPRESENTATIONS

Exoo published and distributed knowingly false and fraudulent statements and misrepresentations intended to injure Plaintiffs in their business and property. In his moving papers Exoo did not produce evidence to support his fraudulent statements and misrepresentations, instead he reproduced his doxes of Plaintiffs. Exoo's inability to produce evidence in support of his claims does not comport with his argument that his statements are an absolute defense, because they are truthful. (ECF No. 118-1 at 32). Further, Exoo's failure to produce supporting evidence is illuminating of his deception, because Exoo has stated that he maintains dossiers on his perceived enemies to be published if/when the need arises.

In September 2019, Exoo claimed in an interview posted to *Medium.com*, that he compiled a "vast stockpile of dossiers, organized by affiliation and city, each with a collection of personal photos and screengrabs of incendiary posts. They'd be saved until a given target did something that warranted the publicity." *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com, https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95. This case presents such a time that warranted publicity, but Exoo produced nothing, which is strange considering this is an opportunity harm fascists, white supremacists, and Nazi's.

Moreover, in his motion to dismiss, Exoo claims that Plaintiffs' claims for tortious interference must be dismissed, because Plaintiffs "failed to allege that what was said of him was untruthful and for failing to allege the element of improper activity." (ECF No. 118-1 at 32). This statement is false. Exoo is mistaken or purposely misrepresenting the facts. In their opposition to Exoo's Motion to Dismiss First Amended Complaint, Plaintiffs affirmatively denied that they were fascists, Nazis, and white supremacists, when they said ***"As a matter of first business, in the strongest sense possible, Plaintiffs and counsel for Plaintiffs, fiercely oppose Defendant Exoo's characterization of Plaintiffs as white supremacists, fascists, and***

*Nazi's."* (ECF No. 83 at 2). Plaintiffs denied Exoo's claims, the burden is on Exoo to produce evidence that proves the truthfulness of his statements.

Exoo put forth no information that supports his argument that his statements are truthful defenses to Plaintiffs claims for tortious interference, instead he relies on his own fraudulent statements that are tainted by his inclusion of unrelated information about unrelated persons. (ECF No 118-1 at 32-34). Plaintiffs demand for production of evidence that supports his position does not place an unreasonable burden on Exoo, because he has a "vast stockpile of dossiers" that can be deployed at a moment's notice when the need arises. Moreover, Exoo claims he is guided by the rule "don't pass information if you can't confirm it." *Medium.com*.

**V.    THIS CASE DOES NOT IMPLICATE THE FIRST AMENDMENT**

The First Amendment does not protect "practices which imperil public safety, peace, or order," the "First Amendment does not offer a sanctuary for violators." *Northeast Women's Center, Inc. v. McMonagle*, 862 R.2d 1342, 1348-49 (3d Cir. 1989). Exoo cheapens the struggle of the Civil Rights Era by likening civil rights cases with doxing. (ECF No. 118-1 at 37-39). Exoo attempts to justify his conduct by incorrectly couching his conduct as a matter of public concern, because in his opinion Plaintiffs are members of "dangerous extremist groups." (ECF No. 118-1 at 38). As Plaintiffs identified above, Exoo is an anarchist extremist domestic terrorist. *See* Exhibit A, *2019 Anarchist Extremists Terrorism Snapshot*.



AntiFash Gordon
@AntiFashGordon

Replying to @RepDaveWilliams

hello, yes, i am antifa and this is super fake, would you like to enroll in one of our literacy programs

1:56 AM · Jun 7, 2020 · Twitter for iPhone

Exoo seeks shelter by stating doxing is political speech, but doxing is not political speech, it is universally accepted as violent conduct that does not meet the definition of political speech.  Political speech is "interactive communication concerning political change." *Meyer v. Grant*, 486 U.S. 414, 422 (1988).  It "includes, among other things, speech uttered during a campaign for political office," *Eu v. San Francisco Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989), and "discussion of public issues and debate on the qualifications of candidates," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976).  *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 414-15 (2016).  Political speech includes "advocacy of political reform, handing out leaflets in the advocacy of a politically controversial viewpoint, persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and speech designed to influence referendum issues." *Id.* at 415.

Whether a "speaker's language constitutes a threat is a matter to be decided by the trier of fact." *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991).  The determination of whether a threat constitutes a "true threat" is ultimately a "matter to be decided by the trier of fact." *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000).  It is a matter of well settled law that whether a true threat exists is determined by the "context and totality of a communication to determine whether it constitutes a true threat outside the protection of the First Amendment." *United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009).  Whether a jury could conclude something was a threat is "based on a consideration of the alleged statement as a whole, and in the context in which it was made." *United States v. Stock*, 728 F.3d 287, (3d Cir. 2013).  Furthermore, Twitter threats do not negate the severity, because "in the age of social media...the recipient of the communication may be a defendant's Facebook followers or even the general public." *United States v. Elonis*, 841 F.3d 589, 597 at n.7 (3d Cir. 2016)

"Free speech is not absolute at all times and under all circumstances." *Chaplisnky v. N.H.*, 315 U.S. 568, 570-71 (1942).  There are "certain well-defined and narrowly limited classes of speech," that have never been considered protected speech.  *Id.*  Classes of speech such as "lewd and obscene speech, the profane, the libelous, and the insulting or fighting words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.*  In *Chaplinsky*, plaintiff was ticketed for calling a man "a damned fascist" on a public street. *Chaplinsky*, 315 U.S. at 569.  The fine was upheld, because calling a man "a damned fascist" was fighting words, because it constituted a breach of the peace, which is not protected.  *Id.* at 573.  The Third Circuit has held "activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *Gregg*, 226 F.3d at 267-68.

Furthermore, Exoo claims his speech is not a true threat and cites to *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 929 (1982).  In *Claiborne Hardware*, the Supreme Court held that the statement "we're gonna break your damn neck" was protected speech.  Here, Exoo sullies the civil rights era, because the above statement was made in public on a soapbox and was not directed at any one individual.  Exoo's doxes are always directed at the individual person, the target of the dox, and are cloaked behind anonymity, and included such threats as he was "going to spend the next week wrecking [D'Ambly's] your fucking life."  (ECF No. 103 at 23).

Exoo claims his threats are not true threats, because his "entire presence on Twitter demonstrates that he spends his time exposing people on the far right."  But does not explain how the "far right" is not threatened.  According to Exoo in the context of fulltime threatening, harassing and intimidating behavior, the threat to wreck D'Ambly's fuckin life "cannot be

reasonably read to mean he was going to personally drive to New Jersey to assault Plaintiff D'Ambly." (ECF No, 118-1 at 39).

Firstly, when Exoo doxed D'Ambly and published his home address, D'Ambly did not know who Exoo was, or whether Exoo lived next door or across the country and he certainly did know what Exoo was or was not capable of. Exoo's claim that Strickland was just another one of more than a hundred million Twitter users and 50,000 follower's is belied by Strickland's conduct. (ECF No. 118-1 at 29). Strickland's conduct backfires on Exoo's claim to not having influence over his followers, because it proves that his followers respond and react to his directives. When Exoo says keep calling they keep calling, and when Exoo says he will spend the next week wrecking someone's fucking life, that is what they do.

## VI.   EXOO DID NOT CHALLENGE PLAINTIFFS' ALLEGATIONS THAT HIS PERMANENT TWITTER BANS WERE LIFTED DUE TO CONNECTION TO TWITTER VERIFIED BLUE CHECK USER @EMILYGORCENSKI

In the instant matter, Exoo did not dispute or challenge Plaintiff's allegations that works with blue checked verified Twitter user @emilygorcenski to dox people and that he has leverage that connection to overcome at least two permanent bans. (ECF No. 103 at 13-17). Exoo ignored and did not challenge Plaintiff's allegations concerning @emilygorcenski, which confirm Plaintiffs' allegations that they share dox information and work together, in order to falsely claim that Plaintiffs have not established a plausible connection to Twitter. (ECF No. 118-1 at 23-26). However, through Exoo's relationship with blue check verified Twitter account @emilygorcenski Plaintiffs have provided a plausible link to Twitter, for the reason that @emilygorcenski is followed by @Jack the Twitter account of former Twitter CEO Jack Dorsey. (ECF No. 103 at 15-16).

Twitter account @emilygorcenski's blue check mark is significant for several reasons. First, Twitter only verifies notable accounts of public interest and "the blue Verified [check mark] on Twitter lets people know that an account of public interest is authentic.  To receive the blue badge, your account must be **authentic**, **notable**, and **active**."[13]  *See Twitter.com, Help Center, Verified Accounts, About Verified Accounts* (emphasis in original).  To be confirmed as authentic a user will need to confirm their identity with Twitter by providing the "link to an official website that references you (or your organization) and your Twitter account;" or the user must "provide a photo of a valid official government issued identification document, such as your Driver's Licensed or Passport;" or "provide an official email address with a domain relevant to the notability category you choose."  *Id.*

The next step in Twitter's verification process is to confirm the accounts notability.  In order to be considered notable by Twitter, "your account must represent or otherwise be associated with a prominently recognized individual or brand."  *Id.*  Before issuing the blue check mark Twitter confirms "the identity of the controller of the account" through one of the authentication steps described above, to "let people know that an account of public interest is authentic."  *Id.*  Twitter "request[s] the following type of information [from verification *applicants*] to confirm notability:"[14] (1) news articles that are about or reference yourself or your organization multiple times in the article; or (2) provide a link to a profile on Google Trends that depicts search history and is linked to category in which you are applying; or (3) provide a link to a stable Wikipedia article about your or your organization that meets the encyclopedia's [Wikipedia] notability standards; or (4) other industry specific references…such as a link to an

---

[13] Twitter.com, Help Center, Verified Accounts, About Verified Accounts, https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts (last accessed Jan. 19, 2022).
[14] *Id.*

IMDB page for entertainment; or (5) if your account is detected to be in the top .05% follower or mention account for your geographic location." *Id.*

In the instant matter, @emilygorcenski is a verified user and prolific doxer, who is followed by @jack. Twitter users have sent complaints concerning doxing by @emilygorcenski directly to @jack, but no action has ever been taken.



Twitter rules state that when you follow someone on Twitter: (1) you are subscribing to [receive] their Tweets as a follower; (2) their updates will appear in your home timeline; and (3) that person is able to send you direct messages.[15]  In the instant matter, @jack follows @emilygorcenski, and as a follower he receives Tweets from that account, and its updates appear in his home timeline.  In other words, he knows what @emilygorcenski is up to.

The importance of @jack following @emilygorcenski cannot be overstated for the following reasons.  @jack follows a prolific doxer @emilygorcenski, who's Tweets he subscribes to receive, including Tweets where @emilygorcenski claimed the ability to leverage

---

[15] Twitter.com, Following FAQ's https://help.twitter.com/en/using-twitter/following-faqs#:~:text=Following%20someone%20on%20Twitter%20means,to%20send%20you%20Direct%20Messages (last accessed Jan. 19, 2022).

@jack's following to have Twitter take actions that he wanted taken, such as get other users' Tweets deleted and getting other users suspended, which he claims to be able to accomplish by a "slide into jack's dms." (ECF No. 103 at 15-17). Further, it means @jack has received Exoo's doxes that @emilygorcenski Tweeted and re-Tweets, plus he knows @emilygorcenski's claims the ability to slide into @jack's dms. Twitter's exclusionary segregated system of verified accounts has enabled a verified user that @jack follows to participate in doxing that harmed Plaintiffs in violation of Twitter's rules.

Furthermore, Twitter's blue check verification program proves that Twitter is not a neutral conduit, that rather Twitter is biased against people that antifa has labeled fascists, nazis, and white supremacists, no matter how unreasonable these claims are, and due to this bias Twitter has enabled and ignored rampant doxing and online and offline coordinated abuse of antifa defined fascists, nazis, and white supremacists. Twitter's verification program exposes their bias, because on or about November 9, 2017, Twitter suspended its user verification program, because they verified the account belonging to an alleged white nationalist/white supremacist.[16] The verification of an alleged white nationalist/white supremacists was not well received by leftists, and Twitter immediately suspended its verification program.



---

[16] Phil McCausland, *Twitter suspends verifying accounts after white nationalist gets badge*, NBCNEWS.com, Nov. 9, 2017, https://www.nbcnews.com/news/us-news/twitter-suspends-verifying-accounts-after-white-nationalist-gets-badge-n819491 (last accessed Jan. 21, 2022). *See also* Jill Disis, Twitter suspends blue check mark verifications, CNN.com, Nov. 9, 2017, https://money.cnn.com/2017/11/09/technology/business/twitter-blue-check-mark-paused/index.html (last accessed Jan. 21, 2022).

## VII.   __CONCLUSION__

Exoo did not challenge Plaintiffs' allegations he simply expects his own false, fraudulent and unsupported statements to define Plaintiffs as fascists, white supremacists, and Nazis sufficient to satisfy his burden for his motions to be granted.  As part of a larger ongoing campaign Exoo and associates spent three months and directed numerous communications to threaten violence and intimidate the Daily News and Teamsters in violation of RICO predicate 29 U.S.C. § 530 to cause the deprivation of D'Ambly's rights as a union member.

For the foregoing reasons, defendants' motions for sanctions should be denied in its entirety.

Respectfully Submitted,

Dated: January 21, 2022    _____

Patrick Trainor, Esq.
*Attorney for Plaintiffs*