Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY; AARON WOLKIND; STEVEN HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI, <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, <br><br> Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** <br><br> CIVIL ACTION NO.: 2:20-cv-12880 <br><br> (ELECTRONICALLY FILED) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER, INC., AND VIJAYA GADDE'S MOTION TO DISMISS**

**Motion Day: February 7, 2021**

1

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................ ii

Introduction ................................................................................... 2

I.      Legal Standard For Rule 12(b)(6) ........................................... 2

II.     Onspiracy to Violate 18 U.S.C. § 1962(d) ............................... 5

III.    Twitter is Not a Neutral Conduit Entitled to Section 230 Immunity
        Because They Contributed to the Development of Exoo's Content ........ 9

IV.     Conclusion ............................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Apex Oil Co v. United States,*
    530 F.2d 1291 (8th Cir. 1976)................................................................   10, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................   3

*Banks v. Wolk,*
    918 F.2d 418, 421 (3d Cir. 1990)...........................................................   8

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096, 1100 (9th Cir. 2009).......................................................   13

*Beck v. Prupis,*
    529 U.S. 494, 505-06 (2000)..................................................................   7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................   3

*Calder v. Jones,*
    465 U.S. 783, 789-790 (1984)................................................................   5

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119, 1122 (9th Cir. 2003)......................................................   10, 12

*Chi. Lawyers' Comm. For Civ. Rights Under Law, Inc. v. Craigslist, Inc.,*
    519 F.3d 666 (7th Cir. 2008)..................................................................   13

*Colorado Riv. Water Conserv. Dist. v. United States,*
    424 U.S. 800, 817 (1976)........................................................................   4

*Crosby v. Twitter, Inc.,*
    303 F. Supp. 3d 564 (E.D. Mich. 2018).................................................   11

*Davis v. Wells Fargo,*
    824 F.3d 333 (3d Cir. 2016)....................................................................   3

*Dimeo v. Max,*
    433 F.Supp. 2d 523 (E.D. Pa. 2006) ......................................................   11

*Doe v. Myspace,*
    528 F.3d 413 (5th Cir. 2008)...................................................................   12

*Fields v. Twitter, Inc.,*
    217 F.Supp. 3d 1116 (N.D. Cal. 2016) ........................................................... 12

*Envtl. Tectonics v. W.S. Kirkpatrick, Inc*.,
    847 F.2d 1052, 1067 (3d Cir. 1988) ............................................................... 17

*Doe v. GTE Corp.,*
    347 F.3d 655 (7th Cir. 2003) .......................................................................... 12

*Fair Hous. Council v. Roommates.com, LLC*
    521 F.3d 1157, 1162 (9th Cir. 2008) .................................................... *passim*

*Federal Trade Comm'n. v. Accusearch, Inc.,*
    570 F.3d 1187, 1199 (10th Cir. 2009) .................................................. *passim*

*Green v. Am. Online (AOL),*
    318 F.3d 465 (3d Cir. 2003) ........................................................................... 11

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501, 508 (1947) .................................................................................. 3

*Huon v. Denton ,*
    841 F.3d 733, 741 (7th Cir. 2016) ....................................................... *passim*

*In re Asbestos Prods. Liab. Litig (No. VI),*
    822 F.3d 125, 133-34 (3d Cir. 2016) ............................................................... 3

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310, 316 (1945) .................................................................................. 4

*IMO Indus. v. Kiekert AG,*
    155 F.3d 254 (3d Cir. 1998) ............................................................................. 4

*Jaguar Cars v. Royal Oaks Motor Car Co.,*
    *46 F.3d 258 (3d Cir. 1995)* ............................................................................. *8*

*Jane Doe No. 14 v. Internet Brands, Inc.,*
    767 F.3d 894, 898 (9th Cir. 2014) ....................................................... *passim*

*Laurel Gardens, LLC v. McKenna*,
    948 F.3d 105 (3d Cir. 2020) ............................................................................. 4

*Miller Yacht Sales, Inc. v. Smith,*
    384 F.3d 93, 97 (3d Cir. 2004)........................................................ 3-4

*Meyer v. Grant,*
    486 U.S. 414, 422 (1988)............................................................... 25

*Obado v. Magedson,*
    612 Fed. App'x 90(3d Cir. 2015)................................................... 11

*O'Connor v. Sandy Lane Hotel Co.,*
    496 F.3d 312, 317 (3d Cir. 2007).................................................. 4-5

*Pace v. Baker-White,*
    432 F.Supp. 3d 495 (E.D. Pa. 2020)............................................. *passim*

*Petro-Tech, Inc. v. Western Co. of North America*
    824 F.2d 1349, 1357 (3d Cir. 1987)............................................. 8

*Pinker v. Roche Holdings, Ltd.,*
    292 F.3d 361 (3d Cir. 2002).......................................................... 5

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008).......................................................... 3

*Rose v. Bartle,*
    871 F.2d 331, 366 (3d Cir. 1989)................................................. 6

*Saponaro v. Grindr, LLC,*
    93 F. Supp. 3d 319 (D.N.J. 2015)................................................. 12

*Smith v. Berg,*
    247 F.3d 532, 534 (3d Cir. 2001)................................................. 5, 6

*Swistock v. Jones,*
    884 F.2d 755, 758 (3d Cir. 1989)................................................. 3

*United States v. Adams,*
    759 F.2d 1099 (3d Cir. 1985)........................................................ 8

*United States v. Dixon,*
    658 F.2d 181 (3d Cir. 1981).......................................................... 8

*United States v. Fattah,*
    914 F.3d 112, 162 (3d Cir. 2019).................................................. 6

*United States v. Local 560 Int'l Bhd. of Teamsters,*
    780 F.2d 267 (3d Cir. 1985).................................................................... 8

*United States v. Salinas,*
    522 U.S. 52, 63 (1997)........................................................................... 6

*United States v. Turkette,*
    452 U.S. 576, 583 (1981)....................................................................... 8

*Zeran v. Am. Online Inc.,*
    129 F.3d 327, 331 (4th Cir. 1997).......................................................... 10, 11

**Statutes**

18 U.S.C. § 1962(a)................................................................................... *7*

18 U.S.C. § 1962(d)................................................................................... 5, 6

18 U.S.C. § 1965(b) ................................................................................. 5

47 U.S.C. § 230 ........................................................................................ *passim*

**Other Authorities**

Federal Rile of Civil Procedure 4(k)(1)(A)................................................. 4

Federal Rile of Civil Procedure 8(a)(2)..................................................... 2

Federal Rule of Civil Procedure 12(b)(6).................................................. 2, 3

Phil McCausland, *Twitter suspends verifying accounts after white nationalist gets badge*, NBCNEWS.com, Nov. 9, 2017, https://www.nbcnews.com/news/us-news/twitter-suspends-verifying-accounts-after-white-nationalist-gets-badge-n819491 (last accessed Jan. 21, 2022). *See also* Jill Disis, Twitter suspends blue check mark verifications, CNN.com, Nov. 9, 2017, https://money.cnn.com/2017/11/09/technology/business/twitter-blue-check-mark-paused/index.html (last accessed Jan. 21, 2022)........................................ 16

Twitter.com, Following FAQ's https://help.twitter.com/en/using-twitter/following-faqs#:~:text=Following%20someone%20on%20Twitter%20means,to%20send%20you%20Direct%20Messages (last accessed Jan. 19, 2022).................................. 7

Twitter Rules, Following and unfollowing, Following FAQ's https://help.twitter.com/en/using-twitter/following-faqs (last accessed Jan. 18, 2022). .......................................................................................................... 9

# INTRODUCTION

In their Second Amended Complaint (hereinafter "SAC") in order to cure jurisdictional deficiencies that the Court cited in its Opinion dated November 1, 2021.  (ECF No. 99, Opinion). Plaintiffs named as defendants, John "Nick" Strickland [1] ("Strickland") and Torch Antifa Network ("Torch"), who were unnamed associates in previous filings.  Strickland, Torch and Defendant Christian Exoo a/k/a @AntiFashGordon ("Exoo" or "AFG") licitly and illicitly obtained Plaintiffs private information and doxed, dogpiled, and harmed Plaintiffs, whom they perceive to be their enemies.  Strickland and Torch are New Jersey residents.

Defendants Twitter, Inc., and Vijaya Gadde (hereinafter collectively ("Twitter") are not immune from liability under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 they enabled Defendant Christian Exoo a/k/a @AntiFashGordon ("Exoo") content to be made available and widely disseminated.  Exoo was able to leverage his connections to blue check Twitter verified user @emilygorcenski, who has more than 100,000 followers, which account at all times relevant was followed by @jack the Twitter account of former Twitter Chief Executive Officer Jack Dorsey.  Twitter account @emilygorcenski repeatedly claimed the ability to direct message @jack to effectuate changes on Twitter, including having accounts punished and other users Tweets deleted.  (ECF No. 103 at 14-17).  Twitter has never challenged Plaintiffs' allegation that @jack follows @emilygorcenski, who is a well-known doxer.

## I.   LEGAL STANDARD FOR RULE 12(b)(6)

Under *Rule 8(a)(2)*, the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what

---

[1] In the caption to the Second Amended Complaint Defendant Strickland's first name was identified as Nick, however, Plaintiffs obtained official government records that show Strickland's first name John and Nick is his middle name.

the…claim is and the grounds upon which it rests" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The "courts are not required to accept merely conclusory factual allegations or legal assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).  However, the court "still must accept as true all plausible allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." *Twombly*, 550 U.S. at 555.   A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency.  *In re Asbestos Prods. Liab. Litig (No. VI)*, 822 F.3d 125, 133-34 (3d Cir. 2016).  A court's reliance on facts alleged outside the complaint may "constitute a procedural error under Rule 12(b)(6)."  *Id.*

The moving party bears the burden of showing Plaintiff has not adequately pled a claim for relief.  *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016).  The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  RICO "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery." *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

**A.  The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction**

The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  A plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97

3

(3d. Cir. 2004). Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given to them" and "only the clearest of justifications will warrant dismissal." *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 122 (3d Cir. 2020).

Federal Rule of Civil Procedure 4(k)(1)(A) "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located." Here, Strickland is a resident of the State of New Jersey and subject to the jurisdiction of a court of general jurisdiction within the State of New Jersey. Torch is an unincorporated association subject to jurisdiction in the state where any of its members are located and Torch's website *torchantifa.org*, is registered by One People's Project, an IRS 501(c)(3) based in New Brunswick, New Jersey.

New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Miller Yacht,* 384 F.3d. at 96. Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts with the forum can create specific jurisdiction in two ways. *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998). First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v.*

*Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007).  Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident." *O'Connor,* 496 F.3d at 317-318 (jurisdiction was proper over defendant that mailed brochures to plaintiff in Pennsylvania after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa).

Furthermore, the District Court has statutory personal jurisdiction under *18 U.S.C. § 1965(b)* (2018), which provides for "nationwide service of process and jurisdiction over other parties not residing in the district, who may be additional defendants of any kind, including co-defendants, third-party defendants, or additional counter-claim defendants." *Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020) (internal quotations omitted).  When a federal statute provides for nationwide service of process, it becomes the "statutory basis for personal jurisdiction." *Id.* at 117.  The federal RICO statute is one such federal statute that "includes a specific provision." *Id*. at 113.  Jurisdiction is proper in any "district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Id.* at 118.  In instances "where Congress has spoken by authorizing nationwide service of process… jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).

## II.    Conspiracy to Violate 18 U.S.C. § 1962(d)

A conspiracy claim under 18 U.S.C. § 1962(d) can proceed even if the claims under another section of section 1962 are dismissed.  *Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001);

To establish liability for a *§ 1962(d)* claim Plaintiffs must allege an agreement to participate and that the defendant: (1) agreed to facilitate the operation of an enterprise through a pattern of racketeering activity; and (2) that defendant agreed that someone would commit at least two predicate acts. *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). In *Salinas*, the Supreme Court averred that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *United States v. Salinas*, 522 U.S. 52, 63 (1997). The Supreme Court declared RICO conspiracy is "unlike the general conspiracy provision applicable to federal crimes," it "is even more comprehensive than the general conspiracy offense," because it does not require proof of an overt act. *Id.* A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Id.* at 63-64.

The Third Circuit has held that the broad application of *§ 1962(d)* extends liability beyond those who have conspired personally to operate or manage a corrupt enterprise to those who are liable for a § 1962 violation on successful completion of the scheme. *Smith*, 247 F.3d at 534 (3d Cir. 2001). In *Smith*, the court emphasized that "one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators, which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, any particular element." *Id.* at 537. Accordingly, liability for a RICO conspiracy may be found where the conspirator intended to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *United States v. Fattah*, 914 F.3d 112, 162 (3d Cir. 2019) (quoting Salinas 522 U.S. at 65). To bring an action under *§ 1962(d)* Plaintiffs must show that they were injured

"from an act that is analogous to an act of a tortious character…that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). However, the Supreme Court has not decided whether "a RICO conspiracy must allege an actionable violation under §§ 1962(a)-(c), or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury." *Beck*, 529 U.S. at 506 n. 10.

According to Twitter's own rules, when you follow someone on Twitter: (1) you are subscribing to [receive] their Tweets as a follower; (2) their updates will appear in your home timeline; and (3) that person is able to send you direct messages.[2]  In the instant matter, @jack follows @emilygorcenski, and as a follower he receives Tweets from that account, and its updates appear in his home timeline.

Here, Twitter did not challenge Plaintffs' allegations that @jack follows @emilygorcenski, and as such, they have not denied that @jack receives @emilygorcenski's Tweets, which includes doxes, and/or direct messages.  As seen in the images below, @jack and Twitter Safety have received complaints concerning doxing conducted by @emilycorcenski, so they were notified of the conduct in multiple ways.





---

[2] Twitter.com, Following FAQ's https://help.twitter.com/en/using-twitter/following-faqs#:~:text=Following%20someone%20on%20Twitter%20means,to%20send%20you%20Direct%20Messages (last accessed Jan. 19, 2022).

To be liable under RICO's conspiracy provision "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099, 1166 (3d Cir. 1985). The Third Circuit has similarly "held a defendant may be liable under RICO if he aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 270 (3d Cir. 1995).

When RICO cases are "civil in character, the criminal standard for aiding and abetting applies." *United States v. Local 560 of Int'l Bhd. Of Teamsters*, 780 F.2d 267, 284 (3d Cir. 1985). RICO is to "be liberally construed to effectuate its remedial purposes." *United States v. Turkette*, 452 U.S. 573, 586-587 (1984). The federal RICO statute recognizes liability for those who merely aid and abet the underlying predicate offenses. *Petro-Tech Inc.,* 824 F.2d at 1356. A defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity. *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir. 1990). The Third Circuit has held "under RICO, an individual need not himself commit two requisite predicate offenses, as long as that same individual aids and abets the commission of the predicate offenses." *Local 560,* 780 F. 2d at 288, n. 25.

The Restatement (second) of Torts § 876(b) holds that liability "for harm resulting to a third person from the tortious conduct of another…[can be imposed upon a party who] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1357 (3d Cir. 1987). "Plaintiff need not offer direct evidence of intent. Rather, the fact finder may infer a defendant's knowledge and intent from circumstantial evidence." *United States v. Dixon,* 658 F.2d 181, 189, n. 17 (3d Cir. 1981).

According to Twitter's rules, Twitter followers subscribe to receive Tweets from the Twitter accounts they follow, and updates of the followed account appears in the follower's home timeline.[3]  Twitter account @emilygorcenski is a prolific doxer and Exoo's associate who re-Tweets and Tweets Exoo's doxes that have harmed Plaintiffs in the business and person and that appeared in @jack's home timeline.  Twitter has not challenged Plaintffs' allegations that @jack follows @emilygorcenski, and as such, they have not denied that @jack receives @emilygorcenski's Tweets, which includes doxes, and/or direct messages.  Twitter contributed to the development of Exoo's content.

### III.   TWITTER IS NOT A NEUTRAL CONDUIT ENTITLED TO SECTION 230 IMMUNITY BECAUSE THEY CONTRIBUTED TO THE DEVELOPMENT OF EXOO'S CONTENT

Twitter cannot cite to one case where immunity was granted under Section 230 of the Communications Decency Act ("CDA"), wherein the interactive computer service's employees or executives knew that its services were being used to conduct the type activities complained of in Plaintiff's SAC, and did nothing to stop it.  Jack Dorsey received real time notifications of Plaintiffs doxes, because he followed @emilygorcenski's and @emilygorcenski re-tweeted Exoo's doxes and calls to dogpile.  In other words, the CEO knew @emilygorcenski adulterated Twitter's product by doxing other people and he did nothing.  Exoo leveraged his relationship with @emilygorcenski to circumvent two permanent lifetime Twitter bans, in order to publish doxes and harm people from an infamous Twitter account that has accumulated more than 50,000 followers.  @jack's receipt of Exoo's doxes eliminates their ability to claim they are a neutral conduit entitled to immunity.  Jack's knowledge of @EmilyGorcenski's conduct is Twitter's knowledge, because the courts have long understood, "knowledge of the employees is

---

[3] Twitter Rules, Following and unfollowing, Following FAQ's  https://help.twitter.com/en/using-twitter/following-faqs (last accessed Jan. 18, 2022).

the knowledge of the corporation." *Apex Oil Co v. United States*, 530 F.2d 1291, 1295 (8th Cir. 1976).

Twitter incorrectly argues that they had no part in the development of Exoo's content and are therefore, protected from liability under the CDA's Good Samaritan protections. *47 U.S.C. 230(c)(1)*. Twitter is not a Good Samaritan, neutral conduit, or passive transmitter, they took extraordinary actions to ensure the visibility and usability of Exoo's content, which exempts CDA's protections. *Section 230* states no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. *47 U.S.C. § 230(c)(1)*. Congress enacted *§ 230* "to promote the free exchange of information and ideas over the internet and to encourage voluntarily monitoring for offensive or obscene material." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Congress was mindful that the immense volume of users and communications exchanged over the internet potentially created a "specter of tort liability in an area of such prolific speech would have an obvious chilling effect." *Zeran v. Am. Online Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). The intention of *Section 230* was "to remove disincentives for the development and utilization of blocking and filtering technologies." *Id.*

A service provider cannot be liable for the development of the offensive content if its "conduct was neutral with respect to the offensiveness of the content (as would be the case with the typical Internet bulletin board)." *Federal Trade Comm'n. v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009). However, an interactive computer service or website operator "can be both a service provider and a content provider: If it passively displays content created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is responsible, in whole or in part for creating or developing the website is

10

also a content provider." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).

Twitter's reliance on well cited § 230 is irrelevant to this dispute, because none of the provider in Twitter's cited authorities knew of the illicit conduct as it occurred. *Section 230* cases exist along a continuum with internet "service providers being immunized" and "content providers" are not. *Pace v. Baker-White*, 432 F. Supp. 3d 495, 504 (E.D. Pa. 2020). However, *Section 230* is not blanket immunity, it is immunity for neutrality, for being a passive conduit of third-party content. *Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006). *Section 230(c)(1)* prohibits "only liability that treats a website as a publisher or speaker of content provided by somebody else…" *Jane Doe No. 14 v. Internet Brands, Inc.*, 767 F. 3d 894, 898 (9th Cir. 2014).

The "unidentified person" or "unknown person" is required in *Section 230* immunity cases and present in all of Twitter's cited authorities. For instance, in *Zeran v. Am. Online, Inc.*, America Online ("AOL") was immune from liability for defamatory messages posted to an AOL bulletin board by an unidentified person. *Zeran,* 129 F.3d at 329. *See Green v. Am. Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) (AOL immunized for defamatory statements and a 'punter' that was posted to an AOL chat room by John Does); *Dimeo v. Max*, 433 F. Supp. 2d 523 (E.D. Pa. 2006) (website immunized against defamatory statements posted in its comments section by unknown users); *Obado v. Magedson,* 612 Fed. App'x 90 (3d Cir. 2015) (immunity for provider that refused to allow a user post a rebuttal to defamatory blog postings by an anonymous user); *Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564 (E.D. Mich. 2018) (immunity against suits brought by families of Pulse Nightclub victims, because Twitter did not know identity of persons posting terrorism materials and did not agree with any person or entity to promote terrorism); *Fields v.*

*Twitter, Inc.*, 217 F.Supp. 3d 1116 (N.D. Cal. 2016) (immunity against claims it provided material support to ISIS through the provisioning of accounts).

Passive transmitters have also been granted immunity when unknown third parties create fake or malicious accounts. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In *Carafano*, an unknown third party created a fake dating website profile using the identity, address and phone number of an actress alleging she was seeking sexual encounters. The website was not liable, because it had no role in "creating, developing, or transforming the relevant information." *Carafano*, 339 F.3d at 1125.

Providers as neutral conduits have been granted immunity based on negligence claims for failure to monitor cases where minors lied about their age in order to gain access to the providers services. In *Doe v. Myspace*, a 13-year-old girl said she was 18 and to create Myspace account and was sexually assaulted by a nineteen-year-old man she met through Myspace. *Doe v. Myspace*, 528 F.3d 413 (5th Cir. 2008). *See Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 324 (D.N.J. 2015) (gay dating application provided "neutral tools" was not liable to a man who engaged in criminal sexual conduct with a 13-year-old boy he met through the dating app).

Content hosts are immunized providers when they only that hosted illicit content posted by an unknown third party. In *Doe v. GTE Corp.*, host who did not "intercept or disclose any communication." was not liable to college athletes secretly video recorded in bathrooms, showers, and locker rooms. *Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir. 2003). *See Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) (Provider "cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments."); *Chi. Lawyers' Comm. For Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d

666, 668-71 (7th Cir. 2008) (immunity to Craigslist, because it was only the "messenger" of housing ads that stated "no minorities").

Section 230(c) is titled "[p]rotection for Good Samaritan blocking and screening of offensive material" and "can and should be interpreted consistent with its caption." *Roommates.com*, 521 F.3d at 1163-1164. While CDA's scope is broad and immunizes providers from liability as either "publishers or speakers…[neither section] declares a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). Congress did not provide "an all-purpose get-out-of-jail-free card for businesses that publish user content on the internet." *Internet Brands*, 767 F. 3d at 899. It "was not meant to create a lawless no-man's land on the internet. If the conduct is unlawful when committed "face-to-face or by telephone" it does not "magically become lawful when" committed online. *Roommates.com*, 521 F.3d. at 1164.

*Section 230* does not "grant immunity for inducing third parties to express illegal preferences." *Fair Hous Council v. Roomates.com, LLC*, 521 F.3d 1157, 1165 (9th Cir. 2008). In *Roomates.com*, a roommate arranging website required its users to answer a series of housing related questions before accessing the service was not immunized, because the user's responses were potentially unlawfully discriminatory, and inducing illegal activity is not protected, therefore Roommates was not a passive transmitter.

Providers are liable as content developers for "creating and posting, inducing another to post, or otherwise actively participating in the posting." *Huon*, 841 F.3d at 742. Liability exists when a provider "in some way specifically encourages development of what is offensive about the content." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 508 (E.D. Pa. 2020) (quoting *Federal Trade Comm'n. v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009). The definition of

13

development "that is far more suitable to the context in which we operate:" means "making usable or available." *Roommates.com*, 521 F.3d at 1168. The "core meaning" of the word "develop…is the act of drawing something out, making it visible content means to make it visible, active, or usable." *Accusearch, Inc.,* 570 F.3d at 1198. A website that helps develop unlawful content, and "thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." *Accusearch, Inc.,* 570 F.3d at 1200.

Providers are exempt from Good Samaritan immunity "if it in some way specifically encourages development of what is offensive about the content" or if they create content "in whole or in part for the creation of content." *Baker-White,* 432 F. Supp. 3d at 507-08 (quoting *Federal Trade Comm'n. v. Accusearch, Inc.,* 570 F.3d 1187, 1197 (10th Cir. 2009). To be responsible for a means to be "accountable for one's actions or to be the cause or originator of something." *Baker-White,* 432 F. Supp. 3d. at 508.

In *Roommates*, the provider was "responsible at least in part for developing the content," when it created questions to extract user housing preferences information that was used to create housing matches. *Roommates*, 521 F.3d at 1166. In *Accusearch*, the provider, encouraged development of the offensive content when it hired researchers to obtain confidential telephone information it sold, because it knew its "researchers were likely to use improper methods." *Accusearch, Inc.*, 570 F.3d at 1200. The court cited internal company emails when it rejected Accusearch's "claim of blissful ignorance," of researcher impropriety as "simply not plausible." *Id.* at 1200-01. In *Huon*, the provider not immune, because it allowed its employees alter or create comments that labeled plaintiff a rapist on the day he was acquitted of rape when it intended to monetize defamatory comments in its comments section.

14

Providers have been exempted from *§ 230* immunity when a state law complaint for had "nothing to do with [defendant] Internet Brands' efforts, or lack thereof, to edit or remove user generated content." *Internet Brands,* 767 F.3d at 898. The court stated that Congress has not provided an all-purpose get-out-of-jail free card for businesses that publish user content on the internet. *Id.* at 899. In *Internet Brands*, the provider was exempt from immunity, because the provider knew rapists prowled its model casting website (*modelmayhem.com*) to lure models to bogus modeling assignments, where the models were drugged, and filmed being raped, but did not alert the models.

In *Baker-White,* a provider liable for helping to develop content in part, when it added prefatory language to the media posts to argue cops were racists and white supremacists. The provider was exempted from *§ 230*, because it "did much more than merely packaging and contextualizing" they framed the social media comments to make them more "usable and visible" to fit the websites narrative that police officers were racist. *Id. at* 507.

As in *Internet Brands*, where no immunity was granted, Twitter knows Exoo and associates use its service for illicit purposes that harmed people. Twitter materially contributed in whole or part to the development of Exoo's content and its availability, because Exoo is allowed to continue doxing from a ban evasion account. Moreover, @jack receives @emilygorcenski's re-Tweets of Exoo Doxes and ignores them, which enables their availability.

Similar to the provider in *Accusearch*, Twitter's attempt to claim blissful ignorance fails, because @jack knows Exoo and @emilygorcenski are doxers. Twitter's failure to prevent Exoo's doxing when @jack receives @emilygorcenski's re-Tweets of Exoo's doxes shows Twitter's agreement with the content. Twitter has been granted immunity in cases such as

15

*Crosby*, where Plaintiffs could find no agreement, but here, failure to stop rule violators is the agreement.

Twitter is exempt from *Section 230* immunity, because they altered the ordinary conduct of their business to make Exoo's content more usable and offensive. Twitter did more than "packaging and contextualizing" they knew or should have known that Exoo would continue to use that account in ways that were likely to harm others, because that is why they permanently banned him. *Baker-White*, 432 F. Supp. 36d at 507.

Finally, Twitter's blue check verification program proves that Twitter is not a neutral conduit with a bias against persons the mob identifies as white nationalists/white supremacists, that rather Twitter is biased against people that antifa has labeled fascists, nazis, and white supremacists, no matter how unreasonable these claims are, and due to this bias Twitter has enabled and ignored rampant doxing and online and offline coordinated abuse of antifa defined fascists, nazis, and white supremacists. Twitter's verification program exposes their bias, because on or about November 9, 2017, Twitter suspended its user verification program, because they verified the account belonging to an alleged white nationalist/white supremacist,[4] caused outrage with the Twitter mob and Twitter immediately suspended its verification program.



---

[4] Phil McCausland, *Twitter suspends verifying accounts after white nationalist gets badge*, NBCNEWS.com, Nov. 9, 2017, https://www.nbcnews.com/news/us-news/twitter-suspends-verifying-accounts-after-white-nationalist-gets-badge-n819491 (last accessed Jan. 21, 2022). *See also* Jill Disis, Twitter suspends blue check mark verifications, CNN.com, Nov. 9, 2017, https://money.cnn.com/2017/11/09/technology/business/twitter-blue-check-mark-paused/index.html (last accessed Jan. 21, 2022).

IV.     **CONCLUSION**

@Jack's knowledge of @EmilyGorcenski's conduct is Twitter's knowledge, because the courts have long understood, "knowledge of the employees is the knowledge of the corporation." *Apex Oil Co v. United States*, 530 F.2d 1291, 1295 (8th Cir. 1976).

Here, @jack receives Tweets of a prolific doxer, who participated in Plaintffs' dox and caused them to be injured in their business and person.

For the foregoing reasons, defendants' motions for sanctions should be denied in its entirety.

                          Respectfully Submitted,

Dated: January 21, 2022                   _____

                          Patrick Trainor, Esq.
                          *Attorney for Plaintiffs*