Patrick Trainor, Esquire (Attorney ID 242682019)
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07073
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

| | |
|---|---|
| DANIEL D'AMBLY; AARON WOLKIND; STEVEN HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI, <br><br>          Plaintiffs, <br><br>     vs. <br><br> CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; UNNAMED ASSOCIATES 1 – 100, <br><br>          Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** <br><br><br> CIVIL ACTION NO.:  2:20-cv-12880 <br><br>      (ELECTRONICALLY FILED) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ST. LAWRENCE UNIVERSITY'S MOTION TO DISMISS**

**Motion Day: February 7, 2021**

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| | Table of Authorities | ii |
| | Introduction | 2 |
| I. | Legal Standard | 3 |
| | A. Motion to Dismiss For Failure To State A Claim For Relief Under Fed. R. Civ. P. 12(b)(6) | 4 |
| | B. The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction | 4 |
| II. | St. Lawrence is Obligated to Stop Their Employees Misconduct | 7 |
| | A. Conspiracy to Violate 18 U.S.C. ¶ 1962(d) | 8 |
| III. | Conclusion | 10 |

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                         **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................    4

*Beck v. Prupis,*
    529 U.S. 494, 505-06 (2000)......................................................    10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................    4

*Calder v. Jones*,
    465 U.S. 783, 789-790 (1984).....................................................    6

*Colorado Riv. Water Conserv. Dist. v. United States*
    424 U.S. 800, 817 (1976)............................................................    5

*Doe v. XYC Corp.,*
    382 N.J. Super 122, 142 (App. Div. 2005) ...................................    7, 8

*Goldberg v. Housing Authority of Newark,*
    38 N.J. 578 (1962)....................................................................    8

*Gulf Oil Corp. v. Gilbert*
    330 U.S. 501, 508 (1947)...........................................................    5

*Hopkins v. Fox & Lazo Realtors,*
    132 N.J. 426, 439 (1993)............................................................    7

*IMO Indus. v. Kiekert AG,*
    155 F.3d 254 (3d. Cir. 1998)........................................................    6

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310, 316 (1945)............................................................    5

*Laurel Gardens, LLC, v. McKenna,*
    948 F.3d 105, 122 (3d Cir. 2020).................................................    5, 6

*Miller Yacht Sales, Inc. v. Smith,*
    384 F.3d 93, 97 (3d. Cir. 2004)....................................................    5

*O'Connor v. Sandy Lane Hotel Co.,*
    496 F.3d 312, 317 (3d. Cir. 2007)................................................    6

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................... 4

*Pinker v. Roche Holdings, Ltd.*,
    292 F.3d 361 (3d Cir. 2002)..................................................................... 7

*Rose v. Bartle*,
    871 F.2d 331, 366 (3d Cir. 1989)............................................................. 9

*Smith v. Berg*,
    247 F.3d 532, 534 (3d Cir. 2001)............................................................. 8, 9

*Swistock v. Jones*,
    884 F.2d 755, 758 (3d Cir. 1989)............................................................. 4

*United States v. Fattah*,
    914 F.3d 112, 162 (3d Cir. 2019)............................................................. 9

*United States v. Salinas*,
    522 U.S. 52, 63 (1997)............................................................................. 9

*United States v. Local 560 Int'l Bhd. of Teamsters*,
    780 F.2d 267 (3d Cir. 1985)..................................................................... *passim*

*United States v. Turkette*,
    452 U.S 576, 583 (1981)........................................................................... *8*

**Statutes**

Federal Rule of Civil Procedure 4(k)(1)(A)................................................... 5

18 U.S.C. § 1962(a)...................................................................................... 10

18 U.S.C. § 1962(c)...................................................................................... 9, 10

18 U.S.C. § 1962(d)...................................................................................... 8, 9

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2)........................................................ 3

Federal Rule of Civil Procedure 12(b)(2)..................................................... 2, 4, 5

Federal Rule of Civil Procedure 12(b)(6)..................................................... 2, 4, 5

Federal Rule of Civil Procedure 12(d)........................................................... 5

Federal Rule of Civil Procedure 56.................................................................... 5

Federal Rule of Civil Procedure 56(d)............................................................... 5

Restatement (Second) of Torts § 317.................................................................. *13*

**Other Sources**

Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com (Sep. 9, 2019), https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed May 11, 2021) ............................................................. 3

*Direct Action Definition*, TheFreeDictionary.com, *The use of immediately effective acts, such as strikes, demonstrations, or sabotage, to achieve a political or social end.* https://www.thefreedictionary.com/direct+action (last visited Jan. 15, 2022) ................................................................................................................ 3

Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, washingtonpost.com (Jan. 10, 2021) https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed May 11, 2021)................................................................................... 3

Sean Illing, White supremacists are more afraid of us than we are of them, Vox.com, Sep. 1, 2017, https://www.vox.com/2017/9/1/16202908/antifa-charlottesville-alt-right-white-nationalist-protest (last accessed Jan. 16, 2022)........ 3

## INTRODUCTION

In their Second Amended Complaint (hereinafter "SAC") in order to cure jurisdictional deficiencies that the Court cited in its Opinion dated November 1, 2021. (ECF No. 99, Opinion). Plaintiffs named as defendants, John "Nick" Strickland [1] ("Strickland") and Torch Antifa Network ("Torch"), who were unnamed associates in previous filings. Strickland, Torch and Defendant Christian Exoo a/k/a @AntiFashGordon ("Exoo" or "AFG") licitly and illicitly obtained Plaintiffs private information and doxed, dogpiled, and harmed Plaintiffs, whom they perceive to be their enemies.

Strickland is Exoo's associate and a proper defendant in this case. Strickland is the New Jersey resident, whose phone number (732) 744-4937 was captured at 10:21 a.m., on January 11, 2019, by Plaintiff Daniel D'Ambly's ("D'Ambly") former employer's phone messaging system when he called to demand D'Ambly's termination or "any violence or blood spilled is also on your hands." (ECF No. 103 at 24). At 10:43 a.m. Strickland acknowledged the call when he replied to Exoo's Tweet, and that night Strickland went to D'Ambly's home and caused approximately $600 in damage to D'Ambly's vehicle that was parked in his driveway. D'Ambly received a text message from (732) 744-4937 that mocked the damage to his vehicle. (ECF No. 103 at 22-24). Strickland and D'Ambly are complete strangers the only link between them is Exoo's dox.

---

[1] In the caption to the Second Amended Complaint Defendant Strickland's first name was identified as Nick, however, Plaintiffs obtained official government records that show Strickland's first name John and Nick is his middle name. *See* Exhibit A.

Torch is a New Jersey based antifa network that has chapters in several states and cities and its members have committed acts of direct action[2] against Plaintiffs.  (ECF No. 103 at 11, 22-23, 29-48).  Exoo and associates are inspired to dox by their mentor Daryle Lamont Jenkins ("Jenkins") a New Jersey resident, who has been described as the "father" of doxing.[3]  Jenkins has stated that his inspiration for doxing people he identifies as white supremacists came from anti-abortion activists of the late 1980's and 1990's.[4]  Jenkins' take on doxing is "that you have to be aggressive…they [white supremacists] know we can cause more damage to them than they can cause to us."[5]

Exoo has admitted to being antifa, who the New Jersey Department of Homeland Security describes as anarchist extremist domestic terrorists, who commit criminal and violent acts to achieve their goals.  Exoo is a well-known figure on campus and STL received numerous complaints concerning his doxing activities.  See Exhibit A, Email Complaint to STL.  Defendant St. Lawrence University ("STL") is Exoo's employer, who allows him to lecture to students on their campus the very activities that has harmed Plaintiffs, yet they expect the Court to believe they are without fault.  STL had one responsibility to prevent their employee from using their resources to harm others, such as Plaintiffs, but they failed to do so.

## I.    LEGAL STANDARD

---

[2] *Direct Action Definition*, TheFreeDictionary.com, *The use of immediately effective acts, such as strikes, demonstrations, or sabotage, to achieve a political or social end.*  https://www.thefreedictionary.com/direct+action (last visited Jan. 15, 2022).

[3] Robert Klemko, *A small group of sleuths had been identifying right-wing extremists long before the attack on the Capitol*, WashingtonPost.com, Jan. 10, 2021, https://www.washingtonpost.com/national-security/antifa-far-right-doxing-identities/2021/01/10/41721de0-4dd7-11eb-bda4-615aaefd0555_story.html (last accessed Jan. 16, 2022).

[4] *Id.  See also* Aaron Gell, *Anti-Fascists Are Waging a Cyber War – And They're Winning*, Medium.com, September 9, 2019, https://gen.medium.com/antifas-keyboard-warriors-254f62be2a95 (last accessed Jan. 16, 2022).

[5] Sean Illing, White supremacists are more afraid of us than we are of them, Vox.com, Sep. 1, 2017, https://www.vox.com/2017/9/1/16202908/antifa-charlottesville-alt-right-white-nationalist-protest (last accessed Jan. 16, 2022).

### A. **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF UNDER FED. R. CIV. P. 12(b)(6)**

Under *Rule 8(a)(2)*, the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief…in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests" and must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The "courts are not required to accept merely conclusory factual allegations or legal assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). However, the court "still must accept as true all plausible allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." *Twombly*, 550 U.S. at 555. A court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency. *In re Asbestos Prods. Liab. Litig (No. VI)*, 822 F.3d 125, 133-34 (3d Cir. 2016). A court's reliance on facts alleged outside the complaint may "constitute a procedural error under Rule 12(b)(6)." *Id.*

The moving party bears the burden of showing Plaintiff has not adequately pled a claim for relief. *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016). The standard set forth in *Twombly* "does not impose a probability requirement at the pleading stage…but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). RICO "plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery." *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

### B. **The District Court has Personal Jurisdiction and Statutory Personal Jurisdiction**

The courts have long held that a "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d. Cir. 2004). Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given to them" and "only the clearest of justifications will warrant dismissal." *Colorado Riv. Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). In the RICO context, the Court is "not limited to the defendant's contacts with the forum state and instead consider contacts with the nation as a whole*." Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 122 (3d Cir. 2020).

Federal Rule of Civil Procedure 4(k)(1)(A) "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located." Here, Strickland is a resident of the State of New Jersey and subject to the jurisdiction of a court of general jurisdiction within the State of New Jersey. Torch is an unincorporated association subject to jurisdiction in the state where any of its members are located and Torch's website *torchantifa.org*, is registered by One People's Project, an IRS 501(c)(3) based in New Brunswick, New Jersey.

New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Miller Yacht,* 384 F.3d. at 96. Due process is satisfied when a defendant has minimum contacts with a forum state, so that a court's jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's contacts with the forum can create specific jurisdiction in two ways. *IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d. Cir. 1998). First, the plaintiff must satisfy a three-part inquiry that: (1) the defendant must have purposefully directed its activities at the forum state; (2) the litigation must arise out of or relate to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007). Second, the "defendant's conduct may nonetheless establish jurisdiction if: (1) the defendant committed an intentional tort; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Calder v. Jones*, 465 U.S. 783, 789-790 (1984).

A defendant deliberately targets a forum by reaching into the state by "sending physical or electronic communications to the resident." *O'Connor,* 496 F.3d at 317-318 (jurisdiction was proper over defendant that mailed brochures to plaintiff in Pennsylvania after they booked a trip to the hotel, and traded phone calls to book a massage at the hotel spa).

Furthermore, the District Court has statutory personal jurisdiction under *18 U.S.C. § 1965(b)* (2018), which provides for "nationwide service of process and jurisdiction over other parties not residing in the district, who may be additional defendants of any kind, including co-defendants, third-party defendants, or additional counter-claim defendants." *Laurel Gardens, LLC, v. McKenna*, 948 F.3d 105, 118 (3d Cir. 2020) (internal quotations omitted). When a federal statute provides for nationwide service of process, it becomes the "statutory basis for personal jurisdiction." *Id.* at 117. The federal RICO statute is one such federal statute that "includes a specific provision." *Id*. at 113. Jurisdiction is proper in any "district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Id.* at 118. In instances "where Congress has spoken by authorizing nationwide service of process…

6

jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002).

## II.    St. Lawrence Is Obligated to Stop Their Employees Misconduct

STL has received complaints concerning Exoo's activities that he directs from their campus, and like all employers are "under a duty to exercise reasonable care" to stop its employee's from using employer property to commit criminal acts such as stalking, harassing, intimidating, and conducting other activities that constitute a threat to others. *Doe v. XYC Corp.,* 382 N.J. Super 122, 142 (App. Div. 2005) (employee had duty to terminate employee or report to law enforcement employee who was viewing child pornography from a work computer). It has long been established that "if an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from this inaction. Moreover, it has long settled that it is permissible to infer from circumstantial evidence the existence of intent." been *United States v. Local 560 Int'l Bhd. of Teamsters 560 (1985)*, 780 F. 2d 267, 284 (3d Cir. 1985). As a matter of law, the obligation of an employer to stop its employee from harming others from their employer's workspace "derives from considerations of public policy and fairness." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993). The *Restatement (Second) of Torts §
317* says:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>> (a) the servant
>>> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>>>> (ii) is using a chattel of the master, and
>> (b) the master
>>> (i) knows or has reason to know that he has the ability to control his servant, and

7

(ii) knows or should know of the necessity and opportunity for exercising such control.

*Doe v. XYC Corp.*, 382 N.J. Super. at 132.

Whether the duty exists turns on whether imposing the duty "satisfies an abiding sense of fairness…in light of considerations of public policy." *Goldberg v. Housing Authority of Newark*, 38 N.J. 578 (1962).  Here, Exoo's conduct satisfies all of the elements as stated above.  He directs the enterprise's activities from his workstation upon STL's premises, which STL permits him to enter as the servant.  He uses STL's chattel (internet technology, cloud computing, etc.) to direct the enterprise's activities, STL knows of Exoo's activities, and they should know his activities are unlawful, and STL is capable of stopping him from using their property and resources to direct his activities through various means.  Public policy disfavors harassment, intimidation, threatened violence and extortion, all of the activities Exoo directs from STL's campus satisfies the elements for employer liability for harms caused by its employee.

Employers are "under a duty to exercise reasonable care" to stop its employee's from using employer property to commit criminal acts such as stalking, harassing, intimidating, and conducting other activities that constitute a threat to others.  *Doe v. XYC Corp.,* 382 N.J. Super 122, 142 (App. Div. 2005).

Furthermore, Exoo is intimately familiar to STL's leadership because several of Exoo's family members are either current or former members of STL's faculty.  He is a well-known campus fixture and long-time library employee and lecturer at a "small, private liberal arts university," who STL permits to give lectures on how to dox on STL's campus

## A.  Conspiracy to Violate 18 U.S.C. § 1962(d)

A conspiracy claim under 18 U.S.C. § 1962(d) can proceed even if the claims under another section of section 1962 are dismissed.  *Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001);

To establish liability for a *§ 1962(d)* claim Plaintiffs must allege an agreement to participate and that the defendant: (1) agreed to facilitate the operation of an enterprise through a pattern of racketeering activity; and (2) that defendant agreed that someone would commit at least two predicate acts. *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).   In *Salinas*, the Supreme Court averred that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *United States v. Salinas*, 522 U.S. 52, 63 (1997). The Supreme Court declared RICO conspiracy is "unlike the general conspiracy provision applicable to federal crimes," it "is even more comprehensive than the general conspiracy offense," because it does not require proof of an overt act. *Id.*  A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Id.* at 63-64.

The Third Circuit has held that the broad application of *§ 1962(d)* extends liability beyond those who have conspired personally to operate or manage a corrupt enterprise to those who are liable for a § 1962 violation on successful completion of the scheme.  *Smith*, 247 F.3d at 534 (3d Cir. 2001).  In *Smith*, the court emphasized that "one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators, which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, any particular element." *Id.* at 537.  Accordingly, liability for a RICO conspiracy may be found where the conspirator intended to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *United States v. Fattah*, 914 F.3d 112, 162 (3d Cir. 2019) (quoting Salinas 522 U.S. at 65).  To bring an action under *§ 1962(d)* Plaintiffs must show that they were injured

9

"from an act that is analogous to an act of a tortious character…that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000).  However, the Supreme Court has not decided whether "a RICO conspiracy must allege an actionable violation under §§ 1962(a)-(c), or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury." *Beck*, 529 U.S. at 506 n. 10.

### III.    CONCLUSION

STL is obligated to prevent their employees from using their work resources to commit violent and criminal acts to harm others.

For the foregoing reasons, defendants' motions for sanctions should be denied in its entirety.

Respectfully Submitted,

Dated: January 21, 2022    _____

Patrick Trainor, Esq.
*Attorney for Plaintiffs*