## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL D'AMBLY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY; NEW YORK DAILY NEWS; VIJAY GADDE; TWITTER, INC.; COHEN, WEISS AND SIMON LLP,<br><br>Defendants. | Case No. 2:20-cv-12880-JMV-JAD<br><br><br>Civil Action<br><br><br>**Motion Date: February 7, 2022** |

---

**REPLY MEMORANDUM OF LAW ON BEHALF OF DEFENDANT COHEN, WEISS AND SIMON LLP IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST PLAINTIFF PURSUANT TO FED.R.CIV.P. 11(C)**

---

Michael J. Canning, Esq. (MJC3060)
**GIORDANO, HALLERAN & CIESLA**
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

Attorneys for Defendant Cohen,
Weiss and Simon LLP

MICHAEL J. CANNING, ESQ.
   Of Counsel and on the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................ii

PRELIMINARY STATEMENT.......................................... 1

LEGAL ARGUMENT................................................. 4

    POINT I ................................................... 4

    SANCTIONS SHOULD BE IMPOSED AGAINST PLAINTIFF'S
    COUNSEL UNDER FED.R.CIV.P. 11............................. 4

    A. There is No New Information Pleaded in the FAC
       or SAC Which Justified Their Filing.................. 5

    B. No Attorney Client Relationship Existed Between
       D'Ambly And CWS..................................... 7

    C. CWS is Entitled to Section 301(b) Immunity As
       Its Representation of the Union in the Grievance
       Arose From the Collective Bargaining Agreement....... 8

    D. Plaintiff's Argument That the Union Was a
       Captive Labor Organization Has Also Previously
       Been Rejected by the Court.......................... 11

    E. Plaintiff's Reliance Upon Unpleaded Allegations
       Relating to Kelly Is Unavailing..................... 11

    F. Rule 11 Sanctions Are Appropriate Due to
       Plaintiff's Defiance in Pursuing a Claim Known
       to Be Barred By Unequivocal and Binding
       Precedent........................................... 12

CONCLUSION.................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

<u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101 (7th Cir. 1984) ................................................ 6

<u>Carino v. Stefan</u>, 376 F.3d 156 (3d Cir. 2004)............. passim

<u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243 (2d Cir. 1985) ........................................ 5

<u>Lieb v. Topstone Indus., Inc.</u>, 788 F.2d 151 (3d Cir. 1986) ................................................... 4

<u>Matthews v. Friedman</u>, 128 F.R.D. 194 (E.D. Pa. 1989).......... 4

<u>Zimmerman v. PepsiCo., Inc.</u>, 836 F.2d 173 (3d Cir. 1988)... 6, 12

**<u>Statutes</u>**

Section 301 of the Labor Management Relations Act......... passim

**<u>Rules</u>**

Fed. R. Civ. P. 11(b)........................................ 5

Fed. R. Civ. P. 11(c)........................................ 2

Rule 11............................................... 4, 12, 13

- ii -

## PRELIMINARY STATEMENT

Plaintiff Daniel D'Ambly has now filed a Complaint, a First Amended Complaint ("*FAC*") and Second Amended Complaint ("*SAC*"). As to Defendant Cohen, Weiss and Simon LLP ("*CWS*"), the sole count in the three complaints is an identical claim for legal malpractice. The claim for legal malpractice arises out of CWS' representation of Local One-L, Graphic Communications Conference of the International Brotherhood of Teamsters (the "*Union*") in a labor grievance challenging D'Ambly's termination from employment by the New York Daily News.

On November 1, 2021 this Court entered an Opinion and Order dismissing the FAC as to CWS (the "*Opinion*"). In the Opinion the Court found that the binding precedent by the Third Circuit Court of Appeals in Carino v. Stefan, 376 F.3d 156 (3d Cir. 2004) is directly on point. See Opinion at p. 6. In Carino, the Third Circuit unequivocally held that Section 301 of the Labor Management Relations Act ("*LMRA*") immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice. Carino, 376 F.3d at 162. See Opinion at p. 6. In dismissing Plaintiff's Complaint, the Court found that:

> Plaintiff's allegations fit squarely into the parameters discussed in Carino. Namely, Plaintiff seeks to hold Defendant liable because of the actions (or inaction) of two attorneys in representing the grievance

- 1 -

>related to Plaintiff's termination.  Because
>the Union retained Defendant to represent
>Plaintiff as to the grievance, Section 301(b)
>bars Plaintiff from asserting malpractice
>claims against Defendant.

[See Opinion at p. 7.]

The Court's dismissal Order was without prejudice and Plaintiff was given a 30-day period in which to amend the FAC to cure the deficiencies identified in the Opinion.  Plaintiff filed the SAC but asserted the identical facts and identical cause of action for legal malpractice against CWS.  This prompted CWS to file another motion to dismiss the SAC for the same reasons the FAC was dismissed.  Plaintiff has submitted no opposition to that motion, and therefore does not contest it.

On January 21, 2022, Plaintiff D'Ambly filed a brief in opposition to CWS' motion to impose sanctions under Fed. R. Civ. P. 11(c).  Plaintiff's primary argument is that "CWS is not entitled to Section 301(b) immunity, because there was no §301(a) CBA covering the litigant's relationship."  This frivolous position has already been soundly rejected by the Court in its Opinion in which it expressly found that the allegations in the FAC fit squarely into the parameters discussed in Carino.  See Opinion at pp. 6-7.

In his opposition brief, D'Ambly also argues, "Prior to refiling this Amended Complaint[1], D'Ambly obtained information that confirmed his termination and union expulsion did not arise out of the collective bargaining agreement…"  Plaintiff's Brief at p. 8. The "newly learned" evidence was apparently a tweet on October 29, 2018 from Bernadette Kelly, an elected Trustee for Teamsters Joint Council 16, in which she "liked" a tweet from Defendant Exoo which stated, "Yeah, no room for hate in our unions."  However, neither the FAC nor SAC contain any allegation relating to this alleged tweet from Ms. Kelly, and it provides no justification for the filing of the FAC and SAC which are directly contradictory to the binding Third Circuit precedent in Carino.  Moreover, even if the allegation were set forth in any of the Complaints, it would not change the legal analysis under Carino because it does not vitiate the immunity provided to CWS arising from its representation of the Union in the grievance.

No objectively reasonable attorney who conducted the reasonable inquiry mandated by Rule 11 could have concluded that there was a proper legal basis to proceed with the FAC as to CWS. Indeed, in dismissing the FAC, the Court could not have been any clearer in stating that Carino is directly on point and that the allegations in the Complaint fit squarely within its parameters.

---

[1] It is unclear whether Plaintiff is referring to the FAC or SAC.  However, as the Complaints are identical, the analysis remains the same.

As set forth in the Supplemental Certification of counsel, Plaintiff was given every opportunity to withdraw the FAC before the Court dismissed it, including a September 30, 2020 Notice Letter and November 17, 2020 motion for Rule 11 sanctions served within the Rule's 21-day safe harbor period before ultimately being filed with the Court.  Both the Notice Letter and motion advised Plaintiff of the controlling authority of <u>Carino</u> that dooms his malpractice claim against CWS.  Nonetheless, Plaintiff continued to pursue the malpractice claim in the FAC and SAC.

For all of these reasons, Rule 11 sanctions should be imposed against Plaintiff's counsel.

<strong><u>LEGAL ARGUMENT</u></strong>

<strong><u>POINT I</u></strong>

<strong>SANCTIONS SHOULD BE IMPOSED AGAINST PLAINTIFF'S COUNSEL UNDER FED.R.CIV.P. 11.</strong>

The Third Circuit has explained that Rule 11 is "intended to discourage pleadings that are 'frivolous, legally unreasonable or without factual foundation', even though the paper was not filed in subjective bad faith." <u>Lieb v. Topstone Indus., Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986).  Rule 11 is violated where a complaint is filed with a claim which was contradicted by "an unbroken line of cases to the contrary." <u>Matthews v. Friedman</u>, 128 F.R.D. 194, 201 (E.D. Pa. 1989).  The rule is violated where the complaint is filed and has no chance of success under existing precedent. <u>Eastway</u>

Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985).  Each of the three Complaints filed by Plaintiff violated Rule 11 because the single claim of legal malpractice asserted against CWS was barred by the unbroken line of cases, including the binding precedent in Carino, which immunized CWS from the claim of legal malpractice arising from its representation of the union in the grievance process.

In his opposition brief, Plaintiff fails to establish that the legal malpractice claim was warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law as required under Fed. R. Civ. P. 11(b).  Rather, Plaintiff compounds the frivolous position taken in his Complaints by making specious arguments which are directly contradicted by the allegations in Plaintiff's own Complaint and which have already been soundly rejected by the Court.

**A. There is No New Information Pleaded in the FAC or SAC Which Justified Their Filing.**

In Point II A of his brief, Plaintiff argues that new information was obtained and confirmed prior to filing the Amended Complaint (be it the FAC or the SAC).  He argues, "Prior to refiling this Amended Complaint, D'Ambly obtained information that confirmed his termination and union expulsion did not arise out of the collective bargaining agreement, rather anarchist extremists

influenced the Teamsters to cause his termination." Plaintiff's brief at p. 8. The "newly learned" information is a "like" by Bernadette Kelly, who Plaintiff claims is an elected Trustee for Teamsters Joint Council 16 of an October 29, 2018 tweet from Defendant Exoo which said, "Yeah, no room for hate in our unions." This argument fails both procedurally and substantively.

Procedurally, while Plaintiff argues in his brief that he was aware of this information prior to filing his Amended Complaint, neither the FAC nor the SAC asserts such an allegation. There is no reference in either the FAC or the SAC to Ms. Kelly's tweet. Nor is there any allegation that CWS was somehow aware of such communication which would have imposed any duty upon CWS to inform D'Ambly about the alleged influence and to seek independent counsel. As already found by the Court in its Opinion:

> Plaintiff cannot amend his pleading through a brief. Pa. ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988) ('it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)). Accordingly, Plaintiff fails to plead facts through which the court could assume that an implied attorney-client relationship existed.

[See Opinion at pp. 7-8.]

Substantively, even if Plaintiff had made any allegations in any of his Complaints relating to the Kelly tweet, this would not change the legal analysis. Whether Ms. Kelly liked or disliked

Exoo's tweet that, "Yeah, no room for hate in our unions", does not alter the undisputed fact that CWS represented the Union in the grievance relating to D'Ambly's termination and does not void the Section 301 immunity afforded to CWS resulting from this representation.

**B. No Attorney Client Relationship Existed Between D'Ambly And CWS.**

At Point II B of his brief, Plaintiff argues that an implied attorney client relationship existed between him and CWS.   He argues, "D'Ambly believed that CWS represented him, and shared personal and confidential information with CWS in furtherance of his belief that the represented him, including his desire and reason for wanting to be reinstated."   Plaintiff's opposition brief at p. 13.   However, the Court has already considered and rejected this identical argument.   In its Opinion the Court ruled:

> Plaintiff maintains that an implied attorney-client relationship was formed because he shared confidential materials with Defendant. Plf. Opp. at 6-7.  But the allegations in the Amended Complaint involve Defendant's failure to conduct an adequate investigation and its bias against Plaintiff's political beliefs and associations.   See Am. Compl. ¶¶ 72, 239. Plaintiff does not allege that he shared any confidential information with Defendant. Plaintiff cannot amend his pleading through a brief.  [See cases cited above]
>
> Accordingly, Plaintiff fails to plead facts through which the court could assume that an implied attorney-client relationship existed.

But even if an implied attorney-client relationship existed between Plaintiff and Defendant, it did not change the fact that Plaintiff's union retained Defendant and Defendant was working on the union's behalf. In <u>Carino</u>, the circuit acknowledged that the attorney may have owed Carino a duty of care but explained that 'this does not alter the fact that he as acting on behalf of the Union.' <u>Carino</u>, 376 F.3d at 162.  The Third Circuit explained that this additional duty owed to the individual employee does not alter the § 301(b) bar. <u>Id.</u>  Consequently, even assuming that an implied attorney-client relationship here, which it did not, Section 301(b) would likely still bar Plaintiff's claims against Defendant.

**C. CWS is Entitled to Section 301(b) Immunity As Its Representation of the Union in the Grievance Arose From the Collective Bargaining Agreement.**

In Point II C of his brief, Plaintiff argues that CWS is not entitled to Section 301(b) immunity against D'Ambly's state law claim because it did not perform a function under the collective bargaining agreement.  However, this argument has also been considered and squarely rejected by the Court.

In its Opinion, the Court recognized that, under <u>Carino</u>, "The protection of § 301(b) only applies where a union agent's liability grows out of activities performed in relation to a collective bargaining agreement." <u>See</u> Opinion at p. 6.  The Court found that under Plaintiff's own pleadings, it was clear that the claims asserted against CWS arose out of the collective bargaining agreement.  At p. 3 of the Opinion, the Court noted Plaintiff's allegation in ¶ 64 of the FAC that on January 23, 2019, the

President of Local One-L "informed the Daily News that they were appealing D'Ambly's termination pursuant to the terms of the Contract." The Court presumed (correctly so) that the "Contract" that D'Ambly referred to was Local One-L's collective bargaining agreement with the Daily News. See Opinion at p. 3 and footnote 1. The Court went on to find that the allegations in the FAC fit squarely within Carino:

> Here, Plaintiff pleads that after he was terminated by the Daily News, Plaintiff's union told the newspaper that it was going to appeal D'Ambly's termination 'pursuant to the terms of the Contract.' Am. Compl. ¶ 65. Thereafter, the union filed a grievance on Plaintiff's behalf. Plaintiff further alleges that the union hired Defendant to represent Plaintiff with respect to the grievance. Id. ¶ 68. In the malpractice claim, Plaintiff alleges that Defendant conducted inadequate legal research and investigation into the accusations that led to Plaintiff's termination. Plaintiff seems to allude that had Defendant conducted an appropriate investigation, it would have led to reinstatement. Id. ¶¶ 71-72, 239-45. Plaintiff's allegations fit squarely into the parameters discussed in Carino. Namely, Plaintiff seeks to hold Defendant liable because of the actions (or inaction) of two attorneys in representing the grievance related to Plaintiff's termination. Because the union retained Defendant to represent Plaintiff as to the grievance, Section 301(b) bars Plaintiff from asserting malpractice claims against Defendant. Id. at pp. 6-7.

Plaintiff argues that "D'Ambly was terminated because his employer feared counterattacks by Antifa after D'Ambly was doxed and dogpiled by anarchist extremists" which he believes took CWS'

representation out of the ambit of the collective bargaining agreement. Plaintiff's brief at p. 17. To support this argument, Plaintiff disingenuously cites to only a portion of the letter of January 22, 2019 in which the Daily News terminated his employment (the "*Termination Letter*"). Placed in its full context, the letter reads:

> You are not an innocent victim. You are being targeted by this group because you made the choice to associate with the NJEHA and to go into the public making anti-Semitic and racist comments. In addition, your choice to take these repulsive actions has now put our workplace and employees at risk of counterattacks by Antifa. *This is a violation of Article 34 – No Discrimination and Article 39 – Safety and Health in the New York Orthographers and Photo-Engravers union contract (the collective bargaining agreement)*. (emphasis added)

In the Termination Letter the Daily News alleged that there were violations of two articles of the collective bargaining agreement, which resulted in Plaintiff's termination. The Union, being the party to the collective bargaining agreement, filed a grievance with regard to this termination and retained CWS to represent the Union with regard to the grievance. As the Court has already found, it is unequivocal that CWS' representation of the Union in the grievance arose from the collective bargaining agreement and therefore CWS was immune from liability to Plaintiff for legal malpractice. No reasonably objective attorney applying

the binding precedent of <u>Carino</u> to the facts alleged could reach a contrary conclusion.

**D. Plaintiff's Argument That the Union Was a Captive Labor Organization Has Also Previously Been Rejected by the Court.**

In Point D of his brief, Plaintiff argues that anarchist extremists threatened violence and intimidation which rendered the Teamsters a captive labor organization.  Plaintiff's brief at p. 18.  However, in its Opinion at p. 9 the Court soundly rejected this argument, finding no such allegations were made in the FAC and that, "Moreover, Plaintiff cites no legal authority demonstrating that 301(b) does not apply if there is a captive labor organization.  This argument, therefore, is rejected."

**E. Plaintiff's Reliance Upon Unpleaded Allegations Relating to Kelly Is Unavailing.**

In Point E of his brief, Plaintiff argues that he introduced new information, purportedly being the communication from Bernadette Kelly, with his SAC which created a good faith belief that the Teamsters were a captive labor organization unable to freely make a decision concerning D'Ambly.  This argument fails on several levels.

First, the Court has already considered and rejected the captive labor organization argument as Plaintiff cited no legal authority demonstrating that Section 301(b) does not apply if there is a captive labor organization.  Even if the Kelly tweet somehow converted the Union into a captive labor organization,

this would be legally irrelevant for purposes of determining CWS' Section 301 immunity.

Further, CWS' motion for Rule 11 sanctions is based on the allegations in the FAC, not the SAC.  The FAC is void of any reference to the Kelly tweet or any claim relating to the union being a captive labor organization.  D'Ambly is not entitled to import additional "facts" which he concedes he was not aware of when he filed the FAC, in order to attempt to prove that his pursuit of the malpractice claim was reasonable.

Finally, even if the Court were to consider the allegations in the SAC as it relates to the pending motion for sanctions directed at the FAC, the SAC is identical to the FAC.  Plaintiff has failed to plead in the SAC any allegation relating to the Kelly tweet or the Union being a captive labor organization.  As already found by the Court, Plaintiff cannot amend his pleading through his brief.  See Opinion at pp. 7-8; Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

**F. Rule 11 Sanctions Are Appropriate Due to Plaintiff's Defiance in Pursuing a Claim Known to Be Barred By Unequivocal and Binding Precedent.**

As already made clear by the Court, the binding precedent of Carino controls Plaintiff's sole claim against CWS for legal malpractice.  Before the Court dismissed Plaintiff's Complaint based on Carino, Plaintiff was given every opportunity to withdraw the Complaint in order to avoid sanctions.  He was first provided

the Notice Letter on September 30, 2020 in which he was advised that Carino was directly on point and was dispositive of Plaintiff's claim for legal malpractice.  He was directed to decisions by other circuit courts of appeal from which the Carino court found that "with monotonous regularity [other courts of appeals have] cited Atkinson to foreclose state law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." Id. at 160.  He was advised by the finding by the Third Circuit in Carino that:

> The only courts of appeal to have considered the specific question presented here, where attorneys acted on behalf of the union, have uniformly concluded that Atkinson prohibits claims made by a union member against attorneys employed by or retained by the union to represent the member in a labor dispute.

[See Notice Letter at p. 5.]

Despite the uniform controlling precedent contrary to Plaintiff's position, Plaintiff refused to withdraw the Complaint. On November 17, 2020 Plaintiff was served with CWS' Rule 11 motion for sanctions and was advised that the motion would not be filed within the 21-day safe harbor provision.  Plaintiff continued to refuse to withdraw the Complaint as to CWS.

Rather, Plaintiff doubled down by filing the FAC.  However, as to CWS, the factual allegations and single cause of action remained identical.  On April 6, 2021, Plaintiff's counsel was

served with further notice that because the allegations in the FAC remained identical as to CWS, the FAC violated Rule 11 in the same manner as did the original Complaint.  Plaintiff's counsel was advised that CWS adopted and incorporated as if set forth at length therein the September 11, 2020 Notice Letter and motion for Rule 11 sanctions which were served on November 17, 2020.  Undeterred, Plaintiff refused to withdraw the FAC.

Accordingly, CWS was compelled to file its motion to dismiss which ultimately resulted in the Opinion dismissing Plaintiff's Complaint.  The SAC failed to cure any deficiencies with regard to CWS and simply reiterated the identical factual allegations and single cause of action against CWS.  Plaintiff does not oppose CWS' motion to dismiss the SAC.

Plaintiff's intransigence has caused CWS to incur significant legal expenses, which will be detailed in an Affidavit of Services to be provided to the Court if its Rule 11 motion is granted, all of which costs could and should have been avoided by Plaintiff withdrawing the Complaint, as amended, when requested to do so on multiple occasions.

<u>CONCLUSION</u>

For the reasons set forth at length herein, CWS respectfully requests that the Court determine that Plaintiff's counsel has violated Rule 11 and issue sanctions in the amount of the reasonable attorney's fees incurred by CWS in having to respond to

- 14 -

the Complaint, as amended.  An Affidavit of Services will be provided to the Court if the motion is granted.

Respectfully submitted,

GIORDANO, HALLERAN & CIESLA, P.C.
Attorneys for Defendant Cohen,
Weiss and Simon LLP

By: _____

MICHAEL J. CANNING, ESQ.

Dated:  January 28, 2022

Docs #5504750-v1