**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

DANIEL D'AMBLY, ET AL.,
Plaintiffs,

vs.

CHRISTIAN EXOO a/k/a ANTIFASH GORDON, ET AL.,
Defendants.

Civil Action No.

2:20-cv-12880-JMV-JSA

Honorable John Michael Vazquez
United States District Judge

**Oral Argument Requested**

Motion Date: February 7, 2022

# REPLY IN SUPPORT OF DEFENDANTS TWITTER, INC. AND VIJAYA GADDE'S MOTION TO DISMISS WITH PREJUDICE COUNTS IV, V, AND VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT AND CROSS-CLAIMS FILED BY CO-DEFENDANT COHEN, WEISS AND SIMON

Lawrence S. Lustberg (ID#023131983)
Lauren James-Weir (ID#025202007)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4731
Facsimile: (973) 639-6285
llustberg@gibbonslaw.com
ljames-weir@gibbonslaw.com

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com
ari.holtzblatt@wilmerhale.com

*Attorneys for Defendants Twitter, Inc. and Vijaya Gadde*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Court Should Dismiss With Prejudice Counts Four and Seven, As To Which Plaintiffs' Opposition Simply Defaults. .......... 2

II. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed. .......... 3

A. Plaintiffs Have Not Alleged A Substantive RICO Offense. .......... 3

B. Plaintiffs Have Not Alleged The "Agreement" Or "Intent" Elements Of A RICO Conspiracy. .......... 7

C. Plaintiffs Cannot Save Their RICO Conspiracy Claim Based On An Unpleaded Aiding-And-Abetting Theory. .......... 8

III. Section 230 Independently Requires Dismissal With Prejudice. .......... 9

A. The Twitter Defendants Did Not Author Or Develop Exoo's Tweets. .......... 10

B. Plaintiffs' Other Arguments, Including Those Concerning The Defendants' Supposed "Knowledge" And "Bias," All Fail. .......... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Wolk*,
918 F.2d 418 (3d Cir. 1990) ....................5

*Batzel v. Smith*,
333 F. 3d 1018 (9th Cir. 2003) ....................14

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998) ....................14

*Burroughs v. City of Newark*,
2013 WL 4047588 (D.N.J. Aug. 9, 2013) ....................9

*Care One Mgmt., LLC v. United Healthcare Workers East*,
2013 WL 5603881 (D.N.J. Oct. 10, 2013) ....................6

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) ....................9

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ....................13

*Dialysis Patient Citizens v. Azar*,
2021 WL 184318 (D.D.C. Jan. 19, 2021) ....................4

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ....................12, 13

*Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157 (9th Cir. 2009) ....................10, 11, 12

*Fields v. Twitter*,
200 F. Supp. 3d 964 (N.D. Cal. 2016) ....................13

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ....................10, 11, 13

*Green v. Am. Online (AOL)*,
318 F.3d 465 (3d Cir. 2003) ....................11, 13

*Howes v. New York Life Ins. Co.*,
2017 WL 1176087 (D. Md. Mar. 30, 2017) ....................4

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016) .......... 12

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) .......... 4

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) .......... 15

*United States v. Local 560 of the Int'l Bhd of Teamsters*,
780 F.2d 267 (3d Cir. 1985) .......... 5

*Nat'l Sec. Sys., Inc. v. Iola*,
700 F.3d 65 (3d Cir. 2012) .......... 5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .......... 9, 12, 15

*Noel v. Bank of New York Melon*,
2019 WL 1434939 (D.N.J. Apr. 1, 2019) (Vazquez, J.) .......... 3, 4

*O'Rourke v. Crosley*,
847 F. Supp. 1208 (D.N.J. 1994) .......... 5

*Obado v. Magedson*,
2014 WL 3778261 (D.N.J. July 31, 2014), *aff'd* 612 F. App'x 90 (3d Cir. 2015) .......... 11, 14

*Olson v. Ako*,
724 F. App'x 160 (3d Cir. 2018) .......... 5

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020) .......... 12

*Parker v. Google, Inc.*,
242 F. App'x 833 (3d Cir. 2007) .......... 13

*Pennsylvania Ass'n of Edwards Heirs v. Rightenour*,
235 F.3d 839 (3d Cir. 2000) .......... 9

*Roman Restoration, Inc. v. Operative Plasterers' and Cement Masons' Int'l Ass'n*, 2008 WL 2684350 (D.N.J. June 30, 2008) .......... 6

*Scheidler v. National Org. for Women, Inc.*,
537 U.S. 393 (2003) .......... 6

*Shiamili v. Real Estate Grp. Of N.Y., Inc.*,
952 N.E.2d 1011 (N.Y. 2011)........................................................................12

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015)..........................................................9

*The Knit With v. Knitting Fever, Inc.*,
625 F. App'x 27 (3d Cir. 2015).........................................................................8

**Statutes**

Labor-Management Relationship Disclosure Act ("LMRDA")...................1, 2, 5

RICO ...................................................................................................*passim*

## INTRODUCTION

Plaintiffs have had three chances to try to plead claims against the Twitter Defendants. Their Opposition to the Twitter Defendants' latest motion confirms that they cannot do so and that dismissal—now with prejudice—is necessary.

The Opposition does not even attempt to address any of the defects in Plaintiffs' substantive RICO claim (Count Four) or their Labor-Management Relationship Disclosure Act ("LMRDA") claim (Count Seven). This default by itself warrants dismissal with prejudice of those two claims.

As for their RICO conspiracy claim (Count Five), Plaintiffs ignore the fatal deficiencies that the Twitter Defendants identified. Plaintiffs still fail to show how the SAC plausibly alleges the requisite "agreement" and "intent" elements of such a claim. Nor do they cure the basis for this Court's prior dismissal: failure to plead any RICO predicate act. Instead, Plaintiffs attempt to pivot, arguing that the Twitter Defendants are liable for "aiding and abetting" the commission of a RICO offense. But Plaintiffs may not use their Opposition to try to assert a claim found nowhere in the SAC, and, in any event, no cause of action for aiding-and-abetting even exists under RICO.

Finally, Plaintiffs have no valid answer to the Twitter Defendants' showing that Section 230 independently mandates dismissal of all claims against them, including the RICO conspiracy claim. Plaintiffs argue, without any basis in the SAC, that the Twitter Defendants "develop[ed]" the Tweets that allegedly led to

their injuries (ECF No. 123 [hereafter, "Opp."] 9). They did not. The SAC itself makes clear that neither Twitter nor Ms. Gadde authored or "contributed" at all to the Tweets at issue. And Plaintiffs' other contention—that Section 230 does not apply because the Twitter Defendants allegedly "knew" of the "illicit conduct" (Opp. 11)—is contrary to legions of uniform case law.

Because Plaintiffs have repeatedly failed to cure their fatal pleading defects, including defects already identified by the Court, all claims against the Twitter Defendants should be dismissed with prejudice.

## ARGUMENT

### I. The Court Should Dismiss With Prejudice Counts Four and Seven, As To Which Plaintiffs' Opposition Simply Defaults.

Plaintiffs default on two of their claims against the Twitter Defendants—their substantive RICO claim (Count Four), and their claim for deprivation of rights under the LMRDA (Count Seven). The Twitter Defendants' motion demonstrated (1) that the substantive RICO claim must be dismissed based on the SAC's failure to plead RICO's predicate offense, enterprise, proximate cause, and injury elements, Mot. 13-28; (2) that the LMRDA claim must be dismissed because that criminal statute creates no private right of action, Mot. 28-30; and (3) that the immunity afforded by Section 230 independently bars both claims, Mot. 30-36. But aside from its generalized and wholly ineffective (*see infra* pp. 9-15) discussion about Section 230, Plaintiffs' Opposition offers no response whatsoever. By leaving the Twitter Defendants' front-line grounds for

dismissing Counts Four and Seven totally unrebutted, Plaintiffs have conceded that these Counts should be dismissed. *See Noel v. Bank of New York Melon*, 2019 WL 1434939, at *4 (D.N.J. Apr. 1, 2019) (Vazquez, *J.*) (because "[p]laintiffs' opposition failed to refute [defendant's] failure-to-state-a-claim arguments," plaintiffs "essentially concede[d]" that they had "fail[ed] to state claims for relief") (internal quotation marks omitted).

## II. Plaintiffs' RICO Conspiracy Claim Should Be Dismissed.

### A. Plaintiffs Have Not Alleged A Substantive RICO Offense.

In dismissing the FAC, this Court held that "[a]ny claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." (ECF No. 99 ["Dismissal Op."] 8) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993)). Here again, as the Twitter Defendants' motion explains, Plaintiffs' substantive RICO claims are fatally deficient for multiple, independent reasons, including because the SAC fails to allege (1) the elements of either of the RICO predicate acts that the SAC references, *see* SAC ¶ 192; Mot. 13-16; (2) that any "racketeering" conduct proximately caused Plaintiffs' injuries, *see* Mot. 22-24; and (3) for at least many of the Plaintiffs, that they suffered any injury to their "business or property." Mot. 24-25.

Instead of addressing this Court's prior holdings or any of these arguments, Plaintiffs focus (Opp. 11) on *Salinas v. United States* and its holding that "a conspiracy may exist even if a conspirator does not agree to commit or facilitate

each and every part of the substantive offense." 522 U.S. 52, 63 (1997). But that unremarkable holding is of no help to Plaintiffs here. To state a conspiracy claim, they would still have to allege '"an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense."' *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (quoting *Salinas*, 522 U.S. at 65); *see also* Dismissal Op. 8. Because their Opposition fails even to respond to the Twitter Defendants' showing that the SAC does not allege many of those elements, Plaintiffs have "essentially concede[d]" that their RICO conspiracy claim should be dismissed. *See Noel*, 2019 WL 1434939, at *4.

While Plaintiffs' Opposition to the Twitter Defendants' motion is entirely silent on the point, their opposition to Exoo's motion to dismiss purports to answer the question whether the SAC pleads the predicate act element of a RICO claim. The Court should not consider these arguments against the Twitter Defendants, as they were raised in opposition to another defendant's motion to dismiss. *See, e.g., Dialysis Patient Citizens v. Azar*, 2021 WL 184318, at *6-7 (D.D.C. Jan. 19, 2021) (treating "Defendants' ripeness argument as conceded," where "Plaintiffs' first mention of ripeness came not even in a reply to Defendants' motion to dismiss, but in opposition to another motion entirely"); *Howes v. New York Life Ins. Co.*, 2017 WL 1176087, at *4 (D. Md. Mar. 30, 2017) (granting motion to dismiss after noting that only argument in opposition was offered in a memorandum addressing a different motion).

In any event, both contentions Plaintiffs make in opposition to Exoo's

motion—that the SAC supposedly alleges predicate acts of "wire fraud" (as to all Plaintiffs) and of violating the Hobbs Act through the "extortion" of LMRDA rights (as to only D'Ambly), *see* ECF No. 122 at 16-22—are meritless. The first is a nonstarter because the SAC makes no mention at all of "wire fraud." As this Court has already recognized in this case, Dismissal Op. 10 n.5, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018). And more fundamentally, the SAC contains no factual allegations that would even begin to support the essential elements of a "wire fraud" predicate. In particular, to plead "wire fraud," the plaintiff must allege that the defendant intended to "obtain[] money or property" from the plaintiff. *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). There are no such allegations here. *See* Mot. 13-15. Nor is there any allegation that any Defendant (or anyone else) acted "fraudulently," let alone allegations that plead any fraudulent conduct with particularity. *See Banks v. Wolk*, 918 F.2d 418, 422 n.1 (3d Cir. 1990).

Likewise meritless is Plaintiffs' suggestion (again made only in the opposition to Exoo's motion) that the SAC plausibly alleges a Hobbs Act predicate act based on the alleged "extortion" of D'Ambly's LMRDA rights. That suggestion erroneously relies (ECF No. 122 at 20-22) on two cases[1] that applied an outdated test for extortion that was superseded by the Supreme Court's

[1] *United States v. Local 560 of the Int'l Bhd. of Teamsters*, 780 F.2d 267 (3d Cir. 1985); *O'Rourke v. Crosley*, 847 F. Supp. 1208 (D.N.J. 1994).

decision in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003). *See Roman Restoration, Inc. v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 2008 WL 2684350, at *3 (D.N.J. June 30, 2008) (applying *Scheidler*'s test). In *Scheidler*, the Court held that the essential elements of a Hobbs Act violation include that the defendant sought or "'obtain[ed]' respondents' property"—in other words, that the defendant "pursued [or] received something of value from [the plaintiff] that [the defendant] could exercise, transfer, or sell." 537 U.S. at 405. No such facts are alleged in this case.

The SAC plainly fails to allege any Hobbs Act violation because it contains no allegation that anyone sought or obtained Plaintiff D'Ambly's property within the meaning of *Scheidler*. In the SAC, as in the FAC, Plaintiffs "focus their RICO claims on allegations that they lost their jobs because of Exoo's doxing." Dismissal Op. 7. But "the loss of a job alone does not constitute a Hobbs Act violation because no one obtains another person's property." *Id.*; *see also Care One Mgmt., LLC v. United Healthcare Workers East*, 2013 WL 5603881, at *6 (D.N.J. Oct. 10, 2013) (under *Scheidler*, plaintiffs must "demonstrate some action beyond an interference with [their] property right"). Nor can D'Ambly's allegations concerning "harassment" and property damage suffice, Mot. 14, because those allegations similarly fail to indicate that Defendants (or anyone else) "obtained" anything at all from D'Ambly, let alone "something of value" that they could "exercise, transfer, or sell." *Scheidler*, 537 U.S. at 405.

As noted, Plaintiffs' Opposition simply ignores the Twitter Defendants'

other arguments concerning why the SAC fails to plead a substantive RICO offense. In particular, it offers no response to the showing that the SAC fails to allege proximate cause, even though, as the Twitter Defendants' motion explained, Plaintiffs cannot allege that they were injured "by reason of" the alleged racketeering because of the multiple intervening events and actors between that conduct and the injuries Plaintiffs allegedly sustained. Mot. 22-24. Plaintiffs likewise have no response to the argument that for at least five of the Plaintiffs, the SAC fails to allege the type of "business or property" interests that may be compensated under RICO. Mot. 24-25. Indeed, in their response to Exoo's brief, Plaintiffs effectively concede that they cannot satisfy the "injury" element for all but three Plaintiffs. *See* ECF No. 125 at 14-15.

**B. Plaintiffs Have Not Alleged The "Agreement" Or "Intent" Elements Of A RICO Conspiracy.**

Plaintiffs' Opposition fails to overcome the Twitter Defendants' demonstration that the SAC does not allege either (1) a "meeting of the minds," as would be necessary to satisfy the "agreement" element of any conspiracy, or (2) the "purposeful[] and knowing[]" facilitation of racketeering. Mot. 26-27.

Plaintiffs' response is meritless, both because it rests on alleged facts that the SAC never mentions and because the proposition those new facts supposedly support—that Twitter allegedly had notice of Exoo's doxing—does not fill the holes in their conspiracy theory. Specifically, Plaintiffs now assert that a different Twitter account, operated under the handle @emilygorcenski, retweeted Exoo's

"doxes," including those pertaining to Plaintiffs, and that those retweets may have come to the attention of Twitter's former CEO, Jack Dorsey, because Mr. Dorsey allegedly "followed" the @emilygorcenski account. Opp. 7, 9. Those assertions should be disregarded because they are not alleged in the SAC. *See supra* p. 5. Moreover, the only supposed factual support for those assertions in Plaintiffs' Opposition—a single Tweet thread in which unknown individuals accused the @emilygorcenski account of doxing—in no way even suggests that the @emilygorcenski account re-published any of Exoo's "doxes" about Plaintiffs, much less that Mr. Dorsey saw any of those "doxes."

Regardless, as the Third Circuit has held, even a defendant's alleged "awareness" of an alleged enterprise's activities at the time that the defendant allegedly provided "services" to the enterprise is not enough to satisfy the intent or agreement elements of a RICO conspiracy claim. *See The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 35-36 (3d Cir. 2015). Rather, the complaint must allege that the defendant "purposely and knowingly" directed its services "at facilitating a criminal pattern of racketeering activity," and that it "objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise." *Id.* Plaintiffs' allegations—including those improperly injected via their Opposition—fall far short of that standard. Mot. 25-27.

### C. Plaintiffs Cannot Save Their RICO Conspiracy Claim Based On An Unpleaded Aiding-And-Abetting Theory.

Finally, as this Court has already held, *see* Dismissal Op. 10 n.5, Plaintiffs

cannot avoid dismissal by trying to recast their RICO conspiracy claim as an aiding-and-abetting claim. *See* Opp. 7-9. The words "aiding and abetting" appear nowhere in the SAC. More fundamentally, aiding-and-abetting liability does not exist under RICO. Following the Supreme Court's seminal decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), the Third Circuit squarely held that "RICO's statutory text does not provide for a private cause of action for aiding and abetting." *Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 840 (3d Cir. 2000). The cases on which Plaintiffs rely (Opp. at 7-9) have no bearing because they were decided before these binding Supreme Court and Third Circuit precedents.[2]

## III. Section 230 Independently Requires Dismissal With Prejudice.

Section 230 independently mandates dismissal. Mot. 30-36. As numerous courts have recognized, dismissal under Section 230 should be with prejudice, so as to "protect websites," like Twitter, "from having to fight costly and protracted legal battles." *See, e.g.*, *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (Section 230 "is an *immunity from suit* rather than a mere defense to liability"). This principle

---

[2] Even if aiding-and-abetting liability were both available under RICO and asserted in the SAC (neither of which is true), dismissal would still be necessary because the SAC does not plausibly allege basic elements of aiding-and-abetting, including that the Twitter Defendants acted with the requisite purpose of facilitating the alleged principal's criminal conduct. *See Burroughs v. City of Newark*, 2013 WL 4047588, at *7 (D.N.J. Aug. 9, 2013).

applies with special force here, where the Twitter Defendants have now had to file ***three*** motions to dismiss.

Plaintiffs do not contest that two of the three prerequisites for Section 230 immunity are evident on the face of the SAC: that "the defendant is a provider or user of an 'interactive computer service'" and that "the asserted claims treat the defendant as the publisher or speaker of the information." Mot. 31. And the Court should reject Plaintiffs' argument that the third prerequisite—that "the information is provided by another 'information content provider'" (*id.* at 31-32)—is not met. (Opp. 9-16). The SAC, Plaintiffs' Opposition, and, indeed, the entire thrust of Plaintiffs' RICO conspiracy claim, all rest on the proposition that the content at issue—the Tweets that allegedly led to Plaintiffs' harm—was authored entirely by Mr. Exoo and his "associates," without any input from the Twitter Defendants. *See* Mot. 33-34.

**A. The Twitter Defendants Did Not Author Or Develop Exoo's Tweets.**

Plaintiffs err in contending that the Twitter Defendants are not entitled to Section 230 immunity because they supposedly "develop[ed]" the content at issue. Opp. 9-16. For purposes of Section 230, "a defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'" *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019); *accord Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1167-68 (9th Cir.

2009). Here, Plaintiffs allege that what "made the content [of Mr. Exoo's Tweets] 'unlawful,'" *Force*, 934 F.3d at 68, were his public identification of Plaintiffs' involvement in far-right political organizations, and his requests or urgings that others harass and take "direct action" against Plaintiffs. *See* SAC at 2-5, ¶¶ 182-84. The SAC specifically alleges that all of this content was created and developed by Exoo (and sometimes his "associates"), *not* by Twitter or Ms. Gadde.[3] The SAC does not allege that either Twitter or Ms. Gadde authored even a single word in Mr. Exoo's Tweets. Nor does it allege that they "edit[ed] (or suggest[ed] edits)" for them. *See Force*, 934 F.3d at 69-70.

Instead, the SAC alleges only that the Twitter Defendants failed to ban Mr. Exoo from the Twitter platform, despite their allegedly having been placed on notice that he was "doxing" and involved in "social coordination," in violation of Twitter's rules. *See* SAC ¶¶ 32-34, 176-80. But Section 230 immunity "extends to the service provider's decisions about how to treat potentially objectionable material." *Obado v. Magedson*, 2014 WL 3778261, at *5 (D.N.J. July 31, 2014), *aff'd* 612 F. App'x 90 (3d Cir. 2015). Courts have therefore repeatedly rejected the argument that Section 230 does not apply when a defendant allegedly fails to remove content "in violation of [its] terms of use and privacy policies." *Id.*; *see also, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003). Courts similarly recognize that claims challenging a provider's "provision of accounts"

---

[3] SAC ¶¶ 47-49, 52-53, 55-56, 60, 64, 80-82, 98-99, 101-03, 108, 110, 113-16, 119-20, 122-24, 126, 128-29, 132-36, 138-40, 144-47.

or decisions regarding "who may use [the] platform" fall within the scope of claims that are covered by Section 230. *See* Mot. 35-36 (collecting cases).

The Section 230 cases on which Plaintiffs rely (Opp. 13-16) are entirely inapposite. *Roommates* and *Accusearch* involved allegations that the defendants specifically sought, or required, the posting of inherently illegal content. In *Accusearch*, the website operator allegedly paid for and "solicited requests for confidential information protected by law"—thereby "'almost inevitably requir[ing] [the operator's researchers] to violate'" the law, *Shiamili v. Real Estate Grp. Of N.Y., Inc.*, 952 N.E.2d 1011, 1019 (N.Y. 2011) (quoting and distinguishing *Fed. Trade Comm'n v. Accusearch*, 570 F.3d 1187, 1192 (10th Cir. 2009)). Likewise, "the website in *Roommates.com* required users to input illegal content as a necessary condition of use" of the website, and thereby forfeited immunity with respect to the particular content that the users were compelled to provide. *Nemet*, 591 F.3d at 257 (distinguishing *Roommates.com*). The SAC's allegations are not even remotely similar. The Twitter Defendants are not alleged to have "solicited," "paid for," or "required" Exoo to disclose information about Plaintiffs or to direct anyone to harass them. *Huon* and *Pace* are even further afield, as in both those cases the defendants themselves authored some of the allegedly injurious content. *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016); *Pace v. Baker-White*, 432 F. Supp. 3d 495, 506-07 (E.D. Pa. 2020).

*Internet Brands* is also inapposite. There the court declined to apply Section 230 because the plaintiff's failure-to-warn claim did not seek to hold the

defendants liable for harm that allegedly flowed from third-party content that had appeared on their platform or from any failure to remove such content. *See Doe v. Internet Brands, Inc.*, 824 F.3d 846, 848-49 (9th Cir. 2016). Here, in sharp contrast, the claims against the Twitter Defendants derive from the allegedly harmful effects of content that Mr. Exoo posted on Twitter, and seek to impose liability on the Twitter Defendants for their alleged failure to block or remove that content. *See supra* 11-12. Section 230 thus readily applies here.

### B. Plaintiffs' Other Arguments, Including Those Concerning The Defendants' Supposed "Knowledge" And "Bias," All Fail.

Plaintiffs' other attempts to circumvent Section 230 are meritless. *First*, they err in asserting the Twitter Defendants were transformed into information content providers because they allegedly "knew" of Mr. Exoo's "doxing." Opp. 9, 11, 16. For 25 years, since the seminal case of *Zeran v. America Online, Inc.*, courts across the country have uniformly rejected that argument. 129 F.3d 327, 333 (4th Cir. 1997). Plaintiffs falsely assert that "none of the provider[s] in Twitter's cited authorities knew of the illicit conduct as it occurred." Opp. 11. In fact, Twitter cited half a dozen cases[4] applying Section 230 in instances where the plaintiffs had specifically alleged that the service-provider defendant "knew" of the injurious content yet failed to remove it. *See* Mot. 30-36. And those cases

[4] *Force*, 934 F.3d at 58; *Green*, 318 F.3d at 469; *Zeran*, 129 F.3d at 333; *Crosby v. Twitter, Inc.*, 921 F.3d 617, 620 (6th Cir. 2019); *Fields v. Twitter*, 200 F. Supp. 3d 964, 967 (N.D. Cal. 2016); *Parker v. Google, Inc.*, 242 F. App'x 833, 838 (3d Cir. 2007).

represent a mere sampling of such authority. As *Zeran* recognized, and these cases have confirmed, "[l]iability upon notice would defeat the dual purposes advanced by § 230" because it would "reinforce[] service providers' incentives to restrict speech and abstain from self-regulation." *Zeran*, 129 F.3d at 333.

*Second*, Plaintiffs' suggestion that Section 230 immunity depends on the content's author being "anonymous" or "unknown" (Opp. 11-12) is likewise erroneous. *E.g.*, *Batzel v. Smith*, 333 F. 3d 1018, 1021 (9th Cir. 2003) (recognizing availability of immunity for content from identified individual); *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998) (recognizing immunity for content authored by well-known gossip columnist).

*Third*, Plaintiffs are incorrect that Section 230 applies only where a service provider acts as a "neutral conduit[] or [p]assive transmitter[]" of content. Opp. 12. An "important purpose" of Section 230 was "to encourage service providers to self-regulate the dissemination of offensive material over their services." *Zeran*, 129 F.3d at 331. Courts have even applied Section 230 in cases (unlike this one) in which a service provider actively sought and promoted the creation of the particular type of content at issue because "Congress … made a … policy choice … [to provide] immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *Blumenthal*, 992 F. Supp. at 52; *see also, e.g.*, *Obado*, 612 F. App'x at 93-94 (applying Section 230 notwithstanding allegations that defendants "manipulated search engines to maximize search results relating to the alleged defamatory

content"); *Nemet*, 591 F.3d at 256-57 (same where website operator allegedly '"solicit[ed]"' consumer complaints and '"steered"' them into "specific categor[ies] designed to attract attention by consumer class action lawyers").

*Finally*, the Court should disregard the Opposition's new allegations concerning Twitter's blue-check verification program, Opp. 16, as once again, those allegations are nowhere to be found in the SAC. *See supra* pp. 5, 8. But, even if the Court were to consider these unpleaded and unsupported allegations, they change nothing. Twitter's years-ago suspension of the verification program does not, as Plaintiffs assert, plausibly support an inference that Twitter held a "bias" against white supremacists. Opp. 16. And even if it did, that too would not defeat Section 230 immunity. Courts regularly uphold Section 230 immunity for allegedly biased publishing decisions. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953-55 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (applying Section 230 where plaintiff alleged defendant was "censoring" his videos due to its opposition to plaintiff's political views).

## CONCLUSION

The Court should dismiss, with prejudice, all of Plaintiffs' claims against the Twitter Defendants, as well as CWS's cross-claims.[5]

Respectfully submitted,

January 31, 2022 /s/ Lawrence S. Lustberg

[5] CWS's failure to respond at all to the Twitter Defendants' multiple motions to dismiss plainly warrants dismissal of its cross-claims. *See supra* p. 3.