**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL D'AMBLY, et al.,

    *Plaintiffs*,

v.

CHRISTIAN EXOO a/k/a ANTIFASH GORDON, et al.,

    *Defendants*.

Civil Action No. 20-12880

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    In this case, Plaintiffs, purported far right activists and their family members, take aim at Defendant Christian Exoo, a purported far left activist, and others for their alleged doxing campaigns because of Plaintiffs' political views.  The overarching issue is whether the doxing crossed a legal line into unlawful action.  Plaintiff Daniel D'Ambly ("Plaintiff" or "D'Ambly") also asserts a stand-alone malpractice claim against Defendant Cohen, Weiss, and Simon LLP ("CWS"), the law firm that represented D'Ambly in a grievance action after he was terminated from his job because of Defendants' doxing.

    Presently before the Court are CWS's motions to dismiss and for sanctions.  D.E. 105, 120. CWS seeks for the Court to dismiss the malpractice claim from the Second Amended Complaint ("SAC") and sanction D'Ambly for bringing the frivolous claim in the First Amended Complaint ("FAC").  D'Ambly filed a brief in opposition to the motion for sanctions, D.E. 121, to which

CWS replied, D.E. 126. D'Ambly did not file a brief in opposition to CWS's motion to dismiss.[1] The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and the motion for sanctions is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the pending motion, the Court does not retrace this case's full factual and procedural history. This Court's November 1, 2021 opinions granting CWS's Rule 12(c) motion to dismiss ("MTD Opinion"), D.E. 97, and the remaining Defendants' Rule 12(b)(6) motions to dismiss, D.E. 99, include a detailed recounting of the factual background of this matter. To the extent relevant to the instant motions, the Court incorporates the factual and procedural history from these prior opinions.

D'Ambly's initial Complaint largely addressed Exoo's alleged doxing campaign. In Count XIII, however, D'Ambly asserted a claim for legal malpractice against CWS. *See* Compl, ¶¶ 154-61. CWS represented D'Ambly in a grievance matter that D'Ambly's union filed on his behalf after D'Ambly was terminated from his job because of the alleged doxing campaign. *Id.* ¶ 48. D'Ambly does not allege that CWS was involved in any of the doxing efforts, and the other twelve counts, which pertain to the doxing itself, are not asserted against CWS. CWS subsequently answered the complaint. D.E. 12.

---

[1] For purposes of this Opinion, the Court refers to CWS's brief in support of its motion to dismiss (D.E. 120-1) as "CWS MTD Br."; its brief in support of its motion for sanctions (D.E. 105-1) as "CWS Sanctions Br."; Plaintiff's brief in opposition to the motion for sanctions (D.E. 121) as "Plf. Opp."; and CWS's reply brief in further support of its motion for sanctions (D.E. 82) as "Def. Sanctions Reply." Plaintiff's opposition to CWS's motion for sanctions addresses the plausibility of his malpractice claim against CWS, as pled in the Second Amended Complaint. As a result, the Court also considered Plaintiff's arguments from his opposition brief in deciding the motion to dismiss.

On March 25, 2021, Plaintiffs filed the FAC, which includes allegations about doxing campaigns that Defendants waged against D'Ambly and additional Plaintiffs. But the allegations and malpractice claim against CWS in the FAC are unchanged from Plaintiff's initial complaint. D.E. 66. CWS did not file an amended Answer. Instead, CWS filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(c), on April 22, 2021.[2] D.E. 74.

This Court granted CWS's motion to dismiss. The Court determined that because D'Ambly's union retained CWS to represent Plaintiff as to the grievance, Section 301(b) of the Labor Management Relations Act ("LMRA") bars D'Ambly from asserting a malpractice claim against CWS. MTD Opinion at 6-7. The Court also rejected D'Ambly's multiple arguments that the Section 301(b) bar did not apply. As relevant here, the Court determined that D'Ambly failed to plausibly plead that he had an implied attorney-client relationship with CWS, *id.* at 7-8, and refused to accept D'Ambly's argument that the Section 301(b) bar did not apply because the union was a captive labor organization, *id.* at 8-9. Although the Court doubted D'Ambly's ability to do so because of the Section 301(b) bar, the Court granted D'Ambly leave to file an amended pleading to remedy the identified deficiencies. *Id.* at 10.

Plaintiffs subsequently filed the SAC. In the SAC, Plaintiffs omits many claims that were dismissed. In Count VI, however, D'Ambly asserts a malpractice claim against CWS. SAC ¶¶ 196-203. The SAC otherwise pleads additional factual allegations, omits other factual allegations that Plaintiffs previously pled, asserts a new claim pursuant to Section 610 of the Labor

---

[2] Defendants Christian Exoo, St. Lawrence University, Vijaya Gadde, and Twitter, Inc. also filed motions to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). D.E. 75, 78, 79. The Court addressed these motions through a separate opinion and order. D.E. 99, 100. These Defendants also filed motions to dismiss the SAC, and Exoo filed a motion to strike and for sanctions. D.E. 112, 115-17, 119. Their motions remain pending, and the Court will address these motions in a separate opinion.

Management Reporting and Disclosure Act, and names two additional Defendants. On January 17, 2022, CWS filed the instant motion to dismiss Count VI under Federal Rule of Civil Procedure 12(b)(6). D.E. 120. CWS also filed a motion for sanctions, pursuant to Federal Rule of Civil Procedure 11, seeking sanctions against D'Ambly for including the malpractice claim in the FAC. D.E. 105.

## II.  MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### B. Analysis

CWS contends that the malpractice claim must be dismissed because D'Ambly "simply reiterated the identical claim of legal malpractice [in the SAC] . . . , based upon the identical facts alleged in the First Amended Complaint." CWS MTD Br. at 2. The Court agrees. Although there are minor changes to the factual allegations that address Exoo's doxing of D'Ambly and D'Ambly's termination from the Daily News, the substantive allegations relating to the malpractice claim are the same. D'Ambly still alleges that his union filed a grievance on his behalf and that the union retained CWS. SAC ¶ 70. Likewise, D'Ambly's allegation that CWS failed to adequately investigate the reason for his termination are also unchanged. *Compare* FAC ¶¶ 69-73 *with* SAC ¶¶ 70-76. Because the factual allegations are identical, the malpractice claim is dismissed for the same reasons discussed in the MTD Opinion. Specifically, because "§ 301 of the LMRA immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice." *Carino v. Stefan*, 376 F.3d 156, 162 (3d Cir. 2004).

In his opposition to CWS's motion for sanctions, D'Ambly relies on new allegations, and argues that CWS did not represent him because of a breach or violation of the collective bargaining agreement. D'Ambly continues that as a result, Section 301(b) does not bar his claims against CWS. In making this argument, D'Ambly alleges that CWS knew that D'Ambly's union and the decision to terminate him were influenced by "anarchist extremists" and that CWS "remained silent when they [sic] were obligated to inform D'Ambly to seek independent counsel." Plf. Opp. at 4; *see also id.* at 12 (alleging that CWS knew of communications between a union member and Exoo). D'Ambly also contends that his termination did not arise out of his union's collective bargaining agreement because he was the victim of workplace "stranger violence." *Id.* at 8.

However, these allegations and many others raised in D'Ambly's opposition brief, do not actually appear in the SAC.[3]  This Court has already explained that D'Ambly cannot amend his pleading through a brief.  MTD Opinion at 7-8 (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).  As a result, the Court does not rely on this information in deciding CWS's motion.  But even if the Court were to consider Plaintiff's purportedly new allegations in his brief, they do not alter D'Ambly's allegation that the union retained CWS to represent D'Ambly for a grievance related to his termination.  SAC ¶ 70.  Accordingly, D'Ambly does plausibly plead that he had an attorney-client relationship with CWS.  Finally, D'Ambly also reiterates his argument that Section 301(b) does not apply because the union is a captive labor organization.  Plf. Opp. at 19-21.  For the same reasons discussed in the MTD Opinion, the Court again disagrees.  *See* MTD Opinion at 8-9.

In sum, because D'Ambly's allegations for his legal malpractice claim in the SAC are unchanged from the FAC, CWS's motion to dismiss is granted.  Count VI of the SAC, D'Ambly's malpractice claim, is dismissed.  When dismissing claims pursuant to Rule 12(b)(6), a court typically gives a plaintiff leave to amend, provided that any deficiencies could be cured through an amended pleading.  *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  A court, however, may deny leave to amend if any amendment would be futile.  *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).  As discussed, despite clearly identifying the shortcomings in the MTD Opinion, Plaintiff does not appear to address these issues in the SAC.  Instead, D'Ambly's allegations that pertain to the malpractice claim in the SAC are nearly identical to his previous

---

[3] In his opposition brief, D'Ambly also discusses the contents of a report from a private investigation firm that was retained by D'Ambly's employer, an alleged agreement involving an arrangement between a trustee of D'Ambly's union and Exoo, and contends that his employer did not appropriately protect his safety from the threatening calls. Plf. Opp. at 6-7. These allegations are not in the SAC either.

allegations in the FAC. While D'Ambly references new facts in his opposition to CWS's motion for sanctions, the allegedly new allegations do not change the critical allegation that the union retained CWS to represent D'Ambly in a grievance filed by the union. Accordingly, D'Ambly does not provide any information indicating that he will be able to avoid the Section 301(b) bar. The Court, therefore, concludes that providing D'Ambly with leave to file another amended pleading would be futile. The malpractice claim, therefore, is dismissed with prejudice. *See, e.g.*, *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 WL 3853900, at *9 (D.N.J. Aug. 5, 2014) (dismissing claims with prejudice where court already provided plaintiff with leave to amend and amended pleading "suffer[ed] from many of the same pleading deficiencies previously identified by the Court").

### III.    MOTION FOR SANCTIONS

Before addressing the merits of a Rule 11 motion for sanctions, a court must ensure that the party seeking sanctions complied with the "safe harbor" provision of the rule. Rule 11 sanctions are only permissible after the party against whom sanctions are sought has notice of the alleged violation "and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). To that end, a motion for sanctions can only be filed 21 days after the party seeking sanctions serves the motion on the party against whom sanctions are sought. Fed. R. Civ. P. 11(c)(2). *See Petit-Clair v. New Jersey*, No. 14-7082, 2016 WL 1568282, at *1 (D.N.J. Apr. 18, 2016). If a party fails to comply with the safe harbor provision, the motion for sanctions must be denied. *Scott v. Bd. of Educ. of City of E. Orange*, No. 01-4171, 2006 WL 3675278, at *18 (D.N.J. Dec. 12, 2006). Here, CWS complied with the safe harbor provision. *See* D.E. 31, 106.

Turning to the merits of CWS's request for sanctions, CWS maintains that the malpractice claim, as asserted in the FAC, is patently frivolous and legally unsustainable in light of *Carino*.

7

CWS continues that the Court should award CWS its reasonable attorneys' fees and expenses as a sanction. CWS Sanctions Br. at 8-12. Rule 11(b) imposes on any party who presents "a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (citations and internal quotations omitted). Thus, attorneys are required to conduct a "normally competent level of legal research to support the[ir] presentation." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). However, "Rule 11 is intended to impose sanctions 'only in the exceptional circumstance, where a claim or motion is patently unmeritorious or frivolous.'" *Ballard v. AT&T Mobility, Inc.*, No. 15-8808, 2018 WL 3377713, at * (D.N.J. July 11, 2018) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

If Rule 11(b) is violated, Rule 11(c) permits the Court to impose sanctions, including reasonable attorneys' fees, expenses, or nonmonetary directives. Fed. R. Civ. P. 11(c). Any sanction, however, "must be limited to what suffices to deter repetition of the [sanctionable] conduct[.]" Fed. R. Civ. P. 11(c)(4). "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co.*, 930 F.2d at 289 (internal citations and quotations omitted). Additionally, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n.28 (3d Cir. 2009) (citation omitted). In deciding a Rule 11 motion, "[a]ny doubt . . . should be resolved in favor of the party charged with the

violation." *Sanders v. Hale Fire Pump Co.*, No. 87-2468, 1988 WL 58966, at *1 (E.D. Pa. June 1, 1988) (citing *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3d Cir. 1985)).

As discussed, D'Ambly's malpractice claim is contrary to *Carino*. Moreover, *Carino* is clearly established law, as it was decided by the Third Circuit nearly twenty years ago. CWS first advised D'Ambly that his malpractice claim ran afoul of *Carino* approximately a week after D'Ambly filed his initial complaint, in September of 2020. CWS demanded that D'Ambly dismiss the Complaint with prejudice as to CWS because, considering *Carino*, there was no legal basis for the claim. *See* Canning Supp. Cert. at ¶¶ 3-4. D'Ambly's attorney, Mr. Trainor, acknowledged that he researched and analyzed *Carino* before filing the Complaint, and stated that "[i]n general . . . an attorney-client relationship is not formed between a union attorney . . . and, therefore, the union attorney is immune from suit in such cases as these." Canning Cert., Ex. D at 1. Mr. Trainor, however, argued that CWS was required to disclose the adverse relationship between D'Ambly and his union and recuse itself if there was a conflict of interest. *Id.* at 1-2. Mr. Trainor continued that this conflict of interest and CWS's failure to disclose the conflict violated certain Rules of Professional Conduct (the "RPCs").[4] *Id.* at 2-3. While Mr. Trainor's discussion of the RPCs seemingly provides support for a malpractice claim, Mr. Trainor's letter noticeably fails to address how D'Ambly could legally bring such a claim in light of the clearly established precedent from *Carino* establishing that an attorney-client relationship did not exist. Notably, Mr. Trainor did not argue that *Carino* is no longer good law or should be changed. In fact, after recognizing the

---

[4] An attorney's failure to comply with the RPCs "can be considered evidence of malpractice" but "do not *per se* give rise to tortious claims." *Baxt v. Liloia*, 714 A.2d 271, 276 (N.J. 1998) (quoting *Albright v. Burns*, 503 A.2d 386, 390 (N.J. Super. Ct. App. Div. 1986)).

9

holding of *Carino*, Mr. Trainor failed to address how it impacted the malpractice claim. Thus, shortly after filing the initial Complaint, if not before, D'Ambly was aware that Section 301(b) bars malpractice claims against an attorney retained by a union, yet still asserted the claim against CWS.

After receiving CWS's letter, D'Ambly did not withdraw his malpractice claim and reasserted it in the FAC.[5] D.E. 66. CWS again advised D'Ambly that by asserting the malpractice claim in the FAC, D'Ambly violated Rule 11. Canning Supp. Cert. ¶¶ 11-12, Ex. F. And as discussed, CWS also filed a motion to dismiss the malpractice claim in the FAC, D.E. 74, which this Court granted, D.E. 97, 98. Again, in dismissing D'Ambly's malpractice claim, the Court concluded that *Carino* was "directly on point." MTD Opinion at 6. The Court further explained that

> [a]lthough it appears that any amendment would be futile in light of the Section 301(b) bar, the Court recognizes that D'Ambly raised potential new allegations in his opposition brief. As a result, the Court will provide Plaintiffs with leave to file an amended pleading that remedies the identified deficiencies.

*Id.* at 10. Despite Mr. Trainor's acknowledgement of *Carino* from the outset of this litigation and this Court's discussion of *Carino* and the Section 301(b) bar in the MTD Opinion, D'Ambly filed a substantively identical malpractice claim in the SAC that failed to address the shortcomings identified in the MTD Opinion. SAC ¶¶ 47-76; 196-203.

Because of Mr. Trainor's acknowledgment of *Carino* at the outset of this litigation, his failure to meaningfully attempt to distinguish this matter from *Carino*, and his continued pursuit of a seemingly baseless claim despite clear opportunities to amend or withdraw the claim, the Court is sensitive to CWS's arguments. However, because the Court did not dismiss the

---

[5] In the interim, CWS served D'Ambly with its motion for Rule 11 sanctions. D.E. 31.

malpractice claim in the FAC with prejudice, the Court exercises its discretion and declines to order sanctions as to the FAC.

### IV. CONCLUSION

For the foregoing reasons, Defendant Cohen, Weiss, and Simon LLP's motion to dismiss (D.E. 120) is **GRANTED**. Count VI of the Second Amended Complaint and Cohen, Weiss, and Simon LLP as a Defendant are **DISMISSED with prejudice**. In addition, Defendant Cohen, Weiss, and Simon LLP's motion for sanctions (D.E. 105) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: June 27, 2022

                                                                                   John Michael Vazquez, U.S.D.J.