Lindsay Ditlow
Joseph Mulherin
Brian Mead
**McDermott Will & Emery LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
P: (312) 372-2000
*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL D'AMBLY; AARON WOLKIND; STEVE HARTLEY; RICHARD SCHWETZ; JOBEL BARBOSA; MATTHEW REIDINGER; JOHN HUGO; SEAN-MICHAEL DAVID SCOTT; THOMAS LOUDEN; ZACHARY REHL; AMANDA REHL; K.R., a minor, by and through her father ZACHARY REHL and her mother AMANDA REHL, MARK ANTHONY TUCCI,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTIAN EXOO a/k/a ANTIFASH GORDON; ST. LAWRENCE UNIVERSITY; TRIBUNE PUBLISHING COMPANY, LLC; NEW YORK DAILY NEWS; VIJAYA GADDE; TWITTER, INC; COHEN, WEISS AND SIMON, LLP; NICK STRICKLAND; TORCH ANTIFA NETWORK; UNNAMED ASSOCIATES 1 – 100,<br><br>Defendants. | CIVIL ACTION NO.: 2:20-cv-12880-JMV-JSA<br><br>Hon. John Michael Vazquez, United States District Court Judge<br>Hon. Jessica S. Allen, United States Magistrate Judge<br><br>**JOINT DISCOVERY PLAN** |

1. Set forth a factual description of the case. Include the causes of action and affirmative defenses asserted.

For Plaintiff

1

Plaintiff Daniel D'Ambly ("D'Ambly"), a former employee of Defendant New York Daily News (the "Daily News"), claims that the Daily News and Defendant Tribune Publishing Company, Inc. ("Tribune") violated the New Jersey Law Against Discrimination by allegedly terminating him for his racially identifiable associations. He also claims that the Daily News and Tribune committed a tort by allegedly breaching a duty to warn him about threats against him.

Plaintiff did enter into a Separation Agreement and Mutual General Release with the Daily News dated September 9, 2019 (the "Separation Agreement") releasing the Daily News and Tribune from "any and all claims legally capable of being waived . . . whether known or unknown, pursuant to federal, state or local statute, regulation, ordinance, or common law, which You now or ever have based upon or arising from any fact or set of facts, . . . arising out of or relating in any way to Your employment with the Company . . . or any termination thereof." However, Plaintiff asserts that the Daily News and Tribune fraudulently induced him to enter into the Separation Agreement by allegedly withholding information that formed the basis of Plaintiff's termination.

The timeline of events shows that Defendants claims as to the cause of Plaintiff's termination are false.  Beginning on October 29, 2018, Defendant Christian Exoo ("Exoo") and his associates flooded Defendant Daily News and Tribune with a large volume of emails, Tweets, phone calls, voicemails as unknown persons that called for Plaintiff to be terminated and expelled from the Teamsters, his labor union.  Defendants immediately initiated a background investigation of Plaintiff, but did not inform him of the calls for his termination and expulsion from the union. The communications from unknown persons continued through January 11, 2019.

On Friday, January 11, 2019, at approximately 9:40 a.m. and 10:21 a.m., Defendant's received at least two voicemails from unknown persons that demanded Plaintiff's employment termination and expulsion from his labor union.  The date and time of these voicemails is documented in Defendant's emails.  One of the voicemail callers stated that if Defendant's did not terminate Plaintiff "any violence or blood spilled is also on your [Defendants] hands."

At the end of his shift on Friday, January 11, 2019, at approximately 3:30 p.m., Plaintiff was issued his last and final warning letter by Daily News executive James Brill.  In the letter, Defendant stated that the only reason he was not terminated is because their investigation of had not shown he made any "derogatory comments about any co-workers."  The letter continued if they find out he "engaged in any inappropriate speech or behavior in the workplace" or any out of work conduct caused Defendants to suffer "backlash" they would consider that to be work-related and immediately terminate him.

On Monday, January 14, 2019, Plaintiff was called at home and told not to report to work.  On Wednesday, January 16, 2019, Plaintiff was terminated during a phone conference.  Plaintiff's Termination of Employment letter dated, January 22, 2019, claimed that Plaintiff was told not to report to work on January 14, 2019, because Defendants learned on the 14th "that two threatening voice-mails had been left on a Company voice-mail box on Friday, January 11, 2019," and Defendants were concerned for the "safety of our employees."  Plaintiff's Termination of Employment letter cites the January 11, 2019, voicemails as the work-related cause of his termination.

The alleged cause of Plaintiff's termination is contradicted by Defendant's emails documenting receipt and action taken on the threatening voicemails received on January 11, 2019.  Further, Defendants claims are contradicted by the public statements of Defendant Christian Exoo.  On Sunday, January 13, 2019, Defendant Exoo, a person not permitted to access Plaintiff's confidential employment/personnel, had somehow acquired advance knowledge of Plaintiff's termination and he shared that information with several of his associates in public Tweets, wherein he stated that a "got a pretty reliable tip this morning [January 13, 2019]" that Plaintiff was terminated.

For Defendants

Defendants Tribune and the Daily News have set forth multiple affirmative defenses in their answer to the Second Amended Complaint.  In particular, Defendants assert that Plaintiff D'Ambly's claims against them should be dismissed on summary judgment due to the fact that, in exchange for $70,000, Plaintiff D'Ambly executed a valid and binding Separation Agreement that, by its terms, effect, and operation, released any and all claims that he may have against Tribune and the Daily News here.

On December 17, 2020, Defendants filed a letter seeking leave to file a Joint Motion for Summary Judgment Dismissing Counts I and VII of Plaintiff's complaint based on the above affirmative defense along with a Joint Statement of Material Facts Not in Dispute.  On January 22, 2021, Plaintiff submitted his letter in opposition along with a statement of facts and supplemental statement of disputed material facts.  On February 4, 2021, the Court held a telephone conference wherein the Court (i) denied Defendants' request to file for motion for summary judgment without prejudice but (ii) permitted Defendants to move for summary judgment after the parties had the opportunity to take sufficient discovery related to Plaintiff's argument that the Separation Agreement was procured through fraudulent inducement.

2. Have settlement discussions taken place?  Yes X No _____

   If so, when? – <u>At the Rule 26 conference on November 1, 2022, Defendant Tribune communicated to Plaintiff that they believed this matter had already been settled and would be seeking to enforce that settlement agreement after summary judgment.</u>

   (a) What was plaintiff's last demand?

      (1) Monetary offer: $_____N/A_____
      (2) Non-monetary offer: _____

   (b) What was defendant's last offer?

      (1) Monetary offer: $_____N/A_____
      (2) Non-monetary offer: _____

3. The parties <u>have</u> exchanged the information required by <u>Fed. R. Civ. P.</u> 26(a)(1).

3

4. Describe any discovery conducted other than the above disclosures. – <u>Both parties have served requests for production of documents.</u>

5. Generally, dispositive Motions cannot be filed until the completion of discovery. Describe any Motions any party may seek to make prior to the completion of discovery. Include any jurisdictional Motions and Motions to Amend. – <u>None for Defendant, although as noted above Defendant will be filing a Motion for Summary Judgment at the close of discovery.</u>

6. The parties proposed the following:

    (a) Discovery is needed on the following subjects:

    - Plaintiff's termination;
    - The parties' settlement agreement and the negotiation thereof; and
    - Plaintiff's fraudulent inducement claim.

    (b) Should discovery be conducted in phases? If so, explain: <u>No.</u>

    (c) Number of Interrogatories by each party to each other party: <u>Twenty-five (25).</u>

    (d) Number of Depositions to be taken by each party: <u>Three to four (3-4).</u>

    (e) Plaintiff's expert report due on <u>June 21, 2023</u>.

    (f) Defendant's expert report due on <u>July 21, 2023</u>.

    (g) Motions to Amend or to Add Parties to be filed by <u>N/A</u>.

    (h) Dispositive motions to be served within <u>forty-five (45)</u> days of completion of discovery.

    (i) Factual discovery to be completed by <u>May 21, 2023</u>.

    (j) Expert discovery to be completed by <u>August 21, 2023</u>.

    (k) Set forth any special discovery mechanism or procedure requested, including data preservation orders or protective orders: <u>Parties will likely seek to file a joint protective order to protect confidential information, if any.</u>

    (l) A pretrial conference may take place on <u>November 21, 2023</u>.

    (m) Trial by jury or non-jury Trial? <u>Trial by jury.</u>

    (n) Trial date: <u>To be discussed with the Court at the November 30, 2022 hearing.</u>

4

7. Do you anticipate any discovery problem(s)? Yes _____ No <u>X</u>. However, the parties will need to meet and confer regarding the broad scope of Plaintiffs' requests for documents, which would, as drafted, seek to have Defendants search the emails of every employee in the Company.

8. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? Yes _____ No <u>X.</u>

9. State whether this case is appropriate for voluntary arbitration (pursuant to <u>L. Civ. R.</u> 201.1 or otherwise), mediation (pursuant to <u>L. Civ. R.</u> 301.1 or otherwise), appointment of a special master or other special procedure. If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition of dispositive motions, etc.). <u>No.</u>

10. Is this case appropriate for bifurcation? Yes _____ No <u>X.</u>

11. We <u>do not</u> consent to the trial being conducted by a Magistrate Judge.

/s/ *Patrick Trainor*
Plaintiff(s)

/s/ *Lindsay Ditlow*
Defendant(s)

5