Case 2:20-cv-12880-JMV-JSA   Document 146   Filed 12/19/22   Page 1 of 4 PageID: 4637



Joseph Mulherin
jmulherin@mwe.com
+1 312 899 7159

December 19, 2022

The Honorable Jessica S. Allen, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & United States Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

Re:   *D'Ambly v. Exoo, et. al.*, No. 2:20-cv-12880-JMV-JSA
      Response to Plaintiff's Request for Phone Conference Concerning Discovery Dispute

Your Honor,

    This firm represents Defendants New York Daily News and Tribune Publishing Company, Inc. ("Defendants") in the above-captioned matter. This letter is in response to Plaintiff D'Ambly's December 16, 2022 letter prematurely requesting a telephone conference with Your Honor concerning the scope of search terms for electronic discovery of Defendants' emails (Dkt. 145). Plaintiff's request should be denied because he has shirked his obligation under Local Rule 37.1(a) to meet and confer in good faith to informally resolve *any and all* discovery disputes before seeking the Court's intervention.

    As background, on December 1, 2022, Defendants timely served their responses and objections to Plaintiff's initial requests for documents. Plaintiff's counsel immediately responded with an email asking if Defendants' responses were "a joke" and threatening to go to the New York Post. (Exhibit A). Defendants' counsel explained the rationale for the objections and asked to meet and confer. (Exhibit B). Plaintiff responded that meeting and conferring would be, in his words, "negotiat[ing] against myself." (Exhibit C).

    Plaintiff's counsel later agreed to meet and confer on December 5 wherein the parties agreed that email discovery should be limited to decision-makers responsible for D'Ambly's termination; that searching the unique names of D'Ambly and Exoo as well as D'Ambly's organization, the New Jersey European Heritage Association ("NJEHA"), should be sufficient to return responsive documents; and that the search would be limited to October 2018 to September 2019. As a next step, the parties agreed that Defendants



444 West Lake Street   Chicago IL 60606-0029   Tel +1 312 372 2000   Fax +1 312 984 7700

US practice conducted through McDermott Will & Emery LLP.

Page 2

would send a list of custodians and search terms to Plaintiff's counsel for his comment, which Defendants did. (Exhibit D).

In response, Plaintiff proposed 71 new terms and 15 variations on the original terms--far from the "curated list" he claims. (Exhibit E). Defendants objected to the expansive scope of the new terms and invited counsel to meet and confer about the exact subject of his letter to Your Honor, *i.e.,* the email search terms. (Exhibit F). Plaintiff again responded in a demeaning and unprofessional manner, skipped his obligation to meet and confer and prematurely wrote the court asking for a conference. (Exhibit G).

There is no question that Plaintiff's counsel has failed to satisfy his meet and confer obligations. The courts have been clear that "[s]imply sending a letter to opposing counsel complaining about outstanding discovery does not satisfy Rule 37's good faith requirement,"[1] nor does "simply exchanging emails" to resolve a dispute over search terms.[2] Had counsel abided by his obligations, the parties could have (i) discussed Defendants' objections; (ii) determined whether any of the additional terms were appropriate; and (iii) at minimum, narrowed the list of search terms in dispute for the Court. Instead, Plaintiff would have the Court hear the parties' unripe dispute over more than 50 terms.

Should the court decide to schedule a teleconference, Defendants' counsel will be prepared to further explain in detail why the vast majority of Plaintiff's search terms are irrelevant, overly broad, unduly burdensome and/or disproportionate to the needs of the issues in this lawsuit. This is truly (as Plaintiff concedes) a narrow case about the validity of Plaintiff's separation agreement.

As additional background, on January 11, 2019, the Daily News warned Plaintiff that he would be terminated if his activities as part of NJEHA caused backlash against the company or coworkers. On January

---

[1] *Locascio v. Balicki*, No. CIV. 07-4834 RBK AMD, 2010 WL 5418906, at *3 (D.N.J. Dec. 23, 2010)
[2] *Lincoln Adventures, LLC v. Underwriters at Lloyd's London Members of Syndicates*, No. 08CV235CCCJAD, 2020 WL 13158012, at *11 (D.N.J. Oct. 14, 2020). Additionally, in his letter to the Court, Plaintiff raises objections that have not been discussed with Defendant – the involvement of police and FBI; the list of custodians not matching the list of initial disclosures; and the list of custodians not including a document retention contact – meaning there has been *no* attempt to meet and confer on these points. Indeed, Defendant's counsel has no idea how these subjects are relevant to the remaining issue in this case.



Page 3

14, 2019, the Daily News learned of threatening voicemails that were left for an employee on January 11 and terminated Plaintiff as a result. Plaintiff claims that the Daily News decisionmakers, namely James Brill, knew of the voicemails when Plaintiff was issued a warning on January 11. (Exhibit H, at 2). Plaintiff argues that by misrepresenting when decisionmakers learned of the voicemails, the Daily News fraudulently induced D'Ambly into entering a separation and release agreement.

Notwithstanding this limited inquiry, Plaintiff seeks information and documents that have zero relevance. (Exhibit I, at 24). For example, Plaintiff seeks to search Defendants' emails for specific phrases taken from Tweets by users not affiliated with the Daily News or Tribune; the name of nonprofit organizations such as the Anti-Defamation League; and common words like "hate" and "employ." It is unclear to Defendants how these and many other search terms would reveal anything relevant to when Daily News decisionmakers learned of the threatening voicemails. To be sure, Plaintiff's irrelevant requests would cause Defendants to incur significant costs and are thus also objectionable as overly broad, unduly burdensome, and disproportionate to the needs of the case.

Lastly, Defendants have made a good faith effort to comply with Plaintiffs' requests that are relevant to the issues at hand and will continue to do so. Defendants produced documents on December 19 and will supplement on a rolling basis. Additionally, Defendants are obtaining additional custodians' email boxes to search using the agreed terms. As stated to Plaintiff's counsel, if additional relevant, non-duplicative terms and/or custodians are identified during the email review, Defendants are happy to discuss expanding the search. And, in stark contrast to Plaintiff's suggestion that Defendants are not willing to negotiate search parameters, Defendants have already agreed to extend the search period by two months and accepted additional terms that were within the scope of relevant discovery. (Exhibit F).

Defendants respectfully request that Your Honor remind Plaintiff's counsel of his duty to meet and confer regarding the relevant scope of discovery *before* seeking Court intervention.



Page 4

Respectfully submitted,

*/s/ Joseph Mulherin*

Enclosures: Exhibits A-I

