

**mwe.com**

Joseph Mulherin
jmulherin@mwe.com
+1 312 899 7159

March 30, 2023

VIA CM/ECF

The Honorable Jessica S. Allen, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & United States Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

Re:   ***D'Ambly v. Exoo, et al.*, Civil Case No.: 2:20-cv-12880-JMV-JSA**
      **Defendants' Response to Plaintiff's Request for Phone Conference Concerning Document**
      **Production**

Dear Judge Allen:

This firm represents Defendants Tribune Publishing Company, LLC ("Tribune") and the New York Daily News (the "Daily News") in the above-captioned matter. This letter is in response to Plaintiff's request for a telephone conference with Your Honor to resolve Plaintiff's vague and unsupported complaints about Defendants' document production and privilege log. Plaintiff's objections are without merit and an obvious attempt to probe into privileged communications.

Plaintiff's counsel first raised these issues to Defendants' counsel in a letter dated March 8, 2023 (Exhibit 1). Defendants' counsel responded in a letter on March 13, 2023, explaining that its production complies with all applicable Federal and Local Rules and offering additional clarification on Defendants' privilege log, with supporting case law citations (Exhibit 2). Plaintiff's counsel responded on March 14, 2023, reasserting his objections and providing **no** case law supporting his position (Exhibit 3). Pursuant to Local Rule 37.1, the parties met and conferred on March 15, 2023, in an attempt to resolve these issues, but Plaintiff's counsel quickly determined that we were at an impasse. Further, Plaintiff's counsel informed us that he will not produce his client for deposition or notice up any depositions until his objections are resolved, despite the fact that discovery is scheduled to close in less than two months, on May 21, 2023.

Defendants' response to Plaintiff's assertions are summarized below.

**I.      Document Production Format**

Plaintiff contends that Defendants have refused to "produce electronic versions of electronically stored information." This is false. Defendants' first production of documents applied an industry-standard TIFF format with Bates numbers and all relevant metadata included. When Plaintiff complained that he

March 30, 2023
Page 2

had difficulty viewing the documents and that some documents were illegible, Defendants offered to complete future productions in PDF format, which Plaintiff agreed to.  Accordingly, Defendants completed their second and third production of documents in PDF format with Bates numbers and all relevant metadata included.  Defendants also asked Plaintiff to identify by Bates number any document in any production set that is unclear or illegible for re-production.  Thus far, Plaintiff has not identified any illegible documents for re-production.

Plaintiff's Amended Requests for Production of Documents ("RFP's") stated the following requirements for production (Exhibit 4):

- Electronic copies of the requested documents are demanded, including metadata. (Definitions ¶ 1).
- All Documents are to be produced as they are kept in the usual course of business so that Plaintiff can ascertain the files in which the Documents are located, their relative order in such files, and how such files are maintained. (Definitions ¶ 24).

Significantly, Plaintiff's RFPs thus did not specify that the documents should be produced in "native format" and this issue was not raised at the parties' e-discovery conference in December 2022.  This issue was only raised by Plaintiff's counsel after he received our first production.

Despite Plaintiff's contentions, the Federal Rules of Civil Procedure do not require native production.  FRCP 34 states only that "a party must produce [electronically stored information] in a form or forms in which it is ordinarily maintained **or in a reasonably usable form or forms**" (emphasis added).  By providing documents in industry-standard TIFF and PDF format, with all metadata included, and by offering to reproduce any documents that are illegible, Defendants have clearly complied with the FRCP's mandate that the documents are presented in a "reasonably usable form."  Further, FRCP 34 states that "A party need not produce the same electronically stored information in more than one form."

Plaintiff has not provided any valid justification for why Defendants should switch production methodologies mid-discovery and incur significant additional costs to duplicate completed productions.  To be sure, there is no such justification, especially in light of our willingness to reproduce the documents Plaintiff thinks are illegible.

## II.    Defendants' Privilege Log

Plaintiff's counsel alleges that Defendants are withholding documents "under blanket claims of attorney-client privilege" and that Defendants' privilege log "contains barebones explanations of the documents withheld."  This is utterly false as evidenced by Defendants' Privilege Log (Exhibit 5).

Defendants' privilege log clearly complies with the FRCP and the Local Rules.  Local Rule 34.1 governing document production states the following (emphasis added):

> **[T]he party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed** . . . . When any privilege is claimed, **the party asserting it shall indicate, as to the information requested, whether any such documents exist**.



March 30, 2023
Page 3

Defendants took great care in preparing their privilege log—a task that Plaintiff has not even attempted. Defendants' privilege log identifies the nature of the privilege in the column titled "Privilege Type." And the privilege log itself identifies "whether any such documents exist." There is no requirement that a privilege log state whether "the entirety of any of the withheld document(s) contain advice from counsel" nor whether the privileged information can be redacted. Despite there being no requirement to do so, Defendants have already provided a detailed description of each privileged document stating the type of email or document; whether the document is providing legal advice, requesting legal advice, or reflecting legal advice; and the topic of the legal advice. And where possible, Defendants have produced documents with redactions. Defendants have exceeded their burden to establish the privilege applies.

In stark contrast, Plaintiff has utterly failed to meet his burden to provide "a factual basis adequate to support a good faith belief by a reasonable person" that the privilege was improperly asserted. *Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-CV-695-JLB-KCD, 2022 WL 2869655, at *2-3 (M.D. Fla. July 21, 2022). Plaintiff's counsel must do more than cite to his "own narrative of the facts unsupported by any evidence" to warrant a second look at claims of privilege. *Jorjani v. New Jersey Institute of Technology*, No. 2:18-CV-11693, 2021 WL 2205841 (D.N.J. May 26, 2021). Put another way, Plaintiff's vague speculations about Defendants' privilege designations being improper do not suffice.

Here, it is undisputed that in-house counsel was involved in this matter almost immediately as decisionmakers needed to determine what, if any, of Mr. D'Ambly's activities had spilled into the workplace and potentially violated Defendants' policies and any applicable Collective Bargaining Agreement provisions. The decision whether or not to terminate a union employee and the possible legal exposure relating to that determination are classic realms of legal advice for an in-house counsel to offer.

Without any actual knowledge or proof, Plaintiff's counsel has also made blanket statements that the communications on the privilege log are purely "business-related" and/or by non-attorneys. But the proper inquiry "is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal." *Shipyard Assocs., L.P. v. City of Hoboken*, No. CIV.A. 14-1145 CCC, 2015 WL 4623470, at *5 (D.N.J. Aug. 3, 2015). In order to meet this standard, the claimant should demonstrate "that the communication would not have been made but for the client's need for legal advice or services." *Id.* Further, "the privilege protects communications with those that must be consulted in order for a lawyer to provide legal advice – i.e., those that 'need to know' or have information necessary to assist the lawyer in providing legal advice.'" *Margulis v. Hertz. Corp.*, Civ. No. 14-1209 (JMV), 2017 U.S. Dist. LEXIS 28311, at *22 (D.N.J. Feb. 28, 2017).

The investigation into Mr. D'Ambly's conduct and his subsequent termination is "predominantly legal" in nature and the communications between in-house counsel and decisionmakers at Tribune and Daily News "would not have been made but for the client's need for legal advice." And, to facilitate the rendering of legal advice, not surprisingly, various high-level employees at Tribune and Daily News assisted in-house counsel with gathering relevant information as part of the investigation into D'Ambly's conduct. Thus, these conversations are privileged.

Defendants are happy to attend a telephone conference to discuss these issues as well as provide additional case law supporting its position. However, Defendants are concerned that Plaintiff's counsel



March 30, 2023
Page 4

is using this baseless dispute to unreasonably delay further fact discovery and depositions.  Defendants respectfully request this Court to direct Plaintiff's counsel to produce his client for deposition, which the parties have scheduled for April 11, 2023.  We appreciate the Court's assistance in this matter

Respectfully submitted,

*s/Joseph Mulherin*
Joseph Mulherin
Emily Starbuck
**McDermott Will & Emery LLP**
Attorneys for Tribune Publishing Company and New York Daily News

