# EXHIBIT 2



**mwe.com**

Joseph Mulherin
Attorney at Law
jmulherin@mwe.com
+1 312 899 7159

March 13, 2023

VIA EMAIL

Patrick Trainor
Law Office of Patrick Trainor
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070

Re:   *D'Ambly v. Exoo, et al.*, Civil Case No.: 2:20-cv-12880-JMV-JSA
      Privilege log and discovery production format

Dear Mr. Trainor:

We have received your letter dated March 8, 2023, regarding your objections to our privilege log and document production format. We are willing and ready to meet and confer regarding these objections. To facilitate a productive discussion during the meet and confer, please find below our responses to each issue you raised in your letter.

**I.      Discovery Production Format**

As previously explained, our first production of documents applied an industry-standard TIFF format with Bates numbers and all relevant metadata included. When you complained about illegibility, we offered to complete future productions in PDF format, which you agreed to. Accordingly, we completed our second and third production of documents in PDF format with Bates numbers and all relevant metadata included. We have also asked you to identify by Bates number any document in any production set that is unclear or illegible for re-production. Thus far, you have not identified any illegible documents for re-production.

Your Amended Requests for Production of Documents ("RFP's") stated the following requirements for production:

- Electronic copies of the requested documents are demanded, including metadata. (Definitions ¶ 1).

- All Documents are to be produced as they are kept in the usual course of business so that Plaintiff can ascertain the files in which the Documents are located, their relative order in such files, and how such files are maintained. (Definitions ¶ 24).



444 West Lake Street   Chicago IL 60606-0029   Tel +1 312 372 2000   Fax +1 312 984 7700

*US practice conducted through McDermott Will & Emery LLP.*

DM_US 194926269-3.096107.0044

Re: *D'Ambly v. Exoo*; Privilege Log and Discovery
March 13, 2023
Page 2

      Significantly, your initial request for production did not specify that you wanted the documents to be produced in native format and this issue was not raised at the parties' e-discovery conference in December 2022. This issue was only raised by you after you received our first production.

      Nonetheless, you also have not provided any valid justification for why defendants should switch production methodologies mid-discovery and incur significant additional costs to duplicate completed productions. To be sure, there is no such justification, especially in light of our willingness to reproduce the documents you think are illegible.

      At the outset, production in native format is not required by the Federal Rules of Civil Procedure or the District of New Jersey's Local Rules. Further, FRCP 34(b)(2)(E)(iii) states that "A party need not produce the same electronically stored information in more than one form."

      Further, native productions are not common. The Sedona Principles, the leading treatise on electronic document production, explains that the widespread adoption of static format over native format is due to three major reasons: (1) static documents can be Bates numbered and (2) redacted, and (3) it is significantly harder to alter data presented in static format inadvertently or deliberately. *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 244 (S.D. Cal. 2015) (citing *The Sedona Principles*).

      Conversely, documents with redactions cannot be produced natively, as doing so would inadvertently disclose privileged information. Native documents also cannot be branded with a Bates number or confidentiality designation on the image of the document. The native files can be renamed with the Bates number and confidentiality designation, but that information will not appear when the document is printed out, which poses serious issues when it comes to depositions and exhibits.

      We frankly are confused by your request. You have all metadata and all responsive documents in searchable TIFF or PDF form. We have repeatedly offered to re-produce any documents that are illegible if identified to us by Bates number. Unless you articulate a valid reason why you need native format documents, what is missing from the documents in their current form, we decline to incur additional time, effort and expense in re-producing documents that are already in your possession.

**II.**    **Identification of Information Management Systems**

      Per the Court's scheduling order, the time for propounding additional requests for production and interrogatories has long since passed. We ask that you refrain from improper inquiries into our clients' IT infrastructure without articulating any reason as to why you seek this information.

**III.**    **Privilege Log**

      Per the FRCP and Local Rules, there is no requirement that a privilege log contain the level of detail requested in your letter and no rule that requires production of affidavits to support privilege. Local Rule 34.1 governing document production states the following (emphasis added):



Re: *D'Ambly v. Exoo*; Privilege Log and Discovery
March 13, 2023
Page 3

      Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, **the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed** and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, **the party asserting it shall indicate, as to the information requested, whether any such documents exist**.

      Defendants' privilege log identifies the nature of the privilege in the column titled "Privilege Type." And the privilege log itself identifies "whether any such documents exist." There is no requirement that a privilege log state whether "legal advice is paraphrased or directly quoted" nor whether the information can be redacted. Despite there being no requirement to do so, Defendants have already provided a detailed description of each privileged document stating the type of email or document; whether the document is providing legal advice, requesting legal advice, or reflecting legal advice; and the topic of the legal advice. And we have already provided to you documents with redactions where possible in our third production of documents.

      You have failed to provide "a factual basis adequate to support a good faith belief by a reasonable person" that the privilege was improperly asserted. *Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-CV-695-JLB-KCD, 2022 WL 2869655, at *2-3 (M.D. Fla. July 21, 2022). When dealing with a corporate defendant, the mere presence of non-attorneys on a log is not a sufficient basis to challenge privilege. *Id.* You must do something more than cite to your "own narrative of the facts unsupported by any evidence" to warrant a second look at claims of privilege. *Jorjani v. New Jersey Institute of Technology*, No. 2:18-CV-11693, 2021 WL 2205841 (D.N.J. May 26, 2021). Put another way, speculation does not suffice.

      Here, in-house counsel was involved in this matter almost immediately as decisionmakers needed to determine what, if any, of Mr. D'Ambly's activities had spilled into the workplace and potentially violated Defendants' policies and any applicable Collective Bargaining Agreements. The decision whether or not to terminate an employee and the possible legal exposure relating to that are classic realms of legal advice for an in-house counsel to offer.

      Some of your concerns reflect a lack of close reading. The privilege log is organized into "families" of documents. The parent emails appear with author/sender and recipient fields filled in. Documents attached to that parent email – if any – appear in the white rows immediately following the parent email. Gray rows present in the log separate families of documents from each other. Thus, the documents "missing recipients" are attachments. Please refer to the parent email in the privilege log to determine the recipients for each of these email attachments.

      We have also prepared a log containing only the parent emails for you review, so you can see that no email is missing a recipient; and a list of names and their affiliation with Tribune, Daily News, and their sister companies as well as attorney affiliations.

      A.    Maya Bordeaux



Re: *D'Ambly v. Exoo*; Privilege Log and Discovery
March 13, 2023
Page 4

  We are concerned by your unfounded theorizing that our client Chicago Tribune's former Chief Human Resources Officer, Maya Bordeaux, either personally flew from Chicago to New Jersey to damage your client's property or directed a subordinate to do so, and referred to this scheme as a "corrective action." This is a baseless and irresponsible theory. Not only does Ms. Bordeaux have no connection to the alleged property damage at your client's home, the corrective action that Ms. Bordeaux drafted on January 9, 2019 has already been produced to you: it is the Last and Final Warning that Mr. D'Ambly received on January 11, 2019 (Bates No. NYDN00000136). Note that Mr. D'Ambly's home address appears at the top of that letter. Corrective action is a catch-all term used to describe a variety of disciplinary measures short of termination, both in common corporate parlance and in Tribune's Employee Handbook (Bates No. NYDN00000028 at 18, 47, 61, 106) and EEO Policy (Bates No. NYDN00000538 at 4).

  As a general matter, if we were attempting to hide incriminating evidence, it would be in our best interests not to produce to you such emails referring to your client as a "clown" or "hateful person." And yet, because that email is responsive and not privileged, we produced it to you.

  B. *Marisa Kollias*

  As to the emails that contain Ms. Kollias as a sender or recipient, this entire matter was triggered by social media posts by Mr. Exoo. Ms. Kollias, as a public relations specialist, is quite familiar with Twitter and other forms of social media. As the investigation into Mr. D'Ambly was kicking off, Ms. Kollias assisted decisionmakers and in-house counsel with locating information relating to Mr. D'Ambly from Twitter and other sources. This was not, as you assert, "routine business matters."

  The proper inquiry in the business versus legal context "is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal." *Shipyard Assocs., L.P. v. City of Hoboken*, No. CIV.A. 14-1145 CCC, 2015 WL 4623470, at *5 (D.N.J. Aug. 3, 2015). In order to meet this standard, the claimant should demonstrate "that the communication would not have been made but for the client's need for legal advice or services." *Id.* The investigation into Mr. D'Ambly's conduct and his subsequent termination is "predominantly legal" in nature and the communications between Ms. Kollias and Ms. Lees, among others, "would not have been made but for the client's need for legal advice." Thus, these conversations are privileged.

  C. *D'Ambly's Conduct*

  You ask that we clarify the nature of the "conduct" that Ms. Lees was investigating. Again, please refrain from propounding informal interrogatories that should have been posed formally. Nevertheless, you are well aware of your client's conduct and the tweets that precipitated an investigation by Tribune and Daily News. Among other things, Defendants investigated: whether your client is involved with the New Jersey European Heritage Association; your client's attendance at rallies and protests on behalf of NJEHA; his statements documented in YouTube videos online including his use of racial slurs; and the extent to which his activities may have carried over into in the Daily News workplace. Contrary to your belief, Defendants did not take the decision to terminate Mr. D'Ambly lightly.



Re: *D'Ambly v. Exoo*; Privilege Log and Discovery
March 13, 2023
Page 5

    D.    Yasmin Firouzi

We have included the standard metadata for all documents in the privilege log. If a user creates a template document, and another user edits the document, the original creator remains as the author in the metadata. As such, we understand that the document was authored by Ms. Firouzi – who is in fact a former employee of Tribune's former subsidiary, the Los Angeles Times. She likely created a template that other Human Resources employees such as Ms. Bordeaux used and altered. As you can see from the parent email log, Ms. Firouzi was never a sender or recipient of any email in this matter.

    E.    Robert "Bobby" Zisel

For example, Log Entry No. 149 is an email from in-house counsel Mindy Lees to Maya Bordeaux. Attached to that email (Log Entry No. 150) is the investigation report prepared by Robert "Bobby" Zisel of Insite Risk Management as the direction of Ms. Lees in order to facilitate the rendering of legal advice regarding Mr. D'Ambly to Tribune and Daily News. Thus, the recipient of that report is Ms. Bordeaux. You can see earlier in the log at Log Entry 59, Ms. Lees engaged Robert Zisel's firm to investigate Mr. D'Ambly, making communications between them privileged due to Insite Risk Management's position as a consultant.

**IV.**    **Social Media Usernames**

As explained above, any belated attempts to obtain written responses from defendants detailing "all personal and professional social media account usernames for the persons involved in the decision to terminate Mr. D'Ambly" via an informal request in a meet and confer letter are improper. As you know, Plaintiff's RFPs only requested documents reflecting the social media account names of individuals that communicated with Exoo. Specifically, you requested the social media account names of "all Defendant's members, employees, executives, … and/or any other persons or entities acting on Defendant's behalf, **who communicated with Exoo** on or before January 13, 2019, **and provided Exoo information concerning D'Ambly's employment status** and termination." (Plaintiff's RFPs, Request 2 (emphasis added)).

You never requested the social media account names of all the decisionmakers involved in D'Ambly's termination. You served no interrogatories whatsoever. What's more, as Defendants' responses to Plaintiff's requests to admit make clear, none of the decision-makers communicated with Exoo or directed anyone to communicate with Exoo on their behalf. Further, the decision-makers involved in D'Ambly's termination did not use social media accounts to communicate regarding D'Ambly and the claims at issue in this case.

We look forward to discussing these matters with you in detail at a meet and confer conference at your convenience.

Sincerely,

*s/Joseph Mulherin*



DM_US 194926269-3.096107.0044

Re: *D'Ambly v. Exoo*; Privilege Log and Discovery
March 13, 2023
Page 6

Joseph Mulherin
Emily Starbuck
McDermott Will & Emery LLP

