April 26, 2023

Via: CM/ECF
The Honorable Jessica S Allen, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, New Jersey 07101

  Re: *D'Ambly v. Exoo, et al.,*
     Civil Case No.: 2:20-cv-12880-JMV-JSA
     *Privilege Log Joint Submission*

Dear Judge Allen,

  As you know this office represents Plaintiff Daniel D'Ambly (hereinafter "Plaintiff" or "D'Ambly") in the above-referenced action against the Tribune Publishing, LLC ("Tribune") and the New York Daily News Company ("Daily News") (herein collectively "defendant"). In his Complaint, D'Ambly alleges his termination was pre-textual in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to – 50 ("LAD"), but Defendant claimed he was terminated for cause. Defendant claims they did not learn of the act that was the cause for D'Ambly's termination until January 14, 2019, but Defendant's document production contradicts this claim as does statements made on January 13, 2019, by co-defendant Christian Exoo a/k/a "@antifashgordon," wherein he publicly stated in multiple Tweets that a "source" had told him D'Ambly was no longer employed by the Daily News.

  This letter addresses the parties' impasse concerning defendants privilege log, wherein Defendant withhold relevant documents under attorney-client and work product privilege. Defendant invoked the attorney-client privilege to withhold non-privileged documents, things, and communications (collectively "documents"), specifically emails from October 30, 2018, through January 18, 2019, that the privilege log describes as an "*[e]mail chain requesting legal advice from in-house counsel regarding the investigation of D. D'Ambly's conduct.*" Defendant

1

used this description to withhold emails, simply because their in-house counsel is listed as the direct, Cc'd, or Bcc'd recipient, including where public relations executives and newspaper reporters are copied, and/or no attorney was a recipient. We know non-privileged documents with this description concerning Defendant's investigation of Plaintiff have been improperly withheld, because Defendant admitted in correspondence to the Court that its "in-house counsel was involved in this matter almost immediately as decisionmakers." (Correspondence, March 30, 2023, ECF No. 157). "[W]hen an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the privilege is inapplicable." *Payton v. N.J. Tpk. Auth.*, 148 N.J. 524, 551 (1997) (*citing United Jersey Bank v. Wolosoff*, 196 N.J. Super. 533, 563 (App. Div. 1984)). These documents are not protected.

"[B]ecause the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979). The person asserting the privilege bears the burden of proving it applies to any given communication." *Horon Holding Corp. v. McKenzie*, 341 N.J. Super. 117 (App. Div. 2001). The attorney-client "privilege protects a client's confidential communications to an attorney to obtain legal counseling." *In re Gabapentin*, 214 F.R.D. 178, 181 (D.N.J. 2003). The "privilege extends to only those" statements necessary to obtain legal advice. *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J. 2001). Consistent with long-standing precedent, factual results of an investigation are not protected, because the "privilege does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395–396 (1981).

The LAD is directed at "eradicating the cancer of discrimination from the workplace." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993). Complaints alleging discriminatory acts that violate the LAD require employers to perform a reasonable and prompt investigation. *Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427, 430 (D.N.J. 2000). Defendant with in-house counsel, investigated D'Ambly to determine whether his alleged fascist, white supremacist, or Nazi "activities spilled over into workplace" and whether he discriminated against co-workers in violation of the LAD. (ECF No. 157). Documents related to this investigation are not protected.

The work product doctrine is both distinct from and broader than the attorney-client privilege. *In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011).* The work product doctrine provides qualified immunity from discovery to materials prepared by an attorney in anticipation of litigation or for use at trial. *In re Gabapentin*, 214 F.R.D. at 178. Here, by Defendant's own admission, their in-house counsel participated in D'Ambly's investigation beginning on October 29, 2018, when no litigation was planned. If Defendant's claim the work-product privilege to shield the October 29, 2018, through January 18, 2019, documents labeled as the "*[e]mail chain requesting legal…*" they are admitting that the decision to terminate D'Ambly was made prior to January 14, 2019, because they were prepared in preparation for litigation, thus, confirming that D'Ambly's termination was pre-textual.

The "*[e]mail chain requesting legal advice from in-house counsel regarding the investigation of D. D'Ambly's conduct*" that were exchanged between October 29, 2018, and January 18, 2019, must be produced, because they are relevant non-privileged emails. In the alternative Plaintiff requests the Court conduct an *in camera* review to determine, what, if any, privilege applies.

*s/Patrick Trainor*
Attorney for Plaintiff Daniel D'Ambly

**Defendants' Response to Plaintiff's Objections**

Defendants have satisfied their burden of proof as the proponent of the privilege in providing to Plaintiff a carefully prepared and detailed privilege log. Defendants' privilege log (Exhibit A) identifies the date, author/sender, and recipient(s), and identifies each document as an attorney-client communication or work product. Indeed, Defendants went even further by stating the type of email or document; whether the document is providing legal advice, requesting legal advice, or reflecting legal advice; and the topic of the legal advice. This is more than enough "to allow the court to determine whether the elements of the attorney-client privilege . . . have been established." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. CIV.A. 03-1026 MLC, 2011 WL 1871110, at *7 (D.N.J. May 13, 2011).

In stark contrast, Plaintiff has shirked his burden to present specific, factual evidence calling into question the log entries and whether the privilege was improperly asserted. *Jorjani v. New Jersey Institute of Technology*, No. 2:18-CV-11693, 2021 WL 2205841 (D.N.J. May 26, 2021) (explaining that plaintiff must do something more than cite to his "own narrative of the facts unsupported by any evidence" to warrant a second look at claims of privilege). Plaintiff's entire argument is on its face based on unfounded supposition and cynicism.

Plaintiff argues that the inclusion of non-attorneys on the log indicates that the documents must not be privileged. But the law is clear that the attorney-client privilege covers communications involving non-lawyers when a communication is "by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the corporation." *Margulis v. Hertz Corp.*, No. CV 14-1209 (JMV), 2017 WL 772336, at *8 (D.N.J. Feb. 28, 2017). Here, the non-attorneys that Plaintiff is presumably highlighting were high-level employees of Defendants <u>and</u> providing information to

4

facilitate the rendering of legal advice.[1] And, where, as here, the events at issue were set in motion by a series of public Tweets, it makes logical sense that high-level employees tasked with social media management would be assisting in-house counsel with the investigation into the matter.

Next, Plaintiff assumptively argues that communications by and to in-house counsel regarding the investigation into Mr. D'Ambly's conduct is not privileged because an internal investigation is not for the purpose of preparing for litigation or providing legal advice. As this Court has recognized, "[c]ounsel are employed by [employers] for the purpose of, among other things, providing employment advice in employment circumstances." *Jorjani v. New Jersey Institute of Technology*, No. 2:18-CV-11693, at 10 (D.N.J. Jan. 11, 2021) (Allen, Mag. J.). Investigating the veracity of the allegations regarding D'Ambly's conduct and considering the possible effects on the workplace, implications under the governing collective bargaining agreement (CBA) and associated legal responsibilities on the part of Defendants are classic areas of legal advice for in-house counsel. Mere baseless allegations that the investigation was pretextual or motivated by bad intent "could never dissolve the attorney-client privilege." *Id.*[2]

Furthermore, to the extent that Plaintiff proclaims that the "factual results" of the investigation into Mr. D'Ambly's conduct are not privileged, Plaintiff is still generally not allowed to obtain those factual results if they are embedded in a privileged communication. To be sure, Plaintiff could depose the individuals involved – which he has thus far failed to do – as is recommended by the case law he cites in support of his position. *Upjohn*, 449 U.S. at 396 ("[T]he Government was free to question the employees. . . .While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply

---

[1] The "public relations executives and newspaper reporters" that Plaintiff references are Marisa Kollias, former Vice President of Communications and Public Relations of Tribune, and Ginger Otis, former Metro Editor of Daily News.
[2] Plaintiff also claims that Defendants investigated D'Ambly to determine if he violated the LAD by discriminating against his coworkers. This is more speculation. Defendants have never made such a representation.

5

subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney–client privilege.")

Lastly, Plaintiff complains about the improper designation of certain documents as "work product" before litigation was contemplated, or in the alternative, that the designation is evidence that Defendants anticipated illegally terminating Plaintiff. This is both factually and legally incorrect. The first document designated as "work product" on the privilege log is an attachment to an email sent on January 9, 2019, in advance of Tribune's issuance of a warning letter to Mr. D'Ambly on January 11, 2019. Given that Mr. D'Ambly was a union employee, under his CBA, he could file a grievance regarding any such disciplinary action. Documents that relate to the subject of a future grievance may be properly designated as "work product." *N. Jersey Media Grp., Inc. v. City of Clifton*, No. A-1469-16T4, 2018 WL 359952, at *6 (N.J. Super. Ct. App. Div. Jan. 11, 2018) (finding that the work product doctrine applies to anticipated adversarial proceedings such as grievances and arbitrations).

Plaintiff's "Hail Mary" request for an in-camera review of Defendants' log is an intrusion onto the privilege that should not be taken lightly and should be denied. *See Bartholomew v. Lowe's Home Centers, LLC*, No. 2:19-CV-695-JLB-KCD, 2022 WL 2869655, at *3 (M.D. Fla. July 21, 2022) (citations omitted) (request to pierce privilege and/or for an *in camera* review denied where all the plaintiff did was "merely tender dozens of pages of logs to the Court and say 'here, you figure it out.'"). Because Plaintiff has caused the parties to waste significant time and resources on this subject, Defendants respectfully request that this Court award Defendants their attorney's fees incurred in responding to Plaintiff's baseless objections. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991) (approving attorney's fees for bad-faith or unreasonable conduct).

*s/Joseph Mulherin*
Attorney for Defendants Tribune Publishing Company and New York Daily News