THE LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC
19 Union Avenue, Suite 201 | Rutherford, New Jersey 07070
Telephone: (201) 777-3327 | eFax: (201) 896-7815 | help@ptesq.com

June 8, 2023

<u>**Via ECF/CM**</u>
The Honorable Jessica S. Allen, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

   Re: *D'Ambly v. Exoo, et al.*
     Civil Case No.: 2:20-cv-12880
     Plaintiff's response to Defendant's privilege log document review, ECF No. 171

Dear Judge Allen,

   With regard to the above-referenced matter, on behalf of Plaintiff Daniel D'Ambly ("D'Ambly"), we respond to Defendants Tribune Publishing Company, LLC, and New York Daily News' (collectively "Daily News") letter brief concerning the Court's in-camera review of documents and email chains withheld by the Daily News in its privilege log. ECF. No. 171.

   By way of background, D'Ambly was a long-term employee who "never caused problems at work" and did a "good job." *See Exhibit A email dated January 4, 2019, from Terry Jimenez, former Tribune Publishing Chief Financial Officer to Maya Bordeaux.* He was and was so highly regarded within his union local that he was elected to Chair the Referendum Board, which oversees union elections. However, on October 29, 2018, D'Ambly was doxed on Twitter by defendant Christian Exoo a/k/a Twitter username "@antifashgordon" ("Exoo"), who called D'Ambly a "fascist, Nazi, and white supremacist." Exoo incited his Twitter followers to contact the Daily News to demand D'Ambly's termination. Immediately the Daily News received hundreds of emails, phone calls, social media comments and reviews that demanded D'Ambly's termination. On October 30, 2018, the Daily News hired a private investigator to investigate D'Ambly. The investigator delivered its report to the Daily News on December 4, 2018, but neither the private investigator, nor the Daily News investigated Exoo.

   On January 10, 2019, D'Ambly met with Daily News human resources representative Jean Nechtaval and local management concerning the dox and private investigation report. On January 11, 2019, D'Ambly was issued a "Last and Final Warning" letter, which stated there was no evidence that D'Ambly brought his "activities" into the workplace, but if he had, he would have been terminated, and if he did, he will be terminated. D'Ambly's alleged "activities" were First Amendment protected speech. On January 11, 2019, the Daily News received at least two voicemails on company phones that demanded D'Ambly's termination and threatened bloodshed if he were not terminated. On January 13, 2019, Exoo obtained confidential employment information about D'Ambly, and publicly stated that D'Ambly was no longer with the Daily News. In spite of Exoo's advance knowledge of D'Ambly's termination, the Daily News claims that none of their employees or agents ever spoke to Exoo. On January 14, 2019, the Daily

News claimed they learned of the two voicemails received on January 11, 2019, and told D'Ambly not to report to work.  D'Ambly never returned to work, and was officially terminated as of January 18, 2019.

The Daily News has claimed attorney-client privilege to withhold emails where there in-house counsel was either the sender or primary or secondary recipient emails.  In their privilege log the Daily News describes the withheld emails as an "*[e]mail chain requesting legal advice from in-house counsel regarding the investigation of D. D'Ambly's conduct.*"  The privilege log description lacks the particularity required by *Fed. R. Civ. P. 26(b)(5)* and fails to describe the conduct that they were investigating.  In order to shield the Daily News' instant reaction to D'Ambly's dox, they cited the above description to exclude the first eighteen (18) email chains from its proposed in-camera review document list.  The validity of the Daily News' privilege claims cannot be determined based on the vague and unclear privilege description.

In order to claim attorney-client privilege, "the claimant must have consulted the lawyer to obtain legal counseling or advice, document preparation, litigation services, or any other assistance customarily performed by lawyers in their professional capacity.  A lawyer's assistance is legal in nature if the lawyer's professional skill and training would have value in the matter." *Restatement (Third) of the Law Governing Lawyers § 72 cmt. b. (2000)*.  Simply including in-house counsel in an email chain does not transform the email and the information contained therein into protected attorney work-product or a protected attorney-client communication.  *In re Gabapentin Patent Litig.*, 214 F.R.D. 178 (D.N.J. 2003).  In order for communications with in-house counsel to be entitled to the protection of attorney-client privilege, in-house counsel must not only be functioning as a lawyer, but the advice given must be predominantly legal, as opposed to business, in nature.  *Tucker v. Fischbein,* 237 F.3d 275, 288 (3d Cir. 2001).  The privilege does not protect the underlying facts.  *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981).

Here, the issue is that the Daily News is claiming attorney-client privilege in order to shield email conversations which occurred immediately after D'Ambly was doxed, before his alleged conduct was investigated when the lawyer had no facts to base his legal advice upon.  As we have seen by the debacles that have encompassed Bud Light and Target in recent weeks, culture issues are financially devastating to corporations, and D'Ambly's doxing as an alleged "fascist, Nazi, and white supremacist" meant that he had to go before the Daily News was engulfed in a mushrooming public relations nightmare and financial disaster.  As an example of the Daily News' efforts to shield incriminating conversations they withheld privilege log entries numbered 2-8, which are email chains dated October 30, 2018, that were exchanged between its Vice President of Communications and Public Relations, its Chief Digital Operations Officer, the CEO, Executive Director, and in-house counsel.  The inclusion of the VP of Communications and Public Relations, when they had yet determined whether D'Ambly committed any terminable offenses or investigated his conduct indicates that these emails were business in nature for the purposes of formulating a response to the potential public relations nightmare and not intended to be confidential.  Moreover, they withheld email communications with a news reporter, who is not protected by the privilege as being protected by attorney-client privilege without explanation as to the legal advice taken or given to the news reporter.  *See Privilege Log entry 38, dated November 1, 2018.*

The limited emails that the Daily News did produce concerning D'Ambly's dox exposes his termination was pre-textual.  A vindictive human resources executive wanted him terminated irrespective of his employment record and repeatedly made unprofessional comments about D'Ambly clearly delighting in the opportunity to terminate him.  For instance, in an email dated November 5, 2018, first between Maya Bordeaux, Chief Human Resources Officer and in-house counsel Mindy Lees, which appears to coincide with privilege log entries 61, 68-69, Bordeaux forwarded a link to an online version of the obituary for D'Ambly's sister, which she callously described as "I think Andrea is his dead sister."  *See Exhibit B email dated November 5, 2018, Maya Bordeaux to Mindy Lees*.  Bordeaux forwarded the same email to Jean Nechtaval, who giddily replied "Super sleuth Maya!  Impressive!"  *Id.*  Additionally, on January 2, 2019, Bordeaux sent an email to Terry Jimenez, the Tribune Publishing Chief Financial Officer, where she referred to D'Ambly as "that clown."  *Exhibit C email dated January 2, 2019, Maya Bordeaux to Terry Jimenez*.  An email dated January 9, 2019, from Bordeaux to Nechtaval indicates that the decision to terminate D'Ambly was already made, where she recommended that security searches the locker of "that hateful horrible man."  *See Exhibit D email dated January 9, 2019, from Maya Bordeaux to Jean Nechtaval*.

The Daily News privilege log description does not explain what conduct was investigated, and the vague privilege log description and frivolous nature of the disclosed emails belies Daily News' claim that the withheld emails were about seeking legal advice.  Moreover, as was the case here, what legal advice can an attorney provide to a client if she does not have the facts?

Respectfully,

Patrick Trainor, Esq.