UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**JESSICA S. ALLEN**<br>UNITED STATES MAGISTRATE JUDGE | Martin Luther King, Jr. Federal Bldg.<br>& U.S. Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102<br>(973-645-2580) |

**LETTER ORDER**

July 23, 2024

TO:   ALL COUNSEL OF RECORD

Re:   D'Ambly v. Exoo, *et al.*,
      Civil Action No. 20-12880 (JKS) (JSA)

Dear Counsel:

Before the Court is the motion of Plaintiff, Daniel D'Ambly ("D'Ambly"), to compel non-party One People's Project ("OPP") to comply with a subpoena *duces tecum* and for an expedited order to show cause why OPP should not be held in contempt for failing to comply with the subpoena (the "motion to compel"). (ECF Nos. 160, 170). OPP opposes the motion. (ECF No. 168).[1] The Court did not hear oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, and for good cause shown, D'Ambly's motion to compel is **DENIED**.

I.   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The facts and extensive procedural history of this case are well-known to the parties and detailed in prior opinions and orders, including this Court's Letter Order dated June 17, 2024 (the June 17th Letter Order"). (*See* ECF No. 207; *see also* ECF Nos. 97, 99, 133, 135 & 136). As such, the Court highlights only what is relevant to decide the present dispute.

As explained in the June 17th Letter Order, the Second Amended Complaint ("the SAC"), (ECF No. 103), has two conceptual parts. (ECF No. 207 at 1). In part one, eleven (11) Plaintiffs, including D'Ambly, brought numerous claims against Christian Exoo, "a purported far left activist," and others, after they allegedly identified Plaintiffs, including D'Ambly, as "fascists or white supremacists, and 'doxed' them on Twitter." (ECF No. 99 at 1-2). In part two, D'Ambly alleges that, based on the doxing, his former employers, Defendants New York Daily News and Tribune Publishing, Inc. (collectively, "the News Defendants"), unlawfully discriminated against

---

[1] On July 10, 2023, per the parties' agreement, D'Ambly's motion to compel was administratively terminated pending the outcome of settlement discussions. (ECF No. 177). The parties discussed settlement through April 2024, but were not able to resolve the case. (ECF Nos. 201, 206). Accordingly, the Court now considers D'Ambly's motion to compel.

and fired him on account of his race and racial associations. (Compl., ¶¶ 148-53).

The SAC names "Torch Network a/k/a Torch Antifa Network" (herein, "Torch") as a defendant and alleges Torch is "a network of Militant antifascists across (but not limited to) the United States," (Compl., ¶ 25), which "controls and publishes Twitter account @TorchAntifa and internet website https:// torchantifa.org." (*Id.*). The SAC further pleads that Torch has "no known address but its internet domain torchantifa.org is registered to Pennsylvania non-profit organization One People's Project." (*Id.*).

On May 6, 2022, Plaintiff requested the Clerk of the Court enter default against Torch. (ECF No. 132). According to Plaintiff, Torch was served with the SAC through OPP, the "owner and registrant of defendant's internet domain https://torchantifa.org, and also the technical, administrative, and billing contact with a New Jersey mailing address." (ECF No. 132-1, ¶ 3).[2] On May 10, 2022, the Clerk entered default against Torch. (ECF Entry Dated May 10, 2022).

On May 16, 2022, and again on May 23, 2022, Plaintiff, pursuant to Federal Rule of Civil Procedure 45, served a subpoena addressed to "Torch Antifa Network" on OPP, seeking nine categories of documents allegedly "possessed by the website www.torchantifa.org." (ECF No. 160, ¶ 4 & 160-2, Ex. A (herein, the "Torch subpoena")).[3] The Torch subpoena's document requests, as discussed more below, seek, among many other things, information relating to Torch, its members, finances, donors, and communications and activities, as well as information relating to alleged incidents of vandalism and violence against three of the named Plaintiffs that filed the Complaint. (*See id.*, at Ex. A pp. 6-8).

On August 9, 2022, the Honorable John M. Vazquez, U.S.D.J. (Ret.) entered an Opinion and Order dismissing all aspects of part one of the SAC. (*See* ECF Nos. 133, 135, 136 & 138). Plaintiffs appealed dismissal of part one of the SAC to the United States Court of Appeals for the Third Circuit, (ECF No. 140), which dismissed the appeal for lack of appellate jurisdiction. (ECF No. 183).

All that remains before this Court is part two of the SAC—that is, D'Ambly's unlawful discrimination and wrongful discharge claims against the News Defendants.

## II.     CURRENT MOTION[4]

In support of his motion to compel, D'Ambly argues that he has reason to believe Torch has "highly relevant and unique information concerning this action" and that Torch failed to serve

---

[2] D'Ambly alleges that OPP's mailing address is 383 Hillcrest Avenue, Somerset, New Jersey, and that the address has been listed by OPP on federal tax filings. (ECF No. 132-1, ¶ 4).

[3] Even though Torch is a named party and therefore would ordinarily be subject to party court procedure discovery rules, a defaulted party is treated as a non-party for purposes of discovery. *See, e.g.*, *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010).

[4] Although the Torch subpoena was allegedly served in May 2022, D'Ambly did not seek to enforce the Torch subpoena until he filed his motion to compel on April 12, 2023. (ECF No. 160).

written objections or otherwise respond to the subpoena. (ECF No. 160 at ¶¶ 4-5).[5] As such, D'Ambly requests "expedited consideration of this motion" because Torch has allegedly "intentionally acted to destroy highly relevant information by changing its domain name from 'www.torchantifa.org' to www.torch-antifa.org" and by changing the internet domain registry settings from public access to private, which shields the domain owner and registrant information . . . from public view." (*Id*. at 2).

In opposition, OPP advances three key arguments. First, it cannot be forced to comply with the Torch subpoena (or held in contempt) because the Torch subpoena is not addressed to OPP, but rather, is directed to another entity (i.e., Torch). (ECF No. 168 at 1). OPP contends that it is separate from Torch and cannot be held liable for Torch's conduct. (*Id.* at 3-4). Second, the Torch subpoena violates Federal Rule of Civil Procedure 26(d)(1) because it was issued prior to the parties having held a discovery conference pursuant to Rule 26(f). (*Id.* at 5-6). Finally, the Torch subpoena's document requests seek information regarding only the legal claims Judge Vazquez previously dismissed. (*Id.* at 4 n.1).

On reply, D'Ambly argues that he served OPP with the Torch subpoena because Torch has "no formal organizational structure," and Torch's only known method of contact is through OPP. (ECF No. 170 at 3). D'Ambly further contends that a Rule 26(f) conference was held on November 30, 2022, and that OPP was thus obligated, pursuant to Federal Rule of Civil Procedure 34(d)(2)(B), to respond to the subpoena by December 30, 2022. (*Id.* at 3).

### III. <u>ANALYSIS</u>

The parties' papers raise but do not sufficiently address several issues relating to the Torch subpoena.

First, D'Ambly does not provide any authority that would support this Court enforcing a subpoena addressed to one party (Torch) but served on a non-party (OPP).

Second, Torch is a website, and neither party cites any authority or discusses under what circumstances a website can be properly served with a subpoena directed at a non-party and how service should be effectuated. The Court's independent research reveals that courts have grappled with these issues. *Cf. Kegege v. Namsilo, LLC, et al.,* 2024 WL 1299998, at *1-3 (D. Md. Mar. 27, 2024) (exploring service of subpoenas on internet domain registrar companies for twenty-five websites named as defendants); *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 566-67 (E.D. Va. 2010) (website named as defendant, discussing service efforts through

---

[5] D'Ambly did not submit a brief or a statement why a brief is not necessary in accordance with Local Civil Rules 7.1(d)(1) and 7.1(d)(4). Local Civil Rule 7.1(d)(1) sets forth the requirement that a motion be accompanied by a brief. In addition, Local Rule 7.1(d)(4) states, in relevant part, that "in lieu of filing any brief in support of or in opposition to a motion, a party may file a statement that no brief is necessary and the reasons therefor." *Id*. Plaintiff's failure to comply with these two Local Rules, standing alone, is a sufficient basis to deny the present motion. *See, e.g., Cresci v. City of Bayonne*, 2024 WL 94099, at *1-2 (3d Cir. Jan. 9, 2024); *Ali v. Jenkins*, 2023 WL 2572380, at *1 (D.N.J. Mar. 20, 2023); *Rego v. Continental Airlines*, 2013 WL 3447804, at *3 n.1 (D.N.J. July 9, 2013). Nonetheless, the Court will exercise its discretion and consider the papers submitted in connection with D'Ambly's motion on the merits. *See N.N. o/b/o C.M.U. v. Northern Burlington Cty. Reg. School Distr.*, 2023 WL 9017175, at *1 (D.N.J. Dec. 29, 2023)

registrant).

Third, D'Ambly appears to allege that Torch has changed its internet domain. Accordingly, it is not clear to the Court whether the subpoena is effectively moot and/or whether OPP remains the registrant for the current, active website.

D'Ambly's failure to sufficiently establish the subpoena was addressed to the proper party or that it was effectively served are independent bases to deny the motion to compel. However, the Court need not address these issues because the Torch subpoena suffers from an even more basic and fundamental flaw—that is, following dismissal of part one of the SAC, D'Ambly has not shown, let alone attempted to explain, how the information sought in the Torch subpoena is relevant to the remaining discrimination and wrongful discharge claims.

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Id.* The material "need not be admissible in evidence to be discoverable." *Id.* The scope of discovery provided for under Rule 26 applies to discovery sought via a Rule 45 subpoena. *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). The requesting party bears the initial burden to show that the documents requested are relevant and within the scope of Rule 26. *See id*.

A district court "has broad discretion regarding the enforcement of subpoenas." *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances."). "In applying that discretion, courts have the authority to quash or modify subpoenas that fall outside the scope of permissible discovery." *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). "A court may limit or deny . . . discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense." *In re EthiCare Advisors, Inc.*, 2020 WL 4670914, at *5 (D.N.J. Aug. 12, 2020).

Here, as discussed herein and in the Court's June 17th Letter Order, a large portion of the SAC has been dismissed. All that remains are D'Ambly's employment-related claims against the News Defendants, which focus on whether he was terminated for discriminatory reasons and the scope, impact, and validity of a post-termination settlement agreement and release. (ECF No. 207 at 6-7). These remaining claims and defenses "set the guardrails for discoverable information." *Progressive Garden State Ins. Co. v. Metius*, 2019 WL 1468155, at *2 (D.N.J. Apr. 3, 2019).

The Torch subpoena was issued prior to dismissal of part one of the SAC. Judge Vazquez's August 9, 2022 Opinion and Order has significantly narrowed the scope of the case. To that end, the Torch subpoena's document requests are exceptionally overbroad and bare no obvious or articulated relevance to the limited claims that remain against the News Defendants. A cursory overview of the general nature and substance of the requests confirm the lack of relevance to the remaining claims:

4

- Request Number 1 seeks the names of all Torch Antifa Network members and their emails, phone numbers, names of their employers, and all their domain names. (ECF No. 160-2, Ex. A at 6);
- Request Numbers 2 through 4 seek information about the ownership and function of the Torch website and communications with, among others, dismissed defendant Christian Exoo (*id.* at 6-7);
- Request Number 5 seeks all communications between Torch and former Defendant Exoo regarding the doxing of *all* eleven Plaintiffs, not just D'Ambly, as well as every person who contributed to the allegedly illegal doxing (*id.* at 7);
- Request Number 6 seeks the identity of any individual person or entity who donated money, property, material or anything else to Torch, as well as their email addresses, social media usernames, home and business addresses and phone numbers, and the amount and type of their donations (*id.*);
- Request Number 7 seeks the identities of any individuals who attended any Torch Antifa conference held since 2013, and seeks their emails, addresses and phone numbers (*id.*);
- Request Number 8 seeks the identity of any governmental or non-governmental organization that contributed information to Torch that led to the discovery of *any* of the named Plaintiff's personal identifiers (*id.*); and
- Request Number 9 seeks information regarding four specific incidents of alleged vandalism and/or violence, including four specific incidents, three of which involve Plaintiffs other than D'Ambly (*id.* at 8).

In short, D'Ambly has not carried his burden to show that the Torch subpoena seeks relevant information.[6] *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d at 501. As such, even if the Torch subpoena was valid and properly served, D'Ambly's motion to compel must be denied.[7]

## IV. CONCLUSION

For the reasons set forth above, D'Ambly's motion to compel and for the issuance of an order to show cause, (ECF No. 160), is **DENIED**.

s/Jessica S. Allen
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

cc: Hon. Jamel K. Semper, U.S.D.J.

---

[6] While Torch has not appeared to argue the relevance of the document requests, OPP disputes the relevance of the requests in its opposition papers. (*See* ECF No. 168 at 4 n.1). Since D'Ambly contends OPP is the party that should be held in contempt for failure to comply with the Torch subpoena, the Court concludes that it necessarily follows OPP has standing to raise objections to the document demands based on a lack of relevance.

[7] Given the procedural history of this case, Plaintiff's request for expedited consideration of the motion is moot. Likewise, since the Court denies Plaintiff's motion to compel on relevancy grounds, there is no basis for the Court to issue an order directing OPP to show cause why it should not be held in contempt for failure to comply with the subpoena. Thus, those requests are denied.