**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL D'AMBLY, *et al*.,** | Civ. Action No. 20-12880 (JKS) (JSA) |
| **Plaintiffs,** | |
| v. | |
| **CHRISTIAN EXOO, *et al*.,** | **OPINION** |
| **Defendants.** | **AND ORDER** |

**JESSICA S. ALLEN, U.S.M.J.**

Plaintiff, Daniel D'Ambly ("D'Ambly"), is a former employee of Defendants New York Daily News and Tribune Publishing, Inc. (collectively, the "News Defendants"). D'Ambly alleges that the News Defendants (i) violated the New Jersey Law Against Discrimination ("NJLAD") by allegedly terminating him based on his race and racially identifiable associations and (ii) committed a tort by failing to warn him of death threats made by third parties following an alleged online doxing.

Before the Court is D'Ambly's application seeking to compel the News Defendants to produce documents withheld based on the attorney-client privilege. (ECF Nos. 163, 172). The News Defendants oppose the application. (ECF Nos. 163, 171, 174). The Court did not hear oral argument, pursuant to Federal Rule of Civil Procedure 78. After carefully considering the parties' submissions, and for the reasons set forth below and for good cause shown, D'Ambly's application is **GRANTED IN PART AND DENIED IN PART**.

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The facts and extensive procedural history of this case are well-known to the parties and detailed in prior Opinions and Orders.  (*See, e.g.,* ECF Nos. 97, 99, 133, 135, 136, 207 & 208).  As such, the Court highlights only what is relevant to decide the present dispute.

The Second Amended Complaint, (ECF No. 103, "the Complaint"), has two distinct parts.  In part one, eleven (11) Plaintiffs, including D'Ambly, brought numerous claims against Christian Exoo ("Exoo"), an alleged "far left activist," and his associates, after they allegedly identified Plaintiffs, including D'Ambly, as "fascists or white supremacists and 'doxed' them on Twitter."  (ECF No. 208 at 1).  In part two, D'Ambly alleges that, based on the doxing, the News Defendants received public pressure and threats to fire him and engaged a private investigative firm, Insite Risk Management ("Insite"), to invade his privacy and search for and create a pretextual reason to terminate him.  (Compl., ¶¶ 150-53).  According to the Complaint, the News Defendants unlawfully discriminated against D'Ambly and ultimately fired him based on his race and racial associations.  (*Id.*, ¶¶ 148-53).  At this time, all aspects of part one of the Complaint have been dismissed.[1]  All that remains before this Court is part two, which is essentially a wrongful termination case against the News Defendants.

Fact discovery was originally scheduled to close on May 21, 2023.  (ECF No. 143).  Shortly before the close of discovery, D'Ambly submitted a letter alleging, among other things, that the News Defendants' privilege log was inadequate and that they were "withholding . . . . documents and things under blanket claims of attorney-client privilege."  (ECF No. 155).  In response, the

---

[1] Part one of the Complaint was dismissed in a series of Opinions and Orders issued in 2021 and 2022.  (*See* ECF Nos. 97, 99, 133, 135, 136 & 138).  Plaintiffs appealed dismissal of part one of the Complaint to the United States Court of Appeals for the Third Circuit, (ECF No. 140), which dismissed the appeal as premature, due to a lack of appellate jurisdiction.  (ECF No. 183).

News Defendants defended their privilege log and privilege designations. (ECF No. 157). This Court then entered an Order, directing the parties to meet-and-confer in a good faith attempt to informally resolve their dispute. (ECF No. 158).

On April 11, 2023, the parties submitted a joint status letter stating they had been unable to successfully resolve their privilege disputes through the meet and confer process. They identified two specific disputes: (i) whether the News Defendants' privilege log was adequate, and (ii) whether the News Defendants had permissibly withheld, as privileged, emails and other documents generated in the immediate aftermath of the alleged doxing and in connection with the News Defendants' and Insite's subsequent investigation (herein, collectively, "the privilege dispute"). (ECF No. 159; *see also* ECF No. 157). In response, this Court directed the parties to file a separate joint letter, setting forth their respective arguments on the privilege dispute. (*See* ECF No. 161). The parties complied and included the News Defendants' privilege log. (*See* ECF No. 163 & ECF No. 163-1 ("the privilege log")).

Thereafter, on May 15, 2023 (the "May 15th Conference"), the Court held a Telephone Status Conference and discussed the privilege dispute. Following the May 15th Conference, this Court entered an Order directing the parties to (i) submit supplemental letter briefs on the privilege dispute, and (ii) select twenty (20) representative sample documents from the privilege log for this Court to review *in camera*. (ECF No. 169).[2]

---

[2] Sampling is frequently used in this district when there are large number of privileged documents in dispute. *See Shipyard Assoc. L.P. v. City of Hoboken*, 2015 WL 4623470, at *2 (D.N.J. Aug. 3, 2015) (citing cases directing sampling in privilege disputes); *see also Formosa Plastics Corp. U.S.A. v. Ace American Ins. Co.*, 2023 WL 8446228, at *3 (D.N.J. June 8, 2023) (employing sampling). The concept of sampling is that the Court will review sample documents and provide representative rulings that the parties can apply to any similar documents being withheld on the same grounds. *See, e.g.*, *Shipyard*, 2015 WL 4623470, at *2; *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 181 & n.1 (D.N.J. 2004).

The instant motion followed.[3]  (*See* ECF Nos. 171, 172, 174).

## II.     LEGAL STANDARD – ATTORNEY-CLIENT PRIVILEGE[4]

The purpose of the attorney-client privilege is to "encourage full and frank communications between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The Third Circuit has held that the privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir.1979).

The party asserting the attorney-client privilege bears the burden to show that it applies.  *See In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.3d 469, 474 (3d Cir.1979).  While it is true that the attorney-client privilege is narrowly construed because it "obstructs the truth-finding process," *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir.1991), when it applies, the privilege is not "disfavored." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 n. 13 (3d Cir.2007).  Courts should be cautious in their application of the privilege

---

[3] On July 10, 2023, per the parties' agreement, the privilege dispute was administratively stayed pending the outcome of settlement discussions.  (ECF No. 177).  The parties discussed settlement through April 2024, but were not able to resolve the case.  (ECF Nos. 201, 206).  Accordingly, the Court now considers the privilege dispute.  As an aside, the Court notes that the parties' joint letter, (ECF No. 163), also references the work-product doctrine.  (*See id.* at 1).  However, the parties' supplemental letters only argue whether the attorney-client privilege applies to the withheld sample documents.  (*See* ECF No. 171 at 3; ECF No. 172 at 2).  Moreover, in their supplemental letter briefs, the News Defendants specifically request only "that this Court issue an order confirming that such documents are subject to the attorney-client privilege and need not be produced to Plaintiff."  (ECF No. 174 at 2; *see also* ECF No. 171 at 3).  Therefore, the Court addresses only whether the samples are protected by the attorney-client privilege.

[4] The Complaint alleges federal question jurisdiction.  (*See* Compl., ¶ 26).  Accordingly, Federal Rule of Evidence 501 directs this Court to apply federal privilege law.  *See Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982).

mindful that "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). In all instances, the facts underlying any given communication remain discoverable. *See Upjohn*, 449 U.S. at 395–96 ("Protection of the privilege extends only to communications not to facts.).

The attorney-client privilege applies to both individuals and corporations. *See Upjohn*, 449 U.S. at 390. Corporations, as entities, must act through their employees and management. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123-25 (3d Cir. 1986) (citing *Commodity Futures Trading v. Weintraub*, 471 U.S. 343, 348 (1985)). Accordingly, the attorney-client privilege extends to communications of a corporation's management and employees where doing so would effectuate or enable legal advice. *See Upjohn*, 449 U.S. at 391. However, advice concerning a corporation's business affairs, technical issues, or public relations is not protected by the attorney-client privilege. *See, e.g., Dejewski v. Nat'l Beverage Corp.*, 2021 WL 118929, at *1-2 (D.N.J. Jan. 12, 2021); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305-06 (D.N.J. 2008). Thus, when communications contain both legal and business advice, courts must ascertain whether "the communication is designed to meet problems which can be fairly characterized as predominantly legal." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 99 (D.N.J. 1990). "Although the rule is clearly stated, its application is difficult, since in the corporate community, legal advice 'is often intimately intertwined with and difficult to distinguish from business advice.'" *Leonen*, 135 F.R.D. at 98–99 (*quoting Sedco Int'l SA v. Cory*, 683 F.2d 1201, 1205 (8th Cir.1982)).

In the context of email communications, such as those at issue here, merely "cc'ing" an email to an attorney is insufficient to establish privilege. *See Shipyard*, 2015 WL 4623470, at *5 (citing *In re Avantel*, 343 F.3d 311, 321 (5th Cir. 2003)). Although the attorney-client privilege

does not shield an email or document merely because it was routed or transferred through an attorney, "a document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005).    Finally, if a communication (such as an email) is privileged but contains attachments, "each attachment must individually satisfy the criteria for establishing the privilege.  Merely attaching something to a privileged document will not, by itself, make the attachment privileged." *Shipyard,* 2015 WL 4623470, at *5 (citing *Leonen*, 135 F.R.D. at 98).

## III.  **DISCUSSION**

The News Defendants organize the twenty *in camera* sample documents from their privilege log into three groups, labeled as: (1) "Emails To or From Counsel Seeking or Receiving Legal Advice" ("Group 1");[5] (2) "Emails To or From Third-Party Investigator to Counsel" ("Group 2");[6] and (3) "Emails Seeking Information to Assist Counsel" ("Group 3").[7]  (*See* ECF No. 171 at 1-2).

D'Ambly challenges both the adequacy of the privilege log and whether the withheld documents qualify for privilege protection.  (*See* ECF No. 163 at 1-2; ECF No. 172 at 2).[8] [9]

---

[5] Ten (10) samples, referenced as Bates: REVTRIB0044-00125255; REVTRIB0044-00041208; REVTRIB0044-00123514;  REVTRIB0044-00023262;  REVTRIB0044-00049903;  REVTRIB0044-00003360  (parent email) REVTRIB0044-00003361 (attachment);   REVTRIB0044-00003534 (parent email) REVTRIB0044-00003535 (attachment); REVTRIB0044-00004609 (parent email) REVTRIB0044-00004610 (attachment); REVTRIB0044-00022161; REVTRIB0044-00231503.

[6] Six (6) samples, referenced as Bates: REVTRIB0044-00130766; REVTRIB0044-00054495; REVTRIB0044-00122881; REVTRIB0044-00063213; REVTRIB0044-00007644; REVTRIB0044-00007645.

[7] Four (4) samples, referenced as Bates: REVTRIB0044-00050265; REVTRIB0044-00125189; REVTRIB0044-00008531; REVTRIB0044-00028402.

[8] The three Groups implicate discrete sub-issues and concepts relating to the applicability and scope of the attorney-client privilege that expand beyond the general legal standard set forth in Section II above.  Thus, when appropriate, the Court has included legal standards applicable to each Group as appropriate in the Discussion section.

[9] D'Ambly's Supplemental Letter Brief dated June 8, 2023, (ECF No. 172), appears to allege that the News Defendants are improperly withholding email communications with a news reporter, which he contends cannot be protected by

A.    **The Privilege Log**

The Court first turns to the adequacy of the News Defendants' privilege log.  Both the Federal Rules of Civil Procedure and the District  Court's Local Civil Rules provide that, when a claim of privilege is asserted in responding or objecting to any discovery request, the party asserting the privilege must provide a log identifying the nature of the privilege asserted and the basis therefore.  *See* Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii); L. Civ. R. 33.1, 34.1.  To constitute an adequate log, "[a]t a minimum, for each document asserted to be protected by these privileges, the defendants must provide both plaintiff and the Court with the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document and the privilege or privileges asserted."  *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989) (Wolfson, J.).[10]  Further, "[a] withholding party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  *Schaeffer v. Tracey*, 2017 WL 465913, at *3 (D.N.J. Feb. 2, 2017) (citing Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii)).  A deficient privilege log can result in waiver of the right to assert privilege.  *See, e.g.*, *Margulis v. Hertz Corp.*, 2017 WL 772336, at *4 (D.N.J. Feb. 28, 2017) (collecting cases); *Schaeffer*, 2017 WL 465913, at *3 ("The production of an inadequate privilege log ... may be viewed as a waiver of the privilege.").

The Court finds here that the privilege log does, in fact, provide the basic information

---

the attorney-client privilege (*id.* at 2).  The News Defendants have not responded to this allegation and based on this Court's *in camera* review of the sample documents, it does not appear that they contain any such communications. This Court cannot address this issue without more information.  Following the decisions herein, should this issue remain, the parties should meet-and-confer and raise any unresolved dispute with the Undersigned pursuant to Local Civil Rule 37.1.

[10] As Judge Wolfson noted in *Wei*, "[c]ounsel can refer to *Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 516 (D.N.J.1987) for an example of this format."  127 F.R.D. at 96.

required regarding the documents being withheld—i.e., the dates, names, recipients, privilege asserted, and description of the basis to assert privilege.  (*See* ECF No. 163-1).  However, at the same time, the "log description" for each withheld document is overly generic, as well as repetitive, as the same description is repeated for many entries on the privilege log.  (*See id.*)  Moreover, the News Defendants list numerous individuals involved in the communications and identify what company employs them, (*see* ECF No. 163-1 at p. 81), but provide very little information about the individuals' respective job responsibilities or their necessity to, or involvement in, securing or providing legal advice.  This makes it somewhat difficult to fully assess claims of privilege based on the log alone.  For that reason, this Court finds that the News Defendants' privilege log is not exemplary.

However, on balance, this Court does not find that the privilege log is so deficient or inadequate that it constitutes a waiver of the right to assert the privilege—or that any deficiencies in the log support wholesale production of withheld documents.  Rather, like the Court in *Margulis*, this Court recognizes "how important the privilege is, and how much time has already been spent on the issue," and is "not convinced that [waiver] would be in the interests of justice."  *Id.* at *4.  Accordingly, this Court will, like the court in *Margulis*, "analyze the issues and . . . the documents, to the extent possible, to provide guidance to the parties."  *Id.*  Indeed, for example, the sample documents themselves provide more context about a particular author's and recipient's job title and/or responsibility.  For that reason, to the extent D'Ambly seeks wholesale production of the News Defendants' privileged documents based on an allegedly deficient privilege log, (*see* ECF No. 172 at 2), the request is denied.

### B.    The Representative Samples

Before considering the merits of the privilege dispute, the parties' briefs and the *in camera*

samples require two prefatory comments.

First, the twenty sample documents are not actually twenty samples at all. Rather, most of the individual samples are email chains that contain many separate and discrete individual emails. Yet, each separate email chain is stamped and grouped together with one common bates stamp number. Further confusing matters, there is no apparent correlation between the bates numbers that appear on the sample documents and the documents labeled and numbered on the privilege log.[11] As other courts in this district have noted, "[h]aving multiple embedded emails [on a privilege log] is problematic[,]" and "not an effective way to argue privilege disputes, which must be assessed document-by-document and on a case-by-case basis." *Margulis*, 2017 WL 772336, at *4. Nevertheless, the Court has evaluated each individual email within each sample and now provides a representative ruling. *See Jorjani v. NJIT, et al.*, 2021 WL 4237255, at *2-4 (D.N.J. Sept. 17, 2021) (evaluating individual emails in email chain).

Second, the samples cannot be properly evaluated without some context regarding the timeline of events following the alleged doxing. While the parties have submitted several letters on the privilege dispute, they do not set forth a detailed factual background. (*See, e.g.*, ECF Nos. 171, 174). The Court does so now, noting that the relevant facts seem largely undisputed.

Exoo's alleged doxing of D'Ambly occurred on or about October 29, 2018. (ECF No. 172 at 1). In response, on October 31, 2018, the News Defendants retained Insite to investigate D'Ambly's activities and associations. (*Id.*) The News Defendants contend that, during this time, in-house counsel was "involved" to determine "what, if any, of [] D'Ambly's activities had spilled into the workplace" and "potentially violated Defendants' policies and any applicable collective

---

[11] The News Defendants letter brief states that they have "produced email chains that are inclusive of multiple privilege log entries for *in camera* review." (ECF No. 174). Yet, they do not identify with specificity what entries on the privilege log correlate to the Bates stamped samples.

bargaining agreement." (ECF No. 157 at 3). On December 4, 2018, Insite provided the News Defendants with an investigative report. (ECF No. 172 at 1). D'Ambly then met with Daily News human resources representatives on or about January 10, 2019, concerning the doxing and the results of Insite's investigation. (*Id.*) At the meeting, D'Ambly was not terminated, but rather was issued a "Last and Final Warning" letter, which stated that there "was no evidence that D'Ambly brought his activities into the workplace, but if he had, he would have been terminated, and if he did, he would be terminated." (*Id.*) D'Ambly continues that, on January 13, 2019, Exoo obtained confidential employment information regarding D'Ambly and publicly stated that he was no longer employed by the Daily News, even though, at that point, D'Ambly was still employed. (*Id.*) D'Ambly claims he was terminated on January 18, 2019. (*Id.*)

Against that backdrop, the privilege sample documents are emails and documents from October 2018 through January 2019 regarding the alleged doxing incident.

### 1.    Group 1 Samples: Emails Seeking or Receiving Legal Advice

The News Defendants describe the Group 1 documents as "emails and attached documents contain[ing] requests for legal advice from Tribune's in-house counsel, Mindy Lees, or legal advice provided by Lees to Defendants' decision-makers regarding the investigation into" D'Ambly's activities, including "whether those activities spilled over into the workplace and what actions should be taken in response." (ECF No. 171 at 2). According to the News Defendants, all such communications are protected by the attorney-client privilege. (*See* ECF No. 174 at 2).

D'Ambly contends that the Group 1 samples do not reflect requests for or the provision of legal advice. D'Ambly argues that the Group 1 samples include various non-lawyer employees of the News Defendants, including communications and public relations employees, who were all engaged in business activities, not the securing or providing of legal advice. (*See* ECF No. 172 at

2).  D'Ambly continues that, following the alleged doxing, the News Defendants were concerned about public perception and protecting their business and were intent on terminating D'Ambly before the News Defendants incurred a "mushrooming public relations nightmare and financial disaster."  (*Id.*)  Thus, in sum, D'Ambly contends that the News Defendants have not established that the Group 1 communications were made for legal, rather than business purposes, and that they are protected by the attorney-client privilege.  (*Id.*)

The attorney-client privilege applies "to communications by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the company."  *Engage Healthcare Communs. v. Intellisphere*, 2017 WL 10259770, at *2 (D.N.J. Sept. 12, 2017), *adopted by* 2017 WL 10259774, at *1 (D.N.J. Nov. 21, 2017).  This applies with equal force to internal conversations had for the purpose of securing or providing legal advice within the employment context.  *See Jorjani v. NJIT*, 2021 WL 82325, at *5 (D.N.J. Jan. 11, 2021), *aff'd in part and vacated in part on other grounds by* 2021 WL 22058741 (D.N.J. May 25, 2021).  With these general legal principles in mind, the Court evaluated all the individual samples submitted for *in camera* review.  As to each sample, the Court finds as detailed below.

- **REVTRIB0044-00125255**

This sample consists of an email chain of nine emails, sent between October 30, 2018, and October 31, 2018.  This Court concludes that portions of this email chain are privileged, and others are not.  Specifically, the emails sent on October 30, 2018, at 11:53 a.m.; October 30, 2018, at 11:57 a.m.; October 30, 2018, at 12:02 p.m., and October 31, 2018, at 12:13 a.m., are not privileged, as they do not disclose, reflect, transmit or otherwise discuss attorney client information or legal advice.  Further, these emails copy numerous individuals that do not appear to be attorneys

or involved in providing information related to the provision of legal advice.  However, the remaining emails in this chain are privileged, as they are communications had for the purpose of providing or securing legal advice and all involve Tribune's General Counsel, Mindy Lee.

- **REVTRIB0044-00041208**

This sample is comprised of four emails, sent between October 31, 2018, and November 1, 2018.  The Court finds the entire sample is privileged, as it contains communications between attorneys relating to the provision of legal advice.

- **REVTRIB0044-00123514**

This sample is comprised of five emails, dated October 31, 2018, through November 7, 2018.  The Court finds that the entire sample is privileged, as it contains communications between attorneys relating to the provision of legal advice.

- **REVTRIB0044-00023262**

This sample is comprised of ten emails all sent October 30, 2018.  The majority of these emails also appear as part of the first sample (REVTRIB0044-00125255).  As with the first sample, portions of this email chain are privileged, and others are not.  Specifically, the emails sent on October 30, 2018, at 11:53 a.m.; October 30, 2018, at 11:57 a.m.; October 30, 2018, at 12:02 p.m., and October 30, 2018, at 5:08 p.m. are not privileged, as they are not attorney-client communications that disclose or discuss legal advice.  The remaining emails in this chain are privileged, as they are communications had for the purpose of providing or securing legal advice.

- **REVTRIB0044-00049903**

This sample is comprised of three emails, exchanged between Attorney Lees and Maya Bordeaux, the Tribune's Chief Human Resources & Communications Officer, on October 31, 2018.  All three emails reflect requests and/or communications relating to the provision of legal

advice, and thus are privileged.

- **REVTRIB0044-00003360 (parent email)**
  **REVTRIB0044-00003361 (attachment)**

This sample is comprised of three emails and an attachment. All aspects of this sample are privileged, as they reflect attorney-client privileged communications and attorney advice relating to an investigation into legal issues and/or the transmission of legal advice.

- **REVTRIB0044-00003534 (parent email)**
  **REVTRIB0044-00003535 (attachment)**

This sample is comprised of one email and an attachment. All aspects of this sample are privileged, as they reflect attorney-client privileged communications and attorney advice relating to an investigation into legal issues and/or the transmission of legal advice.

- **REVTRIB0044-00004609 (parent email)**
  **REVTRIB0044-00004610 (attachment)**

This sample consists of two emails and what appears to be the same attachment appearing at REVTRIB044-00003361. All aspects of this sample are privileged, as they reflect attorney-client privileged communications and attorney advice and/or the transmission of legal advice.

- **REVTRIB0044-00022161**

This sample consists of sixteen emails, sent between December 4, 2018, and December 21, 2018. This sample is privileged in part. The following individual emails are privileged: December 21, 2018, at 9:25 a.m.; (2) December 20, 2018, at 11:09 p.m.; and (3) December 20, 2018, at 11:28 a.m. These three identified emails are between and among New Defendants' attorneys and employees discussing legal advice, and therefore, are privileged. However, the remainder of the email chain involves communications between and among Mindy Lees and personnel of the third-

party investigator Insite and are not privileged, as is discussed in more detail below.[12]

- **REVTRIB0044-00231503**

This sample consists of eight emails, sent between January 7, 2019, and January 10, 2019. All eight emails include counsel and reflect requests and/or dialogue relating to the provision of legal advice and an investigation and are privileged.

## 2.    Group 2 Samples: Emails To or From Third-Party Investigator to Counsel

The News Defendants argue that communications between in-house counsel and Insite "can be covered by the attorney-client privilege if the investigation firm is retained by counsel for purposes of assisting with providing legal advice."  (ECF No. 171 at 2 (citing *Salvagno v. Borough of Glen Ridge*, 2009 WL 2392887, at *1–2 (D.N.J. Aug. 3, 2009) (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961)))).  According to the News Defendants, "[Attorney] Lees retained [Insite] to assist with the investigation into Plaintiff's conduct" and therefore, communications involving Insite are protected by the attorney-client privilege.  (*Id.*)

In opposition, D'Ambly repeats his arguments that the News Defendants' communications and conduct were of a business nature and do not qualify as privileged.  (ECF No. 172 at 2). According to D'Ambly, the News Defendants do not explain "what conduct was investigated, and the vague privilege log description[s] and frivolous nature of the disclosed emails belie[] Daily News' claim that the withheld emails were about seeking legal advice."  (ECF No. 172 at 3).

"Federal courts have long recognized that corporate clients may require the assistance of non-attorneys to gather factual information necessary for the provision of legal advice and

---

[12] Despite being listed as Group 1 samples, these emails do not appear to fit within the description of Group 1 documents, since they involve communications with Insite, the third-party investigator.  As the Court explains with respect to Group 2 documents, *infra*, these communications between counsel and Insite do not qualify as privileged in this case.

representation, and to execute the legal advice once it has been conveyed to the company." *In re American Med. Collection Agency, Inc.,* 2023 WL 8595741, at *7 (D.N.J. Oct. 16, 2023) (Hammer, J.) (citing *Upjohn*, 449 U.S. at 394 (1981)). Thus, the concept of the attorney-client privilege extending to non-attorney, third-party agents, specifically, "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists in a variety of social and physical sciences," has been developed through case law. *Sealed Air Corp.,* 253 F.R.D. at 311 (citations omitted). This expansion of the privilege to cover third-party agents "derives from what has been referred to as the '*Kovel* doctrine,' named after the Second Circuit Court of Appeals case, *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961)." *Sealed Air Corp.*, 253 F.R.D. at 311; *see In re American Med.*, 2023 WL 8595741, at *7 (same).

The court in *Sealed Air Corp*. explained the *Kovel* doctrine as follows:

> In *Kovel*, the Second Circuit Court of Appeals held that the attorney-client privilege extends to an accountant hired to assist the attorney in understanding the client's information. The court analogized an accountant to a translator and found that the presence of an accountant, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege .... On the facts of the case before it, the [*Kovel*] court found that the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. The Second Circuit emphasized that in all instances the facts communicated to the agent must have been in confidence and for the purposes of obtaining legal advice. *Id.* at 922 ("If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").

253 F.R.D. at 311-12 (certain internal cites and quotes omitted).

In *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999), the Second Circuit put a finer point on *Kovel*, which the court in *Sealed Air*, explained as follows:

> In *United States v. Ackert*, the Second Circuit was again presented with a request for a derivative extension of the attorney-client

> privilege, this time to a third-party investment banker. In *Ackert,* the court refused to extend the attorney-client privilege to protect communications between Paramount and a third-party investment banker from Goldman Sachs. The Second Circuit found that counsel was not 'relying on [the investment banker] to translate or interpret information given to [the lawyer] by his client. Rather, [the lawyer] sought out [the investment banker] for information it did not have about the proposed transaction and its tax consequences.' *Because the investment banker's role 'was not as a translator or interpreter of client communications,' the documents were not protected from disclosure.*

253 F.R.D. at 311-12 (quoting *Ackert*, 169 F.3d at 140) (certain internal cites and quotes omitted) (emphasis added).

Synthesizing the decisions in *Kovel* and *Ackert*, the attorney-client privilege may extend to include non-attorneys "who assist in the conveyance of communications necessary to issue, comprehend, and execute legal advice." *In re American Medical*, 2023 WL 8595741, at *7 (citations omitted). "[T]he Third Circuit and courts in this district have adopted the *Kovel* approach, [although] those courts have narrowly construed its applicability." *In re American Medical*, 2023 WL 8595741, at *7-8 (collecting cases); *see also United States v. Alvarez*, 519 F.2d 1036, 1045-46 (3d Cir. 1975) (applying *Kovel*). As such, "courts are careful to scrutinize whether the third-party is intrinsic to the communication and understanding of legal advice, as opposed to acting in some other capacity." *Id.* The privilege does not attach to communications to non-parties merely to obtain their professional services. *See, e.g.*, *UPMC v. CBIZ, Inc.*, 2018 WL 1542423, at *8 (W.D. Pa. Mar. 29, 2018) ("Privilege does not attach simply because counsel communicates with a third party – such as actuaries, accountants, or federal agencies – to obtain information, seek advice, or attain professional services."); *Salvagno*, 2009 WL 2392887, at *3 (rejecting application of *Kovel* to communications between plaintiff and private investigator for plaintiff, where those communications did not assist counsel in providing legal advice to plaintiff); *cf. United States v.*

*Antolini*, 271 Fed. Appx. 268, 271 n.1 (3d Cir. 2008) (noting that third-party hired for accounting services would not qualify for privilege protection under *Kovel*).  Instead, "[a] third party that provides investigatory results or information to counsel that assists in representing the client does <u>not</u> satisfy *Kovel*, regardless of the criticality of the analysis or information.  ***It remains that to qualify for protection under Kovel, the third-party's role must be to translate, interpret, or 'clarify communications between attorney and client*.'"  *In re American Medical*, 2023 WL 8595741, at *9 (quoting *Ackert*, 160 F.3d at 139) (emphases added).

This Court has closely reviewed the Group 2 samples, which include both email communications between in-house counsel for the News Defendants and Insite, as well as Insite's "Private Investigation Report" (herein, the "Report").[13]  Based on that review, this Court finds that the News Defendants fall short of establishing that the *Kovel* doctrine applies in this case to protect the sample written communications from disclosure.

There is nothing in the record presented that supports the notion that Insite was retained to "translate, interpret, or clarify" communications between the New Defendants and their legal counsel.  *See In re American Medical*, 2023 WL 8595741, at *9.  Rather, the *in camera* review of the Group 2 samples, including the Report itself, confirms that Insite was hired to conduct a purely factual investigation into D'Ambly's conduct.  That fact gathering, fact finding, and other investigatory work by a third-party as communicated to an attorney has nothing to do with the "translation" or "interpretation" of information between counsel and client, which is what *Kovel* requires.  *See In re American Medical*, 2023 WL 8595741, at *9; *see also Jorjani v. NJIT*, 2023 WL 7895856, at *3 (D.N.J. Nov. 14, 2023) (attorney-client privilege did not apply to law firm investigatory report, "particularly where, as here, the report conveys factual findings and the

---

[13] The forty-six (46) page report appears as sample REVTRIB0044-00007645.

investigation was initiated before the commencement of a lawsuit." (citing *Freedman & Gersten, LLP v. Bank of Am.*, 2010 WL 5139874, at *5 (D.N.J. Dec. 8, 2010))).  The sample documents reflect Insite having  provided "investigatory results or information to counsel that assists in representing the client," which "does not satisfy *Kovel*, regardless of the criticality of the analysis or information."  *In re American Medical*, 2023 WL 8595741, at *9.  While the information Insite gathered for the News Defendants and communicated to counsel might have been helpful to render legal advice, that does not cloak the communications between Insite and counsel within the attorney-client privilege.  *Id.*  As a result, the Group 2 samples are not protected by the attorney-client privilege.

This Court's review of the Report itself leads to the same conclusion.  The Report reflects the results of a purely factual investigation.  It does not contain or provide any legal advice. The Report also does not serve as a conduit to translate or interpret information given to Ms. Lees, as counsel, by the News Defendants, her corporate client, necessary to provide legal advice.  "[T]he inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between the attorney and client."  *Ackert*, 159 F.3d at 139.  That principle does not apply here to a purely investigatory report.  *See Jorjani v. NJIT*, 2023 WL 7895856, at *3.  Finally, the Report itself provides "recommended" steps <u>to counsel</u> that are not legal in nature.  (*See* REVTRIB0044-0000765 at p.1).  The Report's stated purpose is to gather facts and not meant to serve as a "legal opinion."  (*Id.* at p. 46).  *Kovel* is not meant to apply the attorney-client privilege to this type of arrangement between a third-party investigator and legal counsel.  In short, there is no basis to apply *Kovel* to the sample communications between Insite and Ms. Lees.

There is, however, an important distinction between communications between Ms. Lees

and Insite personnel and the Report on one hand, and on the other hand, *internal* discussion among News Defendants employees and in-house counsel about the results of Insite's investigation. Stated differently, even though the communications between Lees and Insite and Report itself are not privileged, the News Defendants' counsel's communications with New Defendants' employees about information or findings contained in the Report for the purpose of rendering legal advice may be privileged. *See Jorjani*, 2023 WL 7895856, at *3 (investigatory report prepared by a law firm was not itself privileged, but internal discussion between counsel and client about information included in the report can be privileged). Thus, in reviewing the Group 2 samples, the Court finds that one such email is privileged on this basis, as it reflects legal advice from News Defendants' counsel to employees of her corporate client: REVTRIB0044-00007644, which is an email between Attorney Mindy Lees and News Defendants' employee Maya Bordeaux, sent December 5, 2018, at 6:22 p.m. (the "December 5th email").

In sum, the News Defendants have not established that any of the Group 2 samples, other than the December 5th email, qualify for attorney-client privilege protection pursuant to *Kovel*. Accordingly, other than the December 5th email, all Group 2 samples, including the Report, must be produced.

### 3. Group 3 Samples: Emails Seeking Information to Assist Counsel

The News Defendants argue that the Group 3 samples are comprised of communications among employees acting within the scope of their duties to gather and provide information to assist in-house counsel. (*See* ECF No. 171 at 2-3). The News Defendants continue that the communications assisted counsel in providing legal advice, and thus, qualify as privileged. (*Id.*)

In response, D'Ambly reiterates that the documents are primarily of a business nature and, from what can be argued based on the privilege log descriptions, appear to reflect the News

Defendants' attempts to respond to a "potential public relations nightmare," and were not intended to be confidential. (*See* ECF No. 172 at 2).

"Traditional notions of attorney-client privilege require a communication between an attorney and a client." *Margulis*, 2017 WL 772336, at *8. However, as several courts in this District have noted, "the privilege has been held to apply to communications by a corporate employee concerning matters within the scope of his/her duties and that were purposefully made to enable an attorney to provide legal advice to the corporation." *Jorjani*, 2021 WL 4237255, at *5 (citing *Engage Healthcare Communs.*, 2017 WL 10259770, at *2, *adopted by* 2017 WL 10259774); *see also Margulis*, 2017 WL 772336, at *8 (citing *In re Riddell Concussion Reduction Litig.*, 2016 WL 7108455, at *5, 8 (D.N.J. Dec. 5, 2016)).[14] At the same time, this application of the attorney-client privilege is meant to be narrow, *TransWeb LLC v. 3M Innovative Properties*, 2012 WL 2878075, at *3 (D.N.J. July 13, 2012), and the privilege does not protect vague and general "group-wide" discussions, which "do not allow for the Court to assess whether the recipients require, or have the capacity to act upon, the information requested." *Margulis*, 2017 WL 772336, at *8. As such, taken together in the corporate context, the attorney-client privilege protects "'communications with those that must be consulted [for] a lawyer to provide legal advice – i.e., those that 'need to know' or have information necessary to assist the lawyer in providing legal advice.'" *Jorjani*, 2021 WL 4237255, at *5 (quoting *Margulis*, 2017 WL 772336, at *8).

Based on the above legal principles, the Court has reviewed the Group 3 samples. As to each sample, the Court finds as detailed below.

---

[14] Federal courts outside this District have recognized this principle as well. *See, e.g.*, *McCall v. Proctor & Gamble Co.*, 2019 WL 3997375, at *4-5 & n.9 (S.D. Ohio Aug. 22, 2019) (collecting cases from various federal jurisdictions); *SmithKline Beecham Corp.*, 232 F.R.D. at 477 ("a document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.")

- **REVTRIB0044-00050265**

This sample is comprised of nine emails sent on November 5, 2018, and November 6, 2018. This sample is privileged in part.  The emails sent on November 5, 2018, at 5:16 p.m. and November 5, 2018 at 5:43 p.m. are privileged, as they reflect legal advice and/or the gathering of information central to the provision of legal advice.  The remaining seven emails are not privileged. The News Defendants have not identified and explained the involvement of all parties to these emails, or why each person was acting on a need-to-know basis at the express direction of counsel. In addition, some of these emails include non-attorney HR employees making recommendations *to counsel*, not the other way around.  In short, these emails are more reflective of "general" and "group wide" discussions, and do not reflect communications that are meant to be confidential or privileged.[15]

- **REVTRIB0044-00125189**

This sample is not privileged.  It is comprised of three emails sent on November 6, 2018. The emails are innocuous and do not reflect privileged communications between or among News Defendants employees; rather, this sample is comprised of an email forwarding payroll-related documents to Insite personnel.  This sample does not involve or reflect the gathering of information central to the provision of legal advice.  Moreover, it involves non-privileged communications with a third-party.

- **REVTRIB0044-00008531**

This sample is privileged.  The sample is comprised of three emails, sent on November 5, 2018.  The emails appear to discuss and reflect legal advice given during an attorney conference

---

[15] The Group 3 sample REVTRIB0044-00028402 is comprised of emails that also are part of this sample (REVTRIB0044-00050265).  Thus, for the same reasons stated with respect to this sample, REVTRIB044-0028402 is privileged in part.

call and/or are reflective of communications necessary to transmit legal advice. For that reason, this sample is privileged.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, D'Ambly's request to compel the News Defendants to produce documents withheld based on the attorney-client privileged is **GRANTED IN PART AND DENIED IN PART**.

The News Defendants are directed to produce the non-privileged sample documents identified herein. In addition, the News Defendants must apply the Court's decision to any other documents similarly withheld and produce any additional non-privileged documents accordingly. All non-privileged documents consistent with this Opinion and Order shall be produced on or before **January 8, 2025.**

The Court will conduct a Telephone Status Conference on **January 24, 2025, at 10:30 a.m.** The parties are instructed to dial 1-855-244-8681 and enter Access Code 23024029552 at the time of the Conference. On or before **January 17, 2025**, the parties shall submit a joint status letter, including a proposed amended scheduling order for the remainder of this case.

The Clerk of the Court is requested to terminate ECF Nos. 163, 171, and 172.


**SO ORDERED**.


                                             s/Jessica S. Allen_____
                                             **Hon. Jessica S. Allen**
**Dated: November 25, 2024**                 **United States Magistrate Judge**


cc: Hon. Jamel K. Semper, U.S.D.J.